**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

March 12, 2007

# NOTICE OF CORRECTION

From:   Clerk's Office

Case Style:   Hope for Families & Community Service, Inc et al v. Warren

Case Number:   3:06-cv-01113-WKW

**This Notice of Correction was filed in the referenced case this date to correct the PDF document previously attached by E-Filer to include the electronic signatures.**

**The correct PDF document is attached to this notice for your review.   Reference is made to document # 24filed on    March 12, 2007.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC.; BEULAH MISSIONARY BAPTIST CHURCH; E.D. NIXON APARTMENTS, INC.; MCRAE PROSTATE CANCER AWARENESS FOUNDATION; MILSTEAD COMMUNITY CENTER, INC.; NCO NILE CLUB; NEW ELAM MISSIONARY BAPTIST CHURCH; NOTASULGA HIGH SCHOOL PTSA; SHORTER COMMUNITY DEVELOPMENT, INC.; SHORTER LODGE # 533; SHORTER VOLUNTEER FIRE DEPARTMENT; SOJOURNER TRUTH CHAPTER #265 OES; SWEET GUM AME ZION CHURCH; TABERNACLE BAPTIST CHURCH; TUBMAN GARDENS, INC.; TUSKEGEE MACON COUNTY COMMUNITY FOUNDATION, INC.; TUSKEGEE NATIONAL ALUMNI ASSOCIATION,<br><br>      Plaintiffs,<br><br>v.<br><br>DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY; MILTON MCGREGOR; MACON COUNTY GREYHOUND PARK, INC.,<br><br>      Defendants. | Case No.: 3:06-cv-01113-WKW-csc<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

1.     This is an action by seventeen Macon County, Alabama, non-profit organizations ("The Charities") against Sheriff David Warren ("Sheriff Warren"), Milton McGregor, and Macon County Greyhound Park, Inc. ("VictoryLand"). This Complaint includes claims against Defendant Warren, pursuant to 42 U.S.C. § 1983, for violations of the Equal Protection Clause of

the Fourteenth Amendment of the United States Constitution and against all Defendants, pursuant to 42 U.S.C. § 1985(3), for a conspiracy to deprive the Charities of the equal protection of the laws.

## JURISDICTION

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985(3).

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all Defendants reside in this district, all Defendants are subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

## PARTIES

4.     Hope for Families & Community Services, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to prevent abuse and neglect of families and children.

5.     Beulah Missionary Baptist Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

6.     E.D. Nixon Apartments, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to provide elderly and handicapped persons with housing facilities and services specially designed to meet their physical, social, and psychological needs, and to promote their health, security, happiness, and usefulness.

7.     McRae Prostate Cancer Awareness Foundation is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is

to promote prostate health and awareness, prostate cancer support groups for patients and their families, and research into life-enhancing treatment and an eventual cure for prostate cancer.

8.      Milstead Community Center, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to improve the economic, civic, and social conditions of the community of Milstead, Alabama.

9.      NCO Nile Club is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. It is an organization of non-commissioned officers of the Reserve and National Guard units in and around Tuskegee, Alabama. Its mission is to maintain liaison between officers and enlisted men; to obtain a higher degree of readiness; to discuss, solve, and eliminate problems in the units, in order to further the common good, general welfare, and relations of their community; to bring about civil betterment through grants, donations, guidance, and support; and to aid charitable, educational, and recreational projects through youth groups.

10.     New Elam Missionary Baptist Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

11.     Notasulga High School PTSA is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

12.     Shorter Community Development, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to establish structured support services for homeless and economically disadvantaged individuals, families, and juveniles so that they may lead lives of self-sufficiency.

13.     Shorter Lodge # 533 is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

14. Shorter Volunteer Fire Department is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

15. Sojourner Truth Chapter #265 OES is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

16. Sweet Gum AME Zion Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

17. Tabernacle Baptist Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

18. Tubman Gardens, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to provide elderly and handicapped persons with housing and services designed to meet their physical, social, and psychological needs and to promote their health, security, happiness, and usefulness.

19. Tuskegee Macon County Community Foundation, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to bring together human and financial resources to address and solve community problems.

