IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., | )<br>)<br>) |
| PLAINTIFFS, | )<br>) |
| v. | ) CASE NO.: 3:06-cv-01113-WKW-WC<br>) |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., | )<br>)<br>)<br>) |
| DEFENDANTS. | ) |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS**

COMES NOW Defendant Milton McGregor ("McGregor"), and submits this Memorandum Brief in Support of his Motion to Dismiss. The Defendant respectfully moves this Court to dismiss Plaintiffs' First Amended Complaint and the sole claim against this Defendant in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted. In support of his motion, the Defendant would show unto this Court the following:

**SUMMARY OF ARGUMENT**

The Court should dismiss the Plaintiffs' claims against Defendant Milton McGregor ("McGregor"), because the Plaintiffs have failed to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Plaintiffs' amended complaint contains a single count under 42 U.S.C. § 1985(3) against McGregor, but the Plaintiffs have failed to allege all of the necessary elements for a viable conspiracy claim under section 1985(3).

Specifically, the Plaintiffs have not alleged any invidious discrimination or class-based animus. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). In fact, the only "class" that appears from the face of the amended complaint is one based on economic status or activity, Such a class is not protected under section 1985. See United Brotherhood of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 837-39 (1983). See also Morast v. Lance, 807 F.2d 926, 929 n.3 (11th Cir. 1987). Because the Plaintiffs have not alleged any class-based animus and have not asserted even the existence of a protected class under section 1985(3), Plaintiffs have not presented any claim for which relief can be granted against McGregor, and this Court should, therefore, grant this Motion to Dismiss. Furthermore, Plaintiffs' claim against McGregor is due to be dismissed as a matter of law pursuant to the intracorporate conspiracy doctrine.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 18, 2006, the Plaintiffs filed their original complaint against Sheriff David Warren ("Sheriff Warren") of Macon County, Alabama. See Compl. at 1 [Doc. 1]. The complaint contained a single count under 42 U.S.C. § 1983 for an alleged violation of the Plaintiffs' equal protection rights under the Fourteenth Amendment to the United States Constitution. See Compl. ¶¶ 1, 46-51 [Doc. 1]. The Plaintiffs' allegations arose in connection with a 2003 amendment to the Alabama state constitution which legalized the operation of charitable bingo games in Macon County .See Compl. ¶ 25 [Doc. 1]; See Ala. Const. amend. 744. In their original complaint, Plaintiffs alleged that Sheriff Warren had violated their equal protection rights in his promulgation of the rules and regulations for the licensing and operation of charitable bingo games required under Amendment 744 to the

Alabama Constitution. See Compl. ¶¶ 46-51 [Doc. 1]. In promulgating bingo licensing and operating rules and regulations, Sheriff Warren was exercising the powers expressly delegated to him under the Alabama Constitution. See Ala. Const. amend. 744.

Amendment 744 specifically directs Sheriff Warren to "promulgate rules and regulations for the licensing and operation of charitable bingo games in the county." Id. In accordance with that authority, Sheriff Warren issued bingo rules and regulations in 2003 and issued amended bingo rules and regulations in 2004 and again in 2005. See Compl. ¶¶ 29, 33, 35 [Doc. 1]. Plaintiffs subsequently submitted applications for bingo licenses to Sheriff Warren and then brought suit to challenge Sheriff Warren's alleged treatment of their applications as well as provisions of the rules and regulations limiting the number of licenses that could be issued and outstanding at any one time. See Compl. ¶¶ 46-51 [Doc. 1].

