**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **HOPE FOR FAMILIES & COMMUNITY SERVICE, INC.; BEULAH MISSIONARY BAPTIST CHURCH; E. D. NIXON APARTMENTS, INC.; MCRAE PROSTATE  CANCER AWARENESS FOUNDATION; MILSTEAD  COMMUNITY CENTER, INC.; NCO NILE CLUB; NEW ELAM MISSIONARY BAPTIST CHURCH, NOTASULGA HIGH SCHOOL PTSA; SHORTER COMMUNITY DEVELOPMENT, INC.; SHORTER LODGE #533; SHORTER VOLUNTEER FIRE DEPARTMENT; SOJOURNER TRUTH CHAPTER #265 OES, SWEET GUM AME ZION CHURCH; TABERNACLE BAPTIST CHURCH; TUBMAN GARDENS, INC.; TUSKEGEE MACON COUNTY COMMUNITY FOUNDATION, INC.; TUSKEGEE NATIONAL ALUMNI ASSOCIATION,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) ) **CASE NO. 3:06-CV-01113-WKW** |
| **DAVID WARREN, in his official capacity as the SHERIFF OF MACON COUNTY,** | ) ) ) |
| **Defendant.** | ) |

**<u>DAVID WARREN'S ANSWER TO AMENDED COMPLAINT</u>**

COMES NOW David Warren ("Defendant Warren", or "Sheriff Warren"), sued in his

official capacity as the Sheriff of Macon County, Alabama, by and through its counsel of

record, and hereby answers each numbered paragraph of the Amended Complaint filed in

the above-captioned action and states as follows:

Except to the extent expressly, specifically and unambiguously admitted herein, Defendant denies each and every allegation contained in the Complaint and demands strict proof thereof.

1.    The allegations contained in paragraph 1 of the Complaint are legal conclusions that do not call for a response by Sheriff Warren. Defendant Warren admits that the Plaintiffs seek relief against him under the laws and statutes cited and against other defendants as set forth in the amended complaint.  Sheriff Warren denies violation of 42 U.S.C. § 1983.  Defendant Warren denies violation of 42 U.S.C. § 1985(3), conspiracy to deprive Plaintiff charities of equal protection of the laws.  Sheriff Warren denies violation of any law or statute, and denies that Plaintiffs are entitled to any relief.

2.    Defendant Warren admits that Plaintiffs purport to bring this action under the cited statutes.  Inasmuch as the Plaintiffs' allegations state conclusions of law, no further response to the allegations of Paragraph 2 is required.

3.    Defendant Warren admits that Plaintiffs allege that venue is proper under the cited statutes.  Inasmuch as the Plaintiffs' allegations state conclusions of law, no further response to the allegations of Paragraph 3 is required.

**PARTIES**

4.    Defendant is without sufficient information  upon which to either admit or deny the material allegations in paragraph 4 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

5.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 5 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

2

6. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 6 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

7. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 7 and, therefore, denies the same and demands strict proof thereof.

8. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 8 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

9. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 9 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

10. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 10 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

11. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 11 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

12. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 12 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

13. Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 13 of the amended complaint, and, therefore, denies

the same and demands strict proof thereof.

14.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 14 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

15.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 15 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

16.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 16 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

17.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 17of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

18.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 18 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

19.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 19 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

20.    Defendant is without sufficient information upon which to either admit or deny the material allegations in paragraph 20 of the amended complaint, and, therefore, denies the same and demands strict proof thereof.

21.    Defendant Warren admits that he is a citizen and resident of Macon County,

Alabama and that he is the Sheriff of Macon County.

22.    The allegations of paragraph 22 of the amended complaint do not pertain to Sheriff Warren.

23.    The allegations of paragraph 23 of the amended complaint do not pertain to Sheriff Warren.

## FACTUAL BASIS

24.    Defendant Warren admits that Amendment 555 of the Constitution of the State of Alabama provides for "local" constitutional amendments and pursuant to Amendment 555, a proposed constitutional amendment that affects only one county can be adopted as a valid part of the Constitution by a majority vote of the affected county. Defendant further admits, upon information and belief, that through this type of amendment, the operation of bingo gaming facilities has been authorized in various counties throughout the state.

