**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC.; BEULAH MISSIONARY BAPTIST CHURCH; E.D. NIXON APARTMENTS, INC.; MCRAE PROSTATE CANCER AWARENESS FOUNDATION; MILSTEAD COMMUNITY CENTER, INC.; NCO NILE CLUB; NEW ELAM MISSIONARY BAPTIST CHURCH; NOTASULGA HIGH SCHOOL PTSA; SHORTER COMMUNITY DEVELOPMENT, INC.; SHORTER LODGE # 533; SHORTER VOLUNTEER FIRE DEPARTMENT; SOJOURNER TRUTH CHAPTER #265 OES; SWEET GUM AME ZION CHURCH; TABERNACLE BAPTIST CHURCH; TUBMAN GARDENS, INC.; TUSKEGEE MACON COUNTY COMMUNITY FOUNDATION, INC.; TUSKEGEE NATIONAL ALUMNI ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 3:06-cv-01113-WKW-csc<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY; MILTON MCGREGOR; MACON COUNTY GREYHOUND PARK, INC., | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**SECOND AMENDED COMPLAINT**

1.      This is an action by seventeen Macon County, Alabama, non-profit organizations

("The Charities") against Sheriff David Warren, Milton McGregor, and Macon County

Greyhound Park, Inc. ("VictoryLand").  This Complaint includes claims, pursuant to 42 U.S.C. §

1983, against Defendant Warren for violations of the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution and against all Defendants for a conspiracy to deprive the Charities of the equal protection of the laws.

## JURISDICTION

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically 42 U.S.C. § 1983.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all Defendants reside in this district, all Defendants are subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

## PARTIES

4.      Hope for Families & Community Services, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to prevent abuse and neglect of families and children.

5.      Beulah Missionary Baptist Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

6.      E.D. Nixon Apartments, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is to provide elderly and handicapped persons with housing facilities and services specially designed to meet their physical, social, and psychological needs, and to promote their health, security, happiness, and usefulness.

7.      McRae Prostate Cancer Awareness Foundation is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama. Its mission is

to promote prostate health and awareness, prostate cancer support groups for patients and their families, and research into life-enhancing treatment and an eventual cure for prostate cancer.

8.    Milstead Community Center, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.  Its mission is to improve the economic, civic, and social conditions of the community of Milstead, Alabama.

9.    NCO Nile Club is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.  It is an organization of non-commissioned officers of the Reserve and National Guard units in and around Tuskegee, Alabama.  Its mission is to maintain liaison between officers and enlisted men; to obtain a higher degree of readiness; to discuss, solve, and eliminate problems in the units, in order to further the common good, general welfare, and relations of their community; to bring about civil betterment through grants, donations, guidance, and support; and to aid charitable, educational, and recreational projects through youth groups.

10.    New Elam Missionary Baptist Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

11.    Notasulga High School PTSA is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

12.    Shorter Community Development, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.  Its mission is to establish structured support services for homeless and economically disadvantaged individuals, families, and juveniles so that they may lead lives of self-sufficiency.

13.    Shorter Lodge # 533 is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

14.     Shorter Volunteer Fire Department is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

15.     Sojourner Truth Chapter #265 OES is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.

16.     Sweet Gum AME Zion Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

17.     Tabernacle Baptist Church is a federally-recognized tax-exempt nonprofit religious organization organized and located in Macon County, Alabama.

18.     Tubman Gardens, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.  Its mission is to provide elderly and handicapped persons with housing and services designed to meet their physical, social, and psychological needs and to promote their health, security, happiness, and usefulness.

19.     Tuskegee Macon County Community Foundation, Inc., is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.   Its mission is to bring together human and financial resources to address and solve community problems.

20.     Tuskegee National Alumni Association is a federally-recognized tax-exempt nonprofit organization organized and located in Macon County, Alabama.  Its mission is to foster the ideals of Tuskegee Institute and its founder, Booker T. Washington; to encourage and assist students, graduates, and former students toward the highest development of character and service to mankind; to encourage liberal financial and moral support of Tuskegee Institute and its policies; and to assume and maintain an active national leadership in the promotion and furtherance of Tuskegee Institute.

21.     Defendant David Warren is a citizen and resident of Macon County in the State of Alabama.  Defendant Warren is also the Sheriff of Macon County.

22.     Defendant Milton McGregor is a citizen and resident of Montgomery County in the State of Alabama.  Defendant McGregor is also the President and majority shareholder of Macon County Greyhound Park, Inc.

23.     Macon County Greyhound Park, Inc., is a corporation formed under the laws of the State of Alabama, and its primary place of business is in the State of Alabama.  Macon County Greyhound Park, Inc., does business as VictoryLand.

24.     Gray, Langford, Sapp, McGowan, Gray, Gray & Nathanson, P.C., (hereinafter the "Gray Law Firm") is a professional corporation formed under the laws of the State of Alabama, and its principal place of business is in the State of Alabama.

25.     Fred D. Gray Jr. is a citizen and resident of Macon County in the State of Alabama.  Gray is a shareholder the Gray Law Firm.

26.     Fred D. Gray is a citizen and resident of Macon County in the State of Alabama.  Fred Gray is the father of Fred D. Gray Jr. and is a shareholder in the Gray Law Firm.  Upon information and belief, Fred D. Gray is also a shareholder in Defendant VictoryLand.

## FACTUAL BASIS

27.     Amendment 555 of the Constitution of the State of Alabama provides for "local" constitutional amendments.    Pursuant to Amendment 555, any proposed constitutional amendment that affects only one county can be adopted as a valid part of the Constitution by a majority vote of the affected county.  Through this type of amendment, the operation of bingo gaming facilities has been authorized in various counties throughout the State.

28.     On or about November 4, 2003, the voters of Macon County approved Amendment 744 to the Constitution, which governs the operation of bingo gaming in Macon County, Alabama.  Amendment 744 provides that "the operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes shall be legal in Macon County." *See* Ala. Const. (1901) Amend. 744.  Further, the Amendment provides that the non-profit organization may enter into an agreement with an individual, firm, or a corporation to operate the facility.  Pursuant to Amendment No. 744, the Alabama Legislature delegated the authority to promulgate rules and regulations for the licensing and conduct of bingo games to the Sheriff of Macon County.

29.     Amendment 744 did not limit the number of bingo licenses that could be issued by the Sheriff of Macon County, nor did it restrict the operation of bingo gaming in Macon County to one facility or operator.

30.     Since at least 1992, Fred Gray, Fred Gray Jr., and the Gray Law Firm have represented Defendants VictoryLand and McGregor.  From 1992 to the present, Defendants McGregor and VictoryLand have bestowed at least the following benefits on the Grays and the Gray law firm: (1) legal fees; (2) free travel on aircraft owned or chartered by Defendants McGregor and VictoryLand; and (3) substantial dividend payments to Fred Gray.

31.     On or about November 11, 2003, Defendant McGregor had a conversation with Defendant Warren, the Sheriff of Macon County, about VictoryLand's interest in conducting electronic bingo.  That conversation was conducted in the presence of attorney Fred Gray Jr.  Upon information and belief, Defendant Warren and Defendant McGregor agreed to formulate rules and regulations for the licensing and conduct of bingo games that would allow only non-profit organizations affiliated with VictoryLand to conduct electronic bingo games.

32.    After forming their agreement, Defendants Warren and McGregor had an identical or virtually identical interest in promulgating rules and regulations that favored nonprofit organizations affiliated with VictoryLand.

33.    In pursuit of their common goal, Defendants Warren, McGregor, and VictoryLand retained the same attorney, Fred Gray Jr., to represent them with regard to the formulation of the rules and regulations for the licensing and conduct of bingo games.

34.    On or about December 5, 2003, Defendant Warren, the Sheriff of Macon County, promulgated "Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama" ("Original Rules"), a true and correct copy of which are attached hereto as Exhibit A.  The Original Rules were primarily drafted by attorney Fred Gray Jr.

35.    The Original Rules stated that any Macon County non-profit organization could apply for a Class B Bingo License.  They further provided that "[a] Class B Bingo License shall be issued to an applicant who desires to operate any and all games of bingo . . . at a qualified location for the holder of a Class B License."  The Original Rules defined a "qualified location for the holder of a Class B Bingo License" as a location that, among other things, had a value of $5 million, including the land, building and improvements.  Furthermore, to be a qualified location, the location had to be inspected and approved by the Sheriff.  The Original Rules only required one charity to contract with an operator of a qualified location to host bingo, and there was no maximum number of licenses that could be issued.

36.    The only gaming facility existing in Macon County at the time the Original Rules were promulgated was VictoryLand.  On December 17, 2003—twelve days after the Original Rules were issued—Defendant Warren issued the first Class B Bingo License to the Tuskegee Human and Civil Rights Multicultural Center for the conduct of bingo games at VictoryLand.

Fred Gray is the President of the Tuskegee Human and Civil Rights Multicultural Center and the father and law partner of Fred D. Gray Jr. Defendant McGregor is also an officer of the Tuskegee Human and Civil Rights Multicultural Center. Upon information and belief, Defendant Warren—prior to issuing the Class B Bingo License—did not conduct an investigation into, among other things, the value of VictoryLand or the identity of its owners, as required by the Original Rules.

37.     Defendant Warren's implementation of the Original Rules ensured that VictoryLand would remain the only "qualified location" for the conduct of electronic bingo. The Original Rules required a "qualified location" to be inspected and approved by the Sheriff. Defendant Warren interpreted this rule to require that a facility be constructed and visually inspected by him before receiving approval or disapproval. The Original Rules contained no specifications that, if met, would guarantee approval.

38.     On or about June 2, 2004, Sheriff Warren promulgated an amended set of rules entitled "First Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama" ("First Amended Rules"), a true and correct copy of which are attached hereto as Exhibit B. The First Amended Rules were primarily drafted by Fred Gray, Jr., the attorney for Defendants Warren and McGregor. The First Amended Rules were not publicly disclosed by Sheriff Warren at the time of their promulgation, and there was no opportunity for public comment on the amendments prior to their promulgation.

39.     On June 10, 2004, The Tuskegee News disclosed the existence of the First Amended Rules. The First Amended Rules defined a "qualified location for the holder of a Class B Bingo License" as a location that, among other things, had a value of $15 million, including the land, building and improvements. The First Amended Rules also provided that

"[n]o Class B Licensee shall be authorized to operate bingo at any qualified location . . . unless a minimum of fifteen (15) applicants shall first obtain a Class B License for such location."  This provision will be referred to hereinafter as the "Fifteen License Minimum."

40.     On or about January 6, 2005, Sheriff Warren amended his rules again.   The amended set of rules was entitled "Second Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama" ("Second Amended Rules"), a true and correct copy of which are attached hereto as Exhibit C.  The Second Amended Rules were primarily drafted by Fred Gray Jr., the attorney for Defendants Warren, McGregor, and VictoryLand.

41.     The Second Amended Rules stated that "[a]t no time shall there be issued and outstanding more than sixty (60) Class B Licenses for the operation of bingo in Macon County." This provision will be referred to hereinafter as the "Sixty License Maximum."

