IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., ) ) ) | |
| Plaintiffs, ) | CASE NO.: 3:06-cv-01113-WKW-CSC |
| vs. ) ) | |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., ) ) ) ) | |
| Defendants. ) | |

**DEFENDANT SHERIFF WARREN'S RESPONSE TO THE COURT ORDER TO SHOW CAUSE, REGARDING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

By Order dated June 8, 2007, the Court directed the Defendants, including David Warren, to show cause why the Plaintiffs' Motion for Leave to file the Third Amended Complaint should not be granted. This response is filed in accordance with said Order and Sheriff Warren submits that this Court should deny the Motion for Leave to File the Third Amended Complaint. In support thereof Sheriff Warren shows unto the Court the following:

### SUMMARY OF THE ARGUMENT

Although FED. R. CIV. P. 15(a) has a liberal amendment policy, it is not automatic. A movant is held to a standard set forth by the Supreme Court to ensure that any party or claim added is done so without prejudice. *See, Foman v. Davis,* 83 S.Ct. 227 at 230, 371 U.S. 178 at 182, 9 L.Ed.2d 222 (1962). Here, there are specific, significant reasons justifying denial of Plaintiffs' proposed Third Amended Complaint. The proposed Third Amended Complaint is prejudicial in that it is used as a pretext to libel or seeks the disqualification of attorney Fred Gray, Jr.; it is the product of undue delay; and the proposed amendment is futile and unable to withstand summary judgment. Therefore, justice requires that Plaintiffs' proposed Third Amended Complaint is due to be denied.

## SUMMARY OF RELEVANT FACTS

1. Plaintiffs filed the initial Complaint on December 18, 2006.

2. On March 12, 2007, Plaintiffs with leave of the Court, filed their First Amended Complaint and added Milton McGregor and Macon County Greyhound Park as Defendants.

3. On June 6, 2007, with leave of the Court, Plaintiffs filed their Second Amended Complaint.

4. On June 7, 2007, Plaintiffs filed a Motion for Leave to File the Third Amended Complaint. A copy of said proposed Third Amended Complaint is attached to Plaintiffs' Motion for Leave.

5. Defendant Sheriff Warren did not file any objections to Plaintiffs First Amended Complaint nor their Second Amended Complaint; however, Sheriff Warren strenuously opposes the Third Amended Complaint and respectfully urges the Court to deny the Motion For Leave to File the Third Amended Complaint.

## ARGUMENT

### I. ALLOWING PLAINTIFFS TO AMEND THEIR COMPLAINT FOR A THIRD TIME WOULD UNDULY PREJUDICE SHERIFF WARREN

A proposed amended complaint must be denied if it is prejudicial to the Defendants. *See, Foman*, supra. Plaintiffs' proposed third amended complaint hurls baseless allegations of moral, ethical, and legal misconduct on the part of Fred D. Gray, Fred D. Gray, Jr., and their law firm in an effort to libel or disqualify Fred D. Gray, Jr., from his zealous representation of Sheriff Warren. Despite Plaintiffs' claims of violation of RICO statutes, equal protection violations and bribery, Fred D. Gray, Fred D. Gray, Jr., and their law firm are not named Defendants and only represent Sheriff

Warren in this matter having done so in accordance with and in the confines of moral, ethical and legal guidelines. (An affidavit of Fred D. Gray is attached. The affidavit addresses the claims made by Plaintiffs and stands in stark contrast to the unsubstantiated claims made in the proposed third amendment). The proposed third amended complaint is being used as a soapbox to throw out spurious allegations against parties that are not named Defendants in an effort to leave Defendant Sheriff Warren searching for new counsel and to confuse the issues before this Court.

Consider how many times in the proposed third amended complaint, Fred D. Gray, Fred D. Gray, Jr., and the Gray Law Firm are personally named in the complaint. In the body of the complaint and footnotes, Fred D. Gray, Fred D. Gray, Jr., and the Gray Law Firm are named over 100 times. There is absolutely no legal reason why Plaintiffs need to personally name these officers of the Court so many times in order to allege facts that state a cause of action upon which relief can be granted.

