## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| Hope for Families & Company Services, Inc. et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No: **3:06-cv-01113-WKW-WC** |
| | ) |
| David Warren, et al., | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS
## PLAINTIFFS' THIRD AMENDED COMPLAINT

OF COUNSEL:
William M. Slaughter (ASB-8283-R67W)
Patricia C. Diak (ASB-9243-K64P)
Peter J. Tepley (ASB-1112-T46P)
Khristi Doss Driver (ASB-2719-I71F)
**Haskell Slaughter Young & Rediker, LLC**
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
Tel.: (205) 251-1000
Fax: (205) 324-1133
E-mail: pt@hsy.com
E-mail: wms@hsy.com
E-mail: pcd@hsy.com
E-mail: kdd@hsy.com

OF COUNSEL:
John M. Bolton, III (ASB-0999-N68J)
Charlanna W. Spencer (ASB-6860-R62C)
**Sasser, Bolton & Sefton, P.C.**
100 Colonial Bank Boulevard
Suite B201
Montgomery, AL  36117
Tel: (334) 532-3400
Fax: (334) 532-3434
E-mail: jbolton@sasserlawfirm.com
E-mail: cspencer@sasserlawfirm.com

OF COUNSEL:
Augusta S. Dowd (ASB-5274-D58A)
J. Mark White (ASB-5029-H66J)
Rebecca DePalma (ASB-4105-D57R)
**White Arnold Andrews & Dowd P.C.**
2025 Third Avenue North
Suite 600
Birmingham, Alabama  35203
Tel: (205) 323-1888
Fax: (205) 323-8907
E-mail: jmarkwhite@waadlaw.com
E-mail: adowd@waadlaw.com
E-mail: rdepalma@waadlaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    PLAINTIFFS' RICO CLAIMS FAIL AS A MATTER OF LAW . . . . . . . . . . . . . . . . . 1

      A.    Gray is not a "Public Servant". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            1.    Gray did not perform a governmental function and
                  was not empowered to exercise any public authority. . . . . . . . . . . . . . . 3

            2.    Gray's advice to the Sheriff regarding bingo regulations
                  cannot be a predicate act for a RICO claim. . . . . . . . . . . . . . . . . . . . . 5

      B.    Plaintiffs' RICO allegations are based on improper speculation and
            conjecture and fail to state a valid RICO claim . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   PLAINTIFFS' SECTION 1983 CONSPIRACY CLAIMS AGAINST
      VICTORYLAND AND MCGREGOR FAIL AS A MATTER OF LAW . . . . . . . . . . . 17

      A.    Plaintiffs' 1983 Conspiracy Claim arises from their bald allegations
            that they were denied equal protection of the law because there is no
            rational basis for certain parts of the Macon County Bingo Regulations . . . . . . 18

      B.    Plaintiffs must show that there is no conceivable rational basis for the
            aspects of the County Bingo Regulations about which they complain. . . . . . . . 19

      C.    Pre-Discovery Motions to Dismiss are entirely appropriate where, as
            here, the  Plaintiffs claim there is no rational basis for a
            governmental regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      D.    Because there is a rational basis for the challenged aspects of the
            County Bingo Regulations, Plaintiffs' 1983 Conspiracy claims fail as
            a matter of law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

            1.    There is a readily apparent rational basis for the Fifteen
                  License Minimum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

            2.    There is a readily apparent rational basis for the Sixty
                  License Maximum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

            3.    There is a readily apparent rational basis for why the County
                  Bingo Rules  allow 59 of 60 electronic bingo licenses to be issued
                  to charities who operate electronic bingo games at Victoryland. . . . . . . 31

            4.    There is a readily apparent rational basis for the County Bingo

i

Regulations' requirement that there be a physical facility that can be inspected before  the facility can become a qualified location for electronic bingo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

III.    THE PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    A.    Plaintiffs claim for tortious interference with contractual and business relations fails to state a claim upon which relief can be granted. . . . . . 34

    B.    Plaintiffs' claim for tortious interference with prospective business relationships fails to state a claim upon which relief can be granted.  . . . . . . . . 36

IV.    CERTAIN OF PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE TWO-YEAR  STATUTES OF LIMITATION  . . . . . . . . . . . . . . . . . . . 38

    A.    Plaintiffs' tortious interference claims are barred by the applicable two-year statute of limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

    B.    Lucky Palace's Section 1983 claims are barred by the applicable two-year statute of limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

    C.    The other Plaintiffs' Section 1983 claims that arise out of the Original County Bingo Rules and the First Amendments thereto are barred by the applicable two-year statute of limitations. . . . . . . . . . . . . . . . . . . . . . . . . . 43

    D.    Any Section 1983 claims against Victoryland and McGregor, who were not added as parties until March 12, 2007, are barred by the applicable two-year statute of limitations.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Albra v. City of Fort Lauderdale*,
No. 06-14544, 2007 WL 1213230, *4 (11th Cir. April 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
416 F.3d 1242, 1248 -1249 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Alfaro v. E.F. Hutton & Co., Inc.*, 606 F. Supp. 1100 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . 10

*Allen v. Newsome*, 795 F.2d 934, 938 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Ambrosia Coal & Const. Co. v. Pages Morales*,
482 F.3d 1309, 1316 -1317 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Anderson-Free v. Stepoe*, 970 F. Supp. 945, 953 (M.D. Ala. 1997) . . . . . . . . . . . . . . . . . . . 41, 43

*Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 740 (9th Cir. 2003) . . . . . . . 30, 31

*Barber v. Business Prods. Ctr.*, 677 So. 2d 223, 227 (Ala. 1996) . . . . . . . . . . . . . . . . . . . . . . . 34

*Baumer v. Pachl*, 8 F.3d 1341, 1344-45 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bergmann v. City of Melrose*, 420 N.W.2d 663 (Minn. App. 1988) . . . . . . . . . . . . . . . . . . . . . . 30

*Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*,
832 F. Supp. 585, 590-91 (E.D.N.Y.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bradshaw v. Dayton*, 514 S.E.2d 831 (Ga. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Calhoun v. Alabama Alcoholic Beverage Control Board*,
705 F.2d 422, 424 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*California v. Cabazon*, 480 U.S. 202, 211 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28

*City of New Orleans v. Dukes*, 427 U.S. 297 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Cliff v. Payco General Amer. Credits*, 363 F.3d 1113 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . 40

*Crowley v. State*, 268 N.W.2d 616, 618 (S.D. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*D'Orange v. Feely*, 877 F. Supp. 152, 156 (S.D.N.Y.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dean v. United States*, 278 F.3d 1218 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Division of Beverage v. Dav-Ed, Inc*., 324 So.2d 682 (Fla. Dist. Ct. App. 1975) . . . . . . . . . . . 31

*Dykes v. Hosemann*, 743 F.2d 1488, 1504 -1505 (11th Cir.1984)  . . . . . . . . . . . . . . . . . . . . . . 13

*Equitable Life Assur. Soc. of U.S. v. Alexander Grant & Co.*,
627 F. Supp. 1023, 1029 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ex parte Alabama Dep't of Transp*., 764 So.2d 1263, 1270 (Ala. 2000)  . . . . . . . . . . . . . . . . . 37

*Ex parte Alabama Dep't of Transp*., 764 So.2d at 1270  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*F.C.C. v. Beach Commc'ns, Inc*., 508 U.S. 307, 313 (1993) . . . . . . . . . . 18, 19, 21, 22, 25, 28, 33

*Forzley v. AVCO*, 826 F.2d 974, 981 (11th Cir. 1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Foster v. Board of School Comm'rs*, 872 F.2d 1563, 1567 n.4 (11th Cir. 1989)  . . . . . . 41, 43, 44

*Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir.1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Georgetown Manor, Inc. v. Ethan Allen, LLC,* 47 F.3d 1099, 1101 (11th Cir. 1995) . . . . . . . . 37

*Gilmore v. Berg*, 820 F. Supp. 179, 183 (D.N.J.1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 727 (7th Cir. 1998)  . . . . . . . . . . . . . . . . . . . 10

*Goren v. New Vision Intern., Inc.,* 156 F.3d 721, 728 n. 4 (7th Cir. 1998) . . . . . . . . . . . . . . . . . 7

*Gulfstream Park Racing Ass'n Inc. v. Tampa Bay Downs, Inc.,*
399 F.3d 1276, 1278 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28, 29
*H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 443 (N.D. Ill. 1987)  . . . . . . . . . . . . . . . . . 14

*Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Heard v. Nix*, 170 Fed.Appx. 618, 619, 2006 WL 452086, **1 (11th Cir. 2006) . . . . . . . . . . . 13

*Helton v. Hunt*, 330 F.3d 242, 246 (4th Cir. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Holloway v. Jackson,* 412 So.2d 774, 778 (Ala. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 44

*Humphrey v. Viacom, Inc.,*
No. 06-2768,  2007 WL 1797648, *4 (D.N.J. June 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*International Paper Co. v. Town of Jay*, 928 F.2d 480, 485 (1st. Cir. 1991)  . . . . . . . . . . . . . . 26

*Izquierdo Prieto v. Mercado Rosa*, 894 F.2d. 467, 471 (1st Cir. 1990)  . . . . . . . . . . . . . . . . . . 24

iv

*Johnson v. Collins Entertainment Co. Inc.*, 199 F.3d 710, 720 (4th Cir. 1999) . . . . . . . 20, 21, 29

*Jones v. Childers*, 18 F.3d 899, 910 (11th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kelo v. City of New London*, 545 U.S. 469, 484 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Knapp v. Hanson,* 183 F.3d 786, 789 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Landers v. Eastern Racing Ass'n*, 97 N.E.2d 385, 394 (Mass. 1951) . . . . . . . . . . . . . . . . . . . 29

*Lewis v. United States*, 348 U.S. 419, 423 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lofton v. Secretary of Dept. of Children & Families,*
358 F.3d 804, 818 (11th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Luftkin v. McCallum*, 956 F.2d 1104 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*MAC East, LLC v. Shoney's, LLC*, 2007 WL 60922 *5 (M.D. Ala. Jan. 8, 2007) . . . . . . . . . . 34

*Maldonado v. Snead*, 168 Fed.Appx. 373, 380; 2006 WL 436030, **6 (11th Cir. 2006) . . . . . 13

*Marvin v. Trout*, 199 U.S. 212 (1905) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Michael Linet, Inc. v. Village of Wellington, Florida,* 408 F.3d 757 (11th Cir. 2005) . . . . . . . 40

*Mohawk Industries*, 465 F.3d at 1283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Myers v. County of Orange*, 157 F.3d 66, 75 n.3 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 24

*Newsome v. Lee County, Ala.*, 431 F. Supp.2d 1189, 1202 (M.D. Ala. 2006) . . . . . . . . . . . 17, 33

*Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NYC CLASH, Inc. v. City of New York*, 315 F. Supp. 2d 461, 486 (S.D.N.Y. 2004) . . . . . . 21, 24

*Ocala Kennel Club, Inc. v. Rosenburg,*
725 F. Supp. 1205, 1207-08 (M.D. Fla. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28, 29

*Pacific States Box & Basket Co. v. White*, 296 U.S. 176, 184 (1935) . . . . . . . . . . . . . . . . . . . . 31

*Parrish v. Consolidated City of Jacksonville,*
No. 304-CV-986J32HTS,  2005 WL 1500894, *1, 3-4 (M.D. Fla. June 22, 2005) . . . . 24, 25, 27

*People v. Tuttle*, 356 N.Y.S.2d 652 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Phelan v. City of Chicago*, 125 F. Supp. 2d 870, 876 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . 22

