## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| Hope for Families & Community Services, Inc. et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No: **3:06-cv-01113-WKW-WC** |
| David Warren, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' SUR-SURREPLY IN RESPONSE TO PLAINTIFFS' SURREPLY

Defendants Macon County Greyhound Park, Inc. ("VictoryLand") and Milton McGregor ("McGregor") submit this Sur-Surreply in Response to Plaintiffs' Surreply in Opposition to Defendants' Joint Motion to Dismiss ("Surreply").

1.    Victoryland and McGregor have not had an opportunity to respond to the new arguments raised by Plaintiffs in their Surreply.  These arguments include:

a.    Plaintiffs' assertion that *Vaughn v. State*, 880 So. 2d 1178 (Ala. Crim. App. 2003) and *Vaughan v. Marshall*, 2006 WL 1476043, (M.D. Ala. 2006) addressed and rejected Defendants' argument that Fred Gray Jr. ("Gray") is not a public servant under Section 13A-10-1(7) because he is not an officer or employee of government (*see* Surreply (Doc. #89-2), at ¶¶ 2-5)[1];

b.    Plaintiffs' assertion that a selective part of the definition of "Public Employee" in the Alabama Ethics Code should be applied to the Criminal Code's definition of "Public Servant" (*see* Doc. #89-2, at ¶ 5);

---

[1] Because Plaintiffs have not yet filed their Surreply, this Sur-Surreply cites to the proposed Surreply that the Court granted Plaintiffs leave to file.

c.     Plaintiffs' claim that the Town of Shorter, Alabama's liquor license ordinance is not similar to the Existing Facility Requirement in the County Bingo Regulations and that the alleged differences somehow mean that there can be no conceivable rational basis for the Existing Facility Requirement (*see* Doc. #89-2, at ¶ 8); and

d.     Plaintiffs' contention that there is no rational basis for the Existing Facility Requirement because that requirement does not have sufficient "assurances against arbitrary decision- making" (*see* Doc. #89-2, at ¶¶ 10-11).

This Sur-Surreply addresses each of these new arguments and shows why they fail.

2.     The Alabama Court of Criminal Appeals did not address – much less reject – the argument that a public servant as defined by Section 13A-10-1(7) must be an officer or employee of government in the case of *Vaughn v. State*, 880 So. 2d 1178 (Ala. Crim. App. 2003). Plaintiffs continue to insist, without basis, that *Vaughn* determined who was covered by the definition of the term "public servant" in Section 13A-10-1(7) despite the fact that the definition of "public servant" was never an issue in that case because Vaughn <u>admitted</u> that he <u>was</u> a public servant. *Vaughn,* 880 So.2d at 1200 n. 14 ("Vaughn does not dispute that he falls within the definition of "public servant" in § 13A-10-1(7); his only argument is that he does not also fall within the definition of "public employee" in § 36-25-1(23).").

3.     A review of Vaughn's arguments further illustrates that the issue of whether to be a public servant under Section 13A-10-1(7), one must be an officer or employee of government was never before the *Vaughn* court. Vaughn was indicted, among other things, for failing to disclose a conflict of interest under Section 13A-10-62. *Vaughn*, 880 So. 2d at 1190-91. <u>Vaughn argued that the indictment was defective because it did not allege that he met the compensation requirements</u>

for a public employee in Section 36-25-1(23) of the Alabama Ethics Code, which section he argued must be construed "*in pari materia*" with Section 13A-10-62 because they concern the same subject matter. *Id.* at 1191. Using the same *in pari materia* argument, Vaughn also asserted that the State had failed to prove that he was a public servant because it failed to prove that he received more than 50% of his income from the State. *Id.*, at 1200. In short, Vaughn's *in pari materia* argument was that under the provisions of Section 36-25-1(23) of the Alabama Ethics Code, he could not be a public servant under the terms of Section 13A-10-62 unless his compensation constituted more than 50% of his income. *See id.* The Alabama Court of Criminal Appeals rejected Vaughn's *in pari materia* argument in part I.A. of its opinion and held that "[f]or Vaughn to fall within the definition of 'public servant' for purposes of § 13A-10-62 the compensation paid to him did not have to constitute more than 50% of his income." *Id.*, at 1192. The Court of Criminal Appeals further held that "as noted in Part I.A. of this opinion, whether the compensation paid to Vaughn for the analysis constituted more than 50% of his income was not an element of the offense of failing to disclose a conflict under § 13A-10-62; thus the State did not have to prove that he received more than 50% of his income from his fee for performing a comparative site analysis." *Id.*, at 1200. Although the Court of Criminal Appeals goes on to say that "[p]ublic servant is defined in § 13A-10-1(7)" and that Vaughan "clearly fell within the definition of a 'public servant,'" the court also noted that "Vaughn does not dispute that he falls within the definition of "public servant" in § 13A-10-1(7) . . ." *Vaughn*, 880 So.2d at 1200 and n. 14 (emphasis added). Because "Vaughn [did] not dispute that he falls within the definition of 'public servant' in § 13A-10-1(7)," the issue of who is covered by this definition was <u>never</u> questioned or challenged before the Alabama Court of Criminal Appeals, and this case does not support Plaintiffs' position.

3

4.    Plaintiffs' assertion that "the U.S. District Court for the Middle District of Alabama <u>flatly rejected</u> the same argument [that under § 13A-10-1(7) a public servant must be an officer or employee of government] when Vaughan raised it in his habeas petition" (Doc. 89-2, ¶ 4, emphasis added) is <u>flat wrong</u> for several reasons:

a.    First, as noted above, Vaughn never raised this argument.  Instead, he made his *in pari materia* argument  that the compensation requirements for a public employee in Section 36-25-1(23) of the Alabama Ethics Code must be construed "*in pari materia*" with Section 13A-10-62 because they concern the same subject matter.  *Vaughn*, 880 So. 2d at 1191.

b.    Second, the quote that Plaintiffs inaccurately present as a holding of the United States District Court (Doc. 89-2, ¶ 4) is actually an out-of-context excerpt from a lengthy four-page quote from the Alabama Court of Appeals decision that appears in the Recommendation of the Magistrate Judge that was adopted in the District Court's Opinion.[2]  *Vaughan v. Marshall*, 2006 WL 1476043, *7-8 (M.D. Ala. 2006); *see also* Ex. A, at pp. 12, 15, 16.  Not only do the Plaintiffs fail to note that the quote they attribute to the District Court  is actually a quote from the Alabama Court of Criminal Appeals' opinion, but they also use the quote out of context.  The Plaintiffs begin the quote in the middle of the sentence leaving out the following key wording: "<u>However, as noted in Part I.A. of this opinion, whether the compensation paid to Vaughn for the analysis constituted more than 50% of his income was not an element of the offense of failing to disclose a conflict of interest under § 13A-10-62</u>;" *Marshall*, 2006 WL 1476043, *8; Ex. A, at pp.

---

[2] While the lengthy quote is not as clear in the Westlaw copy of the District Court's opinion adopting the Recommendation of the Magist rate Judge, it is readily apparent in the actual Recommendation of the Magistrate Judge that was filed in the case.  A copy of that Recommendation is attached hereto as Exhibit A.  In any event, the quote is also readily apparent when the Westlaw copy of the District Court's opinion is read.

13-14. Part I.A. of the Court of Criminal Appeals decision is where that court rejects Vaughn's *in pari materia* argument. *Vaughn*, 880 So. 2d at 1191-92. Moreover, the Plaintiffs fail to quote the Court of Criminal Appeal's footnote 14 and its critical language that appears at the end of the last sentence of the out-of-context excerpt that Plaintiffs used. As noted above, that critical footnote states that: "Vaughn does not dispute that he falls within the definition of 'public servant' in § 13A-10-1(7); his only argument is that he does not also fall within the definition of 'public employee' in § 36-25-1(23), Ala.Code 1975." *Marshall*, 2006 WL 1476043, *8; Ex. A, at p. 14 (emphasis added).

       c.     Moreover, the Plaintiffs' selective quote is even more misleading and the case is more clearly inapplicable because the District Court was not even ruling on Vaughn's *in pari materia* argument. Rather, it was determining whether Vaughn had met his burden in his habeas petition of showing that there was insufficient evidence to convict him. *See Marshall*, 2006 WL 1476043, *6-7; *see also* Ex. A, at pp. 11-12. Indeed, the District Court notes that Vaughn was arguing that the decision of the Alabama Court of Criminal Appeals that there was sufficient evidence to sustain his conviction was "'contrary to, or involved an unreasonable application of'" clearly established standards set by the United States Supreme Court. *Marshall*, 2006 WL 1476043, *6-7; Ex. A, at 11-12. The District Court noted that the relevant question was "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Marshall*, 2006 WL 1476043, *7; Ex. A, at 12 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in the original). The District Court then: (1) stated that the Alabama Court of Criminal Appeals had "conducted a thorough analysis of the evidence in the record and concluded that there was sufficient proof of guilt of each of the elements of failing to disclose a conflict of interest" (*Marshall*, 2006 WL

5

1476043, *7; Ex. A, at 12); (2) provided a lengthy (approximately four-page) quote from the Alabama Court of Criminal Appeals' decision in the middle of which appears the out-of-context excerpt cited by the Plaintiffs (*Marshall*, 2006 WL 1476043, *7-10; Ex. A, at 12- 16); and (3) then held that "the Alabama Court of Criminal Appeals' well-reasoned <u>disposition of Vaughan's sufficiency claim</u> was neither contrary to nor an unreasonable application of clearly established federal law" (*Marshall*, 2006 WL 1476043, *10; Ex. A, at 16). Thus, the District Court never ruled on Vaughan's *in pari materia* argument as the Plaintiffs have attempted to lead the Court to believe.

5.     Plaintiffs' suggestion that the Court should use a selected portion – but not all – of the definition of "public employee" in Section 36-25-1(23) of the Alabama Ethics Code to determine which employees of government are public servants under Section 13A-10-1(7) (Doc. #89-2, ¶ 5) is simply without merit.  The Plaintiffs either failed to read or failed to inform the Court that the definitions in Section 36-25-1 are <u>limited solely</u> to the Alabama Ethics Code.  The opening sentence of Section 36-25-1 explicitly states that "<u>[w]henever **used in this chapter**, the following words and terms shall have the following meanings.</u>" (Emphasis added). Moreover, as noted above, the Court of Criminal Appeals in *Vaughn* rejected Vaughn's attempt to have the Ethic Code's definitions read into the Criminal Code, the very thing the Plaintiffs seek to have the Court do here.  Because Section 13A-10-1(7) does not define what is meant by the term "officer or employee of government" the Court must give those terms their plain meaning. *See Bassie v. Obstetrics & Gynecology Assoc. of Northwest Alabama, P.C.*, 828 So. 2d 280, 283 (Ala. 2002) ("In determining the meaning of a statute, [the Alabama Supreme Court] looks to the plain meaning of the words as written by the legislature."). Moreover, Section 13A-10-1(7) does not ever use the term "public employee." Furthermore, adopting the definition advocated by Plaintiffs would create a slippery slope as

6

Defendants have previously stated. Under Plaintiffs' reasoning, not only Vaughn but Vaughn's defense counsel would be considered "public servants." Indeed, Sheriff Warren's attorneys in this case are "public servants" under Plaintiffs' reasoning. Likewise, under Plaintiffs' reasoning, Gray's counsel would also be a public servant. Under Plaintiffs' strained interpretation, these attorneys would be required to file Statements of Economic Interests with the Alabama Ethics Commission. *See* Ala.Code § 36-25-14. That is clearly not the purpose of the statute. Furthermore, that begs the question whether an attorney for a public servant can become a public servant without being appointed as a Special Deputy Attorney General with the approval of the Governor. *See* Ala. Code 1975 § 36-15-21; *Ex parte Weaver*, 570 So. 2d 675 (Ala. 1990). These examples further illustrate the fallacy of Plaintiffs' arguments.

