## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

HOPE FOR FAMILIES & COMMUNITY )
SERVICES, INC., et al.,                          )        Case No.: 3:06-cv-01113-WKW-csc
                                                          )
                    Plaintiffs,                   )
                                                          )
v.                                                        )
                                                          )
DAVID WARREN, in his Official Capacity )
as the SHERIFF OF MACON COUNTY, et )
al.,                                                      )
                                                          )
                    Defendants.                 )

## MACON COUNTY GREYHOUND PARK, INC.'S OPPOSITION
## TO PLAINTIFFS' MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS AND THINGS

On September 28, 2007, the Plaintiffs other than Lucky Palace (the "Original Plaintiffs")

filed a Motion to Compel Production of Documents and Things from Macon County Greyhound

Park, Inc. ("Victoryland") ("Motion to Compel") (Doc. #106). Victoryland hereby files its

Opposition to the Motion to Compel. For the reasons set forth more fully below, the Motion to

Compel is due to be denied.

There are two independent bases for denying the Motion to Compel. The first reason is

that for a number of the requests, the responsive, non-protected documents have been produced

and either: (1) no documents are being withheld or the only documents being withheld are

documents that are clearly exempt from production under applicable privileges or confidentiality

doctrines; and/or (2) the documents being withheld are publicly-available documents, which are

available to Plaintiffs from the original source, and, are as easily obtained by Plaintiffs as by

Victoryland.  Any documents that are being withheld on privilege or confidentiality grounds,

1

including Rule 1.6 of the Alabama Rules of Professional Conduct, will be addressed in the accompanying affidavit (attached hereto as Exhibit A), privilege log (attached hereto as Exhibit B) and brief on privilege and confidentiality issues (attached hereto as Exhibit C) or by an *in camera* submission to the Court. The publicly-available documents that have not been produced are set forth on the list attached hereto as Exhibit D.

The second reason is that the remaining objectionable requests are overly-broad and seek documents that are wholly irrelevant to the claims at issue in this case. A review of these requests reveals that the Original Plaintiffs' discovery is nothing more than an improper fishing expedition for irrelevant information based upon the Plaintiffs' suspicion and speculation. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("Requested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation.") (citing *Mahoney v. United States*, 233 Ct.Cl. 713, 717-19 (1980); *Missouri Pacific R.R. v. United States*, 338 F.2d 668, 671-72 (Ct.Cl. 1964)).

The remainder of this opposition is divided into three sections. The first section sets forth relevant legal principles regarding appropriate limits on discovery. The second section briefly reviews the history of this case and the Plaintiffs' claims in this case. The third section addresses on a request-by-request basis the reasons why the Motion to Compel is due to be denied.

## I.    RELEVANT LEGAL LIMITS ON DISCOVERY

Although the concept of relevance for purposes of discovery is defined more broadly than relevance for purposes of admissibility at trial, it has long been established that the right to discovery is not unlimited and has "ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) "A bare allegation of wrongdoing . . . is not a fair reason for requiring a

defendant to undertake financial burdens and risks to further a plaintiff's case." *Oppeneimer Fund, Inc. v. Sanders,* 437 U.S. 340, 363 (1978). Moreover, to be relevant, discovery must "relat[e] to an issue *necessarily* in the case." *Micro Motion,* 894 Fed. at 1326 (emphasis added). "Discovery should be tailored to the issues involved in the particular case." *Mary Jones v. Colorcraft Corp.,* 1983 WL 565 (S.D. Ga. Aug. 4, 1983) (quoting *Hardrick v. Legal Services Corp.,* 96 F.R.D. 617, 618 (D.D.C. 1983)). Relevancy for discovery purposes may be determined by whether the material sought will have a substantial effect on the case's outcome, and the matters being asked must be relevant to the issues to be tried. *See United States v. Trucking Employers, Inc.,* 72 F.R.D. 101 (D.D.C. 1976); *Greene v. Raymond,* 41 F.R.D. 11 (D. Col. 1966). Furthermore, discovery based on mere suspicion or speculation "is not relevant to 'subject matter involved.'" *Micro Motion,* 894 F.2d at 1326 (Fed. Cir. 1990) (citations omitted).

As evidenced by the continually-changing allegations and causes of action in this matter, as well as Plaintiffs' Counsel's own statements in the presence of this Court, Plaintiffs have nothing more than speculation and suspicions to support their allegations in this case. Such speculation and suspicions are not sufficient to enter the nexus of relevance for purposes of discovery. As set out in the individual responses below, Plaintiffs here seek discovery of information not even remotely relevant to the material, *necessary* issues in this action.

While the expression 'fishing expedition' has been generally denigrated as a reason for objecting to discovery, in some situations, such as the one at hand, it remains apt. Here, the Original Plaintiffs are "unmoored and trolling." *Micro Motion,* 894 F.2d at 1327 (citing *Milazzo v. Sentry Ins.,* 856 F.2d 321, 322 (1st Cir. 1988); *Paul Kadair, Inc. v. Sony Corp.,* 694 F.2d 1017, 1032 (5th Cir. 1983); *Hancock Indus. v. Schaeffer,* 619 F.Supp. 322, 331 (E.D. Pa. 1985)).

## II.    RELEVANT PROCEDURAL HISTORY AND PLAINTIFFS' CURRENT CLAIMS

The Original Plaintiffs filed their initial complaint (Doc. #1) in this case on December 18, 2006 against the Sheriff asserting the single claim, pursuant to 42 U.S.C. §1983 for violation of the Equal Protection Clause of the Fourteenth Amendment, alleging that there was no rational basis for the four aspects of the Macon County Bingo Rules and Regulations ("County Bingo Regulations) discussed below. (Doc. 1, ¶ 50.) Thereafter, the Original Plaintiffs issued non-party subpoenas on February 5, 2007, to Milton McGregor ("McGregor") and Victoryland.   (Doc. #s15-2 and 17-2).  After counsel filed objections to those subpoenas on behalf of McGregor and Victoryland, the Original Plaintiffs filed their Motion for Leave to File Amended Complaint, seeking to add McGregor and Victoryland as parties.  (Doc. #20).  Tellingly, the Requests for Production at issue are virtually identical to the previously served non-party subpoenas. Compare Doc. # 15-2, 17-2 to Doc. #106-2. The Original Plaintiffs were given leave and filed the Amended Complaint on March 12, 2007, adding Victoryland and McGregor as parties and alleging violation of the Equal Protection Clause and conspiracy to deprive the Plaintiffs of equal protection of the laws under 42 U.S.C. §1985(3). (Doc. # 24-5, ¶¶ 22-23, 59-63.)  Victoryland and McGregor moved to dismiss Plaintiffs' Amended Complaint because Plaintiffs had failed to asserted, and could not show, the race-based or class-based invidiously discriminatory animus that is a fundamental requirement of the conspiracy claim arising under the Ku Klux Klan Act, 42 U.S.C. § 1985(3), plead by Plaintiffs. (Docs. #34; #36 (Motions to Dismiss)).  Realizing that they had no factual or legal basis for their § 1985(3) claim, the Original Plaintiffs fully retreated from that claim and sought to amend their Amended Complaint to drop the recently-added cause of action under § 1985(3) and to assert an entirely new cause of action under 42 U.S.C. § 1983, which the Plaintiffs argued did not require the *invidious animus* necessary for a § 1985(3) claim.

(*See* Doc. #40, ¶¶ 2-4; Doc. #41, ¶¶ 4-5). The Original Plaintiffs were given leave to file their Second Amended Complaint, and did so on June 8, 2007. (Doc. #51). With leave of Court, the Original Plaintiffs later filed a Third Amended Complaint on June 29, 2007, adding Lucky Palace, a party that seeks to operate an electronic bingo casino in direct competition with Victoryland, as a Plaintiff, and asserting claims of: (1) RICO § 1962(c); (2) RICO § 1962(d); (3) violation of the Equal Protection Clause; (4) a Section 1983 Conspiracy to deprive the Plaintiffs of equal protection of the laws; (5) tortious interference with contractual and business relationships (against Victoryland and McGregor only); and (6) tortious interference with prospective business relationships (against Victoryland and McGregor only). (Doc. #67).

The Plaintiffs' Third Amended Complaint, the one currently before the Court,[1] arises from the Plaintiffs allegations, which form the basis of their Equal Protection claim against the Sheriff, that there is no rational basis for the following four aspects of the County Bingo Regulations:

    (1)    the requirements in the County Bingo Regulations that electronic bingo cannot be conducted at "any qualified location . . . unless a minimum of fifteen applicants shall first obtain a Class B [electronic bingo] License for such location" (the "Fifteen License Minimum") (Doc. # 67, ¶¶ 46, 129);

    (2)    the portion of the County Bingo Regulations that provide that there can be no more than 60 issued and operational electronic bingo licenses in Macon County at any given point in time (the "Sixty License Maximum") (Doc. # 67, ¶¶ 55, 129);

    (3)    allowing 59 of 60 electronic bingo licenses to be issued to charities who operate electronic bingo games at Victoryland (Doc. # 67, ¶ 129); and

---

[1] The Plaintiffs have moved for leave to file yet a Fourth Amended Complaint that seeks to plead the federal discovery rule to save their Section 1983 claims from being time-barred under the two-year statute of limitations and to correct some errors in the Third Amended Complaint. (Doc. #91). Victoryland and McGregor have opposed Plaintiffs being given leave to file a Fourth Amended Complaint in this matter. (Doc. #96).

(4)    requiring a party who wishes to operate electronic bingo games in Macon County to have a multi-million dollar facility before it can operate Class B (electronic) bingo games (the "Existing Facility Requirement"). (*Id.*)

The Plaintiffs' Section 1983 conspiracy claim against Victoryland and McGregor arises from the allegation that they conspired to have these four aspects of the County Bingo Regulations promulgated. (*See* Doc. #67, ¶¶ 132-133). Likewise, Plaintiffs' tortious interference with contractual and business relationships and tortious interference with prospective business relationships claims against Victoryland and McGregor arises from the allegation that they influenced or aided the Sheriff in promulgating these four aspects of the County Bingo Regulations. (*See* Doc. #67, ¶¶ 140-141; 146-147). The Plaintiffs' baseless RICO claims are essentially that Victoryland and McGregor bribed the Sheriff's Lawyer, Fred Gray, Jr., who is not a party to this action and who Plaintiffs contend is a "public servant," in order to have these four aspects of the County Bingo Regulations promulgated. (*See, e.g.,* Doc. #67, ¶¶ 70-71; 97).

