IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: 3:06-cv-01113-WKW-csc ) |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., | ) JURY TRIAL DEMANDED ) ) ) |
| Defendants. | ) ) ) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND THINGS**

In support of their Motion to Compel (DE 106) and in reply to the arguments of Defendant Macon County Greyhound Park, Inc., (hereinafter "VictoryLand") in its response (DE 118) to this Court's Order to show cause why Plaintiffs' Motion to Compel should not be granted (DE 110), the Plaintiff Charities state as follows:

**INTRODUCTION**

VictoryLand's response to the Charities' Motion to Compel is disingenuous, duplicitous, and makes a mockery of this Court's guidelines and instructions.

First, VictoryLand argues that this Court should decline to rule on the Motion to Compel until it rules on the Motion to Dismiss. That argument not only reveals VictoryLand's true purpose—to delay the production of damning evidence of a conspiracy—it also flies in the face of this Court's directive to move forward with discovery. It also flies in the face of VictoryLand's own argument—made in its Motion to Compel—that it has "grave concerns" about its ability to prepare for the September 2008 trial in this matter. In fact, this argument is an

attempt by VictoryLand to grant itself a stay of discovery—a stay that it has neither requested nor received from this Court.

Second, VictoryLand continues to suggest that it had an attorney-client relationship with Fred Gray regarding electronic bingo despite Fred Gray's sworn statement that he had no such relationship with VictoryLand. In support of its suggestion, VictoryLand offers only (1) a woefully inadequate privilege log that does not even attempt to satisfy this Court's Guidelines, (2) a privilege brief that fails to address a single factual issue, and (3) an affidavit by a lawyer who does not profess to have any direct knowledge of the existence (or non-existence) of a privilege between VictoryLand and Fred Gray with regard to electronic bingo. Despite its clear failure to support any claim of privilege, VictoryLand nevertheless continues to withhold numerous documents that will, in all likelihood, support the chief allegations of the Complaint.

Third, VictoryLand continues to assert, on one hand, that the allegations of the Complaint are the result of "suspicion and speculation" while, on the other hand, VictoryLand continues to withhold numerous relevant documents that would substantiate those allegations. To justify its unjustifiable position, VictoryLand pretends that the Motion to Dismiss has been granted—allowing it to ignore the claims under the Racketeer Influenced and Corrupt Organizations Act. In fact, all of the Requests were and remain likely to lead to the discovery of admissible evidence, and the Charities are entitled to an order compelling the production of the documents requested.

**ARGUMENT**

**I.   Discovery in this matter has not been stayed.**

VictoryLand has not requested a stay of discovery. This Court has not entered a stay of discovery. Indeed, this Court has instructed the parties to move forward with discovery. (Ex. A.

at 64:24 to 65:2.) Apparently unhappy with this Court's instructions, VictoryLand has arrogated to itself the power to stay discovery—by interposing numerous delays in the production of documents and improperly withholding numerous documents without sufficient justification. That absence of justification is clear from the arguments made in its response to the Motion to Compel, the substance of which is discussed below. VictoryLand is nevertheless attempting to buy time—hoping that this Court will dismiss the Charities' allegations before the truth of those allegations is made clear. This Court should not countenance VictoryLand's transparently cynical efforts.

## II. There is no privilege between Fred Gray and VictoryLand with regard to electronic bingo, and VictoryLand has established none.

As pointed out in the Charities' Motion to Compel, Fred Gray has sworn—unequivocally—that he and his firm did not advise VictoryLand with respect to electronic bingo. Nevertheless, VictoryLand appears to maintain that its communications with Fred Gray regarding electronic bingo are somehow protected by the attorney-client privilege. VictoryLand, of course, has the burden of establishing the existence of such a privilege. Yet, in the face of Fred Gray's sworn affidavit, VictoryLand has offered no factual basis for its assertion that a privilege exists.

Furthermore, while VictoryLand asserts that it "is aware of its obligations under the Guidelines to Civil Discovery Practice in the M.D. Ala. at I.I.2 and will comply as required" (DE 118 at 9), VictoryLand has not even come close to meeting those obligations. Under Guideline I.I.2, VictoryLand "has the obligation to establish, by affidavit of a competent witness or other evidence, all facts essential to the establishment of the privilege." The supporting factual detail required for documents include:

    (i)    Description of what the document is.

