IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HOPE FOR FAMILIES & COMMUNITY    )
SERVICE, INC., *et al.,*          )
                                 )
        Plaintiffs,              )
    v.                           )    Case No. 3:06-cv-1113-WKW
                                 )
DAVID WARREN, *et al.*,           )
                                 )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

This case is before the court on the plaintiffs' Motion for Leave to File Fourth

Amended Complaint (Doc. # 91), which is due to be granted, and Motions to Dismiss

Plaintiffs' Third Amended Complaint filed by Defendants Macon County Greyhound Park,

Inc., and Milton McGregor (Doc. # 74), and by Defendant David Warren (Doc. # 82), which

are due to be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court must accept the plaintiffs' factual allegations in the pleadings as true.

Amendment 744 to the Alabama Constitution made it legal for nonprofit organizations to

operate bingo gaming in Macon County, Alabama.   Ala. Const. Amend. No. 744.

Amendment 744 also required the sheriff of Macon County to promulgate and enforce "rules

and regulations for the licensing and operation of bingo games within the county."  *Id.*

The plaintiffs are seventeen Macon County nonprofit organizations (the "Charities")

and Lucky Palace, LLC ("Lucky Palace"), the entity with which the Charities contracted to

operate their proposed bingo facility.  (Fourth Am. Compl. ¶¶ 1, 6-23, 58.)  Defendant David Warren ("Sheriff Warren") is the Sheriff of Macon County, Alabama, and is sued in his official capacity.  (*Id*. ¶¶ 1, 24.)  Defendant Milton McGregor ("McGregor") is the President and majority shareholder of Defendant Macon County Greyhound Park, Inc., which does business as VictoryLand ("VictoryLand").  (*Id*. ¶¶ 25-26.)  It is alleged that "Defendants VictoryLand and McGregor, through unlawful influence [of a public servant], caused Defendant Warren to arbitrarily promulgate unreasonable rules and regulations for the operation of bingo in Macon County that allowed only one entity–VictoryLand–to operate electronic bingo games."  (*Id*. ¶ 3.)  It is further alleged that Defendants have engaged in the improper influence of a public servant, Fred Gray, Jr., a private attorney who advised Sheriff Warren in the promulgation and amendment of the rules and regulations governing electronic bingo in Macon County.  (*Id*. ¶¶ 2, 28, 36-39, 44, 54, 61, 69-112.)

The plaintiffs commenced this action against Sheriff Warren on December 18, 2006, alleging that he denied the plaintiffs equal protection under the law in violation of the Fourteenth Amendment by effectively denying the plaintiffs the right to operate a Class B Bingo facility in Macon County as allowed by Amendment 744 to the Alabama Constitution. (Doc. # 1.)  The plaintiffs later filed an amended complaint (Doc. # 24), which added McGregor and VictoryLand as defendants and added the claim of conspiracy to deprive the plaintiffs of equal protection under 42 U.S.C. § 1985(3).  When McGregor and VictoryLand filed motions to dismiss (Docs. # 34 & # 36) the latter claim, the plaintiffs again amended

2

their complaint (Doc. # 51) to allege conspiracy under the proper statute.[1]  Shortly after the

amendment, the plaintiffs filed their Third Amended Complaint (Doc. # 67).  The Third

Amended Complaint added Lucky Palace as a plaintiff and added claims alleging violations

of substantive and conspiracy provisions of the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO"), against all defendants as well

as state law tortious interference claims against McGregor and VictoryLand.  The defendants

filed the instant motions to dismiss (Docs. # 74 & # 82), arguing, among other things, that

certain claims were barred by the statute of limitations.  The plaintiffs then moved (Doc.

# 91) for leave to file another amended complaint primarily in order to allege facts to support

the application of the federal discovery rule.  The court permitted briefing and held oral

argument on all of these motions.  These motions are now before the court.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the

legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint "requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007).  The complaint must

contain enough factual matter to suggest each required element; "the standard is one of

'plausible grounds to infer.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007)

---

[1]  The conspiracy claim is properly brought pursuant to § 1983.  The amendment mooted the defendants' motions to dismiss.  (*See* Doc. # 48.)

(quoting *Twombly*, 127 S. Ct. at 1965).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1964-65 (citations omitted); *see also Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (stating that the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff).

