**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al.,** | ) ) ) | **Case No.: 3:06-cv-01113-WKW-csc** |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | |
| **DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al.,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

**MACON COUNTY GREYHOUND PARK, INC.'S OPPOSITION TO
PLAINTIFF, LUCKY PALACE, LLC'S, MOTION TO COMPEL DOCUMENTS
FROM DEFENDANT MACON COUNTY GREYHOUND PARK, INC.**

On January 22, 2008, Plaintiff Lucky Palace, LLC filed a Motion to Compel Production of Documents and Things from Macon County Greyhound Park, Inc. ("Victoryland") ("Motion to Compel") (Doc. #143). On March 13, 2008, the Court issued an Order (Doc. #149), which among other things required Victoryland to file a written response showing cause why Lucky Palace's Motion to Compel should be not be granted. Victoryland files this Opposition to the Motion to Compel.  As shown below, Lucky Palace improperly seeks to compel: (a) documents containing a competitor's trade secrets or confidential commercial information without meeting its burden for compelling the production of such privileged information; (b) documents that are not relevant to the issues in this case; and (c) documents which it has been informed do not exist. For the reasons set forth below, the Motion to Compel is due to be denied.

# I.     RELEVANT LEGAL LIMITS ON DISCOVERY

Although the concept of relevance for purposes of discovery is defined more broadly than relevance for purposes of admissibility at trial, it has long been established that the right to discovery is not unlimited and has "ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)   "A bare allegation of wrongdoing . . . is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case." *Oppeneimer Fund, Inc. v. Sanders,* 437 U.S. 340, 363 (1978). Moreover, to be relevant, discovery must "relat[e] to an issue *necessarily* in the case." *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1326 (Fed. Cir. 1990). (emphasis added).  "Discovery should be tailored to the issues involved in the particular case."  *Mary Jones v. Colorcraft Corp*., 1983 WL 565*1 (S.D. Ga. Aug. 4, 1983) (quoting *Hardrick v. Legal Services Corp*., 96 F.R.D. 617, 618 (D.D.C. 1983)). Relevancy for discovery purposes may be determined by whether the material sought will have a <u>substantial</u> effect on the case's outcome, and the matters being asked must be relevant to the issues to be tried.  *See United States v. Trucking Employers, Inc.*, 72 F.R.D. 101 (D.D.C. 1976); *Greene v. Raymond*, 41 F.R.D. 11 (D. Col. 1966). Furthermore, discovery based on mere suspicion or speculation "is not relevant to 'subject matter involved.'" *Micro Motion,* 894 F.2d at 1326 (Fed. Cir. 1990) (citations omitted).

As evidenced by the continually-changing allegations and causes of action in this matter, as well as Plaintiffs' Counsel's own statements in the presence of this Court, Plaintiffs have nothing more than speculation and suspicions to support their allegations in this case.  Such speculation and suspicions are not sufficient to enter the nexus of

relevance for purposes of discovery.  As set out in the individual responses below, Plaintiffs here seek discovery of information not even remotely relevant to the material, *necessary* issues in this action.

While the expression 'fishing expedition' has been generally denigrated as a reason for objecting to discovery, in some situations, such as the one at hand, it remains apt.  Here, Lucky Palace is "unmoored and trolling."  *Micro Motion,* 894 F.2d at 1327 (citing *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988).  *See also Paul Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1032 (5th Cir. 1983); *Hancock Indus. v. Schaeffer*, 619 F.Supp. 322, 331 (E.D. Pa. 1985)).

## II.     PLAINTIFFS' CURRENT CLAIMS

Plaintiffs are now on their Fourth Amended Complaint in this case. (Doc. 148, filed March 8, 2008).  Lucky Palace, a party that seeks to operate an electronic bingo casino in direct competition with Victoryland, and the other Plaintiffs now assert the following claims against the Defendants: (1) RICO § 1962(c); (2) RICO § 1962(d); (3) violation of the Equal Protection Clause; (4) a Section 1983 Conspiracy to deprive the Plaintiffs of equal protection of the laws; (5) tortious interference with contractual and business relationships (against Victoryland and McGregor only); and (6) tortious interference with prospective business relationships (against Victoryland and McGregor only).  (Doc. #148).  Victoryland answered the Fourth Amended Complaint on March 19, 2008. (Doc. # 154).

All of the claims in the Fourth Amended Complaint arise from Plaintiffs' allegations (which form the basis of their Equal Protection claim against the Sheriff) that there is no rational basis for the following four aspects of the County Bingo Regulations:

(1)     the requirements in the County Bingo Regulations that electronic bingo cannot be conducted at "any qualified location . . . unless a minimum of fifteen applicants shall first obtain a Class B [electronic bingo] License for such location" (the "Fifteen License Minimum") (Doc. # 148, ¶¶ 46, 129);

(2)     the portion of the County Bingo Regulations that provide that there can be no more than 60 issued and operational electronic bingo licenses in Macon County at any given point in time (the "Sixty License Maximum") (Doc. # 148, ¶¶ 55, 129);

(3)     the allowance of  59 of 60 electronic bingo licenses to be issued to charities who operate electronic bingo games at Victoryland (Doc. #148, ¶ 129); and

(4)      the requirement that a party who wishes to operate electronic bingo games in Macon County have a  multi-million dollar facility before it can operate Class   B (electronic)  bingo games (the "Existing Facility Requirement"). (*Id.*)

The Plaintiffs' Section 1983 conspiracy claim against Victoryland is manufactured from the allegation that Victoryland conspired to have these four aspects of the County Bingo Regulations promulgated.  (*See* Doc. #148, ¶¶ 132-133).  Likewise, Plaintiffs' tortious interference with contractual and business relationships and tortious interference with prospective business relationships claims against Victoryland and McGregor are cobbled together from the allegation that they influenced or aided the Sheriff in promulgating these four aspects of the County Bingo Regulations. (*See* Doc. #148, ¶¶ 141-143; 146-148). The essence of Plaintiffs' baseless RICO claims is that Victoryland and Milton McGregor allegedly bribed the Sheriff's lawyer, Fred Gray, Jr., who is not a party to this action and who Plaintiffs contend is a "public servant," in order to have these four aspects of the County Bingo Regulations promulgated. (*See, e.g.,* Doc. #148, ¶¶ 70-71; 97).

III.    **THE SPECIFIC REQUESTS AT ISSUE AND WHY THE MOTION TO COMPEL SHOULD BE DENIED**

For clarification and convenience of the Court, Victoryland has set out its arguments in opposition to the Motion to Compel by setting out in full Lucky Palace's Request; Victoryland's Response; Victoryland's Supplemental Response where appropriate; and Victoryland's Opposition to Plaintiffs' Arguments in the Motion to Compel.

