**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al.,** ) ) ) | |
| **Plaintiffs,** ) ) | **Case No.: 3:06-cv-01113-WKW-csc** |
| **v.** ) ) | |
| **DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al.,** ) ) ) ) | |
| **Defendants.** ) | |

**MACON COUNTY GREYHOUND PARK, INC.'S**
**OPPOSITION TO PLAINTIFF, LUCKY PALACE, LLC'S,**
**MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

On January 22, 2008, Plaintiff Lucky Palace, LLC filed a Motion to Compel Answers to Interrogatories By Defendant Macon County Greyhound Park, Inc. ("Victoryland") ("Motion to Compel") (Doc. #142). On March 13, 2008, the Court issued an Order (Doc. #149), which among other things required Victoryland to file a written response showing cause why Lucky Palace's Motion to Compel should be not be granted. Victoryland files this Opposition to the Motion to Compel. As shown below, Lucky Palace improperly seeks to compel answers to interrogatories that: (a) seek a competitor's trade secrets or confidential commercial information without meeting its burden for compelling such privileged information; (b) are not relevant to the issues in this case; and (c) have already been fully answered. For the reasons set forth below, the Motion to Compel is due to be denied.

## I.    RELEVANT LEGAL LIMITS ON DISCOVERY

Although the concept of relevance for purposes of discovery is defined more broadly than relevance for purposes of admissibility at trial, it has long been established that the right to discovery is not unlimited and has "ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)    "A bare allegation of wrongdoing . . . is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case." *Oppeneimer Fund, Inc. v. Sanders,* 437 U.S. 340, 363 (1978). Moreover, to be relevant, discovery must "relat[e] to an issue *necessarily* in the case." *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1326 (Fed. Cir. 1990). (emphasis added).  "Discovery should be tailored to the issues involved in the particular case."  *Mary Jones v. Colorcraft Corp*., 1983 WL 565*1 (S.D. Ga. Aug. 4, 1983) (quoting *Hardrick v. Legal Services Corp*., 96 F.R.D. 617, 618 (D.D.C. 1983)). Relevancy for discovery purposes may be determined by whether the material sought will have a <u>substantial</u> effect on the case's outcome, and the matters being asked must be relevant to the issues to be tried.  *See United States v. Trucking Employers, Inc.*, 72 F.R.D. 101 (D.D.C. 1976); *Greene v. Raymond*, 41 F.R.D. 11 (D. Col. 1966). Furthermore, discovery based on mere suspicion or speculation "is not relevant to 'subject matter involved.'" *Micro Motion,* 894 F.2d at 1326 (Fed. Cir. 1990) (citations omitted).

As evidenced by the continually-changing allegations and causes of action in this matter, as well as Plaintiffs' Counsel's own statements in the presence of this Court, Plaintiffs have nothing more than speculation and suspicions to support their allegations in this case.  Such speculation and suspicions are not sufficient to enter the nexus of

relevance for purposes of discovery. As set out in the individual responses below, Plaintiffs here seek discovery of information not even remotely relevant to the material, *necessary* issues in this action.

While the expression 'fishing expedition' has been generally denigrated as a reason for objecting to discovery, in some situations, such as the one at hand, it remains apt. Here, Lucky Palace is "unmoored and trolling." *Micro Motion,* 894 F.2d at 1327 (citing *Milazzo v. Sentry Ins*., 856 F.2d 321, 322 (1st Cir. 1988). *See also Paul Kadair, Inc. v. Sony Corp*., 694 F.2d 1017, 1032 (5th Cir. 1983); *Hancock Indus. v. Schaeffer*, 619 F.Supp. 322, 331 (E.D. Pa. 1985)).

## II.    PLAINTIFFS' CURRENT CLAIMS

Plaintiffs are now on their Fourth Amended Complaint in this case. (Doc. 148, filed March 8, 2008). Lucky Palace, a party that seeks to operate an electronic bingo casino in direct competition with Victoryland, and the other Plaintiffs now assert the following claims against the Defendants: (1) RICO § 1962(c); (2) RICO § 1962(d); (3) violation of the Equal Protection Clause; (4) a Section 1983 Conspiracy to deprive the Plaintiffs of equal protection of the laws; (5) tortious interference with contractual and business relationships (against Victoryland and McGregor only); and (6) tortious interference with prospective business relationships (against Victoryland and McGregor only). (Doc. #148). Victoryland answered the Fourth Amended Complaint on March 19, 2008. (Doc. # 154).

All of the claims in the Fourth Amended Complaint arise from Plaintiffs' allegations (which form the basis of their Equal Protection claim against the Sheriff) that there is no rational basis for the following four aspects of the County Bingo Regulations:

(1)    the requirements in the County Bingo Regulations that electronic bingo cannot be conducted at "any qualified location . . . unless a minimum of fifteen applicants shall first obtain a Class B [electronic bingo] License for such location" (the "Fifteen License Minimum") (Doc. # 148, ¶¶ 46, 129);

(2)    the portion of the County Bingo Regulations that provide that there can be no more than 60 issued and operational electronic bingo licenses in Macon County at any given point in time (the "Sixty License Maximum") (Doc. # 148, ¶¶ 55, 129);

(3)    the allowance of 59 of 60 electronic bingo licenses to be issued to charities who operate electronic bingo games at Victoryland (Doc. #148, ¶ 129); and