20. Tuskegee National Alumni Association is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to foster the ideals of Tuskegee Institute and its founder, Booker T. Washington; to encourage and assist students, graduates, and former students toward the highest development of character and service to mankind; to encourage liberal financial and moral support of Tuskegee Institute and its policies; and to assume and maintain an active national leadership in the promotion and furtherance of Tuskegee Institute.

21.    Defendant David Warren is a citizen and resident of Macon County in the State of Alabama. Defendant Warren is also the Sheriff of Macon County.

22.    Defendant Milton McGregor is a citizen and resident of Montgomery County in the State of Alabama. Defendant McGregor is also the President and majority shareholder of Macon County Greyhound Park, Inc.

23.    Macon County Greyhound Park, Inc., is a corporation formed under the laws of the State of Alabama, and its primary place of business is in the State of Alabama. Macon County Greyhound Park, Inc., does business as VictoryLand.

## FACTUAL BASIS

24.    Amendment 555 of the Constitution of the State of Alabama provides for "local" constitutional amendments. Pursuant to Amendment 555, any proposed constitutional amendment that affects only one county can be adopted as a valid part of the Constitution by a majority vote of the affected county. Through this type of amendment, the operation of bingo gaming facilities has been authorized in various counties throughout the State.

25.    On or about November 4, 2003, the voters of Macon County approved Amendment 744 to the Constitution, which governs the operation of bingo gaming in Macon County, Alabama. Amendment 744 provides that "the operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes shall be legal in Macon County." *See* Ala. Const. (1901) Amend. 744. Further, the Amendment provides that the non-profit organization may enter into an agreement with an individual, firm, or a corporation to operate the facility. Pursuant to Amendment No. 744, the Alabama Legislature delegated the authority to promulgate rules and regulations for the licensing and conduct of bingo games to the Sheriff of Macon County.

26.     Amendment 744 did not limit the number of bingo licenses that could be issued by the Sheriff of Macon County, nor did it restrict the operation of bingo gaming in Macon County to one facility or operator.

27.     On or about November 11, 2003, Defendant McGregor had a conversation with Defendant Warren, the Sheriff of Macon County, about VictoryLand's interest in conducting electronic bingo.  That conversation was conducted in the presence of attorney Fred Gray, Jr.  Upon information and belief, Defendant Warren and Defendant McGregor agreed to formulate rules and regulations for the licensing and conduct of bingo games that would allow only non-profit organizations affiliated with VictoryLand to conduct electronic bingo games.

28.     After forming their agreement, Defendants Warren and McGregor had an identical or virtually identical interest in promulgating rules and regulations that favored nonprofit organizations affiliated with VictoryLand.  In pursuit of their common goal, Defendants Warren, McGregor, and VictoryLand retained the same attorney, Fred Gray, Jr., to represent them with regard to the formulation of the rules and regulations for the licensing and conduct of bingo games.

29.     On or about December 5, 2003, Defendant Warren, the Sheriff of Macon County, promulgated "Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama" ("Original Rules"), a true and correct copy of which are attached hereto as Exhibit A.  The Original Rules were primarily drafted by attorney Fred Gray, Jr.

30.     The Original Rules stated that any Macon County non-profit organization could apply for a Class B Bingo License.  They further provided that "[a] Class B Bingo License shall be issued to an applicant who desires to operate any and all games of bingo . . . at a qualified location for the holder of a Class B License."  The Original Rules defined a "qualified location

6

for the holder of a Class B Bingo License" as a location that, among other things, had a value of $5 million, including the land, building and improvements. Furthermore, to be a qualified location, the location had to be inspected and approved by the Sheriff. The Original Rules only required one charity to contract with an operator of a qualified location to host bingo, and there was no maximum number of licenses that could be issued.

31.     The only gaming facility existing in Macon County at the time the Original Rules were promulgated was VictoryLand. On December 17, 2003—twelve days after the Original Rules were issued—Defendant Warren issued the first Class B Bingo License to the Tuskegee Human and Civil Rights Multicultural Center for the conduct of bingo games at VictoryLand. Fred D. Gray is the President of the Tuskegee Human and Civil Rights Multicultural Center and the father and law partner of Fred D. Gray Jr. Defendant McGregor is also an officer of the Tuskegee Human and Civil Rights Multicultural Center. Upon information and belief, Defendant Warren—prior to issuing the Class B Bingo License—did not conduct an investigation into, among other things, the value of VictoryLand or the identity of its owners, as required by the Original Rules.