On March 2, 2007, the Plaintiffs amended their complaint to add additional defendants and to add an additional count. See Am. Compl. at 1 [Doc. 25]. The amended complaint added a second count under 42 U.S.C. § 1985(3) against Sheriff Warren and against two new defendants, McGregor and the Macon County Greyhound Park, Inc. ("Victoryland"). See Am. Compl. ¶¶ 1, 59-63 [Doc. 25]. The amended complaint asserts that Sheriff Warren conspired with Mcgregor, who was alleged to have acted individually and as Victoryland's agent, to violate Plaintiffs' equal protection rights in the promulgation of the bingo licensing and operating rules and regulations. See Am. Compl. ¶¶ 60-61, 63 [Doc. 25]. Plaintiffs have alleged, in the amended complaint, that the object of the alleged conspiracy was to deprive nonprofit groups that did not select Victoryland as the location for electronic bingo of the ability to obtain electronic bingo licenses. See Am. Compl. ¶ 60

[Doc. 25]. However, the amended complaint does not allege any class-based animus on the part of Sheriff Warren, McGregor, or Victoryland. See Am. Compl. ¶¶ 60-63 [Doc. 25]. The section 1985(3) count is the only claim against McGregor and Victoryland. See Am. Compl. ¶ 1 [Doc. 25]. McGregor now moves for dismissal of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff. See Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006); Morast v. Lance, 807 F.2d 926, 928 n.1 (11th Cir. 1987). However, unsupported legal conclusions and conclusory factual allegations need not be considered and will not defeat a motion to dismiss. See Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006); Jackson v. BellSouth Telecomm., 372 F.3d 1250, (11th Cir. 2004) ("To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."). Furthermore, the complaint must make sufficient allegations to support all necessary elements of the plaintiff's claim. See Snow, 450 F.3d at 1320 ("[A] complaint must still contain either direct or inferential allegations respecting all *material* elements of a cause of action."). A complaint that does not allege all necessary elements of the asserted claim or that presents allegations incapable of supporting a viable cause of action in light of the controlling legal issues is subject to dismissal for failure to state a

claim. See Glover, 459 F.3d at 1308-09; Snow, 450 F.3d at 1319-22. In the present case, the Plaintiffs' 42 U.S.C. § 1985(3) claim against McGregor should be dismissed for failure to state a claim because the Plaintiffs have not alleged all necessary elements for a section 1985(3) claim and because the allegations in the amended complaint do not, as a matter of law, support such a claim.

## ANALYSIS

**A.    Plaintiffs' Section 1985(3) Claim Is Due To Be Dismissed As A Matter Of Law.**

The Court should dismiss the Plaintiffs' 42 U.S.C. § 1985(3) claim against McGregor for failure to state a claim upon which relief can be granted because the Plaintiffs have not alleged the existence of all elements necessary for a viable section 1985(3) claim. See Fed. R. Civ. P. 12(b)(6). 42 U.S.C. § 1985(3) was originally codified as Section 2 of the Civil Rights Act of 1871, also known as the "Ku Klux Klan Act." The purpose of what is now section 1985(3) was to protect newly freed slaves following the Civil War. The United States Supreme Court, the Eleventh Circuit, its sister circuits and numerous district courts have resoundingly rejected any attempt to apply section 1985(3) to conspiracy claims based upon commercial or economic motives.

An actionable civil rights conspiracy claim under section 1985(3) requires that the plaintiff allege and prove the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Brotherhood of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).  The second element "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).   Thus, racial or class-based animus is a necessary element of any actionable section 1985(3) claim.  See id.  See also Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 628 (11th Cir. 1992); Cardillo v. Cardillo, 360 F. Supp. 2d 402, 411 (D.R.I. 2005); Crenshaw v. City of Defuniak Springs, 891 F. Supp. 1548, 1558-59 (N.D. Fla. 1995).  However, in the present matter, the Plaintiffs have not alleged any racial or class-based animus; in fact, the Plaintiffs have not alleged that the purported conspiracy was motivated by animus of any kind.  See Am. Compl. ¶¶ 60-63. Because the Plaintiffs have not alleged any animus, the claim of a section 1985(3) conspiracy should be dismissed.  See, e.g., Constant v. Advanced Micro-Devices, 848 F.2d 1560, 1565-66 (Fed. Cir. 1988) ("There are also numerous additional legal grounds supporting dismissal. . . . The district court correctly noted that appellant also failed to establish the requisite state action or class-based discriminatory animus.").