25.    Defendant Warren admits the allegations of paragraph 25 of the Amended Complaint.

26.    Defendant Warren admits the allegations of paragraph 26 of the Amended Complaint.

27.    Defendant denies each and every allegation of paragraph 27 of the Amended Complaint and demands strict proof thereof.

28.    Defendant denies each and every allegation in paragraph 28 of the Amended Complaint and demands strict proof thereof.

29.    Defendant admits that on or about December 5, 2003, he promulgated the

"Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama (hereinafter, "Rules" or "Original Rules")." Defendant states that the Rules is a written document and speaks for itself. Sheriff Warren denies that the Original Rules were primarily drafted by Attorney Fred D. Gray, Jr. and demands strict proof thereof.

30.     With respect to the allegations contained in paragraph 30 of the Amended Complaint, Sheriff Warren admits that the Original Rules are a written document and speaks for itself. The remainder of the allegations contained in paragraph 30 of the Amended Complaint are legal conclusions that do not call for a response by Defendant Warren.  To the extent that a response is deemed to be required, Sheriff Warren denies the allegations and demands strict proof thereof.

31.     With respect to the allegations of paragraph 31 of the Amended Complaint, Defendant Warren admits that at the time the Original Rules were promulgated, the only bingo gaming facility in Macon County was VictoryLand.  Defendant Warren denies that the first class B Bingo License was issued to the Tuskegee Human and Civil Rights Multicultural Center.  To the extent that the balance of paragraph 31 calls for a response from Defendant Warren, said Defendant denies each and every such allegation and demands strict proof thereof.

32.     Sheriff Warren denies the allegation of paragraph 32 of the Amended Complaint that his implementation of the Original Rules ensured that VictoryLand would remain the only "qualified location" for the conduct of electronic bingo. Sheriff Warren admits that the Original Rules required a "qualified location" to be inspected and approved by the Sheriff and that a facility would have to be constructed and visually inspected by him to receive approval. Sheriff Warren further avers that the Original Rules are a written

6

document and speak for itself. The balance of paragraph 32 contains legal conclusions that call for no response from this Defendant.  To the extent that a response is required, Sheriff Warren denies each such allegation and demands strict proof thereof.

33.    With respect to the allegations of paragraph 33 of the Amended Complaint, Defendant Warren admits that on or about June 2, 2004, he promulgated the "First Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama ("First Amended Rules")."  Defendant states that the First Amended Rules is a written document and speaks for itself. The Defendant denies the remaining allegations contained in paragraph 33 and demands strict proof thereof.

34.    Defendant Warren admits that he published the First Amended Rules in The Tuskegee News on June 10, 2004.  Defendant states that the First Amended Rules is a written document and speaks for itself. Defendant states that he is without sufficient information to admit or deny the remaining allegations contained in paragraph 34, and, therefore, denies the same and demands strict proof thereof.

35.    With respect to the allegations of paragraph 35 of the Amended Complaint, Defendant Warren admits that on or about January 6, 2005, he promulgated the "Second Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama "(Second Amended Rules")."  Defendant states that the Second Amended Rules is a written document and speaks for itself. Defendant denies the remaining allegations of paragraph 35 of the Amended Complaint and demands strict proof thereof.

36.    With respect to the allegations of paragraph 36 of the Amended Complaint, Defendant Warren states that the Second Amended Rules is a written document and speaks

for itself.  Defendant denies the material allegations contained in paragraph 36 of the Amended Complaint and demands strict proof thereof.

37.    Defendant denies the allegation contained in paragraph 37 of the Amended Complaint and demands strict proof thereof.