42.     Upon information and belief, Sheriff Warren either promulgated the Second Amended Rules with knowledge that VictoryLand already had contractual ties with fifty-nine charities that held licenses, or he immediately issued fifty-nine licenses to charities that were contractually tied to VictoryLand.

43.     On or about July 25, 2005, the Charities submitted Charity Application Packages for Class B Bingo Licenses (hereinafter "Applications") to Sheriff Warren.  To this day, Sheriff Warren has failed to issue Class B Bingo Licenses to the Charities.

44.     The Applications indicated that the Charities intended to conduct bingo at a location owned by Lucky Palace, LLC, a limited liability company organized under the laws of the State of Delaware (hereinafter "Lucky Palace").   Pursuant to their contracts with Lucky

Palace, the Charities were each guaranteed semi-annual payments of $21,000 for operating bingo games at Lucky Palace's location.

45.    When Amendment 744 was approved in November 2003, Lucky Palace embarked on an endeavor to build, own and operate a bingo parlor in Macon County, Alabama.  As of this day, Lucky Palace has hired an experienced management team and licensed a highly visible brand—Planet Hollywood—for its bingo parlor.  To finance the construction of its bingo parlor, Lucky Palace has secured $54 million in financial commitments.  As part of its construction, Lucky Palace plans significant improvements to the local infrastructure, including sewer and water service upgrades, at no cost to Macon County.  Lucky Palace's bingo parlor will create 630 new jobs in Macon County.

46.     In or around January 2004, Paul Bracy, Jr., President of Lucky Palace, was assured by Defendant Sheriff that anyone who met the requirements set forth in the Original Rules would have no problem obtaining a license to operate bingo games in Macon County.

47.    Based on those assurances, Lucky Palace continued its efforts to establish a "qualified location for the holder of a Class B Bingo License" in Macon County by securing capital investments in excess of $5 million and by ensuring that all other requirements in the Original Rules would be met.

48.    On or about June 11, 2004—following the disclosure of the First Amended Rules by the Tuskegee News—Lucky Palace again notified Sheriff Warren by letter of its intention to build, own, and operate a "qualified location for the holder of a Class B Bingo License" in compliance with the Original Rules.  Lucky Palace asked for confirmation that a Class B Bingo License would be issued to a qualified nonprofit organization that desired to operate bingo games at the location if such a location were built.  Sheriff Warren did not respond to the letter.

49.     On or about June 15, 2004, Lucky Palace contacted Sheriff Warren by letter to notify him that it was continuing to operate under the Original Rules.  Stressing to Sheriff Warren that the process of land purchases, site development, environmental assessments, associated legal and consulting fees and architectural renderings were all based on the Original Rules, Lucky Palace inquired as to the impact of the First Amended Rules on Lucky Palace's planned development.  Sheriff Warren did not respond.

50.     On or about July 21, 2004, Bracy and Sheriff Warren met in Sheriff Warren's office to discuss the concerns of the Lucky Palace lenders and investors over the First Amended Rules and any additional changes that may be forthcoming.

51.     On or about July 30, 2004, Bracy sent, for Sheriff Warren's signature, a statement that the First Amended Rules would not be further amended and that, if Lucky Palace complied with the First Amended Rules, there will be no delays or problems in obtaining his approval of its "qualified location for the holder of a Class B Bingo License."  Sheriff Warren did not sign the statement.

52.     On or about August 5, 2004, Sheriff Warren replied by letter to Bracy and stated that he reserved the right to amend the regulations as necessary but did not see any amendments in the foreseeable future.  He further stated that the First Amended Rules governed any bingo operations that were currently in existence or that were to be constructed and completed in the following several months.

53.     On or about November 10, 2004, Lucky Palace submitted an Application for Bingo Operator's License.  The application was denied because, according to Sheriff Warren, the building did not qualify as it was not completed.

54.     On or about November 23, 2004, Lucky Palace sought clarification on what constituted "capital improvements" under the First Amended Rules.  This clarification was to ensure that Lucky Palace could come into compliance with the $15 million requirement for locations in the First Amended Rules.  This also placed Sheriff Warren on notice that the requirements in place at that time would soon be met by Lucky Palace.  Soon thereafter, Sheriff Warren promulgated the Second Amended Rules, which included the Sixty License Maximum.  That Maximum—combined with Fifteen License Minimum and the fact that fifty-nine licenses had already been issued to nonprofit organizations that desired to operate bingo at VictoryLand—foreclosed the operation of bingo games in Macon County at any location other than VictoryLand.

55.     On March 8, 2005, Pebblin W. Warren, the wife of Sheriff Warren, was elected to the Alabama House of Representatives in a special election.  On or about July 18, 2005, Representative Warren submitted HB 17, a bill which sought to amend Amendment 744 to incorporate the Second Amended Rules.  HB 17 was not enacted into law.

56.     On or about August 17, 2005, Lucky Palace sent a letter to Sheriff Warren in which it expressed its concerns over Sheriff Warren's repeated dismissals of efforts to acquire bingo licenses to operate in Macon County.  Pre-approval was again requested by Lucky Palace so that it could begin construction on its location and move towards the operation of a "qualified location for the holder of a Class B Bingo License" in Macon County.  Sheriff Warren did not respond.

57.     On several occasions, during meetings between representatives of Lucky Palace and Sheriff Warren, Sheriff Warren told the representatives that, if the Charities wanted Class B Bingo Licenses, then they would have to sue him.

58.     On December 18, 2006, the Charities filed the instant suit against Sheriff Warren and, on March 2, 2006, moved for leave to add McGregor and VictoryLand as Defendants.  On March 6, 2007, Alabama State Senator Myron Penn submitted SB 92, a bill that—like HB 17 submitted by Representative Warren—sought to amend Amendment 744 to incorporate the Second Amended Rules.  Defendant McGregor has contributed at least $10,000 to Senator Penn's campaigns.

## COUNT I
### (Violation of Equal Protection Clause)

59.     The Plaintiffs fully incorporate Paragraphs 1-58 by reference as if fully set forth herein.

60.     Sheriff Warren, under the color of state law and his authority as Sheriff of Macon County, has intentionally treated the Charities differently from other similarly-situated nonprofit organizations, and there is no rational basis for the difference in treatment.  Accordingly, the Charities have been denied their right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

61.     The Charities are Macon County non-profit organizations.  They have submitted completed applications for Class B Bingo Licenses to Sheriff Warren.  Those applications fulfill all of the requirements of the Original Rules, the First Amended Rules, and the Second Amended Rules.  Accordingly, the Charities are similarly situated to those fifty-nine Macon County non-profit organizations that have been granted Class B Bingo Licenses.

62.     Sheriff Warren has intentionally treated the Charities differently from their similarly-situated counterparts by failing to issue Class B Bingo Licenses to the Charities in a timely fashion.  That different treatment constitutes intentional and arbitrary discrimination in

13

violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. There is no rational basis for that different treatment.

63.    There is no rational basis for the Fifteen License Minimum. There is no rational basis for the Sixty License Maximum. There is no rational basis for issuing fifty-nine of the sixty Class B Bingo Licenses available under the Second Amended Rules to nonprofit organizations who desired to operate bingo games at VictoryLand. There is no rational basis for requiring nonprofit organizations to construct or lease a multi-million dollar facility prior to obtaining a Class B Bingo License.

64.    In addition to lacking a rational basis, the requirements stated in Paragraph 57 are arbitrary, capricious, and intended to discriminate against all nonprofit organizations, including the Charities, that desire to operate bingo at locations other than VictoryLand.

**COUNT II**
**(Conspiracy to Deprive the Plaintiffs of the Equal Protection of the Laws)**

65.    The Plaintiffs fully incorporate Paragraphs 1-64 by reference as if fully set forth herein.

66.    Defendant Warren and Defendant McGregor, in his personal capacity and as an agent for Victoryland, agreed or had an understanding—reached by, through, and with the assistance and influence of Fred Gray, Fred Gray Jr., and the Gray Law Firm—that Defendant Warren would issue rules and regulations for the licensing and operation of bingo in Macon County that would deprive any nonprofit organization, other than a nonprofit organization associated with VictoryLand, of the ability to obtain a license for the conduct of electronic bingo. Accordingly, Defendants McGregor and VictoryLand were jointly engaged with Defendant Warren, a state official, in the deprivation of the Charities' equal protection rights

14

67.     By issuing rules and regulations in accordance with that agreement of understanding, Defendant Warren deprived the Plaintiffs of the equal protection of the laws. Defendant Warren perpetuated that deprivation by issuing the First Amended Rules and the Second Amended Rules.  Defendant Warren further perpetuated the deprivation by refusing to consider the Plaintiffs' applications for Class B Bingo Licenses based on his interpretation of the Original Rules, the First Amended Rules, and the Second Amended Rules.

68.     In addition, Defendant McGregor has taken steps to perpetuate the deprivation by persuading Representative Warren and Senator Penn to submit legislation seeking to amend Amendment 744 to incorporate the Second Amended Rules.

69.     As a result of the deprivation and its perpetuation, the Plaintiffs have been injured in an amount to be proven at trial.

WHEREFORE, the Charities pray that this Court enter judgment against the Defendants as follows:

a.      With regard to Defendant Warren, for appropriate injunctive relief requiring Defendant Warren to, *inter alia*, (1) issue Class B Bingo Licenses to each of the Charities, (2) suspend the Fifteen License Minimum and the Sixty License Maximum, and (3) allow the Charities to operate any and all games of bingo at the Lucky Palace location;

b.      With regard to Milton McGregor and Macon County Greyhound Park, Inc., for damages in an amount to be proven at trial and punitive damages;[1]

c.      For costs, including attorney's fees; and

d.      For such further and additional relief as the Court deems just and appropriate.

---

[1] The Charities do not seek any damages against Defendant Warren.

DATED:  June 8, 2007.