Fred D. Gray and his firm represents Macon County Greyhound Park and Fred Gray has represented Macon County Greyhound Park since at least the early part of 1984; however, they do not represent Macon County Greyhound Park in this case. Macon County Greyhound Park has many lawyers and Fred Gray and the Gray Firm only represent Macon County Greyhound Park on matters in which they are specifically retained. These lawyers do not represented Macon County Greyhound Park in this litigation.

In paragraph thirty-eight of Plaintiffs' proposed third amended complaint, Plaintiffs imply that Sheriff Warren retained Fred D. Gray, Jr., for the sole purpose of promulgating the rules and regulations for the operation of bingo in Macon County: "[i]n pursuit of their common goal, Defendants Warren, McGregor, and Victoryland retained the same attorney, Fred Gray, Jr., to

represent them with regard to the formation of the rules and regulations for licensing and conducting of bingo games." Fred Gray, Jr., has an attorney-client relationship with Sheriff Warren which predates this litigation and even the Sheriff's election. Fred Gray, Jr., represented Sheriff Warren when he was Chief of Police and Assistant Chief of Police of the City of Tuskegee and has continuously represented him since that time. This representation occurred long before Amendment 744 became effective and conferred upon the Sheriff the constitutional duty to promulgate rules and regulations for the operation of bingo in Macon County, Alabama.

Although this is a serious matter not taken lightly by Fred D. Gray, Fred D. Gray, Jr., or the Gray Law Firm, some of the assertions made by Plaintiffs are laughable. For example, paragraph seventy-five of Plaintiffs' proposed third amended complaint when accusing the Grays of bribery, states "[a]ll of these things had value in the mind of Fred Gray Jr." Not only are the "things of value" items that are either non-existent or irrelevant, but the Plaintiffs claim to know what was in the mind of Fred D. Gray, Jr.

Justice requires that this Court deny the Motion for Leave for the filing of the Third Amended Complaint because plaintiffs having been unable to draft a complaint prior to this time which would withstand statutory and constitutional scrutiny. They now have focused their attention away from the merits of the case and make personal attacks against Fred Gray, Jr., Fred D. Gray, and the Gray Law Firm. Sheriff Warren has suffered irreparable harm by the plaintiffs having filed the Motion for Leave to file the Third Amended Complaint in that attacking his lawyers and subjecting them to the possibility of being disqualified from representing him in this cause. He has of necessity, employed additional counsel to represent him in this matter.

## II. PLAINTIFFS HAVE UNDULY DELAYED PRESENTMENT OF THE ALLEGATIONS IN THE PROPOSED THIRD AMENDED COMPLAINT.

A proposed amended complaint must be denied if it is untimely. *See, Foman*, supra. In Plaintiffs' most recent Motion for Leave to Amend, it is particularly telling that there is no assertion that the new information contained in the proposed third amended complaint is based on previously unknown or unavailable information. Discovery is in its infancy with no depositions conducted, yet Plaintiffs concoct a third amended complaint with information that purports to have detailed knowledge of meetings, shareholdings, and introduces a new Plaintiff, Lucky Palace.

However, Plaintiffs' allege Lucky Palace, in paragraph thirty-four of the proposed Third Amended Complaint, embarked on an endeavor to build and operate a bingo parlor in Macon County when Amendment 744 was approved in November, 2003. Plaintiffs have waited for over three years until June 7, 2007, before they filed the proposed Third Amended Complaint introducing Lucky Palace as a Plaintiff.