*Posadas de Puerto Rico Assocs. v. Tourism, Co.,* 478 U.S. 328, 346-47 (1986) . . . . . . . . . . . . 20

*Primm v. City of Reno*, 252 P.2d 835, 838 (Nev. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Ralston v. Capper*, 569 F. Supp. 1575, 1581 (E.D. Mich. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Redtail Leasing, Inc. v. Bellezza*,
No. 95 Civ. 5191(JFK), 1997 WL 603496, at *5 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . 7

*Richter v. Sudman*, 634 F. Supp. 234, 240 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rodriguez v. Jones*, 64 So. 2d 278, 279 (Fla. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . 18
*Sate v. Mullin*, 778 P.2d 233 (Ak. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schism v. U.S.*,  972 F. Supp. 1398, 1407 (M.D. Fla. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Simms v. Farris*, 657 F. Supp. 119, 124 (E.D. Ky. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Sinclair v. Hawke*,  314 F.3d 934, 943-44 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Soap v. Ecolab, Inc*., 646 So. 2d 1366 (Ala. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Spivey v. Ohio*, 999 F. Supp. 987, 992 (N.D. Ohio 1998) . . . . . . . . . . . . . . . . . . . . . 23, 25, 27, 28

*St. John's Melkite Catholic Church v. Commissioner of Revenue*,
242 S.E.2d 108 (Ga. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Stanton v. State,* 130 P.3d 486, 493 (Wyo. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*State ex rel. Grimes v. Board of Comm'rs of Las Vegas*, 1 P.2d 570, 572 (Nev. 1931) . . . . . . . 29

*State v. Perez,* 883 A.2d 367, 368 (N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Taylor v. Siegelman*, 230 F. Supp.2d 1284, 1295 N.20 (N.D. Ala. 2002) . . . . . . . . . . . . . . . . . . 20

*Teitel v. Wal-Mart Stores, Inc*., 287 F. Supp. 2d 1268, 1282 (M.D. Ala. 2003) . . . . . . . . . . . . 34

*Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*,
934 F.2d 976, 981 (8th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tom's Food, Inc. v. Carn*, 896 So. 2d 443, 453 (Ala. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 37

*U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*,
290 F.3d 1301, 1314, n. 25 (11th Cir. 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*U.S. v. Bascaro*, 742 F.2d 1335, 1362 (11th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*U.S. v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Edge Broadcasting Co*., 509 U.S. 418, 426 (1993) . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Hurst*, 951 F.2d 1490, 1493 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 20, 28

*University of Md. at Baltimore v. Peat, Marwick, Main & Co*.,
996 F.2d 1534, 1539 (3d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Van Dorn Co., Cent. States Can Co. Div. v. Howington*,
623 F. Supp. 1548, 1555, 4 Fed. R. Serv. 3d 1199 (N.D. Ohio 1985) . . . . . . . . . . . . . . . . . . . . 10

*Vaughan v. Marshall,* 2006 WL 1476043, *7-8  (M.D.Ala.2006) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Vaughan v. State*, 880 So.2d 1178 (Ala. Crim. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Vicom*, 20 F.3d at 778 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wal-Mart Stores, Inc. V. City of Turlock*,
483 F. Supp. 2d 1023, 1036-37 (E.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Watt v. Firestone*, 491 So. 2d 592, 594 n.4 (Fla. Dist. Ct. App. 1986) . . . . . . . . . . . . . . . . . . . 30

*Wroblewski v. City of Washburn,* 965 F.2d 452, 459-460 (7th Cir. 1992) . . . . . . . . . . . . . . . . . 23

**Statutes**
18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

18 U.S.C. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Ala. Code § 6-2-38(l)(1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Ala.Code 1975 § 13A-10-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Ala.Code 1975 § 13A-10-61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

F. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 12, 28

F. R. Civ. P. 15 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

F. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**Other Authorities**
*Goldsmith & Keith, Civil RICO Abuse: The Allegations in Context*,
1986 B.Y.U. L. Rev. 55, 105-07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pursuant to Rule 12(b)(6), Defendants Macon County Greyhound Park, Inc. ("Victoryland") and Milton McGregor ("McGregor") have moved the Court to dismiss the Plaintiffs' Third Amended Complaint (Doc. # 67) for failure to state claims upon which relief can be granted against them. Victoryland and McGregor submit this brief in support of that Motion.

The first section of this brief addresses the fatal defects in Plaintiffs' RICO claims. The second section sets forth the reasons why Plaintiffs' Section 1983 conspiracy claims against Victoryland and McGregor fail as a matter of law. The third section discusses the inadequacies of the Plaintiffs' claims for tortious interference with both existing and prospective business and contractual relationships. The fourth section shows why: (a) the Plaintiffs' tortious interference claims are barred by the applicable two-year statute of limitations; (b) Plaintiff Lucky Palace's Section 1983 claims are barred by the applicable two-year statute of limitations; and (c) the other Plaintiffs' 1983 claims that arise out of the Original County Bingo Rules and the First Amendments thereto are barred by the applicable two-year statute of limitations.

## I.     PLAINTIFFS' RICO CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs make two claims for violations of the Racketeer Influenced and Corrupt Organizations Act (*see* Doc. # 67, ¶¶ 1, 113-123) ("RICO claims"). Both of those claims fail to state a claim upon which relief can be granted for two independent and equally fatal reasons. First, Plaintiffs' RICO claims fail because they are based on the erroneous allegation that Fred Gray, Jr. ("Gray"), the Sheriff of Macon County's ("Sheriff's") long time attorney, whom the Sheriff hired to advise and assist him with drafting County Bingo Regulations is a "public servant". (*See* Doc. #67, ¶¶ 69 - 73). As a matter of law, however, Gray is not a public servant. Second, Plaintiffs' RICO claims fail because Plaintiffs utterly failed to plead the facts required to sustain a RICO claim and instead are basing their claims upon improper conjecture, speculation, and surmise.

### A.     Gray is not a "Public Servant".

1

Plaintiffs allege the bribery of Gray as the predicate offense of their RICO claim. (*See* Doc. #67, ¶¶ 67 - 73).  In order to commit the statutory offense of bribery in Alabama, one must either offer, confer or agree to confer any thing of value upon a <u>public servant</u> with the requisite criminal intent or while a <u>public servant</u>, the <u>public servant</u> solicits, accepts or agrees to accept any pecuniary benefit upon an agreement or understanding that his vote, opinion, judgment, exercise of discretion or other action as a public servant will thereby be corruptly influenced.  Ala.Code 1975 § 13A-10-61. A "public servant" is defined by statute to be "[a]ny officer or employee of government, including legislators and judges and any person or agency <u>participating as an adviser, consultant, or otherwise in performing a governmental function</u>." Ala.Code 1975 § 13A-10-1 (emphasis added). Obviously, the purpose of Alabama's bribery statute is to prevent the perversion of governmental authority. In furtherance of that end, the term "public servant" is defined broadly for purposes of misconduct in office, as well as for other offenses against public administration, to encompass individuals who are authorized to perform a governmental function, irrespective of whether they hold a position of public employment. *See State v. Perez,* 883 A.2d 367, 368 (N.J. 2005). The Legislature clearly was endeavoring to include within the term those individuals who, through a contractual delegation of responsibility, are empowered to exercise public authority. *Perez,* 883 A.2d at 369.

A "governmental function" is "[a]ny activity which a public servant is legally authorized to undertake on behalf of a government or the fire control activities of a member of a volunteer fire department." Ala.Code 1975, § 13A-10-1 (3) (offenses against public administration). This definition is extremely important in this case because it gives meaning to the term "public servant." See *Stanton v. State,* 130 P.3d 486, 493 (Wyo. 2006) ("In our view, the definition of 'governmental function,' rather than 'government' is the more appropriate focus for resolving the question of when a person is a public servant . . . [t]he broad language of [the statute] clearly indicates that when any

2

person participates in performing an activity which he is legally authorized to undertake on behalf of the government, such as court-ordered treatment for a juvenile involved in the juvenile justice system, he is acting as a public servant . . .")

> 1.     **Gray did not perform a governmental function and was not empowered to exercise any public authority.**

Plaintiffs allege that Gray became a public servant when the Sheriff hired Gray to advise the Sheriff regarding the formulation of the County Bingo Regulations. (Doc. #67, ¶ 69 ("After Fred Gray, Jr. was retained by Defendant Warren for the purpose of advising him with respect to the formulation of rules and regulations for the licensing and conduct of bingo games, Fred Gray, Jr. became a 'public servant,' as that term is defined by Ala. Code § 13A-10-1(7).").  However, as a matter of law, Gray did not become a  "public servant" merely because he gave legal advice to a public servant (i.e., the Sheriff ). There was no "delegation of responsibility" by the Sheriff to Gray. Gray merely advised the Sheriff.  The Sheriff delegated none of his authority to Gray. Gray was never authorized to perform any governmental function nor was he invested with any public authority. In giving the Sheriff legal advice, Gray achieved no more legal authority or responsibility than he would when advising a private citizen.

Moreover, Gray had no "contractual delegation of responsibility" from the public or the State and was not empowered to exercise any public authority. In *State v. Perez*, 883 A.2d 367, 369 (N.J. 2005), the head clerk at a privatized Department of Motor Vehicle (DMV) office for New Jersey was held to be a public servant.  The Court noted: "The Legislature clearly was endeavoring to include within the term those individuals who, through a contractual delegation of responsibility, are empowered to exercise public authority."  A distinction must be made between a private attorney rendering professional legal advice to a public official and the performance of public service by an

3

attorney. By merely rendering legal advice, the attorney does not become a "public servant" under Alabama's bribery statute. For other purposes, almost any attorney could also be considered a "public servant."

The Plaintiffs' argument that the holding in *Vaughan v. State*, 880 So.2d 1178 (Ala. Crim. App. 2003) ("the warehouse project" under Siegleman) supports their proposition that Gray became a "public servant" once he had been "retained by [the Sheriff] for the purpose of advising him with respect to the formulation of rules and regulations for the licensing and conduct of bingo games" (Doc. #67, ¶ 69) is misplaced. The *Vaughan* Court did not decide the issue of whether or not Vaughan was a "public servant" because that issue was never disputed in that case. Moreover, the facts of *Vaughan* make clear its inapplicability here. In *Vaughan*, the State Finance Department hired Vaughan (an architect) to conduct a comparative site analysis of three potential sites and to recommend a site based on that analysis for State to purchase. During the same period of time Vaughan was conducting the analysis, he and another individual formed a company that purchased one of the three sites for $460,000 without notifying the State. Vaughan recommended that site to the State in his comparative site analysis, and Vaughan's business subsequently sold the property to State for $561,000, netting Vaughan a $48,000 profit on the transaction. Vaughan was indicted and convicted for failing to disclose a conflict of interest while acting as a public servant in violation of § 13A-10-62.

Furthermore, *Vaughan* is not dispositive of the public servant issue in this case because, basically, it just says that the statute is not ambiguous. The specific issue the *Vaughan* court answered was a very narrow one: For Vaughan to fall within the definition of a "public servant" for purposes of § 13A-10-62, the compensation paid to him did not have to constitute more than 50%

4

of his income; therefore, that fact was not an element of the offense and did not have to be charged in the indictment. The trial court properly denied Vaughan's motion to dismiss on this ground.  In fact,  Vaughan did not dispute that he fell within the definition of "public servant" in § 13A-10-1(7); his only argument was that he did not also fall within the definition of "public employee" in § 36-25-1(23). *Vaughan*, 880 So.2d at 1200 n. 14 (Ala. Crim. App.2003).