5.     Next, Plaintiffs' claim that the Town of Shorter, Alabama's liquor license ordinance is not similar to the Existing Facility Requirement in the County Bingo Regulations and that the alleged differences somehow mean that there can be no conceivable rational basis for the Existing Facility Requirement (Doc. #89-2, at ¶¶ 8-10) is misplaced for several reasons:

a.     First, like the Existing Facility Requirement and the Alabama ABC Board License Application Procedure, the Shorter liquor license ordinance ("Ordinance") requires that the building be built and inspected before the license can be considered for final approval. Section 1-22 (b) of the Ordinance specifically states that the police department and the fire department and the building inspection department "shall ins[p]ect the proposed premises or make such investigation into the reputation or character of the applicant as may be required to insure the premises to [sic] occupied and that the person seeking to conduct the business complies and meets the requirements for which said department has responsibility." (Doc. 89-3, § 1-22(b) (emphasis added). Moreover,

7

Section 1-22(e) makes clear that the building must be completed and ready for <u>final inspection</u> before the actual restaurant liquor license is even considered.  *See* Doc. 89-3, § 1-22(b) ("Once the construction of a restaurant has reached the stage of final inspection by the building inspection department, then the actual license application for restaurant liquor license shall be considered by the city council.").  Thus, the fact that the Ordinance on which Plaintiffs rely requires that <u>a building must be built and inspected before the actual license application can be considered,</u> is further evidence that there is a rational basis for the Existing Facility Requirement. Furthermore, as previously noted (*see* Doc. #88, at 15-16), the Sheriff has obligations to protect the safety and welfare of the citizens of Macon County, which are also served by requiring the inspection of a proposed bingo casino prior to issuance of a license. This inspection is also rationally related to the Sheriff's responsibilities to regulate electronic bingo operations, a form of gambling, the regulation of which lies at the heart of the states' police powers. *See Johnson v. Collins Entertainment Co. Inc.*, 199 F. 3d 710, 720 (4th Cir. 1999).

b.    Moreover, Plaintiffs' claim that the Ordinance, unlike the Existing Facility Requirement, gives the applicant some indication that the license will be granted is not only incorrect, but even if it <u>were</u> correct, it could not negate any conceivable rational basis for the Existing Facility Requirement. The Ordinance makes clear that applicants cannot construe preliminary approvals of plans and reports to indicate what the final determination on the license application will be.  *See* Doc. #89-3, §1-22(e) ("Approval of the plans and reports shall not be construed by the applicant to mean that the final application shall be denied.")[3].  Likewise, the City

_____

[3] Given the context of the sentence, the use of "denied" instead of "approved" is an obvious typographical error. However, even with this obvious error, it is clear that applicant cannot presume what action will ultimately be taken on the application.

of Tuscaloosa's ordinance for restaurant liquor licenses also makes clear that an applicant relies on

preliminary approval at its own risk. The Tuscaloosa ordinance provides that the city council can

approve plans submitted with the application but that:

> Approval of the plans and reports shall not be construed by the applicant to mean that the final application shall be approved by the city council. <u>The applicant shall proceed with construction at its own risk with the knowledge that the application for a restaurant liquor license may be denied.</u> Once the construction of a restaurant has reached the stage of final inspection by the building inspection department, then the actual license application for restaurant liquor license shall be considered by the city council.

Code of City of Tuscaloosa, Alabama, Sec. 3-23(e) (emphasis added) (a copy of the ordinance

adopting the Code and chapter 3 of the Code, concerning alcoholic beverages, are attached hereto

as Exhibit B).

Even if the Ordinance allowed the applicant to presume "some indication" of whether or

not the license would be granted, such state of affairs would not mean that there cannot be a rational

basis for a regulation that did not allow such presumption. What the Plaintiffs want is a more

refined Existing Facility Requirement that would allow them to make some preliminary

presumptions about whether Lucky Palace's bingo casino would ultimately be licensed. However,

Equal Protection does not require that the Existing Facility Requirement be written more to

Plaintiffs' liking. The law is clear that "nice adaption of remedies are not required" for there to be

a rational basis for the regulation. *FCC v. Beach Commc'ns*, 508 U.S. 307, 315 (1993) (quoting

*Heath & Milligan Mfg. Co. v. Worst*, 207 U.S. 338 (1907)). Moreover, a governmental

"classification does not violate equal protection simply because it is not made with mathematical

nicety or because in practice it results in some inequality.'" *Id.* at 316, n.7 (quoting *Dandridge v.*

*Williams*, 397 U.S. 471, 485 (1970)). To meet their burden of showing that there is no rational basis

9

for the Existing Facility Requirement, Plaintiffs must, as they acknowledge (Doc. #83, at 16), negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Board of Trustees of University of Alabama v. Garret*, 531 U.S. 356, 367 (2001). Plaintiffs' argument that the Existing Facility Requirement could be drawn more to their liking utterly fails to satisfy their burden. Furthermore, as noted above, the Existing Facility Requirement is rationally related to the Sheriff's obligations to protect the safety and welfare of the citizens of Macon County and his responsibilities to regulate electronic bingo operations, both of which are served by requiring the inspection of a proposed bingo casino prior to issuance of a license.

6.    Plaintiffs' contention that there is no rational basis for the Existing Facility Requirement because that requirement does not have sufficient "assurances against arbitrary decision-making" (*see* Doc. #89-2, at ¶¶ 10-11) is entirely without merit. The Plaintiffs' challenge to the Existing Facility Requirement is that there is no rational basis for it. *See* Doc. #83, at 15 ("The Plaintiffs agree that the rules and regulations and their issuance by the Sheriff should be subjected only to rational basis review."). However, Plaintiffs' contention that the Existing Facility Requirement does not have sufficient assurances against arbitrary decision-making cannot as a matter of law be an adequate basis for a rational basis challenge to a governmental regulation because it is premised on the assumption that a government official will act arbitrarily in enforcing the regulation. Plaintiffs' claim fails because the law does not allow such a presumption. Rather, the law presumes the opposite – that a governmental official will administer and apply regulations and statutes in a non-arbitrary and constitutional manner. *See Baggett v. Bullitt*, 215 F. Supp. 439, 452 (W.D. Wash. 1963) (In determining whether the statute was unconstitutional, the court will "not presume that the defendant state officials will act arbitrarily or in disregard of constitutional rights

10

of public employees, but [instead the] court must assume that the statute will be administered and applied in a constitutional manner." ); *Barnes v. City of Gadsden*, 174 F.Supp. 64, 68 (N.D. Ala. 1958) ( In a declaratory action involving a redevelopment project under the administration of HUD, in response to plaintiffs' allegation that the municipality would sell the project to private interests that would in turn make it racially segregated, the court noted that "[t]he presumption that public officers will in good faith discharge their duties and observe the law is a very strong presumption, and will prevail until overcome by clear and convincing evidence to the contrary."); *see also Tate v. City of Eufaula*, 165 F. Supp. 303, 306 (M.D. Ala. 1958) (In a declaratory action where citizens sought declaration of their legal relations and rights in a development plan in which federal funds were to be spent, the court stated that "it must be presumed that public officials ... will observe in good faith the Constitution and laws.").

## CONCLUSION

For the reasons stated herein and in Defendants' Reply Brief and their Supporting Brief, the Plaintiffs' Third Amended Complaint is due to be dismissed for failing to state a claim upon which relief can be granted.

s/Peter J. Tepley
Peter J. Tepley (ASB-1112-T46P)
Macon County Greyhound Park, Inc.
d/b/a Victoryland

s/John M. Bolton, III
John M. Bolton, III (ASB-0999-N68J)
One of the Attorneys for Defendant Milton McGregor

11

OF COUNSEL:
William M. Slaughter (ASB-8283-R67W)
Patricia C. Diak (ASB-9243-K64P)
Peter J. Tepley (ASB-1112-T46P)
Khristi Doss Driver (ASB-2719-I71F)
**Haskell Slaughter Young & Rediker, LLC**
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
Tel.: (205) 251-1000
Fax: (205) 324-1133
E-mail: pt@hsy.com
E-mail: wms@hsy.com
E-mail: pcd@hsy.com
E-mail: kdd@hsy.com

OF COUNSEL:
Augusta S. Dowd (ASB-5274-D58A)
J. Mark White (ASB-5029-H66J)
Rebecca DePalma (ASB-4105-D57R)
**White Arnold Andrews & Dowd P.C.**
2025 Third Avenue North
Suite 600
Birmingham, Alabama  35203
Tel: (205) 323-1888
Fax: (205) 323-8907
E-mail: jmarkwhite@waadlaw.com
E-mail: adowd@waadlaw.com
E-mail: rdepalma@waadlaw.com

OF COUNSEL:
John M. Bolton, III (ASB-0999-N68J)
Charlanna W. Spencer (ASB-6860-R62C)
**Sasser, Bolton & Sefton, P.C.**
100 Colonial Bank Boulevard
Suite B201
Montgomery, AL  36117
Tel: (334) 532-3400
Fax: (334) 532-3434
E-mail: jbolton@sasserlawfirm.com
E-mail: cspencer@sasserlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of September, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Robert K. Spotswood, Esq.
Michael T, Sansbury, Esq.
**Spotswood LLC**
2100 Third Avenue North
Concord Center, Suite 940
Birmingham, AL 35203

Fred D. Gray, Esq.
Fred D. Gray, Jr., Esq.
**Gray Langford Sapp McGowan Gray & Nathanson**
P.O. Box 830239
Tuskegee, AL 36083-0239

James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
**Beers, Anderson, Jackson, Patty, Van Heest & Fawal, P.C.**
P.O. Box 1988
Montgomery, AL 36102

W. Lewis Garrison, Esq.
Stephen D. Heninger, Esq.
**Heninger Garrison Davis, L.L.C.**
2224 1st Avenue North
Birmingham, AL 35203

s/Peter J. Tepley
Of Counsel

.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROLAND H. VAUGHAN | * | |
| Petitioner, | * | |
| v. | * | 2:03-CV-1111-MEF |
| | | (WO) |
| D.T. MARSHALL, *et al.*, | * | |
| Respondents. | * | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION AND PROCEDURAL HISTORY

Roland Vaughan ["Vaughan"], by and through counsel, filed this 28 U.S.C. § 2254

petition for habeas corpus relief on November 13, 2003. On March 15, 2002, a jury sitting

before the Circuit Court for Montgomery County, Alabama, found Vaughan guilty of failing

to disclose a conflict of interest, in violation of Ala. Code § 13A-10-62.  The trial court

sentenced Vaughan on April 30, 2002 to a term of 12 months imprisonment in the

Montgomery County Detention Facility.  The trial court suspended the sentence and placed

Vaughan on 12 months probation.  The trial court also imposed 40 hours of community

service and a $2,000.00 fine.[1]

Vaughan appealed the conviction to the Alabama Court of Criminal Appeals, arguing

that (1) the compensation paid to him by the State did not constitute more than 50% of his

---

[1]Execution of Vaughan's sentence was stayed pending resolution of his direct appeal.

income, and thus, under the definition of "public employee" in the Alabama ethics law, his indictment failed to charge the offense of conflict of interest; (2) his indictment was void because it failed to adequately place him on notice of the nature of the conflict of interest with which he was charged ; (3) the statute making it a criminal offense for failing to disclose a conflict of interest was unconstitutionally vague; (4) the trial court's jury instruction regarding definition of "substantial discretionary function" was misleading; and (5) the evidence was insufficient to sustain his conviction. The appellate court, in a lengthy, well-reasoned opinion, affirmed the trial court's judgment in its entirety on June 27, 2003, and Vaughan's application for rehearing was denied August 15, 2003. The Alabama Supreme Court denied Vaughan's petition for writ of certiorari on November 7, 2003. (Doc. Nos. 1, 15 Exhs. 2-5.)

In the instant application for habeas relief, Vaughan presents the following two issues for review:[2]

    1. Ala. Code § 13A-10-62 is void for vagueness; and

    2. The evidence was insufficient to sustain his conviction.

## II. DISCUSSION

---

[2]In his response to Respondents' answer, Vaughan disputes Respondents' contention that he puts forth five claims for federal review, stating instead, that his petition sets out only three claims, *i.e.*, that Ala. Code § 13A-10-62 is void for vagueness, the evidence was insufficient to sustain his conviction, and the indictment failed to provide adequate notice of the nature and cause of the accusation again him. (Doc. No. 16, pgs. 2-3.) In this same response, Vaughan states that he withdraws the third claim, *i.e.*, that the indictment was insufficient. (*Id.* at pg. 3.) The court, therefore, will only address Vaughan's claims that the statute under which he was indicted is void for vagueness and the evidence against him was insufficient to sustain his conviction.