Victoryland and McGregor have moved to dismiss the Plaintiffs' Third Amended Complaint on the grounds it fails to state a claim upon which relief can be granted because: (1) the RICO claims are premised on Fred Gray, Jr, being a "public servant," which as a matter of law he is not; (2) there is a rational basis for each of the four aspects of the County Bingo Regulations about which Plaintiffs complain and Plaintiffs, therefore, cannot meet their heavy burden of overcoming the strong presumption of rationality that attaches to the regulations as well as showing that there is no conceivable rational basis for those four aspects of the County Bingo Regulations, *see F.C.C. v. Beach Commc'ns, Inc.* 508 U.S. 307, 313-14 (1993); and (3) both of Plaintiffs' tortious interference claims (existing and prospective) are barred by Alabama's applicable two-year statute of limitations, *Ala. Code* § 6-2-38(l)(1975), and are

6

otherwise due to be dismissed. (Doc. #74, generally). The Motion to Dismiss has been fully briefed and argued to the Court and the parties are awaiting a ruling on the motion.

### III. THE SPECIFIC REQUESTS AT ISSUE AND WHY A MOTION TO COMPEL FURTHER REPONSES TO THEM IS NOT APPROPRIATE

With regard to each of the specific requests below, Victoryland has not produced any responsive privileged documents. *See* Privilege Log (Ex. B) brief regarding privileges (Ex. C) submitted herewith in accordance with the Guidelines to Civil Discovery Practice in the Middle District of Alabama, Guideline I, (I)(3). Accordingly, each of the specific responses below are subject to the privileges asserted in the Privilege Log and accompanying legal authorities as well as Rule 1.6 of the Alabama Rules of Professional Conduct.

Further, under Rule 26(b)(2)(C)(i) of the Federal Rules of Civil Procedure, this Court must limit the extent of discovery where "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ." Under Rule 26, Plaintiffs are not entitled to obtain from Victoryland information that is available to them in the public forum, nor should Plaintiffs benefit from the time, effort and expense of the Victoryland in gathering information that Plaintiffs may simply obtain for themselves. Accordingly, Victoryland has withheld multiple responsive documents, including newspaper articles, PAC reports, pre-election reports, and news broadcasts, that are equally available to the Plaintiffs.

In addition, because Victoryland has produced a number of documents and as set forth herein has good grounds for not producing others, in the interests of judicial economy, the Court should hold off ruling on this Motion to Compel until after the Court has ruled on the pending Motion to Dismiss. If the Motion to Dismiss is granted in full, the Motion to Compel would be rendered moot. If the Motion to Dismiss is granted in part, the scope of discovery could be

substantially altered. If the Motion to Dismiss is denied, the Court could promptly rule on the Motion to Compel.

For clarification and convenience of the Court, the Defendants have set out their arguments in response to the Motion to Compel by setting out in full Original Plaintiffs' Requests; Victoryland's responses; the Original Plaintiffs' Clarifications; Victoryland's Supplemental Responses; and Victoryland's argument in response to Plaintiffs' Arguments in the Motion to Compel.

**Original Plaintiffs' Request #1:** **Please produce any and all documents in your possession or control that reflect or relate to the policies, procedures and/or practices regarding the issuance of bingo licenses in Macon County, Alabama, including the original version of such policies, procedures and/or practices and any amendments or revisions thereto.**

Response: Victoryland objects to this request on the grounds that as written it is overly broad, unduly burdensome and oppressive. The request is not reasonably limited in scope or time. This request is objectionable to the extent it seeks material that is confidential in nature and that is subject to the attorney-client privilege, the work product doctrine and is protected under *Noerr-Pennington*. Further, the request is vexatious and filed for an improper purpose as non-objectionable documents and materials sought are already in the possession of the Plaintiffs or their counsel.

Plaintiffs' Clarification: Plaintiffs limited this request to pre-litigation documents only and requested a privilege log. Victoryland advised that according to Middle District Rules, no privilege log is required at this stage of the litigation. Defendant maintains its objections to this request on the grounds that it seeks confidential or proprietary information and/or information protected by the attorney-client privilege and the work product doctrine. Defendant will produce any additional non-objectionable responsive documents, if they exist.

Defendant's Supplemental Response: Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced.

### DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

The Original Plaintiffs' assertion that "[a]ny objections regarding the confidentiality of the requested documents are resolved by the protective order" fails to take into account Rule 1.6 of the Alabama Rules of Professional Conduct. Rule 1.6, entitled "Confidentiality of Information," prohibits a lawyer from revealing information relating to the representation of a client without the client's consent. There are only two exceptions to this prohibition, neither of which apply in this situation:

> (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or
>
> (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

The comment to Rule 1.6 states that "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law." The Gray Law Firm has represented Milton McGregor and his various enterprises since 1983. This long-standing and on-going relationship is exactly the sort of relationship contemplated by Rule 1.6.

In response to Plaintiffs' argument regarding the privilege and work product objections, Defendant is aware of its obligations under the Guidelines to Civil Discovery Practice in the M. D. Ala. at I.I.2 and will comply as required.

9

Furthermore, as Plaintiffs are aware, Victoryland is not withholding any documents on the basis of *Noerr-Pennington*. Victoryland informed the Plaintiffs at the meet and confer of counsel on July 5, 2007, that it was not withholding documents on this basis.

**Original Plaintiffs' Request #2:** **Please produce any and all documents in your possession or control that reflect or relate to the history and/or purpose of bingo regulations pertaining to Macon County, Alabama including but not limited to all documents discussing the reasoning behind the creation and adoption of any and all provisions of the bingo regulations.**

Response: Victoryland objects to this request on the grounds that as written it is overly broad, unduly burdensome and oppressive. The request is not reasonably limited in scope or time. This request is objectionable to the extent it seeks material that is confidential in nature and that is subject to the attorney-client privilege, the work product doctrine and is protected under *Noerr-Pennington*. Further, the request is vexatious and filed for an improper purpose as non-objectionable documents and materials sought are already in the possession of the Plaintiffs or their counsel.

Plaintiffs' Clarification: Plaintiffs limited this request to pre-litigation documents only. Defendant maintains its objections to this request on the grounds that it seeks confidential or proprietary information and/or information protected by the attorney-client privilege and the work product doctrine. Defendant will produce any additional non-objectionable responsive documents, if they exist.

Defendant's Supplemental Response: Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Victoryland has produced all non-objectionable pre-litigation documents it has that are responsive to this request, other than publicly-available documents. Documents produced that are responsive to this request include the First Amended and Restated Rules and Regulations and

the Second Amended and Restated Rules and Regulations.   Victoryland incorporates by reference the arguments it made regarding Request #1.

**Original Plaintiffs' Request #3:**    **Please produce any and all documents in your possession or control that reflect or relate to the licensing (or denial of licensing) of any bingo parlor or other gaming establishment in Macon County, Alabama, including Victoryland.**

Response:    Victoryland objects to this request on the grounds that it is overly broad, unduly burdensome and oppressive.  The request is not reasonably limited in scope or time and seeks information that is not relevant and not reasonably calculated to lead to the discovery of relevant information.  The request is also objectionable to the extent it seeks information that is confidential or protected by attorney-client privilege, the work-product doctrine or *Noerr-Pennington.*

Plaintiffs' Clarification:    Plaintiffs limited this request to pre-litigation documents only.  Defendant maintains its objections to this request on the grounds that it seeks confidential or proprietary information and/or information protected by the attorney-client privilege and the work product doctrine.  Defendant will produce any additional non-objectionable responsive documents, if they exist.

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request.  Without waiving those objections, non-objectionable documents responsive to this request have been produced.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Although it has not reproduced documents produced by other parties, Victoryland has not withheld any non-privileged, pre-litigation documents responsive to this request, other than publicly-available items such as newspaper articles. Documents produced that are responsive to this request include the Victoryland licenses.

**Original Plaintiffs' Request #4:**    Please produce any and all documents in your possession or control that reflect or relate to the licensing (or denial of licensing) of any charity for the conduct of bingo in Macon County, Alabama.

Response:    Victoryland objects to this request on the grounds that it is overly broad, unduly burdensome and oppressive. The request is not reasonably limited in scope or time and is objectionable to the extent it seeks information that is confidential or protected by attorney-client privilege, the work-product doctrine or *Noerr-Pennington*.

Plaintiffs' Clarification:    Plaintiffs limited the documents requested to application materials by third parties and communication including emails regarding the application/recruitment of charities and matters related to that issue.

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Although it has not produced documents produced by other parties, Victoryland has not withheld any pre-litigation documents responsive to this request that were not already produced in this case, other than publicly-available documents, such as newspaper articles. Had Plaintiffs' counsel simply checked with Victoryland's counsel before firing off their Motion to Compel as required to do under the Federal Rules of Civil Procedure, they would have been told that Victoryland has produced all pre-litigation documents it has that are responsive to this request. Documents produced that are responsive to this request include the Original Bingo Licenses for the charities associated with Victoryland. The related license applications have been produced by Sheriff Warren.

12

**Originial Plaintiffs' Request #5:**    **Please produce any and all documents in your possession or control that refer or relate to Sheriff Warren.**

Response:    Victoryland objects to this request on the grounds that it is vague, unclear and ambiguous. Further, the request is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time and is objectionable to the extent it seeks information that is confidential or protected by attorney-client privilege, the work-product doctrine or *Noerr-Pennington*.

Plaintiffs' Clarification:    Plaintiffs limited the information sought to any documents regarding electronic bingo and any benefits bestowed upon Sheriff Warren by Victoryland. Plaintiffs defined the term "benefits" to mean cash payments, airplane trips, payment of debts, privileges at Victoryland, credits on Bingo cards at Victoryland and parties thrown on behalf of the Sheriff. Plaintiffs do not want police reports.

Plaintiffs disagreed with Defendant's summary of the meet and confer and by letter dated July 17, 2007, clarified as follows: Plaintiffs understanding is that the definition of the term benefits as "cash payments, airplane trips, payment of debts, privileges at Victoryland, credits on Bingo cards at Victoryland and parties thrown on behalf of the Sheriff" is meant to exemplify and not be an exhaustive list of benefits. Plaintiffs do not think the term "benefit" is particularly difficult to understand, but if Defendant has trouble determining whether particular things or actions are "benefits," Plaintiffs' counsel will be happy to discuss.