    (ii)     Its date.

    (iii)    Name, address and employer of the author of the document, or the person taking the statement or the like.

    (iv)    Subject of the document.

    (v)     Persons to whom the document is addressed.

    (vi)    Persons indicated thereon as having received copies.

    (vii)   Name, address, job title and employer of any person known or believed to have received or seen the document or any copy or summary thereof.

    (viii)  Purpose for which the document was created and transmitted.

    (ix)    Degree of confidentiality with which it was treated at the time of its creation and transmission, and since.

    (x)     Any other facts relevant to the elements of the particular privilege asserted.

Guideline I.I.3.a. Of these ten details, the privilege log submitted by VictoryLand satisfies—at the very most—two. Victoryland has not met its burden of establishing all facts essential to the establishment of the privilege, and its privilege objections should be rejected on that basis alone.

Furthermore, under Guideline I.I.2, VictoryLand is required to "file a brief of law specifically defining the privilege relied upon, and citing legal authorities for the proposition that it applies in the particular case." Guideline I.I.2. VictoryLand's brief outlines the general principles of the attorney-client privilege under Alabama law, but it does not cite legal authorities for the proposition that the privilege applies in this particular case. Indeed, VictoryLand's application of the privilege principles to the facts of this case consists solely of the bald assertion contained in this paragraph:

> Based on the facts and circumstances in the present case, the documents listed on the Defendant's Privilege Log are protected by the attorney-client privilege and therefore should not be produced to the Plaintiffs.

(DE 118 Ex. C at 3.) This bald assertion—coupled with the absence of detail in VictoryLand's privilege log—gives this Court no basis for finding the attorney-client privilege applicable in this case.

### III. All of VictoryLand's remaining objections should be overruled.

The Charities' replies to VictoryLand's remaining objections are set forth below with respect to each individual Request:

PLAINTIFF CHARITIES' REQUEST # 1: VictoryLand maintains only its privilege objection, which, as discussed above, should be overruled.

PLAINTIFF CHARITIES' REQUEST # 2: VictoryLand asserts that it has produced "all non-objectionable pre-litigation documents it has that are responsive to this request, other than publicly available documents." (DE 118 at 10.) Because VictoryLand makes no arguments in support of whatever objections it continues to maintain, this Court should overrule those objections.

PLAINTIFF CHARITIES' REQUEST # 3: As discussed above, this Court should compel VictoryLand to produce any documents that it is withholding as "privileged."

PLAINTIFF CHARITIES' REQUEST # 4: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 5: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 11: VictoryLand maintains only its privilege objection, which, as discussed above, should be overruled.

PLAINTIFF CHARITIES' REQUEST # 12: The Charities incorporate by reference their arguments in support of Request # 11.

PLAINTIFF CHARITIES' REQUEST # 13: "The information sought [in discovery] need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The phrase "reasonably calculated" means "'any possibility that the information sought may be relevant to the subject matter of the action.'" *Mallinckrodt Chemical Works v. Goldman, Sachs*, 58 F.R.D. 348, 353 (S.D.N.Y. 1973) (quoting C. Wright, Law of Federal Courts § 81, at 359 n. 47 (2nd ed. 1970)). In the Third Amended Complaint, the Charities alleged that, in exchange for, among other things, substantial dividend payments to Fred Gray, Fred Gray Jr. drafted rules and regulations for the conduct of electronic bingo in Macon County that granted a de facto monopoly to

VictoryLand. Clearly the documents requested—which relate to Fred Gray's investment in VictoryLand and his entitlement to dividends—are both relevant and admissible evidence in this case.

VictoryLand makes two arguments in opposition to providing this relevant information. First, Victoryland argues that the information is not necessary because Fred Gray has submitted an affidavit confirming that he is an investor in VictoryLand. However, as seen with regard to the privilege argument, VictoryLand and Fred Gray do not agree regarding the nature of their relationship. The documents are therefore the best evidence of the nature and extent of that relationship. Furthermore, the documents will show the value of Fred Gray's interest and how that value was affected by the creation of VictoryLand's monopoly. Such facts are clearly relevant to establishing the motives and biases of the defendants and their co-conspirators.