## III. DISCUSSION

*A.      Motion for Leave to File Fourth Amended Complaint*

In their Motion to Dismiss the Third Amended Complaint, the defendants argue that the statute of limitations bars certain of the plaintiffs' claims.  In response, the plaintiffs argue that the continuous tort or continuing violation doctrines apply.  After the defendants pointed out in their reply brief the weaknesses in the plaintiffs' argument, the plaintiffs then sought leave to amend the complaint to allege facts that would support the application of the discovery rule.[2]

"[D]ismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Omar v. Lindsey*, 334 F.3d 1246, 1251

---

[2]  The plaintiffs also sought to remedy spelling errors and to correct the allegations regarding the Gray Law Firm's representation of McGregor and VictoryLand.  (Pls.' Mot. Leave File Fourth Am. Compl. ¶ 9.)  To the extent the defendants complain about a "moving target," (Defs.' Resp. Mot. Leave File Fourth Am. Compl. 6), the court notes that such is the nature of litigation, and even at trial, amendments to conform the pleadings to the evidence should be allowed where no prejudice to the opposing party is proved.  *See* Fed. R. Civ. P. 15; *Harris v. Garner*, 216 F.3d 970, 996 (11th Cir. 2000).

(11th Cir. 2003)).  Because "[a] statute of limitations bar is 'an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint,'" *La Grasta*, 358 F.3d at 845 (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)), it could be argued that the statute of limitations defense (to which the invocation of the discovery rule or continuing violation doctrine is conceivable) can only be decided on summary judgment.[3]  Rather than putting the issue off until the summary judgment stage, the court finds that the better avenue for resolution of the issue is to allow the amendment of the complaint so that all of the plaintiffs' arguments are before the court.  Of course, if in their Fourth Amended Complaint the plaintiffs plead facts that show their claims are time-barred or otherwise without merit, they have pleaded those claims out of court.  *See Tregenza*, 12 F.3d at 718.  Moreover, the plaintiffs requested leave to amend prior to the deadline for such amendments set forth in the Amended Scheduling Order (Doc. # 77), and the court is ever mindful of Rule 15's directive that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  Therefore, the plaintiffs' Motion for Leave to File Fourth Amended Complaint (Doc. # 91) is due to be granted.

For the sake of efficiency, and because there is no prejudice to either party considering the extensive briefing allowed, the court will apply the defendants' motions to dismiss to the Fourth Amended Complaint.

---

[3]  The court must convert a Rule 12(b)(6) motion to dismiss for failure to state a claim into a Rule 56 motion for summary judgment where "matters outside the pleadings are presented to . . . the court."  Fed. R. Civ. P. 12(d).

**B.**   *Statute of Limitations*

The defendants argue that certain claims are barred by the applicable statute of limitations.  The court will address each argument in turn.

**1.**   **Plaintiffs' Tortious Interference Claims**

The defendants assert that the plaintiffs' tortious interference claims against McGregor and VictoryLand are barred by the statute of limitations.  There is no dispute that the statute of limitations for tortious interference is two years under Alabama law.  *See* Ala. Code § 6-2-38(l).

Whether the limitations period has run depends on when the cause of action accrued. The defendants argue that "[t]he date of the alleged interference, if at all, is the date that each set of County Bingo Regulations were enacted."  (Defs.' Br. Supp. Mot. Dismiss 39.)  The plaintiffs counter that the interference, *i.e*., the "promulgation, amendment, and maintenance" of the bingo rules, is ongoing.  The court finds that the defendants fail to show that it is apparent from the face of the complaint that dismissal of the tortious interference claims on statute of limitations grounds is appropriate.  The date of enactment of each version of the bingo regulations does not necessarily determine the date of accrual; the issue turns on the timing of the plaintiffs' injury:

> If the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date.  It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run.

*Ex parte Floyd*, 796 So. 2d 303, 308 (Ala. 2001).

6

"A legal injury occurs when the plaintiff can first maintain an action." *Id*. To establish a cause of action for tortious interference with existing or prospective contractual and business relations as pleaded in Count V and VI of the Fourth Amended Complaint, plaintiffs must prove that (1) a contract or business relationship exists; (2) the defendants had knowledge of the contract or business relationship; (3) the defendants intentionally interfered with the contract or business relationship;[4] (4) the defendants had no justification for the their interference; and (5) the plaintiffs were damaged as a result of the interference. *Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002).

The plaintiffs' tortious interference claims may very well be time-barred. However, because the defendants in their accrual argument neglected to identify and analyze the date of legal injury, the court cannot analyze the affirmative defense at this time and will undoubtedly be asked to revisit the issue at the summary judgment stage. The defendants' motion to dismiss with respect to the statute of limitations on the tortious interference claims will be denied.