A.    **Lucky Palace's Request 1**

**Request 1:** "Please produce the documents, including but not limited to, internal memos, notes, reports, forecasts, correspondence, e-mails, electronic filed information concerning the consideration of getting involved in electronic bingo and getting it approved for Macon County, Alabama from January 1, 1999 to the present."

**Response:** "Victoryland objects to this request to the extent that it seeks material that is subject to the attorney-client privilege and/or the work product doctrine. Victoryland further objects to this request on the grounds that it seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business. Furthermore, the request is overly broad and unduly burdensome. In addition, the request seeks documents that are not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Request 1**

Lucky Palace's sole argument in support of its motion to compel – that Victoryland's plans for getting involved in electronic bingo and getting it approved for Macon County would show motive intent or scheme and how Victoryland would attempt

to limit competition – is entirely without merit.  This request has absolutely nothing to do with the issues in this case.  It is undisputed that Local Constitutional Amendment 744, which approved bingo games in Macon County, was passed by the voters of Macon County, Alabama on November 4, 2003. Plaintiffs have not alleged in their complaint that any improper actions were taken with respect to the passage of Amendment 744.  In fact, without the passage of Amendment 744, bingo would not be legal in Macon County, and all of Plaintiffs' claims would be moot.  As noted above, in Section II, all of Plaintiffs' claims arise out of the County Bingo Regulations – not Amendment 744. Lucky Palace's Request 1 simply has nothing to do with those Regulations, and, therefore seeks wholly irrelevant material.

Moreover, to the extent that Lucky Palace at this late date tries to claim that this request concerns the County Bingo Rules, there is no reason to compel production of documents because they have already been produced.  The non-profit Plaintiffs sought in their Requests for Production 1-4 and Victoryland has already produced the non-objectionable documents it has that:

1.    "reflect or relate to the policies, procedures and/or practices regarding the issuance of bingo licenses in Macon County, Alabama, including the original version of such policies, procedures and/or practices and any amendments or revisions thereto" (*See* Defendant's Supplemental Response to Non-profit Plaintiffs' Request 1, Doc. 118, at p. 8);

2.    "reflect or relate to the history and/or purpose of bingo regulations pertaining to Macon County, Alabama including but not limited to all documents discussing the reasoning behind the creation and adoption of any and all provisions of the bingo regulations**"** (*See* Defendant's Supplemental Response to Non-profit Plaintiffs' Request 2, Doc. 118, at p. 10);

3.    "reflect or relate to the licensing (or denial of licensing) of any bingo parlor or other gaming establishment in Macon County, Alabama,

including Victoryland" (*See* Defendant's Supplemental Response to Non-profit Plaintiffs' Request 3, Doc. 118, at p. 11);

4.    "reflect or relate to the licensing (or denial of licensing) of any charity for the conduct of bingo in Macon County, Alabama" (*See* Defendant's Supplemental Response to Non-profit Plaintiffs' Request 4, Doc. 118, at p. 12).

Furthermore, the relevant issue is not whether the County Bingo Regulations benefit Victoryland, but whether there is a <u>conceivable</u> rational basis for the four aspects of the County Bingo Regulations about which Plaintiffs complain. *See F.C.C. v. Beach Commc'ns, Inc.* 508 U.S. 307, 313-14 (1993). Moreover, the alleged illicit motives of Victoryland,[1] the Sheriff and others for alleged wrongdoing and others (all of which is sheer speculation) are irrelevant to the fundamental issue in this case of whether there is a rational basis for the four aspects of the County Bingo Regulations that the Plaintiffs challenge. *See International Paper Co. v. Town of Jay*, 928 F.2d 480, 485 (1st. Cir. 1991) (finding there was a rational basis for the town ordinance, and refusing to delve into the motives of the town counsel, noting that absent a suspect or quasi-suspect classification or a fundamental right, courts will not strike down an ordinance with a rational basis because of an alleged illicit motive); *Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 1023, 1036-37 (E.D. Cal. 2007) (noting that one of the reasons an improper motive does not affect an equal protection review of an ordinance is because "it is entirely irrelevant for constitutional purposes whether the conceived reason for the

---

[1] Likewise, non-competitive intent is not actionable. Under the *Noerr-Pennington* doctrine, Victoryland, like the Plaintiffs, has a First Amendment right to petition governmental officials for governmental action favorable to it even if that action was motivated by an anti-competitive intent and it cannot be found liable for such actions. The purpose of the doctrine is to protect private parties who petition the government for laws or rules or interpretations of existing laws or rules even if the private party pursues those goals with an anti-competitive intent. *See, e.g., Video Int'l. Production Inc. v. Warner-Amex Cable Communications Inc.*, 858 F.2d 1075, 1082-1083 (5th Cir. 1988). Although the doctrine was originally developed in the anti-trust field, it has been expanded to "protect first amendment petitioning of the government from claims brought under federal and state laws, including section 1983 and common-law tortuous interference with contractual relations." *Id.* at 1084.

challenged distinction actually motivated the legislature." (quoting *Beach Commc'ns*, 508 U.S. at 315.)

In addition, Lucky Palace fails to address Victoryland's legitimate objection to the sheer over-breadth of this request. As noted above, it is undisputed that Local Amendment 744 was approved in November 2003, yet Lucky Palace's request improperly seeks information back to January 1999, almost a full five years earlier.

Further, Lucky Palace has failed to address Victoryland's legitimate objection that the request improperly seeks "commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business." More importantly, as shown below in Victoryland's Argument regarding Request 2, documents concerning Victoryland's forecasts or other similar information regarding bingo are the types of documents that courts consider to be proprietary, confidential commercial information and/or trade secrets. Lucky Palace, which seeks to become the primary competitor of Victoryland, has utterly failed to meet its burden to have this Court compel the production of such highly sensitive and protected information.

### B.    Lucky Palaces' Request 2

**Request 2:** "Please produce the documents, including but not limited to, internal memos, notes, reports, forecasts, correspondence, e-mails, electronic filed information concerning the prospects of success and profit potential for electronic bingo in Macon County, Alabama from January 1, 1999 to the present."

**Response:** "Victoryland objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information.

Victoryland further objects to this request to the extent that it seeks material that is subject to the attorney-client privilege and/or the work product doctrine. Further, the request, which is from a party that seeks to compete with Victoryland, improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Request 2

Lucky Palace's sole argument is that the "material requested is entirely relevant to discovery regarding motive, intent and value for seeking to secure a monopoly on electronic bingo in Macon County." This argument is without merit for several reasons.