(4)    the requirement that a party who wishes to operate electronic bingo games in Macon County have a multi-million dollar facility before it can operate Class B (electronic) bingo games (the "Existing Facility Requirement"). (*Id.*)

The Plaintiffs' Section 1983 conspiracy claim against Victoryland is manufactured from the allegation that Victoryland conspired to have these four aspects of the County Bingo Regulations promulgated. (*See* Doc. #148, ¶¶ 132-133). Likewise, Plaintiffs' tortious interference with contractual and business relationships and tortious interference with prospective business relationships claims against Victoryland and McGregor are cobbled together from the allegation that they influenced or aided the Sheriff in promulgating these four aspects of the County Bingo Regulations. (*See* Doc. #148, ¶¶ 141-143; 146-148). The essence of Plaintiffs' baseless RICO claims is that Victoryland and Milton McGregor allegedly bribed the Sheriff's lawyer, Fred Gray, Jr., who is not a party to this action and who Plaintiffs contend is a "public servant," in order to have these four aspects of the County Bingo Regulations promulgated. (*See, e.g.,* Doc. #148, ¶¶ 70-71; 97).

### III.     THE SPECIFIC INTERROGATORIES AT ISSUE AND WHY THE MOTION TO COMPEL SHOULD BE DENIED

For clarification and convenience of the Court, Victoryland has set out its arguments in opposition to the Motion to Compel by setting out in full Lucky Palace's Interrogatory; Victoryland's Response; Victoryland's Supplemental Response where appropriate; and Victoryland's Opposition to Plaintiffs' Arguments in the Motion to Compel.

### A.     <u>Lucky Palace's Interrogatory 4.</u>

**Interrogatory 4:** "Does this Defendant oppose the issuance of a license/licenses to operate an electronic bingo facility at any facility/location other than Victoryland in Macon County, Alabama?"

**Response:** "Victoryland objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. This Defendant's subjective opinions are simply not relevant to the issues in this case. Further, this interrogatory is oppressive, vexatious and filed for an improper purpose, as it has no bearing on this proceeding and is clearly designed for uses outside this proceeding."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 4

Despite Lucky Palaces' claim to the contrary, this Interrogatory specifically seeks Victoryland's subjective opinions on an issue that is not relevant to the issues necessarily present in this case. The fundamental issue in this case is whether there is a <u>conceivable</u> rational basis for the four aspects of the County Bingo Regulations about which Plaintiffs

complain.  *See F.C.C. v. Beach Commc'ns, Inc.* 508 U.S. 307, 313-14 (1993).  If there is any conceivable rational basis for those aspects of the County Bingo Regulations (which Victoryland submits there is), the Plaintiffs' whole case falls apart as its remaining claims for conspiracy, RICO claims and tortious interference are all based on the four aspects of the Bingo Regulations about which they complain.  Moreover, any alleged illicit motives of Victoryland, the Sheriff and others for alleged wrongdoing (all of which is sheer speculation) are irrelevant to the fundamental issue in this case of whether there is a rational basis for the four aspects of the County Bingo Regulations that the Plaintiffs challenge.  *See International Paper Co. v. Town of Jay*, 928 F.2d 480, 485 (1st. Cir. 1991) (finding there was a rational basis for the town ordinance, and refusing to delve into the motives of the town counsel, noting that absent a suspect or quasi-suspect classification or a fundamental right, courts will not strike down an ordinance with a rational basis because of an alleged illicit motive); *Wal-Mart Stores, Inc. V. City of Turlock*, 483 F. Supp. 2d 1023, 1036-37 (E.D. Cal. 2007) (noting that one of the reasons an improper motive does not affect an equal protection review of an ordinance is because "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.") (quoting *Beach Commc'ns*, 508 U.S. at 315.).

Whether or not Victoryland opposes the licensing of another bingo facility in Macon County is likewise irrelevant because any non-competitive intent on the part of Victoryland is not actionable under the *Noerr-Pennington* doctrine.  That doctrine recognizes that Victoryland and the Plaintiffs each have a First Amendment right to petition governmental officials for governmental action favorable to it even if that action

6

was motivated by an anti-competitive intent and they cannot be found liable for such actions. The purpose of the doctrine is to protect private parties who petition the government for laws or rules or interpretations of existing laws or rules even if the private party pursues those goals with an anti-competitive intent. *See, e.g., Video Int'l. Production Inc. v. Warner-Amex Cable Communications Inc*., 858 F.2d 1075, 1082-1083 (5th Cir. 1988). Although the doctrine was originally developed in the anti-trust field, it has been expanded to "protect first amendment petitioning of the government from claims brought under federal and state laws, including section 1983 and common-law tortuous interference with contractual relations." *Id*. at 1084.

Moreover, an answer to this interrogatory does nothing to further the inquiry into whether: (a) Victoryland actually conspired to have the four aspects of the Bingo Regulations to which Plaintiffs object promulgated; (b) Victoryland actually tortiously interfered with Plaintiffs' existing or prospective business relationships an existing; or (c) Victoryland actually bribed Fred Gary, Jr.