32.     Defendant Warren's implementation of the Original Rules ensured that VictoryLand would remain the only "qualified location" for the conduct of electronic bingo. The Original Rules required a "qualified location" to be inspected and approved by the Sheriff. Defendant Warren interpreted this rule to require that a facility be constructed and visually inspected by him before receiving approval or disapproval. The Original Rules contained no specifications that, if met, would guarantee approval.

33.     On or about June 2, 2004, Sheriff Warren promulgated an amended set of rules entitled "First Amended and Restated Rules and Regulations for the Licensing and Operation of

Bingo Games in Macon County, Alabama" ("First Amended Rules"), a true and correct copy of which are attached hereto as Exhibit B. The First Amended Rules were primarily drafted by Fred Gray, Jr., the attorney for Defendants Warren and McGregor. The First Amended Rules were not publicly disclosed by Sheriff Warren at the time of their promulgation, and there was no opportunity for public comment on the amendments prior to their promulgation.

34. On June 10, 2004, The Tuskegee News disclosed the existence of the First Amended Rules. The First Amended Rules defined a "qualified location for the holder of a Class B Bingo License" as a location that, among other things, had a value of $15 million, including the land, building and improvements. The First Amended Rules also provided that "[n]o Class B Licensee shall be authorized to operate bingo at any qualified location . . . unless a minimum of fifteen (15) applicants shall first obtain a Class B License for such location." This provision will be referred to hereinafter as the "Fifteen License Minimum."

35. On or about January 6, 2005, Sheriff Warren amended his rules again. The amended set of rules was entitled "Second Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama" ("Second Amended Rules"), a true and correct copy of which are attached hereto as Exhibit C. The Second Amended Rules were primarily drafted by Fred Gray, Jr., the attorney for Defendants Warren, McGregor, and VictoryLand.

36. The Second Amended Rules stated that "[a]t no time shall there be issued and outstanding more than sixty (60) Class B Licenses for the operation of bingo in Macon County." This provision will be referred to hereinafter as the "Sixty License Maximum."

37. Upon information and belief, Sheriff Warren either promulgated the Second Amended Rules with knowledge that VictoryLand already had contractual ties with fifty-nine

8

charities that held licenses, or he immediately issued fifty-nine licenses to charities that were contractually tied to VictoryLand.

38. On or about July 25, 2005, the Charities submitted Charity Application Packages for Class B Bingo Licenses (hereinafter "Applications") to Sheriff Warren. To this day, Sheriff Warren has failed to issue Class B Bingo Licenses to the Charities.

39. The Applications indicated that the Charities intended to conduct bingo at a location owned by Lucky Palace, Inc., a corporation organized under the laws of the State of Alabama (hereinafter "Lucky Palace"). Pursuant to their contracts with Lucky Palace, the Charities were each guaranteed semi-annual payments of $21,000 for operating bingo games at Lucky Palace's location.

40. When Amendment 744 was approved in November 2003, Lucky Palace embarked on an endeavor to build, own and operate a bingo parlor in Macon County, Alabama. As of this day, Lucky Palace has hired an experienced management team and licensed a highly visible brand—Planet Hollywood—for its bingo parlor. To finance the construction of its bingo parlor, Lucky Palace has secured $54 million in financial commitments. As part of its construction, Lucky Palace plans significant improvements to the local infrastructure, including sewer and water service upgrades, at no cost to Macon County. Lucky Palace's bingo parlor will create 630 new jobs in Macon County.

41. In or around January 2004, Paul Bracy, Jr., President of Lucky Palace, was assured by Defendant Sheriff that anyone who met the requirements set forth in the Original Rules would have no problem obtaining a license to operate bingo games in Macon County.

42. Based on those assurances, Lucky Palace continued its efforts to establish a "qualified location for the holder of a Class B Bingo License" in Macon County by securing

capital investments in excess of $5 million and by ensuring that all other requirements in the Original Rules would be met.