      Furthermore, no grounds for any allegations of class-based animus appear on the face of the amended complaint, which alleges a conspiracy to prevent certain nonprofit groups from obtaining electronic bingo licenses.  The United States Supreme Court has made clear that the types of "classes" entitled to protection under section 1985 are to be defined narrowly.  See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993).  The Supreme Court has explained the meaning of the "class-based animus" requirement as follows:

      Whatever may be the precise meaning of a "class" for purposes of Griffin's

6

> speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid.

Id. In other words, not every conceivable class is protected by section 1985(3). The courts have concluded that groups ranging from women seeking abortions to the handicapped to Republicans to family farmers are not "classes" entitled to seek redress under section 1985. See id. ("'Women seeking abortion' is not a qualifying class."); Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 628-29 (11th Cir. 1992) (women seeking abortions from particular doctor); Harrison v. KVAT Food Management, Inc., 766 F.2d 155, 163 (4th Cir. 1985) (Republicans); Wilhelm v. Continental Title Co., 720 F.2d 1173, 1174-77 (10th Cir. 1984) (handicapped persons); Schroder v. Volcker, 646 F. Supp. 132, 135-36 (D. Colo. 1986) (family farmers). In the present case, all that the Plaintiffs have alleged is "a desire to engage in conduct," operating electronic bingo games, "that the § 1985(3) defendant disfavors." See Bray, 506 U.S. at 269. Thus, the Plaintiffs have not alleged the existence of a viable class under section 1985(3).

Missing from the amended complaint is any allegation indicating that the Plaintiffs constitute a "class" for purposes of section 1985 or that McGregor was motivated by animus against that "class." The Plaintiffs are nonprofit corporations. See Am. Compl. ¶¶ 4-20 [Doc. 25]. Plaintiffs do not allege that McGregor, Victoryland, or Sheriff Warren, have acted out of animosity toward some inherent physical characteristic, such as race or gender, possessed by Plaintiffs or their members and recognized by the Eleventh Circuit

as constituting a "class" within the meaning of section 1985. See Chavis v. Clayton County Sch. Dist., 300 F.3d 1288, 1291-93 (11th Cir. 2002) (finding race-based animus actionable under section 1985(2)); Lyles v. City of Riviera Beach, 166 F.3d 1332, 1336-37 (11th Cir. 1999) (finding that section 1985(3) protects women from gender-based conspiracies). In fact, the Plaintiffs do not explicitly identify any common "class" to which they belong or toward which McGregor, Victoryland, or Sheriff Warren, directed any form of invidious discrimination. See Am. Compl. ¶¶ 59-63 [Doc. 25].

From the face of the complaint, the only commonalities among the disparate Plaintiffs are their nonprofit status and a desire to operate electronic bingo games in Macon County at some location other than Victoryland. See Am. Compl, ¶¶ 39, 60. Stated differently, the only class to which the Plaintiffs could belong is one defined by economic status or commercial activity. The Eleventh Circuit has **specifically held** that section 1985 does not provide a remedy for alleged conspiracies based on economic motives. See Morast v. Lance, 807 F.2d 926, 929 n.3 (11th Cir. 1987) (holding that "this section was not intended to provide a remedy for economically motivated conspiracies"). Because the only possible motive that appears on the face of the amended complaint in the present case is economic (allegedly preventing the Plaintiffs from obtaining electronic bingo licenses), the Plaintiffs have failed as a matter of law to state a viable section 1985 claim. See id.

That the Plaintiffs have failed, as a matter of law, to state a viable conspiracy claim under section 1985 is supported not just by the Eleventh Circuit's Morast opinion but also by binding precedent from the United States Supreme Court. The Morast court expressly relied on the Supreme Court's decision in United Brotherhood of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825 (1983), which rejected economic status or activity as a

8

basis for a "class" under 42 U.S.C. § 1985. See Morast, 807 F.2d at 929 n.3 (citing Scott). Scott concerned a section 1985(3) action brought by nonunion workers who, allegedly, had been beaten by union members at the site of a federal construction project awarded to the nonunion workers' employer. See Scott, 463 U.S at 827-28. The district court had found an actionable section 1985(3) conspiracy because it had concluded that the evidence showed a discriminatory animus against nonunion workers, and the court of appeals affirmed the lower court because it found that section 1985 reached conspiracies based on economic activity. See id. at 829-30. However, the Supreme Court reversed and held that section 1985(3) does not reach economically motivated conspiracies. See id. at 830, 837-39.