38.    With respect to the allegations contained in paragraph 38 of the Amended Complaint, Defendant Warren denies that he received application packages from the Charities for Class B Bingo Licenses.  Defendant Warren admits that he has not issued Class B Bingo Licenses to the Plaintiff Charities.

39.    Defendant is without sufficient information to either admit or deny the material allegations contained in paragraph 39 of the Amended Complaint and, therefore, denies the same and demands strict proof thereof.

40.    Defendant is without sufficient information to either admit or deny the material allegations contained in paragraph 40 of the Amended Complaint and, therefore, denies the same and demands strict proof thereof.

41.    With respect to the allegations contained in paragraph 41 of the Amended Complaint, at this time, Defendant does not recall the particular dates on which he has had conversations with Paul Bracy, Jr.   Defendant admits that he has repeatedly stated to Paul Bracy, Jr., and others, that anyone who satisfied the requirements of the bingo regulations would be issued a license.

42.    Defendant Warren is without sufficient information to either admit or deny the material allegations contained in paragraph 42 of the Amended Complaint and, therefore, denies the same and demands strict proof thereof.

43.    Defendant Warren acknowledges that he has received correspondence from Lucky

8

Palace and does not recall with specificity the date or dates on which he received such correspondence; therefore, Defendant is without sufficient information to either admit or deny the material allegations contained in paragraph 36 of the Amended Complaint and denies the same and demands strict proof thereof.

44.    With respect to the allegations contained in paragraph 44 of the Amended Complaint, Defendant acknowledges that he has received correspondence from Lucky Palace, but Sheriff Warren does not recall with specificity the date or dates on which he received such correspondence; thus, Sheriff Warren is without sufficient information to either admit or deny the material allegations contained in paragraph 44 of the Amended Complaint and denies the same and demands strict proof thereof.  At all times pertinent hereto, the effective date of the First Amended Rules were communicated by publication in The Tuskegee News.

45.    With respect to the allegations contained in paragraph 45 of the Amended Complaint, Defendant admits that he met with Paul Bracy, Jr. on a few occasions and received several telephone calls from him.  Defendant is unable to recall with specificity the date or dates on which such conversations may have taken place.  Therefore, Defendant is without sufficient information to either admit or deny the material allegations contained in paragraph 45 of the Amended Complaint and denies the same and demands strict proof thereof.

46.    With respect to the allegations contained in paragraph 46 of the Amended Amended Complaint, Sheriff Warren acknowledges that he has received correspondence from Paul Bracy, Jr., but Defendant Warren does not recall with specificity the date or dates on which he received correspondence from Paul Bracy, Jr.   Defendant Warren is without sufficient information at this time to respond to the material allegations contained in paragraph 46 of the Amended Complaint and, therefore, denies the same and demands strict proof thereof.

Defendant Warren admits that he did not sign any statement that purports to limit the authority delegated to him by the Legislature and the citizens of Macon County pursuant to Amendment No. 744.

47.    With respect to the allegations contained in paragraph 47 of the Amended Complaint, Defendant admits that he sent Paul Bracy, Jr. a letter dated August 5, 2004.  The letter is a written document and speaks for itself.   Defendant denies the remaining material allegations in paragraph 47 of the Amended Complaint and, therefore, denies the same and demands strict proof thereof.

48.    Sheriff Warren denies the allegations contained in paragraph 48 of the Amended Complaint and demands strict proof thereof.  Defendant Warren admits that Lucky Palace has not constructed a building and has not met the requirements for a qualified location to conduct bingo.

49.    Defendant admits, as alleged in paragraph 49 of the Amended Complaint, that he promulgated the Second Amended Rules on January 6, 2005.  Defendant denies the remaining material allegations contained in paragraph 49 of the Amended Complaint and demands strict proof thereof.