Respectfully submitted,

s/ Michael T. Sansbury
Robert K. Spotswood (SPO 001)
Michael T. Sansbury (SAN 054)
**SPOTSWOOD SANSOM & SANSBURY LLC**
940 Concord Center
2100 Third Avenue North
Birmingham, AL 35203-3329
Telephone:  (205) 986-3620
Fax:  (205) 986-3639
E-mail: rks@spotswoodllc.com
         msansbury@spotswoodllc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred David Gray, Esq.
Fred David Gray Jr., Esq.
Gray, Langford, Sapp, McGowan, Gray & Nathanson
P.O. Box 830239
Tuskegee, AL  36083-0239
E-mail:     fgray@glsmgn.com
            jbibb@glsmgn.com
            fgrayjr@glsmgn.com
            thalia@glsmgn.com

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Khristi Doss Driver, Esq.
Haskell, Slaughter, Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
E-mail:     wms@hsy.com
            pcd@hsy.com
            pt@hsy.com
            kdd@hsy.com

John Mark White, Esq.
Augusta S. Dowd, Esq.
Rebecca DePalma, Esq.
White, Arnold, Andrews & Dowd
2025 Third Avenue, North
Suite 600
Birmingham, AL  35203
E-mail:     mwhite@waadlaw.com
            adowd@waadlaw.com
            rdepalma@waadlaw.com

John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
Sasser, Bolton, Stidham & Sefton PC
PO Box 242127
Montgomery, AL 36124-2127
E-mail:     jbolton@sasserlawfirm.com
            cspencer@sasserlawfirm.com

s/ Michael T. Sansbury
OF COUNSEL

# RULES AND REGULATIONS FOR THE LICENSING AND OPERATION OF
## BINGO GAMES IN MACON COUNTY, ALABAMA

Section 1: Definitions ................................................................................1

Section 2: Operation of Bingo Games in Macon County............................3

Section 3: Bingo Permit Required...............................................................3

Section 4: Application for Permit; Submission; Form; Contents ................3

Section 5: Issuance of Permit......................................................................5

Section 6: Amendments; Applications; Permits .........................................5

Section 7: Contents and Display of Permits................................................5

Section 8: Fee Proceeds .............................................................................6

Section 9: General Regulations; Prizes ......................................................6

Section 10: Records and Accounting ..........................................................7

Section 11: Enforcement and Supervision; Rules; Bonds...........................8

Section 12: Revocation of Permits; Appeal................................................8

Section 13: Effect of Revocation ...............................................................9

Section 14: Appeal of Denial of Permit .....................................................9

Section 15: Severability..............................................................................9

Section 16: Amendments ...........................................................................9



EXHIBIT

A

## MACON COUNTY BINGO REGULATIONS

The following Rules and Regulations For the Licensing and Operation of Bingo Games in Macon County (hereinafter sometimes referred to as "Rules", "Regulations" or "Rules and Regulations") are hereby promulgated by David M. Warren, Sheriff of Macon County, to regulate the issuance of permits or licenses for and the operation of bingo games by certain nonprofit organizations in Macon County, Alabama pursuant to Act. No. 2003-124, Regular Session, 2003, authorizing a referendum on an amendment of the Constitution of Alabama which said referendum was approved by the voters on November 4, 2003.

### Section 1: Definitions

As used herein the following words shall have the following meanings as described herein, unless the context clearly indicates otherwise:

(a)    "Bingo" or "Bingo games" shall mean any game of chance known as bingo, including any bingo game permitted by federal law, (whether or not electronic, computer, or other technologic aids are used in connection therewith) which is played for prizes, including monetary prizes, with cards bearing numbers or other designations, and which the holder of the card covers such numbers or designations when objects, similarly numbered or designated, are drawn or electronically determined, and in which the game is won by the first person covering a previously designated arrangement of numbers or designations on such cards. Nothing herein is intended to prohibit the award of interim or consolation prizes. Electronic, computer or other technologic aids include any machine or device that assists a player or the playing of a bingo game; broadens the participation levels in a common game; facilitates communication between and among bingo locations; or allows players to play a game with or against other players rather than with or against a machine. Examples of electronic, computer or other technologic aids include, but are not limited to, dispensers, readers, telephones, cables, televisions, screens, satellites, bingo blowers, electronic player stations, electronic cards for participants in bingo games, player terminals, central servers containing random number generators for remote player terminals and video displays providing game results in different display modes.

(b)    "Person" shall mean any human being, corporation, partnership, association or other legal entity of any kind whatsoever.

(c)    "Sheriff" shall mean the Sheriff of Macon County, Alabama. Under the Rules and Regulations herein, the Sheriff may designate or otherwise

1

authorize persons of the Macon County Sheriff's Office to perform various duties of the Sheriff set forth herein.

(d)     "Nonprofit organization" shall mean a bona fide organization for charitable, educational, or other lawful purposes which operates without profit to its members and/or which has been classified by the Internal Revenue Service as a tax exempt organization.

(e)     "License holder" shall mean any nonprofit organization that has been issued a bingo license by the Sheriff pursuant to these Regulations.

(f)     "Location" shall mean a building, hall, enclosure, room, or outdoor area that complies with all federal, state and local laws and applicable building and fire codes.

(g)     "Class A Bingo License" shall mean a license issued to an applicant who desires to operate paper card bingo only at a qualified location.

(h)     "Class B Bingo License" shall mean a license issued to an applicant who desires to operate any and all games of bingo as defined hereinabove, at a qualified location.

(i)     "Qualified location" for the holder of a Class A Bingo License shall mean a location, as defined above, which has been inspected and approved by the Sheriff for the conduct of bingo games.

(j)     "Qualified location" for the holder of a Class B Bingo License shall mean a location, as defined above, which has been inspected and approved by the Sheriff for the conduct of bingo games and other lawful activities and for which the license applicant shall submit satisfactory evidence that the location has in place the following at all times that any bingo games are being conducted or operated: (i) public liability insurance in an amount not less than $5,000,000; (ii) if liquor is served, liquor liability insurance in the amount of not less than $1,000,000; (iii) adequate parking for patrons and employees; (iv) onsite security as prescribed by the Sheriff; (v) onsite first aid personnel as prescribed by the Sheriff; (vi) cash or surety bond in an amount not less than $1,000,000; (vii) such accounting procedures, controls and security monitoring as necessary to preserve and promote the integrity of the operation of bingo games and to ensure the protection of the charitable license holder and its patrons; (viii) satisfactory evidence that the owner or owners of the location paid at least $5,000,000 for the land, building and other capital improvements (before depreciation) comprising said location or the value of said land, building and other

2

capital improvements (before depreciation) must be at least $5,000,000; (ix) satisfactory evidence that the location is fully compliant with the Americans with Disabilities Act ("ADA"); and (x) satisfactory evidence that the owner or owners of such location have been residents of the State of Alabama for at least three (3) years or, if the owner is a partnership, association, corporation, limited liability company, or other business entity, satisfactory evidence that those partners, members, or stockholders of such entity that own collectively at least two-thirds (2/3) of the voting rights and equity interests of such entity, are individuals that have been residents of the State of Alabama for at least three (3) years.

(k) "Bingo session" shall mean a consecutive period of time up to 24 consecutive hours during which bingo is played on as many as seven (7) days in a given week. A license holder shall not be limited in the number of bingo sessions it operates during any 24-hour period.

## Section 2:  Operation of Bingo Games in Macon County

The operation of bingo games for prizes or money by nonprofit organizations, as defined herein, shall be allowed in Macon County, pursuant to Amendment No. 744 to the Constitution of Alabama and Act No. 2003-124, provided that the nonprofit organization shall first obtain a bingo license (Class A or B) as set out herein, and abide by all of the Regulations duly promulgated by the Sheriff.

## Section 3:  Bingo License Required

No nonprofit organization, as defined herein, shall be allowed to operate a bingo game unless the Sheriff first issues a license to said organization authorizing it to do so. In the event of any controversy as to whether or not a game of chance or activity constitutes a bingo game, as defined herein, for which a license may be issued, the decision of the Sheriff shall control, subject to the rights of appeal as set out herein. The license described herein shall be in a form designated by the Sheriff and shall be in addition to and not in lieu of any other permits or licenses which may be required by law, and no bingo game shall be operated until such time as all required licenses or permits have been obtained. A license holder may hold only one license and that license shall be valid for only one location in Macon County, Alabama. A license is not assignable or transferable and shall become automatically void upon the change of name, dissolution, loss of charter, or, if the license holder is a tax exempt organization under the federal income tax laws, the loss of exemption from taxation under the Internal Revenue Code.

3

**Section 4:**    **Application for License; Submission; Form; Contents**

(a)    Any nonprofit organization, as defined herein, desiring to obtain a license to operate bingo games hereunder shall make application to the Sheriff on forms prescribed by the Sheriff and shall pay an annual fee of $250.00 for Class A Bingo Licenses and $1,000.00 for Class B Bingo Licenses. Such license shall expire and become automatically void on December 31 of the calendar year for which it is issued, except that any licenses issued during 2003 shall not expire until December 31, 2004. Renewal applications shall be filed with the Sheriff at least forty-five (45) days prior to January 1 of each calendar year and shall be on forms prescribed by the Sheriff. Renewal applications shall be subject to the same application fee as provided for an original application and shall contain the same information as required in an original application. Should one or more Class B Bingo License holders contract in a given calendar year with the owner of a Class B qualified location, the owner of said Class B qualified location shall pay a business license fee ("Operator's License Fee") of $40,000 at the time the Class B Bingo License is issued or renewed. In no event shall more than one Operator's License Fee be paid by the owner of a Class B qualified location in any given year.

(b)    The Sheriff shall refuse to grant a bingo license or renewal to any applicant qualified hereunder unless and until the applicant fully provides the information required hereunder, such being provided in a form and in sufficient detail to satisfy the Sheriff of its validity and sufficiency. The Sheriff shall have complete discretion to require any reasonable confirming documentation as to any information required hereunder and shall have a reasonable time to check or confirm by any method available to him the accuracy or validity of any information provided hereunder.

(c)    Each application for a bingo license or renewal thereof shall contain the following information and exhibits:

(1)    The date of incorporation or other evidence of inception showing existence by the organization for the prescribed period of time.

(2)    A certified copy of the charter, certificate of incorporation, by-laws, or other evidence of legal existence of the organization.

(3)    When applicable, a copy of the letter ruling or tax exempt determination letter from the Internal Revenue Service or other proof deemed acceptable by the Sheriff verifying the tax exempt status of the organization named in the application or the parent organization of which the same is a qualified branch, chapter, lodge or post.

(4)    The names and residence addresses of each of the officers and directors of the organization, as well as the names and addresses of any members

4

or persons who shall be in charge of or have control over the operation or promotion of bingo games.

(5) The names and addresses of any persons, organizations, or other entities which shall act as sureties for the applicant or to which the applicant is financially indebted in regard to the operation of bingo games.

(6) The exact physical location at which the applicant will conduct the bingo games and if the premises on which the games are to be conducted are not owned by the applicant, the names and addresses of the owners thereof and a copy of all rental, lease, consulting or other agreements with the said owners regarding the use of the premises for the operation of the bingo games.

(7) A statement listing all convictions, if any, for criminal offenses, other than minor traffic offenses, of each of the persons for whom names are required in subsections (4), (5), and (6) above.

## Section 5: Issuance of License

Upon receipt of a fully completed and documented application for a license meeting all of the requirements set out herein, the Sheriff shall make such investigation as he may deem necessary or proper of the qualifications of each applicant as required herein and the truth and veracity of the information contained or attached to the application and after making such investigation and after being first satisfied that all qualifications and requirements as set out herein the Sheriff shall issue such license to said applicant upon the terms and conditions herein set forth. As part of said investigation, any person named in paragraphs 4,5, 6 of Section 4(c) herein may be required to furnish a consent for background and criminal history check.

A Class A Bingo License shall be issued to an applicant who desires to operate paper card bingo only at a qualified location for the holder of a Class A License. A Class B Bingo License shall be issued to an applicant who desires to operate any and all games of bingo, as defined hereinabove, at a qualified location for the holder of a Class B License.