The proposed third amended complaint must be viewed in the light of the history of this litigation. The history discloses that the plaintiffs are having a difficult time, even satisfying themselves, that they have filed a complaint based upon the law and the facts that states a cause of action upon which relief can be granted. The proposed third amended complaint comes on the heels of a second amended complaint which was recently filed. Having failed to satisfy themselves with their original complaint, the first amended complaint, and the second amended complaint, they now have undertaken an entirely new tactic - - attacking the attorneys and the law firm that represent Sheriff Warren. Plaintiffs had several opportunities to correctly state a claim, but each has missed the mark. Now, serious allegations are being levied against non-parties in a last-ditch effort to maintain a viable claim and confuse the issues.

Not only is Plaintiffs' proposed amended complaint untimely, but it smacks of bad faith that the Supreme Court warns District Courts to be wary of. *See, Foman,* supra. As a result, Plaintiffs' Motion for leave to file the proposed amended complaint is due to be denied.

### III.   PLAINTIFFS' PROPOSED THIRD AMENDED COMPLAINT ALLEGES ACTIONS THAT CANNOT BE PROVEN AND ARE RAISED IN FUTILITY.

A Court is properly acting within its discretion if it denies an amendment that would be futile. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004). To survive a claim of futility, Plaintiffs must allege facts that would withstand a motion for summary judgment. *Id.* (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Plaintiffs' proposed third amended complaint alleges bribery, racketeering and conspiracy involving parties that Plaintiffs are allegedly aware of, but refuse to name as Defendants. The Supreme Court has heard the cry of the Defendant subjugated by Plaintiffs that allege anything under the sun. In *Bell Atlantic Corp v. Twombly*, 550 U.S. _____ (2007), 2007 WL 1461066, the Supreme Court set a new standard for a pleading to survive summary judgment stating

> "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do...Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 8-9.

The Court when on to rejuvenate an old footnote by restating "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed. *Id.* (citing *Associated Gen. Contractors of Cal, Inc. v. Carpenters*, 459 U.S. 519, 528 n. 17 (1983). Plaintiffs' proposed third amended complaint lacks the factual basis to survive a summary judgment argument and must fail due to futility. Again, this Court is directed

to the attached affidavit of Fred D. Gray wherein all allegations made by Plaintiffs against him are defended with his forthright disclosure of facts clearly not in possession of the Plaintiffs.

## CONCLUSION

Plaintiffs proposed third amended complaint must be seen for what it is, an obvious attempt to discredit Fred D. Gray, Fred D. Gray, Jr., the Gray Law Firm, and Sheriff Warren. With no factual basis for the allegations, Plaintiffs proposed third amended complaint is due to be denied as prejudicial, untimely, and futile.

**RESPECTFULLY SUBMITTED**, this the 15th day of June, 2007.

JAMES H. ANDERSON [AND021]
RYAN WESLEY SHAW [SHA071]

**OF COUNSEL:**
BEERS, ANDERSON, JACKSON,
 PATTY, VAN HEEST & FAWAL, P.C.
P.O. Box 1988
Montgomery, Alabama 36102

**OF COUNSEL:**
Fred D. Gray, Esq.
Fred D. Gray, Jr., Esq.
GRAY, LANGFORD, SAPP,
 MCGOWAN, GRAY & NATHANSON
P. O. Box 830239
Tuskegee, AL 36083-0239

7

## CERTIFICATE OF SERVICE

  I hereby certify that on June 15, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert K. Spotswood, Esq.
Michael T. Sansbury, Esq.
SPOTSWOOD, SANSOM & SANSBURY L.L.C.
940 Concord Center
2100 Third Avenue North
Birmingham, AL 35213

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Kristi Doss Driver, Esq.
HASKELL, SLAUGHTER, YOUNG, REDIKER, L.L.C.
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203

John Mark White, Esq.
Augusta S. Dowd, Esq.
Rebecca DePalma, Esq.
WHITE, ARNOLD, ANDREWS & DOWD
2025 Third Avenue North
Suite 600
Birmingham, AL 35203

John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
SASSER, BOLTON, STIDHAM & SEFTON, P.C.
P. O. Box 242127
Montgomery, AL 36124