Likewise, the Plaintiffs' reliance on *Vaughan v. Marshall,* 2006 WL 1476043, *7-8 (M.D.Ala.2006), (Doc. #67, ¶ 69) a federal habeas corpus case, is also misplaced because once again, Vaughan did not dispute that he fell within the definition of "public servant" in § 13A-10-1(7). Rather, his only argument was that he did not also fall within the definition of "public employee" in § 36-25-1(23), Ala.Code 1975." *Vaughan*, 2006 WL 1476043 at *8.

### 2. Gray's advice to the Sheriff regarding bingo regulations  cannot be a predicate act for a RICO claim.

An attorney does not become a racketeer by giving legal advice - good or bad. "'Bankers do not become racketeers by acting like bankers." *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 981 (8th Cir.1991). Likewise, bank regulators do not become racketeers by acting like aggressive regulators.  *Sinclair v. Hawke*,  314 F.3d 934, 943-44 (8th Cir. 2003); *see also Sate v. Mullin*, 778 P.2d 233 (Ak. 1989) (employee of a private organization contracting with the state to provide counseling services to prison inmates is not a public servant within the statutory definition).

The legitimate conduct of attorneys who were acting on behalf of their client cannot be considered predicate acts under RICO.  *D'Orange v. Feely*, 877 F. Supp. 152, 156 (S.D.N.Y.1995) (dismissing RICO claims against attorneys who had allegedly sent fraudulent accountings through the mail - attorney's actions "cannot be considered predicate acts because they constitute legitimate

5

conduct of attorneys acting on behalf of a client in the course of pending litigation"); *see also*

*People v. Tuttle*, 356 N.Y.S.2d 652 (1974) (fact that attorney was representing his client in an action

which might also be brought by the attorney general did not make the attorney a "public servant"

within statute). The Eighth Circuit has explained why the advice of a lawyer cannot be a predicate

act for a RICO claim as follows:

> It is a good thing, we are sure, that we find it extremely difficult to fathom any
> scenario in which an attorney might expose himself to RICO liability by offering
> conventional advice to a client or performing ordinary legal tasks (that is, by acting
> like an attorney). This result, however, is not compelled by the fact that the person
> happens to be a lawyer, but for the reason that these actions do not entail the
> operation or management of an enterprise. Behavior prohibited by § 1962(c) will
> violate RICO regardless of the person to whom it may be attributed, and we will not
> shrink from finding an attorney liable when he crosses the line between traditional
> rendition of legal services and active participation in directing the enterprise. The
> polestar is the activity in question, not the defendant's status.

*Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997). *See also Baumer v. Pachl*, 8 F.3d 1341,

1344-45 (9th Cir.1993) (holding that attorney who simply provided legal services to corporation did

not participate in operation or management of enterprise regardless of whether he performed those

services "well or poorly, properly or improperly"); *Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir.1993)

(holding that defendant "who was associated with the enterprise" and "engaged in a pattern of

racketeering activity when he repeatedly violated the anti-fraud provisions of the securities laws"

was not liable under § 1962(c) because he "had no part in directing" the enterprise's affairs);

*University of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir.1993)

(stating that "[s]imply because one provides goods or services that ultimately benefit the enterprise

does not mean that one becomes liable under RICO"); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th

Cir.1993) (holding that attorneys who prepared allegedly false opinion letters and informational

memoranda regarding a music recording leasing program had not participated in operation or

6

management of enterprise); *Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191(JFK), 1997 WL 603496, at *5 (S.D.N.Y. 1997) (stating that "[a] defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise"); *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F. Supp. 585, 590-91 (E.D.N.Y.1993) (holding that attorney who knowingly assisted enterprise in execution of fraudulent scheme by providing legal services and advice could not be held liable under § 1962(c) because his role was, at all times, limited to the provision of legal services and did not extend to operation or management of enterprise); *Gilmore v. Berg*, 820 F. Supp. 179, 183 (D.N.J.1993) (holding that attorney who allegedly prepared false private placement memoranda regarding limited partnership did not conduct affairs of enterprise because he did not "direct[ ] the legal entities he represented to engage in particular transactions"). *Goren v. New Vision Intern., Inc.,* 156 F.3d 721, 728 n. 4 (7th Cir. 1998) (collecting cases.) .

**B.    Plaintiffs' RICO allegations are based on improper speculation and conjecture and fail to state a valid RICO claim.**

In civil cases, RICO plaintiffs must satisfy the requirements of 18 U.S.C. § 1964(c) which states that "[a]ny person injured in his business or property by reason of" RICO's substantive provisions has the right to "recover threefold the damages he sustains...." 18 U.S.C. § 1964(c). "Thus, under § 1964(c), civil RICO claimants must show (1) the requisite injury to business or property, and (2) that such injury was 'by reason of" the substantive RICO violation." *Mohawk Industries*, 465 F.3d at 1283.

Pursuant to 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

7

pattern of racketeering activity...." 18 U.S.C. § 1962(c). Thus, in order to establish a federal civil

RICO violation under § 1962(c), the plaintiffs "must satisfy four elements of proof: '(1) conduct (2)

of an enterprise (3) through a pattern (4) of racketeering activity.' " *Jones v. Childers*, 18 F.3d 899,

910 (11th Cir.1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275,

3285, 87 L.Ed.2d 346 (1985)). These requirements apply whether the RICO claim is civil or criminal

in nature.

> An "enterprise" under RICO is defined as follows:
>
> An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As stated in *United States v. Goldin Industries, Inc.*, 219 F.3d 1271, 1275 (11th Cir.2000), "the existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." (internal quotation marks and citation omitted). Furthermore, "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." Id.

*Mohawk Industries*, 465 F.3d at 1284. "[T]he existence of an enterprise is an element of a RICO

violation distinct from the element of a pattern of racketeering activity in which the enterprise

engages." *U.S. v. Bascaro*, 742 F.2d 1335, 1362 (11th Cir.1984). "[A] RICO enterprise exists where

a group of persons associates, formally or informally, with the purpose of conducting illegal

activity." *U.S. v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984) ("We then must turn to the question

whether the evidence supported the jury's conclusion that, in the words of *Elliott*, an "informal, de

facto association" existed among the defendants that united them in the common purpose of making

money from repeated criminal activity.")

Plaintiffs allege that the Sheriff, Victoryland, McGregor along with others, constitute an

8

"enterprise."

> "At least since the fall of 2003, Defendants - who, with others, constitute an Enterprise directed by Victoryland and McGregor, a shareholder and employee of VictoryLand - have engaged in the improper influence of a public servant in connection with the promulgation and amendment of the rules and regulation government electronic bingo in Macon County."

(Doc. #67, ¶2). Plaintiffs further alleged that the enterprise was directed by Victoryland and McGregor. Although not identified as "defendants," the Plaintiffs allege that Gray, his father (Fred Gray), and his law firm "agreed to formulate rules and regulations for the licensing and conduct of bingo games that would allow only non-profit organizations affiliated with Victoryland to conduct electronic bingo games" in Macon County. (Doc. #67, ¶ 36). Plaintiffs also allege that "[i]n pursuit of their common goal, Defendants Warren, McGregor, and Victoryland retained the same attorney, Fred Gray, Jr., to represent them with regard to the formulation of the rules and regulations for the licensing and conduct of bingo games. (Doc. #67, at ¶ 38) (emphasis added). The complaint also alleges that the Defendants (identified as the Sheriff, Victoryland and McGregor ) and others bribed a "public servant" – Gray. (Doc. #67, ¶ 2.)

Plaintiffs' allegations, however, fail to satisfy the pleading requirements of Rule 9(b) and the Third Amended Complaint should be dismissed for failure to satisfy these pleading requirements. Neither the Court nor the Defendants are supplied with sufficient information to determine whether or not a facially credible claim of RICO might be presented by these Plaintiffs. Although Defendant does not believe there are any such facts, this Motion to Dismiss is urged to compel Plaintiffs to state such facts for the record. As urged a Dismissal here is warranted under well-settled authority not only under Rule 9(b), but also under Rules 12(b)(1) and (6).

Courts have uniformly held that the specificity requirements of Rule 9(b) apply to civil

RICO actions. *See, e.g., Van Dorn Co., Cent. States Can Co. Div. v. Howington*, 623 F. Supp. 1548, 1555, 4 Fed. R. Serv. 3d 1199 (N.D. Ohio 1985). Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 -1317 (11th Cir. 2007). In order to state a viable cause of action under § 1962(c), a plaintiff must allege " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Vicom*, 20 F.3d at 778 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). "It is not enough, however, for a plaintiff simply to allege the above elements in boilerplate fashion; instead, she must allege sufficient facts to support each element." *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).

Instead of meeting their Rule 9(b) pleading burdens, Plaintiffs hide behind vague allegations and assert disclaimers that the alleged statements, agreements and understandings are peculiarly within the knowledge of various defendants. Allegations based on "information and belief" are usually not sufficient; when appropriate, however, such allegations "must then be accompanied by a statement of the facts upon which the belief is founded." *Equitable Life Assur. Soc. of U.S. v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1029 (S.D.N.Y. 1985); *Alfaro v. E.F. Hutton & Co., Inc.*, 606 F. Supp. 1100 (E.D. Pa. 1985) (RICO counts dismissed for failure to allege particulars of the specific mail fraud). Despite these pleading requirements, the pivotal and significant allegations of the Plaintiffs' Third Amended Complaint are based on wild speculation, vivid imagination, unfounded suspicion and baseless conjecture.

In the eleven footnotes contained in the Third Amended Complaint, Plaintiffs attempt to excuse their inadequate allegations under the claim that the basis for their allegations are matters peculiarly within the knowledge of the defendants, and therefore, Plaintiffs' conclusory pleadings

on information and belief should be "liberally viewed." (Doc. #67, at fn. 1-11). The Eleventh

Circuit, however, has rejected the maxim, upon which the entire Third Amended Complaint is based,

that where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory

pleading on information and belief should be liberally viewed.

> Even if we were not to find that Clausen might obtain the necessary billing information from the Government, Clausen's conclusory statements are insufficient to justify relaxation. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997) (requiring factual basis for belief and noting that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations" and that "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief") (citations omitted); *Stinson*, 755 F. Supp. at 1052 (observing that even when standard is relaxed, "pleaders must allege that the necessary information lies within the defendant's control, and then allegations must be accompanied by a statement of facts upon which the allegations are based") (quotations and citation omitted).
>
> Clausen also argues that Rule 9(b) should be relaxed because the fraud was complex. This exception may apply in appropriate circumstances to aid those alleging prolonged multi-act schemes. However, even under this exception, Clausen would have to allege at least some examples of actual false claims to lay a complete foundation for the rest of his allegations, which he has failed to do. See, for example, *Thompson*, 125 F.3d at 903 (affirming dismissal of allegations after recognizing that while pleading on information and belief may be sufficient under this exception, it does not constitute a "license to base claims of fraud on speculation and conclusory allegations" and that "the complaint must set forth a factual basis for such belief") (citation omitted). Compare *Durham*, 847 F.2d at 1512 n. 12 (approving of allegation that mails were used for a pattern of fraudulent activity based on an affidavit identifying use of the mails and describing the sender, title, recipient and precise date and method of sending) with *Butler*, 101 F. Supp.2d at 1369 (noting that while the pleaded allegations are "illustrative of the type of fraud Plaintiff alleges," action must be dismissed because it did not "address any false claim or any document bearing a false claim on the part of the [eight health care facility] Defendants").

*U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1314, n. 25 (11th Cir.

2002.