*A. Exhaustion of State Remedies*

Under *Rose v. Lundy*, 455 U.S. 509, 510 (1982), before a Petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *O'Sullivan v. Boerckel*, 526 U. S. 838 (1999); 28 U.S.C. §2254(b) and (c). In Alabama, this may be accomplished by raising certain claims on direct appeal and by way of post-conviction proceedings. Exhaustion is not required if, at the time a federal habeas corpus petition is filed, petitioner has no available state remedy. *Teague v. Lane*, 489 U. S. 288, 297-98 (1989). Here, Vaughan raised all his current arguments in the state court and, therefore, exhausted his state court remedies for the purposes of federal habeas review.

*B. Disposition of Claims*

In their answer, Respondents maintain that Vaughan's claims were properly adjudicated on the merits by the state courts. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Petitioner filed a response to the answer of Respondents. (Doc. No. 16.) Upon review of the § 2254 petition, the answer of Respondents, and Vaughan's response, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts.*

*C. Standard of Review*

To prevail on his § 2254 claims, Vaughan must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[3] *see Williams*, 529 U.S. at 412-13. A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id.* at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id.* at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively

---

[3] 28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)    resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)    resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411. A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). Further, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)).

*D. The Void for Vagueness Claim*

Vaughan argues that Ala. Code § 13A-10-62 is unconstitutionally vague because (1) the term "substantial discretionary authority" is not defined in the Code and (2) it fails to provide the kind of notice that enables ordinary people to understand what conduct it prohibits. Under § 13A-10-62(a), a public servant commits the crime of failing to disclose a conflict of interest "if he exercises any substantial discretionary function in connection with a government contract, purchase, payment or other pecuniary transaction without advance public disclosure of a known potential conflicting interest in the transaction." "A 'potential conflicting interest' exists, but is not limited to, when the public servant is a director,

president, general manager or similar executive officer, or owns directly or indirectly a substantial portion of any non-governmental entity participating in the transaction." Ala. Code § 13A-10-62 (b). "Public disclosure includes public announcement or notification to a superior officer or the Attorney General." Ala. Code § 13A-10-62 (c).

During Vaughan's appeal, the Alabama Court of Criminal Appeals found that Ala. Code § 13A-10-62 was not unconstitutionally vague. Vaughan now argues that the appellate court's decision was incorrect because the Supreme Court of the United States has clearly established the void for vagueness doctrine, and the state court's decision was "contrary to, or involved an unreasonable application of" that doctrine.

A review of the Alabama Court of Criminal Appeals' decision demonstrates that the appellate court applied the correct law as established by the United States Supreme Court and that its decision was not "contrary to" or "an unreasonable application" of that law. The Alabama Court of Criminal Appeals stated in its opinion:[4]

> "'The doctrine of vagueness ... originates in the due process clause of the Fourteenth Amendment, *see Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, *see United States v. National Dairy Products Corporation,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
>
> "'Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand

---

[4]In its opinion, the Alabama Court of Criminal Appeals spelled Petitioner's name "Vaughn." For purposes of this opinion, when not quoting the decision of the appellate court, the undersigned uses the spelling of Petitioner's name as it is reflected in the pleadings before the court, *i.e.* "Vaughan."

that his contemplated conduct is proscribed. *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954). A vague statute does not give adequate "notice of the required conduct to one who would avoid its penalties," *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (195[2] ), is not "sufficiently focused to forewarn of both its reach and coverage," *United States v. National Dairy Products Corporation,* 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and "may trap the innocent by not providing fair warning," *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972).

" 'As the United States Supreme Court observed in *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):

> """"There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt."

> "'333 U.S. at 515-16, 68 S.Ct. at 670, 92 [L.Ed. at] 849-50     [citations omitted].'

"*McCrary   v.   State,*   429   So.2d   1121,   1123-24 (Ala.Cr.App.1982), *cert. denied,* 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983)."

*McCall v. State,* 565 So.2d 1163, 1165 (Ala.Crim.App.1990).

" " 'As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that

-7-

proscription. See *Kolender,* supra; *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).'"

*Timmons v. City of Montgomery,* 641 So.2d 1263, 1264 (Ala.Crim.App.1993), quoting *McCorkle v. State,* 446 So.2d 684, 685 (Ala.Crim.App.1983). However,

> "'"[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid."'"

*Sterling v. State,* 701 So.2d 71, 73 (Ala.Crim.App.1997), quoting *Culbreath v. State,* 667 So.2d 156, 158 (Ala.Crim.App.1995), abrogated on other grounds by *Hayes v. State,* 717 So.2d 30 (Ala.Crim.App.1997), quoting in turn, *Rose v. Locke,* 423 U.S. 48, 49-50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

"'Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced.'" *Scott & Scott, Inc. v. City of Mountain Brook,* 844 So.2d 577, 589 (Ala.2002), quoting *City of Birmingham v. Samford,* 274 Ala. 367, 372, 149 So.2d 271, 275 (1963). The judicial power to declare a statute void for vagueness "should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended." *Jansen v. State ex rel. Downing,* 273 Ala. 166, 170, 137 So.2d 47, 50 (1962).

Contrary to Vaughn's contention, as noted in Part I.A. of this opinion, § 13A-10-62 clearly governs conduct by public servants, and the term public servant is plainly and unambiguously defined in §§ 13A-10-60(b)(3) and 13A-10-1(7), Ala.Code 1975. In addition, although the term "substantial discretionary function" is not specifically defined in the criminal code, we do not find this to be fatal. See, e.g., *State v. Randall,* 669 So.2d 223, 226 (Ala. Crim. App. 1995) (holding that Alabama's stalking law, § 13A-6-90 et seq., Ala.Code

1975, was not void for vagueness, even though the terms "repeatedly" and "series" were not specifically defined); *Musgrove v. State,* 519 So.2d 565, 582-83 (Ala. Crim. App.), aff'd, 519 So.2d 586 (Ala. 1986)(holding that the kidnapping statute, § 13A-6-43, Ala.Code 1975, was not void for vagueness, even though the term "terrorize" was not specifically defined); and *Farris v. State,* 432 So.2d 538, 539-40 (Ala. Crim. App. 1983) (holding that § 13A-7-44, Ala.Code 1975, criminal possession of explosives, was not void for vagueness, even though the term "explosives" was not specifically defined). Compare *McCorkle,* 446 So.2d at 685 (holding that § 13A-14-1, Ala.Code 1975, was unconstitutionally vague because it failed to define the term "legal duty" which, the Court said, had "several established meanings").

"It is well accepted that a court, in interpreting a statute, will give words used therein their '"natural, plain, ordinary, and commonly understood meaning."'" *State v. Randall,* 669 So.2d at 226, quoting *Ex parte Etowah County Board of Education,* 584 So.2d 528, 530 (Ala. 1991).

> "'Although penal statutes are to be strictly construed, courts are not required to abandon common sense. Absent any indication to the contrary, the words must be given their ordinary and normal meaning.'"

*Musgrove,* 519 So.2d at 582, quoting *Walker v. State,* 428 So.2d 139, 141 (Ala. Crim. App. 1982).

The commentary to § 13A-10-62 provides, in part: "The public servant must be in a position to 'exercise any substantial discretionary function,' *e.g.,* approve a contract, negotiate the terms, etc." This is the only indication in the Code of the scope of the term substantial discretionary function and this list of examples is clearly not exhaustive. Thus, we must look to the ordinary and common meaning of the terms. "Discretionary function" or "discretionary act" is defined in *Black's Law Dictionary* 467 (6th ed.1996), as "[t]hose acts wherein there is no hard and fast rule as to [the] course of conduct that one must or must not take" and "[o]ne which requires exercise in judgment and choice and involves what is just and proper under the circumstances." [FN9] "Substantial" is defined in *Black's Law Dictionary* 1428 (6th ed. 1996), as "[o]f real worth and importance; of considerable value; valuable ··· [s]omething worthwhile as distinguished from something without value or merely nominal" and as being "[s]ynonomous with material." The trial court instructed the jury on these commonly understood definitions in its oral charge.[FN10]

-9-

FN9. This term is defined in *Black's Law Dictionary* 479 (7th ed.1999), as "[a] deed involving an exercise of personal judgment and conscience."

FN10. See Part III of this opinion.

When the ordinary and common meaning of the term "substantial discretionary function" is applied to this statute as well as the definitions of "public servant" and "potential conflicting interest," it is clear that § 13A-10-62 governs the conduct of any person acting as an advisor or consultant to the government in performing a governmental function and that it prohibits any such person who is exercising his or her judgment and choice on a matter material to any government contract, purchase, payment, or other pecuniary transaction from owning directly or indirectly a substantial portion of any non-governmental entity involved in that government contract, purchase, payment, or pecuniary transaction.

Section 13A-10-62 defines the offense of failing to disclose a conflict of interest with sufficient definitiveness that ordinary people are provided fair warning of what conduct is prohibited and who falls within the scope of the statute. Therefore, we hold that § 13A-10-62 is not unconstitutionally void as being vague.

(Doc. No. 15, Exh. 4 at pgs. 38-45.)

In this case, Vaughan has failed to demonstrate how the state court's decision constituted an unreasonable application of Supreme Court law. He argues that §13A-10-62 is so vague as to prevent people of ordinary intelligence from knowing what actions are legal and which are illegal. The Alabama Court of Criminal Appeals, however, determined that the statute in question clearly governs conduct by public servants, as such term is plainly and unambiguously defined in § 13A-10-60(b)(3) and § 13A-10-1(7), and that while the term "substantial discretionary function" is not specifically defined in the Alabama criminal code, when the ordinary and common meaning of "substantial discretionary function" is applied

-10-

to the statute along with the definitions of "public servant" and "potential conflicting interest," § 13A-10-62 is not so vague that a person of common intelligence would not be on fair notice of what conduct is prohibited. Thus, despite Vaughan's arguments to the contrary, the court agrees with the state court that the term "substantial discretionary function" is not so vague as to make this statute unconstitutional.

In this situation, Vaughan has failed to establish, and this court cannot find, that the Alabama Court of Criminal Appeals' decision was contrary to, or involved an unreasonable application of clearly established Supreme Court law. The Alabama Court of Criminal Appeals cited the correct legal standards for the void for vagueness doctrine as established by the Supreme Court and its application of those standards was not unreasonable. Accordingly, Vaughan is not entitled to habeas corpus relief on his void for vagueness claim.

*E. The Sufficiency of the Evidence Claim.*

Vaughan's second argument is that the State produced insufficient evidence to sustain his conviction for failing to disclose a conflict of interest. He maintains that there was no substantial evidence tending to prove all the elements of the offense charged and that the evidence in the case was so lacking that no rational trier of fact could have concluded beyond a reasonable doubt that the State had proven every element of the offense. As a result, Vaughan now argues that the state court's conclusion that the evidence was sufficient to sustain his conviction was incorrect because the Supreme Court has clearly established the legal standard for assessing such claims and the state court's decision was "contrary to, or involved an unreasonable application of" this precedent and constituted "an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship,* 397 U.S. 358, 364 (1970). Under § 2254 , habeas relief on a claim of insufficient evidence is appropriate only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

> But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318-319. Sufficiency claims are judged by the elements defined by state law. *Id.* at 324 n.16.