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced.

**DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:**

Victoryland has not withheld any pre-litigation documents responsive to this request other than items of public record, such as newspaper articles. Documents produced that are

13

responsive to this request include the Original Bingo Licenses for the charities associated with

Victoryland, which were signed by Sheriff Warren.

**Original Plaintiffs' Request #11:**    **Please produce any and all documents in your possession or control that contain any communication between you and Fred D. Gray or Fred D. Gray, Jr., relating to the licensing of bingo in Macon County, Alabama.**

Response:    Victoryland objects to this request on the grounds that it seeks confidential or proprietary information and/or information protected by the attorney-client privilege and the work product doctrine. Further, the request is not reasonably calculated to lead to the discovery of admissible evidence. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time.

Plaintiffs' Clarification:    None.

Plaintiffs stated by letter dated July 17, 2007, that they believe Defendant's position is inconsistent with Mr. Gray's affidavit stating that he has not "at any time" advised Defendant concerning the rules and regulations governing bingo.

Defendant's Supplemental Response:    Defendant maintains its objections to this request.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Plaintiffs' argument ignores the confidentiality provisions of Rule 1.6 of the Alabama

Rules of Professional Conduct. Victorylandt incorporates by reference the applicable arguments

regarding Rule 1.6 that are set out in its response to Request #1 and its it accompanying brief on

the legal bases for the privileges it asserts.

**Original Plaintiffs' Request #12:**    **Please produce any and all documents in your possession or control that contain any communication between you and Fred D. Gray, Fred D. Gray, Jr., or any of their partners and associates, relating to the**

**licensing of bingo in Macon County, Alabama, from January 1, 2003, until January 6, 2005.**

Response:        Victoryland objects to this request on the grounds that it seeks confidential or proprietary information and/or information protected by the attorney-client privilege and the work product doctrine. Further, the request is not reasonably calculated to lead to the discovery of admissible evidence. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope.

Plaintiffs' Clarification:      None.

Defendant's Supplemental Response:      Defendant maintains its objections to this request.

### DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFF' ARGUMENT:

Victoryland incorporates by reference its argument in response to Request #11.

**Original Plaintiffs' Request #13:**    **Please produce any and all documents in your possession or control that reflect or relate to any investment of Sheriff Warren, Pebblin W. Warren, J.B. Walker, Fred D. Gray, Fred D. Gray, Jr. or any of their relatives in Victoryland.**

Response:        Victoryland objects to this request on the grounds that it seeks personal, private, proprietary and confidential information, including information of non-parties, the disclosure of which would amount to an improper invasion of privacy. Further, the request is not reasonably calculated to lead to the discovery of admissible evidence. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time.

Plaintiffs' Clarification:      None.

By letter dated July 17, 2007, Plaintiffs proposed to limit the Requests to the investment or ownership interest of Fred Gray, based on the understanding that he is the only identified person who is an investor in Victoryland. If that understanding changes, Plaintiffs may need to revisit Requests. Plaintiffs proposed to limit these Requests in time from January 1, 2001.

Defendant's Supplemental Response:      Defendant maintains its objections to this request.

15

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

The Original Plaintiffs argue that information relating to any investment of Fred Gray (the father of Fred Gray, Jr.), who is not a party to this action, is relevant to: (1) prove that he is an investor; (2) show Fred Gray, Jr.'s motive for accepting the alleged brides; (3) show how the electronic bingo monopoly has benefited Fred Gray Jr.'s father; and (4) show how any such financial benefits would be valuable to Fred Gray, Jr. (Doc. #106, at p. 11). None of these arguments has any merit. In an affidavit filed in this case, Fred Gray has already admitted that he has been a shareholder in Victoryland since 1983. (Aff. of Fred Gray, to Doc. #62-2, at p. 2). Thus, even if this fact were relevant, there is no need for Plaintiffs to have further discovery to prove that point.

In addition, this request and Plaintiffs' arguments in support of it establish that it is nothing more than irrelevant discovery based solely upon suspicion and speculation. "Requested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) (citing *Mahoney v. United States*, 233 Ct.Cl. 713, 717-19 (1980); *Missouri Pacific R.R. v. United States*, 338 F.2d 668, 671-72 (Ct.Cl. 1964)). When Plaintiffs' argument is read in context with the allegations in the Third Amended Complaint, it is clear that Plaintiffs' ridiculously speculative argument is nothing more than: <u>if</u> Fred Gray, Jr, was a public servant and <u>if</u> he accepted the <u>alleged</u> bribes, he <u>might have</u> had a motive for doing so, <u>if</u> he had a right to receive a portion of his father's estate because his father was an investor with Victoryland. Such conjecture is not the basis for obtaining discovery. Furthermore, as Plaintiffs admit in footnote 2 of the Motion to Compel, they do not even know if Fred Gray Jr. would have an interest in his father's estate, because their attempts to subpoena such information

were properly met with a motion to quash that is still pending. Moreover, even if Fred Gray, Jr., had such an interest today, any potential future financial benefit from Fred Gray's estate to Fred Gray, Jr. would be a mere expectancy and not a financial benefit until the death of Fred Gray. Alabama case law has long held that "one cannot be an heir during the lifetime of the person from whom one stands to inherit." *Wright v. Wood*, 582 So. 2d 454, 456 (Ala. 1991). A child has a mere expectancy in the estate of living parent. *Fuller v. Nichols*, 121 So. 52 (Ala. 1929). This request is improper on multitude levels and the Original Plaintiffs have not shown good reason why they should be allowed to discover personal, private, proprietary and confidential information, concerning the investment of Fred Gray, a non-party to this action.

| | |
|---|---|
| **Original Plaintiffs' Request #14:** | **Please produce any and all documents in your possession or control that reflect or relate in any way, either directly or indirectly, to the ownership and operation of Victoryland, including but not limited to the corporate status of Victoryland and the identity of all investors in Victoryland.** |
| Response: | Victoryland objects to this request on the grounds that it seeks personal, private, proprietary and confidential information, including information of non-parties, the disclosure of which would amount to an improper invasion of privacy. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks commercial, proprietary and competitive information the disclosure of which would be harmful to Victoryland and its business. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence. |
| Plaintiffs' Clarification: | None. |
| | By letter dated July 17, 2007, Plaintiffs proposed to limit the Requests to the investment or ownership interest of Fred Gray, based on the understanding that he is the only identified person who is an investor in Victoryland. If that understanding changes, Plaintiffs may need to revisit Requests. Plaintiffs proposed to limit these Requests in time from January 1, 2001. |

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Because Plaintiffs merely incorporated by reference its arguments in response to Request #13, Victoryland also incorporates by reference its arguments regarding Request #13, which establishes why this request also seeks irrelevant documents based on improper speculation and suspicion.

**Original Plaintiffs 'Request #15:**    **Please produce any and all documents in your possession or control that reflect or relate to monies paid to the investors in Victoryland by Victoryland and its officers, directors, shareholders, employees, representatives, accountants, attorneys or agents since January 1, 2003.**

Response:    Victoryland objects to this request on the grounds that it seeks personal, private, proprietary and confidential information, including information of non-parties, the disclosure of which would amount to an improper invasion of privacy. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks commercial, proprietary and competitive information the disclosure of which would be harmful to Victoryland and its business, and also seeks privileged information. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs' Clarification:    None.

By letter dated July 17, 2007, Plaintiffs proposed to limit this Request to Fred Gray and the Gray Law Firm. Plaintiffs proposed to limit these Requests in time from January 1, 2001.

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request.

18

**DEFENDANT'S RESPONSE TO ORIGINL PLAINTIFF' ARGUMENT:**

Plaintiffs argue that documents "relating to monies paid to Fred Gray and the Gray Law Firm" since January 1, 2001 to the present are relevant because they "would reveal (1) benefits bestowed on Fred Gray, which would be valuable to Fred Gray, Jr. as Fred Gray's son, and (2) monies paid to the Gray Law Firm, which would be valuable to Fred Gray, Jr. as a shareholder in the Gray Law Firm." (Doc. #106, at p. 13). Plaintiffs' reliance on these arguments is misplaced. The Plaintiffs' first argument regarding the alleged relevance of benefits to Fred Gray is the same highly inappropriate, speculative argument Plaintiffs made regarding Request #13 and it is without merit for the reasons set forth above regarding the problems with Request #13, which are incorporated by reference. The Plaintiffs' second argument ignores the fact that (as Plaintiffs are well aware) the Gray Law Firm has represented Victoryland in many legal matters since 1983. (*See* Aff. of Fred Gray, Doc. #62-2, at p. 3). In short, the Gray Law Firm has been paid fees, as it should have been, for the legal services it provided to Victoryland that are wholly unrelated to this case. The Plaintiffs have simply failed to provide any valid reason for why they are entitled to the detailed documents setting forth payments to the Gray Law Firm for legal services it has provided to Victoryland over the last seven years, which have no bearing on this case.[2] This unprecedented request is nothing more than a improper fishing expedition, in which the Plaintiffs are "unmoored and trolling." *Micro Motion*, 894 F.2d at 1327.

| | |
|---|---|
| **Original Plaintiffs' Request #16:** | **Please produce any and all documents in your possession or control that refer or relate in any way, either directly or indirectly, to the charities that have contracted with Victoryland.** |

---

[2] The Request itself sought documents from January 1, 2003. Yet Plaintiffs have improperly sought to unilaterally rewrite the Request to cover a period that is two years longer.

Response:            Victoryland objects to this request on the grounds that it is overly broad, unduly burdensome and oppressive and to the extent it seeks confidential, proprietary or otherwise privileged information.   The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not reasonably limited in scope or time.

Plaintiffs' Clarification:        Plaintiffs stated the information sought is limited to any documents regarding Victoryland's payments to charities, contracts between Victoryland and the Charities and on-going communication between Victoryland and the Charities concerning electronic Bingo from January 1, 2003 forward (unless documents indicate communication prior to January 1, 2003, in which case that communication shall be included).