Second, VictoryLand argues that the Charities are not entitled to the information because they have not established whether Fred Gray Jr. has an interest in Fred Gray's estate. The key question, however, is not whether Fred Gray Jr. had an interest in Fred Gray's estate but whether substantial dividend payments to Fred Gray would be valuable to Fred Gray Jr. That value may be established by Fred Gray Jr's interest in Fred Gray's estate—even if that interest is merely potential. It may also be established by showing that Fred Gray's financial security is important to Fred Gray Jr. See, e.g., *United States v. Frega*, 179 F.3d 793 (9th Cir. 1999) (affirming RICO conviction arising, in part, out of bribes paid to family members). In any event, the Charities merely need to show "any possibility that the information sought may be relevant to the subject matter of the action." *Mallinckrodt Chemical*, 58 F.R.D. at 353. The information sought is clearly *relevant*, even though the Charities may need to establish additional facts before it is *admissible*.

PLAINTIFF CHARITIES' REQUEST # 14: The Charities incorporate by reference their arguments in support of Request # 13.

PLAINTIFF CHARITIES' REQUEST # 15: Regarding the relevance of payments to Fred Gray, the Charities hereby incorporate their arguments in support of Request # 13.

Regarding the relevance of payments to the Gray Law Firm, VictoryLand does not argue that the payments are irrelevant. Instead, VictoryLand argues that "the Gray Law Firm has been paid fees, as it should have been, for the legal services it provided that are wholly unrelated to this case" and that "[t]he Plaintiffs have simply failed to provide any valid reason for why they are entitled to" information about them. (DE 118 at 19.) VictoryLand is wrong on both counts. First, to gain entitlement to the requested information, the Plaintiffs merely need to establish its relevance. Second, as discussed above, VictoryLand and Fred Gray continue to disagree about that nature and extent of their attorney-client relationship, and the fees paid will provide relevant evidence of that relationship. Third, as alleged in the Complaint, the payment of fees to the Gray Law Firm were valuable to Fred Gray Jr.—whether or not those fees were related to the provision of actual legal services. The information requested is relevant to whether fees were indeed paid.

Again, the requested information is both relevant and admissible—and certainly likely to lead to the discovery of admissible evidence—even though the requested information may not, by itself, establish the Charities' entitlement to relief.

PLAINTIFF CHARITIES' REQUEST # 16: The Charities' request for information concerning the relationship between VictoryLand and its charities is relevant to this case because it provides circumstantial evidence of at least one possible reason motivating the creation of VictoryLand's monopoly: Competition would harm VictoryLand's continued ability to get away with paying a paltry sum to its charities.

Despite its relevance, VictoryLand argues that the Charities are not entitled to this information for two reasons. First, it argues that the Charities have no standing to claim that the contracts between VictoryLand and its charities tilt in favor of VictoryLand. This argument, for which VictoryLand provides no citation, is puzzling. To introduce evidence of the relationship between VictoryLand and the Charities, the Charities do not need standing to pursue claims on behalf of Victoryland's charities. Rather, the Charities need only to show that the requested evidence is relevant, admissible, or likely to lead to the discovery of admissible evidence.

Second, VictoryLand argues that the contracts are irrelevant under the rational basis test. The rational basis test, however, applies only to the Charities' claims under the Equal Protection Clause. It does not apply to the RICO claim. The evidence of intent is relevant to the RICO claim—even if VictoryLand could articulate some conceivable rational basis for the rules and regulations. *Cf. Frega*, 179 F.3d at 807 ("[T]he court had no obligation to instruct the jury that it could consider the fact that a particular judicial act was legally supportable and correct aside from the purported bribe; again, the crucial issue is Frega's intent in making the payment, not what the judge who accepts the payment believes or does.").

Because this information is relevant, it should be produced. Any concerns about its confidentiality are adequately addressed by the protective order that is already in place.

PLAINTIFF CHARITIES' REQUEST # 17: The Charities incorporate by reference their arguments in support of Request # 16.

PLAINTIFF CHARITIES' REQUEST # 19: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 20: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 23: The Charities incorporate by reference their arguments in support of Requests ## 19 and 20.