## 2.   Section 1983 Claims

The defendants assert that certain § 1983 claims are barred by the statute of limitations. The parties agree that the statute of limitations for § 1983 claims is two years in Alabama. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) ("We accordingly hold that where state law provides multiple statutes of limitations for personal injury actions, courts

---

[4] In showing intentional interference, the plaintiffs must also produce "evidence of fraud, force, or coercion on the defendant's part." *Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 227 (Ala. 1996).

considering § 1983 claims should borrow the general or residual statute for personal injury actions."); *Lufkin v. McCallum*, 956 F.2d 1104, 1105 n.2 (11th Cir. 1992) ("Alabama's general statute of limitations for personal injury actions is two years." (citing Ala. Code § 6-2-38(*l*))).  As with their statute of limitations argument regarding the tortious interference claims, the defendants' argument here assumes the accrual date is the date of promulgation of each version of the bingo rules.  The plaintiffs respond to this argument by claiming that, under the doctrines of continuing tort and continuing violation, the claims have not yet accrued.  The plaintiffs also argue that, pursuant to the federal discovery rule, their § 1983 conspiracy claims did not accrue until they discovered the conspiracy and McGregor and VictoryLand's role therein.

"Federal law determines when the statute of limitations begins to run; generally, 'the statute of limitations does not begin to run until the facts that would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Porter v. Ray*, 461 F.3d 1315, 1323 (11th Cir. 2006) (quoting *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003)).  A § 1983 action does not accrue until the plaintiff "knows or has reason to know that he has been injured" and "is aware or should have been aware [of] who has inflicted the injury." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).  These rules require the court to examine the allegations with respect to each of the defendants to ascertain the date upon which the facts giving rise to the claims were or should have been apparent to the plaintiffs.  The court conducts this examination within the

confines of the defendants' argument for dismissal, *i.e.*, that Lucky Palace's § 1983 claims

against all defendants, the other plaintiffs' § 1983 claims that arise out of the original bingo

rules and the first amended rules, and any other § 1983 claims against VictoryLand and

McGregor, are time-barred.  Notwithstanding the defendants' tripartite argument, the court

thinks it more useful to initially analyze the argument with respect to each claim.

### a.  Section 1983 Conspiracy Claims

Lucky Palace and the Charities assert a § 1983 conspiracy claim against all of the

defendants in Count IV of the Fourth Amended Complaint.  The plaintiffs allege that they

first discovered the conspiracy on January 30, 2007:

> 136.  On January 30, 2007, counsel for the Plaintiff Charities received
> a copy of the deposition of Defendant Warren that was taken in *Macon County
> Investments v. Warren*, 3:06-CV-224-WKW (M.D. Ala.).  That deposition
> revealed, among other things, (1) that Defendant McGregor contacted
> Defendant Warren about a week after Amendment 744 was passed, (2) that the
> meeting was conducted in the presence of attorney Fred Gray Jr., (3) that Fred
> Gray Jr.'s father and law partner, Fred Gray, is an investor in Defendant
> VictoryLand, (4) that Fred Gray and the law firm of Gray, Langford, Sapp,
> McGowan, Gray, Gray & Nathanson, P.C., represent Defendants McGregor
> and VictoryLand, (5) that Defendant Warren retained Fred Gray Jr. to draft and
> update the rules and regulations for the conduct  of bingo in Macon County,
> and (6) that Defendant Warren relied primarily on Fred Gray Jr.'s judgment in
> drafting the rules and regulations.  Those facts indicated the existence of the
> conspiracy between Defendant Warren and Defendants McGregor and
> VictoryLand that is alleged herein.

> 137.  Prior to the receipt of that deposition, the Plaintiffs were not
> aware that Defendants McGregor and VictoryLand had conspired with
> Defendant Warren to deprive them of their equal protection rights.  The
> Plaintiffs could not have been aware of the conspiracy between the Defendants
> until, at the very earliest, August 15, 2006, when the deposition was
> conducted.

(Fourth Am. Compl. ¶¶ 136-137.)  Other than arguing generally that the plaintiffs should not be permitted to amend the complaint to add these facts and that the accrual date is the date of promulgation of each version of the bingo rules, the defendants do not specifically respond to the dates of the plaintiffs' alleged discovery of the facts giving rise to the § 1983 conspiracy claim against McGregor and VictoryLand.

Taking these allegations as true, the court must deny the defendants' motion to dismiss on these grounds.  An accrual date of either August 15, 2006, or January 30, 2007, ensures that the § 1983 conspiracy claim, which was brought on March 12, 2007 (Doc. # 24), is not barred by the statute of limitations.

### b.  Section 1983 Deprivation Claims

The Charities initiated this action against Sheriff Warren on December 18, 2006.  The court granted the plaintiffs' motion pursuant to Rule 15 and Rule 21 of the Federal Rules of Civil Procedure to join Lucky Palace as a plaintiff on June 21, 2007, and the Third Amended Complaint was filed on June 29, 2007.  The defendants argue that the accrual of the plaintiffs' § 1983 deprivation claims coincides with the dates on which the respective bingo rules were promulgated.  Therefore, according to the defendants, the plaintiffs' § 1983 deprivation claims, to the extent they concern regulations contained in the original rules (promulgated on December 5, 2003) and the first amended rules (promulgated on June 2 or June 10, 2004[5]), are time-barred.