> 1.    The information sought constitutes trade secrets or confidential commercial information.

Lucky Palace entirely ignores and utterly fails to address Victoryland's legitimate objection that the request "improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business." It is clear that the information sought by this request concerning the "prospects of success and profit potential for electronic bingo in Macon County, Alabama" constitutes a "trade secret or other confidential research, development, or commercial information."

Under the Federal Rules of Civil Procedure, objection to a request for documents may be "made on any ground that would support a protective order under Rule 26(c). 8A C. Wright, A. Miller, and R. Marcus *Federal Practice & Procedure: Civil* § 2213, p. 428 (2nd. ed. 1994). Rule 26(c)(7) of the Federal Rule of Civil Procedure provides in pertinent part that a Court may issue a protective order "that a trade secret or other confidential research, development, or commercial information not be revealed or be

revealed only in a designated way." In determining whether information constitutes a trade secret, federal courts look to state law. *See, e.g, Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1158 (11th Cir. 2004) (applying Alabama Trade Secret Act in determining what constituted trade secret). Alabama law defines a trade secret as information that:

    a.     Is used or intended for use in a trade or business;

    b.     Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;

    c.     Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;

    d.     Cannot be readily ascertained or derived from publicly available information;

    e.     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

    f.     Has significant economic value.

Alabama Code § 8-27-2 (1975).

As established by the Affidavit of S. Lee Yates, Victoryland's financial information concerning electronic bingo, including the documents sought by this request concerning the "prospects of success and profit potential for electronic bingo in Macon County, Alabama," are clearly trade secrets under this definition. *See* Affidavit of S. Lee Yates (Doc. # 158-2). Victoryland treats its financial information regarding electronic bingo, including the financial records that Lucky Palace seeks from Victoryland, as confidential corporate information, which it does not share with the public, nor make publicly known to the gaming industry. *See id.*, ¶¶ 4, 6. Victoryland uses this confidential commercial information in its business and the information has significant

economic value to Victoryland. *Id.*, ¶¶ 4, 9. Victoryland's financial information concerning electronic bingo "is taken from internal sources and combined and compiled using computer software programs, which in turn are used to generate reports on that financial information." *Id.*, ¶ 5. Victoryland's financial information regarding electronic bingo would reveal confidential information relating to corporate revenues, profits, expenses, as well as which aspects of its bingo operation have been most successful. The release of such information would certainly give potential competitors, including Lucky Palace, a detailed outline of how to compete against Victoryland.

Further, Victoryland is a private, closely held corporation, and as a private, closely held corporation, Victoryland's corporate financial information and profitability is not publicly known. *See Id.*, ¶¶ 3-4, 6-8. Nor can it be readily ascertained from publicly available information. *See Id.*, ¶ 7. Victoryland has also previously taken steps to prevent the disclosure of the its financial information including by objecting to a subpoena issued by the Plaintiffs to Victoryland for similar information before Victoryland was a party to the instant action. Accordingly, this Court should follow Alabama law and find that Victoryland's corporate financial records, including those sought by this request, are trade secrets or confidential commercial information not subject to disclosure.

Moreover, Alabama Courts have held that analogous information, including customer lists, financial statements, tax returns, sales evaluations, profit statements, and information concerning gross and net profits constitute trade secrets under the statute. *See Ex parte W.L. Halsey Grocery Co.*, 897 So.2d 1028, 1034-1035 (Ala. 2004) (holding that customer lists, financial statements, tax returns, and sales evaluations were trade

secrets); *Ex parte Miltope Corp.*, 823 So.2d 640, 645-646 (Ala. 2001) (holding that "information concerning [] gross and net profit" as well as customer orders and board minutes constituted a trade secret and was not required to be disclosed). Additionally, federal courts and courts in other jurisdictions have held that company profits and similar financial information of a company is a trade secret. *See Corbett v. Free Press Ass'n*, 50 F.R.D. 179, 180 (D. Vt. 1970) ("the profits or losses of a business are generally of a confidential nature."); *Gelb v. American Tel. & Tel. Co.,* 813 F.Supp. 1022, 1034-35 (S.D.N.Y.1993) (internal financial information is confidential); *Uinta Oil Refining Co. v. Continental Oil Co.*, 36 F.R.D. 176, 182 (D. Utah 1964) (quashing subpoena duces tecum that requested profit and loss statements because "matters of profit and income in the depth sought ordinarily are treated as confidential, and the ramifications of such disclosures are difficult to evaluate [and] [t]he foundational data sought would almost completely reveal the operational experiences of the companies."); *Delucca v. GGL Industries, Inc.*, 712 So.2d 1186, 1187 (Ct. App. Fl. 1998) (finding company's business documents, including tax returns, documents reflecting income, and customer's names and addresses, constituted "trade secrets" under Florida law).

    2.    <u>Lucky Palace has failed to meet its burden for requiring the production of such information.</u>

Because it is obvious that the information sought by Request 2 is confidential information, "the burden is on [Lucky Palace as] the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." 8 C. Wright & A. Miller, *Federal Practice & Procedure*: Civil § 2043 (2nd ed. 1994). Yet,

Lucky Palace has completely failed to meet this burden and has not even attempted to do so.[2]

As the Alabama Supreme Court noted in *Ex parte Miltope Corp.*, courts must be very careful in requiring the disclosure of trade secrets because once the information is disclosed, its "valuable secretive nature" cannot be restored and disclosure of trade secrets can cause irreparable harm:

> Trade secrets should receive greater protection from discovery because they "derive[ ] economic value from being generally unknown and not readily ascertainable by the public." "Once the information becomes available through the discovery process, a subsequent appeal, even if successful, cannot restore the valuable secretive nature." *Id.* Disclosure of a trade secret could cause "irreparable harm." (internal citations omitted)

*Miltope*, 823 So.2d at 645.

Due to the problems inherent in the disclosure of trade secrets, the *Miltope* court held that the trial court abused its discretion in ordering the Defendant to produce information regarding its profits "because of the irreparable harm the disclosure of its trade secrets could do." *Id.* It is clear that if the Court compels Victoryland to produce its financial information and trade secrets to Lucky Palace, Victoryland will suffer irreparable harm.