Instead of being relevant to the issues in this case, this interrogatory appears to be designed to further Plaintiffs' efforts to use political pressure to obtain a bingo license. Not only is Lucky Palace seeking to compete with Victoryland, but additional documents produced by the Libra entities and obtained by Victoryland's counsel establish that Lucky Palace and other Plaintiffs in this case, have engaged in a strategy to use grassroots pressure, pressure from above, and "political clout" to force the Sheriff to give Lucky Palace a bingo license. *See* the Affidavit of Peter Tepley and Ex. E thereto, which were filed under seal. As part of this effort, Lucky Palace and certain other Plaintiffs papered Macon County with fliers urging citizens to call Sheriff Warren and tell him to approve

their bingo license. (*See* Doc. # 88-2).   Victoryland has reason to believe that Lucky Palace and the other Plaintiffs have not abandoned their campaign to use political pressure to obtain bingo licenses.  This interrogatory which asks for opinions not facts appears designed to part of that political strategy.

For the reasons stated above, no response should be compelled to this interrogatory as it seeks irrelevant information and/or was issued for improper purpose.

**B.    Lucky Palace's Interrogatory 5**

**Interrogatory 5:**    "If the answer to the preceding Interrogatory is in the affirmative, please state in detail the reason for this opposition."

**Response:**    "See objection to Interrogatory 4."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 5**

For the reasons stated above with regard to Interrogatory 4, no response should be compelled to this interrogatory as it seeks irrelevant information and/or was issued for improper purpose for use outside of this case.

**C.    Lucky Palace's Interrogatory 6**

**Interrogatory 6:** "Does this Defendant contend that the operation of electronic bingo at any other facility/location besides Victoryland would be harmful to the citizens of Macon County, Alabama, in any respect?  If so, please state in detail the basis for this contention."

**Response:**    Victoryland objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant

information.  This Defendant's subjective opinions are simply not relevant to the issues in this case.

**Victoryland's   Opposition   to   Lucky   Palace's   Argument   Regarding Interrogatory 6**

For the reasons stated above with regard to Interrogatory 4, no response should be compelled to this interrogatory as it seeks wholly irrelevant information and/or was issued for improper purpose for use outside of this case.  Contrary to Lucky Palace's argument, this interrogatory does not seek any information concerning any actions on the part of Victoryland, i.e. it seeks not a single bit of information regarding "hands, feet, or voices."   It does not even seek to determine what opinions Victoryland may have expressed to anyone.  It merely seeks to ascertain Victoryland's irrelevant subjective opinions.[1]

**D.      Lucky Palace's Interrogatory 9**

**Interrogatory 9.**      "Please state the annual gross revenues for electronic bingo gaming at Victoryland for the years 2003, 2004, 2005 and 2006."

**Response:**     "Victoryland objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. Further, the request by a party that desires to compete with Victoryland improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business.    This request is

---

[1] Victoryland did not raise a "common interest" objection to this interrogatory and does not know why Lucky Palace mentions it here.

oppressive, vexatious and filed for an improper purpose, and designed for use outside this proceeding."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 9**

Lucky Palace's arguments -- that (a) Victoryland's profitability and volume of income from bingo goes to the heart of motive and intent; (b) "Lucky Palace is not in competition with Victoryland"; and (c) Lucky Palace needs Victoryland's revenues for its damages claim -- are without merit for several reasons.

    1.    <u>The information sought constitutes trade secrets or confidential commercial information</u>.

Lucky Palace entirely ignores and utterly fails to address Victoryland's legitimate objection that the interrogatory "improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business." From the Affidaivt of S. Lee Yates (Doc. # 158-2) and the law of Alabama, it is clear that the revenue information sought by this interrogatory concerning Victoryland's bingo revenues constitutes a "trade secret or other confidential research, development, or commercial information."

Under the Federal Rules of Civil Procedure, objection to an interrogatory may be made on grounds that would support a protective order under Rule 26(c).  *See* Fed. R.. Civ. P. 33 Cmt to 1970 Amendment to Rule 33(a) ("As is true under existing law, the responding party who believes that some parts or all of the interrogatories are objectionable may choose to seek a protective order under new Rule 26(c) or may serve objections under this rule.").  Rule 26(c)(7) of the Federal Rule of Civil Procedure provides in pertinent part that a Court may issue a protective order "that a trade secret or

other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." In determining whether information constitutes a trade secret, federal courts look to state law. *See, e.g, Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1158 (11th Cir. 2004) (applying Alabama Trade Secret Act in determining what constituted trade secret).   Alabama law defines a trade secret as information that:

  a.     Is used or intended for use in a trade or business;

  b.     Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;

  c.     Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;

  d.     Cannot be readily ascertained or derived from publicly available information;

  e.     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

  f.     Has significant economic value.

Alabama Code § 8-27-2 (1975).

As shown by the Affidaivt of S. Lee Yates (Doc. # 158-2), Victoryland's gross revenues from electronic bingo are clearly trade secrets under this definition.   The financial information that Lucky Palace seeks from Victoryland are used by Victoryland in its business and have significant economic value.  (Doc. # 158-2, ¶ 4, 9).  The answers would reveal confidential information relating to corporate revenues. (*See id.,* ¶¶4-8). The release of such information would certainly give potential competitors, including Lucky Palace, an outline of how to compete against Victoryland.

Further, Victoryland is a private, closely held corporation, and as a private, closely held corporation, Victoryland's corporate financial information including gross revenues from bingo are not publicly known. (*Id.*, ¶¶ 3, 6-7). Nor can it be readily ascertained from publicly available information. (*Id.*, ¶ 7). Victoryland has also previously taken steps to prevent the disclosure of its financial information by objecting to a subpoena issued by the Plaintiffs to Victoryland for similar information before Victoryland was a party to the instant action. Accordingly, this Court should follow Alabama law and find that Victoryland's gross revenues from bingo are trade secrets or confidential commercial information not subject to disclosure.