43. On or about June 11, 2004—following the disclosure of the First Amended Rules by the Tuskegee News—Lucky Palace again notified Sheriff Warren by letter of its intention to build, own, and operate a "qualified location for the holder of a Class B Bingo License" in compliance with the Original Rules. Lucky Palace asked for confirmation that a Class B Bingo License would be issued to a qualified nonprofit organization that desired to operate bingo games at the location if such a location were built. Sheriff Warren did not respond to the letter.

44. On or about June 15, 2004, Lucky Palace contacted Sheriff Warren by letter to notify him that it was continuing to operate under the Original Rules. Stressing to Sheriff Warren that the process of land purchases, site development, environmental assessments, associated legal and consulting fees and architectural renderings were all based on the Original Rules, Lucky Palace inquired as to the impact of the First Amended Rules on Lucky Palace's planned development. Sheriff Warren did not respond.

45. On or about July 21, 2004, Bracy and Sheriff Warren met in Sheriff Warren's office to discuss the concerns of the Lucky Palace lenders and investors over the First Amended Rules and any additional changes that may be forthcoming.

46. On or about July 30, 2004, Bracy sent, for Sheriff Warren's signature, a statement that the First Amended Rules would not be further amended and that, if Lucky Palace complied with the First Amended Rules, there will be no delays or problems in obtaining his approval of its "qualified location for the holder of a Class B Bingo License." Sheriff Warren did not sign the statement.

47.  On or about August 5, 2004, Sheriff Warren replied by letter to Bracy and stated that he reserved the right to amend the regulations as necessary but did not see any amendments in the foreseeable future.  He further stated that the First Amended Rules governed any bingo operations that were currently in existence or that were to be constructed and completed in the following several months.

48.  On or about November 10, 2004, Lucky Palace submitted an Application for Bingo Operator's License.  The application was denied because, according to Sheriff Warren, the building did not qualify as it was not completed.

49.  On or about November 23, 2004, Lucky Palace sought clarification on what constituted "capital improvements" under the First Amended Rules.  This clarification was to ensure that Lucky Palace could come into compliance with the $15 million requirement for locations in the First Amended Rules.  This also placed Sheriff Warren on notice that the requirements in place at that time would soon be met by Lucky Palace.  Soon thereafter, Sheriff Warren promulgated the Second Amended Rules, which included the Sixty License Maximum.  That Maximum—combined with Fifteen License Minimum and the fact that fifty-nine licenses had already been issued to nonprofit organizations that desired to operate bingo at VictoryLand—foreclosed the operation of bingo games in Macon County at any location other than VictoryLand.

50.  On March 8, 2005, Pebblin W. Warren, the wife of Sheriff Warren, was elected to the Alabama House of Representatives in a special election.  On or about July 18, 2005, Representative Warren submitted HB 17, a bill which sought to amend Amendment 744 to incorporate the Second Amended Rules.

51. On or about August 17, 2005, Lucky Palace sent a letter to Sheriff Warren in which it expressed its concerns over Sheriff Warren's repeated dismissals of efforts to acquire bingo licenses to operate in Macon County. Pre-approval was again requested by Lucky Palace so that it could begin construction on its location and move towards the operation of a "qualified location for the holder of a Class B Bingo License" in Macon County. Sheriff Warren did not respond.

52. On several occasions, during meetings between representatives of Lucky Palace and Sheriff Warren, Sheriff Warren told the representatives that, if the Charities wanted Class B Bingo Licenses, then they would have to sue him.

## COUNT I
### (Violation of Equal Protection Clause)

53. The Plaintiffs fully incorporate Paragraphs 1-52 by reference as if fully set forth herein.

54. Sheriff Warren, under the color of state law and his authority as Sheriff of Macon County, has intentionally treated the Charities differently from other similarly-situated nonprofit organizations, and there is no rational basis for the difference in treatment. Accordingly, the Charities have been denied their right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

55. The Charities are Macon County non-profit organizations. They have submitted completed applications for Class B Bingo Licenses to Sheriff Warren. Those applications fulfill all of the requirements of the Original Rules, the First Amended Rules, and the Second Amended Rules. Accordingly, the Charities are similarly situated to those fifty-nine Macon County non-profit organizations that have been granted Class B Bingo Licenses.