After observing that the purpose of what is now section 1985(3) was to protect newly freed blacks following the Civil War and perhaps their political supporters, the Supreme Court explained, as follows, its rationale for rejecting expansion of section 1985 to include economic-based classes or conspiracies:

> [W]e find no convincing support in the legislative history for the proposition that the provision was intended to reach conspiracies motivated by bias towards others on account of their *economic* views, status, or activities. Such a construction would extend § 1985(3) into the economic life of the country in a way that we doubt that the 1871 Congress would have intended when it passed the provision in 1871.

Id. at 837. The Scott Court then considered the consequences of a contrary ruling and soundly rejected such an outcome. The Court reasoned as follows:

> Moreover, if anti-union, anti-nonunion, or anti-employer biases represent the kinds of animus that trigger § 1985(3), there would be little basis for concluding that the statute did not provide a cause of action in a variety of other situations where one economic group is pitted against another, each having the intent of injuring or destroying the economic health of the other. We think that such a construction of the statute, which is at best only

9

arguable and surely not compelled by either its language or legislative history, should be eschewed and that group actions generally resting on economic motivations should be deemed beyond the reach of § 1985(3). Economic and commercial conflicts, we think, are best dealt with by statutes, federal or state, specifically addressed to such problems, as well as by the general law proscribing injuries to persons and property.

Id. at 839.  Consequently, the Supreme Court held that "conspiracies motivated by economic or commercial animus" do not satisfy the class-based animus requirement for a claim under section 1985(3).  Id. at 838.

The Scott decision controls the outcome in the present case because the Plaintiffs seek redress under section 1985(3) for what is actually a commercial dispute between would-be competitors.  As discussed, the Plaintiffs do not allege that the purported conspiracy was motivated by any racial animus or by any other suspect consideration.  The only motive that can be gleaned from the face of the amended complaint is one based on an economic or competitive motive--to limit the Plaintiffs' ability to obtain bingo licenses--but that is precisely the type of commercial dispute that the Supreme Court has held not protected.  See Scott, 463 U.S. at 838-39.  Therefore, dismissal of the Plaintiffs' 42 U.S.C. § 1985(3) claim is required under Scott as well as numerous decisions by the federal district and appellate courts applying the Scott opinion.

Since Scott, the lower federal courts, relying on the Supreme Court's decision, have consistently disapproved of section 1985 claims alleging conspiracies directed at participants in a variety of economic or other activities.  See Goldberg v. Cablevision Sys. Corp., 193 F. Supp. 2d 588, 599 (E.D.N.Y. 2002) (citing Scott in rejecting section 1985(3) claim by member of class of "public access channel programmers"); Steinert v. The Winn Group, Inc., 83 F. Supp. 2d 1234, (D. Kan. 2000) (citing Scott and rejecting 1985(3) claim