50.    Defendant admits, as alleged in paragraph 50 of the Amended Complaint, that Pebblin Warren is his wife and that she was elected to the Alabama House of Representatives in 2005.  Defendant admits, upon information and belief, that Representative Warren introduced HB 17.  Defendant states that HB 17 is a written document and speaks for itself.   Defendant denies the remaining material allegations and demands strict proof thereof.

51.    Defendant Warren acknowledges that he has received correspondence from Paul Bracy, Jr., but does not recall with specificity the date or dates on which he received

correspondence from Paul Bracy, Jr.   Therefore, Defendant Warren is without sufficient information at this time to respond to the material allegations contained in paragraph 51 of the Amended Complaint and denies the same and demands strict proof thereof.   Defendant Warren admits that neither the Original Rules nor any amendments thereto provide for pre-approval as requested by Lucky Palace.   Defendant Warren further admits that he did not pre-approve any application of Lucky Palace.

52.   Defendant Warren denies the allegations contained in paragraph 52 of the Amended Complaint and demands strict proof thereof.

## COUNT I
### (Violation of Equal Protection Clause)

53.   Defendant Warren adopts and incorporates its answers to paragraphs 1 through 52 of the Amended Complaint as if the same were set forth here *in extenso*.

54.   Defendant Warren denies the allegations contained in paragraph 54 of the Amended Complaint and demands strict proof thereof.

55.   Defendant Warren is without sufficient information to either admit or deny whether the charities are Macon County nonprofit organizations.   Defendant denies the remaining allegations contained in paragraph 55 of the Amended Complaint and demands strict proof thereof.

56.   Defendant Warren denies the allegations contained in paragraph 56 of the Amended Complaint and demands strict proof thereof.

57.   Defendant Warren denies the allegations contained in paragraph 57 of the Amended Complaint and demands strict proof thereof.

58.    Defendant Warren denies the allegations contained in paragraph 58 of the Amended Complaint and demands strict proof thereof.

59.    Defendant Warren adopts and incorporates his answers to paragraphs 1 through 58 of the Amended Complaint as if the same were set forth here *in extenso*.

60.    Defendant Warren denies each and every material allegation of paragraph 60 of the Amended Complaint and demands strict proof thereof.

61.    Defendant Warren denies each and every material allegation of paragraph 61 of the Amended Complaint and demands strict proof thereof.

62.    Defendant Warren denies each and every material allegation of paragraph 62 of the Amended Complaint and demands strict proof thereof.

63.    Defendant Warren denies each and every material allegation of paragraph 63 of the Amended Complaint and demands strict proof thereof.

FURTHERMORE, Defendant Warren denies that Plaintiffs are entitled to any of the relief as requested in the *ad damnum* clause of the Amended Complaint and demands strict proof thereof.

## AFFIRMATIVE DEFENSES

The Defendant states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiffs.  The Defendant reserves the right to assert other defenses as discovery proceeds.

## <u>FIRST DEFENSE</u>

The Amended Complaint fails to state a cause of action against Defendant Warren upon which relief may be granted.  Additionally and specifically Count II (Conspiracy to Deprive the

Plaintiffs of the Equal Protection of the Laws) fails to state a claim upon which relief can be granted and is due to be dismissed.

## SECOND DEFENSE

Defendant Warren denies that he was guilty of any wrongdoing, error, act, or omission that may have caused damages to Plaintiffs.

## THIRD DEFENSE

Defendant Warren pleads the general issue.

## FOURTH DEFENSE

Defendant Warren avers that he is not guilty of any violation of the Plaintiffs' constitutional rights.

## FIFTH DEFENSE

The Plaintiffs lack standing to bring this action.

## SIXTH DEFENSE

Defendant Warren denies that any of his actions were arbitrary or capricious.

## SEVENTH DEFENSE

Subject matter jurisdiction is lacking in this action because Plaintiffs' claim is not yet ripe for adjudication and/or is moot.

## EIGHTH DEFENSE

Plaintiffs' claim is barred because no claim or controversy is presented in this case.