## Section 6: Amendments; Applications; Licenses

(a) An applicant may amend an application filed hereunder to correct or complete the information contained therein or to change said information to comply with a change in circumstances at any time prior to the denial thereof by the Sheriff or the issuance of a license thereon, provided that said amendment be made in or on a form satisfactory to the Sheriff and the applicant pays a substitution or amendment fee of $50.00 per amendment.

(b)     A license, once issued, may be amended only upon resubmission of a new, completed application satisfactory to the Sheriff, surrender of the license being amended, and payment of a new annual fee. The Sheriff may deny amendments for any reason for which an original application may be denied.

## Section 7:     Contents and Display of Licenses

(a)     Each bingo license shall contain the name and address of the license holder, the location at which the license holder is permitted to conduct bingo games, the days of the week on which the license holder is permitted to conduct bingo games, the date on which the license was issued and upon which it expires.

(b)     The license holder shall display the license conspicuously at the location where bingo is being conducted at all times during the conduct of a bingo game.

## Section 8:     Fee Proceeds

All monies collected by the Sheriff hereunder shall be paid to the County and placed in a separate bingo account, and deposited in a designated bank located in Macon County within three business days of the collection of said fees. All expenses incurred by the Sheriff in the administration and enforcement hereof shall be paid from this account, with the balance, if any, in said account to be used by the Sheriff for general law enforcement purposes. To the extent allowed by law, in the public interest, the said account shall be subject to audit by the State of Alabama Examiners of Public Accounts.

## Section 9:     General Regulations; Prizes

(a)     No person under the age of 19 years shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 years be permitted to conduct or assist in the operation of any game of bingo.

(b)     No bingo license shall be issued to any nonprofit organization, unless the organization shall have been in existence for at least three (3) years in the county immediately prior to the issuance of the permit or license.

(c)     Bingo games may be operated on the premises owned or leased by the nonprofit organization operating the bingo games.

(d)     A nonprofit organization may enter into a contract with any individual, firm, association or corporation to have the individual or entity operate bingo

6

games or concessions on behalf of the nonprofit organization. A nonprofit organization may pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game.

(e)     A nonprofit organization may lend its name or allow its identity to be used by another person or entity in the operating or advertising of a bingo game in which the nonprofit organization is not directly and solely operating the bingo game.

(f)     Prizes given by any nonprofit organization for the playing of bingo games shall not exceed the cash amount or gifts of equivalent value set by these Rules and Regulations for any bingo session. For the purposes of these Rules and Regulations, no single prize given by any nonprofit organization, or on its behalf, for the playing of bingo games shall exceed $1,000,000 in cash or equivalent value during any bingo session.

(g)     No person who has been convicted of a felony offense, and whose civil rights have not been restored by law, shall conduct or in any way participate in the operation of any bingo game permitted hereunder, nor shall any person who has been convicted of any gambling offense be permitted to conduct or in any way participate in the operation of any bingo game permitted hereunder within 12 months of the conviction.

## Section 10:  Records and Accounting

Each license holder shall keep and maintain the following records and accounts pertaining to each bingo session conducted by it for at least three (3) years from the date of such session:

(a)     An itemized list of all gross receipts for each bingo session, which shall include all receipts derived from the sale of bingo cards, entrance fees, donations, or from any other source whatsoever pertaining to the operation of such session. Notwithstanding the foregoing, the holder of a Class B License who has contracted with an individual, firm, association or corporation for the operation of bingo games shall only report the Class B License holder's gross receipts under such contract and provide a copy of such contract to the Sheriff.

(b)     An itemized list of all expenses, costs and disbursements, other than prizes, paid or given as a result of the operation of any bingo session, together with the name and address of each person to whom said expenses, disbursements or consideration was paid or given; a receipt or invoice for all items purchased and for all services rendered; and such other records as will adequately reflect the amount and nature of such expenses, costs and disbursements. Notwithstanding the foregoing, the holder of a Class B Bingo License who has contracted with an individual, firm,

association or corporation for the operation of bingo games which permits the holder to receive reasonable compensation for the operation of a bingo session net of the costs associated with the operation of the bingo games, including without limitation, building rent, insurance, equipment rental, consulting or management fees, employee expense, utilities, janitorial services, bingo prizes or gifts and the like, shall only be required to maintain a copy of such contract and provide a copy of same to the Sheriff upon request.

(c)     All records, receipts, accounts and/or lists required to be kept and maintained hereunder shall be open to inspection by the Sheriff, or his authorized agents or representatives, during reasonable business hours.

(d)     All locations at which bingo games are being held by a license holder, or at which a license holder intends to conduct bingo games, shall be open to the Sheriff, or his authorized representatives, during all times at which bingo games are being conducted and during all other reasonable business hours.

(e)     On or before April 15, 2005, and on or before April 15th of each calendar year thereafter, each license holder who held a license for all or any part of the preceding calendar year shall file with the Sheriff a verified copy of all records, receipts, accounts and/or lists required to be kept or maintained hereunder relating to the operation of bingo games for said previous calendar year.

## Section 11:  Enforcement and Supervision; Rules; Bonds

(a)     The Sheriff shall be charged with the duty to and shall enforce and supervise the administration and enforcement of all of the rules, regulations and reporting required hereunder.  In addition to these Regulations, the Sheriff shall enforce all applicable criminal and civil laws of the State of Alabama to prevent and discourage any illegal activity.

(b)     The Sheriff may require such acceptable sureties and/or bonds that he deems reasonable or necessary to insure proper compliance with these Rules and Regulations and the submission of such acceptable sureties or bonds shall be a condition precedent to the issuance of any license hereunder.  The operator and surety or sureties shall be jointly and severally responsible for payment of prizes to winners, said payment to occur no later than the end of the session during which the prize was won.

## Section 12:  Revocation of Licenses; Appeal

The Sheriff, for good cause shown, may revoke any license issued pursuant hereto if the license holder or any officer, director, agent, employee or member of the

8

license holder, or any person acting in concert with such persons, violates any of the Regulations herein promulgated. Such revocation by the Sheriff shall become effective ten (10) days after written notice of such revocation has been delivered by the Sheriff, or his authorized representative, to any person named in the license application pursuant to Section 4, subsections (c)(4) and (c)(5) hereunder, or such other person as may be involved in the operation of bingo pursuant hereto, unless the license holder shall make a written request for a hearing as to such revocation to the Macon County Commission within said ten (10) day period. Upon such request for hearing, the Commission shall hold a hearing upon such revocation, subject to rules and regulations for the conduct of meetings and hearings before such Commission, at its next regularly scheduled meeting, or specially called meeting for the purpose of such hearing. Upon such hearing the rendering of a decision adverse to the license holder shall result in the immediate revocation of the subject license. Following a hearing and rendition of an opinion by the Commission upon revocation of a license issued hereunder, either party to said hearing may appeal the same to the Circuit Court of Macon County, Alabama and may request a trial by jury. Pending appeal to the Circuit Court hereunder, the revoked license shall remain revoked until and unless the Circuit Court shall order the same reinstated and shall set a reasonable bond to assure complete compliance with all Rules and Regulations promulgated hereunder pending such appeal.

## Section 13:  Effect of Revocation

The holder of any license issued pursuant hereto which shall be revoked as herein set out shall return such license to the Sheriff on or before the effective date of such revocation and whether returned or not such license shall be void and not valid beyond the effective date of revocation thereof unless such revocation shall be extended by appeal as provided hereunder. A license holder whose license is revoked in consequence of a violation of any rule or regulation promulgated herein, or other rule or regulation promulgated hereunder, shall be ineligible to apply for or have issued to it another license hereunder for a period of one (1) year after the effective date of such revocation. Nor shall any license be issued to any organization which is directed or controlled by persons listed in the application for license filed pursuant to Section 4, subsections (c)(4) and (c)(5) hereof in regard to the revoked license or to any organization of which the membership is substantially the same as any organization whose license has been revoked hereunder, for a period of one (1) year after the effective date of such revocation.

## Section 14:  Appeal of Denial of License

Any nonprofit organization whose application for a license hereunder shall he denied by the Sheriff pursuant to these Regulations shall have the right to appeal such denial to the Macon County Commission and to the Circuit Court of Macon County in the same manner as an appeal of a revocation of a license issued hereunder may be

appealed pursuant hereto provided, however, that such organization shall not operate any bingo game until such application shall have been granted, and a license issued, pursuant to any order of the said Commission or Court.

## Section 15: Severability

The provisions hereto and the Regulations promulgated hereunder are severable. If any part hereof shall be declared invalid or unconstitutional, such declaration shall not affect any parts hereof which shall remain.

## Section 16: Amendments

The Sheriff reserves the right to amend these Regulations from time to time as necessary, but no amendments shall be effective unless in writing and signed by the Sheriff.

Issued this the ___5___<sup>th</sup> day of December, 2003.

David M. Warren
Sheriff of Macon County, Alabama

# FIRST AMENDED AND RESTATED RULES AND REGULATIONS
## FOR THE LICENSING AND OPERATION
## OF
## BINGO GAMES IN MACON COUNTY, ALABAMA

Section 1: Definitions...................................................................1

Section 2: Operation of Bingo Games in Macon County...........................3

Section 3: Bingo License Required .....................................................3

Section 4: Application for License; Submission; Form; Contents ................4

Section 5: Issuance of License..........................................................5

Section 6: Amendments; Applications; Licenses ...................................5

Section 7: Contents and Display of Licenses .......................................6

Section 8: Fee Proceeds .................................................................6

Section 9: General Regulations; Prizes ...............................................6

Section 10: Records and Accounting...................................................7

Section 11: Enforcement and Supervision; Rules; Bonds ........................8

Section 12: Revocation of Licenses; Appeal ........................................8

Section 13: Effect of Revocation ......................................................9

Section 14: Appeal of Denial of License .............................................9

Section 15: Compliance with Federal Law ...........................................9

Section 16: Severability..................................................................10

Section 17: Amendments ...............................................................10

Section 18:  Effective Date .............................................................10

EXHIBIT

tabbies

B

## MACON COUNTY BINGO REGULATIONS

The following First Amended and Restated Rules and Regulations For the Licensing and Operation of Bingo Games in Macon County (hereinafter sometimes referred to as "Rules," "Regulations" or "Rules and Regulations") are hereby promulgated by David M. Warren, Sheriff of Macon County, to regulate the issuance of permits or licenses for and the operation of bingo games by certain nonprofit organizations in Macon County, Alabama pursuant to Act. No. 2003-124, Regular Session, 2003, authorizing a referendum on an amendment of the Constitution of Alabama which said referendum was approved by the voters on November 4, 2003. It is the purpose of these First Amended and Restated Rules and Regulations to fund and provide for appropriate oversight and regulation of bingo in Macon County, to preserve and promote the integrity of the operation of bingo games and to protect the nonprofit organizations that are or may become licensed under these Regulations and whose valuable services are supported and funded in part by the conduct of bingo in this county.