/s/ [signature]
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HOPE FOR FAMILIES & COMMUNITY   )
SERVICES, INC., et al.,          )
                                 )
                                 )
         Plaintiffs,             )
                                 )
                                 )
vs.                              )   CIVIL ACTION
                                 )   NO.: 3:06-cv-01113-WKW
                                 )
DAVID WARREN, In his Official    )
Capacity as the SHERIFF OF       )
MACON COUNTY, ALABAMA,           )
                                 )
         Defendants.             )

**AFFIDAVIT OF FRED D. GRAY**

My name is Fred D. Gray. I reside at 1005 East Lakeshore Drive, Tuskegee, Alabama. I have been a resident of Macon County, Alabama since 1965. I have practiced law in this State for more than fifty-two (52) years. I was admitted to practice before the Supreme Court of Alabama on September 7, 1954 and admitted to practice in this Court shortly thereafter.

I have represented Macon County Greyhound Park since shortly after it was incorporated and have represented the Macon County Greyhound Park continuously since that time. I represent Macon County Greyhound Park when requested to do so on specific matters. I have never held an office and never been a director in the corporation. I have never been involved in the management of the corporation. In 1983, prior to the

construction of the facility, I was extended an opportunity to purchase stock in Macon County Greyhound Park and purchased some stock at that time. I never discussed the details of the purchase of that stock with anyone other than my late wife, Bernice.

There is absolutely no connection between my purchasing stock in Macon County Greyhound Park in 1983 and the conduct of Bingo at the facility, nor is there any connection between my owning stock in Macon County Greyhound Park and the Rules and Regulations for Bingo promulgated by the Sheriff of Macon County.

I was not retained by Macon County Greyhound Park for the purpose of doing anything in connection with Rules and Regulations governing Bingo, nor have I, at any time, advised Macon County Greyhound Park concerning the same. I was not involved because I knew that Fred Gray, Jr., who had represented the Sheriff for over ten years, was working with the Sheriff on the Rules and Regulations.

I am one of the founders of the Tuskegee Human and Civil Rights Multicultural Center (the Center). A Copy of a brochure to the Center is attached hereto and made part of this Affidavit. Incorporated in 1997, the Center is housed in a facility in Tuskegee, Alabama that is owned by Macon County and leased to the Center. The Center operates the Museum and Center as the official Visitors' Center for Macon County. The City of Tuskegee has also designated the Center as the official Visitors' Center for the City of Tuskegee. The Center has received grants from the State of Alabama, the United States Government and donations from corporations and individuals. It has received financial assistance as a result of assistance from our two Senators, Richard Shelby and Jeff Sessions and Congressman Mike Rogers. There is nothing illegal, improper or immoral about the Center. As a matter of fact, the Center preserves the rich history of Macon

County and is a permanent memorial for the men in the infamous Tuskegee Syphilis Study.

In 1983 at the time I agreed to do legal work for Macon County Greyhound Park, I discussed the matter thoroughly with Mr. Milton McGregor. At that time I told him of what my record was and that while I personally did not gamble, I saw the value in a pari-mutuel facility in Macon County, considering its importance to the community. I told him that I would be willing to represent Macon County Greyhound Park as long as it abided by existing federal, state, and local laws. If at anytime I felt it was violating these laws, I would cease to represent it. Over the years, Macon County Greyhound Park has been the subject of a federal grand jury investigation, in the Middle District of Alabama, Montgomery County Grand Jury, and Macon County Grand Jury. None of these grand juries have ever returned indictments charging any illegal activities by Macon County Greyhound Park.

In cases which come to our law firm from Macon County Greyhound Park, I usually review the cases and assign them to the various lawyers. I have not assigned Fred D. Gray, Jr., to any case involving Macon County Greyhound Park during the last seven years. It is my understanding that Fred Gray, Jr., has never performed any legal work for Milton McGregor. The lawyer who has been primarily working on cases involving Macon County Greyhound Park in our firm is Stanley Gray. I know of no financial benefits which Fred D. Gray, Jr., has received from Macon County Greyhound Park. We have not engaged in any pattern of racketeering activities. I am not guilty of violating any Alabama bribery statute.