> Likewise, in the Eleventh Circuit "bald assertions," like those present throughout the Third

11

Amended Complaint, will not overcome a Rule 12(b)(6) motion to dismiss:

> "Bald assertions" will not overcome a Rule 12(b)(6) motion. *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55, 56 (1st Cir.1999) (citation omitted) (affirming dismissal for failure to state a claim when complaint failed to allege "a factual predicate concrete enough to warrant further proceedings" and provided mere "speculations"). Likewise, "unwarranted deductions of fact" are not admitted as true in a motion to dismiss. *So. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n. 10 (11th Cir.1996) (stating in dicta). The complaint here provides no factual *1249 basis to infer the police made a knowing choice to ignore Plaintiffs' alleged plight. It is unreasonable to infer, based on the facts alleged here (alleged torture occurring indoors and an allegedly coerced indoor radio address someplace else), that just spacial proximity provides a reasonable basis for knowledge or intent on the part of the police.

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 -1249 (11th Cir. 2005).

Moreover, a plaintiff who fails to allege basic facts in support of his claims should not be allowed to proceed.

> A plaintiff who fails to allege basic facts in support of his claims should not be allowed to proceed. *See DM Research v. Coll. of Am. Pathologists*, 170 F.3d 53, 55-56 (1st Cir.1999) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.)."

*Humphrey v. Viacom, Inc.*, No. 06-2768, 2007 WL 1797648, *4 (D.N.J. June 20, 2007). *See also*

*Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir.1984) (holding that in civil rights actions "a

complaint will be dismissed as insufficient where the allegations it contains are vague and

conclusory."); *Albra v. City of Fort Lauderdale*, No. 06-14544, 2007 WL 1213230, *4 (11th Cir.

April 25, 2007) ("vague and conclusory allegations in a complaint without specific factual support

are insufficient to support a civil rights complaint because such complaints are held to a higher

pleading standard, and unsupported conclusions of law do not meet that standard").  Furthermore:

> "Although a complaint should consist of 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed.R.Civ.P. 8(a)(2); *see Magluta*, 256

12

> F.3d at 1284, plaintiffs must avoid shotgun pleadings, which 'we have condemned repeatedly,' *Magluta*, 256 F.3d at 1284; *see, e.g., Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n. 9 (11th Cir.2002); *Byrne v. Nezhat*, 261 F.3d 1075, 1128-34 (11th Cir.2001); *Cramer v. State of Florida*, 117 F.3d 1258, 1263 (11th Cir.1997)."

*Maldonado v. Snead*, 168 Fed.Appx. 373, 380; 2006 WL 436030, **6 (11th Cir. 2006). *See also*

*Dykes v. Hosemann*, 743 F.2d 1488, 1504 -1505 (11th Cir.1984) ("Appellant's allegations in this case stem merely from the fact that the child's grandfather happened to be a judge. Murky allegations of a conspiracy, combined with proof of mere contact between the defendants and the fact of a favorable ruling on the petition at issue, are insufficient to raise a fact issue for trial on a conspiracy complaint under § 1983.").

Furthermore, Plaintiffs are using a an improper shotgun complaint in an attempt to go on a fishing expedition.

> We have determined that "shotgun" complaints are not sufficient pleadings, stating that: The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.

*Heard v. Nix*, 170 Fed.Appx. 618, 619, 2006 WL 452086, **1 (11th Cir. 2006).

A well-plead RICO complaint should state which subsection of 18 U.S.C.A. §1962 has been violated, and how the defendant violated the statue. See, *H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 443 (N.D. Ill. 1987); *Ralston v. Capper*, 569 F. Supp. 1575, 1581 (E.D. Mich. 1983). The complaint, moreover, must "actually specify the RICO enterprise." *Richter v. Sudman*, 634 F. Supp. 234, 240 (S.D.N.Y. 1986). To insure these minimum requirements are met, some courts have adopted standing orders for RICO cases. Such orders are a good checklist for determining the sufficiency of the RICO allegations in a complaint. For example, Judge Krenzler of the Northern District of Ohio has entered the following order, containing over 20 specific inquires, which is reprinted in *Goldsmith & Keith, Civil RICO Abuse: The Allegations in Context*, 1986 B.Y.U. L. Rev. 55, 105-07:

> The plaintiff shall file, within twenty (20) days hereof, a RICO case statement. This statement shall include the facts the plaintiff is relying upon to initiate this RICO complaint as a result of the "reasonable inquiry" required by Fed R Civ P Rule 11. In particular, this statement shall be in a form which uses the numbers and letters as set forth below, and shall state in detail and with specificity the following information.
>
> 1.    State whether the alleged unlawful conduct is in violation of 18 U.S.C.A. §1962(a),(b),(c), and/or (d).
>
> 2.    List each defendant and state the alleged misconduct and basis of liability of each defendant.
>
> 3.    List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.
>
> 4.    List the alleged victims and state how each victim was allegedly injured.
>
> 5.    Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:
>
>     a.    List the alleged predicate acts and the specific statutes which

14

were allegedly violated;

b.      Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;

c.      If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity [sic]." Fed R Civ P Rule 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of person to whom and by whom the alleged misrepresentations were made;

d.      State whether there has been a criminal conviction for violation of the predicate acts;

e.      State whether civil litigation has resulted in a judgment in regard to the predicate acts:

f.      Describe how the predicate acts form a "pattern of racketeering activity;" and

g.      State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.

6.      Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

a.      State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

b.      Describe the structure, purpose, function and course of conduct of the enterprise;

c.      State whether any defendants are employees, officers or directors of the alleged enterprise;

d.      State whether any defendants are associated with the alleged enterprise;

e.      State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or

15

that the defendants are the enterprise itself, or members of the enterprise; and

    f.    If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

7.    State and describe in detail whether you are alleging that the pattern of racketeering [sic] activity and the enterprise are separate or have merged into one entity.

8.    Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

9.    Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

10.    Describe the effect of the activities of the enterprise on interstate or foreign commerce.

11.    If the complaint alleges a violation of 18 U.S.C.A. §1962(a), provide the following information:

    a.    State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

    b.    Describe the use or investment of such income.

12.    If the complaint alleges a violation of 18 U.S.C.A. §1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

13.    If the complaint alleges a violation of 18 U.S.C.A. §1962(c), provide the following information:

    a.    State who is employed by or associated with the enterprise.

    b.    State whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C.A. §1962(c).

14.    If the complaint alleges a violation of 18 U.S.C.A. §1962(d), describe [with] detail the alleged conspiracy.

15.    Describe the alleged injury to business or property.

16.    Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

17.    List the damages sustained by reason of the violation of 18 U.S.C.A. §1962, indicating the amount for which each defendant is allegedly liable.

18.    List all other federal causes of action, if any, and provide the relevant statute numbers.

19.    List all pendent state claims, if any.

20.    Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.

Plaintiffs should be ordered to comply with this order so that the real basis of the RICO claims can be understood and evaluated.

## II.    PLAINTIFFS' SECTION 1983 CONSPIRACY CLAIMS AGAINST VICTORYLAND AND MCGREGOR FAIL AS A MATTER OF LAW

For the reasons noted below, Plaintiffs' claims against Victoryland and McGregor under "42 U.S.C. § 1983 for a conspiracy to deprive [Plaintiffs] of the equal protection of the laws," (Doc. # 67, ¶¶ 1, 131-35) like their RICO claims, also fail to state a claim upon which relief can be granted and should be dismissed with prejudice.

In order to prevail on their Section 1983 Conspiracy Claim, Plaintiffs must show both (1) a violation of their federal rights and (2) an agreement among the defendants to violate those rights. *See Newsome v. Lee County, Ala.*, 431 F. Supp.2d 1189, 1202 (M.D. Ala. 2006) ( "A *prima facie* case of conspiracy under § 1983 requires (1) a violation of the plaintiff's federal rights and (2) an agreement among the defendants to violate those rights."); *Rowe v. City of Fort Lauderdale*, 279

17

F.3d 1271, 1283 (11th Cir. 2002) (same).  Moreover, the violation must have been committed by someone acting under the color of state law and must result in the deprivation of a constitutional right or other right guaranteed by the laws of the United States.  *See Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).  Plaintiffs, however, cannot meet the two part test for a Section 1983 conspiracy.  Even when their bald claims that Victoryland and McGregor agreed or had an understanding that the Sheriff of Macon County ("Sheriff") would issue bingo regulations that would deprive Plaintiffs of the rights to equal protection under the law (Doc. # 67, ¶ 132) (claims which Victoryland and McGregor dispute) are taken as true for purposes of this motion, Plaintiffs as a matter of law cannot meet their extremely high burden of proving that there is no "reasonably conceivable state of facts that could provide a rational basis" for the bingo regulations about which they complain.  *See F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights <u>must be upheld</u> against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") (emphasis added).

A.    **Plaintiffs' 1983 Conspiracy Claim arises from their bald allegations that they were denied equal protection of the law because there is no rational basis for certain parts of the Macon County Bingo Regulations**.

Plaintiffs' 1983 Conspiracy Claim arises solely out of their allegations that they were denied their rights to equal protection of the law because they claim there is no rational basis for certain sections of the "Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama," as amended ("County Bingo Regulations"). ( Doc. # 67, ¶ 129).  Specifically, Plaintiffs claim that there is no rational basis for:

18

(1) the requirements in the County Bingo Regulations that electronic bingo cannot be conducted at "a qualified location . . . unless a minimum of fifteen applicants shall first obtain a Class B [electronic bingo] License for such location" (the "Fifteen License Minimum") (Doc. # 67, ¶¶ 46, 129);

(2) the portion of the County Bingo Regulations that provide that there can be no more than 60 issued and operational electronic bingo licenses in Macon County at any given point in time (the "Sixty License Maximum") (Doc. # 67, ¶¶ 55, 129);

(3) allowing 59 of 60 electronic bingo licenses to be issued to charities who operate electronic bingo games at Victoryland (Doc. # 67, ¶ 129); and

(4) requiring a party who wishes to operate electronic bingo games in Macon County to have a multi-million dollar facility before it can operate Class B (electronic) bingo games.  (*Id.*)

**B. Plaintiffs must show that there is no conceivable rational basis for the aspects of the County Bingo Regulations about which they complain.**

The Plaintiffs cannot prevail on these equal protection claims and on the Section 1983 Conspiracy Claim unless they can show that there is no conceivable rational basis for the aspects of the County Bingo Regulations about which they complain.  *See Beach Commc'ns*, 508 U.S. at 313. In making a determination of whether a governmental regulation violates the Equal Protection Clause, the Court first must examine the classification made by the regulation to determine whether a suspect class or fundamental right is involved.  *See Lofton v. Secretary of Dept. of Children & Families,* 358 F.3d 804, 818 (11th Cir.2004). Where, as here, no suspect class or fundamental right is involved, the Court must uphold the regulation if it bears a rational relationship to a legitimate governmental interest.  *Id.*