The Alabama Court of Criminal Appeals conducted a thorough analysis of the evidence in the record and concluded that there was sufficient proof of guilt of each of the elements of failing to disclose a conflict of interest. The appellate court stated in its opinion:

> "'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" *Ballenger v. State,* 720 So.2d 1033, 1034 (Ala. Crim. App.1998), quoting *Faircloth v. State,* 471 So.2d 485, 488 (Ala. Crim. App.1984), aff'd, 471 So.2d 493 (Ala.1985). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable

-12-

doubt.'" *Nunn v. State,* 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting *O'Neal v. State,* 602 So.2d 462, 464 (Ala.Crim.App.1992). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" *Farrior v. State,* 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting *Ward v. State,* 557 So.2d 848, 850 (Ala.Crim.App.1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is *legally* sufficient to allow submission of an issue for decision [by] the jury." *Ex parte Bankston,* 358 So.2d 1040, 1042 (Ala.1978).

Moreover, any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [goes] to the weight of the evidence and [creates a question] of fact to be resolved by the jury." *Rowell v. State,* 647 So.2d 67, 69-70 (Ala. Crim. App.1994). "'"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."'" *Johnson v. State,* 555 So.2d 818, 820 (Ala.Crim.App.1989), quoting *Harris v. State,* 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting in turn *Byrd v. State,* 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). "We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial." *Johnson,* 555 So.2d at 820. "'When the jury has passed on the credibility of evidence tending to establish the defendant's guilt, this Court cannot disturb its finding.'" *Rowell,* 647 So.2d at 69, quoting *Collins v. State,* 412 So.2d 845, 846 (Ala. Crim. App.1982). Furthermore, "'[t]his Court must view the evidence in the light most favorable to the State, and "draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact."'" *D.L. v. State,* 625 So.2d 1201, 1204, (Ala. Crim. App.1993), quoting *Woodberry v. State,* 497 So.2d 587, 590 (Ala. Crim. App. 1986).

To establish the offense of failing to disclose a conflict of interest under § 13A-10-62, the State was required to prove the following three elements: (1) that Vaughn was a public servant; (2) that Vaughn exercised a substantial discretionary function in connection with a government contract, purchase, payment, or other pecuniary transaction; and (3) that Vaughn failed to provide public disclosure of a known potential conflicting interest.

Vaughn makes three specific contentions. First, Vaughn contends that the State failed to prove that he was a public servant because, he says, the State failed to prove that the compensation he received from the State of Alabama for the comparative site analysis constituted more than 50% of his income. However,

-13-

as noted in Part I.A. of this opinion, whether the compensation paid to Vaughn for the analysis constituted more than 50% of his income was not an element of the offense of failing to disclose a conflict of interest under § 13A-10-62; thus, the State did not have to prove that he received more than 50% of his income from his fee for performing the comparative site analysis. "Public servant" is defined in § 13A-10-1(7), Ala.Code 1975, as "[a]ny officer or employee of government, including legislators and judges and any person or agency participating as an advisor, consultant or otherwise in performing a governmental function." (Emphasis added.) The evidence was undisputed that Vaughn was hired as a consultant to conduct a comparative site analysis for the State of Alabama; thus, he clearly fell within the definition of a "public servant." [FN14]

> FN14. In fact, Vaughn does not dispute that he falls within the definition of "public servant" in § 13A-10-1(7); his only argument is that he does not also fall within the definition of "public employee" in § 36-25-1(23), Ala.Code 1975.

Second, Vaughn contends that the State failed to prove that he exercised a substantial discretionary function because, he says, the analysis he submitted to the State recommending the Ripley Street property for the warehouse project was actually a collaborative recommendation by him and the two agency heads - Randall Smith of the ABC Board and Shane Bailey of ADECA - and that he never had any discretion in what site to recommend because Smith and Bailey had already determined that the Ripley Street property was the only site they wanted for the project.

The evidence showed that Vaughn was hired to perform a comparative site analysis of three potential sites for the State of Alabama and to recommend a site based on that analysis for the State of Alabama to purchase in order to build a warehouse facility for the ABC Board and ADECA. Although Garver testified that Vaughn had no discretion in which property to recommend by the time he submitted his reports in October and December 2000 because, Garver said, the decision had been made in July 2000 when Smith indicated that he was not interested in the west Montgomery property and Bailey indicated that he was not interested in the DYS property, both Bailey and Smith refuted Garver's testimony. Bailey testified that both he and Smith were interested in the DYS property and that they both thought that the DYS property was a good prospect. In addition, both Bailey and Smith testified that no decision had been made in the summer of 2000. Smith testified that, although the group was "beginning to lean toward" the Ripley Street property in the summer of 2000,

the decision had not actually been made and the other properties had not been excluded from consideration. (R. 387.) In addition, Bailey specifically testified that it was not until after "the analysis was complete and we were going to compare the three sites and try to make a decision" that the State decided to focus on the Ripley Street property. (R. 364.)

As noted above, conflicting evidence is for the jury to resolve, not for this Court. Based on the testimony presented at trial, the jury could have reasonably concluded that Vaughn's analysis and recommendation was not the result of Bailey and Smith's deciding that the Ripley Street property was the only alternative, but was, in fact, Vaughn's recommendation based on the exercise of his own judgment and choice and on what he felt was just and proper under the circumstances, i.e., a discretionary act. Although there is no doubt that input from Smith and Bailey regarding the needs of the ABC Board and ADECA was of paramount importance in the analysis and recommendation, there was evidence - specifically, Smith and Bailey's testimony - from which the jury could have concluded that it was Vaughn, and not Smith and Bailey, who made the ultimate decision as to which property to recommend to the State. In addition, the jury could have concluded from the evidence that Vaughn's analysis and recommendation was of value and importance and was material to the State's ultimate decision with respect to the three parcels of property, i.e., that it was substantial. Therefore, we find that there was sufficient evidence presented at trial from which the jury could have reasonably concluded that Vaughn exercised a substantial discretionary function when doing the comparative site analysis and recommendation.

Finally, Vaughn contends that the State failed to prove that he had a known potential conflicting interest because, he says, even assuming that the site analysis constituted a substantial discretionary function, he did not acquire any interest in C & H investments until "well after the property had been selected and after the State of Alabama had decided not to purchase the property." (Vaughn's brief at p. 44.) Vaughn's argument in this regard is based on his testimony at trial and Nolin's testimony at trial that he did not purchase his 50% of C & H Investments until December 11, 2000, after the State realized in November that it did not have the funds to purchase the property and only four days before his final analysis was submitted to the State on December 15, 2000.

Although Vaughn and Nolin testified that Vaughn did not acquire any interest in C & H Investments until December 11, 2000, Terry Wilson, who drew up the bill of sale, testified that the bill of sale was executed within "a couple of

-15-

weeks" of the formation of C & H Investments, i.e., sometime in mid-September 2000. (R. 222.) If the jury believed this testimony as well as the testimony of Bailey that no final decision was to be made regarding the Ripley Street property until after Vaughn's analysis and recommendation was submitted to the State, it could have reasonably concluded that Vaughn "own[ed] directly or indirectly a substantial portion of [a] nongovernmental entity participating in the transaction," *i.e.*, that he had a known potential conflicting interest. § 13A-10-62(b), Ala.Code 1975.[FN15]

> FN15. In addition, Vaughn does not dispute that he did not make a "public announcement or notification to a superior officer or the Attorney General" regarding his interest in C & H Investments. § 13A-10-62(c), Ala.Code 1975.

> Therefore, viewing the evidence in the light most favorable to the State and resolving all credibility choices in favor of the jury's verdict, as we must, we conclude that there was sufficient evidence from which the jury could have reasonably concluded that Vaughn was a public servant who exercised a substantial discretionary function and who did not disclose a known potential conflicting interest.

(Doc. No. 15, Exh. 4 at pgs. 51-59.)

The court finds the Alabama Court of Criminal Appeals' well-reasoned disposition of Vaughan's sufficiency claim was neither contrary to nor or an unreasonable application of clearly established federal law. Moreover, the state court properly adjudicated this claim based on a reasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C. § 2254(d)(2). The appellate court cited case law that plainly incorporated the *Jackson* standard and explained and supported its conclusion that a rational trier of fact could have found Vaughan guilty beyond a reasonable doubt of failing to disclose a conflict of interest in violation of Ala. Code § 13A-10-62. Therefore, Vaughan is entitled to no relief on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Roland Vaughan be DENIED and that this case be DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before April 12, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 31st day of March, 2006.

-17-

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

**CODE**
**City of**
**TUSCALOOSA, ALABAMA**

**Codified through**
**Ord. No. 7071, enacted May 15, 2007.**
**(Supplement No. 57)**

**Preliminaries**

**CODE**
**CITY OF**
**TUSCALOOSA, ALABAMA**

———

CONTAINING THE
GENERAL ORDINANCES OF THE CITY

———

Adopted, September 1, 1983

———

Effective, September 6, 1983

———

Published by Order of the Commission Board
and Dedicated to:

John Wagner Finnell
City Attorney
1955--1983

Published by Municipal Code Corporation

Tallahassee, Florida 1991

CURRENT OFFICIALS
of the
CITY OF TUSCALOOSA, ALABAMA

———

Walter Maddox
*Mayor*

———

Bobby Earl Howard
*Councilperson, District # 1*

Harrison Taylor
*Councilperson, District # 2 (President Pro-Tem)*

Cynthia Lee Almond
*Councilperson, District # 3*

Lee Garrison
*Councilperson, District # 4*

Kip Tyner
*Councilperson, District # 5*

Bob Lundell
*Councilperson, District #6*

William Tinker
*Councilperson, District # 7*

---

Robert W. Ennis IV
*City Attorney*

---

Stan McCracken
*City Clerk*

PREFACE

This Code constitutes a complete recodification of the ordinances of the City of Tuscaloosa of a general and permanent nature.

The chapters of the Code are arranged in alphabetical order and the sections within each chapter are catchlined to facilitate usage. Source materials used in the preparation of the Code were the 1962 Code as supplemented through May 17, 1979 and ordinances subsequently adopted by the governing body. The source of each section is included in the history note appearing in parentheses at the end thereof. The absence of such a note indicates that the section is new and was adopted for the first time with the adoption of the Code. By use of the Comparative Tables appearing in the back of the volume, the reader can locate any section of the 1962 Code and any subsequent ordinance included herein.

Footnotes which tie related sections of the Code together and which refer to relevant provision of the state law have been included. A table listing the state law citations and setting forth their location within the Code is included at the back of this volume.

*Numbering System*

The numbering system used in this Code is the same system used in many state and local government codes. Each section number consists of two component parts separated by a dash, the figure before the dash representing the chapter number and the figure after the dash indicating the position of the section within the chapter. Thus, the first section of chapter 1 is numbered 1-1 and the ninth section of chapter 8 is 8-9. Under this system, each section is identified with its chapter, and, at the same time, newsections or even whole chapters can be inserted in their proper places, simply by using the decimal system for amendments. By way of illustration: If new material consisting of three sections that would logically come between sections 8-9 and 8-10 is desired to be added, such new sections would be numbered 8-9.1, 8-9.2 and 8-9.3 respectively. New chapters may be included in the same manner. If the new material is to be included between chapters 5 and 6 it may be designated as chapter 5.5. Care should be taken that the alphabetical arrangement of chapters is maintained when including new chapters. New

articles and new divisions may be included in the same way or, in the case of articles, may be placed at the end of the chapter embracing the subject, and, in the case of divisions, may be placed at the end of the article embracing the subject, the next successive number being assigned to the article or division.

## Index

The general index has been prepared with the greatest of care. Each particular item has been placed under several headings, some of the headings being couched in lay phraseology, others in legal terminology and still others in language generally used by government officials and employees. There are numerous cross references within the index itself which stand as guideposts to direct the user to the particular item in which he is interested.

## Looseleaf Supplements

A special feature of this Code is the looseleaf system of binding and supplemental service, by which the Code will be kept up-to-date periodically. Upon the final passage of amendatory ordinances, they will be properly edited and the page or pages affected will be reprinted. These new pages will be distributed to holders of copies of the Code, with instructions for the manner of inserting the new pages and deleting the obsolete pages.

The successful maintenance of this Code up-to-date at all times will depend largely upon the holder of the volume. As revised sheets are received it will then become the responsibility of the holder to have the amendments inserted according to the attached instructions. It is strongly recommended by the publishers that all such amendments be inserted immediately upon receipt to avoid misplacing them and, in addition, that all deleted pages be saved and filed for historical reference purposes.