Defendant's Supplemental Response:        Based upon the Plaintiffs' clarification at the meet and confer and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request.  Without waiving those objections, we have produced bingo licenses pursuant to this request.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

As noted above, Victoryland has objected to producing its bingo contracts with the charities who conduct electronic bingo games at Victoryland and the payments to those charities under those contracts. Plaintiffs erroneously argue that the contracts and payments between Victoryland and its charities, who are not parties to this litigation, are relevant because Plaintiffs speculate that "they will demonstrate, among other things, that the rules and regulations were promulgated, amended, and maintained to benefit Victoryland rather than the charities or the people of Macon County." (Doc. #106, at 13-14. This argument is flawed on several levels. None of the charities for whom Victoryland operates electronic bingo games are even parties to this lawsuit.  The Plaintiffs simply have no standing to claim that the County Bingo Regulations

do not benefit those charities or to attack those charities' decisions to enter into contracts with Victoryland.

In addition, the relevant issue, which has been fully briefed, is not whether the County Bingo Regulations benefit Victoryland, but whether there is a <u>conceivable</u> rational basis for the four aspects of the County Bingo Regulations about which Plaintiffs complain. *See F.C.C. v. Beach Commc'ns, Inc.* 508 U.S. 307, 313-14 (1993). Moreover, "'[t]ruth is not the issue [in a rational basis] case and using discovery procedures to develop facts showing the state's true reasons for its actions'" is not necessary. *Spivey v. Ohio*, 999 F. Supp. 987, 991-92 (N.D. Ohio 1998) (quoting *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 936 (5th Cir. 1988)). Furthermore, the alleged illicit motives of the Sheriff for alleged wrongdoing and others (all of which is sheer speculation) are irrelevant to the fundamental issue in this case of whether there is a rational basis for the four aspects of the County Bingo Regulations that the Plaintiffs challenge. *See International Paper Co. v. Town of Jay*, 928 F.2d 480, 485 (1st. Cir. 1991) (finding there was a rational basis for the town ordinance, and refusing to delve into the motives of the town counsel, noting that absent a suspect or quasi-suspect classification or a fundamental right, courts will not strike down an ordinance with a rational basis because of an alleged illicit motive); *Wal-Mart Stores, Inc. V. City of Turlock*, 483 F. Supp. 2d 1023, 1036-37 (E.D. Cal. 2007) (noting that one of the reasons an improper motive does not affect an equal protection review of an ordinance is because "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." (quoting *Beach Commc'ns*, 508 U.S. at 315.)

Furthermore, unlike the contracts of the Original Plaintiffs with Lucky Palace that the Plaintiffs put at issue in this case with their tortious interference claims, the contracts between

Victoryland and its charities are simply irrelevant. The Original Plaintiffs, who seek to compete with the Victoryland charities, have not shown a valid reason for requiring production of the confidential and proprietary financial information of non-parties with whom they seek to compete. Neither have the Original Plaintiffs shown a sufficient reason why they and Lucky Palace, which seeks to compete with Victoryland, should obtain confidential and proprietary information concerning Victoryland's business operations, including its contracts with and payments to charities related to electronic bingo.

**Original Plaintiffs' Request #17:**    **Please produce any and all documents in your possession or control that refer or relate to bingo licenses issued to any charity that has contracted with Victoryland.**

Response:    Victoryland objects to this request on the grounds that it is overly broad, unduly burdensome and oppressive and to the extent it seeks confidential, proprietary or otherwise privileged information. Further, the request is not reasonably limited in scope or time.

Plaintiffs' Clarification:    Plaintiffs limited information sought to any documents regarding Victoryland's payments made to charities, contracts between Victoryland and the Charities and on-going communication between Victoryland and the Charities concerning electronic Bingo from January 1, 2003 forward (unless documents indicate communication prior to January 1, 2003, in which case that communication shall be included).

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, we have produced bingo licenses pursuant to this request.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Because Plaintiffs merely incorporated by reference its arguments in response to Request #16, Victoryland also incorporates by reference its arguments regarding Request #16, which

establish among other things that this request improperly seeks irrelevant documents containing

confidential financial information of non-parties to this action.

<u>Original Plaintiffs' Request #19:</u>    **Please produce any and all documents in your possession or control that refer or relate in any way, either directly or indirectly, to Plaintiffs, Lucky Palace, Inc., and/or their attorney(s), employers, employees, agents, representatives, or relatives.**

Response:    Victoryland objects to this request on the grounds that it is overly broad, unduly burdensome and oppressive. The request is not reasonably limited in scope or time. Further, the request calls for confidential and privileged information, including information protected by the work product doctrine, *Noerr-Pennington* and/or the attorney-client privilege.

Plaintiffs' Clarification:    Plaintiffs stated that the entity referred to as "Lucky Palace, Inc." is in actuality "Lucky Palace LLC." Plaintiffs limited requests to the Plaintiff Charities' documents concerning electronic bingo limited to pre-litigation documents only. Plaintiffs stated that requests specific to Lucky Palace LLC are related to any documents concerning Lucky Palace or its three main principals, Paul Bracey, Marcus Taylor and Dwight Washington.

Plaintiffs disagreed with Defendant's understanding from the meet and confer and by letter dated July 17, 2007, clarified as follows: Plaintiffs' understand that Requests specific to Lucky Palace LLC are related to any documents "referring or relating to" Lucky Palace or its three main principals, Paul Bracey, Marcus Taylor and Dwight Washington.

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced.

## <u>DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:</u>

Victoryland has not withheld any pre-litigation documents responsive to this request

other than publicly-available items such as newspaper articles. Documents produced that are

responsive to this request include advertisements and mailers promoting Lucky Palace and its affiliates and/or criticizing Defendants.

| | |
|---|---|
| **Original Plaintiffs' Request #20:** | **Please produce any and all documents in your possession or control that refer or relate in any way, either directly or indirectly, to Plaintiffs, Lucky Palace, Inc., and/or their attorney(s), employers, employees, agents, representatives, or relatives, specifically regarding Plaintiffs' applications for bingo licenses.** |
| Response: | Victoryland objects to this request on the grounds that it is overly broad, unduly burdensome and oppressive. The request is not reasonably limited in scope or time. Further, the request calls for confidential and privileged information, including information protected by the work product doctrine, *Noerr-Pennington* and/or the attorney-client privilege. |
| Plaintiffs' Clarification: | Plaintiffs stated that this request is encompassed within Request # 19. |
| Defendant's Supplemental Response: | Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced. |

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Victoryland has not withheld any pre-litigation documents responsive other than publicly-available items such as newspaper articles. Had Plaintiffs' counsel simply checked with Victoryland's counsel before firing off their Motion to Compel as required under the Federal Rules of Civil Procedure, they would have been told that Victoryland has produced all pre-litigation documents it has that are responsive to this request. Documents produced that are responsive to this request include the deed for 3609 Lower Wetumpka Road, property description of same, mortgage by J. Properties LLC, facsimile from Whitehead to McGregor regarding instructions for application and Lucky Palace bingo license application, and

advertisements and mailers promoting Lucky Palace and its affiliates and/or criticizing Defendants.

**Original Plaintiffs' Request #23:**    **To the extent not embraced by any of the preceding requests, please produce all correspondence, documents or other communications (including notes or recordings of phone conversations) between you or anyone in your employ or under your control and any non-party to this lawsuit that in any way refer to Plaintiffs, Lucky Palace, Inc., and/or their attorney(s), employers, employees, agents, representatives, or relatives.**

Response:    Victoryland objects to this request on the grounds that it is overly broad, unduly burdensome and oppressive. The request is not reasonably limited in scope or time. Further, the request calls for confidential and privileged information, including information protected by the work product doctrine, *Noerr-Pennington* and/or the attorney-client privilege. Also, the request is vague, unclear and ambiguous.

Plaintiffs' Clarification:    Plaintiffs stated this request is encompassed within Request # 19 and should include only documents of communications made at Victoryland's behest.

By letter dated July 17, 2007, Plaintiffs disagreed with Defendant's understanding from the meet and confer and clarified that this request is encompassed within Request # 19 and should include only documents of communications made "with Victoryland's knowledge."

Defendant's Supplemental Response:    Based upon the Plaintiffs' clarification at the meet and confer, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced.

**DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:**

See Victoryland's Responses to Requests 19 and 20.

**Original Plaintiffs' Request #25:**    **Please produce any and all documents in your possession or control that refer or relate in any way to**

> any benefit given by you, any officer, director,
> shareholder, employee or any other person or entity
> associated with Victoryland, either directly or
> indirectly, to Sheriff Warren, Pebblin W. Warren or
> J.B. Walker, including but not limited to gifts,
> gratuities, political campaign contributions, including
> payments made to a Political Action Committee,
> business transactions, transportation services,
> vacations, privileges at Victoryland or any other form
> of tangible or intangible property or service.

Response:    Victoryland objects to this request on the grounds that it seeks personal, private, proprietary, privileged and confidential information, including information of non-parties, the disclosure of which would amount to an improper invasion of privacy, and seeks information that is protected by *Noerr-Pennington*. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs' Clarification:    None.

By letter dated July 17, 2007, Plaintiffs proposed to limit this Request in time from January 1, 1995. Plaintiffs further proposed to limit this Request to benefits bestowed with Victoryland's knowledge.

Defendant's Supplemental Response:    Based upon Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

The Original Plaintiffs make the flawed argument that this request is relevant because "such information may reveal that Defendant Warren has received financial benefits from his co-conspirators, which would be evidence that Defendant Warren shares a common motive – financial gain with Defendants McGregor and Victoryland." (Doc. #106 at p. 17 (emphasis added). Reliance on this argument is misplaced for several reasons. First, the request does not

seek information concerning just Sheriff Warren, but it seeks information concerning non-parties Pebblin Warren and J.B. Walker without any showing whatsoever of how such information could be relevant. For example, Plaintiffs offer no basis – not even a speculative basis – of how a "benefit" to J.B. Walker could result in financial gain to Sheriff Warren. Likewise, Plaintiffs offer no rationale for how a campaign contribution to Pebblin Warren would result in financial gain to Sheriff Warren. Second, the alleged motive of Victoryland here, "financial gain," is meaningless in the context of this business dispute where no crime has been shown to have even occurred. All for-profit businesses have financial gain as a motive for operations. In fact, the Original Plaintiffs and Lucky Palace filed this lawsuit seeking damages for the purpose of financial gain. Under Plaintiffs' ludicrous theory, then by filing this lawsuit, the Plaintiffs have a motive to commit a crime that has not been shown to have ever occurred and legal action should be taken against them. This discovery request is simply an improper request seeking irrelevant information based on nothing more than the Plaintiffs' baseless speculation and conjecture. *See Micro Motion,* 894 F.2d at 1326 ("Requested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation.") (citation omitted).