PLAINTIFF CHARITIES' REQUEST # 25: The Complaint alleges a conspiracy between Sheriff Warren and VictoryLand, among others, to promulgate rules and regulations that gave a monopoly on electronic bingo in Macon County to VictoryLand. If there are documents indicating that VictoryLand bestowed benefits on Sheriff Warren (or his family members—Pebblin Warren and J.B. Walker), those documents are clearly relevant to this case. They are relevant because they will show Sheriff Warren's motive for entering into the alleged conspiracy.

While evidence of Sheriff Warren's motive may not be relevant to the Charities' equal protection claim—which is subject to the rational basis test—the Charities are not limited to evidence that is relevant to all of their claims. Evidence of the exchange of benefits is relevant to

the Charities' claims for a § 1983 conspiracy and for a conspiracy under RICO, and, under the liberal federal discovery rules, that is more than enough.

PLAINTIFF CHARITIES' REQUEST # 26:  The Charities incorporate by reference their arguments in support of Requests ## 13 and 15.

PLAINTIFF CHARITIES' REQUEST # 27:  The Charities incorporate by reference their arguments in support of Request # 16.

PLAINTIFF CHARITIES' REQUEST # 28:  The requested information could possibly lead to evidence that, under the rules and regulations promulgated by Sheriff Warren, VictoryLand is given free rein to engage in sharp business practices.  Such evidence would be admissible to show VictoryLand's motive for participating in the allege Enterprise because, in the absence of such an Enterprise, VictoryLand's practices might be more closely regulated. Such evidence would not be excluded under Rule 404 because it would not be admitted to prove "action in conformity therewith on a particular occasion."  FRE 404(a).  Rather, it would be offered to show VictoryLand's general business practices.

PLAINTIFF CHARITIES' REQUEST # 29:  The Charities incorporate by reference their arguments in support of Request # 25.

PLAINTIFF CHARITIES' REQUEST # 30: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 31: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 32: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 33: VictoryLand asserts that it has produced all documents responsive to this Request. Accordingly, the Charities' Motion is moot as to this Request.

PLAINTIFF CHARITIES' REQUEST # 40: VictoryLand argues that evidence of prior inconsistent statements is irrelevant to this case. However, evidence of prior inconsistent statements is always admissible to impeach a witness. Accordingly, VictoryLand's objections should be overruled.

DATED: October 30, 2007.

Respectfully submitted,

s/ Robert K. Spotswood
s/ Michael T. Sansbury
Robert K. Spotswood (SPO 001)
Michael T. Sansbury (SAN 054)
SPOTSWOOD SANSOM & SANSBURY LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama  35213
Telephone: (205) 986-3620
Fax: (205) 986-3639
E-mail:       rks@spotswoodllc.com
              msansbury@spotswoodllc.com

*Attorneys for the Plaintiff Charities*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred David Gray, Esq.
Fred David Gray Jr., Esq.
Gray, Langford, Sapp, McGowan, Gray,
    Gray & Nathanson PC
P.O. Box 830239
Tuskegee, AL  36083-0239
E-mail: fgray@glsmgn.com
jbibb@glsmgn.com
fgrayjr@glsmgn.com
thalia@glsmgn.com

James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
Beers, Anderson, Jackson, Patty, Van Heest &
    Fawal PC
P.O. Box 1988
Montgomery, AL  36102
E-mail: janderson@beersanderson.com
wshaw@beersanderson.com

John Mark White, Esq.
Augusta S. Dowd, Esq.
Rebecca DePalma, Esq.
White, Arnold, Andrews & Dowd
2025 Third Avenue, North
Suite 600
Birmingham, AL  35203
E-mail: mwhite@waadlaw.com
adowd@waadlaw.com
rdepalma@waadlaw.com

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Khristi Doss Driver, Esq.
Haskell, Slaughter, Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
E-mail: wms@hsy.com
pcd@hsy.com
pt@hsy.com
kdd@hsy.com

John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
Sasser, Bolton & Sefton PC
PO Box 242127
Montgomery, AL 36124-2127
E-mail: jbolton@sasserlawfirm.com
cspencer@sasserlawfirm.com

Stephen D. Heninger
W. Lewis Garrison Jr.
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
E-mail: steve@hgdlawfirm.com
lewis@hgdlawfirm.com