_____

[5]  It is alleged that the first amended rules were "promulgated," without a notice and comment period, on June 2, 2004.  (Fourth Am. Compl. ¶ 44; Defs.' Br. Supp. Mot Dismiss 39.)  It is further

"[T]he accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 127 S. Ct. 1091, 1095, 1097 (2007).  Under common law tort principles, "accrual occurs when the plaintiff has a complete and present cause of action" and "when the wrongful act or omission results in damages."  *Id.* at 1097 (internal quotation marks and citations omitted).  The court must reject the defendants' argument that the § 1983 deprivation claims accrued on the dates of promulgation.  Taking the defendants' argument to its logical end, a person who applied for a bingo license *today*, and was subsequently rejected, is *already* time-barred from bringing an equal protection claim based on the second amended bingo rules (which were promulgated on January 6, 2005).  The limitations period cannot begin running on the date the regulations are published where a prospective bingo license applicant would not yet have suffered an injury.  Had a prospective bingo applicant attempted to bring an action within the defendants' suggested time frame (*i.e.*, within two years of promulgation) without even having submitted an application, such person would face an impenetrable justiciability defense.[6]  The court thus rejects the defendants' argument.

---

alleged that the first amended rules were not "made public" until June 10, 2004.  (Fourth Am. Compl. ¶ 46.)  Although the discrepancy is not material to the analysis of the statute of limitations defense, the court is compelled to define "promulgate" for the parties.  Amendment 744 does not include a definition of the term "promulgate;" thus, the term should be accorded its ordinary meaning. *See generally Horsehead Res. Dev. Co., Inc. v. EPA*, 130 F.3d 1090, 1092-93 (D.C. Cir. 1997). "Promulgate" means "to declare or announce publicly; to proclaim,"  Black's Law Dictionary 1251 (8th ed. 2004), and "to make known . . . by open declaration," "to make known or public the terms of (a proposed law)," and "to announce officially."  Webster's Third New Int'l Dictionary 1816 (2002).  Therefore, the court concludes that the first amended rules were promulgated on June 10, 2004 – the date the rules were made public.

[6]  Having no injury in fact, such a plaintiff would not have standing, let alone an issue ripe for adjudication.

Interestingly, the defendants do not argue that the cause of action accrued on the date the plaintiffs' application for a bingo license was denied.  As this argument is not before the court – and the court is not duty-bound to make arguments for the parties – the court need not determine the date of accrual at this time.  Furthermore, as the motion to dismiss the § 1983 claims on statute of limitations grounds is due to be denied, the court need not decide the applicability of the continuing tort or continuing violation doctrines or whether Lucky Palace's claims relate back to the date of the plaintiffs' original complaint.

**C.     RICO Claims**

RICO violations are alleged against all of the defendants in Counts I and II of the Fourth Amended Complaint.  The defendants assert that the plaintiffs' two claims for RICO violations fail as a matter of law.

It is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  To establish such a civil RICO violation, the plaintiffs must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Williams v. Mohawk Indus., Inc*., 465 F.3d 1277, 1282 (11th Cir. 2006) (internal quotation marks and citation omitted), as well as an injury to their business or property by reason of the substantive RICO violation.  *Id*. at 1282-83 (citing 18 U.S.C. § 1964(c)).

1.     **Pattern of Racketeering Activity**

A pattern of racketeering activity requires at least two acts of racketeering.[7] *Williams*,

465 F.3d at 1283; 18 U.S.C. § 1961(5).  Racketeering activity is broadly defined and includes

"any act or threat involving . . . bribery . . . which is chargeable under State law and

punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).   The

plaintiffs allege that "[t]he racketeering activity in this case includes an ongoing pattern of

violations of Alabama's bribery statutes."  (Fourth Am. Compl. ¶ 67.)  In Alabama, a person

commits felony bribery if:

> (1) He offers, confers or agrees to confer any thing of value upon a public
> servant with the intent that the public servant's vote, opinion, judgment,
> exercise of discretion or other action in his official capacity will thereby be
> corruptly influenced; or
>
> (2) While a public servant, he solicits, accepts or agrees to accept any
> pecuniary benefit upon an agreement or understanding that his vote, opinion,
> judgment, exercise of discretion or other action as a public servant will thereby
> be corruptly influenced.

Ala. Code § 13A-10-61.  It is alleged that Defendants McGregor and VictoryLand have

violated subsection (a)(1) by conferring things of value on Fred Gray, Fred Gray, Jr., and the

Gray Law Firm, with the intent that Fred Gray, Jr.'s "actions in advising and consulting with

Defendant Warren in the promulgation of, and subsequent amendments to, the rules and

regulations for the operation of bingo in Macon County would be corruptly influenced."