Because of the problems with disclosure of trade secrets, courts should be particularly wary, where as here, the disclosure of trade secrets is sought by a competitor. "Courts have presumed that disclosure to a competitor [such as Lucky Palace] is more harmful than disclosure to a noncompetitor." *R & D Business Systems v. Xerox Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993). There can be no dispute that Lucky Palace seeks to

---

[2] If Lucky Palace finally tries at this late date to meet its burden, the Court should consider what Lucky Palace submits in light of "all the pertinent circumstances, including dangers of abuse." *Id.*

compete with Victoryland. Lucky Palace has previously informed this Court that it has a common interest with Libra Securities Holdings, LLC (which has an ownership interest in Lucky Palace) and Libra Securities, LLC (a wholly-owned subsidiary of Libra Securities Holdings and Lucky Palace's investment banker), which has provided financial and strategic services to Lucky Palace and which "is in partnership with Lucky Palace to secure financing and raising capital for the eventual opening of Bingo operations in Shorter, Alabama." (Doc. #128, at ¶¶ 1-4). Documents authored by the Libra Securities entities (which were produced in response to Victoryland's subpoena), to obtain financing for Lucky Palace, repeatedly refer to Victoryland as a "competitor" and some of those documents refer to Victoryland as Lucky Palace's "primary competitor" *See* Affidavit of Peter Tepley and Exhibits A-D and F thereto, which were filed under seal.

It is undisputed that Lucky Palace is seeking to compete with Victoryland. Moreover, additional documents produced by the Libra entities and obtained by Victoryland's counsel establish that Lucky Palace and other Plaintiffs in this case have engaged in a strategy to use grassroots pressure, pressure from above, and "political clout" to force the Sheriff to give Lucky Palace a bingo license. *See* Ex. E to Tepley Affidavit, filed under seal. As part of this effort, Lucky Palace and certain other Plaintiffs papered Macon County with fliers urging citizens to call Sheriff Warren and tell him to approve their bingo license. (*See* Doc. # 88-2). Victoryland has reason to believe that Lucky Palace and the other Plaintiffs have not abandoned their campaign to use political pressure to force the Sheriff to provide them with bingo licenses, and has every reason to believe that Plaintiffs will use any financial information obtained from

Victoryland to aid them in their plan to compete against Victoryland to Victoryland's detriment.

        3.      <u>The information sought is not relevant</u>.

Even *if* the requested information were not protected or privileged, Victoryland's financial information is not relevant to any of Plaintiffs' underlying claims. *Fed. R. Civ. P.* 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is <u>relevant</u> to the subject matter involved in the pending action.") (emphasis added). "Ordinarily, Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." *Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc.*, 75 F.R.D. 3, 5 (S.D. Ohio 1977); *Henderson v. Zurn Industries, Inc.*, 131 F.R.D. 560, 562 (S.D. Ind. 1990); *Bogosian v. Gulf Oil Corp*, 337 F. Supp. 1228, 1230 (E.D. Pa. 1971). Furthermore, "[a] district court can deny a motion to compel further discovery if it concludes that the questions are irrelevant." *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 732 (11th Cir.1984).

In its Motion to Compel, Lucky Palace argues that Victoryland's internal information concerning the "prospects of success and profit potential for electronic bingo in Macon County, Alabama" is relevant to "motive, intent and value for seeking to secure a monopoly on electronic bingo in Macon County." However, Victoryland's profitability does not provide evidence of financial motive because it is an "axiomatic conclusion that businesses are operated to make a profit." *Ex parte Miltope Corp.*, 823 So.2d at 647 (Hardwood, J. concurring)(refusing to allow discovery of net profits to prove motive); *see also Crawford Broadcasting Co. v. Fine*, 904 So.2d 221, 225 (Ala. 2004) (ruling in a

claim involving defamation that information concerning defendants' compensation was in no way relevant to proving "actual malice" and finding the request constituted harassment). Consequently, Lucky Palace does not need Victoryland's financial documents and information simply to prove that Victoryland sought to make a profit or that it did in fact make a profit.  Victoryland will stipulate that to date, Bingo has been profitable. In fact, at the hearing September 15, 2007 hearing on the Defendants' Motions to Dismiss the Third Amended Complaint, in response to the Plaintiffs' bald allegations that due to the alleged monopoly there was no economic development at Victoryland, Defendants submitted photographs to show that Victoryland was engaged in a $100 million renovation of its facility.  *See* Transcript of 9/5 Hearing (Doc. # 99), at p. 63, lines 7-20.  Plaintiffs' claims for more than nine years worth of Victoryland's financial information is not only irrelevant and unnecessary but it is grossly overbroad and burdensome.

4.      The harm that disclosure of Victoryland's trade secrets will cause is not eliminated by the Protective Order.

Victoryland anticipates that Lucky Palace may argue that Victoryland's concerns are adequately addressed by the Protective Order that has been entered in this case. But that Protective Order is not adequate to protect Victoryland's trade secrets. While protective orders can minimize the likelihood of a party divulging sensitive or privileged information, they do not eliminate the possibility that such information will be divulged or used for improper purposes. *See Carbide v. Free Press Association, Inc.*, 50 F.R.D. 179, 181 (D. Vt. 1970) ("While such [a protective order] certainly lessens the danger of sensitive information falling into the hands of an unauthorized person, it does not eliminate such a danger."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004)

(holding protective orders are subject to modification or being rescinded at any time); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.1993) (holding same). In this case, the Libra entities with whom Lucky Palace has admittedly "freely shared" "documents and information concerning this litigation" (Doc. #128, ¶ 4) are not parties in this case or parties to the Protective Order.  In addition, the non-profit Plaintiffs have stated that they could seek relief from the protective order at a later time. *See* Doc. 122, at ¶ 4.  Thus, the protective order in this case does not overcome the significant risk of irreparable harm to Victoryland as a result of disclosure of its protected information. This is particularly true in light of Plaintiffs' political and publicity campaigns designed to harm Victoryland.  Further, Lucky Palace and its co-Plaintiffs seek to compete with Victoryland. Once Lucky Palace has access to Victoryland's financial information, the harm has already occurred as Lucky Palace, a primary competitor, is a likely to use and profit from the confidential information. *Ex parte Miltope*, 823 So.2d at 644 (finding a protective order ineffective when a competitor is granted expansive discovery of parties sensitive business information since the court has no system of monitoring the competitor's use of the information).

  5. <u>The harm to Victoryland far outweighs any need Lucky Palace might have</u>.