Moreover, Alabama Courts have held that analogous information, including customer lists, financial statements, tax returns, sales evaluations, profit statements, and information concerning gross and net profits constitute trade secrets under the statute. *See Ex parte W.L. Halsey Grocery Co.*, 897 So.2d 1028, 1034-1035 (Ala. 2004) (holding that customer lists, financial statements, tax returns, and sales evaluations were trade secrets); *Ex parte Miltope Corp.*, 823 So.2d 640, 645-646 (Ala. 2001) (holding that "information concerning [] gross and net profit" as well as customer orders and board minutes constituted a trade secret and was not required to be disclosed). Additionally, federal courts and courts in other jurisdictions have held that company profits and similar financial information of a company is a trade secret. *See Corbett v. Free Press Ass'n*, 50 F.R.D. 179, 180 (D. Vt. 1970) ("the profits or losses of a business are generally of a confidential nature."); *Gelb v. American Tel. & Tel. Co.*, 813 F.Supp. 1022, 1034-35 (S.D.N.Y.1993) (internal financial information is confidential); *Uinta Oil Refining Co. v. Continental Oil Co.*, 36 F.R.D. 176, 182 (D. Utah 1964) (quashing subpoena duces tecum

that requested profit and loss statements because "matters of profit and income in the depth sought ordinarily are treated as confidential, and the ramifications of such disclosures are difficult to evaluate [and] [t]he foundational data sought would almost completely reveal the operational experiences of the companies."); *Delucca v. GGL Industries, Inc.*, 712 So.2d 1186, 1187 (Ct. App. Fl. 1998) (finding company's business documents, including tax returns, documents reflecting income, and customer's names and addresses, constituted "trade secrets" under Florida law).

    2.    <u>Lucky Palace has failed to meet its burden for requiring the production of such information.</u>

Because it is obvious that the information sought by Interrogatory 9 is confidential information, "the burden is on [Lucky Palace as] the party seeking discovery to establish that the information, is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information."  8 C. Wright & A. Miller, *Federal Practice & Procedure*: Civil § 2043. Yet, Lucky Palace has completely failed to meet this burden and has not even attempted to do so.[2]

As the Alabama Supreme Court noted in *Ex parte Miltope Corp.*, courts must be very careful in requiring the disclosure of trade secrets because once the information is disclosed, its "valuable secretive nature" cannot be restored and disclosure of trade secrets can cause irreparable harm:

> Trade secrets should receive greater protection from discovery because they "derive[ ] economic value from being generally unknown and not readily ascertainable by the public." "Once the information becomes

---

[2] If Lucky Palace finally tries at this late date to meet its burden, the Court should consider what Lucky Palace submits in light of "all the pertinent circumstances, including dangers of abuse." *Id.*

available through the discovery process, a subsequent appeal, even if successful, cannot restore the valuable secretive nature." *Id.* Disclosure of a trade secret could cause "irreparable harm." (internal citations omitted)

*Miltope*, 823 So.2d at 645.

Due to the problems inherent in the disclosure of trade secrets, the *Miltope* court held that the trial court abused its discretion in ordering the Defendant to produce information regarding its profits "because of the irreparable harm the disclosure of its trade secrets could do." *Id.* It is clear that if the Court compels Victoryland to produce its gross revenues or profits from electronic bingo to Lucky Palace, Victoryland will suffer irreparable harm.

3.    Despite its claim to the contrary, Lucky Palace seeks to compete with Victoryland

There can be no dispute that Lucky Palace seeks to compete with Victoryland. Lucky Palace has previously informed this Court that it has a common interest with Libra Securities Holdings, LLC (which has an ownership interest in Lucky Palace) and Libra Securities, LLC (a wholly-owned subsidiary of Libra Securities Holdings and Lucky Palace's investment banker), which has provided financial and strategic services to Lucky Palace and which "is in partnership with Lucky Palace to secure financing and raising capital for the eventual opening of Bingo operations in Shorter, Alabama." (Doc. #128, at ¶¶ 1-4).   Documents authored by the Libra Securities entities (which were produced in response to Victoryland's subpoena), to obtain financing for Lucky Palace, repeatedly refer to Victoryland as a "competitor" and some of those documents refer to Victoryland as Lucky Palace's "primary competitor" *See* Affidavit of Tepley and Exhibits A-D and F thereto, which were filed under seal.

It is undisputed that Lucky Palace is seeking to compete with Victoryland. Moreover, additional documents produced by the Libra entities and obtained by Victoryland's counsel establish that Lucky Palace and other Plaintiffs in this case have engaged in a strategy to use grassroots pressure, pressure from above, and "political clout" to force the Sheriff to give Lucky Palace a bingo license. *See* Affidavit of Tepley and Exhibit E thereto, which were filed under seal. As part of this effort, Lucky Palace and certain other Plaintiffs papered Macon County with fliers urging citizens to call Sheriff Warren and tell him to approve their bingo license. (*See* Doc. # 88-2). Victoryland has reason to believe that Lucky Palace and the other Plaintiffs have not abandoned their campaign to use political pressure to force the Sheriff to provide them with bingo licenses, and has every reason to believe that Plaintiffs will use any financial information obtained from Victoryland to aid them in their plan to compete against Victoryland to Victoryland's detriment. Because of the problems with disclosure of trade secrets courts should be particularly wary, where as here, the disclosure of trade secrets is sought by a competitor. "Courts have presumed that disclosure to a competitor [such as Lucky Palace] is more harmful than disclosure to a noncompetitor." *R & D Business Systems v. Xerox Corp.,* 152 F.R.D. 195, 197 (D. Colo. 1993).