56. Sheriff Warren has intentionally treated the Charities differently from their similarly-situated counterparts by failing to issue Class B Bingo Licenses to the Charities in a timely fashion. That different treatment constitutes intentional and arbitrary discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. There is no rational basis for that different treatment.

57. There is no rational basis for the Fifteen License Minimum. There is no rational basis for the Sixty License Maximum. There is no rational basis for issuing fifty-nine of the sixty Class B Bingo Licenses available under the Second Amended Rules to nonprofit organizations who desired to operate bingo games at VictoryLand. There is no rational basis for requiring nonprofit organizations to construct or lease a multi-million dollar facility prior to obtaining a Class B Bingo License.

58. In addition to lacking a rational basis, the requirements stated in Paragraph 57 are arbitrary, capricious, and intended to discriminate against all nonprofit organizations, including the Charities, that desire to operate bingo at locations other than VictoryLand.

## COUNT II
**(Conspiracy to Deprive the Plaintiffs of the Equal Protection of the Laws)**

59. The Plaintiffs fully incorporate Paragraphs 1-58 by reference as if fully set forth herein.

60. Defendant Warren and Defendant McGregor, in his personal capacity and as an agent for Victoryland, agreed or had an understanding that Defendant Warren would issue rules and regulations for the licensing and operation of bingo in Macon County that would deprive any nonprofit organization, other than a nonprofit organization associated with VictoryLand, of the ability to obtain a license for the conduct of electronic bingo.

61. By issuing rules and regulations in accordance with that agreement of understanding, Defendant Warren deprived the Plaintiffs of the equal protection of the laws. Defendant Warren perpetuated that deprivation by issuing the First Amended Rules and the Second Amended Rules. Defendant Warren further perpetuated the deprivation by refusing to consider the Plaintiffs' applications for Class B Bingo Licenses based on his interpretation of the Original Rules, the First Amended Rules, and the Second Amended Rules.

62. As a result of that deprivation, the Plaintiffs have been injured in an amount to be proven at trial.

63. Even if Defendant Warren's actions did not actually deprive the Plaintiffs of the equal protection of the laws, Defendant Warren's actions were taken in furtherance of a conspiracy to deprive the Plaintiffs of the equal protection of the laws. The Plaintiffs were injured by those actions in an amount to be proven at trial.

WHEREFORE, the Charities pray that this Court enter judgment against the Defendants as follows:

  a. With regard to Defendant Warren, for appropriate injunctive relief requiring Defendant Warren to, *inter alia*, (1) issue Class B Bingo Licenses to each of the Charities, (2) suspend the Fifteen License Minimum and the Sixty License Maximum, and (3) allow the Charities to operate any and all games of bingo at the Lucky Palace location;

  b. With regard to Milton McGregor and Macon County Greyhound Park, Inc., for damages in an amount to be proven at trial and punitive damages;[1]

  c. For costs, including attorney's fees; and

  d. For such further and additional relief as the Court deems just and appropriate.

---

[1] The Charities do not seek any damages against Defendant Warren.

DATED:  March 12, 2007.

                                  Respectfully submitted,

                                  s/ Michael T. Sansbury
                                  Robert K. Spotswood (SPO 001)
                                  Michael T. Sansbury (SAN 054)
                                  **SPOTSWOOD SANSOM & SANSBURY LLC**
                                  940 Concord Center
                                  2100 Third Avenue North
                                  Birmingham, AL 35203-3329
                                  Telephone:  (205) 986-3620
                                  Fax:  (205) 986-3639
                                  E-mail:rks@spotswoodllc.com
                                                msansbury@spotswoodllc.com

                                  *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred David Gray, Esq.
Fred David Gray Jr., Esq.
Gray, Langford, Sapp, McGowan, Gray & Nathanson
P.O. Box 830239
Tuskegee, AL  36083-0239
E-mail: fgray@glsmgn.com
jbibb@glsmgn.com
fgrayjr@glsmgn.com
thalia@glsmgn.com

                                       s/ Michael T. Sansbury
                                       OF COUNSEL