by plaintiff asserting membership in class of employees allegedly recruited by defendant and induced into signing adhesive contracts by employer); Schroder v. Volcker, 646 F. Supp. 132, 135-36 (D. Colo. 1986) (citing Scott and holding family farmers did not constitute a protected class under section 1985).  For example, the Fifth Circuit has rejected a 1985(3) claim premised on animus toward a class consisting of "multi-family developers."  Bryan v. City of Madison, 213 F.3d 267, 276 (5th Cir. 2000) (citing Scott).  The Seventh Circuit has found no actionable conspiracy claim under section 1985 by owners of property crossed by a particular sewer line; the appeals court rejected the plaintiff's purported "trunk sewer class" and found no identifiable class for purposes of section 1985(3).  See Bowman v. City of Franklin, 980 F.2d 1104, 1108-09 (7th Cir. 1992) (citing Scott).  Based on Scott and its progeny, the Seventh Circuit has also rejected, as a class under section 1985(3), a group consisting of "County employees who worked overtime and who submitted requests for overtime pay."  Munson v. Friske, 754 F.2d 683, 695-96 (7th Cir. 1985) (citing Scott and cases from the Second and D.C. Circuits).  Earlier, the Second Circuit had found no viable section 1985(3) conspiracy claim because the plaintiffs' supposed class, over-assessed Syracuse property taxpayers, was purely economic in nature.  See 423 South Salinas St., Inc. v. City of Syracuse, 742 F.2d 26, 27-28 (citing Scott).  In addition, as previously noted, our own circuit has also followed Scott and held that section 1985 does not encompass purported conspiracies stemming from economic or commercial motives.  See Morast v. Lance, 807 F.2d 926, 929 n.3 (11th Cir. 1987) (citing Scott).

   Other courts have reached similar conclusions without reference to the Scott decision.  Prior to the United States Supreme Court's decisions in Scott and Bray, at least

11

four federal courts of appeal had disapproved of section 1985(3) conspiracy claims brought by plaintiffs having membership in classes defined not by any inherent, personal characteristics but, rather, by economic standing, business pursuits, or other mutable status. See Carchman v. Korman Corp., 594 F.2d 354, 356 (3d Cir. 1979) (rejecting tenant organizers as a class protected under section 1985(3)); Lessman v. McCormick, 591 F.2d 605, 608 (10th Cir. 1979) (rejecting bank debtor as member of protected class); Bova v. Pipefitters & Plumbers Local 60, 554 F.2d 226, 227-28 (5th. Cir. 1977)[1] (rejecting section 1985(3) claim by nonunion member); Morgan v. Odem, 552 F.2d 147, 149 (5th Cir. 1977) (rejecting 1985(3) claim because "only class into which plaintiffs allege they fall is class of 'newcomers' to their particular parish"); Bricker v. Crane, 468 F.2d 1228, 1222 (1st Cir. 1972) (rejecting section 1985(3) claim by doctor alleging membership in "class of physicians who had been discriminated against because of their testimony in malpractice cases"). More recently, the Sixth Circuit has held that "small telephone companies" do not constitute a class for purposes of section 1985(3). See National Communication Sys., Inc. v. Michigan Pub. Serv. Comm'n, 789 F.2d 370, 374 (6th Cir. 1986). Thus, the federal courts have long declined to extend the coverage of 42 U.S.C. § 1985(3) to alleged conspiracies against those, such as Plaintiffs in the instant case, who "are not members of a discrete and insular minority." See id.

In sum, the caselaw from the Supreme Court, the Eleventh Circuit, its sister circuits, and the federal district courts, overwhelmingly establishes that the Plaintiffs in the present

---

[1] The Eleventh Circuit has adopted as controlling authority the decisions of the former Fifth Circuit rendered prior to October 1, 1981. See Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc). Therefore, both the Bova and Morgan decisions are binding precendent.

12

case have failed to state a viable section 1985(3) claim against McGregor. The Plaintiffs have not alleged any invidious, class-based animus, and the allegations in the amended complaint cannot support the existence of any "class" protected under section 1985. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). On the face of the complaint, the alleged actions of McGregor, Victoryland, and Sheriff Warren, were not motivated by any invidious hatred or desire to harm Plaintiffs because of their membership in some suspect or quasi-suspect class. At most, any actions were motivated by a desire to protect economic interests, which does not give rise to a claim under section 1985(3). See United Brotherhood of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 838-39 (1983); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1537 (9th Cir. 1992) ("If APC and the individual defendants conspired to harass plaintiff, they did so because they perceived that Sever's actions were harmful to APC's economic interests."); Morast v. Lance, 807 F.2d 926, 929 n.3 (11th Cir. 1987); Goldberg v. Cablevision Sys. Corp., 193 F. Supp. 2d 588, 599 (E.D.N.Y. 2002). The Plaintiffs have simply failed to allege the necessary element of class-based animus in support of their claim, and the allegations in the complaint show that Plaintiffs cannot prevail in light of the controlling substantive law. Therefore, the Plaintiffs have failed to state a claim upon which relief can be granted, and the 42 U.S.C. § 1985(3) claim against McGregor should be dismissed under Federal Rule of Civil Procedure 12(b)(6). See Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308-09 (11th Cir. 2006); Snow v. DirecTV, Inc., 450 F.3d 1314, 1319-22 (11th Cir. 2006).