## NINTH DEFENSE

Plaintiffs' claims are barred because a decision in this matter would not affect the rights of the Plaintiffs in this case.

## TENTH DEFENSE

Plaintiffs' Equal Protection claim is barred because Plaintiffs cannot show that the bingo rules at issue are not rationally related to a legitimate government interest.  Plaintiffs' claim is also barred because Plaintiffs have not and cannot show that Defendant's actions were triggered by a discriminatory motive or purpose.

## ELEVENTH DEFENSE

Defendant Warren denies that Plaintiffs are entitled to any judgment against him, or for any relief whatsoever.

## TWELFTH DEFENSE

The Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to exhaust their administrative remedies.

## THIRTEENTH DEFENSE

Defendant Warren avers that all actions were taken in good faith.

## FOURTEENTH DEFENSE

The Defendant pleads immunity under both the Federal and State Constitutions as well as Statutory and Common Law immunity.

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendant is entitled to discretionary function immunity, sovereign immunity, and qualified good faith immunity

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendant is entitled to absolute immunity pursuant to the Eleventh Amendment. See U.S. Constitution, Amendment XI.

## SEVENTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendant is entitled to absolute immunity pursuant to Article I, § 14 of the Alabama Constitution.

## EIGHTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendant is entitled to immunity pursuant to ALA. CODE § 6-5-338.

## NINETEENTH DEFENSE

The Amended Complaint and each count thereof is barred by the applicable statute of limitations.

## TWENTIETH DEFENSE

Any equitable or declaratory relief sought by the Plaintiffs is barred by the doctrines of waiver, estoppel, laches, or unclean hands.

## TWENTY-FIRST DEFENSE

Defendant Warren avers that his actions were based on a rational basis and legitimate governmental interest.

## TWENTY-SECOND DEFENSE

All of the actions taken by Sheriff Warren with reference to the operation, management and control of Bingo in Macon County, Alabama were actions taken by him in accordance with the authority conferred upon him by the Constitution of the State of Alabama and the laws of the State of Alabama, specifically including but not limited to the authority conferred upon him as Sheriff of Macon County by Amendment 744 to the Constitution of the State of Alabama. Said amendment was ratified by the voters of Macon

County, Alabama in a referendum held on November 4, 2003. None of said actions taken by Sheriff Warren were arbitrary or capricious. At all times pertinent hereto, there was and continues to be a rational basis for all of said actions taken by Sheriff Warren. The actions taken by Sheriff Warren were not intended to, and did not have the effect of denying to the Plaintiffs any constitutional rights which the plaintiffs may have under the constitution and laws of the United States of America.

All of said actions taken by Sheriff Warren with reference to the operation, management, and control of bingo in Macon County were taken by his considering the history, economic conditions, and racial conditions that existed in Macon County. Said actions were taken upon by his considering the reasons why the residents of Macon County, Alabama voted overwhelmingly in a referendum passing Amendment 744 of the Constitution of the State of Alabama. The history and conditions includes but are not limited to the following:

1.    Macon County, Alabama is in the eastern part of what is called the Black Belt in the State of Alabama. The residents of this county for many years have been overwhelmingly African Americans. According to the U.S. Census Bureau, in 2005, the population of Macon County was 22,810. African American constituted 82.8 percent of the total population in the county.

2.    For many years, African Americans in Macon County were discriminated against and were denied their constitutional rights as guaranteed by the Fourteenth and Fifteenth Amendments to the United States Constitution. In order to rectify these conditions, African Americans filed lawsuits and obtained the aid of this Court, and other courts, to rectify the denial of constitutional rights. This Court and other federal courts have