### Section 1: Definitions

As used herein the following words shall have the following meanings as described herein, unless the context clearly indicates otherwise:

(a)    "Bingo" or "Bingo games" shall mean any game of chance known as bingo, including any bingo game permitted by federal law, (whether or not electronic, computer, or other technologic aids are used in connection therewith) which is played for prizes, including monetary prizes, with cards bearing numbers or other designations, and which the holder of the card covers such numbers or designations when objects, similarly numbered or designated, are drawn or electronically determined, and in which the game is won by the first person covering a previously designated arrangement of numbers or designations on such cards. Nothing herein is intended to prohibit the award of interim or consolation prizes. Electronic, computer or other technologic aids include any machine or device that assists a player or the playing of a bingo game; broadens the participation levels in a common game; facilitates communication between and among bingo locations; or allows players to play a game with or against other players rather than with or against a machine. Examples of electronic, computer or other technologic aids include, but are not limited to, dispensers, readers, telephones, cables, televisions, screens, satellites, bingo blowers, electronic player stations, electronic cards for participants in bingo games, player terminals, central servers containing random number generators for remote player terminals and video displays providing game results in different display modes.

(b) "Person" shall mean any human being, corporation, partnership, association or other legal entity of any kind whatsoever.

(c) "Sheriff" shall mean the Sheriff of Macon County, Alabama. Under the Rules and Regulations herein, the Sheriff may designate or otherwise authorize persons of the Macon County Sheriff's Office to perform various duties of the Sheriff set forth herein.

(d) "Nonprofit organization" shall mean a bona fide organization that is active and in good standing for charitable, educational, or other lawful purposes which operates without profit to its members and/or which has been classified by the Internal Revenue Service as a tax exempt organization.

(e) "License holder" shall mean any nonprofit organization that has been issued a bingo license by the Sheriff pursuant to these Regulations.

(f) "Location" shall mean a building, hall, enclosure, room, or outdoor area that complies with all federal, state and local laws and applicable building and fire codes.

(g) "Class A Bingo License" shall mean a license issued to an applicant who desires to operate paper card bingo only at a qualified location.

(h) "Class B Bingo License" shall mean a license issued to an applicant who desires to operate any and all games of bingo as defined hereinabove, at a qualified location.

(i) "Qualified location" for the holder of a Class A Bingo License shall mean a location, as defined above, which has been inspected and approved by the Sheriff for the conduct of bingo games.

(j) "Qualified location" for the holder of a Class B Bingo License shall mean a location, as defined above, which has been inspected and approved by the Sheriff for the conduct of bingo games and other lawful activities and for which the license applicant shall submit satisfactory evidence that the location has in place the following at all times that any bingo games are being conducted or operated: (i) public liability insurance in an amount not less than $5,000,000; (ii) if liquor is served, liquor liability insurance in the amount of not less than $1,000,000; (iii) adequate parking for patrons and employees; (iv) onsite security as prescribed by the Sheriff; (v) onsite first-aid personnel as prescribed by the Sheriff; (vi) cash or surety bond in an amount not

less than $1,000,000; (vii) such accounting procedures, controls and security monitoring as necessary to preserve and promote the integrity of the operation of bingo games and to ensure the protection of the charitable license holder and its patrons; (viii) satisfactory evidence that the owner or owners of the location paid at least $15,000,000 for the land, building and other capital improvements (before depreciation) comprising said location; (ix) satisfactory evidence that the location is fully compliant with the Americans with Disabilities Act ("ADA"); and (x) satisfactory evidence that the owner or owners of such location have been residents of the State of Alabama for at least three (3) years or, if the owner is a partnership, association, corporation, limited liability company, or other business entity, satisfactory evidence that those partners, members, or stockholders of such entity that own collectively at least two-thirds (2/3) of the voting rights and equity interests of such entity, are individuals that have been residents of the State of Alabama for at least three (3) years.

(k)     "Bingo session" shall mean a consecutive period of time up to 24 consecutive hours during which bingo is played on as many as seven (7) days in a given week. A license holder shall not be limited in the number of bingo sessions it operates during any 24 hour period.

## Section 2:    Operation of Bingo Games in Macon County

The operation of bingo games for prizes or money by nonprofit organizations, as defined herein, shall be allowed in Macon County, pursuant to Amendment No. 744 to the Constitution of Alabama and Act No. 2003-124, provided that the nonprofit organization shall first obtain a bingo license (Class A or B) as set out herein, and abide by all of the Regulations duly promulgated by the Sheriff. No Class B Licensee shall be authorized to operate bingo at any qualified location, as defined herein, unless a minimum of fifteen (15) applicants shall first obtain Class B Licenses for such location. This restriction shall be noted on any Class B License issued effective as of the date of issuance of these First Amended and Restated Rules and Regulations.

## Section 3:    Bingo License Required

No nonprofit organization, as defined herein, shall be allowed to operate a bingo game unless the Sheriff first issues a license to said organization authorizing it to do so. In the event of any controversy as to whether or not a game of chance or activity constitutes a bingo game, as defined herein, for which a license may be issued, the decision of the Sheriff shall control, subject to the rights of appeal as set

4

out herein. The license described herein shall be in a form designated by the Sheriff and shall be in addition to, and not in lieu of any other permits or licenses which may be required by law, and no bingo game shall be operated until such time as all required licenses or permits have been obtained. A license holder may hold only one license and that license shall be valid for only one location in Macon County, Alabama. A license is not assignable or transferable and shall become automatically void upon the change of name, dissolution, loss of charter, or, if the license holder is a tax exempt organization under the federal income tax laws, the loss of exemption from taxation under the Internal Revenue Code.

## Section 4:  Application for License; Submission; Form; Contents

(a)  Any nonprofit organization, as defined herein, desiring to obtain a license to operate bingo games hereunder shall make application to the Sheriff on forms prescribed by the Sheriff and shall pay an annual fee of $250.00 for Class A Bingo Licenses and $1,000.00 for Class B Bingo Licenses. Such license shall expire and become automatically void on December 31 of the calendar year for which it is issued, except that any licenses issued during 2003 shall not expire until December 31, 2004. Renewal applications shall be filed with the Sheriff at least forty-five (45) days prior to January 1 of each calendar year and shall be on forms prescribed by the Sheriff. Renewal applications shall be subject to the same application fee as provided for an original application and shall contain the same information as required in an original application. Should fifteen (15) or more Class B Bingo License holders contract in a given calendar year with the owner of a Class B qualified location, the owner of said Class B qualified location shall pay a business license fee ("Operator's License Fee") of $250,000 at the time the Class B Bingo License is issued or renewed. In no event shall more than one Operator's License Fee be paid by the owner of a Class B qualified location in any given year.

(b)  The Sheriff shall refuse to grant a bingo license or renewal to any applicant qualified hereunder unless and until the applicant fully provides the information required hereunder, such being provided in a form and in sufficient detail to satisfy the Sheriff of its validity and sufficiency. The Sheriff shall have complete discretion to require any reasonable confirming documentation as to any information required hereunder and shall have a reasonable time to check or confirm by any method available to him the accuracy or validity of any information provided hereunder.

(c)  Each application for a bingo license or renewal thereof shall

5

contain the following information and exhibits:

(1)     The date of incorporation or other evidence of inception showing existence by the organization for the prescribed period of time.

(2)     A copy of the charter, certificate of incorporation, by-laws, or other evidence of legal existence of the organization.

(3)     When applicable, a copy of the letter ruling or tax exempt determination letter from the Internal Revenue Service or other proof deemed acceptable by the Sheriff verifying the tax exempt status of the organization named in the application or the parent organization of which the same is a qualified branch, chapter, lodge or post.

(4)     The names and residence addresses of each of the officers and directors of the organization, as well as the names and addresses of any members or persons who shall be in charge of or have control over the operation or promotion of bingo games.

(5)     The names and addresses of any persons, organizations, or other entities which shall act as sureties for the applicant or to which the applicant is financially indebted in regard to the operation of bingo games.

(6)     The exact physical location at which the applicant will conduct the bingo games and if the premises on which the games are to be conducted are not owned by the applicant, the names and addresses of the owners thereof and a copy of all rental, lease, consulting or other agreements with the said owners regarding the use of the premises for the operation of the bingo games.

(7)     A statement listing all convictions, if any, for criminal offenses, other than minor traffic offenses, of each of the persons for whom names are required in subsections (4), (5), and (6) above.

## Section 5:    Issuance of License

Upon receipt of a fully completed and documented application for a license meeting all of the requirements set out herein, the Sheriff shall make such investigation as he may deem necessary or proper of the qualifications of each applicant as required herein and the truth and veracity of the information contained or attached to the application and after making such investigation and after being first satisfied that all qualifications and requirements as set out herein the

Sheriff shall issue such license to said applicant upon the terms and conditions herein set forth. As part of said investigation, any person named in paragraphs 4, 5, 6 of Section 4(c) herein may be required to furnish a consent for background and criminal history check.

A Class A Bingo License shall be issued to an applicant who desires to operate paper card bingo only at a qualified location for the holder of a Class A License. A Class B Bingo License shall be issued to an applicant who desires to operate any and all games of bingo, as defined hereinabove, at a qualified location for the holder of a Class B License.

## Section 6:    Amendments; Applications; Licenses

(a)    An applicant may amend an application filed hereunder to correct or complete the information contained therein or to change said information to comply with a change in circumstances at any time prior to the denial thereof by the Sheriff or the issuance of a license thereon, provided that said amendment be made in or on a form satisfactory to the Sheriff and the applicant pays a substitution or amendment fee of $50.00 per amendment.

(b)    A license, once issued, may be amended only upon resubmission of a new, completed application satisfactory to the Sheriff, surrender of the license being amended, and payment of a new annual fee.  The Sheriff may deny amendments for any reason for which an original application may be denied.

## Section 7:    Contents and Display of Licenses

(a)    Each bingo license shall contain the name and address of the license holder, the location at which the license holder is permitted to conduct bingo games, the days of the week on which the license holder is permitted to conduct bingo games, the date on which the license was issued and upon which it expires.

(b)    The license holder shall display the license conspicuously at the location where bingo is being conducted at all times during the conduct of a bingo game.

## Section 8:    Fee Proceeds

All monies collected by the Sheriff hereunder shall be paid to the County and placed in a separate bingo account, and deposited in a designated bank located

7

in Macon County within three business days of the collection of said fees. All expenses incurred by the Sheriff in the administration and enforcement hereof shall be paid from this account, with the balance, if any, in said account to be used by the Sheriff for general law enforcement purposes. To the extent allowed by law, in the public interest, the said account shall be subject to audit by the State of Alabama Examiners of Public Accounts.

**Section 9: General Regulations; Prizes**

(a)    No person under the age of 19 years shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 years be permitted to conduct or assist in the operation of any game of bingo.

(b)    No bingo license shall be issued to any nonprofit organization, unless the organization shall have been in existence for at least three (3) years in the county immediately prior to the issuance of the permit or license.

(c)    Bingo games may be operated on the premises owned or leased by the nonprofit organization operating the bingo games.

(d)    A nonprofit organization may enter into a contract with any individual, firm, association or corporation to have the individual or entity operate bingo games or concessions on behalf of the nonprofit organization. A nonprofit organization may pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game.