All of the funds that I or this law firm have received from Macon County

Greyhound Park were earned fees based on professional services which we rendered as a lawyer on behalf of Macon County Greyhound Park, except for dividends. Whatever dividends I may have received from Macon County Greyhound Park was a result of my investment and that income was properly reported to both the Alabama Department of Revenue and Internal Revenue Service and appropriate taxes paid thereon.

To my knowledge, Fred D. Gray, Jr., has not violated the *Code of Alabama Section 13(A)-10-61(a)(2)* nor any other Alabama bribery statute. I know there have been no funds received by the Gray Law Firm from Macon County Greyhound Park that has anything to do with Bingo. No such funds have been received by this firm nor disbursed by the firm to Fred D. Gray, Jr. The only legal fees which I have received or the law firm has received from Macon County Greyhound Park were as a result of professional legal services which we performed. I have received no promise from any defendants with reference to any future legal fees.

I have not traveled in a plane owned or under the control of Defendant McGregor for over ten (10) years. To my knowledge, Fred Gray, Jr. has never traveled in a plane owned or operated under the control of Defendant McGregor.

I do not know of anything of value that Macon County Greyhound Park has bestowed upon Fred D. Gray, Jr. So far as I know, he has received absolutely nothing of value from Macon County Greyhound Park.

I believe our law firm has a very good reputation. We have been very successful in representing both plaintiffs and defendants, particularly in the Federal District Courts and state courts including Macon County, Alabama. We have never offered nor have we received a bribe to do anything for anybody.

Dated this 14th day of June, 2007.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me this 14th day of June, 2007.

(SEAL)     _____
NOTARY PUBLIC
My Commission Expires: 8/17/09

# History Untold Is History Lost

## What You Can Do To Help

The Center is tax-exempt and nonprofit, with primary emphasis on education and activities related to human rights, civil rights, historic preservation, and cultural preservation.

There are numerous individuals and organizations who have made important American contributions from civilization to Civil War to Civil Rights. Many seemingly small, unknown actions are significant. The Center will highlight previously "unsung heroes." You or a member of your family might be one of them.

Interested individuals can donate money as well as memorabilia, letters, photographs, and documents which help tell the history of human and civil rights.

Your financial support is needed to move the Center from concept to reality. With your monetary assistance, the Center will be able to build museum exhibits, record history while still fresh on the minds of the history makers, create and present public programs, and incorporate technology to stimulate youth to want to learn more and have a greater appreciation for history. Contributions will provide a place for all of this to happen. Help us preserve the distinctiveness of the South, local perspectives of Alabama history, and the incredible history that has helped shape 21st century America.

YES, I want to support the work of the Tuskegee Human and Civil Rights Multicultural Center for the education and preservation of history. Enclosed is my tax-deductible contribution of

☐ $50  ☐ $75  ☐ $100  ☐ $250  ☐ $500  ☐ $ _____

Name: _____
Address: _____
Phone: ( ) _____
E-mail: _____

Please make checks payable to and mail to: Tuskegee Human and Civil Rights Multicultural Center, P.O. Box 830768, Tuskegee, AL 36083-0768.

---

## Introducing

# THE TUSKEGEE HUMAN AND CIVIL RIGHTS MULTICULTURAL CENTER

*One historic place . . .*

*three historic cultures*

*. . . and the many*

*tragedies and triumphs*

*of Southern history*

© Tuskegee Human and Civil Rights Multicultural Center

TUSKEGEE HUMAN AND CIVIL RIGHTS MULTICULTURAL CENTER
104 South Elm Street
Tuskegee, AL 36083-0768
334/724-0800 • Fax 334/727-5877

104 SOUTH ELM STREET
TUSKEGEE, ALABAMA

# The Center's Mission, Purpose, and History

The Tuskegee Human and Civil Rights Multicultural Center recognizes the contributions of Native Americans, European Americans, and African Americans. These are the three major peoples which have figured into the fascinating and complex history of what is now Alabama and the Southeastern United States.