19

Bingo is a form of gambling that some states, such as Alabama, legalize and regulate under particular circumstances. *See California v. Cabazon*, 480 U.S. 202, 211 (1987); *United States v. Hurst*, 951 F.2d 1490, 1493 (6th Cir. 1991). The law is clear that there is no fundamental right to gamble or play bingo or to operate a bingo game or gambling operation. *See United States v. Edge Broadcasting Co*., 509 U.S. 418, 426 (1993) (noting that gambling "implicates no constitutionally protected right."); *Lewis v. United States*, 348 U.S. 419, 423 (1955) (stating that "there is no constitutional right to gamble"); *Marvin v. Trout*, 199 U.S. 212 (1905) (finding that no constitutional right exists to operate a gambling enterprise); *Taylor v. Siegelman*, 230 F. Supp.2d 1284, 1295 N.20 (N.D. Ala. 2002) (stating "the court knows of no constitutionally protected right to operate a video arcade, whether the machines in it are legal or not."); *St. John's Melkite Catholic Church v. Commissioner of Revenue*, 242 S.E.2d 108 (Ga. 1978) (holding that state constitutional bingo amendment did not create a fundamental right). In fact, states may prohibit gambling, and if they allow some forms of gambling, they may closely regulate them. *See Edge Broadcasting,* 509 U.S. at 426, (gambling is a form of "vice" that can be and is frequently banned); *Posadas de Puerto Rico Assocs. v. Tourism, Co.,* 478 U.S. 328, 346-47 (1986) (power to ban vice activity includes power to regulate the activity). Moreover, "the regulation of gambling enterprises lies at the heart of the state's police power." *Johnson v. Collins Entertainment Co. Inc*., 199 F.3d 710, 720 (4th Cir. 1999). *See also Gulfstream Park Racing Ass'n Inc. v. Tampa Bay Downs, Inc.,* 399 F.3d 1276, 1278 (11th Cir. 2005) (quoting *Collins Entertainment* and holding that regulation of gambling falls within the police powers of the states); *Ocala Kennel Club, Inc. v. Rosenburg,* 725 F. Supp. 1205, 1207-08 (M.D. Fla. 1989) (recognizing state's power to regulate gambling, including limiting the number of licenses and locations). "Formulations of that power [to regulate gambling] underscore the state's paramount

interest in the health, welfare, safety and morals of its citizens." *Johnson*, 199 F.3d at 720. "The regulation of lotteries, betting, poker, and other games of chance touch all of the above aspects of the quality of life of state citizens." *Id.*

Accordingly, regulation of bingo is a classic example of a regulation of social or economic policy, which must be upheld against an equal protection challenge unless there is no conceivable set of facts that could support the regulation. *See Beach Commc'ns*, 508 U.S. at 313. In short, as with a liquor license, a license to operate an electronic bingo game is a privilege, subject to the police power of the state, and the equal protection test for regulations of electronic bingo licenses is whether there exits a rational basis for them. *Cf. Crowley v. State*, 268 N.W.2d 616, 618 (S.D. 1978) ("It is a general rule that no one has an absolute right to engage in the business of selling intoxicating liquor. It is a privilege subject to the police power of the state that can only be granted by the proper licensing authority. Since it is a privilege and not a fundamental right, the proper equal protection test is one of rational and reasonable basis and does not involve a suspect classification. The standard of review of this legislative classification is whether there is a rational basis existing to sustain it.")

The Plaintiffs have an extremely high burden that they must meet in order for this Court to find that there is no rational basis for the challenged sections of the County Bingo Regulations. Under the applicable rational basis test for economic and social regulation, the County Bingo Regulations come into court "bearing a strong presumption of validity." *Beach Commc'ns*, 508 U.S. at 314 ("On a rational basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity."). *See also NYC CLASH, Inc. v. City of New York*, 315 F. Supp. 2d 461, 486 (S.D.N.Y. 2004) (analyzing equal protection challenge to New York City's smoking ban in bars and noting that under the holding of *Beach Commc'ns* that "[u]nder a rational basis standard of review, government acts

21

carry a 'strong presumption of legality'"). "<u>For a plaintiff to overcome the presumption of rationality,</u> <u>he must meet a heavy burden of showing that the challenged governmental action was 'completely</u> <u>ludicrously arbitrary.</u>'" *Phelan v. City of Chicago*, 125 F. Supp. 2d 870, 876 (N.D. Ill. 2000) (emphasis added).  Moreover, the <u>Plaintiffs</u> as the party attacking the rationality of certain of the County Bingo Regulations "<u>have the burden' to negate every conceivable basis that might support [the</u> <u>contested regulations</u>]." *See Beach Commc'ns*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (emphasis added).  Furthermore, for purposes of a rational-basis review the government decision maker does not have to even articulate the rational-basis supporting the regulation.  *See Beach Commc'ns*, 508 U.S. at 315 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992)). Additionally, a governmental choice "is not subject to courtroom fact-finding and may be based upon rational speculation unsupported by evidence or empirical data." *Id.* at 315.  In other words, a governmental "classification does not violate equal protection simply because it "is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 316, n.7 (quoting *Dandridge v. Williams,* 397 U.S. 471, 485 (1970)). Likewise, the "logical appropriateness of the inclusion or exclusion of objections or persons and the exact wisdom and nice adaption of remedies are not required" for there to be a rational basis for a governmental regulation.  *Id.* (quoting *Heath & Milligan Mfg. Co. v. Worst*, 207 U.S. 338 (1907).

### C.     Pre-Discovery Motions to Dismiss are entirely appropriate where, as here, the Plaintiffs claim there is no rational basis for a governmental regulation.

A pre-discovery motion to dismiss Plaintiffs' lack of rational basis claims is an appropriate procedure.  As the Seventh Circuit Court of Appeals has noted:

> A perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed.R.Civ.P. 12(b)(6).  The rational basis standard requires the government to win if any set of facts reasonably may be

22

> conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if " relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.
>
> While we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting " facts" in light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications. We have upheld dismissals under Rule 12(b)(6) of challenges to such classifications, *see, e.g., Maguire,* 957 F.2d at 378-79, and we do so here.

*Wroblewski v. City of Washburn,* 965 F.2d 452, 459-460 (7th Cir. 1992). Following *Wroblewski,* courts have granted motions to dismiss, where, like here, the Plaintiffs merely made conclusory allegations that there was no rational basis for the challenged legislation or regulations and where, as will be shown below, a conceivable rational basis for the challenged legislation or rules is readily apparent. *See, e.g., Spivey v. Ohio,* 999 F. Supp. 987, 992 (N.D. Ohio 1998) (noting that a "conclusory assertion that a state's enactment of a statute is without rational basis is insufficient to overcome the presumption of rationality when justification is readily apparent.") (*citing Wroblewski* and *Shanks v. Foresyth County Park Authority,* 869 F. Supp. 1231, 1236 (M.D.N.C. 1994)). The Middle District of Florida has noted that:

> When confronted with 12(b)(6) motions to dismiss equal protection claims subject to the rational basis standard, courts have relied on *Wroblewski* and similar cases to interpret basic facts about the possible classes of individuals in a manner most favorable to the plaintiffs, but hypothesize about any justifications that would support distinctions between the classes. Courts have dismissed the claims if plaintiffs have failed to negate all reasonable justifications for the challenged classifications. *See, e.g., Gilmore v. County of Douglas, State of Neb.*, 406 F.3d 935, 939-40 (8th Cir. 2005); *Cuno v. DamlierChrysler, Inc.*, 386 F.3d 738, 748 (6th Cir.

2004);*Hernandez-Mezquita v. Ashcroft*, 293 F. 3d 1161, 1164 (9th Cir. 2002); *Restrepo v. Miami-Dade County*, No. 00-1132-CIV, 2002 WL 548821, at * 8 (S.D. Fla.. Feb. 26, 2002); *Phelan v. City of Chicago*, 125 F. Supp. 2d 870, 876 (N.D. Ill. 2000).

*Parrish v. Consolidated City of Jacksonville*, No. 304-CV-986J32HTS, 2005 WL 1500894, *1, 3-4 (M.D. Fla. June 22, 2005) (granting 12(b)(6) motion to dismiss Plaintiff's claim that there was no rational basis for a municipal ordinance that allowed surviving spouses of police and firefighters who died outside the line of duty who were remarried after October 1, 2000 to remain eligible for benefits because court thought it was conceivable that the City picked this prospective date because it knew that the former spouses who remarried before then did so with the knowledge and expectation that they would lose their benefits and planned accordingly).

Moreover, whether or not there is a rational basis for a governmental regulation is a legal issue to be determined by the Court and not a jury decision. *See Myers v. County of Orange*, 157 F.3d 66, 75 n.3 (2nd Cir. 1998) ("the issue of whether [municipal] policy lacked a rational basis and therefore does not violate the Equal Protection Clause, is a legal issue for the court and not a factual issue for jury determination."); *Izquierdo Prieto v. Mercado Rosa*, 894 F.2d. 467, 471 (1st Cir. 1990) (whether there is a rational basis for governmental action is a question of law for the court)*; and* NYC Clash*, 315 F. Supp. 2d at 471 (citing *Myers*) (same); *Schism v. U.S.*, 972 F. Supp. 1398, 1407 (M.D. Fla. 1997) (whether a rational basis exists in equal protection case is a question of law for the court to determine).

Furthermore, because the challenged County Bingo Regulations must be upheld if there is "any reasonably conceivable set of facts that could provide a rational basis" for them, *Beach Commc'ns ,* 508 U.S. at  313, there is no need for discovery to determine why the Sheriff issued the challenged regulations. *See Knapp v. Hanson,* 183 F.3d 786, 789 (8th Cir. 1999) (upholding motion to dismiss

24

and holding that "when all that must be shown is 'any reasonably conceivable set of facts that could provide a rational basis for the classification,' it is not necessary to wait for further factual development") (citing and quoting *Beach Commc'ns*, 508 U.S. at 313); *see also Spivey*, 999 F. Supp. at 991-92 (stating that "'Truth is not the issue [in a rational basis] case and using discovery procedures to develop facts showing the state's true reasons for its actions could be inefficient and unnecessary.'" (quoting *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 936 (5th Cir. 1988)).

Likewise, there is no need to give Plaintiffs a futile opportunity to amend their conclusory pleadings regarding there being no rational basis for the challenged County Bingo Regulations. *Parrish,* 2005 WL 1500894, *4 (noting that although the plaintiff's failure in her complaint to attempt to negate all bases that might support the regulation was alone sufficient to warrant dismissal of the complaint that the Court would go ahead and determine if there was any conceivable rational basis for the ordinance in order to avoid a futile amended complaint.).

In anticipation that the Plaintiffs will argue that they need discovery on their allegations as to what motivated the Sheriff to issue the County Bingo Regulations in order to respond to this Motion to Dismiss their equal protection challenge to those regulations and the related 1983 Conspiracy Claims, such motivation is irrelevant. Without circumstances to induce heightened judicial scrutiny, which, as noted above,  are absent here, the alleged illicit motives of the Sheriff and others are insufficient to strike down the County Bingo Regulations if there is a rational basis for those Regulations.  *See International Paper Co. v. Town of Jay*, 928 F.2d 480, 485 (1st. Cir. 1991).  In *International Paper Co.*, the Plaintiff paper company argued that the town's ordinance, which was passed by a town counsel the majority of which consisted of union members engaged in a strike against the company, should be struck down because of the alleged improper motives of the town

25

counsel.  *See Id.* at 481.  Finding that there was a rational basis for the ordinance, the court refused

to delve into the motives of the town counsel, noting that:

> while courts may look to legislators' motives where a suspect or quasi-suspect
> classification is subjected to discrimination or a fundamental right is infringed, *see
> e.g., Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985)
> (Establishment Clause); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48
> L.Ed.2d 597 (1976) (race discrimination), absent these circumstances, we "'will not
> strike down an otherwise constitutional statute on the basis of an alleged illicit
> legislative motive.'" *International Paper*, 736 F. Supp. at 364 (quoting *United States
> v. O'Brien,* 391 U.S. 367, 383, 88 S. Ct. 1673, 1682, 20 L.Ed.2d 672, 683 (1968).