## Acknowledgments

The publication of this Code was under the direct supervision of George R. Langford, President, and B. Meade White of the Municipal Code Corporation, Tallahassee, Florida. Credit is gratefully given to the other members of the publisher's staff for their sincere interest and able assistance throughout the project.

The publishers are most grateful to the City of Tuscaloosa Legal Department for its cooperation and assistance during the progress of the work on this Code. It is hoped that such efforts and those of the publishers have resulted in a Code of Ordinances which will make the active law of the City readily accessible to all citizens and which will be a valuable tool in the day-to-day administration of the City's affairs.

TABLE INSET:

|  | MUNICIPAL CODE CORPORATION |
|--|----------------------------|
|  | Tallahassee, Florida |

## ORDINANCE NO. 2255

*An Ordinance Adopting and Enacting a New Code of Ordinances of the City of Tuscaloosa, Alabama; Establishing the Same; Providing for the Repeal of Certain Ordinances Not Included Therein, Except as Herein Expressly Provided; Providing for the Effective Date of Such Code and a Penalty for the Violation Thereof; and Providing for the Manner of Amending Such Code; and Providing When This Ordinance Shall Become Effective.*

*Whereas,* pursuant to Ordinance No. 1410, adopted on the 8th day of September, 1962, the Code of Tuscaloosa, Alabama, was adopted in bound form, consisting of Chapters 1 through 35, inclusive, said Code

Case 3:06-cv-01113-WKW-CSC    Document 101-3    Filed 09/10/2007    Page 4 of 23

of Tuscaloosa, Alabama, having been in full force and effect since November 1, 1962; and

*Whereas,* by resolution duly adopted on the 20th day of May, 1982, the Commission Board of Tuscaloosa authorized the execution of a contract between the City of Tuscaloosa and the Municipal Code Corporation, whereby said Corporation would completely recodify and bind a new Code of Ordinances for the City of Tuscaloosa; and

*Whereas,* said Municipal Code Corporation has completed its task of recodifying the ordinances of the City of Tuscaloosa and has presented them in bound form to the Commission Board.

*Now Therefore, Be it Ordained by the Commission Board of Tuscaloosa,* as follows:

*Section 1.* That the Code of Ordinances, a printed copy of which is now before this Board, bound in book form, consisting of Chapters 1 through 23, each inclusive, be, and the same is hereby, adopted and enacted pursuant to the general laws of the State of Alabama, including Section 11-45-7, Code of Alabama, 1975, as the "Code of Tuscaloosa, Alabama," and shall be treated and considered as a new and original comprehensive ordinance, which shall supersede all of the general and permanent ordinances passed by the Commission Board on or before December 14, 1982, to the extent hereinafter provided.

*Section 2.* That all provisions of such Code shall be in full force and effect from and after the date specified in section 9 hereof, and all ordinances of a general and permanent nature of the City of Tuscaloosa enacted on final passage on or before the date specified in Section 1 above and in subsection(s) of this section, and not included in such Code or recognized and continued in force by reference therein, are hereby repealed from and after the effective date hereof, except as provided. No resolution of the City, not specifically mentioned, is hereby repealed.

The repeal herein provided for shall not affect the following:

(a) Any offense or act committed or done, or any penalty or forfeiture incurred, or any contract or right established or accruing before the effective date of such Code.

(b) Any ordinance promising or guaranteeing the payment of money for the City, or authorizing the issuance of any bonds of the City, or any evidence of the City's indebtedness.

(c) Any contract or obligation assumed by the City.

(d) Any administrative ordinance not in conflict herewith such as, by way of example but not limitation, any ordinance adopting a personnel policy or program or setting salaries and wages.

(e) Any right or franchise granted by the City.

(f) Any ordinance dedicating, naming, establishing, locating, opening, widening, paving, etc., any street or public way in the City.

(g) Any appropriation ordinance.

(h) Any ordinance establishing and prescribing the street grades of any street in the City.

(i) Any ordinance providing for local public improvements and assessing taxes therefor.

(j) Any ordinance dedicating or accepting any plat or subdivision.

(k) Any ordinance notifying or adopting any extension of the Corporate Limits or contraction of the Corporate Limits.

(l) Any ordinance adopting any official City map.

(m) Any ordinance levying any tax, including, but not limited to, sales and/or use taxes.

(n) Any ordinance prescribing zoning or subdivision regulations, or zoning particular

property.

(o)  Any ordinance or resolution not in conflict with such Code, regulating traffic.

(p)  Any ordinance establishing any utility board or boards.

(q)  Any ordinance adopting by reference a technical code.

(r)  Any ordinance saved from repeal or continued in effect elsewhere in this Code.

(s)  Any ordinance enacted after December 14, 1982.

(t)  Any ordinance not of a general or permanent nature.

Such repeal shall not be construed to revive any ordinance or part thereof that has been previously repealed by ordinance. Provided, this ordinance may be amended from time to time to incorporate any of the matters listed above into the Code of Ordinances, at which time said exception or exceptions will be deemed to be deleted, whether or not expressly done so.

*Section 3.*  That, whenever in such Code an act is prohibited or is made or declared to be unlawful, or an offense or a misdemeanor, or a violation, or whenever in such Code the doing of any act is required, or the failure to do any act is declared to be unlawful, and no specific penalty is provided therefor, the violation of any such provision of this Code, including any secondary code or codes adopted by reference therein, shall be punished by a fine of not more than five hundred dollars ($500.00), to which may be added, in the discretion of the Judge of the Court trying the case, confinement in the City prison or to hard labor for the City for a period not to exceed six (6) months, as provided in Section 1-8 of such Code.

*Section 4.*  That any and all additions and amendments to such Code, when passed in such form as to indicate the intention of the Commission Board to make the same a part thereof, shall be deemed to be incorporated in such Code so that reference to the "Code of Tuscaloosa" shall be understood and intended to include such additions and amendments.

*Section 5.*  In case of the amendment of any section of such Code, for which a penalty is not provided, the general penalty as provided in Section 3 of this ordinance and in Section 1-8 of such Code, shall apply to this section, as amended; or in case such amendment contains provision for which a penalty, other than the aforementioned general penalty, is provided in another section in the same chapter, the penalty so provided in such other section shall be held to relate to the section so amended, unless such penalty is specifically repealed therein.

*Section 6.*  That a copy of such Code shall be kept on file in the Office of the City Clerk, preserved in looseleaf form, or in such form as the City Clerk may consider most expedient. It shall be the express duty of the City Clerk, or someone authorized by him or her, to insert in their designated places all amendments or ordinances which indicate the intention of the Commission Board to make the same a part of such Code, when the same have been printed or reprinted in page form, and to extract from such Code all provisions, which may be from time to time repealed by the Commission Board. This copy of such Code shall be available for all persons desiring to examine the same.

*Section 7.*  That it shall be unlawful for any person to change or amend, by additions or deletions, any part or portion of such Code, or insert or delete pages or portions thereof, or to alter or tamper with such Code in any manner whatsoever which will cause the law of the City of Tuscaloosa to be misrepresented thereby. Any person violating this provision shall be punished as provided in Section 3 of this ordinance.

*Section 8.*  All ordinances, or parts of ordinance, in conflict herewith are, to the extent of such conflict, hereby repealed.

*Section 9.*  This ordinance shall become effective on the 6th day of September, 1983.

Adopted this 1st day of September, 1983.

Case 3:06-cv-01113-WKW-CSC    Document 101-3    Filed 09/10/2007    Page 6 of 23

TABLE INSET:

| | |
|---|---|
| | Alvin P. DuPont<br>Chairman of the Commission Board |
| Attest: | |
| George F. Lamb<br>City Clerk | Banks W. Quarles<br>Associate Commissioner No. 1 |
| | Hillard N. Fletcher<br>Associate Commissioner No. 2 |
| | Commission Board of Tuscaloosa |

## Chapter 3 ALCOHOLIC BEVERAGES*

---

**\*Cross references:**  Business licenses, Ch. 7; public intoxication, § 17-6; persons under influence of alcohol at airport, § 5-37; prostitutes in licensed premises, § 17-35; drinking or intoxication in parks, § 18-28 (1), (2); massage therapists not to practice in establishments serving alcoholic beverages, § 13-102.

**State law references:**  Intoxicating liquors, malt beverages and wine, Code of Ala. 1975, Tit. 28.

---

## Sec. 3-1. Definitions.

The following terms, as used in this chapter, shall have the meanings respectively ascribed to them:

*Alcoholic beverage control law:*  Title 28 of the Code of Alabama 1975, as amended.

*Beer licensed place:*  A place at which malt or brewed beverages are licensed by the state alcoholic beverage control board to be so sold or served.

*Beer licensee:*  A person licensed by the state alcoholic beverage control board to sell or serve malt or brewed beverages to consumers.

*Engaged in business:*  A wholesaler or retailer shall be deemed "engaged in business" in the city or within the police jurisdiction of the city if such person has a fixed place of business therein, or if, pursuant to agreement of sale, express or implied, such person delivers beverages regulated by this chapter within the city or within its police jurisdiction regardless of where else such person may also sell or deliver such commodities.

*Fixed place of business:*  Any place where any of the commodities referred to in this chapter are kept or stored for sale or delivery.

*License inspector:*  The license inspector, deputy license inspector, assistant license inspector and any employee of the city who may be designated by the license inspector to aid or assist in the enforcement of this chapter.

*Liquor licensed place:*  A place at which liquor is licensed by the state alcoholic beverage control board to be so sold or served.

*Liquor licensee:*  A person licensed by the state alcoholic beverage control board to sell or serve liquor to consumers.

*Minimum age:*  A person is under the minimum legal drinking age as established by state law for the purposes of purchasing, consuming, possessing or transporting alcohol, liquor or malt or brewed beverages if such person is less than twenty-one (21) years of age, subject to the exceptions of section 28-1-5, Code of Alabama, 1975.

*Minor:*  Any person under twenty-one (21) years of age, subject to the exceptions of section 28-1-5; provided, however, in the event section 28-1-5, Code of Alabama, 1975, shall be repealed or otherwise shall be no longer in effect, thereafter the provisions of section 26-1-1, Code of Alabama, 1975, shall govern (see section 28-3-1, Code of Alabama, 1975).

*Retailer:*  A person engaged in the business of selling or serving beverages regulated by this chapter

to consumers.

*State law definitions:* All of those words and phrases which have been defined or to which meanings have been ascribed in sections 28-3-1 and 28-4-1 of Title 28 of the Code of Alabama 1975, shall have the same meanings in this chapter as ascribed to them in such sections of the Code of Alabama, unless the context clearly indicates otherwise or a different meaning is ascribed to it in this chapter.

*Wholesaler:* A person engaged in the business of selling beverages regulated by this chapter to retailers.

(Code 1962, §§ 3-1, 3-58; Ord. No. 2768, §§ 1, 2, 3-10-87)

**Cross references:** Definition of "case," § 3-6(d); definition of "public place", § 3-12.

## Sec. 3-2. Territorial application of chapter.

This chapter shall have force and effect in the city and its police jurisdiction.

(Code 1962, § 3-2)

## Sec. 3-3. Violation of state law or rules and regulations.

It shall be unlawful and a violation of this chapter for any person to do anything or commit any act constituting a misdemeanor under the state alcoholic beverage control law or under any rule or regulation of the state alcoholic beverage control board.

(Code 1962, § 3-3)

## Sec. 3-4. Sale, possession, etc., of liquor not purchased from state.

(a)   It shall be unlawful for any person to sell, offer for sale, serve, dispense or have in possession or custody for any purpose any liquor which has not been sold by the state alcoholic beverage control board, except that, for consumption only, liquor purchased pursuant to the laws of a foreign state shall not be unlawful.

(b)   It shall be unlawful for any holder of a state license to purchase liquor or wine for resale from any source other than from the state alcoholic beverage control store located in the city.

(Code 1962, § 3-4)

## Sec. 3-5. Possession of illicit distilled liquor or nontax paid liquor.

It shall be unlawful for any person to possess or have in possession any illicit distilled liquor. It shall likewise be unlawful, except as otherwise authorized by law, for any person to have in possession any liquor which does not have on the bottle or container thereof a state stamp evidencing the payment of the state liquor tax thereon.