Moreover, it is important to maintain focus on the real issue. Any alleged illicit motives of the Sheriff and others are completely irrelevant to the fundamental issue to be resolved in this case: whether there is a rational basis for the four aspects of the County Bingo Regulations that the Plaintiffs challenge. *See International Paper Co. v. Town of Jay*, 928 F.2d 480, 485 (1st. Cir. 1991) (finding there was a rational basis for the town ordinance, and refusing to delve into the motives of the town counsel, noting that absent a suspect or quasi-suspect classification or a fundamental right that courts will not strike down an ordinance with a rational basis because of

27

an alleged illicit motive); *Wal-Mart Stores, Inc. V. City of Turlock*, 483 F. Supp. 2d 1023, 1036-37 (E.D. Cal. 2007) (noting that one of the reasons an improper motive does not affect an equal protection review of an ordinance is because "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." (quoting *Beach Commc'ns*, 508 U.S. at 315.)

Likewise, the documents sought by this highly speculative request simply have nothing to do with the other meritless allegation in this case involving Sheriff Warren: whether Victoryland bribed the Sheriff's Lawyer, Fred Gray, Jr., whom Plaintiffs contend is a "public servant" in order to have the four contested aspects of the County Bingo Regulations promulgated. These requests simply do not concern whether Fred Gray, Jr, was a public servant or whether Victoryland bribed him and Plaintiffs are not entitled to the documents sought.

Furthermore, if the Original Plaintiffs are interested in campaign contributions to Sheriff Warren or Pebblin Warren, they can review the applicable public records. Under Fed. R. Civ. P. 26(b)(2)(C)(i), this Court must limit the extent of disovery where "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ." Plaintiffs are not entitled to obtain from Victoryland information that is available to them in the public forum, nor should Plaintiffs benefit from the time, effort and expense of the Victoryland in gathering information that Plaintiffs may simply obtain for themselves.

**Original Plaintiffs' Request #26:**     **Please produce any and all documents in your possession or control that refer or relate in any way to any benefit given by you, any officer, director, shareholder, employee or any other person or entity associated with VictoryLand, either directly or indirectly, to Fred D. Gray, or any of his relatives, partners or associates, including but not limited to gifts, gratuities, political campaign contributions, including payments made to a Political Action Committee,**

business    transactions,    transportation    services,
vacations, privileges at Victoryland or any other form
of tangible or intangible property or service.

Response:        Victoryland objects to this request on the grounds that it seeks personal,
private, proprietary and confidential information, including information of
non-parties, the disclosure of which would amount to an improper invasion
of privacy, and seeks information that is protected by *Noerr-Pennington*.
The request is overly broad, unduly burdensome and oppressive, and the
request is not reasonably limited in scope or time.   The request seeks
documents that are not relevant to any claim or defense asserted in the
pending litigation under the Second Amended Complaint, and the request is
not reasonably calculated to lead to the discovery of admissible evidence.
The request also seeks information protected by the attorney-client privilege.

Plaintiffs' Clarification:        None.

By letter dated July 17, 2007, Plaintiffs proposed to limit this
Request to benefits bestowed with Victoryland's knowledge.
Plaintiffs further proposed to limit this Request in time from
January 1, 2001.

Defendant's Supplemental Response:        Based   upon   Plaintiffs'   clarification   and   the
allegations in the Third Amended Complaint and
the   proposed   Fourth   Amended   Complaint,
Defendant maintains its objections to this request.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

The Original Plaintiffs merely incorporated by reference their arguments in response to

Request #15, and Victoryland also incorporates by reference its arguments regarding Request

#15 as well as those regarding Request #13.

**Original Plaintiffs' Request #27:**        Please   produce   any   and   all   documents   in   your
possession or control that refer or relate in any way to
any   benefit   given   by   you,   any   officer,   director,
shareholder,   employee,   or   any   other   person   or   entity
associated   with   Victoryland,   either   directly   or
indirectly, to any charity in Macon County, Alabama,
including but not limited to gifts, gratuities, political
campaign contributions, including payments made to a

> **Political Action Committee, business transactions, transportation services, vacations, privileges at Victoryland or any other form of tangible or intangible property or service.**

Response:  Victoryland objects to this request on the grounds that it seeks personal, private, proprietary and confidential information the disclosure of which would amount to an invasion of privacy. The request seeks information that is protected by *Noerr-Pennington*. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks commercial, proprietary and competitive information the disclosure of which would be harmful to Victoryland and its business. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence. Victoryland also objects to the extent this request seeks information protected by the work-product doctrine or the attorney-client privilege.

Plaintiffs' Clarification:  Plaintiffs offered to narrow this request.

By letter dated July 17, 2007, Plaintiffs proposed to limit this Request to benefits bestowed with Victoryland's knowledge. Plaintiffs proposed to limit this Request in time from January 1, 2003.

Defendant's Supplemental Response:  Based upon Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request.

## DEFENDANT'S RESPONSE TO PLAINTIFF CHARITIES' ARGUMENT:

Because the Original Plaintiffs merely incorporated by reference their arguments in response to Request #16, Victoryland also incorporates by reference its arguments regarding Request #16. The Original Plaintiffs have simply failed to show that they are entitled to the irrelevant personal, private, proprietary and confidential information of non-parties, with whom they seek to compete. Likewise, they have failed to show why they and Lucky Palace, which intends to compete with Victoryland, are entitled to the commercial, proprietary and competitive

information sought, the disclosure of which would be harmful to Victoryland and its business. The fact that there is a limited protective order in place in this case does not make this irrelevant information relevant, or otherwise discoverable.

| | |
|---|---|
| **Original Plaintiffs' Request #28:** | **Please produce any and all documents constituting, evidencing, or reflecting any complaint, formal, informal, or legal, that has ever been lodged against you, and/or any proceedings of any nature to which you were a party, including any complaint or proceeding brought in any matter before any government regulatory body or court of law or equity.** |
| Response: | The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request is also objectionable to the extent it seeks information that is confidential or protected by the work product doctrine or attorney-client privilege. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence. The request is also vexatious to the extent it seeks non-objectionable information that is a matter of public record and is equally available to the Plaintiffs. |
| Plaintiffs' Clarification: | Plaintiffs limited this request to any non-privileged formal complaints involving a court or Government entity related to electronic Bingo. |
| Defendant's Supplemental Response: | Based upon Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request. |

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Plaintiffs argue that this request, which they have limited to requests of "'non-privileged'" formal complaints involving a court or government entity related to electronic bingo," "will possibly lead to evidence" that Victoryland's alleged monopoly has "allowed it to engage in sharp business practices with respect to electronic bingo." (Doc. #106, at p. 19)  This

argument is nonsensical, and the speculative arguments are specious, at best. Plaintiffs are not suppliers or customers of Victoryland who could have a complaint about how Victoryland conducts its electronic bingo operations. If any such speculative evidence existed, it would be wholly irrelevant to this case and would shed no light whatsoever on any alleged "motive" for imagined or suspected wrongdoing. None of Plaintiffs' claims against Victoryland concern how it conducts its electronic bingo operations and, therefore, any documents regarding such matters, including supposed "sharp business practices" have nothing to do with the key issue in this case: whether there is any conceivable rational basis for the four aspects of the County Bingo Regulations which Plaintiffs challenge. Neither does the requested information relate to the Plaintiffs' suspicion-only based contentions that Victoryland conspired to have the Sheriff promulgate those four aspects of the County Bingo Regulations; whether Victoryland bribed the Sheriff's Lawyer, Fred Gray, Jr., whom Plaintiffs contend is a "public servant" in order to have these four aspects of the County Bingo Regulations promulgated and that Victoryland improperly interfered with the existing or prospective business relationships between the Original Plaintiffs and Lucky Palace by improperly influencing or aiding the Sheriff in the promulgation of the four aspects of the County Bingo Regulations that Plaintiffs do not like. The only case that raises any issues similar to this case is *Macon County Investments v. Warren*, case number 3:06-cv-224-WKW to which Victoryland is not a party. Plaintiffs are familiar the *Macon County Investments* case.

Plaintiffs' claims that such evidence will "demonstrate the centrality of the [RICO] enterprise to Victoryland's regular way of doing business" is similarly misplaced because under Rule 404 of the Federal Rules of Evidence, such character evidence would not be admissible to prove Victoryland's "regular way of doing business."

**Original Plaintiffs' Request #29:**   **Please produce any and all documents that reflect or relate to campaign contributions made to any of the Sheriff Warren's campaigns for the office of Sheriff of Macon County, Alabama or the campaign of Pebblin W. Warren.**

Response:    Victoryland objects to this request to the extent that it seeks personal, private, proprietary and confidential information the disclosure of which would amount to an improper invasion of privacy. The request also seeks information that is protected by *Noerr-Pennington,* and is overly broad, unduly burdensome and oppressive, and not reasonably limited in scope or time. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs' Clarification:    Plaintiffs stated this request was encompassed by Request #25.

By letter dated July 17, 2007, Plaintiffs proposed to limit this Request in time from January 1, 1995. Plaintiffs further proposed to limit this Request to benefits bestowed with Victoryland's knowledge.

Defendant's Supplemental Response:    Based upon Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Because the Original Plaintiffs merely incorporated by reference their arguments in response to Request #16, Victoryland also incorporates by reference its arguments regarding Request #16. The Original Plaintiffs have simply failed to show why they are entitled to such irrelevant public information from Victoryland when the Original Plaintiffs can obtain any such information from public records that are equally available to them.

**Original Plaintiffs' Request #30:**   **Please produce any and all documents in your possession or control that reflect or relate to any communication with any member of the Alabama legislature, including staff members of any legislator, related to the policies, procedures and/or practices regarding the issuance of bingo licenses in Macon County, Alabama.**

Response:          Victoryland objects to this request to the extent that it seeks personal, private, proprietary and confidential information the disclosure of which would amount to an improper invasion of privacy and to the extent it seeks information protected by the work product doctrine. The request seeks information that is protected by *Noerr-Pennington*. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs' Clarification:        Plaintiffs stated that this request specifically includes post-litigation documents concerning HB 17, HB 527, SB 92 and SB 390. Plaintiffs may request other bills as well. Plaintiffs' justification for this request is that they are attempting to look for any actions taken to further insulate Victoryland from attack in order to show a conspiracy.