George L. Beck, Jr.
Capell Howard PC
PO Box 2069
Montgomery, AL 36102-2069
E-mail: glb@chlaw.com

                      s/ Michael T. Sansbury
                      OF COUNSEL

# ORAL ARGUMENTS

# September 5, 2007

# Pages 1 through 64

# PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
566 South Perry Street
Post Office Box 62
Montgomery, AL  36104
Phone: (334) 263-4455
Fax: (334) 263-9167
E-mail: haislipragan@charter.net

Oral Arguments                                                                          September 5, 2007

Page 62

1  sides. No responses. No surreplies. Just if you have
2  something you want to say that came up today. I heard a couple
3  of new things today, some new facts or some facts at least I was
4  not aware of. I'll be happy to entertain anything you want to
5  say that's new, but please don't plow the same ground again.
6  We've been through the definition of servant, and we've been
7  through the FCC case and some other things, so make it something
8  new.
9       Is there anything else apart from that?
10      MR. TEPLEY: Your Honor, I don't need to make any
11 argument, but I just wanted the Court to know that we did file
12 per your request an opposition to the motion for leave to amend
13 the complaint.
14      THE COURT: Yes.
15      MR. TEPLEY: And the grounds are set forth I think
16 clearly in that opposition, but I just wanted to say we still
17 oppose that.
18      THE COURT: I believe it was you I asked the questions
19 about whether they may need -- only two substantial changes in
20 the third amended complaint, and that was straightening out the
21 Grays and paragraph 136 and 137 --
22      MR. TEPLEY: On the discovery.
23      THE COURT: -- on the discovery, right.
24      MR. BOLTON: Your Honor, I've got just one quick point
25 to make, and we'll be happy to submit everything we need to in

Page 63

1  seven days.
2       I don't know whether -- I know Steve is an Auburn fan
3  and probably went down the road last weekend. I know there's
4  some Auburn fans on this side over here. The only point I want
5  to make is --
6       THE COURT: Are you going to tell a joke?
7       MR. BOLTON: No, sir, it's not a joke. This is not a
8  joke. I guess the part of their brief that I thought was a joke
9  is they keep arguing over and over and over that this monopoly
10 power has resulted in no economic development at the track and
11 has discouraged Mr. McGregor from making any economic
12 development. And all I want to do is to point out for these
13 Auburn fans that if they go by Shorter, I wish they would just
14 look over to the right, and they can see the $100 million
15 investment that's going into renovation at the present time.
16 And we would ask if we could offer these photographs of this
17 economic development that, apparently, the Auburn fans have not
18 seen.
19      MR. GARRISON: Your Honor, we object to being called an
20 Auburn fan. Otherwise, I have no objection.
21      MR. BOLTON: If he doesn't resemble that remark, I
22 won't accuse him.
23      THE COURT: I think the house is split sufficiently.
24      All right. I'll receive those.
25      MR. GARRISON: Judge, we do have just one question.

Page 64

1  Are we free to continue to engage in discovery, working on
2  getting documents and depositions and that sort of thing?
3       MR. WHITE: Let me say, Judge, you're fixing to have a
4  motion for a protective order.
5       THE COURT: You brought that up, and I --
6       MR. WHITE: It will be filed within the week.
7       THE COURT: But y'all talk first. Have y'all talked?
8       MR. WHITE: We've talked.
9       THE COURT: Have you worked it out?
10      MR. WHITE: No, sir. They don't want any protective
11 order.
12      MR. GARRISON: Well, wait a minute. We don't know that
13 there should be one. That's probably --
14      MR. WHITE: Well, we got a message today from your
15 co-counsel.
16      THE COURT: Well, y'all talk again. Talk a little bit
17 more and try to get it worked out.
18      MR. GARRISON: Yes, sir.
19      MR. SANSBURY: Your Honor, do you want a reply from us
20 on the leave to amend, or have you heard enough about that?
21      THE COURT: I've heard enough about that.
22      All right. That's all I know right now. I will give
23 you the seven days to tell me something new if you know anything
24 new, and then I'll get your rulings as quickly as I can. And
25 yes, as far as I'm concerned, at this point I wouldn't know why

Page 65

1  there wouldn't be discovery going on until I can issue some kind
2  of a ruling.
3       (Proceedings concluded at 3:30 p.m.)