---

[7]  "An act of racketeering is commonly referred to as a predicate act."  *Williams*, 465 F.3d at
1283 (internal quotation marks and citation omitted).

(Fourth Am. Compl. ¶ 71.)   It is further alleged that Fred Gray, Jr., has violated subsection (a)(2).  (*Id*. at ¶ 72.)

### a.  Public Servant

The parties disagree as to the meaning of public servant under Alabama statutory law. The defendants argue that Fred Gray, Jr., is not a public servant and, thus, bribery as an act of racketeering cannot be proved. The plaintiffs counter that the alleged facts establish Fred Gray, Jr., is a public servant under Alabama bribery law "because he participated as an adviser and consultant in the performance of a governmental function." (Pls.' Resp. Br. to Mot. Dismiss 2.)  The court finds the plaintiffs' argument persuasive.

"Public servant" for the purposes of Alabama bribery law is defined to include "persons who presently occupy the position of a public servant, as defined in Section 13A-10-1(7), or have been elected, appointed or designated to become a public servant although not yet occupying that position." Ala Code. § 13A-10-60(b)(3). Section 13A-10-1(7) defines public servant as "[a]ny officer or employee of government, including legislators and judges and any person or agency participating as an adviser, consultant, or otherwise in performing a governmental function."  *Id*. § 13A-10-1(7).

Relying on case law from other jurisdictions, the defendants argue the meaning of public servant.  The defendants first assert that, in defining public servant, the Alabama legislature intended to include "those individuals who, through a contractual delegation of responsibility, are empowered to exercise public authority." (Defs.' Br. Supp. Mot. Dismiss 2

14

(citing *New Jersey v. Perez*, 883 A.2d 367, 369 (N.J. 2005)).)  They further assert that one is a public servant when he "participates in performing an activity which he is legally authorized to undertake on behalf of the government."  (*Id*. at 2-3 (citing *Stanton v. Wyoming*, 130 P.3d 486, 493 (Wyo. 2006)).)

The public servant statutes have previously been held to be "clear and unambiguous." *Vaughn v. Alabama*, 880 So. 2d 1178, 1192 (Ala. Crim. App. 2003).[8]  *Vaughn* involved the conviction of an architect hired by the State of Alabama to conduct a comparative site analysis of three properties the State was considering for purchase.  The architect, Vaughn, ultimately recommended a site in which he owned an interest, and the State followed his recommendation.  Not only was Vaughn paid for his consulting services, but he also made a profit on the sale of his interest in the property, an interest that was not disclosed to the State.  He was convicted of violating § 13A-10-62, which makes it a misdemeanor for a "public servant" to "fail[ ] to disclose a conflict of interest if he exercises any substantial discretionary function in connection with a government contract, purchase, payment or other pecuniary transaction."  Ala. Code § 13A-10-62.  Noting that one of the elements of the crime is that the defendant be a public servant and defining that term in accordance with § 13A-10-62, the court found that "[t]he evidence was undisputed that Vaughn was hired as a consultant . . . thus, he clearly fell within the definition of a 'public servant.'"  *Vaughn*, 880

---

[8]  The court adopts the spelling of "Vaughn" used by the Alabama Court of Criminal Appeals, unless citing to the district court opinion on his petition for habeas relief, in which the petitioner's name is spelled "Vaughan."  *See Vaughan v. Marshall*, No. 03-1111, 2006 WL 1476043 (M.D. Ala. May 25, 2006).

So. 2d at 1200.  Indeed, it was so clear that Vaughn did not dispute the label.  *Id*. at 1200 n.14.[9]

The defendants argue that reliance on *Vaughn* is misplaced in that "*Vaughn* is not dispositive of the public servant issue in this case."  (Defs.' Br. Supp. Mot. Dismiss 4.)  However, the defendants agree that *Vaughn* "says that the statute is not ambiguous."  (*Id*.)  Where a statute is unambiguous, "no judicial construction is necessary."  *Vaughn*, 880 So. 2d at 1192; *see also IMED Corp. v. Sys. Eng'g Assocs. Corp*., 602 So. 2d 344, 346 (Ala. 1992) ("If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.").

The problem with the defendants' argument is that it reads much more into the definition of public servant than the plain language of the statute allows.  Neither § 13A-10-60(b)(3) nor § 13A-10-1(7) require that a "contractual delegation of authority" occur before one can be deemed a public servant.  Furthermore, § 13A-10-1(7) clearly encompasses in the definition of public servant persons who advise or consult in another's performance of a governmental function.  *Vaughn* supports that conclusion.  *Vaughn*, 880 So. 2d at 1092.