  For the reasons stated above, the potential harm to Victoryland from disclosure of its trade secrets and confidential commercial information far outweighs Lucky Palace's virtually non-existent need for the requested information.  *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 395 (D.Colo. 1998)  ("[T]he potential harm which would occur from disclosure of [trade secrets that include revenue projections, price forecasts, pricing options, evaluations of proposed capital structures and analyses]

far outweighs [Plaintiffs'] stated needs for it."). Further, Victoryland should not be compelled to produce corporate financial documents to a potential competitor when, as here, those documents are not relevant to any claim or defense and would likely result in competitive harm. *U.S. v. United Fruit Co.*, 410 F.2d 553, 556 (5th Cir. 1969)[1] (holding that courts should "exercise their discretion to avoid unnecessary disclosure of [confidential] information, particularly where the action is between competitors"); *Duracell v. SW Consultants, Inc.*, 126 F.R.D. 576, 577 (N.D. Ga. 1989) (holding discovery is "not intended to forfeit a party's ability to compete effectively in the market by opening up tangentially relevant financial and marketing information to competitors").

### C.    Lucky Palaces' Request 4

**Request 4:**    "Please produce the documents, including but not limited to, internal notes, reports, forecasts, correspondence, e-mails, electronic filed information concerning suggested or considered proposals for Macon County, Alabama Rules and Regulations or procedures of any description for Rules and Regulations for licensing, permitting and/or operating electronic bingo operations in Macon County, Alabama from January 1, 1999 to the present."

**Response: "**Victoryland objects to this request to the extent that it seeks material that is subject to the attorney-client privilege and/or the work product doctrine, the common interest doctrine, other applicable doctrines and privileges and to the extent it seeks confidential information protected by Rule 1.6 of the Alabama Rules of Professional Conduct. Further, the request is vexatious and filed for an improper purpose

---

[1] *Bonner v. City of Prichard*, 661 F.2d 1206, 1208 (11th Cir.1981) (adopting decisions of the former Fifth Circuit rendered prior to October 1, 1981 as precedent).

as non-objectionable documents responsive to this request were already produced in response to the discovery served by the original Plaintiffs."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Request 4

As stated in its response, Victoryland has already produced non-objectionable documents responsive to this request in response to the discovery served by the original Plaintiffs in this case. Moreover, Lucky Palace has a copy of those documents.

Lucky Palace's argument - that the documents that Victoryland has withheld because of attorney-client privilege must be produced because "it is inconceivable that that an appropriate claim of attorney-client privilege can be asserted and accepted by this Court where Sheriff Warren was using Fred Gray, Jr. as his attorney to draft Rules and Regulations, and at the same time, Victoryland was using Fred Gray, Jr. as its attorney to put forth drafts that were intended to benefit Victoryland as a client" - is misplaced. Contrary to Lucky Palace's argument, Victoryland has never contended that Fred Gray, Jr. was its attorney for purposes of the County Bingo Regulations. Rather, it has said that the Gray Law Firm has represented Milton McGregor and his various enterprises, including Victoryland, since 1983.  This long-standing and on-going relationship is exactly the sort of relationship contemplated by Rule 1.6 of the Alabama Rules of Profession Conduct.  Entitled "Confidentiality of Information," Rule 1.6 prohibits a lawyer from revealing information relating to the representation of a client without the client's consent.  There are only two exceptions to this prohibition, neither of which apply in this situation:

> (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

The comment to Rule 1.6 states that "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law."

Victoryland is aware of its obligations under the Guidelines to Civil Discovery Practice in the M. D. Ala. at I.I.2 and has complied as required regarding the documents it has withheld on the grounds of attorney-client privilege or Rule 1.6. The Court should take up those materials separately.

**D.    Lucky Palaces' Request 9**

**Request 9:**    "Please produce the documents, including but not limited to, internal memos, notes, reports, forecasts, correspondence, e-mails, electronic filed information concerning or related to any desire by this Defendant to have input or suggestion of any type into the Rules and Regulations for electronic bingo in Macon County, Alabama through any means whatsoever from January 1, 1999 up until the present."

**Response:** "Victoryland objects to this request on the grounds that it is vague, unclear and ambiguous and overly broad, encompassing eight years. Victoryland reserves the right to make further objections once Plaintiff has clarified what it is seeking under this request."

**Supplemental Response:** "At the January 2, 2008 meet and confer, counsel for Plaintiff stated that this request was seeking notes or memoranda expressing a desire by Victoryland to have any input with the Sheriff regarding the Bingo Rules and Regulations. Based upon this clarification and without waiving any general or specific objections, Victoryland states that there are no such documents expressing a desire by Victoryland to have any input with the Sheriff regarding the Bingo Rules and Regulations."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Request 9

Lucky Palace's Motion to Compel fails to even address Victoryland's Supplemental Response (Doc. 143-2), which was served a week before Lucky Palace filed its Motion to Compel. That Supplemental Responses makes clear that Victoryland has no responsive documents. Thus, there is nothing to compel, and the motion must be denied.[3]

### E.     Lucky Palaces' Request 12

**Request 12:** "Please produce all documents, internal memos, notes forecasts, correspondence, e-mails, electronic filed information regarding all financial information for this Defendant regarding the operation of electronic bingo in Macon County, Alabama from its inception at Victoryland until the present which show gross revenues, payments, profit, payments to charities or others".

**Response:** "Victoryland objects to this request on the grounds that it is overly broad and seeks documents that are not relevant to any claim or defense asserted in the

---

[3] If Lucky Palace tries to change its clarification as set forth in the Supplemental Response at this late date, Victoryland requests that it be given an ample opportunity to review such revised request and to respond to it.

pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. Victoryland also objects to this request by a party that seeks to complete with Victoryland because it improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business. Victoryland further objects to this request on the grounds that it seeks personal, private, proprietary and confidential information of non-parties, the disclosure of which would amount to an improper invasion of privacy."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Request 12**

Lucky Palace, which seeks to compete with Victoryland in the area of electronic bingo, admits that this request seeks Victoryland's "electronic bingo revenues, profits, and payments" – the exact type of confidential financial information that constitutes a protected trade secret under Alabama law. Lucky Palace's argument for compelling production consists of three (3) points: (a) the material is relevant to showing motive and intent to insure that Victoryland achieved a bingo monopoly; (b) it seeks to determine the actual benefit bestowed on Victoryland's charity bingo partners; and (c) the information sought is subject to disclosure to the Sheriff. Each of these arguments is without merit for the reasons set forth below.