    4.    <u>The information sought is not relevant</u>

Even *if* the requested information were not protected or privileged, Victoryland's gross bingo revenues are not relevant to any of Plaintiffs' underlying claims. *Fed. R. Civ. P.* 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is <u>relevant</u> to the subject matter involved in the pending action.") (emphasis added). "Ordinarily, Rule 26 will not permit the discovery of facts concerning a defendant's

financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." *Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc.*, 75 F.R.D. 3, 5 (S.D. Ohio 1977); *Henderson v. Zurn Industries, Inc.*, 131 F.R.D. 560, 562 (S.D. Ind. 1990); *Bogosian v. Gulf Oil Corp*, 337 F. Supp. 1228 (E.D. Pa. 1971). Furthermore, "[a] district court can deny a motion to compel further discovery if it concludes that the questions are irrelevant." *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 732 (11th Cir.1984).

In its Motion to Compel, Lucky Palace argues that Victoryland's gross bingo revenues are relevant to "motive, intent to seek to maintain and assure a monopoly." However, Victoryland's gross bingo revenues do not provide evidence of motive or intent because it is an "axiomatic conclusion that businesses are operated to make a profit." *Ex parte Miltope Corp.*, 823 So.2d at 647 (Hardwood, J. concurring)(refusing to allow discovery of net profits to prove motive). *See also Crawford Broadcasting Co. v. Fine*, 904 So.2d 221, 225 (Ala. 2004) (ruling in a claim involving defamation that information concerning defendants' compensation was in no way relevant to proving "actual malice" and finding the request constituted harassment) Consequently, Lucky Palace does not need Victoryland's gross bingo revenues or other financial information simply to prove that Victoryland sought to make a profit or that it did in fact make a profit. If necessary, Victoryland will stipulate that to date, Bingo has been profitable. In fact, at the hearing September 15, 2007, hearing on the Defendants' Motions to Dismiss the Third Amended Complaint, in response to the Plaintiffs' bald allegations that due to the alleged monopoly there was no economic development at Victoryland, Defendants submitted photographs

to show that Victoryland was engaged in a $100 million renovation of its facility.  *See* Transcript of 9/15 Hearing (Doc. # 99), at p. 63, lines 7-20.

     5.    <u>The harm that disclosure of Victoryland's trade secrets will cause is not eliminated by the Protective Order</u>.

Victoryland anticipates that Lucky Palace may argue that Victoryland's concerns are adequately addressed by the Protective Order that has been entered in this case. But that Protective Order is not adequate to protect Victoryland's trade secrets. While protective orders can minimize the likelihood of a party divulging sensitive or privileged information, they do not eliminate the possibility that such information will be divulged or used for improper purposes. *See Carbide v. Free Press Association, Inc.*, 50 F.R.D. 179, 181 (D. Vt. 1970) ("While such [a protective order] certainly lessens the danger of sensitive information falling into the hands of an unauthorized person, it does not eliminate such a danger."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) (holding protective orders are subject to modification or being rescinded at any time); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.1993) (holding same). In this case, the Libra entities with whom Lucky Palace has admittedly "freely shared" "documents and information concerning this litigation" (Doc. #128, ¶ 4) are not parties in this case or parties to the Protective Order.  In addition, the non-profit Plaintiffs have stated that they could seek relief from the protective order at a later time. *See* Doc. 122, at ¶ 4.  Thus, the protective order in this case does not overcome the significant risk of irreparable harm to Victoryland as a result of disclosure of its protected information. This is particularly true in light of Plaintiffs' political and publicity campaigns designed to harm Victoryland.  Further, Lucky Palace and its co-Plaintiffs seek to compete with Victoryland. Once Lucky Palace has access to Victoryland's financial information, the

harm has already occurred as Lucky Palace, a primary competitor, is a likely to use and profit from the confidential information. *Ex parte Miltope*, 823 So.2d at 644 (finding a protective order ineffective when a competitor is granted expansive discovery of parties sensitive business information since the court has no system of monitoring the competitor's use of the information).

      6.    <u>The harm to Victoryland far outweighs any need Lucky Palace might have</u>.

For the reasons stated above, the potential harm to Victoryland from disclosure of its trade secrets and confidential commercial information far outweighs Lucky Palace's virtually non-existent need for the requested information. *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 395 (D.Colo. 1998) ("[T]he potential harm which would occur from disclosure of [trade secrets that include revenue projections, price forecasts, pricing options, evaluations of proposed capital structures and analyses] far outweighs [Plaintiffs'] stated needs for it."). Further, Victoryland should not be compelled to produce corporate financial documents to a potential competitor when, as here, those documents are not relevant to any claim or defense and would likely result in competitive harm. *U.S. v. United Fruit Co.*, 410 F.2d 553, 556 (5th Cir. 1969)[1] (holding that courts should "exercise their discretion to avoid unnecessary disclosure of [confidential] information, particularly where the action is between competitors"); *Duracell v. SW Consultants, Inc.*, 126 F.R.D. 576, 577 (N.D. Ga. 1989) (holding

---

[1] *Bonner v. City of Prichard*, 661 F.2d 1206, 1208 (11th cir.1981) (adopting decisions of the former Fifth Circuit rendered prior to October 1, 1981 as precedent).

discovery is "not intended to forfeit a party's ability to compete effectively in the market by opening up tangentially relevant financial and marketing information to competitors").