**B.      Plaintiffs' Claim Is Due To Be Dismissed Pursuant to the Intracorporate Conspiracy Doctrine.**

Plaintiffs' claim is also barred pursuant to the intracorporate conspiracy doctrine. While the amended complaint purports to assert a claim against McGregor in his personal capacity and as an agent for Victoryland, the amended complaint alleges only that McGregor is the present and majority stockholder of Victoryland.  See Am. Comp. ¶ 22 [Doc. 25].  Nowhere do Plaintiffs allege that McGregor was acting in any capacity other than in his capacity as President of Victoryland or that he undertook any actions in his individual capacity.

Under the intracorporate conspiracy doctrine, the agents of a corporation are deemed legally incapable of conspiring with themselves or with the corporation.  Resting upon basic agency principles, the doctrine provides that the actions of corporate agents are attributed to the corporation.  In this Circuit, the intracorporate conspiracy doctrine has been applied to bar claims arising under section 1985(3).  Hollman v. Jacksonville Housing Auth., 2007 WL 245555 at *3 (11th Cir. January 30, 2007); Kirwin v. Price Communications Corp., 391 F.3d 1323, 1326 (11th Cir. 2004); Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001); Dickerson v. Alachua County Commission, 200 F. 3d 761, 767 (11th Cir. 2000).  Accordingly, the Plaintiffs' claim against McGregor is due to be dismissed.

**CONCLUSION**

The Court should dismiss the Plaintiffs' 42 U.S.C. § 1985(3) claim against McGregor for failure to state a claim upon which relief can be granted because the Plaintiffs have failed to allege all of the elements necessary for a viable section 1985(3) claim.  Race or

class-based animus is an essential element of a section 1985(3) claim but the Plaintiffs have not alleged any animus and no class-based animus appears on the face of the amended complaint. Plaintiffs' claim against McGregor is also due to be dismissed as a matter of law pursuant to the intracorporate conspiracy doctrine. For these reasons, the Plaintiffs have failed to state a claim upon which relief can be granted, and this Court should grant Milton McGregor's Motion to Dismiss.

           Respectfully submitted,

           s/John M. Bolton, III
           s/Charlanna W. Spencer

           Attorneys for Defendant,
           Milton McGregor

           John M. Bolton, III (ASB-0999-N68J)
           Charlanna W. Spencer (ASB-6860-R62C)
           Sasser, Bolton, Stidham & Sefton, P.C.
           100 Colonial Bank Boulevard, Suite B201
           Montgomery, AL 36117
           (334) 532-3400 Phone
           (334) 532-3434 Fax
           jbolton@sasserlawfirm.com
           cspencer@sasserlawfirm.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 25, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert K. Spotswood, Esq.
Michael T. Sansbury, Esq.
Fred D. Gray, Esq.
Fred D. Gray, Jr., Esq.
J. Mark White, Esq.
Augusta S. Dowd, Esq.
Peter J. Tepley, Esq.
Khristi Doss Driver, Esq.

And I certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

    None.

                                            s/John M. Bolton, III
                                            John M. Bolton, III (ASB-0999-N68J)
                                            Sasser, Bolton, Stidham & Sefton, P.C.
                                            100 Colonial Bank Boulevard
                                            Suite B201
                                            Montgomery, AL 36117
                                            (334) 532-3400 Phone
                                            (334) 532-3434 Fax
                                            jbolton@sasserlawfirm.com