16

granted protection for African Americans living in Macon County in the following areas as indicated by the following decisions:

     a.    protection of the right to vote, *Gomillion v Lightfoot*, 364 U. S. 81 S. Ct. 125, 167 Supp. 405, 270 F.2d 594 (1960);

     b.    protection of the right to obtain a non discriminatory education, Lee *vs. Macon County Board of Education*, 221 F. Supp 297 (1963); 231 F. Supp 743 (1964); 429 F.2d 1218; 448 F.2d 746, appeal after remand, 455 F.2d 978 ;453 F. 2d 524; 453F. 2d 1104; 482 F. 2d 1253, appeal after remand; 498 F. 2d 1090; 221 F. Supp 297, supplemental 231 F. Supp. 743; 253 F. Supp 727; 2267 458 aff. *Wallace v. U.* S., 88 S. Ct. 415;

     c.    protection of the right to participate in the administration of federal agricultural programs, James *H. M. Henderson, et al. v ASCS, Macon County Alabama, et al.,* 392 F. 2d 531 (1969); 317 F. Supp. 430 (1970);

     d.    protection of the right to serve on civil jury cases, *William P. Mitchell, et al. v. Edgar Johnson, et al.,* 250 F. Sup. 117 (1966);

     e.    protection of the prevention of the misuse of healthcare, *Pollard, et al. v United States of America*, Middle District of Ala., Case No. 4126-N (1975). 384 F. Supp. 304.

     3.    The economic conditions in Macon County, Alabama have been adversely affected by African Americans having been denied their constitutional rights over a period of many years.  Macon County is statistically located with Interstate Highway 85 running Northeast and Southwest; U.S. Highway 29 North and South and U. S. Highway 80 running East and West, and State Highway 14 running East and West.  It is also served by the CSX Railroad Company coming through.  In addition, it is the home of Tuskegee University and has substantial human resources with a high educational level of African Americans who are employed at Tuskegee University and the Tuskegee Veterans Administration Medical Center.  Notwithstanding the favorable conditions that usually result in economic growth, Macon County has been unable to attract any major industry in the last 50 years with two exceptions.  Lee County on the northeast, Tallapoosa County on the north, Elmore County

on the northwest, Montgomery County on the west, are enjoying and have enjoyed a flourishing  economic growth but none of these industries have elected to locate in Macon County, Alabama.

4.    Because of the lack of industry, the lack of jobs, and the lack of a base for financial educational support, the residents of Macon County were faced with the problem in the early 1980s of their schools being closed.  Notwithstanding the fact that the residents of Macon County have at all times voted to increase ad valorem taxes for its schools, they did so when many counties around it failed to do so. The ad valorem taxes increased to the maximum allowed by law, was insufficient to take care of the financial needs of the schools.  In addition, two large property owners in the county, Tuskegee University and the Tuskegee Veterans Administration Medical Center were and are tax exempt. Thus, the residents of Macon County were faced with finding some ways and means of keeping the schools open, obtaining revenue to carry on governmental operations, find jobs for its residents, and to assist charitable organizations in the county in carrying out their objectives and purposes.  This condition developed to an educational crisis when the Board of Education of Macon County was unable to pay its teachers in November 1982. The immediate crisis was tentatively averted when the Superintendent of the Utilities recommended and the Utilities Board of the City of Tuskegee loaned $100,000 to the Macon County Board of Education so it could pay its teachers.  This was only a temporary solution.

5.    The residents of Macon County, faced with these problems, began to seek ways and means of raising revenue to remedy this situation.  The governmental agencies in the county established the Macon County Council of Governments, (Council of

Governments) which consisted of elected and appointed officials in Macon County. That included the members of the Macon County Commission, the Mayor and members of the City Council of the City of Tuskegee, the Mayor and members of the Town Council of Notasulga, the Superintendent and the Macon County Board of Education, and Tuskegee University. The Council of Governments then proceeded to discuss a solution to the problem. As a result of their discussions, there were four items that they considered: (1) an occupational tax; (2) increase in sale taxes; (3) increase in ad valorem taxes, and (4) give the people an opportunity to vote on legalizing gambling in Macon County by establishing a Racing Commission and a dog track. After lengthy discussions between the Council of Governments and among governmental entities belonging thereto, it was decided that a public meeting would be held. It was proposed that the people of Macon County decide if they would want to vote on a constitutional amendment that would permit legalizing gambling in Macon County, Alabama by establishing of a paramutuel dog track. A public meeting was held. A large group of people attended. The proposal was presented and they voted seventy-seven percent (77%) in favor of requesting the legislative delegation to have introduced into the Alabama Legislature a bill that would permit paramutel betting on dog racing in Macon County and giving the people the right to vote on that issue prior to its effectiveness.