(e)    A nonprofit organization may lend its name or allow its identity to be used by another person or entity in the operating or advertising of a bingo game in which the nonprofit organization is not directly and solely operating the bingo game. ·

(f)    Prizes given by any nonprofit organization for the playing of bingo games shall not exceed the cash amount or gifts of equivalent value set by these Rules and Regulations for any bingo session. For the purposes of these Rules and Regulations, no single prize given by any nonprofit organization, or on its behalf, for the playing of bingo games shall exceed $20,000,000 in cash or equivalent value during any bingo session.

(g)    No person who has been convicted of a felony offense, and whose civil rights have not been restored by law, shall conduct or in any way participate in the operation of any bingo game permitted hereunder, nor shall any

8

person who has been convicted of any gambling offense be permitted to conduct or in any way participate in the operation of any bingo game permitted hereunder within 12 months of the conviction.

## Section 10: Records and Accounting

Each license holder shall keep and maintain the following records and accounts pertaining to each bingo session conducted by it for at least three (3) years from the date of such session:

(a)    An itemized list of all gross receipts for each bingo session, which shall include all receipts derived from the sale of bingo cards, entrance fees, donations, or from any other source whatsoever pertaining to the operation of such session. Notwithstanding the foregoing, the holder of a Class B License who has contracted with an individual, firm, association or corporation for the operation of bingo games shall only report the Class B License holder's gross receipts under such contract and provide a copy of such contract to the Sheriff.

(b)    An itemized list of all expenses, costs and disbursements, other than prizes, paid or given as a result of the operation of any bingo session, together with the name and address of each person to whom said expenses, disbursements or consideration was paid or given; a receipt or invoice for all items purchased and for all services rendered; and such other records as will adequately reflect the amount and nature of such expenses, costs and disbursements. Notwithstanding the foregoing, the holder of a Class B Bingo License who has contracted with an individual, firm, association or corporation for the operation of bingo games which permits the holder to receive reasonable compensation for the operation of a bingo session net of the costs associated with the operation of the bingo games, including without limitation, building rent, insurance, equipment rental, consulting or management fees, employee expense, utilities, janitorial services, bingo prizes or gifts and the like, shall only be required to maintain a copy of such contract and provide a copy of same to the Sheriff upon request.

(c)    All records, receipts, accounts and/or lists required to be kept and maintained hereunder shall be open to inspection by the Sheriff, or his authorized agents or representatives, during reasonable business hours.

(d)    All locations at which bingo games are being held by a license holder, or at which a license holder intends to conduct bingo games, shall be open to the Sheriff, or his authorized representatives, during all times at which bingo games are being conducted and during all other reasonable business hours.

(e)    On or before April 15, 2005, and on or before April 15th of each calendar year thereafter, each license holder who held a license for all or any part of the preceding calendar year shall file with the Sheriff a verified copy of all records, receipts, accounts and/or lists required to be kept or maintained hereunder relating to the operation of bingo games for said previous calendar year.

## Section 11:  Enforcement and Supervision; Rules; Bonds

(a)    The Sheriff shall be charged with the duty to and shall enforce and supervise the administration and enforcement of all of the rules, regulations and reporting required hereunder. In addition to these Regulations, the Sheriff shall enforce all applicable criminal and civil laws of the State of Alabama to prevent and discourage any illegal activity.

(b)    The Sheriff may require such acceptable sureties and/or bonds which he deems reasonable or necessary to insure proper compliance with these Rules and Regulations and the submission of such acceptable sureties or bonds shall be a condition precedent to the issuance of any license hereunder. The operator and surety or sureties shall be jointly and severally responsible for payment of prizes to winners, said payment to occur no later than the end of the session during which the prize was won.

## Section 12:  Revocation of Licenses; Appeal

The Sheriff, for good cause shown, may revoke any license issued pursuant hereto if the license holder or any officer, director, agent, employee or member of the license holder, or any person acting in concert with such persons, violates any of the Regulations herein promulgated. Such revocation by the Sheriff shall become effective ten (10) days after written notice of such revocation has been delivered by the Sheriff, or his authorized representative, to any person named in the license application pursuant to Section 4, subsections (c)(4) and (c)(5) hereunder, or such other person as may be involved in the operation of bingo pursuant hereto, unless the license holder shall make a written request for a hearing as to such revocation to the Macon County Commission within said ten (10) day period. Upon such request for hearing, the Commission shall hold a hearing upon such revocation, subject to rules and regulations for the conduct of meetings and hearings before such Commission, at its next regularly scheduled meeting, or specially called meeting for the purpose of such hearing. Upon such hearing the rendering of a decision adverse to the license holder shall result in the immediate revocation of the subject license. Following a hearing and rendition of an opinion

10

by the Commission upon revocation of a license issued hereunder, either party to said hearing may appeal the same to the Circuit Court of Macon County, Alabama and may request a trial by jury. Pending appeal to the Circuit Court hereunder, the revoked license shall remain revoked until and unless the Circuit Court shall order the same reinstated and shall set a reasonable bond to assure complete compliance with all Rules and Regulations promulgated hereunder pending such appeal.

## Section 13:  Effect of Revocation

The holder of any license issued pursuant hereto which shall be revoked as herein set out shall return such license to the Sheriff on or before the effective date of such revocation and whether returned or not such license shall be void and not valid beyond the effective date of revocation thereof unless such revocation shall be extended by appeal as provided hereunder. A license holder whose license is revoked in consequence of a violation of any rule or regulation promulgated herein, or other rule or regulation promulgated hereunder, shall be ineligible to apply for or have issued to it another license hereunder for a period of one (1) year after the effective date of such revocation. Nor shall any license be issued to any organization which is directed or controlled by persons listed in the application for license filed pursuant to Section 4, subsections (c)(4) and (c)(5) hereof in regard to the revoked license or to any organization of which the membership is substantially the same as any organization whose license has been revoked hereunder, for a period of one (1) year after the effective date of such revocation.

## Section 14:  Appeal of Denial of License

Any nonprofit organization whose application for a license hereunder shall be denied by the Sheriff pursuant to these Regulations shall have the right to appeal such denial to the Macon County Commission and to the Circuit Court of Macon County in the same manner as an appeal of a revocation of a license issued hereunder may be appealed pursuant hereto provided, however, that such organization shall not operate any bingo game until such application shall have been granted, and a license issued, pursuant to any order of the said Commission or Court.

## Section 15:  Compliance With Federal Law

All electronic, computer, technologic aids and other devices used in connection with the operation of licensed bingo games conducted in Macon County under the authority of Amendment No. 744 to the Constitution of Alabama and permitted under the Rules and Regulations for the Licensing and Operating of

11

Bingo Games promulgated by the Sheriff of Macon County are expressly enumerated as lawful and exempted from the provisions of 15 U.S.C. § 1172.

## Section 16: Severability

The provisions hereto and the Regulations promulgated hereunder are severable. If any part hereof shall be declared invalid or unconstitutional, such declaration shall not affect any parts hereof which shall remain.

## Section 17: Amendments

The Sheriff reserves the right to amend these Regulations from time to time as necessary, but no amendments shall be effective unless in writing and signed by the Sheriff.

## Section 18: Effective Date.

The effective date of these First Amended and Restated Rules and Regulations is June 2, 2004, except, however, the effective date for the increased business license fee for the owner of a Class B qualified location as set forth in Section 4(a) shall be January 1, 2005, and thereafter, and the effective date for the provisions of new Section 15 is the date the Rules and Regulations For the Licensing and Operation of Bingo Games in Macon County were originally enacted by the Sheriff.

Issued this the 2nd day of June, 2004.

David M. Warren
Sheriff of Macon County, Alabama

12

## COMMENTARY TO
## AMENDED AND RESTATED BINGO REGULATIONS

Having had the opportunity to evaluate and regulate the licensing and operation of bingo games in Macon County, Alabama, pursuant to Amendment No. 774 of the Constitution of Alabama, the Macon County Bingo Regulations are hereby amended and restated in their entirety in order to maintain, protect and enhance the integrity of, the viability of and the economic benefits derived from, bingo games for the eligible nonprofit organizations in Macon County that offer material charitable and educational purposes in Macon County, Alabama. The following changes have been made to the Macon County Bingo Regulations:

**Section 1(d):** The definition "Nonprofit organization" is hereby amended to add the phrase "that is active and in good standing" in order to protect the truly viable charities in Macon County, Alabama, from a nonprofit organization that does not provide material charitable or educational benefits to Macon County and/or is an otherwise dormant, inactive nonprofit organization used primarily as a subterfuge to obtain a bingo license to operate games of bingo either directly or by contract with a third party individual or business entity.

**Section 1(j):** The capital investment amount required for a "qualified location" for the holder of a Class B License is hereby increased to $15,000,000 and limited to actual cost in order to require any qualified location to prove a significant investment and financial commitment to Macon County prior to becoming a "qualified location". Further, the capital investment requirement is restricted to actual cost, not based on any valuation, in order to avoid any potential dispute or abuse based on any real estate appraisal submitted with an application.

**Section 2:** In order to maximize economic benefits to numerous nonprofit organizations in Macon County and to further avoid the potential abuse of a third party individual or business entity from using one nonprofit organization (or a minimal number) as a "front" to operate bingo games under a Class B License, the last two (2) sentences have been added to Section 2 of the Regulations. By requiring at least fifteen (15) nonprofit organizations to obtain Class B Licenses prior to authorizing such a bingo operation at a qualified location, assurance is provided that a large representative group of charities is afforded the opportunity to obtain the economic benefits associated with a Class B License.

**Section 4(a):** The license for a Class B qualified location is hereby increased to $250,000, effective as of January 1, 2005. The license fee increase should provide additional funding for the Sheriff's Department to support, as well as retain, existing and increased law enforcement personnel to regulate and supervise the operation of bingo games in Macon County to preserve and protect the integrity of the bingo games for customers and for the nonprofit organizations.

**Section 9(f):** The single prize limitation has been increased to provide greater attraction and marketing of the bingo games in order to enhance economic benefits to the charities in Macon County, Alabama.

**Section 15:**   A new Section 15 is hereby added (with existing Sections 15 and 16 being renumbered Section 16 and 17, respectively) to incorporate into the existing Regulations the federal protection of transportation of gaming equipment from one state to another where such gaming activity is legalized in the state of final destination for such gaming equipment.

**Section 18:**   The new Section 18 provides that the First Amended and Restated Rules and Regulations are effective as of June 2, 2004, except the increased business license fee for the owner of a Class B qualified location shall be effective as of January 1, 2005, and thereafter, and the provisions of new Section 15 are effective as of the date the Rules and Regulations were originally enacted by the Sheriff.