The Center is located in Tuskegee, Alabama, a small town which has played a big role in history. Powerful and well-developed Indian nations were the original residents of the area. Europeans arrived as early as the 1500s; and by the 1700s incoming slaveowners had brought the first Africans to the area. Over the next two hundred years, the area would become synonymous with slavery, segregation, and civil rights. The Center's mission is to show through exhibits and educational programs how Indians, Europeans, and Africans made their marks on the area and interacted with each other. As the history of this area is documented and continues to evolve, other cultures will also be showcased in the Center.

The Center is managed by a board of directors which has Native American, European American, and African American representation. A non-profit organization, the Center was created in 1997 by civil rights attorney Fred D. Gray Sr. in honor of his late wife, Bernice. The Macon County Commission has designated the Center as the county's official visitor center.

# American History Was Made in Tuskegee/Macon County

Tuskegee and Macon County are located in the historic Black Belt of Alabama, a region which was occupied exclusively by Native Americans until the 18th century. By the 1700s the area was the site of military expeditions and a few small forts as the Spanish, British, and French competed for control of what is now the Southeastern United States.

A few, primarily Scottish, traders began moving into the area and settled among the Indians. After the Revolutionary War, the area was increasingly eyed by land-hungry pioneers who wanted the rich black soil of the river bottom lands to grow cotton and corn. In the early 1800s, escalating conflicts between encroaching whites and Indians led to warfare and the Native Americans were defeated and mostly removed to Oklahoma, thus opening the way for white settlers to claim the lands of present-day Alabama. The Center's exhibits will tell the history of the Creek Indian Nation and their culture and society which were well-developed before Europeans.

After the Indian removal, whites came in large numbers, many of them bringing African slaves. Thus began the complex interrelationship between European Americans and African Americans that led to some of the most interesting and significant events in U.S. history.

Here in Tuskegee Booker T. Washington developed Tuskegee Institute (now Tuskegee University), George Washington Carver performed his scientific and agricultural experiments, the Tuskegee Airmen were organized and trained at Moton Field, a VA Hospital to serve African American veterans was established, and voting rights legal cases were litigated beginning in the 1940s. Tuskegee Institute, the VA Hospital, and Moton Field were all established partially on lands which once were large plantations.

Rotating and permanent exhibits at the Center will tell about all of this history.

# The Tuskegee Syphilis Study Exhibit

The Center currently houses an exhibit on the tragic Tuskegee Syphilis Study. For forty years, the U.S. Public Health Service used African American men from the Tuskegee area as unwilling human guinea pigs in a medical experiment to document the effect of untreated syphilis.

More than 600 men were involved in the Study and many died prematurely or suffered because readily available treatment was knowingly withheld from them. The men were not told the truth about their medical conditions and were in the experiment without their informed consent.

The situation came to light in 1972 and was ultimately the subject of a landmark class-action civil lawsuit brought by attorney Fred D. Gray, Sr. However, the Public Health Service did not admit wrongdoing and it was not until 1997 that President Bill Clinton publicly apologized for the government's conduct.

The Center's exhibit, entitled "For the Greater Good," uses photography, video, and sculpture to tell the history of the Study, and its public disclosure.

This powerful, moving exhibit uses the Tuskegee Syphilis Study as a metaphor for medical experimentation to re-examine moral and ethical questions. The presentation includes varying perspectives on the Study from the doctors, the nurses, and the survivors.



*"This museum and exhibit is a tremendous beginning for teaching future generations powerful lessons of the evils and tragedies of history along with the triumph of the human spirit with God's grace."*