*Id.* at 485.  Likewise, the Eastern District of California rejected Wal-Mart's challenge to a local

ordinance barring "Discount Superstores" based on allegations that the "ordinance violated equal

protection because it was the result of collusion between local economic interests (owners of

neighborhood stores and union representatives of those who worked in them) and the Council, acting

with the improper legislative motive of protecting local merchants and unions from Wal-Mart's

'foreign competition" because "even, if true, such improper motives did not require the invalidation

of the Ordinance under an equal protection analysis." *Wal-Mart Stores, Inc. V. City of Turlock*, 483

F. Supp. 2d 1023, 1036-37 (E.D. Cal. 2007).  In its analysis the *Wal-Mart* court noted that one of the

reasons an improper motive does not affect an equal protection review of an ordinance is because "it

is entirely irrelevant for constitutional purposes whether the conceived  reason for the challenged

distinction actually motivated the legislature." *Id.* at 1037 (quoting *Beach Commc'ns*, 508 U.S. at

315.)  **D.      Because there is a rational basis for the challenged aspects of the County Bingo
                 Regulations, Plaintiffs' 1983 Conspiracy claims fail as a matter of law.**

The Plaintiffs' conclusory allegations that there is no rational basis for the four contested

aspects of the County Bingo Regulations (Doc. # 67, ¶ 129) are insufficient to overcome the

Regulations' presumption of rationality.  *See, e.g., Spivey*, 999 F. Supp. at 992; *Parrish*, 2005 WL

1500894 *4.  However, because a rational basis for the contested County Bingo Regulations is readily apparent, the Court need not give Plaintiffs a futile opportunity to amend their pleadings to attempt to negate every conceivable rational basis for those Regulations.  *See Parrish,* 2005 WL 1500894 at *4.  Instead, the Court can go ahead and dismiss the claims contesting those regulations on equal protection grounds.  *See id.*, *Spivey*, 999 F. Supp. at 992.

        As the following discussion makes clear, a rational basis for each of the Challenged County Bingo Regulations is readily apparent.

> **1.    There is a readily apparent rational basis for the Fifteen License Minimum.**

There is a readily apparent rational basis for the "Fifteen License Minimum," which is rationally related to the Sheriff's interest in protecting the integrity of bingo operations in Macon County.  As the commentary to the 2004 County Bingo Regulations makes clear, one of the reasons for the Fifteen License Minimum was "to further avoid potential abuse of a third party individual or business entity from using one non-profit organization (or a minimum number) as a 'front' to operate bingo games under a Class B [electronic bingo] license . . ."  Commentary to 2004 Rules at § 2.[1]  In addition, the 15 license minimum was also designed to ensure that each qualified location for electronic bingo operations provides an opportunity to a large represented group of charities to obtain the economic benefits associated with a Class B (electronic) bingo license.  *See id.*  Bingo is a form of gambling.  *See California v. Cabazon*, 480 U.S. 202, 211 (1987); *United States v. Hurst*, 951 F.2d

_____

        [1]  The 2004 County Bingo Regulations and their commentary were attached as Exhibit B to the Plaintiffs Third Amended Complaint. The Court may, therefore, consider them in ruling on this Motion to Dismiss.  Documents attached to a complaint are considered part of the pleadings for all purposes, including Motions to Dismiss pursuant to Rule 12(b)(6).  *See Allen v. Newsome*, 795 F.2d 934, 938 (11th Cir. 1986).

1490, 1493 (6th Cir. 1991). The regulation of gambling such as the Fifteen License Minimum falls within the police powers of the states. *Gulfstream Park Racing Ass'n Inc. v. Tampa Bay Downs, Inc.,* 399 F.3d 1276, 1278 (11th Cir. 2005). Furthermore, the law is clear that in exercising police power regulations such as the Fifteen License Limit do not need to be made with mathematical precision. *See Beach Commc'ns ,* 508 U.S. at  316, n.7 (quoting *Dandridge v. Williams,* 397 U.S. 471, 485 (1970)). Because the reasons given by the Sheriff for the Fifteen License minimum clearly provide a rational basis for the limit, the Court need go no further in its analysis. *See Beach Commc'ns ,* 508 U.S. at  313-14 (where there are plausible reasons for the governments action, the Court's inquiry ends).

Moreover, the Fifteen License Minimum is also a limit on the number of electronic bingo casinos that can be operated in Macon County. When this limit is combined with the 60 License Maximum, it limits the maximum number of electronic bingo casinos in Macon County to four. As discussed below, courts have repeatedly found limits on the number of gambling establishments to be a proper exercise of the government's police powers. *See, e.g., Ocala Kennel Club, Inc. v. Rosenburg,* 725 F. Supp. 1205, 1207-08 (M.D. Fla. 1989) (recognizing state's power to regulate gambling, including limiting the number of licenses and locations).

### 2.    There is a readily apparent rational basis for the Sixty License Maximum.

A rational basis for the 60 License Maximum is also readily apparent. As the Sheriff's commentary to the 2005 County Bingo Regulations states, this limit was imposed in order to limit electronic bingo activities in Macon County and to allow the Sheriff to "more effectively regulate and enforce the proper conduct of such bingo games." Commentary to 2005 County Bingo Rules, § 2. (a copy of the 2005 County Bingo Rules with the commentary were attached as Exhibit C to Plaintiffs'

Third Amended Complaint). Given this commentary, there can simply be no dispute that this limit is a rational exercise of the Sheriff's police powers to regulate gambling. The regulation of gambling lies at the heart of the state's police power. *See Johnson v. Collins Entertainment Co. Inc.*, 199 F.3d 710, 720 (4th Cir. 1999); *Gulfstream Park,* 399 F.3d at 1278. Moreover, federal courts have recognized the power of government to limit the number of gambling establishments or gambling licenses. *See, e.g., Ocala Kennel Club,* 725 F. Supp. at 1207-1208. State Courts have likewise recognized the government's legitimate authority to limit the number of gaming establishments. *See Rodriguez v. Jones*, 64 So. 2d 278, 279 (Fla. 1953) ("In regulation of authorized gambling establishments, [] it is public policy of [the] state to limit the distance within which additional establishments of like character may be licensed for operation.") *Primm v. City of Reno*, 252 P.2d 835, 838 (Nev. 1953) (municipalities under appropriate charter provisions may suppress gambling or limit the number of gambling establishments); *Landers v. Eastern Racing Ass'n*, 97 N.E.2d 385, 394 (Mass. 1951) (limiting the number of licensed places is a reasonable exercise of the police power); *State ex rel. Grimes v. Board of Comm'rs of Las Vegas*, 1 P.2d 570, 572 (Nev. 1931) (the power to regulate gambling implies the power to limit the number of gambling licenses).

Courts have also upheld other limits on gambling establishments in the face of equal protection challenges due to the state's legitimate interest in controlling the growth of gambling. *See, e.g., Helton*

*v. Hunt*, 330 F.3d 242, 246 (4th Cir. 2003) (rejecting an equal protection challenge to a North Carolina law that sought to limit the number of video gaming machines by making illegal all machines not listed on tax rolls and in operation by a certain date because "North Carolina has a legitimate interest in restricting the number of new gaming machines in the state as a means of limiting the impact of

gambling on the lives of its citizens . . . ." ). *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 740 (9th Cir. 2003) (upholding state law limiting gambling casinos to tribal lands against an equal protection challenge because the limitation served the state's interest in regulating the growth of gambling and further finding that by "restricting large-scale gambling enterprises to carefully limited locations, California furthers its purpose of ensuring that such gaming activities 'are free from criminal and other undesirable elements'"); *Watt v. Firestone*, 491 So. 2d 592, 594 n.4 (Fla. Dist. Ct. App. 1986) (upholding proposed constitutional amendment which limited operation of casinos to hotels of certain size to equal protection challenge because the hotel size requirement limited the number of casinos, required them to be located in tourist-oriented areas and assured professional management of them).

Limits on the number of bingo licences are equivalent to limits on the number of liquor licenses, and the law is well settled that state and local governments have the power to limit the number of liquor licenses, and that such limits withstand equal protection challenges. *See Simms v. Farris*, 657 F. Supp. 119, 124 (E.D. Ky. 1987) (statute limiting number and location of liquor store licenses did not violate due process or equal protection rights of parties where government needed to regulate establishments serving alcoholic beverages); *Bergmann v. City of Melrose*, 420 N.W.2d 663 (Minn. App. 1988) (holding that the city did not violate appellant's right to equal protection by limiting the number of liquor-only establishments to a particular area for law enforcement reasons); *Bradshaw v. Dayton*, 514 S.E.2d 831 (Ga. 1999) (same); *Division of Beverage v. Dav-Ed, Inc*., 324 So.2d 682 (Fla. Dist. Ct. App. 1975) (same).

For all the reasons noted above, the 60 License Maximum is clearly rationally related to the Sheriff's legitimate police powers.

3.    **There is a readily apparent rational basis for why the County Bingo Rules allow 59 of 60 electronic bingo licenses to be issued to charities who operate electronic bingo games at Victoryland.**

For the same reasons listed above regarding the Sixty License Maximum, there is a readily apparent rational basis for the fact that the County Bingo Regulations allow 59 of the 60 electronic bingo licenses to operate (and would allow all 60 to operate there) at one facility – Victoryland – despite the Plaintiffs' bald claims to the contrary (*see* Doc. # 67, ¶ 129).  Allowing all the bingo licences to operate electronic games in a single location serves the legitimate purpose of limiting the number of gambling establishments in Macon County and further simplifies the efforts the Sheriff must take to regulate and enforce proper conduct of the electronic bingo games.  Furthermore, regulation of gambling does not violate the equal protection clause even if it results in a monopoly as long as the underlying regulations have a rational basis to a legitimate governmental power.  *See Artichoke Joe's*, 353 F.3d 712 (rejecting equal protection claim that casino gaming law gave Indian tribes a monopoly because law was rationally related to California's interests in regulating gambling); *cf City of New Orleans v. Dukes*, 427 U.S. 297 (1976) (rejecting equal protection challenge to ordinance limiting number of available vender permits, despite argument that ordinance gave a monopoly to a favored class, because the ordinance was rationally related to governmental interest); *Pacific States Box & Basket Co. v. White*, 296 U.S. 176, 184 (1935) ( "[T]he grant of a monopoly, if otherwise an appropriate exercise of the police power, is not void as denying the equal protection of the law") .

4.    **There is a readily apparent rational basis for the County Bingo Regulations' requirement that there be a physical facility that can be inspected before the facility can become a qualified location for electronic bingo.**

There is a readily apparent reason for the fact that the County Bingo Regulations define a

31

"qualified location" for the holder of a Class B (electronic) bingo license as, among other things. "a location that has been inspected and approved by the Sheriff for the conduct of bingo games" (County Bingo Regulations, Definition (j))  (*see* Exhibits A, B, and C to Third Amended Complaint) despite the Plaintiffs' bald claim that there is no rational basis for requiring a party who wishes to operate electronic bingo games in Macon County to have a  multi-million dollar facility before it can operate Class B [electronic] bingo games.  (Doc. #67, ¶ 169).  The definition of qualified location and its requirement of an existing location that can be inspected has a rational basis in the legitimate governmental interest of economic development. *See Kelo v. City of New London*, 545 U.S. 469, 484 (2005) ("Promoting economic development is a traditional and long accepted function of government.").  In his Commentary to the 2004 County Bingo Regulations, the Sheriff explained that "the capital investment amount required for a 'qualified location' for the holder of a Class B Bingo license is hereby increased to $15,000,000.00 and limited to actual cost in order to require any qualified location to provide a significant investment and financial commitment to Macon County prior to becoming a 'qualified location.'"  See Commentary to 2004 Rules at § 1(I) (emphasis added). Thus, the requirement that a facility exist before the license can be issued is rationally related to the legitimate governmental interest of economic development.