(Code 1962, § 3-5)

## Sec. 3-6. Sale of malt or brewed beverages by other than licensee or at other than licensed

**place.**

(a)  It shall be unlawful for any person, other than a beer licensee, to sell or offer to sell to a consumer, or to serve or dispense for reward to a consumer, or offer to serve or dispense for reward to a consumer, or to have in possession or custody for any such purpose, any malt or brewed beverage at any place in the city or its police jurisdiction.

(b)  It shall likewise be unlawful for any person, whether or not a beer licensee, to sell or offer to sell to a consumer, or to serve or dispense for reward to a consumer, or to offer to serve or dispense for reward to a consumer, or to have in possession or custody for any such purpose, any malt or brewed beverage at any place in the city or its police jurisdiction other than in a licensed beer place.

(c)  The keeping by any person other than a beer licensee or the keeping at any place other than a licensed beer place, at one or more places in the city or in its police jurisdiction, in the aggregate, of more than three (3) cases or seventy-two (72) bottles or cans of beer or other malt or brewed beverages shall be prima facie evidence that such beer or malt or brewed beverages are kept for sale or with the intent to sell, contrary to this section.

(d)  As used in this provision, the term "case" means a box or other container containing not exceeding twenty-four (24) bottles or cans and a "bottle" or "can" means a bottle or can of not more than sixteen (16) fluid ounces capacity.

(Code 1962, § 3-6)

## Sec. 3-7. Sale of liquor by other than licensee or state store.

It shall be unlawful for any person, other than a liquor licensee or a state liquor store, to sell or offer for sale to a consumer, or to serve or dispense for reward to a consumer, or offer to serve or dispense for reward to a consumer, or have in possession or custody for any such purpose, any liquor or wine at any place in the city or in its police jurisdiction.

(Code 1962, § 3-7)

## Sec. 3-8. Sale of liquor at other than licensed place or state store.

It shall be unlawful for any person, whether or not a liquor licensee, to sell or offer for sale to a consumer, or to serve or dispense for reward to a consumer, or to offer to serve or dispense for reward to a consumer, or have in possession or custody for any such purpose, any liquor or wine at any place in the city or in its police jurisdiction other than in a liquor licensed place or a state liquor store.

(Code 1962, § 3-8)

## Sec. 3-9. Delivery of malt or brewed beverages for off-premises consumption generally; curb service prohibited.

A person holding a retailer's license for off-premises consumption of malt or brewed beverages shall deliver such beverages to the purchaser only within the retailer's place of business for which licensee has a license for off-premises consumption; curb service of any kind shall be unlawful.

(Code 1962, § 3-9)

## Sec. 3-10. Packaging of malt or brewed beverages sold for off-premises consumption.

Malt or brewed beverages, when sold or delivered by the retailer for off-premises consumption, shall be contained in a sealed carton or sealed case, or wrapped in a package which is sealed or securely tied, the intent being that bottles or cans containing such beverages shall be entirely concealed and that access to such bottles or cans cannot be obtained without breaking the seal of such carton, case or package or untying the package.

(Code 1962, § 3-11)

## Sec. 3-11. Retailers not to purchase malt or brewed beverages from unqualified wholesalers.

It shall be unlawful for any retailer to purchase for resale or accept delivery of any malt or brewed beverages from any person unless such person has qualified to engage in the business of a wholesale distributor of malt or brewed beverages in this county, as required by section 8(e) of Act No. 556 of the Alabama Legislature, approved September 9, 1953.

(Code 1962, § 3-13)

## Sec. 3-12. Consumption or possession in public places--Generally.

It shall be unlawful for any person to drink or to have in open or unconcealed possession or custody for drinking any alcoholic beverage at or in any public place other than a place licensed to sell alcoholic beverages for consumption on the premises. For purposes of this section, the words "public place" shall include without limitation any motor vehicle while on the public streets or other public place and shall also include without limitation any "public place" as defined by section 13A-11-1(2), Code ofAlabama, 1975. It is provided, however, that the words "public place" shall not mean or include any area in which a city permit and all applicable state and local laws and licenses, specifically allow alcoholic beverages to be sold, served, or consumed.

(Code 1962, § 3-16; Ord. No. 3314, § 1, 10-15-91)

**State law references:** Public intoxication, Code of Ala. 1975, § 13A-11-10.

Sec. 3-13. Reserved.

**Editor's note:** Ord. No. 3414, adopted October 15, 1991, repealed section 3-13 which pertained to consumption of alcoholic beverages at place of public entertainment and derived from the Code of 1962, section 3-17.

## Sec. 3-14. Sale or disposition to intoxicated persons prohibited.

It shall be unlawful for any beer licensee or liquor licensee, or any servant, agent or employee of any such licensee, or for any other person to sell, furnish, give away or otherwise dispose of any malt or brewed beverages, wine, liquor, or any alcoholic or intoxicating beverage to any person visibly intoxicated.

(Code 1962, § 3-18)

## Sec. 3-15. Sale or disposition to a person under the age of twenty-one.

It shall be unlawful for any beer licensee or liquor licensee or any servant, agent or employee of any such beer or liquor licensee or for any other person to sell, furnish or give away or otherwise dispose of any malt or brewed beverage, wine or liquor or any alcoholic or intoxicating beverage to any person under the age of twenty-one (21). Any such licensee or other person who sells, furnishes, gives away or otherwise disposes of any malt or brewed beverage or any alcoholic liquor to any person under the age of twenty-one (21) shall be charged with the absolute duty of knowing such other person is under the age of twenty-one (21) and it shall constitute no defense to a prosecution for a violation of this section that the defendant did not know or was misinformed as to the age of such other person.

(Code 1962, § 3-19; Ord. No. 6982, § 1, 11-14-06)

**State law references:** For such definition, see Code of Ala. 1975, § 28-3A-2; sale to minors, § 28-3A-25 (a)(3).

## Sec. 3-16. Improper identification.

It shall be unlawful for any person who is under the age of twenty-one (21) to knowingly falsely represent by word or act that such person is not under the age of twenty-one (21) including, without limitation, knowingly presenting or possessing a false instrument of identification or an instrument of identification which misrepresents the age of that person.

(Code 1962, § 3-20; Ord. No. 3245, § 1, 4-16-91; Ord. No. 6191, 5-24-01; Ord. No. 6982, § 2, 11-14-06)

**State law references:** Attempts to purchase by minors, Code of Ala. 1975, § 28-3A-25(a)(19).

## Sec. 3-17. Aiding minor in obtaining alcoholic beverages.

It shall be unlawful for any person, directly or indirectly, to falsely represent that a minor person is not a minor or is not of minority age under the state alcoholic beverage licensing code, and, by means of such false representation, to aid or abet, or attempt to aid or abet, such minor person to buy, receive or otherwise obtain, or aid and abet such minor person to attempt to buy, receive, or otherwise obtain, from any licensee or any other person, any malt or brewed beverage or alcoholic liquor.

(Code 1962, § 3-21)

## Sec. 3-18. Requirement for cabaret or dancing license.

It shall be unlawful for any person possessing a license authorizing the sale, for on-premises consumption of alcoholic beverages, to permit dancing on or in the licensed premises, unless such person is also the holder of a valid unrevoked cabaret or "dancing" license duly authorized and issued by the city.

(Code 1962, § 3-23; Ord. No. 2146, § 1, 10-14-80)

**State law references:** Authority of city to permit dancing, Code of Ala. 1975, § 28-3A-11.

## Sec. 3-18.1. Exhibition dance or dance-type performance.

(a) It shall be unlawful for any person, firm, private club or corporation, or its officers, agents, servants, employees or members to permit, allow, condone or conduct any dance or dance-type performance, in the nature of an exhibition, in any liquor or beer licensed place within the corporate

limits of the City of Tuscaloosa or the police jurisdiction thereof, by any person or persons in their employment, under contract or present upon the premises at sufferance, or upon invitation, express or implied, without having complied with the following provisions:

(1)  Any such dance or dance-type performance, in the nature of an exhibition, shall be conducted on a stage, runway, raised platform or dance floor, of a permanent nature, with a floor area of not less than fifteen (15) square feet and located not less than five (5) feet from any area within which patrons or customers are allowed;

(2)  No dance or dance-type performance, in the nature of an exhibition, shall be conducted upon any surface upon which food or drink is also served, or upon any table, chair or other item of furniture, or upon any moveable box or other moveable item;

(3)  No physical contact between performers or entertainers shall be permitted or allowed during any dance or dance-type performance in the nature of an exhibition;

(4)  No patrons, customers, club members, guests or members of the general public shall be permitted, suffered or allowed to participate, touch, fondle, or assist in any form or manner in any dance or dance-type performance in the nature of an exhibition upon the stage, runway, raised platform or dance floor;

(5)  Performers shall not be permitted or allowed to mingle with patrons, customers, club members or guests while in costume, either before, during or after any dance or dance-type performance in the nature of an exhibition;

(6)  No dance or dance-type performance in the nature of an exhibition shall be permitted or allowed unless there shall be posted at two (2) or more places upon the premises a notice, of not less than eight (8) inches in height and not less than twenty-four (24) inches in width, which shall read: "No Participation By Patrons Or Touching Of Performers Permitted."

(b)  The violation of any provision of this section shall be punishable by a fine of not less than one dollar ($1.00) and not more than five hundred dollars ($500.00). In addition thereto, any person so convicted may be imprisoned or sentenced to hard labor for the city for a period not exceeding six (6) months in the discretion of the court trying the case.

(c)  This section shall not apply to any premises owned by the United States government, the State of Alabama, Tuscaloosa County, or the City of Tuscaloosa, nor shall it apply to the Bama Theatre.

(Ord. No. 2284, § 1, 5-15-84)


## Sec. 3-18.2. Nude or nearly nude activities in establishments with retail liquor license and/or retail malt or brewed beverage license.

(a)  It shall be unlawful for and when a person is guilty of performing nude or nearly nude activity when that person performs in a liquor- or beer-licensed place within the corporate limits of the City of Tuscaloosa or its police jurisdiction in such a manner or attire as to expose to view any portion of the pubic area, buttocks, anus, anal cleft, vulva or genitals, or any simulation thereof, or the showing of the covered male genitals in a discernibly turgid state, or when any female performs in a liquor- or beer-licensed place in such a manner or attire as to expose to view the portion of the breast below the top of the areola or any simulation thereof.

(b)  A beer licensee or a liquor licensee shall be guilty of permitting nude or nearly nude activity when having control of a beer-licensed place or a liquor-licensed place which it knows or has reasonable cause to know is being used by any person to perform on the premises in such a manner or attire as to expose to view any portion of the pubic area, buttocks, anus, anal cleft, vulva or

genitals, or any simulation thereof; or the showing of the male genitals in a discernibly turgid state; or used by any female to perform in such place in such a manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof, it permits such activity or fails to make reasonable and timely effort to halt or abate such activity or use.

(Ord. No. 3616, 5-6-93)

## Sec. 3-19. Duty of licensee to preserve order and prevent violations.

It shall be the duty of every beer licensee and every liquor licensee, and of the servant, agent or employee of every such licensee in charge of any beer-licensed place or liquor-licensed place:

(1) To maintain order and decorum in such licensed place and, to this end, to require all persons to leave the premises when, in the opinion of such licensee or the servant, agent or employee, in charge of the licensed place, such persons are guilty of conduct contrary to good order or decorum.

(2) To not permit in any such licensed place a violation of this chapter or any other ordinance of the city, or law of the state or regulation of the state alcoholic beverage control board pertaining to spirituous or vinous liquors or brewed or malt beverages.

(Code 1962, § 3-24)

## Sec. 3-20. Refusal to leave licensed premises on request.

Any person who, after having been requested to quit the premises at any beer licensed place or at any liquor licensed place by the proprietor, or the agent or employee of the proprietor of such licensed place, fails or refuses to immediately do so shall be guilty of a misdemeanor.