Plaintiffs disagreed with Defendant's summary of the meet and confer and by letter of July 17, 2007, clarified as follows: Plaintiffs state that they are seeking both pre-litigation and post-litigation documents relating to the legislative efforts described. Plaintiffs add Amendment 744 to this Request. Plaintiffs' justification for these Requests is that they are reasonably calculated to lead to the discovery of admissible evidence of Victoryland's participation in the alleged conspiracy and enterprise and of the continuing nature of the conspiracy and enterprise.

Defendant's Supplemental Response:        Based upon the Plaintiffs' clarification at the meet and confer and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced and Defendant will produce additional documents subject to a protective order.

34

<u>**DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:**</u>

Victoryland has not withheld any documents responsive to this request other than items of public record, such as newspaper articles. Had Plaintiffs' counsel simply checked with Victoryland's counsel before firing off their Motion to Compel as required under the federal Rules of Civil Procedure, they would have been told that Victoryland has produced all pre-litigation documents it has that are responsive to this request. Documents produced that are responsive to this request include a letter to Rep. John Knight from Walt Hawkins dated March 27, 2007.

<u>**Original Plaintiffs' Request #31:**</u>    **Please produce any and all documents in your possession or control that reflect or relate to HB 17, a bill submitted by Pebblin W. Warren in the Alabama House of Representatives, which sought to amend Amendment 744 to incorporate the Second Amended and Restated Bingo Regulations for Macon County, Alabama.**

Response:    Victoryland objects to this request to the extent that it seeks personal, private, proprietary and confidential information the disclosure of which would amount to an improper invasion of privacy and to the extent it seeks information protected by the work product doctrine. The request seeks information that is protected by *Noerr-Pennington*. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence. Victoryland further objects to the extent this request seeks information subject to the work-product doctrine and/or attorney-client privilege.

Plaintiffs' Clarification:    None.

By letter of July 17, 2007, Plaintiffs clarified as follows: Plaintiffs are seeking both pre-litigation and post-litigation documents relating to the legislative efforts described. Plaintiffs' justification for these Requests is that they are reasonably calculated to lead to

the discovery of admissible evidence of Victoryland's participation in the alleged conspiracy and enterprise and of the continuing nature of the conspiracy and enterprise.

Defendant's Supplemental Response:    Based upon Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Victoryland has not withheld any documents responsive to this request that were not already produced in this case, other than items of public record, such as newspaper articles.

**Original Plaintiffs' Request #32:**    **Please produce any and all documents in your possession or control that reflect or relate to HB 527, a bill submitted by Marcel Black in the Alabama House of Representatives.**

Response:    Victoryland objects to this request to the extent that it seeks personal, private, proprietary and confidential information the disclosure of which would amount to an improper invasion of privacy and to the extent it seeks information protected by the work product doctrine. The request seeks information that is protected by *Noerr-Pennington*. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs' Clarification:    None.

By letter of July 17, 2007, Plaintiffs clarified as follows: Plaintiffs are seeking both pre-litigation and post-litigation documents relating to the legislative efforts described. Plaintiffs' justification for these Requests is that they are reasonably calculated to lead to the discovery of admissible evidence of Victoryland's participation in the alleged conspiracy and enterprise and of the continuing nature of the conspiracy and enterprise.

36

Defendant's Supplemental Response:      Based upon Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced and Defendant will produce additional documents subject to a protective order.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Victoryland has not withheld any documents concerning the legislative efforts concerning this bill other than possibly publicly-available items, such as newspaper articles. Documents produced that are responsive to this request include Information on HB 527, article about "Riley campaign manager hired by gambling interests," letter to Johnny Mac Morrow regarding HB527, and a facsimile regarding HB 527 dated April 7, 2007.

**Original Plaintiffs' Request #33:**    **Please produce any and all documents in your bills possession or control that reflect or relate to SB 92 and SB 390, two submitted by Myron Penn in the Alabama Senate.**

Response:    Victoryland objects to this request to the extent that it seeks personal, private, proprietary and confidential information the disclosure of which would amount to an improper invasion of privacy and to the extent it seeks information protected by the work product doctrine. The request seeks information that is protected by *Noerr-Pennington*. The request is overly broad, unduly burdensome and oppressive, and the request is not reasonably limited in scope or time. The request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence. Victoryland further objects to the extent this request seeks information subject to the work-product doctrine and/or attorney-client privilege.

Plaintiffs' Clarification:    None.

By letter of July 17, 2007, Plaintiffs clarified as follows: Plaintiffs are seeking both pre-litigation and post-litigation documents relating to the legislative efforts described. Plaintiffs' justification

for these Requests is that they are reasonably calculated to lead to the discovery of admissible evidence of Victoryland's participation in the alleged conspiracy and enterprise and of the continuing nature of the conspiracy and enterprise.

**Defendant's Supplemental Response:**     Based upon Plaintiffs' clarification and the allegations in the Third Amended Complaint and the proposed Fourth Amended Complaint, Defendant maintains its objections to this request. Without waiving those objections, non-objectionable documents responsive to this request have been produced and Defendant will produce additional documents subject to a protective order.

## DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:

Victoryland has not withheld any documents responsive to this. Documents produced that are responsive to this request include pamphlet against Victoryland, April 9, 2007, resolution (SB 92), press release dated March 29, 2007, press release dated April 10, 2007, SB 390, and a letter from Walt Hawkins to Rep. John Knight dated March 27, 2007.

**Original Plaintiffs' Request #40:**     **Please produce any and all documents constituting, evidencing, or reflecting testimony that you have given under oath in any proceeding and any exhibits thereto.**

**Response:**     Victoryland objects to this request on the grounds that as written it is overly broad, unduly burdensome and oppressive. Further, the request seeks documents that are not relevant to any claim or defense asserted in the pending litigation under the Second Amended Complaint, and the request is not reasonably calculated to lead to the discovery of admissible evidence.

**Plaintiffs' Clarification:**     Plaintiffs limited this Request to any testimony or exhibits regarding electronic bingo.

**Defendant's Supplemental Response:**     Defendant maintains its objections.

## <u>DEFENDANT'S RESPONSE TO ORIGINAL PLAINTIFFS' ARGUMENT:</u>

Plaintiff argues that this request is reasonably calculated to lead to the discovery of admissible evidence in the form of "prior inconsistent statements regarding the conduct of electronic bingo at Victoryland." However, such evidence, were it even to exist, is wholly irrelevant to this case. None of Plaintiffs' claims against Victoryland concern how it conducts its electronic bingo operations and, therefore, any documents regarding such matters are not relevant to this case. Plaintiffs are not claiming that they played an electronic bingo game at Victoryland and have an issue with how the game was conducted. The documents sought by this request simply have nothing to do with the key issues in this case: whether, there is any conceivable rational basis for the four aspects of the County Bingo Regulations which Plaintiffs challenge. Nor do the requested documents have any relationship to the Plaintiffs' suspicion-only based contentions that Victoryland conspired to have the Sheriff promulgate those four aspects of the County Bingo Regulations; that Victoryland bribed the Sheriff's Lawyer, Fred Gray, Jr., whom Plaintiffs contend is a "public servant" in order to have these four aspects of the County Bingo Regulations promulgated and that Victoryland improperly interfered with the existing or prospective business relationships between the Original Plaintiffs and Lucky Palace by improperly influenced or aided the Sheriff in the promulgation of the four aspects of the County Bingo Regulations which Plaintiffs do not like. Victoryland also incorporates by reference its responses set forth above to the Original Plaintiffs' arguments concerning Requests 1 and 28.

Respectfully submitted,

s/ Peter J. Tepley
Peter J. Tepley
One of Attorneys for Defendant,
Macon County Greyhound Park, Inc.
d/b/a Victoryland

**OF COUNSEL:**
William M. Slaughter, Esq.
Trish C. Diak, Esq.
Peter J. Tepley, Esq.
Khristi Doss Driver, Esq.
**HASKELL SLAUGHTER YOUNG & REDIKER, LLC**
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
E-mail:  wms@hsy.com
E-mail:  pcd@hsy.com
E-mail:  pt@hsy.com
E-mail:  kdd@hsy.com

J. Mark White
Augusta D. Dowd
Rebecca G. DePalma
**WHITE ARNOLD ANDREWS & DOWD P.C.**
2025 Third Avenue North, Suite 600
Birmingham, Alabama  35203
Tel:      (205) 323-1888
Fax:     (205) 323-8907
E-mail:  mwhite@waadlaw.com
E-mail:  adowd@waadlaw.com
E-mail:  rdepalma@waadlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF-participant counsel of record:

Robert K. Spotswood, Esq.
Michael T. Sansbury, Esq.
**Spotswood, Sansom & Sansbury, LLC**
940 Concord Center
2100 Third Avenue North
Birmingham, AL 35213
rks@spotswoodllc.com
msansbury@spotswoodllc.com

Fred Gray
Fred Gray, Jr.
**Gray, Langford, Sapp, McGowan, Gray & Nathanson**
P.O. Box 830239
Tuskegee, AL 36083-0239
fgray@glsmgn.com
fgrayjr@glsmgn.com

James H. Anderson
Ryan Wesley Shaw
**Beers Anderson Jackson Patty &Van Heest PC**
P.O. Box 1988
Montgomery, AL  36102
janderson@beersanderson.com
wshaw@beersanderson.com

John M. Bolton, III.
Charlanna W. Spencer
**SASSER, BOLTON & SEFTON, P.C.**
100 Colonial Bank Boulevard
Suite B201
Montgomery, AL 36117
jbolton@sasserlawfirm.com
cspencer@sasserlawfirm.com

W. Lewis Garrison
Stephen D. Heninger
**Heninger Garrison Davis, L.L.C.**
2224 1st Avenue North
Birmingham, AL 35203
E-mail:  wlgarrison@hgdlawfirm.com
E-mail:  steve@hgdlawfirm.com

George Beck, Jr.
Capell & Howard, P.C.
P.O. Box 2069
Montgomery, Alabama 36102-2069
E-mail:  glb@chlaw.com

                                    s/ Peter J. Tepley

                            OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HOPE FOR FAMILIES & COMMUNITY )
SERVICES, INC., et al.,                         )          Case No.: 3:06-cv-01113-WKW-csc
                                                             )
            Plaintiffs,                            )
                                                             )
                                                             )
v.                                                        )
                                                             )
DAVID WARREN, in his Official Capacity )
as the SHERIFF OF MACON COUNTY, et )
al.,                                                    )
                                                             )
            Defendants.                          )


STATE OF ALABAMA                    )
COUNTY OF JEFFERSON              )

## AFFIDAVIT

1.      My name is Khristi Doss Driver. I am over the age of nineteen and am competent to give this affidavit. I have personal knowledge of the matters discussed herein.