Therefore, interpreting the statutory language to mean exactly what it says, *IMED Corp*., 602 So. 2d at 346, the court concludes that the factual allegations in the Fourth Amended Complaint, taken as true, are sufficient to state a RICO claim on the theory that Fred Gray, Jr., participated as an advisor in the performance of a governmental function and

---

[9]  This court also found that "the term public servant is plainly and unambiguously defined in . . . 13A-10-1(7)."  *Vaughan*, 2006 WL 1476043, at *5 (Fuller, C.J.).

is thus a public servant under the clear and unambiguous language of § 13A-10-1(7).  The defendants' motion to dismiss with respect to the "public servant" argument is due to be denied as a matter of law.

### b.  Predicate Acts Committed by Attorneys

The defendants also argue that "[t]he legitimate conduct of attorneys who were acting on behalf of their client cannot be considered [a] predicate act[ ] under RICO."  (Defs.' Br. Supp. Mot. Dismiss 5-6.)  Thus, the defendants conclude that the plaintiffs' RICO claims fail because Fred Gray, Jr.'s legal advice to Sheriff Warren cannot be racketeering activity.

This argument fails for several reasons.  First, this argument misunderstands the nature of the plaintiffs' allegations.  The plaintiffs allege that bribery – not legal advice – is the racketeering activity.  The Alabama legislature has not exempted attorneys from the bribery statute, and there is no indication they intended to do so.  Second, attorneys are not exempt from RICO liability.  *See Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997).  Third, from a review of the cases cited by the defendants to support this argument, it appears that the defendants have conflated certain elements of a RICO claim.  Racketeering activity is a separate element from the element of conducting or participating in the conduct of an enterprise. Most of the cited cases[10] involve dismissal of RICO claims against attorneys, not because attorneys cannot commit predicate acts, but because these particular attorneys did

---

[10]  The defendants also cite cases in which RICO claims against attorneys were dismissed because the actions of the attorneys simply did not constitute the alleged predicate act.  None of the cited cases stands for the proposition that the advice of an attorney can never be a predicate act for RICO liability.

not "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (articulating the operation and management test).[11] Unlike the cited cases involving "[t]he legitimate conduct of attorneys" who simply provided legal services, (Defs.' Br. Supp. Mot. Dismiss 5), the plaintiffs' allegations paint an entirely different picture of Fred Gray, Jr.'s role.  Here, the attorney is not an "outsider" but rather a prominent figure in the middle of the enterprise.  Finally, the court notes that Fred Gray, Jr., has not been named a defendant in this action;[12] the named defendants in the RICO counts are McGregor and VictoryLand.  Even if the alleged actions of Fred Gray, Jr., were somehow exempted on the basis of his status as an attorney, there would be no similar exemption for non-attorneys, McGregor and VictoryLand.  The motion to dismiss with respect to this argument will be denied.

## 2.    Sufficiency of RICO Allegations

The defendants next argue that plaintiffs have failed to allege sufficient facts to support each element of a RICO claim.  In this argument, the defendants do not challenge any specific element; rather, they argue that the plaintiffs' allegations fail to satisfy Rule 9 of the Federal Rules of Civil Procedure, contain vague and conclusory allegations, constitute a

---

[11]  The court notes that the operation and management test does not apply to RICO conspiracy claims.  *See United States v. Browne*, 505 F.3d 1229, 1276 n.33 (11th Cir. 2007).

[12]  The court does not opine on whether the plaintiffs' allegations state a claim for a RICO violation against Fred Gray, Jr.

shotgun complaint, and fail to comply with another district court's standing order for RICO cases.[13]  The court rejects this argument in its entirety.

The case law is clear that RICO claims with predicate acts of fraud, such as mail fraud and wire fraud, are subject to the particularity and specificity pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511-12 (11th Cir. 1988).  There is no similar requirement for all RICO claims.[14]  The remainder of the defendants' argument roundly criticizes the complaint for being vague, conclusory, shotgun, and bald, yet does not specify any particular allegation that is insufficient to suggest any particular element of the RICO claims.  Instead, the defendants simply assert that "a plaintiff who fails to allege basic facts in support of his claims should not be allowed to proceed."  (Defs.' Br. Supp. Mot. Dismiss 12.)  The court refuses to make arguments or otherwise litigate the case for the defendants.  Therefore, the court must deny the defendants' motion to dismiss with respect to the sufficiency-of-allegations argument as their argument suffers from the very defects of which they complain.

---

[13]  The defendants assert that the "[p]laintiffs should be ordered to comply with [the standing RICO order of Judge Krenzler of the Northern District of Ohio] so that the real basis of the RICO claims can be understood and evaluated."  (Defs.' Br. Supp. Mot. Dismiss 17.)