First, Lucky Palace's argument entirely ignores and utterly fails to address Victoryland's legitimate objection that the request "improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business." For the reasons set forth concerning Lucky Palace's Request 2 above, which are incorporated herein by reference: (1) the information sough by this request concerning Victoryland's "electronic bingo revenues,

profits, and payments" constitutes a "trade secret or other confidential research, development, or commercial information" that is protected from disclosure; (2) Lucky Palace, as a competitor seeking confidential trade-secret information, has utterly failed to meet its burden of establishing that the information sought is "sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information,"  8 C. Wright & A. Miller, *Federal Practice & Procedure*: Civil § 2043; (3) Victoryland's bingo revenues and profits are not relevant as they do not provide evidence of motive or intent; (4) the Protective Order in  this case is not adequate to protect Victoryland from disclosure of its trade secrets to Lucky Palace, which seeks to directly compete with Victoryland and which could use and profit from the confidential information, *ex parte Miltope*, 823 So.2d at 644 (finding a protective order ineffective when a competitor is granted expansive discovery of parties sensitive business information since the court has no system of monitoring the competitor's use of the information); and (5) the potential harm to Victoryland from disclosure of its trade secrets far outweighs Lucky Palace's virtually non-existent need for the requested information.

Second, Lucky Palace's argument that Victoryland's bingo revenues and profits and payments are relevant to show motive or intent is misplaced. Business revenues and profits simply do not provide evidence of motive because it is an "axiomatic conclusion that businesses are operated to make a profit." *Ex parte Miltope Corp.*, 823 So.2d 640, 647 (Ala. 2001) (Hardwood, J. concurring)(refusing to allow discovery of net profits to prove motive).  Lucky Palace does not need Victoryland's bingo revenues, profits and payments to prove that Victoryland sought to make a profit or that it did in fact make a

profit. As noted above regarding Request 2, if necessary, Victoryland will stipulate that so far bingo has been profitable.

Third, Lucky Palace has no standing to challenge nor determine the actual benefit bestowed on Victoryland's charity bingo partners. Those charity bingo partners are not parties to this case and they are not objecting to their contracts or payments from Victoryland. Moreover, this information is not relevant to and has nothing to do with the Plaintiffs' claims in this case, which are:

> (1) is there a <u>conceivable</u> rational basis for the four aspects of the County Bingo Regulations about which Plaintiffs complain – (a) the Fifteen License Minimum; (b) the Sixty License Maximum; (c) that under the Regulations Victoryland currently serves as a qualified location for 60 charities; and (d) the Existing Facility Requirement;

> (2) did the Defendants conspire to have these four aspects of the County Bingo Regulations promulgated;

> (3) did Victoryland and McGregor improperly influence or aid the Sheriff in promulgating these four aspects of the County Bingo Regulations and thereby tortiously interfere with Plaintiffs' existing or prospective business relationships; and

> (4) did Victoryland and McGregor bribe the Sheriff's Lawyer, Fred Gray, Jr., in order to have these four aspects of the County Bingo Regulations promulgated.

Fourth, Lucky Palace's assertion that the County Bingo Regulations require the disclosure of Victoryland's bingo profits or revenues is simply incorrect. Moreover, Lucky Palace failed to even cite the section of the Regulations that it contends requires such disclosure.[4]

---

[4] Further, such information has never been disclosed to the Sheriff. As the Sheriff testified in his recent deposition regarding Victoryland's bingo profits for the years 2004 – 2007, he has never seen and never asked to see those profits. See Deposition of Sheriff at pp. 321-325, attached hereto as Exhibit A.

F.    **Lucky Palaces' Request 13**

**Request 13:**    "All documents and electronic filed information reflecting shareholders and shares held by any shareholder in this Defendant from January 1, 1999 until the present."

**Response:**    "Victoryland objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. Victoryland further objects to this request on the grounds that it seeks personal, private, proprietary and confidential information of non-parties, the disclosure of which would amount to an improper invasion of privacy."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Request 13**

Lucky Palace's argument fails to mention that in a letter from Victoryland's counsel dated January 15, 2008 (which Lucky Palace incorrectly attached to its motion to Compel interrogatory answers from Milton McGregor), Victoryland stated that:

> Fred Gray Sr. stated in his affidavit filed with the Court in this lawsuit that in 1983, prior to the construction of the facility, he purchased stock in Victoryland. Counsel for Defendant offered to stipulate that Fred Gray, Jr., Sheriff Warren and Pebblin Warren are not shareholders in Victoryland.

(*See* Doc. 141-3, at pp. 9-10).

Victoryland stands by this stipulation.  Thus, Lucky Palace's main argument – that it needs to know the interest of non-parties Fred Gray and Fred Gray, Jr. in Victoryland – is moot.  The record of this case has shown since June 15, 2007 (the date Fred Gray filed his affidavit), that Fred Gray has owned stock in Victoryland since 1983.

(Doc. # 62, at pp. 1-2).  Moreover, Lucky Palace has known since January 15, 2008 that Fred Gray, Jr. is not a Victoryland shareholder.

Further, Lucky Palace has simply not made a sufficient showing for why it needs to know the identity of non-party shareholders of a privately-held corporation and the number of shares that they own.  This information is clearly personal, private, proprietary and confidential information of non-parties, the disclosure of which would amount to an improper invasion of privacy.[5]

### G.    Lucky Palace's Request 16

**Request 16:**    "All documents, drawings, photos, brochures, concerning planned or actual electronic bingo at Victoryland from its inception to present."

**Response:**      "Victoryland objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. Victoryland also objects to this request by a party that seeks to complete with Victoryland because it improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business. Further, the request is overly broad and unduly burdensome."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Request 16**

Lucky Palace's argument is misplaced for several reasons.

---

[5] Lucky Palace's bald assertion that it is "entitled to know who are potential witnesses with information regarding the [alleged] efforts of Victoryland to achieve and secure a monopoly in electronic bingo in Macon County" is misplaced. That assertion assumes – with no evidence to support the assumption – that Victoryland engaged in such efforts and informed shareholders that it was doing so.  This type of improper fishing expedition should not be allowed.  Moreover, the request is overly broad and not properly tailored to elicit the information purportedly sought.

First, its claim that the information is relevant because there are "regulatory concerns over the size and type oversight required by the Sheriff" makes no sense. If the Sheriff has concerns about Victoryland's facility or bingo operations, he can inspect or have someone acting for him inspect Victoryland's facility and operations. Further, Lucky Palace has already taken an all-day deposition of the Sheriff and had every opportunity to ask him questions regarding what he or someone on his staff reviewed regarding Victoryland's bingo operations or any regulatory concerns that might exist.

Second, Lucky Palace's claim that this information is discoverable because "photos of the proposed expansion were shown to the Court by the Defendants at the hearing on the Motion to Dismiss" misses the point. As counsel for Victoryland told Counsel for Lucky Palace:

> The photographs of Victoryland taken from the road were submitted at the hearing to rebut Plaintiffs' bald allegations that because of the alleged monopoly that there was no economic development at Victoryland. Defendant submitted the photographs to show, as was obvious from the highway, that Victoryland was in fact engaged in economic development in the form of its $100 Million dollar renovations to Victoryland. *See* Transcript of 9/15 Hearing [Doc. # 99], at p. 63, lines 7-20. Defendant will provide counsel for Plaintiffs with copies of the photographs that were submitted at the hearing.