       7.    <u>Lucky Palace does not need Victoryland's revenues for its damages claim</u>.

Lucky Palace does not need Victoryland's revenues for its damages claim. Lucky Palace served Rule 26 Disclosures in this case in which it claimed actual damages of $136,227,000. This alleged damage calculation was made by Plaintiffs without having access to Victoryland's trade secrets and confidential commercial information. Whatever calculations Lucky Palace made to come up with that figure must stand on their own. Moreover, it would be completely wrong to allow a party to obtain a competitor's trade secrets merely by claiming those secrets were necessary so that the party could determine if its own profit calculations and projections were accurate.

      **E.**    **<u>Lucky Palace's Interrogatory 10</u>**

**Interrogatory 10:**    "Please state the net profit from electronic bingo gaming at Victoryland for the years 2003, 2004, 2005 and 2006."

**Response:**    "Victoryland objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. Further, the request by a party that desires to compete with Victoryland improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business. This request is oppressive, vexatious and filed for an improper purpose, and designed for use outside this proceeding."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 10**

Lucky Palace, which seeks to compete with Victoryland in the area of electronic bingo, seeks with this interrogatory Victoryland's "net profits from electronic bingo," which is the exact type of confidential financial information that constitutes a protected trade secret under Alabama law.  Lucky Palace's argument for compelling a response to this interrogatory consists of two (2) points: (a) the information should be produced for the reasons argued with regard to Interrogatory 9; and (b) the information is likely to provide evidence showing motive and intent to insure that Victoryland achieved a bingo monopoly.  Each of these arguments is without merit for the reasons set forth below.

First, Lucky Palace's argument entirely ignores and utterly fails to address Victoryland's legitimate objection that this interrogatory "improperly seeks commercial, proprietary, trade secret and competitive information the disclosure of which would be harmful to Victoryland and its business."  For the reasons set forth concerning Lucky Palace's Interrogatory 9 above, which are incorporated herein by reference: (1) the information sought by this request concerning Victoryland's "net profits from electronic bingo" constitutes a "trade secret or other confidential research, development, or commercial information" that is to be protected from disclosure; (2) Lucky Palace, as a competitor seeking confidential trade-secret information, has utterly failed to meet its burden of establishing that the information sought is "sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information,"  8 C. Wright & A. Miller, *Federal Practice & Procedure*: Civil § 2043; (3) Lucky Palace (despite its bald claim to the contrary) clearly seeks to compete with Victoryland; (4) Victoryland's bingo profits are not relevant as they do not provide

evidence of motive or intent; (5) the Protective Order in this case is not adequate to protect Victoryland from disclosure of its trade secrets to Lucky Palace, which seeks to directly compete with Victoryland and which could use and profit from the confidential information, *Ex parte Miltope*, 823 So.2d at 644 (finding a protective order ineffective when a competitor is granted expansive discovery of parties sensitive business information since the court has no system of monitoring the competitor's use of the information); (6) the potential harm to Victoryland from disclosure of its trade secrets far outweighs Lucky Palace's virtually non-existent need for the requested information; and (7) Lucky Palace does not need Victoryland's net profits for its damages claim.

Second, Lucky Palace's argument that Victoryland's bingo revenues and profits and payments are relevant to show motive or intent is misplaced. Business revenues and profits simply do not provide evidence of motive because it is an "axiomatic conclusion that businesses are operated to make a profit." *Ex parte Miltope Corp.*, 823 So.2d 640, 647 (Ala. 2001) (Hardwood, J. concurring)(refusing to allow discovery of net profits to prove motive). Lucky Palace does not need Victoryland's bingo revenues, profits and payments to prove that Victoryland sought to make a profit or that it did in fact make a profit. As noted above regarding Interrogatory 9, Victoryland will stipulate if necessary that to date Bingo has been profitable.

### F.    Lucky Palace's Interrogatory 11

**Interrogatory 11.**    "Did this Defendant (or any agent or employee) discuss any proposed or suggested Rules and Regulations for Licensing and Operation by Bingo Facilities in Macon County, Alabama, at any time with Fred Gray, Jr.?