6.     Act No.83-575 was passed by the Alabama Legislature, thus giving the people of Macon County an opportunity to vote on whether to have legalized gaming in Macon County. A referendum was held and passed for the creation of a racing commission and the building of a dog track facility in Macon County. The racing commission was established. Upon consideration of proposals that were submitted, a

license to operate a greyhound racing facility was awarded pursuant to the Act to Macon County Greyhound Park with Mr. Milton McGregor as CEO and President.    During the peak performance at Macon County Greyhound Park (Victoryland), it had approximately 800 employees.    From September 18, 1984 to September 30, 2006 Macon County Greyhound Park has paid to the Macon County Racing Commission the sum of $85,974,156.87   to be distributed to the various entities mentioned in the Act.  Fifty One percent (51%) of the amount received by the Commission was disbursed to the Macon County Board of Education.    These funds were used by the Board to pay employee salaries and other general expenses.  The Board also used those funds as security for the construction of a state of the art high school known as Booker T. Washington High School located in Tuskegee.  In addition as a result of charity days established at Macon County Greyhound Park, charities were given the sum of $1,962,629.11.    As a result of the operations at Macon County Greyhound Park, the economic conditions in Macon County improved and Macon County Greyhound Park developed into the largest private employer in the county.    Macon County Greyhound Park, during the time of its existence to date, has proven to be a good corporate citizen.

7.    Subsequent to the opening of Macon County Greyhound Park, the surrounding states of Florida, Georgia, Tennessee, Mississippi, and Louisiana passed laws permitting some form of legalized gambling.    As a result of legalizing gambling in surrounding states, the revenue generated at Macon County Greyhound Park for governmental entities reached an all time low.    During the early part of this decade, employment at the track was substantially reduced and there was talk about the possibility of VictoryLand closing.  The governmental entities in Macon County were concerned about

20

the decline in revenue.   Representative Johnny Ford introduced and the Alabama Legislature passed Amendment No. 744 of the Alabama Constitution.  In a referendum, the people approved said Amendment by 77%.  The purpose of the passage of the said Constitution Amendment and the reason residents of Macon County overwhelmingly voted permitting bingo was for the same reason it had voted in favor of legalizing dog racing in the 80's -- to provide additional revenue to the schools, to increase jobs, to have funds available for charities which would be able to carry out their charitable purposes.

8.    Sheriff Warren did not request the responsibility of promulgating rules and regulations for operating bingo.   The constitutional amendment assigned him those responsibilities.   Said amendment states "The Sheriff shall promulgate rules and regulations for the licensing and operation of bingo games within the county."  It further states "The Sheriff shall insure compliance pursuant to any rule or regulation..."  All actions he has taken with reference to bingo have been pursuant to that authority.

9.    Immediately after the referendum passed, and having no prior experience with regulating gaming, Sheriff Warren conferred with individuals he deemed appropriate and secured information deemed necessary and appropriate with reference to rules and regulations for conducting bingo. He then drafted the rules and regulations to conduct bingo in Macon County.

10.    The general public in Macon County, including the Plaintiffs  was fully aware of the fact that bingo was authorized to be played in Macon County, Alabama.  They also understood that bingo would be conducted by charities and the charities would have to comply with the rules and regulations promulgated by the Sheriff.