# SECOND AMENDED AND RESTATED RULES AND REGULATIONS
## FOR THE LICENSING AND OPERATION
## OF
## BINGO GAMES IN MACON COUNTY, ALABAMA

Section 1: Definitions ..................................................................... 2

Section 2: Operation of Bingo Games in Macon County ........................................ 4

Section 3: Bingo License Required ........................................................ 5

Section 4: Application for License; Submission; Form; Contents ............................. 5

Section 5: Issuance of License ........................................................... 7

Section 6: Amendments; Applications; Licenses ............................................. 7

Section 7: Contents and Display of Licenses .............................................. 7

Section 8: Fee Proceeds .................................................................. 8

Section 9: General Regulations; Prizes ................................................... 8

Section 10: Records and Accounting ....................................................... 9

Section 11: Enforcement and Supervision; Rules; Bonds ................................... 10

Section 12: Revocation of Licenses; Appeal ............................................. 10

Section 13: Effect of Revocation ....................................................... 11

Section 14: Appeal of Denial of License ................................................ 11

Section 15: Compliance with Federal Law ................................................ 12

Section 16: Severability ............................................................... 12

Section 17: Amendments ................................................................. 12

Section 18: Effective Date ............................................................. 12

1

EXHIBIT

tabbies®

G

# MACON COUNTY BINGO REGULATIONS

The following Second Amended and Restated Rules and Regulations For the Licensing and Operation of Bingo Games in Macon County (hereinafter sometimes referred to as "Rules", "Regulations" or "Rules and Regulations") are hereby promulgated by David M. Warren, Sheriff of Macon County, to regulate the issuance of permits or licenses for and the operation of bingo games by certain nonprofit organizations in Macon County, Alabama pursuant to Act No. 2003-124, Regular Session, 2003, authorizing a referendum on an amendment to the Constitution of Alabama, which said referendum was approved by the voters on November 4, 2003. The primary purpose of this Second Amendment is to encompass the definition of "bingo games" as pronounced by the Attorney General for the State of Alabama and to further adopt the policy of the Attorney General in limiting the conduct of Class B bingo gaming in Macon County thereby allowing the Sheriff to more effectively regulate and enforce the proper conduct of bingo games.

## Section 1: Definitions

As used herein the following words shall have the following meanings as described herein, unless the context clearly indicates otherwise:

(a)     "Bingo" or "Bingo games" shall mean any game of chance known as bingo, including any bingo game permitted by federal law, (whether or not electronic, computer, or other technologic aids are used in connection therewith) which is played for prizes, including monetary prizes, with cards bearing numbers or other designations, and which the holder of the card covers such numbers or designations when objects, similarly numbered or designated, are drawn or electronically determined, and in which the game is won by the first person covering a previously designated arrangement of numbers or designations on such cards. The bingo game must incorporate the typical features of traditional bingo, including, but not limited to, a grid of five horizontal and five vertical squares, numbers randomly selected, and a preordained winning pattern. Alternative entertaining displays such as spinning reels and other video or mechanical graphics are permitted but must not affect game play. Just as in traditional bingo halls, players on electronic bingo machines must compete against one another. Consequently, the electronic machines must be linked so that players are competing against each other. Nothing herein is intended to prohibit the award of interim or consolation prizes. Electronic, computer or other technologic aids include any machine or device that assists a player or the playing of a bingo game;

broadens the participation levels in a common game; facilitates communication between and among bingo locations; or allows players to play a game with or against other players rather than with or against a machine. Examples of electronic, computer or other technologic aids include, but are not limited to, dispensers, readers, telephones, cables, televisions, screens, satellites, bingo blowers, electronic player stations, electronic cards for participants in bingo games, player terminals, central servers containing random number generators for remote player terminals and video displays providing game results in different display modes.

(b)    "Person" shall mean any human being, corporation, partnership, association or other legal entity of any kind whatsoever.

(c)    "Sheriff" shall mean the Sheriff of Macon County, Alabama. Under the Rules and Regulations herein, the Sheriff may designate or otherwise authorize persons of the Macon County Sheriff's Office to perform various duties of the Sheriff set forth herein.

(d)    "Nonprofit organization" shall mean a bona fide organization that is active and in good standing for charitable, educational, or other lawful purposes which operates without profit to its members and/or which has been classified by the Internal Revenue Service as a tax exempt organization.

(e)    "License holder" shall mean any nonprofit organization that has been issued a bingo license by the Sheriff pursuant to these Regulations.

(f)    "Location" shall mean a building, hall, enclosure, room, or outdoor area that complies with all federal, state and local laws and applicable building and fire codes.

(g)    "Class A Bingo License" shall mean a license issued to an applicant who desires to operate paper card bingo only at a qualified location.

(h)    "Class B Bingo License" shall mean a license issued to an applicant who desires to operate any and all games of bingo as defined hereinabove, at a qualified location.

(i)    "Qualified location" for the holder of a Class A Bingo License shall mean a location, as defined above, which has been inspected and approved by the Sheriff for the conduct of bingo games.

(j)  "Qualified location" for the holder of a Class B Bingo License shall mean a location, as defined above, which has been inspected and approved by the Sheriff for the conduct of bingo games and other lawful activities and for which the license applicant shall submit satisfactory evidence that the location has in place the following at all times that any bingo games are being conducted or operated: (i) public liability insurance in an amount not less than $5,000,000; (ii) if liquor is served, liquor liability insurance in the amount of not less than $1,000,000; (iii) adequate parking for patrons and employees; (iv) onsite security as prescribed by the Sheriff; (v) onsite first aid personnel as prescribed by the Sheriff; (vi) cash or surety bond in an amount not less than $1,000,000; (vii) such accounting procedures, controls and security monitoring as necessary to preserve and promote the integrity of the operation of bingo games and to ensure the protection of the charitable license holder and its patrons; (viii) satisfactory evidence that the owner or owners of the location paid at least $15,000,000 for the land, building and other capital improvements (before depreciation) comprising said location; (ix) satisfactory evidence that the location is fully compliant with the Americans with Disabilities Act ("ADA"); and (x) satisfactory evidence that the owner or owners of such location have been residents of the State of Alabama for at least three (3) years or, if the owner is a partnership, association, corporation, limited liability company, or other business entity, satisfactory evidence that those partners, members, or stockholders of such entity that own collectively at least two-thirds (2/3) of the voting rights and equity interests of such entity, are individuals that have been residents of the State of Alabama for at least three (3) years.

(k)  "Bingo session" shall mean a consecutive period of time up to 24 consecutive hours during which bingo is played on as many as seven (7) days in a given week. A license holder shall not be limited in the number of bingo sessions it operates during any 24 hour period.

## Section 2:  Operation of Bingo Games in Macon County

The operation of bingo games for prizes or money by nonprofit organizations, as defined herein, shall be allowed in Macon County, pursuant to Amendment No. 744 to the Constitution of Alabama and Act No. 2003-124, provided that the nonprofit organization shall first obtain a bingo license (Class A or B) as set out herein, and abide by all of the Regulations duly promulgated by the Sheriff. No Class B Licensee shall be authorized to operate bingo at any qualified location, as defined herein, unless a minimum of fifteen (15) applicants shall first obtain Class B

4

Licenses for such location. This restriction shall be noted on any Class B License issued hereafter. At no time shall there be issued and outstanding more than sixty (60) Class B Licenses for the operation of bingo in Macon County.

## Section 3:   Bingo License Required

No nonprofit organization, as defined herein, shall be allowed to operate a bingo game unless the Sheriff first issues a license to said organization authorizing it to do so. In the event of any controversy as to whether or not a game of chance or activity constitutes a bingo game, as defined herein, for which a license may be issued, the decision of the Sheriff shall control, subject to the rights of appeal as set out herein. The license described herein shall be in a form designated by the Sheriff and shall be in addition to and not in lieu of any other permits or licenses which may be required by law, and no bingo game shall be operated until such time as all required licenses or permits have been obtained. A license holder may hold only one license and that license shall be valid for only one location in Macon County, Alabama. A license is not assignable or transferable and shall become automatically void upon the change of name, dissolution, loss of charter, or, if the license holder is a tax exempt organization under the federal income tax laws, the loss of exemption from taxation under the Internal Revenue Code.

## Section 4:   Application for License; Submission; Form; Contents

(a)   Any nonprofit organization, as defined herein, desiring to obtain a license to operate bingo games hereunder shall make application to the Sheriff on forms prescribed by the Sheriff and shall pay an annual fee of $250.00 for Class A Bingo Licenses and $1,000.00 for Class B Bingo Licenses. Such license shall expire and become automatically void on December 31 of the fifth year following its issuance. Renewal applications shall be filed with the Sheriff at least forty-five (45) days prior to January 1 of each calendar year and shall be on forms prescribed by the Sheriff. Renewal applications shall be subject to the same application fee as provided for an original application and shall contain the same information as required in an original application. Should fifteen (15) or more Class B Bingo License holders contract in a given calendar year with the owner of a Class B qualified location, the owner of said Class B qualified location shall pay a business license fee ("Operator's License Fee") of $250,000 at the time the Class B Bingo License is issued or renewed. In no event shall more than one Operator's License Fee be paid by the owner of a Class B qualified location in any given year.

(b)   The Sheriff shall refuse to grant a bingo license or renewal to any applicant qualified hereunder unless and until the applicant fully provides the information required hereunder, such being provided in a form and in sufficient

5

detail to satisfy the Sheriff of its validity and sufficiency. The Sheriff shall have complete discretion to require any reasonable confirming documentation as to any information required hereunder and shall have a reasonable time to check or confirm by any method available to him the accuracy or validity of any information provided hereunder.

    (c)   Each application for a bingo license or renewal thereof shall contain the following information and exhibits:

    (1)   The date of incorporation or other evidence of inception showing existence by the organization for the prescribed period of time.

    (2)   A copy of the charter, certificate of incorporation, by-laws, or other evidence of legal existence of the organization.

    (3)   When applicable, a copy of the letter ruling or tax exempt determination letter from the Internal Revenue Service or other proof deemed acceptable by the Sheriff verifying the tax exempt status of the organization named in the application or the parent organization of which the same is a qualified branch, chapter, lodge or post.

    (4)   The names and residence addresses of each of the officers and directors of the organization, as well as the names and addresses of any members or persons who shall be in charge of or have control over the operation or promotion of bingo games.

    (5)   The names and addresses of any persons, organizations, or other entities which shall act as sureties for the applicant or to which the applicant is financially indebted in regard to the operation of bingo games.

    (6)   The exact physical location at which the applicant will conduct the bingo games and if the premises on which the games are to be conducted are not owned by the applicant, the names and addresses of the owners thereof and a copy of all rental, lease, consulting or other agreements with the said owners regarding the use of the premises for the operation of the bingo games.

    (7)   A statement listing all convictions, if any, for criminal offenses, other than minor traffic offenses, of each of the persons for whom names are required in subsections (4), (5), and (6) above.

## Section 5:    Issuance of License

Upon receipt of a fully completed and documented application for a license meeting all of the requirements set out herein, the Sheriff shall make such investigation as he may deem necessary or proper of the qualifications of each applicant as required herein and the truth and veracity of the information contained or attached to the application and after making such investigation and after being first satisfied that all qualifications and requirements as set out herein the Sheriff shall issue such license to said applicant upon the terms and conditions herein set forth. As part of said investigation, any person named in paragraphs 4, 5, 6 of Section 4(c) herein may be required to furnish a consent for background and criminal history check.

A Class A Bingo License shall be issued to an applicant who desires to operate paper card bingo only at a qualified location for the holder of a Class A License. A Class B Bingo License shall be issued to an applicant who desires to operate any and all games of bingo, as defined hereinabove, at a qualified location for the holder of a Class B License.