The regulation, therefore, passes the low threshold of a rational-basis test because it is rationally related to the accomplishment of this governmental objective.  Moreover, a governmental choice "is not subject to courtroom fact-finding and may be based upon rational speculation unsupported by evidence or empirical data." *See Beach Commc'ns*, 508 U.S. at 315.  Likewise, the "logical appropriateness of the inclusion or exclusion of objections or persons" and the "exact wisdom and nice adaption of remedies are not required" for there to be a rational basis for the regulation.  *Id.*

(quoting *Heath & Milligan Mfg. Co. v. Worst*, 207 U.S. 338 (1907)).  Because there is a rational basis for the four challenged aspects of the County Bingo Regulations, the Plaintiffs as a matter of law cannot show that there was a violation of their federal rights, which is an essential element of their Section 1983 Conspiracy Claim.  *See Newsome v. Lee County, Ala.*, 431 F. Supp. 2d 1189, 1202 (M.D. Ala. 2006)

Moreover, by seeking to have the Court re-write the County Bingo Regulations, the Plaintiffs asked the Court to impermissibly intrude into the functions of the Sheriff  of Macon County -- the governmental authority responsible for the Regulations.  But as the High Court has made clear, "equal protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices" particularly in the area of economic and social policy. *Beach Commc'ns ,* 508 U.S. at  313.  Rather, the Constitution presumes that "improvident decisions will eventually be rectified by the democratic process." *Id.* at 314 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).  Therefore, the remedy for the Plaintiffs' complaints regarding the County Bingo Regulations lies in the ballot boxes of Macon County and not the courts.  In short, if the Plaintiffs do not like the decisions of the current Sheriff, they are free to seek the election of a different one.

## III.    THE PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW

### A.    Plaintiffs claim for tortious interference with contractual and business relations fails to state a claim upon which relief can be granted.

In Count V of their Third Amended Complaint, Plaintiffs allege that Victoryland and McGregor tortiously interfered with contractual and business relations between Lucky Palace, LLC and the other Plaintiffs.  Specifically, Plaintiffs allege that "each of [the other Plaintiffs] individually contracted with Lucky Palace to operate a Class B [Electronic] Bingo facility in Macon County."

(Doc. #67, at ¶ 138). Plaintiffs argue that Victoryland and McGregor influenced, aided or directed the Sheriff to promulgate rules and regulations for the conduct of bingo and that those rules and regulations rendered the performance of the contracts between Lucky Palace and the other Plaintiffs impossible to perform. (Doc. #67, at ¶¶ 140-141). For the following reasons, Plaintiffs have failed to state a claim for tortious interference with contractual and business relationships.

Under Alabama law, the elements of a claim of tortious interference with contractual and business relations are: "(1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of the interference." *Tom's Food, Inc. v. Carn*, 896 So. 2d 443, 453 (Ala. 2004)(internal quotations and citations omitted). In addition to these elements, a plaintiff must also prove that the interference was intentional by producing substantial evidence of fraud, force or coercion on the part of the defendant. *See Barber v. Business Prods. Ctr.*, 677 So. 2d 223, 227 (Ala. 1996). *See also*, *MAC East, LLC v. Shoney's, LLC*, 2007 WL 60922 *5 (M.D. Ala. Jan. 8, 2007); *Teitel v. Wal-Mart Stores, Inc*., 287 F. Supp. 2d 1268, 1282 (M.D. Ala. 2003).

Plaintiffs cannot and have not alleged facts to support two essential elements of their claim. First, Plaintiffs have not alleged sufficient facts to show that Victoryland and McGregor had knowledge of the existence of the specific contracts between Lucky Palace and the other Plaintiffs. Plaintiffs argue that because: (1) the Sheriff had knowledge of the contracts; and (2) Gray was the Sheriff's lawyer; and (3) Victoryland supposedly used the same lawyer;[2] and (4) the Sheriff depended

---

[2] As the Court will recall, in response to a question posed by the Court during the status conference on July 2, 2007, counsel for Plaintiffs admitted that they did not have any evidence upon which to base this allegation.

on Gray's advice regarding electronic bingo, then surely Victoryland and McGregor had knowledge of the existence of the contracts between Lucky Palace and the other Plaintiffs. Plaintiffs' spurious attempt to bootstrap the knowledge of one defendant to his attorney to unrelated third parties does not rise to the level of a specific allegation of knowledge on the part of Victoryland or McGregor. Therefore, Plaintiffs have failed to allege and cannot show that Victoryland and McGregor had knowledge of the existence of the contracts between the Lucky Palace and the other Plaintiffs.

Furthermore, Plaintiffs have not alleged and cannot show that Victoryland and McGregor interfered with the contracts between the Lucky Palace and the other Plaintiffs. Victoryland and McGregor did not prevent Lucky Palace and the other Plaintiffs from entering into a contract. Indeed, Plaintiffs admit that they entered into contracts with one another. (Doc. #67, at ¶ 138). Plaintiffs do not allege that Victoryland and McGregor communicated with either party to the contracts, attempted in any fashion to convince either party not to enter into the contracts, or attempted to convince either party to terminate the contracts. Instead, Plaintiffs argue that the County Bingo Regulations promulgated by the Sheriff rendered the performance of the contracts between Lucky Palace and the other Plaintiffs impossible. However, it is clear from the allegations contained in the Third Amended Complaint that it was Lucky Palace's failure to either build or lease a facility which rendered performance of the contracts impossible. Plaintiffs allege that in November 2003 after the constitutional amendment authorizing bingo in Macon County was ratified, Lucky Palace embarked on an endeavor to build a bingo casino. (Doc. #67, at ¶ 34). Plaintiffs allege that by November 10, 2004, Lucky Palace had contracted with over fifteen nonprofit organizations to conduct Class B (electronic) Bingo as required by the 2004 County Bingo Regulations. (*Id*. at 52). However, Lucky Palace did not have any facility in which to conduct electronic bingo games at that time. In addition,

Plaintiffs admit that the other Plaintiffs did not apply for Class B Bingo licenses until July 25, 2005, over six months after the Sheriff promulgated the 2005 County Bingo Regulations, and Lucky Palace still did not have a facility as required by all versions of the Regulations. Therefore, performance of the contract was not rendered impossible by Victoryland and McGregor but by Lucky Palace and the other Plaintiffs themselves. Accordingly, Plaintiffs have failed to plead the elements necessary to establish a claim for tortious interference with contractual and business relations, and their claim is due to be dismissed.

> **B.      Plaintiffs' claim for tortious interference with prospective business relationships fails to state a claim upon which relief can be granted.**

Plaintiffs' claim that Victoryland and McGregor have tortiously interfered with prospective business relationships is also due to be dismissed for failure to state a claim upon which relief can be granted under Alabama law. Plaintiffs argue that "Plaintiffs reasonably expect that, if allowed to conduct electronic bingo in Macon County, they would be able to enter into contractual and business relationships with numerous patrons and customers." (Doc. #67, at ¶ 144). Plaintiffs allege that they "have been unable to consummate their expected contractual and business relationships with numerous patrons and customers." (*Id.* at 147). Essentially, Plaintiffs argument is based upon nothing more than pure conjecture: if Lucky Palace had built a bingo casino, and if they had electronic bingo equipment, and if people would come to that facility and use that equipment, then Plaintiffs would have contractual relationships with some amorphous and speculative group of customers.

While Alabama does recognize a claim for tortious interference with <u>prospective</u> business relationships, the elements which must be pleaded and proven are the same for a claim of tortious interference with <u>existing</u> contractual and business relationships:  "(1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional

36

interference by the defendant with the contract or business relation; (4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of the interference." *Ex parte Alabama Dep't of Transp.*, 764 So.2d 1263, 1270 (Ala. 2000) (citing the *Restatement (Second) of Torts* and stating that "[d]efining this cause of action to apply to a "business relation" as well as a "contractual relation" allows a plaintiff a remedy in a situation where a defendant has intentionally interfered with a prospective contract as well as when he has interfered with an existing contract."); *see also, Soap v. Ecolab, Inc.*, 646 So. 2d 1366 (Ala. 1994).

In order for a plaintiff to prevail on a claim of tortious interference with prospective business relations, he must have a reasonable expectancy of the formation of a contract. *See Ex parte Alabama Dep't of Transp.*, 764 So.2d at 1270 (finding that the plaintiff did not have a reasonable expectancy of the formation of a contract); *Tom's Food,* 896 So. 2d at 456-57 (refusing to find tortious interference when the prospective vending account operator "had nothing more than a prospect of obtaining for himself all of [the customers]."); *cf. Georgetown Manor, Inc. v. Ethan Allen, LLC*, 47 F.3d 1099, 1101 (11th Cir. 1995) (applying Florida Supreme Court's answer to certified question and holding that tortious interference with business relationships claim would not apply where the relationship at issue was based upon "speculation regarding future sales to past customers").

In the instant case, Plaintiffs have not alleged and cannot show that the Plaintiffs have <u>any</u> relations with <u>any</u> party or parties in regards to their speculative business venture. Instead, Plaintiffs only allege that they expected to enter into relationships with numerous patrons and customers. This highly speculative, amorphous, unidentifiable sector of the public at large fails to meet the required threshold for identity of the parties. Moreover, inasmuch as the Plaintiffs are unable to reasonably identify these prospective business relations–which do not exist– Victoryland and McGregor cannot

37

be expected to have knowledge of their existence. Victoryland and McGregor simply did not and could not have interfered with a prospective business relationship between parties that do not yet exist and who cannot be identified and a business which does not yet exist and which has no goods or services to offer. Therefore, Plaintiffs' tortious interference with prospective business relationships claim is due to be denied for failure to state a claim upon which relief can be granted.

**IV.    CERTAIN OF PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE TWO-YEAR  STATUTES OF LIMITATION**

      **A.    Plaintiffs' tortious interference claims are barred by the applicable two-year statute of limitations**.

The original Plaintiffs filed their initial complaint in this case on December 18, 2006 against the Sheriff asserting a single claim pursuant to 42 U.S.C. §1983 for violation of the Equal Protection Clause of the Fourteenth Amendment. The original Plaintiffs filed an Amended Complaint on March 12, 2007, adding Victoryland and McGregor alleging violation of the Equal Protection Clause and conspiracy to deprive the Plaintiffs of equal protection of the laws under 42 U.S.C. §1985(3). Victoryland and McGregor moved to dismiss the Section 1985 (3) claim and the original Plaintiffs conceded they had no basis for filing that claim and voluntarily dismissed it. Next, the original Plaintiffs filed a Second Amended Complaint on June 11, 2007 asserting violation of the Equal Protection Clause and conspiracy to deprive them of equal protection of the laws under 42 U.S.C. §1983. The original Plaintiffs then filed a Third Amended Complaint on June 29, 2007, adding Lucky Palace as a Plaintiff and asserting claims of: (1) RICO § 1962(c); (2) RICO § 1962(d); (3) violation of the Equal Protection Clause; (4) a Section 1983 Conspiracy [to deprive the Plaintiffs of equal protection of the laws]; (5) tortious interference with contractual and business relationships (against Victoryland and McGregor only); and (6) tortious interference with prospective business relationships

38

(against Victoryland and McGregor only).