(Code 1962, § 3-25)

## Sec. 3-21. Nuisances.

Any place used for the selling, serving or dispensing of liquor or malt or brewed beverages for reward contrary to state law or to the provisions of this chapter is a nuisance, and it shall be unlawful for any person to maintain or aid or abet in maintaining any such nuisance.

(Code 1962, § 3-26)

## Sec. 3-22. Disposition of contraband beverages.

Whenever any person shall have been convicted in the recorder's court of possession or custody of any liquor, wine or malt or brewed beverage contrary to the provisions of this chapter or of any state law or any regulation of the state alcoholic beverage control board, or for engaging in the business of selling malt or brewed beverages without a license, and it shall appear that the police department has seized such liquor, wine or malt or brewed beverages and has the same in custody as evidence or otherwise, the recorder's court shall enter an order declaring such liquor, wine or malt or brewed beverages to be contraband and ordering the chief of police to destroy the same or to sell the same to the state alcoholic beverage control board for account of the city. An appeal from any conviction upon which any such order depends shall carry with it an appeal from such order.

(Code 1962, § 3-27)

   **Cross references:** Disposition of confiscated property or property taken as evidence generally, § 17-116.

## Sec. 3-23. Procedures for approval and issuance of wine, liquor or a malt beverage license for on-premises consumption and approval of restaurant liquor licensees--Generally.

(a)  Any person, corporation or partnership desiring license applications of [for] on-premises sale (sale for consumption on the premises) of liquor, wine or malt beverages and restaurant liquor license shall make application for such license on forms provided by the city and available in the revenue office in City Hall along with a release form to the State of Alabama accompanied by a twenty-five dollar ($25.00) money order made payable to the State of Alabama, to obtain a criminal background history from the State Alabama for each applicant, each person who is an officer of the corporation and each person who is a member of the partnership. Such forms shall be completely and legibly filled out and signed by the person seeking a license.

(b)  On receipt of the application, properly filled out and executed along with the plans required for restaurant liquor license in paragraph (c) of this section, the director of the revenue department shall cause the application to be forwarded to the police department, the fire department, the building inspection department and the zoning department of the city and to the county health department for consideration and report. Each said department or agency shall inspect the proposed premises or make such investigation into the reputation or character of the applicant as may be required to insure the premises to be occupied and that the person seeking to conduct the business complies and meets with the requirements for which said department has responsibility. Provided, however, inspections and reports shall not be required from the zoning, county health and inspection departments when an existing owner with a current business license and a current alcoholic beverage license, in good standing, applies only for amore restrictive alcoholic beverage license at the same location without any other activity that would otherwise trigger such inspections.

Written reports from each such agency or department with the findings resulting from such investigation and inspection shall be promptly returned along with the application(s) to the revenue department. Reports shall be returned within thirty (30) days after receipt unless such department has not received the criminal background history from the State of Alabama and such department shall be granted additional time by the revenue department to complete the report to the city council.

(c)  Any person seeking a restaurant liquor license shall submit with its application the plans of its restaurant which shall include the following:

   (1)  The kitchen shall have a food preparation area and storage equipment necessary to prepare the items listed on the menu.

   (2)  The number of persons that may be served at one sitting must be listed and there should be space in said area for at least fifteen (15) square feet per person.

   (3)  A proposed menu shall be submitted.

(d)  The revenue department shall determine if the restaurant meets the definition of a restaurant as defined in Section 28-3-1(22) of the Code of Alabama and the definition of a meal 28-3-1(23) Code of Alabama, 1975.

The following items will not be considered a meal if they are the only ones served by the establishment seeking a restaurant liquor license: Oysters, shrimp, crab claws, chips, pickles, meats and eggs, peanuts, pretzels, popcorn, sandwiches or any other food that the revenue officer considers not to fall within the definition of a meal as set out in Section 28-3-1(23) of the Code of Alabama.

(e)   No restaurant liquor license shall be approved until the plans and reports from the agencies and departments are approved by the city council. The city council shall review the plans submitted with the application and reports and approve or disapprove the plans and reports. Approval of the plans and reports shall not be construed by the applicant to mean that the final application shall be approved by the city council. The applicant shall proceed with construction at its own risk with the knowledge that theapplication for a restaurant liquor license may be denied. Once the construction of a restaurant has reached the stage of final inspection by the building inspection department, then the actual license application for restaurant liquor license shall be considered by the city council.

(f)   On the return of the departmental reports, if it appears that the applicant does not legally qualify by meeting standards of health, safety, zoning or other requirement, such applicant shall be promptly notified by the revenue department and given opportunity to remedy such deficiency, and if such applicant is not satisfied or is aggrieved by any departmental department, such applicant shall have a right to appeal to the governing body as to the particular departmental objection.

(g)   Any person, corporation, or partnership who is denied an alcoholic beverage license by the council may not submit a new application at the same location for the same alcoholic beverage license for a period of not less than one hundred eighty (180) days after the denial.

(Code 1962, § 3-29(a); Ord. No. 2457, § 1, 8-21-86; Ord. No. 2865, § 1, 1-10-89; Ord. No. 5735, 3-10-98; Ord. No. 5925, 7-22-99; Ord. No. 6466, § 1, 4-22-03)

   **State law references:**  Approval of license issuance, Code of Ala. 1975, §§ 28-3A-11, 28-3A-12, 28-3A-13.

## Sec. 3-24. Same--Restaurant and club liquor licenses.

(a)   No "restaurant" liquor license application shall be approved unless the applicant can and does qualify as a restaurant under the provisions of the state alcoholic beverage licensing code.

(b)   No "club" liquor license application shall be approved unless the applicant can and does qualify as a club pursuant to the provisions of the State of Alabama Alcoholic Beverage Control Regulations, the Code of Alabama and the provisions of this chapter.

   (1)   Without limiting the generality of the foregoing, at a minimum an applicant for a club license must meet the following criteria:

      a.   A class I or II club as defined by section 28-3-1, Code of Alabama 1975, shall charge as a membership fee a minimum of twenty dollars ($20.00) per month or two hundred forty ($240.00) per year.

      b.   A class I or II club as defined by section 28-3-1, Code of Alabama, 1975, shall only accept applications for membership Monday through Friday from 8:00 a.m. to 5:00 p.m.

      c.   A class I or II club as defined by section 28-3-1, Code of Alabama, 1975, may not issue a temporary membership to a new member until after seventy-two (72) hours from the acceptance of a bona fide membership application.

(Code 1962, § 3-29(b); Ord. No. 6466, § 2, 4-22-03)

   **State law references:**  See Code of Ala. 1975, § 28-3A-2.

## Sec. 3-25. Public hearing on application for lounge retail liquor license, club retail liquor

**license or restaurant liquor license.**

(a)  In every case, where application is made for a lounge retail liquor license, club retail liquor license or restaurant liquor license to sell alcoholic beverages at any location within the corporate limits of the city, in addition to other advertisement requirements that may be required by law, the applicant, shall, at applicant's own expense, publish in a daily newspaper, regularly published in the city, an advertisement giving notice of such application. The published notice shall be published for three (3) consecutive days, the first publication being seven (7) days before the hearing and shall be two (2) columns in width and two (2) inches in depth and shall read substantially as follows:

"THE UNDERSIGNED HAS MADE APPLICATION TO THE CITY COUNCIL OF TUSCALOOSA FOR A RETAIL(Type of License)  FOR THE PREMISES LOCATED AT _____, TUSCALOOSA, ALABAMA. A PUBLIC HEARING WILL BE HELD BY THE CITY COUNCIL OF THE CITY OF TUSCALOOSA IN THE COUNCIL CHAMBERS OF THE CITY HALL AT _____ O'CLOCK A.M., ON _____, 19_____.

TABLE INSET:

|  | _____ " |
|--|------------|
|  | (Name of Applicant) |

(b)  In addition to the published notice required above the applicant shall post on the premises where the business or sale is to be conducted, continuously for a period of not less than seven (7) days prior to the consideration of the application by the governing body, a posted notice of the pending application and public hearing concerning the granting thereof in the manner and form to be supplied by the revenue officer when application is first made to the license inspector for such license. Said notice shallbe conspicuously displayed on the front of the building so as to be clearly visible from the street or sidewalk adjacent thereto.

(c)  Applicant shall initially pay a filing fee to the city in the amount of thirty dollars ($30.00) and, thereafter, shall take such steps as may be necessary to meet all requirements of ordinances, regulations and statutes applicable thereto. When the application for a license, as set out in subsection (a) above, is first made, the fact of the application shall be communicated to the governing body and a day for hearing shall then be fixed and supplied to the applicant for insertion in the newspaper and for listing in the posted notice.

(d)  Prior to the public hearing, applicant shall deliver to the city clerk, certifications of newspaper advertisements, showing publication as required above.

(e)  The governing body will not consider any application in which the applicant has failed to comply with the requirements as enumerated herein.

(Code 1962, § 3-31; Ord. No. 2211, 8-24-82; Ord. No. 2458, § 1, 8-21-86)

## Sec. 3-26. Transfer; information as to corporate officers, etc.

(a)  A license issued hereunder for the sale of wine, liquor or malt beverages shall not be transferred to permit the operation at a different location than the location specified in the license and a license issued hereunder shall not be assigned to and held by a person other than the person to whom the license was issued.

(b)  Prior to the issuance of a license hereunder to a corporation, the corporation shall furnish to the city the names and addresses of the officers, directors and stockholders of the corporation, showing the amount of capital stock owned by each stockholder. The requirements as to the names of all stockholders may be waived by the city in the event the stock is widely held by members of the public

through over-the-counter or other public sale thereof and when the names of all stockholders exceed twenty (20) persons and are impossible or difficult to ascertain.

(c)   In the event a majority of the capital stock of a corporation holding a license hereunder is sold, the license is automatically revoked and the corporation shall apply for and take out a new license under the provisions hereinabove set out. No additional license shall issue to the corporation until all licenses, taxes and fees due the city by the corporation first holding the license shall have been paid in full.

(Code 1962, § 3-29(c))

## Sec. 3-27. License taxes for wholesalers of beer.

Every wholesaler engaged in the business, within the city or within its police jurisdiction, of selling, or delivering pursuant to sale, to retailers at any point or points within the city or within its police jurisdiction, or at any other point or points in the state beyond the police jurisdiction of the city, any malt or brewed beverages, and every wholesaler engaging in the business of storing or withdrawing from storage for sale, where such storage is within the city or its police jurisdiction, shall pay to the city, for the privilege of engaging in such business, a fixed annual license tax of two hundred seventy-five dollars ($275.00), which fixed annual license shall be prorated as other city licenses are prorated. Such fixed annual license tax shall be paid before first commencing in such business and thereafter shall be due and payable on January first and delinquent after March first of each calendar year.

(Code 1962, § 3-59; Ord. No. 5270, § 1, 3-5-96)

**State law references:**  Authority to levy, Code of Ala. 1975, §§ 28-3-194, 28-3A-21(c).

## Sec. 3-28. License taxes for retailers of beer.

Every such retailer and each person engaged in the business of selling, serving or delivering pursuant to sale, within the city or its police jurisdiction, malt or brewed beverages at retail shall pay to the city, for the privilege of engaging in such business, a fixed annual license tax of seventy-five dollars ($75.00), where such beverage is sold or delivered for consumption on the premises where served, dispensed, sold or delivered, and a fixed annual license of fifty dollars ($50.00), where such beverage is sold or delivered for consumption off the premises.

(Code 1962, § 3-60; Ord. No. 5270, § 2, 3-5-96)

## Sec. 3-29. Delinquency in paying tax--Liquor or wine.

If any amount of the license tax on liquor is not paid at or prior to the due date thereof, an additional tax equal to fifteen (15) percent of such amount shall be added thereto and paid by such retailer.

(Code 1962, § 3-43; Ord. No. 5270, § 2, 3-5-96)

Sec. 3-30. Reserved.

**Editor's note:**  Ord. No. 5270, § 4, adopted March 5, 1996, repealed § 3-30, which pertained to delinquency in paying license taxes on the sale of beer, and which derived from Code 1962, § 3-61.