2.      I am one of the attorneys representing Macon County Greyhound Park, Inc. d/b/a Victoryland ("Victoryland") in the above matter. As counsel for Victoryland, I have personally reviewed the documents described in the Privilege Log submitted herewith.

3.      Upon inspection, information and belief, I have determined that each of the documents described in the Privilege Log is a communication between Victoryland and its counsel made in confidence for the purpose of facilitating the rendition of professional legal services to Victoryland.

4.      Victoryland refuses to disclose the documents described in the Privilege Log and claims the attorney-client privilege, as set out more fully in the Brief of Law submitted herewith.

5.      There is one document not described on the Privilege Log that Victoryland asserts is protected by the attorney-client privilege and/or is subject to the confidentiality requirements of Rule 1.6 of the Alabama Rules of Professional Conduct. That document will be produced for in camera inspection as soon as practicable.

6.      In the meantime, should counsel determine that the document discussed in paragraph 5 above is not subject to the privileges or confidentiality requirement asserted, we will

respond accordingly.

7.    The Privilege Log will be supplemented as needed or required.

FURTHER THE AFFIANT SAITH NOT.

KHRISTI DOSS DRIVER

Sworn to and subscribed before me, notary public in and for said county and state, on this the 16th day of October, 2007.

Notary Public    CHRISTY MCDONALD ROBERSON

My commission expires: 02|05|2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al.,** | ) ) ) | **Case No.: 3:06-cv-01113-WKW-csc** |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | |
| **DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al.,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

**DEFENDANT MACON COUNTY GREYHOUND PARK, INC.'S**
**PRIVILEGE LOG**

| Document Date | Description of Document | Privilege |
|---|---|---|
| January 4, 2007 | Attorney Fax | Attorney Client Privilege |
| Dec. 19, 2006 | Attorney Fax | Attorney Client Privilege |
| Dec. 21, 2004 | Email from counsel to client and co-counsel regarding Bingo Rules and Regulations | Attorney Client Privilege |
| Date unknown (DUK) | Attorney notes regarding Bingo Rules and Regulations | Attorney Client Privilege |
| Nov. 2, 2004 | Correspondence between co-counsel regarding legal opinion | Attorney Client Privilege |
| Sept. 29, 2004 | Fax to client from counsel regarding Gaming. | Attorney Client Privilege |
| Sept. 28, 2004 | Fax from counsel regarding Bingo | Attorney Client Privilege |
| April 8, 2004 | Fax from counsel to client regarding Bingo Rules and Regulations | Attorney Client Privilege |
| DUK | E-mail from counsel to co-counsel and client regarding Bingo | Attorney Client Privilege |

| DUK | Bingo information provided by counsel | Attorney Client Privilege |
|---|---|---|
| Oct. 10, 2003 | E-correspondence from counsel regarding Bingo | Attorney Client Privilege |
| DUK | Document drafted by counsel. | Attorney Client Privilege |
| May 8, 2006 | Fax from counsel to client regarding attorney request | Attorney Client Privilege |
| DUK | Drafts of legislation prepared by counsel. | Attorney Client Privilege |
| April 9, 2007 | Email from counsel to client regarding legislation | Attorney Client Privilege |
| DUK | Document prepared by counsel | Attorney Client Privilege |
| DUK | Legislative document prepared by counsel | Attorney Client Privilege |
| DUK | Legislative document prepared by counsel | Attorney Client Privilege |
| DUK | E-mail from counsel to client regarding legislation | Attorney Client Privilege |
| DUK | Legislative document prepared by counsel | Attorney Client Privilege |
| DUK | Legislative document prepared by counsel | Attorney Client Privilege |
| DUK | Legislative document prepared by counsel | Attorney Client Privilege |
| DUK | Attorney notes regarding Legislation | Attorney Client Privilege |
| DUK | Attorney notes regarding Legislation | Attorney Client Privilege |
| DUK | Attorney notes regarding Legislation | Attorney Client Privilege |
| DUK | Attorney notes regarding Legislation | Attorney Client Privilege |
| DUK | Attorney notes regarding Legislation | Attorney Client Privilege |

| (Nov. 2003) | Correspondence with counsel regarding legal opinion | Attorney Client Privilege |
|---|---|---|
| Sept. 29, 2004 | Fax from counsel to client regarding gaming | Attorney Client Privilege |
| Dec. 6, 2004 | Correspondence from counsel to client regarding legal opinion | Attorney Client Privilege |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 3:06-cv-01113-WKW-csc |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

DEFENDANT MACON COUNTY GREYHOUND PARK, INC.'S
BRIEF OF LAW SPECIFICALLY DEFINING PRIVILEGE
RELIED UPON IN ITS OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule I.I.2 of the Guidelines for Civil Discovery Practice in the Middle District of Alabama Defendant, Macon County Greyhound Park, Inc. d/b/a Victoryland ("Defendant"), files the following brief of law specifically defining the privilege relied upon in its Opposition to Plaintiffs' Motion to Compel Production of Documents and Things.

Defendant asserts the attorney-client privilege as to the documents listed in its Privilege Log. Alabama law regarding the attorney-client privilege is embodied by Rule 502 of the Alabama Rules of Evidence. As stated in the Advisory Committee Notes to Rule 502, Alabama's attorney-client privilege originally was created by common law, which subsequently was embodied in Ala. Code 1975, § 12-21-161. Rule 502 is intended to embody the same privilege

1

as set out in this former case law and statutory law.  *See McClary v. Walsh,* 202 F.R.D. 286

(N.D. Ala. 2000).  Rule 502(b) states:

> A client has a privilege to refuse to disclose and to prevent any other person from
> disclosing a confidential communication made for the purpose of facilitating the
> rendition of professional legal services to the client, (1) between the client or a
> representative of the client and the client's attorney or a representative of the
> attorney, or (2) between the attorney and a representative of the attorney, (3) by
> the client or a representative of the client or the client's attorney or a representative
> of the attorney to an attorney or representative of an attorney of another party
> concerning a matter of common interest, (4) between representatives of the client
> and between the client and a representative of the client resulting from the specific
> request of, or at the express direction of, an attorney, or (5) among attorneys and
> their representatives representing the same client.

*McClary,* 202 F.R.D. at 290.

In *Richards v. Lennox Industries, Inc.,* 574 So.2d 736 (Ala. 1991) the Alabama Supreme

Court states that an attorney-client privilege exists "(1) Where legal advice of any kind is sought;

(2) From a professional legal advisor in his capacity as such; (3) The communications relating to

that purpose; (4) Made in confidence; (5) By the client; (6) Are at his instance permanently

protected; (7) From disclosure by himself or by the legal advisor; (8) Except the protection may

be waived."  Per Alabama case law, "The term 'communication' imports not only words uttered,

but information conveyed by other means. Acts as well as words fall within that privilege."

*Richards,* 574 So.2d at 739 (citing *Cooper v. Mann,* 273 Ala. 620, 143 So.2d 637 (1962)).

Although the burden of establishing the privilege and showing that the admission of the

privileged information into evidence will be prejudicial to him rests with the party objecting to

the disclosure of the communication, whether a communication is privileged is a matter solely

for the court to determine.  In order to determine whether a communication is protected by the

attorney-client privilege, the trial court must determine whether the communication was made

2

"professionally", which is a question of fact for the trial court. *Richards,* 574 So.2d at 739. The objecting party may show to the court "the relationship of attorney and client and other facts which would tend to show his claim of privileged communication." *Harris v. State*, 202 So. 2d 868, 871 (Ala. 1968).    Once the trial court determines that a communication was made professionally, the court then determines whether, as a matter of law, the attorney-client privilege may be invoked. *Richards,* 574 So.2d at 739.

    In addition to the attorney-client privilege asserted above, Defendant is compelled by Rule 1.6 of the Alabama Rules of Professional Conduct, entitled "Confidentiality of Information," which prohibits a lawyer from revealing information relating to the representation of a client without the client's consent. There are only two exceptions to this prohibition, neither of which apply in this situation: (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

    The comment to Rule 1.6 states that "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law."

    Based on the facts and circumstances in the present case, the documents listed on the Defendant's Privilege Log are protected by the attorney-client privilege and therefore should not be produced to the Plaintiffs.