[14]  Although it appears from the broad language used by Eleventh Circuit Court of Appeals in *Ambrosia Coal and Construction Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007), that Rule 9(b) applies to all civil RICO claims, the predicate acts alleged in *Ambrosia Coal* were, in fact, wire and mail fraud.  (*See* Third Am. Compl. at ¶¶ 160-192, Ambrosia Coal & Constr. Co. v. Pages Morales, No. 99-07677 (S.D. Fla. June 24, 2004).)  Thus, the court can safely conclude that the rule in *Ambrosia Coal* is limited to those cases in which fraud is alleged as a predicate act.

**D.**     ***Section 1983 Conspiracy Claims***

The gist of defendants' argument for the dismissal of the § 1983 conspiracy claims is that the plaintiffs cannot show that there is no conceivable rational basis for the bingo regulations.  Because no suspect classification or fundamental right is implicated, the plaintiffs agree that the alleged equal protection violation is subject to a rational basis review and that the burden "to negative any reasonably conceivable state of facts that could provide a rational basis for the classification" is theirs to carry.  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (internal quotation marks omitted).  The rational basis test is popularly phrased as whether a classification is "rationally related to a legitimate state interest."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  In other words, the challenged regulations will be upheld unless the plaintiffs can prove that the regulations have no legitimate purpose or that the means used are not a reasonable way to accomplish the goal.  *See W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 668 (1981).  While rational basis review is deferential, it is not toothless.  *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).

The defendants argue that granting a pre-discovery motion to dismiss is appropriate where, they allege, it is readily apparent that the plaintiffs' allegations are conclusory and do not negate the conceivable rational bases for the bingo regulations put forth by the defendants.  Although the court recognizes that the issue of whether there is a rational basis for a governmental regulation is a matter of law, that such issue can be decided at the motion

to dismiss stage, and that other courts have done so, the court finds that, in this case, the motion to dismiss with respect to the equal protection argument is due to be denied. The court does not opine, one way or the other, on the merits of the issue at this stage.[15] It simply finds that the plaintiffs' allegations are sufficient to suggest all of the elements of an equal protection violation and to plausibly negate the bases for the bingo regulatory scheme of which the court can conceive at this time.

Because the case is moving forward on all claims, the parties can expect full discovery. The defendants argue "there is no need for discovery to determine why the Sheriff issued the challenged regulations." (Defs.' Br. Supp. Mot. Dismiss 25.) Although, under rational basis review, the real reasons behind a legislative decision are constitutionally irrelevant, *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980), this rule does not prohibit the plaintiffs from seeking information relevant to their claims and the defenses to those claims. And, in any event, Warren's *stated* reasons for issuing the regulations are indeed relevant. *See Nordlinger v. Hahn*, 505 U.S. at 1, 15 (1992) (explaining that the courts' rationality "review does require that a [stated] purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker" (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528-29 (1959))); *Allied Stores of Ohio*, 358 U.S. at 530 ("Having themselves specifically declared their purpose, the Ohio statutes

---

[15] Rather than analyze the rationales proposed thus far, the court finds that the better course of action is to decide the merits after the parties have fully developed and presented their arguments. The court will decide the issue upon a full hearing to be held shortly after the summary judgment stage.

left no room to conceive of any other purpose for their existence.").  The court leaves resolution of specific discovery disputes in the able hands of the Magistrate Judge.

**E.      *Tortious Interference***

The defendants argue that both of the plaintiffs' tortious interference claims fail as a matter of law.  In Count V of the Fourth Amended Complaint, the plaintiffs allege that McGregor and VictoryLand tortiously interfered with contractual and business relations between Lucky Palace and the Charities. (Fourth Am. Compl. ¶¶ 138-144.)  The defendants challenge two elements of the plaintiffs' claim.  First, they argue that plaintiffs have failed to allege that McGregor and VictoryLand had knowledge of the existing contracts between Lucky Palace and the Charities.  This argument fails as the plaintiffs did allege knowledge: "Upon information and belief, Defendants McGregor and VictoryLand had knowledge of those contractual relationships."  (*Id*. ¶ 141.)

Second, the defendants challenge the element of interference.  They argue that it is the plaintiffs, not the defendants, who have rendered the performance of the plaintiffs' contract impossible.  The plaintiffs characterize this as a causation argument, and the court agrees. The allegations are sufficient to suggest the element of interference by the defendants. Whether the plaintiffs will ultimately carry their burden of proof on this element remains to be seen and is not properly at issue at this stage of the litigation.