(Doc. 141-3, at p. 10).

Third, for the reasons set forth regarding Requests 2 and 12: (1) the documents sough by this request concerning Victoryland's planned or actual bingo activities constitutes a "trade secret or other confidential research, development, or commercial information" that is to be protected from disclosure; (2) Lucky Palace, as a competitor seeking confidential trade secret information, has utterly failed to meet its burden of establishing that the information sought is "sufficiently relevant and necessary to his case

to outweigh the harm disclosure would cause to the person from whom he is seeking the information," 8 C. Wright & A. Miller, *Federal Practice & Procedure*: Civil § 2043; (3) the Protective Order in this case is not adequate to protect Victoryland from disclosure of its trade secrets to Lucky Palace, which seeks to directly compete with Victoryland, and which could use and profit from the confidential information; (4) the potential harm to Victoryland from disclosure of its trade secrets far outweighs Lucky Palace's non-existent need for the requested information. Moreover, the information sought does not concern and is not relevant to whether: (a) there is any conceivable rational basis for the four aspects of the County Bingo Regulations to which Plaintiffs object; (b)Victoryland conspired to have those aspects of the Bingo Regulations promulgated; (c) Victoryland tortiously interfered with Plaintiffs' existing or prospective business relationships; or (d) Victoryland bribed Fred Gray, Jr.

### H.    Lucky Palaces' Request 19

**Request 19:** **"**All documents, internal memos, notes, calendars, minutes, agendas or materials of any nature whether on paper or electronic filed information regarding any face-to-face meetings or telephone conversations with any person or entity concerning electronic bingo in Macon County, Alabama from January 1, 1999 until the present."

**Response:**    "Victoryland objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. In addition, the request is overly broad as written. Victoryland further objects to this request to the extent that it seeks material that is subject to the attorney-client privilege, the work

product doctrine and/or confidential information that is protected under Rule 1.6 of the Alabama Rules of Professional Conduct."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Request 19**

Lucky Palace's argument fails to address the shear over breath of this request. At the meet and confer, counsel for Victoryland attempted to get a reasonable limit on this request, but was told that it included conversations about electronic bingo with anybody including McDonalds. (Doc. 141-3, at pp. 10-11). <u>Moreover, the issue in this case is not electronic bingo but the County Bingo Rules</u>.     Furthermore, Lucky Palace's argument that meetings or discussions with Sheriff Warren or County officials would be discoverable is misplaced.  As concerns the relevant issue of the County Bingo Rules, Victoryland has already stated in its answers to Lucky Palace's interrogatories that neither it nor any of its agents or employees discussed "any proposed or suggested Rules and Regulations for licensing/operation of bingo facilities in Macon County, Alabama, at any time with Sheriff David Warren or any employee of Macon County, Alabama." *See* Victoryland's Answer to Interrogatory 13 (Doc. # 142), at p. 9.   This request also encompasses privileged information.[6]

I.      **Lucky Palaces' Request 21**

 **Request 21:  "**All presentations, hand-outs, power-point presentations or materials of any description presented by this Defendant to any group of shareholders or outside persons regarding electronic bingo in Macon County, Alabama in any way from January 1, 1999 until the present."

---

[6] Victoryland's privileged documents are covered by its privilege log and accompanying memorandum of law.

**Response:** "Victoryland objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. Victoryland further objects to this request by a party that desires to compete with Victoryland because it improperly seeks commercial, proprietary, trade secret and competitive information, the disclosure of which would be harmful to Victoryland and its business. Further, as written, the request is overly broad and unduly burdensome."

**Supplemental Response:** "At the January 2, 2008 meet and confer, counsel for Plaintiff stated that this request concerned any presentations indicating an effort or plan by Victoryland to influence the Sheriff regarding the Bingo Rules and Regulations. Based upon this clarification and without waiving any general or specific objections, Victoryland states that there are no presentations indicating an effort or plan by Victoryland to influence the Sheriff regarding the Bingo Rules and Regulations."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Request 21

Lucky Palace's Motion to Compel fails to even address Victoryland's Supplemental Response (Doc. 143-2), which was served a week before Lucky Palace filed its Motion to Compel. That Supplemental Responses makes clear that Victoryland has no responsive documents. Thus, there is nothing to compel, and the motion must be denied.[7]

---

[7] If Lucky Palace tries to change its clarification as set forth in the Supplemental Response at this late date, Victoryland requests that it be given an ample opportunity to review such revised request and to respond to it. To the extent Lucky Place argues that it still seeks to compel confidential presentations covered by this Request, those presentations should be protected from disclosure as trade secrets or confidential commercial information for the reasons set forth above concerning Requests 2 and 12.

## II.    Lucky Palaces' Request 22

**Request 22:**  "All documents, internal memos, notes, e-mails, electronic filed information or materials of any type reflecting any contact whatsoever between this Defendant (its agents and employees) and Sheriff Warren from January 1, 2002 until the present regarding any matter."

**Response:**  "Victoryland objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information.  In addition, Victoryland objects to this request on the grounds that it is overly broad and unduly burdensome."

**Supplemental Response:** "Based upon Plaintiff's Counsel's clarification that this request was limited to any direct communication between any employee of Victoryland and Sheriff Warren and without waiving any general or specific objection, Victoryland is continuing its investigation regarding this request and will supplement this response as appropriate."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Request 22

In addition to seeking irrelevant information, Lucky Palace's Motion to Compel fails to even address Victoryland's Supplemental Response (Doc. 143-2), which was served a week before Lucky Palace filed its Motion to Compel.  That Supplemental Responses makes clear that based upon the clarification and limitation set by Plaintiffs' counsel at the meet and confer that Victoryland "is continuing its investigation regarding

this request and will supplement this response as appropriate." Thus, there is nothing to compel, and the motion should be denied.[8]

## CONCLUSION

For the reasons set forth above, Lucky Palace's Motion to Compel should be denied.

Respectfully submitted this 24th day of March, 2008.


 /s/ Peter J. Tepley_____
Peter J. Tepley, One of the Attorneys for
Macon County Greyhound Park, Inc.