**Response:**     "Victoryland objects to this interrogatory to the extent it seeks information covered by attorney-client privilege, the work product doctrine, the common interest doctrine, other applicable doctrines and privileges and to the extent it seeks confidential information protected by Rule 1.6 of the Alabama Rules of Professional Conduct.  Victoryland further objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. **Without waiving any general or specific objection, Victoryland states that the answer is <u>yes</u>."** (emphasis added)

### Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 11

This Interrogatory calls for a one-word answer, which was given. Accordingly there is nothing to compel, and the motion must be denied.[3]

---

[3] If Lucky Palace would spend more time reading its Interrogatories and less time attacking the other parties in the case, it might understand the objections raised to this Interrogatory.  This Interrogatory is not limited in time or scope, but instead seeks communications "at any time," including since Plaintiffs filed their lawsuit.  Moreover, it is further written in such a manner as to include Victoryland's attorneys.  Since at least the filing of the lawsuit, Victoryland and the Sheriff have had a common legal interest in the outcome of the case. Any post-filing communications between Victoryland's counsel and Fred Gray, Jr., who is counsel for the sheriff in this action would properly be covered under the objections made by Victoryland. In addition, despite its objections, Victoryland went ahead and answered the question as if it were asking about the pre-litigation period that is <u>actually</u> at issue in this case.  Further, Victoryland has never contended that Fred Gray, Jr. was its attorney for purposes of the County Bingo Regulations. Rather, it has said that the Gray Law Firm has represented Milton McGregor and his various enterprises, including Victoryland, since 1983.  This long-standing and on-going relationship is exactly the sort of relationship contemplated by Rule 1.6 of the Alabama Rules of Professional Conduct.

### G.    Lucky Palace's Interrogatory 12

**Interrogatory 12:**    "If the answer to the preceding Interrogatory is in the affirmative, please describe each and every discussion by identifying the person or persons involved, what was discussed and when."

**Response:**    "Victoryland objects to this interrogatory to the extent it seeks information covered by attorney-client privilege, the work product doctrine, the common interest doctrine, other applicable doctrines and privileges and to the extent it seeks confidential information protected by Rule 1.6 of the Alabama Rules of Professional Conduct.  Victoryland further objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. Without waiving any general or specific objections, Victoryland does not recall the date of any such discussion, the specifics of it, or who was present."

**Supplemental Response:**    "Without waiving any general or specific objections, upon further investigation, Victoryland has determined that David Johnson and John Bolton had discussions with Fred Gray, Jr. regarding proposed or suggested Bingo Rules and Regulations and that Milton McGregor may have been present at some of those discussions."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 12

Lucky Palace's argument completely fails to acknowledge that a Supplemental Response was filed.  (*See* Doc. 142-2, at p. 2). With that Supplemental Response, which was served a week before Lucky Palace filed its Motion to Compel (*see* Doc. 142-2, at p. 4), Victoryland has answered this Interrogatory, and there is nothing to compel.

### H.     Lucky Palace's Interrogatory 13

**Interrogatory 13.**     "Did this Defendant (or any agent or employee) discuss any <u>proposed or suggested Rules and Regulations for licensing/operation of bingo facilities in Macon County, Alabama,</u> at any time with Sheriff David Warren or any employee of Macon County, Alabama?" (emphasis added)

**Response:**     "Victoryland objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information. **Without waiving any objection, the answer is <u>no</u>**."  (emphasis added)

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 13**

This Interrogatory calls for a one-word answer, which was given. Accordingly there is nothing to compel.    Victoryland does not dispute that McGregor can be its agent. However, as Lucky Palace admits, the conversation that the Sheriff and Mr. McGregor had was about Victoryland's "interest in electronic bingo."   There was no discussion at the meeting regarding "proposed or suggested Rules and Regulations for licensing/operation of bingo facilities in Macon County, Alabama," which is the sole subject of this Interrogatory.

### I.     Lucky Palace's Interrogatory 15

**Interrogatory 15.**     "Does this Defendant oppose the licensing of the Plaintiff charities and Lucky Palace, LLC to operate electronic bingo at a facility/location in Macon County, Alabama."

**Response:**     Victoryland objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending

litigation and is not reasonably calculated to lead to the discovery of any relevant information.  Further, this interrogatory is oppressive, vexatious and filed for an improper purpose, as it has no bearing on this proceeding and is clearly designed for use outside this proceeding.

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 15**

For the reasons stated above with regard to Interrogatory 4, no response should be compelled to this interrogatory as it seeks wholly irrelevant information and/or was issued for an improper purpose and/or for use outside of this case.

**J.      Lucky Palace's Interrogatory 16**

**Interrogatory 16.**     "If the answer to the preceding Interrogatory is in the affirmative, please state each and every reason for this opposition."

**Response:**     "See objection to Interrogatory 15."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 16**

Because no response should be compelled to Interrogatory 15, no response should be compelled to this Interrogatory.

**K.      Lucky Palace's Interrogatory 17**

**Interrogatory 17.**     "Does this Defendant desire that Victoryland have the only electronic bingo gaming facility in Macon County, Alabama?"

**Response:**     "Victoryland objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the discovery of any relevant information.  Victoryland as an entity does not have "desires" and if it did, any such

desires would not be relevant to the issues in this case. Further, this interrogatory is oppressive, vexatious and filed for an improper purpose, as it has no bearing on this proceeding and is clearly designed for use outside this proceeding."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 17**

For the reasons stated above with regard to Interrogatory 4, no response should be compelled to this interrogatory as it seeks wholly irrelevant information and/or was issued for an improper purpose and/or for use outside of this case.

**L.      Lucky Palace's Interrogatory 18**

**Interrogatory 18.**    "If the answer to the preceding Interrogatory is in the affirmative, please state each and every reason for this desire."

**Response:**    "Not applicable. See objection to Interrogatory 17."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 18**

Because no response should be compelled to Interrogatory 17, no response should be compelled to this Interrogatory.

**M**.      **Lucky Palace's Interrogatory 19**

**Interrogatory 19.**    "Has this Defendant (or any agent or employee) ever made its desire and reason for having Victoryland as the only electronic bingo gaming facility in Macon County, Alabama, known to Sheriff David Warren and/or any employee of Macon County, Alabama."