11.   After the rules and regulations promulgated by Sheriff Warren became effective, he issued licenses to operate bingo to every charity that applied for a license and complied with the rules and regulations.  All of those charities indicated in their applications that they entered into a contract with Macon County Greyhound Park to operate bingo for them.

12.   Immediately after the rules and regulations became effective, Plaintiffs could have applied for a Class B License to operate bingo.  If they had so applied, and complied with the rules and regulations, the license would have been granted and they could be operating bingo in Macon County.  Instead, said Plaintiffs waited months before submitting applications and when the applications were submitted they did not comply with the rules and regulations.  The Plaintiffs have not been treated any differently than any of the charities that are now operating bingo.  The criteria for consideration was the same.

13.   At the time Sheriff Warren drafted the rules and regulations for the operation, management and control of bingo in Macon County, he wanted to ensure, among other things, that existing Macon County charities that demonstrated an interest in this opportunity would be considered so they could help people in Macon County; and he wanted to ensure that bingo would not drain resources of his department, detract office personnel and deputies' attention from traditional law enforcement and impede his ability to perform his statutorily imposed duties as Sheriff.  He was unaware of how the public would respond to Bingo.  He wanted to be sure as he drafted the rules and regulations that (1) he would be able to maintain law and order; (2) that all the charities be given an opportunity early on to apply for and be granted an opportunity to conduct bingo pursuant to the Act and, (3) the charities would have the opportunity of selecting the persons, firms or

corporations, who would have the facility to conduct bingo.  Those charities that selected a facility, and followed the rules and regulations were granted a license and are operating bingo in Macon County, Alabama.

14.    The actions taken by Sheriff Warren with reference to bingo were not arbitrary, capricious, nor discriminatory.   Sheriff Warren has not entered into any conspiracy with any one with reference to the operation of bingo in Macon County. He has not denied any rights to the Plaintiffs.   The plaintiffs have had equal opportunities as all other charities to conduct bingo.  Having failed to abide by the rules and regulations, Plaintiffs now seek the aid of this Court to instruct the Sheriff to grant Plaintiffs licenses without complying with the rules and regulations.

15.    Sheriff Warren is willing and able to issue an appropriate bingo license to any charity that applies for such a license and complies with the rules and regulations which have been promulgated pursuant to Amendment 744.

16.    Sheriff Warren will not issue such a license to any such charity which does not comply with the rules and regulations which have been promulgated pursuant to Amendment 744.

## TWENTY-THIRD DEFENSE

The Plaintiffs have not come into this Court with clean hands.  They had an opportunity to comply with the rules and apply for a license to operate bingo immediately after the effective date of the constitutional amendment.  They waited.   Now they want to reap the benefits of the work done by other charities that complied with the rules and regulations.

## TWENTY-FOURTH DEFENSE

Plaintiffs seek to become unjustly enriched by the work of the other charities who have
complied with the rules and regulations.

Respectfully submitted,


_____/ s / _____    Fred D. Gray, Jr.
Fred D. Gray          (GRA022)
Fred D. Gray, Jr.     (GRA044)
Attorneys for Defendant David Warren
Sheriff of Macon County, Alabama

**OF COUNSEL:**

**GRAY, LANGFORD, SAPP, MCGOWAN,**
     **GRAY & NATHANSON**
P.O. Box 830239
Tuskegee, Alabama 36083
(334)727-4830 Telephone
(334)727-5877 Facsimile
fgray@glsmgn.com
fgrayjr@glsmgn.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served upon the following counsel of record via the court's CM/ECF electronic filing system on this the 27th day of April, 2007:

Micahel T. Sansbury, Esq.
Robert K. Spotwood, Esq.
August S. Dowd, Esq.
John M. White, Esq.
Khristi D. Driver, Esq.
Patricia C. Diak, Esq.
Peter J. Tepley, Esq.
William M. Slaughter, Esq.
Charlanna W. Spencer, Esq.
John M. Bolton, III, Esq.

_____/ s / _____ Fred D. Gray, Jr.
OF COUNSEL