## Section 6:    Amendments; Applications; Licenses

(a)    An applicant may amend an application filed hereunder to correct or complete the information contained therein or to change said information to comply with a change in circumstances at any time prior to the denial thereof by the Sheriff or the issuance of a license thereon, provided that said amendment be made in or on a form satisfactory to the Sheriff and the applicant pays a substitution or amendment fee of $50.00 per amendment.

(b)    A license, once issued, may be amended only upon resubmission of a new, completed application satisfactory to the Sheriff, surrender of the license being amended, and payment of a new annual fee.  The Sheriff may deny amendments for any reason for which an original application may be denied.

## Section 7:    Contents and Display of Licenses

(a)    Each bingo license shall contain the name and address of the license holder, the location at which the license holder is permitted to conduct bingo games, the days of the week on which the license holder is permitted to conduct bingo games, the date on which the license was issued and upon which it expires.

(b)     The license holder shall display the license conspicuously at the location where bingo is being conducted at all times during the conduct of a bingo game.

## Section 8:    Fee Proceeds

All monies collected by the Sheriff hereunder shall be paid to the County and placed in a separate bingo account, and deposited in a designated bank located in Macon County within three business days of the collection of said fees.  All expenses incurred by the Sheriff in the administration and enforcement hereof shall be paid from this account, with the balance, if any, in said account to be used by the Sheriff for general law enforcement purposes. To the extent allowed by law, in the public interest, the said account shall be subject to audit by the State of Alabama Examiners of Public Accounts.

## Section 9:    General Regulations; Prizes

(a)     No person under the age of 19 years shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 years be permitted to conduct or assist in the operation of any game of bingo.

(b)     No bingo license shall be issued to any nonprofit organization, unless the organization shall have been in existence for at least three (3) years in the county immediately prior to the issuance of the permit or license.

(c)     Bingo games may be operated on the premises owned or leased by the nonprofit organization operating the bingo games.

(d)     A nonprofit organization may enter into a contract with any individual, firm, association or corporation to have the individual or entity operate bingo games or concessions on behalf of the nonprofit organization.  A nonprofit organization may pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game.

(e)     A nonprofit organization may lend its name or allow its identity to be used by another person or entity in the operating or advertising of a bingo game in which the nonprofit organization is not directly and solely operating the bingo game.

(f)     Prizes given by any nonprofit organization for the playing of bingo games shall not exceed the cash amount or gifts of equivalent value set by these Rules and Regulations for any bingo session.  For the purposes of these Rules

and Regulations, no single prize given by any nonprofit organization, or on its behalf, for the playing of bingo games shall exceed $20,000,000 in cash or equivalent value during any bingo session.

(g)     No person who has been convicted of a felony offense, and whose civil rights have not been restored by law, shall conduct or in any way participate in the operation of any bingo game permitted hereunder, nor shall any person who has been convicted of any gambling offense be permitted to conduct or in any way participate in the operation of any bingo game permitted hereunder within 12 months of the conviction.

## Section 10:  Records and Accounting

Each license holder shall keep and maintain the following records and accounts pertaining to each bingo session conducted by it for at least three (3) years from the date of such session:

(a)     An itemized list of all gross receipts for each bingo session, which shall include all receipts derived from the sale of bingo cards, entrance fees, donations, or from any other source whatsoever pertaining to the operation of such session.  Notwithstanding the foregoing, the holder of a Class B License who has contracted with an individual, firm, association or corporation for the operation of bingo games shall only report the Class B License holder's gross receipts under such contract and provide a copy of such contract to the Sheriff.

(b)     An itemized list of all expenses, costs and disbursements, other than prizes, paid or given as a result of the operation of any bingo session, together with the name and address of each person to whom said expenses, disbursements or consideration was paid or given; a receipt or invoice for all items purchased and for all services rendered; and such other records as will adequately reflect the amount and nature of such expenses, costs and disbursements.  Notwithstanding the foregoing, the holder of a Class B Bingo License who has contracted with an individual, firm, association or corporation for the operation of bingo games which permits the holder to receive reasonable compensation for the operation of a bingo session net of the costs associated with the operation of the bingo games, including without limitation, building rent, insurance, equipment rental, consulting or management fees, employee expense, utilities, janitorial services, bingo prizes or gifts and the like, shall only be required to maintain a copy of such contract and provide a copy of same to the Sheriff upon request.

(c)     All records, receipts, accounts and/or lists required to be kept and maintained hereunder shall be open to inspection by the Sheriff, or his

9

authorized agents or representatives, during reasonable business hours.

(d)     All locations at which bingo games are being held by a license holder, or at which a license holder intends to conduct bingo games, shall be open to the Sheriff, or his authorized representatives, during all times at which bingo games are being conducted and during all other reasonable business hours.

(e)     On or before April 15, 2005, and on or before April 15th of each calendar year thereafter, each license holder who held a license for all or any part of the preceding calendar year shall file with the Sheriff a verified copy of all records, receipts, accounts and/or lists required to be kept or maintained hereunder relating to the operation of bingo games for said previous calendar year.

## Section 11:   Enforcement and Supervision; Rules; Bonds

(a)     The Sheriff shall be charged with the duty to and shall enforce and supervise the administration and enforcement of all of the rules, regulations and reporting required hereunder. In addition to these Regulations, the Sheriff shall enforce all applicable criminal and civil laws of the State of Alabama to prevent and discourage any illegal activity.

(b)     The Sheriff may require such acceptable sureties and/or bonds which he deems reasonable or necessary to insure proper compliance with these Rules and Regulations and the submission of such acceptable sureties or bonds shall be a condition precedent to the issuance of any license hereunder.  The operator and surety or sureties shall be jointly and severally responsible for payment of prizes to winners, said payment to occur no later than the end of the session during which the prize was won.

## Section 12:   Revocation of Licenses; Appeal

The Sheriff, for good cause shown, may revoke any license issued pursuant hereto if the license holder or any officer, director, agent, employee or member of the license holder, or any person acting in concert with such persons, violates any of the Regulations herein promulgated. Such revocation by the Sheriff shall become effective ten (10) days after written notice of such revocation has been delivered by the Sheriff, or his authorized representative, to any person named in the license application pursuant to Section 4, subsections (c)(4) and (c)(5) hereunder, or such other person as may be involved in the operation of bingo pursuant hereto, unless the license holder shall make a written request for a hearing as to such revocation to the Macon County Commission within said ten (10) day

10

period. Upon such request for hearing, the Commission shall hold a hearing upon such revocation, subject to rules and regulations for the conduct of meetings and hearings before such Commission, at its next regularly scheduled meeting, or specially called meeting for the purpose of such hearing. Upon such hearing the rendering of a decision adverse to the license holder shall result in the immediate revocation of the subject license. Following a hearing and rendition of an opinion by the Commission upon revocation of a license issued hereunder, either party to said hearing may appeal the same to the Circuit Court of Macon County, Alabama and may request a trial by jury. Pending appeal to the Circuit Court hereunder, the revoked license shall remain revoked until and unless the Circuit Court shall order the same reinstated and shall set a reasonable bond to assure complete compliance with all Rules and Regulations promulgated hereunder pending such appeal.

## Section 13:   Effect of Revocation

The holder of any license issued pursuant hereto which shall be revoked as herein set out shall return such license to the Sheriff on or before the effective date of such revocation and whether returned or not such license shall be void and not valid beyond the effective date of revocation thereof unless such revocation shall be extended by appeal as provided hereunder. A license holder whose license is revoked in consequence of a violation of any rule or regulation promulgated herein, or other rule or regulation promulgated hereunder, shall be ineligible to apply for or have issued to it another license hereunder for a period of one (1) year after the effective date of such revocation. Nor shall any license be issued to any organization which is directed or controlled by persons listed in the application for license filed pursuant to Section 4, subsections (c)(4) and (c)(5) hereof in regard to the revoked license or to any organization of which the membership is substantially the same as any organization whose license has been revoked hereunder, for a period of one (1) year after the effective date of such revocation.

## Section 14:   Appeal of Denial of License

Any nonprofit organization whose application for a license hereunder shall be denied by the Sheriff pursuant to these Regulations shall have the right to appeal such denial to the Macon County Commission and to the Circuit Court of Macon County in the same manner as an appeal of a revocation of a license issued hereunder may be appealed pursuant hereto provided, however, that such organization shall not operate any bingo game until such application shall have been granted, and a license issued, pursuant to any order of the said Commission or Court.

11

## Section 15:  Compliance With Federal Law

All electronic, computer, technologic aids and other devices used in connection with the operation of licensed bingo games conducted in Macon County under the authority of Amendment No. 744 to the Constitution of Alabama and permitted under the Rules and Regulations for the Licensing and Operating of Bingo Games promulgated by the Sheriff of Macon County are expressly enumerated as lawful and exempted from the provisions of 15 U.S.C. § 1172.

## Section 16:  Severability

The provisions hereto and the Regulations promulgated hereunder are severable. If any part hereof shall be declared invalid or unconstitutional, such declaration shall not affect any parts hereof which shall remain.

## Section 17:  Amendments

The Sheriff reserves the right to amend these Regulations from time to time as necessary, but no amendments shall be effective unless in writing and signed by the Sheriff.

## Section 18:  Effective Date.

The effective date of these Second Amended and Restated Rules and Regulations is January 1, 2005.

Issued this the __6__ day of __January__, 200_5_.

David M. Warren
Sheriff of Macon County, Alabama

12

# COMMENTARY TO SECOND AMENDED AND RESTATED BINGO REGULATIONS

The Attorney General for the State of Alabama has recently conducted an exhaustive investigation and review of gaming activities in the State of Alabama, including but not limited to, bingo games conducted in Macon County, Alabama, pursuant to Amendment No. 744 of the Constitution of Alabama. In response to the Attorney General's recent findings and pronouncements, the First Amended and Restated Rules and Regulations For the Licensing and Operation of Bingo Games in Macon County (the "Macon County Bingo Regulations") are hereby amended and restated to comport and comply with the Attorney General's definition of bingo games and policy to limit Class B bingo gaming activities in Macon County, Alabama, at a reasonable level whereby the Sheriff can more adequately and effectively regulate and enforce the proper conduct of such bingo games. Accordingly, the following changes have been made to the Macon County Bingo Regulations:

**Section 1(a):** The definition "Bingo" or "Bingo games" is hereby amended to add four new sentences to be inserted after the first sentence and before the second sentence of the current definition in order to adopt the Attorney General's pronouncement of bingo games that are lawful in the State of Alabama.

**Section 2:** A new sentence has been added to the end of Section 2 to limit the number of Class B Licenses that may be issued in order to follow the policy of the Attorney General to limit Class B bingo gaming activities in Macon County, Alabama, and to allow the Sheriff to more effectively regulate and enforce the proper conduct of such bingo games.

**Section 4:** The second sentence has been revised to allow licenses to be issued for five (5) years, rather than one (1) year. This revision will reduce and avoid additional administrative costs of review and processing of renewal applications for the Sheriff, although the annual license fee will still be required.