Counts V and VI of Plaintiffs' Third Amended Complaint (the tortious interference claims) are barred by the applicable statute of limitations. The statute of limitations for tortious interference is two years under Alabama law. *Ala. Code* § 6-2-38(l)(1975). The date of the alleged interference, if at all, is the date that each set of County Bingo Regulations were enacted. The Original County Bingo Regulations were promulgated on December 5, 2003; the 2004 County Bingo (First Amended) Regulations were promulgated on June 2, 2004; and the 2005 County (Second Amended) Regulations were promulgated on January 6, 2005. Therefore, the Plaintiffs' tortious interference claims are barred as to the Original County Bingo Regulations because they were not filed before December 5, 2005. The Plaintiffs' tortious interference claims are barred as to the 2004 County Bingo Regulations because they were not filed before June 2, 2006. Also, the Plaintiffs' tortious interference claims are barred as to the 2005 County Bingo Regulations because they were not filed before January 6, 2007.

Even if the statute of limitations had not run when the original complaint was filed on December 18, 2006 as to the 2005 County Bingo Regulations, the Plaintiffs' tortious interference with business and contractual relations claims must be dismissed because they do not meet the relation-back test required by Rule 15 (c) of the *Federal Rules of Civil Procedure* . The original Plaintiffs filed their original complaint on December 18, 2006, which asserted a single claim against only the Sheriff pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause. The Plaintiffs first asserted the claim of tortious interference with business and contractual relationships in the June 29, 2007 Third Amended Complaint, and only against Defendants McGregor and Victoryland.

Pursuant to Rule 15(c)(2), a claim or defense asserted in an amended pleading must arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original

pleading," in order to relate back and survive a statute of limitations bar.  However, an amendment which adds an entirely new claim based upon a different set of facts will not relate back to the original filing.  *See Dean v. United States*, 278 F.3d 1218 (11th Cir. 2002); *Forzley v. AVCO*, 826 F.2d 974, 981 (11th Cir. 1987) (holding that "[A]n amendment which states an entirely new claim for relief based on different facts will not relate back."); 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[3] at 15-149 (2d ed. 1985).); *see also*, *Michael Linet, Inc. v. Village of Wellington, Florida,* 408 F.3d 757 (11th Cir. 2005) (affirming the dismissal of a state law claim which was barred by the applicable statute of limitations because it did not relate back to the filing of the original complaint where the only claims alleged in the original complaint were federal claims); *Cliff v. Payco General Amer. Credits*, 363 F.3d 1113 (11th Cir. 2004).  Counts V and VI do not relate back because the Third Amended Complaint added Lucky Palace as a Plaintiff for the first time, and asserted entirely different claims than those asserted in the original complaint.

Furthermore, VictoryLand and McGregor were not added as defendants until March 12, 2007 with the filing of the amended complaint.  "[A]s against a party added by amendment, the statute of limitations continues to run until the amendment is filed making him a party to the suit.*"  Holloway v. Jackson,* 412 So.2d 774, 778 (Ala. 1982).  Therefore, the statute of limitations had run because the complaint was not filed within two years of the date on which <u>any</u> of the County Bingo Regulations were promulgated. Accordingly, the Plaintiffs tortious interference claims in Counts V and VI do not meet relation back requirements and must be dismissed.

**B.    Lucky Palace's Section 1983 claims are barred by the applicable two-year statute of limitations.**

The claims of  Lucky Palace under 42 U.S.C. § 1983 against all defendants are barred by the statute of limitations. There is a two-year statute of limitations for bringing any Section 1983 claim

in Alabama. *See Foster v. Board of School Comm'rs*, 872 F.2d 1563, 1567 n.4 (11th Cir. 1989). It

has long been settled that Section 1983 actions accrue when plaintiff knows or has reason to know he

has been injured. *See Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422, 424

(11th Cir. 1983). Further, a Section 1983 claim accrues when the person receives notice of the adverse

action and not when the effects of the adverse action occur. *See Luftkin v. McCallum*, 956 F.2d 1104

(11th Cir. 1992) (lecturer's action was untimely when he commenced a Section 1983 claim more than

two years after *notice* that defendant did not intend to renew his contract); *Anderson-Free v. Stepoe*,

970 F. Supp. 945, 953 (M.D. Ala. 1997) (university instructor's Section 1983 claim accrued on the

date she received the letter notifying her of non-renewal of her contract).

A review of Lucky Palace's allegations makes it clear that its 1983 claims were time-barred

well before it became a party in this case. After the approval of Constitutional Amendment 744 on

November 4, 2003, new Plaintiff Lucky Palace, an out of state gaming interest, "embarked on an

endeavor to build, own and operate a bingo parlor in Macon County, Alabama." (Doc. # 67, ¶ 34).

The Original Rules governing bingo operations were promulgated by the Sheriff on December 5, 2003.

(Doc. # 67, ¶ 39). Thereafter, the First Amended Rules were promulgated June 2, 2004 and according

to the Plaintiffs were published to the public on June 10, 2004. (Doc. # 67, ¶¶ 44, 46).

Recognizing the alleged injury caused by promulgation of the First Amended Rules, on June

11, 2004 Lucky Palace "again notified Defendant Warren by letter of its intention to build, own, and

operate a 'qualified location for the holder of a Class B Bingo License' in compliance with the

Original Rules." (Doc. # 67, ¶ 47). When Lucky Palace received no confirmation from the Sheriff

that "a Class B Bingo License would be issued to a qualified nonprofit organization . . . if such a

location were built", Lucky Palace notified the Sheriff by letter on June 15, 2004 that "it was

41

continuing to operate under the Original Rules." (Doc. # 67, ¶ 48). In that letter, Lucky Palace emphasized its injury in having proceeded under the Original Rules for "land purchases, site development, environmental assessments, associated legal and consulting fees and architectural renderings". (Doc. # 67, ¶ 48).

After a meeting between Lucky Palace principal Bracy and the Sheriff, Lucky Palace sought the Sheriff's signature certifying that the First Amended Rules would not be further amended and that Lucky Palace would be promptly issued a license if it complied with the First Amended Rules (Doc. # 67, ¶¶ 49, 50). On August 5, 2004, the Sheriff responded by letter and stated he reserved the right to amend the rules, but that the First Amended Rules currently governed. (Doc. # 67, ¶ 51).

On November 10, 2004, after securing contracts with the other Plaintiffs in this action, Lucky Palace submitted its Application for a Bingo Operator's License, which was denied because Lucky Palace did not yet have a qualified facility in which to conduct bingo. (Doc. # 67, ¶ 52). On January 6, 2005, the Second Amended Rules were promulgated. (Doc. # 67, ¶ 54).

Lucky Palace's Section 1983 claim regarding the First Amended Rules accrued when it first received notice of injury, which occurred when the First Amended Rules were advertised to the public in June of 2004. Lucky Palace's own actions following that date demonstrate Lucky Palace's knowledge that an alleged injury had occurred. Lucky Palace's Section 1983 claim regarding the Second Amended Rules accrued when it first received notice of injury, which occurred when the Second Amended Rules were promulgated on January 6, 2005. Far more than two years passed before Lucky Palace asserted any claim in this action. Accordingly, the statute of limitations as to Lucky Palace's Section 1983 claims had run as a matter of law, and those claims should be dismissed.

42

    **C.**    **The other Plaintiffs' Section 1983 claims that arise out of the Original County Bingo Rules and the First Amendments thereto are barred by the applicable two-year statute of limitations.**

The other Plaintiffs' Section 1983 claims that arise out of the Original County Bingo Rules and the First Amendments thereto are barred by the applicable two-year statute of limitations. *See Foster v. Board of School Comm'rs*, 872 F.2d 1563, 1567 n.4 (11th Cir. 1989); *Luftkin v. McCallum*, 956 F.2d 1104 (11th Cir. 1992); *Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422, 424 (11th Cir. 1983); *Anderson-Free v. Stepoe*, 970 F. Supp. 945, 953 (M.D. Ala. 1997).

Any claims concerning the requirements contained in the Original County Bingo Rules and First Amendments thereto should have been complained about in the two years following promulgation of those rules, but the Section 1983 claims were first brought by the original Plaintiffs on December 18, 2006. Accordingly, the statute of limitations as to those claims had run as a matter of law and should be dismissed.

    **D.**    **Any Section 1983 claims against Victoryland and McGregor, who were not added as parties until March 12, 2007, are barred by the applicable two-year statute of limitations.**

Any Section 1983 claims against Victoryland and McGregor are barred by the applicable two-year statute of limitations. Victoryland and McGregor were not added as defendants until March 12, 2007 with the filing of the Amended Complaint. As noted above, there is a two-year statute of limitations for bringing any § 1983 claim in Alabama. *See Foster v. Board of School Comm'rs*, 872 F.2d 1563, 1567 n.4 (11th Cir. 1989). "[A]s against a party added by amendment, the statute of limitations continues to run until the amendment is filed making him a party to the suit." *Holloway v. Jackson*, 412 So. 2d 774, 778 (Ala. 1982). At the time Victoryland and McGregor were added to this case, the statute of limitations had already run because the complaint was not filed within two

years of the date on which <u>any</u> of the County Bingo Regulations were promulgated.  Accordingly, all

of the Plaintiffs' Section 1983 claims against Victoryland and McGregor must fail as a matter of law

and are due to be dismissed.

## CONCLUSION

For the reasons stated above and as discussed in Victoryland and McGregor's Joint Motion

to Dismiss, the Plaintiffs' Third Amended Complaint should be dismissed for failing to state claims

upon which relief can be granted against Victoryland and McGregor.


<u>s/Peter J. Tepley</u>
Peter J. Tepley (ASB-1112-T46P)
Macon County Greyhound Park, Inc.
d/b/a Victoryland



<u>s/John M. Bolton, III</u>
John M. Bolton, III (ASB-0999-N68J)
One of the Attorneys for Defendant Milton McGregor


<u>OF COUNSEL</u>:
William M. Slaughter (ASB-8283-R67W)
Patricia C. Diak (ASB-9243-K64P)
Peter J. Tepley (ASB-1112-T46P)
Khristi Doss Driver (ASB-2719-I71F)
**Haskell Slaughter Young & Rediker, LLC**
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
Tel.: (205) 251-1000
Fax: (205) 324-1133
E-mail: pt@hsy.com
E-mail: wms@hsy.com
E-mail: pcd@hsy.com
E-mail: kdd@hsy.com

<u>OF COUNSEL:</u>
Augusta S. Dowd (ASB-5274-D58A)
J. Mark White (ASB-5029-H66J)
Rebecca DePalma (ASB-4105-D57R)
**White Arnold Andrews & Dowd P.C.**
2025 Third Avenue North
Suite 600
Birmingham, Alabama  35203
Tel: (205) 323-1888
Fax: (205) 323-8907
E-mail: jmarkwhite@waadlaw.com
E-mail: adowd@waadlaw.com
E-mail: rdepalma@waadlaw.com

OF COUNSEL:
John M. Bolton, III (ASB-0999-N68J)
Charlanna W. Spencer (ASB-6860-R62C)
**Sasser, Bolton & Sefton, P.C.**
100 Colonial Bank Boulevard
Suite B201
Montgomery, AL  36117
Tel: (334) 532-3400
Fax: (334) 532-3434
E-mail: jbolton@sasserlawfirm.com
E-mail: cspencer@sasserlawfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Robert K. Spotswood, Esq.
Michael T, Sansbury, Esq.
**Spotswood LLC**
2100 Third Avenue North
Concord Center, Suite 940
Birmingham,  AL  35203

Fred D. Gray, Esq.
Fred D. Gray, Jr., Esq.
**Gray Langford Sapp McGowan Gray & Nathanson**
P.O. Box 830239
Tuskegee, AL  36083-0239

James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
**Beers, Anderson, Jackson, Patty, Van Heest & Fawal, P.C.**

45

P.O. Box 1988
Montgomery, AL 36102

s/Peter J. Tepley
Of Counsel