## Sec. 3-31. Expansion of on-premises licensed establishments.

(a)  *Definitions:*  As used in this section, the following terms shall have the respective meanings ascribed to them:

*Expand or enlarge the license premises:*  The occupation or the addition of any area or space which results in an increase in the size or occupancy of the premises in which any activity, pursuant to or in conjunction with the sale of alcoholic liquor or beverages, is conducted.

*Located within two hundred (200) feet of a church or residential property:*  The distance, in a direct line, from the property boundary of the premises on which an on-premises liquor licensee is operating to the property boundary of the residential property or to the property boundary of the premises on which is located a church.

*On-premises liquor licensee:*  Any person operating pursuant to a license from the state alcoholic beverage control board to engage in the business of on-premises sale of liquor or malt or brewed beverages.

*Residential property:*  Any property having residential occupancy, or zoned for any type of residential occupancy by the zoning ordinance of the city.

(b)  *Permit required; application, issuance, denial:*  It shall be unlawful for any on-premises liquor licensee to expand or enlarge the licensed premises in any case where said licensed premises is located within two hundred (200) feet of any church or residential property, unless a permit for such enlargement or expansion is first obtained as follows:

(1)  Application to expand or enlarge such license premises shall first be made to the license inspector of the city, and shall show in words and figures and, where required, by map or drawing, the exact extent of the proposed expansion or enlargement, either in size or occupancy of the premises.

(2)  On receiving such application, the license inspector shall cause the same to be submitted to the inspection department, planning department, fire marshal, police department and county health department, and shall deliver the request to the city clerk for action by the governing body.

(3)  The governing body shall set a time for public hearing and, without undue delay, give notice of public hearing to consider said application by publication one time in a newspaper regularly published in the city, inviting any person who desires to be heard either in favor of or in opposition to the granting of the permit to be present and to be heard.

(4)  The governing body may deny the permit, after notice and hearing, on a finding that the expansion or enlargement will adversely affect the public health, welfare or safety of the community. The board shall consider all pertinent factors, including, but not necessarily limited to, the following: Whether or not the enlargement or expansion will cause or contribute to additional annoyance or disturbance to the neighbors or nearby church membership because of:

a.  Additional noise;

b.  Additional traffic congestion or hazard;

c.  Additional parking requirements;

d.  Additional litter or debris;

e.  Rowdiness or boisterousness of patrons of said establishment.

(Code 1962, § 3-30)

## Sec. 3-32. Separate retailer license required for each state license.

Each retailer shall procure a separate city license under this chapter for each state license used by such person.

(Code 1962, § 3-41)

## Sec. 3-33. Records and reports--Records of purchases, sales and deliveries.

It shall be the duty of each person subject to the license tax imposed by this chapter to keep full and complete records of all purchases, sales and deliveries of liquor, wine and brewed or malt beverages, from which records there can be readily obtained information as to the correct amount of license tax due the city. Such records shall be preserved for not less than one (1) year, and shall be open to inspection and checking at all times during regular business hours, as the city clerk, or the clerk's representative, may request. In the event that any retailer fails to keep such records, or to open them to the city clerk or authorized representative for inspection and checking as such clerk or representative may request, the city clerk shall proceed to levy and collect the license tax in the manner and form provided for in Chapter 7 of this Code.

(Code 1962, § 3-44)

## Sec. 3-34. Same--Monthly reports generally.

The person liable for any license tax imposed by this chapter shall file with the city clerk, on or before the twentieth day of each month, such reports and in such form as the city clerk may prescribe, duly sworn to, evidencing the amount of business done during the preceding month and the amount of license tax due thereon.

(Code 1962, § 3-45; Ord. No. 5270, § 5, 3-5-96)

Secs. 3-35, 3-36. Reserved.

**Editor's note:** Ord. No. 5270, §§ 6 and 7, adopted March 5, 1996, repealed §§ 3-35 and 3-36, which pertained to monthly reports by beer wholesaler and beer retailers, and derived from Code 1962, §§ 3-62 and 3-63.

## Sec. 3-37. False statements.

Any person making any false statement with reference to any matters required by sections 3-34 and 3-46 to be reported or stated shall be guilty of a misdemeanor.

(Code 1962, § 3-64)

## Sec. 3-38. Inspection of books, records, etc., of beer wholesalers and retailers.

It shall be unlawful for any wholesaler or any retailer to refuse to allow the license inspector of the city to inspect or audit the books and records of such wholesaler or retailer pertaining to the receipt, storage, transfer, sale or distribution of malt or brewed beverages, or to refuse to permit the license inspector access

to any warehouse or to any place where malt or brewed beverages may be stored or kept, or to refuse to allow the inspector to take inventory of the stock of malt or brewed beverages.

(Code 1962, § 3-65)

Sec. 3-39. Reserved.

**Editor's note:** Ord. No. 5270, § 8, adopted March 5, 1995, repealed § 3-39, which excluded gross beer sales in determining amounts of any other licenses, and derived from Code 1962, § 3-67.

## Sec. 3-40. Application of business license chapter.

All applicable provisions of sections 7-1 through 7-31 of this Code not inconsistent with any of the provisions of this chapter, are hereby referred to and made a part of this chapter to the same extent as if herein set out in full.

(Code 1962, § 3-68)

## Sec. 3-41. Under-aged persons prohibited on certain licensed premises.

It shall be unlawful for any person to be in, on, or upon the licensed premises of any establishment licensed by the alcoholic beverage control board of the state as a lounge retail liquor licensee, in violation of any state law regulating the age of persons allowed on such premises.

(Ord. No. 2768, § 3, 3-10-87; Ord. No. 6515, § I, 9-4-03)

**State law references:** Similar provisions, Code of Ala. 1975, § 28-3A-11.

## Sec. 3-42. Certain licensees not to admit under-aged persons.

It shall be unlawful for any establishment licensed by the alcoholic beverage control board of the state as a lounge retail liquor licensee either directly or by its servant, agent or employee, to admit or allow any person to be in, on, or upon said licensed premises in violation of any state law regulating the age of persons allowed on such premises.

(Ord. No. 2768, § 3, 3-10-87; Ord. No. 6515, § II, 9-4-03)

**State law references:** Similar provisions, Code of Ala. 1975, § 28-3A-11.

## Sec. 3-43. Licensees not to allow possession by minors.

It shall be unlawful for any establishment licensed as on-premises by the Alcoholic Beverage Control Board of the State of Alabama either directly or by its servants, agents, or employee(s) of the same, to allow the possession or consumption of alcoholic beverages by or to any minor or to permit any such minor to drink, consume or possess any alcoholic beverage on any such licensee's premises.

(Ord. No. 2768, § 3, 3-10-87)

**State law references:** Similar provisions, Code of Ala. 1975, §§ 28-3A-25(3), 28-3A-25(19).

## Sec. 3-44. Minor in possession of alcohol.

It shall be unlawful for any person under twenty-one (21) years of age to possess, consume, purchase, or attempt to purchase, any alcoholic beverage; provided, it shall not be unlawful for any alcoholic beverage control board licensee to employ any person under the age of twenty-one (21) to work pursuant to section 28-1-5, Code of Alabama, 1975.

(Ord. No. 6171, 5-3-01)

## Sec. 3-45. Bringing or allowing alcoholic beverages to be brought onto business premises.

(a)  It shall be unlawful for a business licensed by the City of Tuscaloosa (whether or not the business is licensed to sell or furnish alcohol) to allow patrons, customers, invitees or guests to bring alcoholic beverages onto the licensed premises.

(b)  It shall be unlawful for patrons, customers, invitees or guests to bring alcoholic beverages onto premises licensed to do business by the City of Tuscaloosa, whether or not the business is licensed to sell or furnish alcohol.

(Ord. No. 5934, 8-24-99)

## Sec. 3-46. Retail common carrier liquor license.

(a)  It shall be unlawful for any person who operates a common carrier that receives or delivers passengers at any point within the city limits or police jurisdiction of Tuscaloosa, to serve, sell, or furnish any alcoholic beverages to any passenger or other person, without first obtaining a retail common carrier liquor license from the City of Tuscaloosa. Applications and consideration by the city council for a retail common carrier liquor license shall follow the same procedure set out in sections 3-23 and 3-25.

(b)  Any retail common carrier liquor licensee shall also be required to meet the provisions of section 3-23 of the Code of Tuscaloosa for a restaurant liquor license, except that the requirements of subsection 3-23(c)(1) shall not apply in cases where the restaurant serves catered meals that are prepared elsewhere and transported to the common carrier. However, such licensee shall be required to obtain a separate business license from the City of Tuscaloosa to operate such a restaurant and to operate any othertype of business abroad the common carrier.

(c)  Any applicant for such a license shall comply with all statutes, rules, regulations, and other requirements under state law, as amended, that apply to a retail common carrier liquor license. No such license shall be issued if the activity it would authorize would violate or conflict with federal, state, or local law.

(Ord. No. 6206, § I, 7-3-01)

## Sec. 3-47. Time restrictions for the sale of alcoholic beverages for on-premises consumption.

(a)  *Monday.*  It shall be unlawful for any person who is licensed to sell alcoholic beverages for consumption on the licensed premises to do any of the following on said premises on any Monday

that does not fall on January 1 prior to 6:30 a.m.:

    1.  Sell, offer to sell, serve, dispense, or furnish any alcoholic beverage to any person for on-premises consumption.

    2.  Allow or fail to prevent possession of any alcoholic beverage by any person for on-premises consumption, or allow or fail to prevent the consumption of any alcoholic beverage by any person.

(b)  *Tuesday through Friday and Sunday.*  It shall be unlawful for any person who is licensed to sell alcoholic beverages for consumption on the licensed premises, to do any of the following on said premises on any Tuesday, Wednesday, Thursday, Friday, or Sunday:

    1.  Sell, offer to sell, serve, dispense, or furnish any alcoholic beverage to any person for on-premises consumption between the hours of 1:45 a.m. and 6:30 a.m.

    2.  Allow or fail to prevent possession of any alcoholic beverage by any person for on-premises consumption, or allow or fail to prevent the consumption of any alcoholic beverage by any person, between the hours of 2:00 a.m. and 6:30 a.m.

(c)  *Sundays.*  The provisions of subsection (b) are not intended to permit Sunday alcohol sales and related activity when they are otherwise prohibited by law. The time restrictions provided in subsection (b) are supplemental to laws, rules, and regulations governing Sunday alcohol sales.

(d)  *Saturdays.*  The regulation of the hours for the sale and service of alcoholic beverages on Saturdays shall be in accordance with state law and any other applicable provisions of this Code.

(e)  *Sign requirements.*  It shall be unlawful for any person who is licensed to sell alcoholic beverages for consumption on the premises where the alcoholic beverages are sold to fail to have in clear and conspicuous view to customers, in no less than 72-point type, a sign stating substantially the time restrictions required by this section that apply during the times the licensee is open for business.

(f)  *Penalties for violations.*  Any person charged with violating this section shall be required to appear in municipal court, and upon conviction shall be subject to the following penalties:

    1.  *Other than subsection (e).*  A conviction for violating this section, other than sub-section (e), shall be punished as follows:

        i.  For a first conviction, a fine of two hundred and fifty dollars ($250.00);

        ii.  For a second or subsequent conviction, a fine of five hundred dollars ($500.00) plus, in the discretion of the court, incarceration of up to six (6) months.

    2.  *Penalties for violating subsection (e).*  A conviction for violating subsection (e) shall be punished as follows:

        i.  For a first conviction, a fine of one hundred dollars ($100.00);

        ii.  For a second conviction, a fine of two hundred fifty dollars ($250.00);

        iii.  For a third or subsequent conviction, a fine of five hundred dollars ($500.00) plus, in the discretion of the court, incarceration of up to six (6) months.

(g)  *License revocation for three (3) or more violations.*  Three (3) or more convictions under this section shall be sufficient grounds for the city to revoke any business license applicable to the licensed premises upon which the violations occurred pursuant to section 7-26, as amended, or any other provision of law.

(Ord. No. 6437, § 1, 2-6-03; Ord. No. 6930, § I, 7-18-06)