3

Respectfully submitted,

s/ Peter J. Tepley
Peter J. Tepley
One of Attorneys for Defendant,
Macon County Greyhound Park, Inc.
d/b/a Victoryland

**OF COUNSEL:**
William M. Slaughter
Patricia C. Diak
Khristi Doss Driver
**Haskell Slaughter Young & Rediker, LLC**
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
E-mail:  wms@hsy.com
E-mail:  pcd@hsy.com
E-mail:  pt@hsy.com
E-mail:  kdd@hsy.com

Augusta S. Dowd
J. Mark White
Rebecca G. DePalma
**WHITE ARNOLD ANDREWS & DOWD P.C.**
2025 Third Avenue North, Suite 600
Birmingham, Alabama  35203
Tel:    (205) 323-1888
Fax:    (205) 323-8907
E-mail:  mwhite@waadlaw.com
E-mail:  adowd@waadlaw.com
E-mail:  rdepalma@waadlaw.com

4

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF-participant counsel of record:

Robert K. Spotswood, Esq.
Michael T. Sansbury, Esq.
**Spotswood, Sansom & Sansbury, LLC**
940 Concord Center
2100 Third Avenue North
Birmingham, AL 35213
rks@spotswoodllc.com
msansbury@spotswoodllc.com

Fred Gray, Esq.
Fred Gray, Jr., Esq.
**Gray, Langford, Sapp, McGowan, Gray & Nathanson**
P.O. Box 830239
Tuskegee, AL 36083-0239
fgray@glsmgn.com
fgrayjr@glsmgn.com

James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
**Beers Anderson Jackson Patty &Van Heest PC**
P.O. Box 1988
Montgomery, AL  36102
janderson@beersanderson.com
wshaw@beersanderson.com

John M. Bolton, III, Esq.
Charlanna W. Spencer, Esq.
**Sasser, Bolton & Sefton, P.C.**
100 Colonial Bank Boulevard
Suite B201
Montgomery, AL 36117
jbolton@sasserlawfirm.com
cspencer@sasserlawfirm.com

W. Lewis Garrison, Esq.
Stephen D. Heninger, Esq.
**Heninger Garrison Davis, L.L.C.**
2224 1ˢᵗ Avenue North
Birmingham, AL 35203
E-mail:  wlgarrison@hgdlawfirm.com
E-mail:  steve@hgdlawfirm.com

George Beck, Jr., Esq.
**Capell & Howard, P.C.**
P.O. Box 2069
Montgomery, Alabama 36102-2069
E-mail:  glb@chlaw.com


s/Peter J. Tepley
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., | ) ) ) | Case No.: 3:06-cv-01113-WKW-csc |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

DEFENDANT MACON COUNTY GREYHOUND PARK, INC.'S
<u>PUBLICLY-AVAILABLE DOCUMENTS</u>

| Date | Publication | Description |
|---|---|---|
| 12/30/04 | Tuskegee News | Second Amended Rules & Regulations |
| 6/10/04 | Tuskegee News | First Amended Rules & Regulations |
| 12/30/04 | Tuskegee News | Second Amended Rules and Regulations |
| 12/6/05 | Birmingham News | Bingo License Rules Rigged? |
| 2/9/05 | | Corr. from Sen. Dial to AG Troy King re: 744 and 743 |
| 6/1/06 | PAC reports and pre-election reports | PAC TN Valley Citizens STA PAC |
| 5/18/06 | Tuskegee News | PACs Contribute Almost all Maloy Campaign Funding |
| 6/8/06 | Tuskegee News | With Warren, It's a Matter of Trust |
| 5/18/06 | Tuskegee News | Warren Seeking 4th Term as Macon County Sheriff |
| 6/1/06 | Tuskegee News | Why is Sheriff's race so important to outside interests? |
| 6/5/06 | Birmingham News | Victoryland Rules Bingo, Rivals Say |
| Undated | PAC reports | Capital PAC, CMG PAC, GOTV PAC, Pride PAC, T-Town PAC, TUSCO PAC |
| 5/18/06 | Tuskegee News | Macon County Sheriff Candidates Donor Lists |
| 5/18/06 | Tuskegee News | Racial Makeup of Staffs Surfaces during Forum |
| 9/23/04 | WSFA News | New Bingo Hall |
| 9/25/04 | Montgomery Adv. | Die cast for new Bingo Facility |
| 5/31/07 | Tuskegee News | End of Time Near for Senate Bill 390 |

| 5/17/07 | Tuskegee News | Short Handed Council Notes Not to Support Bill 390 |
| 5/17/07 | Tuskegee News | County Commission Once Again Supports a Bill on Macon Gaming |
| 5/17/07 | Tuskegee News | Hits and Misses on Local Issues |
| 5/10/07 | Tuskegee News | Senate Bill 390 Pros & Cons Heavily Debated |
| 4/12/07 | Tuskegee News | Southeastern Gaming Outlines Plans for Proposed Local Operation |
| 4/12/07 | Tuskegee News | Reverse Pulled at Commission Meeting When Senate Bill 92 Ends Up With Support |
| 4/5/07 | Tuskegee News | New Information Surfaces Regarding Proposed Casino |
| 4/12/07 | Tuskegee News | Commissioners Busy After Senate Bill Debate |
| 3/15/07 | Tuskegee News | Voters Ultimately Will Make Decision on Bingo Proposal |
| 3/29/07 | Tuskegee News | Man with Checked Gaming Past Looking at Macon Location |
| 3/16/04 | Birmingham News | Bingo Backlash: Will race track bingo hurt charity? |
| 3/17/04 | Birmingham News | High-stakes bingo debate starts |
| 3/17/04 | Mobile Register | Bingo for Books at top of senate agenda |
| 3/17/04 | Birmingham News | No satisfaction: Elks illustrate why push for gambling won't end here |
| 3/17/04 | Montgomery Adv. | No payoff yet for bingo bill |
| 3/16/04 | Birmingham News | Morton opposes Bingo for Books: senate may debate legislation as early as today |
| 3/16/04 | Mobile Register | School Boss opposes Bingo for Books |
| 3/16/04 | Montgomery Adv. | State Education chief opposes bingo for books |
| 1/8/04 | Tuskegee News | Charity bingo at VL paying off |
| 1/22/04 | Montgomery Independent | Quincy's 777 Unlimited Jackpot Bingo is drawing big crowds at VL |
| 3/29/04 | Anniston Star | Bingo proceeds from Piedmont Bingo Palace will benefit shelter for homeless veterans |
| Undated | Post Herald | Bingo Foes say tracks gain most from bill |
| 3/25/04 | Montgomery Adv. | Bingo is a lousy deal for state |
| 3/21/04 | The Capital Insider | Dial's bingo gamble ends up a winner |
| 3/22/04 | Montgomery Adv. | Gambling here, why not tax it? |
| 3/20/04 | Mont. Adv. | Bingo bill faces battle |
| 3/19/04 | Mont. Adv. | Senate approves bingo for books |
| 3/19/04 | Mob. Register | Senate debates bingo into night |
| 3/19/04 | B'ham News | Senate debates proposal late into night |
| 3/18/04 | Mob. Register | Bingo for books best of a bad set of choices |
| 3/18/04 | B'ham News | One for the books: Don't let legislators sell bingo as good deal for kids |
| 4/3/03 | Mont. Adv. | Let tracks offer video gambling |

| | | |
|---|---|---|
| 3/27/03 | Tusk. News | Fairness dictates cash payouts at tracks |
| 3/20/03 | Mont. Indep. | It's difficult to argue with McGregor's cash payout proposal: It's a matter of fairness for greyhound tracks and they do pay taxes |
| 12/01/04 | Christian Coalition | AG confirms illegal gambling operations |
| 10/30/03 | Tusk. News | Yes bingo vote best for county |
| 10/23/03 | Tusk. News | Letter to editor Ford addresses bingo bill questions |
| 1/8/04 | Tusk. News | Charity bingo at VL paying off |
| 12/19/03 | Mont. Adv. | VL may expand operation |
| 11/07/03 | B'ham News | Bingo amendment surprises lawmaker |
| 11/06/03 | Mont. Adv. | VL plan for bingo |
| 12/11/03 | Tusk. News | Bingo in Macon county likely before Christmas |
| 1/8/04 | Tusk. News | Charity bingo at VL paying off |
| 12/19/03 | Mont. Adv. | VL may expand operation |
| 11/7/03 | B'ham News | Bingo Amendment surprises lawmaker |
| 11/6/03 | Mont. Adv. | VL plans for Bingo |
| 11/6/03 | Tusk. News | Voters overwhelmingly ok bingo for charity: establishing rules next |
| 10/2/03 | Tusk News | Vote on bingo bill goes to Macon Countians on November 4th |
| 11/27/03 | Mont. Indep. | All media ought to strive for accuracy |
| 10/23/03 | Mont. Indep. | The bootleggers are to blame |
| 11/9/03 | Mont. Adv. | Pro gambling faction might have just hit jackpot |
| 3/19/03 | Mob. Register | Time to allow video gaming at racetracks |
| 3/17/03 | Huntsville Times | Gambling and revenue |
| 3/14/03 | Decatur Daily | Time to be realistic about state gambling |
| 11/12/03 | B'ham News | Ford's Theater, Lawmaker fools colleagues opens state to casinos |
| 11/5/03 | Tuscaloosa News | Bingo okayed in Greene |
| 10/23/03 | Mont. Indep. | The bootleggers are to blame-ed op. |
| 11/09/03 | Mont. Adv. | Pro-gambling faction might have just hit jackpot |
| 8/23/04 | Mont. Adv. | Game's History Brings Prosperity |
| 7/31/04 | Mont. Adv. | Tullis: Donation fogs casino discussions |
| 8/17/04 | Mont. Adv. | King pledges to put crimp on gambling |
| 7/3/04 | B'ham News | Attorney General makes surprise visits to two Alabama gambling halls |
| 8/14/04 | B'ham Post Herald | Alabama's AG should get facts straight |
| 1/25/05 | Mont. Adv. | Dog tracks comply with gaming law |
| 1/25/05 | B'ham News | Bingo machines meet law AG says |
| 1/23/05 | Dothan Eagle | Bingo machines meet law AG says |
| 1/23/05 | Dothan Eagle | Dog tracks now in compliance |
| 1/23/05 | Mobile Register | King: Dog track bingo in compliance |
| 1/24/05 | Huntsville Times | Dog tracks now comply with state gambling laws AG says |

| 1/6/05 | Tusk. News | Victoryland McGregor good for Macon County |
|---|---|---|
| 10/30/03 | Tuskegee News | Amendment for Bingo vote Tuesday |
| 10/23/03 | Tuskegee News | Ford Addresses Bingo bill questions |
| 3/27/04 | B'ham News | Gambling Foes Need Alternatives |
| 3/26/04 | Valley Times News | The bingo threat |
| 11/6/03 | Tuskegee News | Voters overwhelmingly ok bingo for charity: establishing rules next |
| 11/27/03 | Mont. Indep. | All media ought to strive for accuracy |
| 10/2/03 | Tuskegee News | Vote on bingo bill goes to Macon Countians on November 4th |
| 10/19/03 | SunHerald.com South Mississippi | Will Alabama Get Gambling? |
| 11/6/03 | Mont. Adv. | Victoryland plans for bingo |
| 12/11/03 | Tuskegee News | Bingo in Macon County likely before Christmas |
| 11/7/03 | Mobile Register | Unlimited bingo takes some by surprise |
| 12/1/04 | Troy King news release | AG King announces findings of his gambling review |
| 12/1/04 | Christian Coalition of Alabama | Attorney General confirms illegal gambling operations |
| 1/29/05 | B'ham News | Playing by the Rules |
| 1/27/05 | Mont. Indep. | AG King OKs Dog Track Machines |