In Count VI, the plaintiffs allege that McGregor and VictoryLand tortiously interfered with prospective business relationships between the plaintiffs and prospective patrons and

customers.  (*Id.* ¶¶ 145-150.)  The defendants argue that the alleged prospective business relationships are entirely speculative; that is, the defendants "could not have interfered with a prospective business relationship between parties that do not yet exist and who cannot be identified and a business which does not yet exist and which has no goods or services to offer."  (Defs.' Br. Supp. Mot. Dismiss 38.)  The plaintiffs assert that there is no such "identity of the parties" requirement to state a claim.  (Pls.' Resp. Br. to Mot. Dismiss 22.)

It is clear that Alabama allows claims of tortious interference with contractual and business relations, which "allows a plaintiff a remedy in the situation where a defendant has intentionally interfered with a prospective contract as well when he has interfered with an existing contract."  *Ex parte Ala. Dep't of Transp.*, 764 So. 2d 1263, 1270 (Ala. 2000) (citing Restatement (Second) of Torts, § 766B cmt. b (1979)).  This is because of the public policy to protect against interference with all "'reasonable expectancies of commercial relations.'"  *Id.* (citing Restatement § 766 cmt. c).  "The relations protected against intentional interference . . . include any prospective relations . . . if the potential contract would be of pecuniary value to the plaintiff.  Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying of land or chattels or services, and any other relations leading to potentially profitable contracts."  Restatement § 766B cmt. c.

The cases cited by the defendants are distinguishable and thus do not require dismissal.  *See Georgetown Manor, Inc. v. Ethan Allen, LLC*, 47 F.3d 1099 (11th Cir. 1995);

*Tom's Foods, Inc. v. Carn*, 896 So. 2d 443 (Ala. 2004); *Ex parte Ala. Dep't of Transp.*, 764 So. 2d 1263.   *Georgetown Manor* is inapplicable because it is based on Florida law.[16]   The Court's holding in *Tom's Foods* was based, not on the fact that the customers were prospective, but on the finding that the defendant's contractual rights precluded its liability for tortious interference.   *Tom's Foods*, 896 So. 2d at 456 (finding that "whatever relations Duke had relative to Dixie's customers were all part of a set of interwoven contractual arrangements" (internal quotation marks omitted)).   Although a closer call, *Ex parte Alabama Department of Transportation* is also inapposite.   There, the plaintiff was a subcontractor that supplied chert gravel for use in the manufacture of asphalt.   Its prospective customers were limited to general contractors who constructed roads for the State and were entirely dependent on "the needs of the general contractors with which it did business."   *Ex parte Ala. Dep't of Transp.*, 764 So. 2d at 1270.   The undisputed evidence showed that "the State had not awarded any road-construction contracts to any general contractor that had relied on [the plaintiff's] bid as a subcontractor."   *Id*.   For this reason, the Court held that the plaintiff "did not have a reasonable expectancy of the formation of a contract for it to supply gravel."   *Id*. At this stage of the litigation, the court cannot make a similar determination.   As Lucky Palace and the Charities point out, the allegations establish that, unlike chert gravel, there is a market for electronic bingo in Macon County.

---

[16]   In tortious interference with a business relationship tort actions, Florida (unlike Alabama) has explicitly disallowed recovery for damages where the relationship is based on speculation regarding future sales to past customers.   *Georgetown Manor*, 47 F.3d at 1101.

Considering the Alabama courts' frequent reliance on the Restatement of Torts for guidance on shaping the contours of the cause of action, *see Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268, 1280 n.5 (M.D. Ala. 2003) (collecting cases), and the Restatement's intended breadth of this tort and its underlying policy rationale, and in the absence of mandatory authority to the contrary, the court finds that the plaintiffs have alleged interference with a reasonable expectancy of commercial relations.  Thus, the court cannot say that the alleged relationship between the plaintiffs and their prospective patrons and customers does not constitute a "business relation" as a matter of law.  Accordingly, the defendants' motion to dismiss as to the tortious interference claims is due to be denied.

### IV. CONCLUSION

For the reasons set forth above, it is ORDERED that:

1.     The Motions to Dismiss Plaintiff's Third Amended Complaint filed by Defendants Macon County Greyhound Park, Inc., and Milton McGregor (Doc. # 74), and by Defendant David Warren (Doc. # 82) are DENIED;

2.     The plaintiffs' Motion for Leave to File Fourth Amended Complaint (Doc. # 91) is GRANTED;

3.     The plaintiffs shall file electronically **on or before March 12, 2008**, an exact duplicate of the Fourth Amended Complaint that is attached to its motion in accordance with the *Middle District of Alabama's Civil Administrative Procedures*;

4.     The defendants shall file their answers to the Fourth Amended Complaint **on or before March 19, 2008**; and

5.     The parties shall confer and develop a proposed amended discovery plan pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.  The plaintiffs shall file the amended report **on or before March 24, 2008**.

DONE this 5th day of March, 2008.

                   /s/   W.  Keith Watkins
                   UNITED STATES DISTRICT JUDGE