**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & REDIKER, LLC**
William M. Slaughter
Patricia C. Diak
Peter J. Tepley
Khristi Doss Driver
2001 Park Place North
1400 Park Place Tower
Birmingham, Alabama 35203
205-251-1000 (telephone)
205-324-1133 (facsimile)

**WHITE ARNOLD & DOWD PC**
John Mark White mwhite@waadlaw.com
Augusta S. Dowd adowd@waadlaw.com
Rebecca DePalma rdepalma@waadlaw.com
2025 Third Avenue North, Suite 600
Birmingham, AL  35203
205-323-1888 (telephone)
205-323-8907 (facsimile)

---

[8] If Lucky Palace, tries to change its clarification and limitations as set forth in the Supplemental Response at this late date, Victoryland requests that it be given an ample opportunity to review such revised request and to respond to it.

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I have served a copy of the foregoing answer on the following counsel of record by filing a copy of it through the Court's electronic filing system on this 24th day of March, 2008.

James H. Anderson
Ryan Wesley Shaw
Beers, Anderson, Jackson, Patty, Van Heest & Fawal, P.C.
P.O. Box 1988
Montgomery, AL  36102
janderson@beersanderson.com
wshaw@beersanderson.com

Fred D. Gray, Sr.
Fred D. Gray, Jr.
Gray, Langford, Sapp, McGowan, Gray & Nathanson
P.O. Box 830239
Tuskegee, AL  36083-0239
fgray@glsmgn.com
fgrayjr@glsmgn.com

Robert K. Spotswood
Michael T. Sansbury
Spotswood, Sansom & Sansbury, L.L.C.
940 Concord Center
2100 Third Avenue North
Birmingham, AL  35203
rks@spotswoodllc.com
msansbury@spotswoodllc.com

John M. Bolton, III
Charlanna White Spencer
Hill, Hill, Carter, Franco, Cole & Black, P.C.
425 S. Perry Street
Montgomery, AL  36104
jbolton@hillhillcarter.com
cspencer@hillhillcarter.com

W. Lewis Garrison
Stephen D. Heninger
Heninger Garrison Davis, L.L.C.
2224 1st Avenue North
Birmingham, AL 35203
wlgarrison@hgdlawfirm.com
steve@hgdlawfirm.com

George L. Beck, Jr.
Capell Howard, PC
P.O. Box 2069
Montgomery, AL 36102-2069
glb@chlaw.com

Ronald G. Davenport
Rushton, Stakely, Johnston & Garrett, P.A.
P.O. Box 270
Montgomery, AL 36101
rgd@rsjg.com

/s/ Peter J. Tepley
Of Counsel

1

1       IN THE UNITED STATES DISTRICT COURT

2       FOR THE MIDDLE DISTRICT OF ALABAMA

3              EASTERN DIVISION

4

5    CASE NUMBER:  3:06-CV-01113-WKW-WC

6    HOPE FOR FAMILIES & COMMUNITY

7    SERVICES, INC., ET AL.,

8              Plaintiffs,

9              vs.

10   DAVID WARREN, IN HIS OFFICIAL CAPACITY AS

11   THE SHERIFF OF MACON COUNTY, ET AL.,

12             Defendants.

13             S T I P U L A T I O N

14             IT IS STIPULATED AND AGREED by and

15   between the parties through their respective

16   counsel, that the video deposition of

17   Sheriff David Warren may be taken before

18   Sara Mahler, CCR, at the offices of Beers,

19   Anderson, Jackson, Patty & Van Heest, at 250

20   Commerce Street, Suite 100, Montgomery,

21   Alabama 36104, on the 19th day of March,

22   2008.

23        DEPOSITION OF SHERIFF DAVID WARREN

321

1    that they give you any report or information

2    of their net profit from bingo, electronic

3    bingo, from 2004 until this very day?

4              Those figures are available to

5    me --

6         Q.    Have you ever requested them?

7         A.    -- any time I want to see

8    them.  I have seen them in past times.  I

9    will see them this year.

10        Q.    You have seen them?

11        A.    Yes.

12        Q.    Please tell me what they are,

13   in your best recollection?

14        A.    I have not seen them for this

15   year.

16        Q.    What was 2004 for bingo only?

17        A.    The charities?

18        Q.    No, Victoryland.  What was

19   Victoryland's net profit for 2004 for bingo

20   only?

21        A.    I am not required to keep up

22   with Victoryland's net profit.

23        Q.    I'm asking you what you saw.

323

1   numbers?

2        A.      Sir, I can sit here and repeat

3   what I just told you.  I don't know what

4   Victoryland's net profits are.

5        Q.      And I don't expect you right

6   now to spit it out to me.  But I want your

7   honest truthful answer, have you ever laid

8   your eyes on the official report that shows

9   the net profit for Victoryland from bingo

10  operations only in Macon County for 2004?

11       A.      I do not know what bingo's --

12  what Victoryland's net profits are.

13       Q.      Have you ever seen it for

14  2004?

15       A.      No, sir.

16       Q.      Have you ever asked to see it?

17       A.      No, sir.

18       Q.      Have you ever seen the figures

19  for the net profits for Victoryland for

20  bingo operations only in Macon County for

21  2005?

22       A.      No, sir.

23       Q.      Have you ever asked to see

1   them?

2        A.      I have not asked to see them.

3        Q.      You have every confidence if

4   you did ask they would let you see them?

5                MR. TEPLEY:  Object to the

6   form.

7        Q.      True?

8        A.      I have been given -- I'm sure

9   that if I wanted to see those, I could see

10  them.  But I am not concerned, at this point

11  in time, with Victoryland's net profits.

12       Q.      Okay.  Let me finish the

13  years.

14               Have you seen the official

15  reports of the net profits at Victoryland

16  from bingo operations only in Macon County

17  for 2006?

18       A.      No, sir.

19       Q.      Have you asked to see them?

20       A.      No, sir.

21       Q.      And you have not seen the

22  figures for net profits for Victoryland from

23  bingo operations only in Macon County for

325

1   2007?

2          A.      No, sir.

3          Q.      And you haven't asked to see

4    them?

5          A.      No, sir.

6          Q.      Sheriff, when the good people

7    of Macon County elected you sheriff, 1995,

8    first time --

9          A.      1995.

10         Q.      -- you don't feel you've

11   occupied your office as a -- as an ostrich,

12   do you?  Put your head in the sand?

13                 Pat yourself on the back, you

14   can tell me no.  I don't think so.

15         A.      I have served the citizens of

16   Macon County to the best of my ability every

17   year, every minute that I've been the

18   sheriff.

19         Q.      Help me understand, why

20   weren't you at least curious -- When you've

21   got the power to demand a report, why aren't

22   you curious to know how much money is

23   Victoryland making off this monopoly?