**Response:**    "Victoryland objects to this interrogatory on the grounds that it is unintelligible as written and that seeks information that is not relevant to any claim or defense asserted in the pending litigation and is not reasonably calculated to lead to the

discovery of any relevant information.  The interrogatory is improperly vague as it rests on improper assumptions.  Further, this interrogatory is oppressive, vexatious and filed for an improper purpose, as it has no bearing on this proceeding and is clearly designed for use outside this proceeding."

**Supplemental Response:**    "At the January 2, 2008 meet and confer session, Counsel for Lucky Palace clarified that this interrogatory was seeking to determine if Victoryland ever made any statements to Sheriff Warren or any employee of Macon County that Victoryland should be the only electronic bingo facility in Macon County. Based upon this clarification and without waiving any general or specific objections, Victoryland has not made any statements to Sheriff Warren or any employee of Macon County that Victoryland should be the only electronic bingo facility in Macon County."

### Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 19

Lucky Palace's argument completely fails to acknowledge that a Supplemental Response was filed.  (*See* Doc. 142-2, at p. 3). With that Supplemental Response, which was served a week before Lucky Palace filed its Motion to Compel (*see* Doc. 142-2, at p. 4), Victoryland has answered this Interrogatory, and there is nothing to compel.

### N.    Lucky Palace's Interrogatory 20

**Interrogatory 20:**    "If the answer to the preceding Interrogatory is in the affirmative, please describe each and every occasion such desire and reasons have been made known to these persons and how it was made known."

**Response:**    "Not applicable.  See also objection to Interrogatory 19."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 20.**

Given Victoryland's Supplemental Response to Interrogatory 19, which was served a week before the Motion to Compel was filed,  no response is needed to this Interrogatory, and the Motion to Compel must be denied.

**O**.     **Lucky Palace's Interrogatory 23**

**Interrogatory 23.**     "Please list all witnesses known to this Defendant to have any information regarding the drafting, consideration, adoption and amendments to the Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama."

**Response**:  "Victoryland objects to this request as it prematurely seeks the identification of witnesses.  Without waiving any objection, Defendant will follow the requirements of applicable rules and the Court's Scheduling Order in identifying its witnesses."

**Victoryland's Opposition to Lucky Palace's Argument Regarding Interrogatory 23.**

Lucky Palace incorrectly argues that the identity of a party's witnesses is discoverable at this early stage of a case. The identity of witnesses is covered by the Court's Scheduling Order and is premature at this point.  If Lucky Palace wanted to know the names of persons known "to have any information regarding the drafting, consideration, adoption and amendments to the Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama," it could have made such a request.

## CONCLUSION

For the reasons set forth above, Lucky Palace's Motion to Compel should be denied.

Respectfully submitted this 24th day of March, 2008.


 /s/ Peter J. Tepley
Peter J. Tepley, One of the Attorneys for
Macon County Greyhound Park, Inc.




**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & REDIKER, LLC**
William M. Slaughter
Patricia C. Diak
Peter J. Tepley
Khristi Doss Driver
2001 Park Place North
1400 Park Place Tower
Birmingham, Alabama 35203
205-251-1000 (telephone)
205-324-1133 (facsimile)

**WHITE ARNOLD & DOWD PC**
John Mark White mwhite@waadlaw.com
Augusta S. Dowd adowd@waadlaw.com
Rebecca DePalma rdepalma@waadlaw.com
2025 Third Avenue North, Suite 600
Birmingham, AL  35203
205-323-1888 (telephone)
205-323-8907 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing answer on the following counsel of record by filing a copy of it through the Court's electronic filing system on this 24th day of March, 2008.

James H. Anderson
Ryan Wesley Shaw
Beers, Anderson, Jackson, Patty, Van Heest & Fawal, P.C.
P.O. Box 1988
Montgomery, AL  36102
janderson@beersanderson.com
wshaw@beersanderson.com

Fred D. Gray, Sr.
Fred D. Gray, Jr.
Gray, Langford, Sapp, McGowan, Gray & Nathanson
P.O. Box 830239
Tuskegee, AL  36083-0239
fgray@glsmgn.com
fgrayjr@glsmgn.com

Robert K. Spotswood
Michael T. Sansbury
Spotswood, Sansom & Sansbury, L.L.C.
940 Concord Center
2100 Third Avenue North
Birmingham, AL  35203
rks@spotswoodllc.com
msansbury@spotswoodllc.com

John M. Bolton, III
Charlanna White Spencer
Hill, Hill, Carter, Franco, Cole & Black, P.C.
425 S. Perry Street
Montgomery, AL  36104
jbolton@hillhillcarter.com
cspencer@hillhillcarter.com

Lewis Garrison
Stephen D. Heninger
Heninger Garrison Davis, L.L.C.
2224 1st Avenue North
Birmingham, AL 35203
wlgarrison@hgdlawfirm.com
steve@hgdlawfirm.com

George L. Beck, Jr.
Capell Howard, PC
P.O. Box 2069
Montgomery, AL 36102-2069
glb@chlaw.com

Ronald G. Davenport
Rushton, Stakely, Johnston & Garrett, P.A.
P.O. Box 270
Montgomery, AL 36101
rgd@rsjg.com

/s/ Peter J. Tepley
Of Counsel