## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

HOPE FOR FAMILIES & COMMUNITY )
SERVICES, INC., et al., )
                            )
        PLAINTIFFS, )
                            )
VS.                        )    CIVIL ACTION: CV-06-01113-WKW-WC
                            )
DAVID WARREN, in his Official Capacity )
as the SHERIFF OF MACON COUNTY, )
et al.,                        )
                            )
        DEFENDANTS. )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION TO QUASH THE DEPOSITION NOTICE OF FRED GRAY, JR. OR ALTERNATIVELY, FOR A PROTECTIVE ORDER

Lucky Palace, LLC and the Plaintiff Charities ("Plaintiffs"), pursuant to Federal Rules of Civil Procedure, Rule 26, submit their Response in Opposition to the Motion to Quash the Deposition Notice of Fred Gray, Jr. or Alternatively, for a Protective Order (herein after "Motion to Quash").

## I.    THE DEPOSITION OF FRED GRAY, JR. IS BOTH PROPER AND NECESSARY.

The testimony of David Warren evidences that no attorney-client privilege or work product rule can attach to his communications with Fred Gray, Jr. or to the drafts and work which passed between Fred Gray, Jr. and David Warren.[1] However, even if this Court makes a determination that discussions, work and drafts passed between David Warren and Fred Gray, Jr. are protected, the deposition of Fred Gray, Jr. is necessary in order to obtain critical information on other topics which do not fall within any recognized protection. Additionally, the Plaintiffs have a substantial need to

---

[1] Plaintiffs' argument that no privilege exists between Fred Gray, Jr. and David Warren is fully set forth in pages 8 - 12 of this filing.

obtain Fred Gray, Jr.'s deposition testimony as the information is crucial to the preparation of the Plaintiffs' case and there are no other practical means to obtain the information other than through the deposition of Fred Gray, Jr.

## A.  Plaintiffs Seek to Depose Fred Gray, Jr. on Many Topics Which Are Outside the Realm of the Attorney-Client Privilege and the Work Product Rule.

The Motion to Quash is based on the ground that Plaintiffs seek to depose Fred Gray, Jr. on matters which fall within the attorney-client privilege and the work product rule. As no topics are listed in the Notice to Take Deposition (doc. #150, Exhibit A), this is mere speculation on the part of the movants. In fact, many of the topics on which the Plaintiffs seek to depose Fred Gray, Jr., are clearly outside the realm of any recognizable protection. Relevant information not subject to the attorney-client privilege or the work product rule includes, but is not limited to, the following topics:

(1) The structure of the Gray Law Firm;
(2) The Gray Law Firm's distribution of funds, and the distribution of other benefits, obtained from VictoryLand and Milton McGregor;
(3) Fred Gray, Jr.'s interest in Fred Gray, Sr.'s estate;
(4) Fred Gray, Jr.'s interest in any entity or property owned by Milton McGregor;
(5) Benefits which Fred Gray, Jr. may have received, directly or indirectly, from VictoryLand;
(6) Benefits which Fred Gray, Jr. may have received, directly or indirectly, from Milton McGregor;
(7) Fred Gray, Jr.'s involvement with the Tuskegee Human and Civil Rights Multicultural Center;
(8) The fees paid to the Gray Law Firm by Milton McGregor and/or VictoryLand;[2]
(9) The fees paid to Fred Gray, Jr. by David Warren;[3]
(10) The nature and purpose of the June 2, 2004 facsimile sent by Fred Gray, Jr. to Milton McGregor, John Bolton and David Johnston;
(11) The nature and purpose of the letter dated January 17, 2007, from attorneys for

---

[2]"[T]he receipt of fees from a client normally are not privileged." *In re Grand Jury Proceedings*, 899 F.2d 1039, 1042 (11th Cir., 1990).

[3] *Id.*

VictoryLand to Fred Gray, Jr.;[4]
(12) The nature and purpose of the internal memorandum from Fred Gray, Sr. to Fred Gray, Jr.;
(13) All other communications between Fred Gray, Jr. and agents or employees of VictoryLand concerning electronic bingo;
(14) All other communications between Fred Gray, Jr. and Milton McGregor concerning electronic bingo; and
(15) All other communications between Fred Gray, Jr. and any person or entity concerning electronic bingo, other than communications with David Warren.[5]

The movants have not asserted, and we cannot fathom, any reason why this Court should bar the deposition testimony of Fred Gray, Jr. on the above topics - none of which include communications between David Warren and Fred Gray, Jr., or work or drafts passed between David Warren and Fred Gray, Jr.

Moreover, the federal rules do not support a complete bar to taking the deposition of Fred Gray, Jr. on the basis that he is an attorney or that some of the information in the deposition could potentially fall within a privilege category. The federal rules permit the deposition of "any person", Fed.R.Civ.P., 30(a), 31(a), and do not carve out an exception for attorneys. *See*, Fed.R.Civ.P., 26-32. It is clear that no special privilege or immunity shields a person from deposition simply because that individual is an attorney, or even an attorney for a party to the suit. 8A Wright and Miller, *Federal Practice and Procedure* § 2102 (2008).

### B. Plaintiffs Have a Substantial Need to Take Fred Gray, Jr.'s Deposition.

The information sought through the deposition of Fred Gray, Jr. is necessary to the Plaintiffs' case, clearly relevant to the issues presented, and cannot be obtained by other means.

---

[4] The letter drafted by attorneys for VictoryLand cannot be the work product of Fred Gray, Jr., since it is not his work.

[5] David Warren has testified that, "Mr. Gray could speak with anyone to get what I hired him to do accomplished." (Deposition of David Warren, p. 203).

First, the information sought in topics 1-8 listed above will demonstrate whether Fred Gray, Jr. received a "thing of value" under the Alabama bribery statute, i.e., shares of the money the Gray Law Firm received from Milton McGregor and VictoryLand, free travel on aircraft owned or chartered by Milton McGregor and VictoryLand, an interest in the dividend payments Fred Gray, Sr. received from VictoryLand, and/or any benefit construed upon immediate family members who acted as principles in the charities affiliated with VictoryLand. This evidence cannot be obtained from a more practical source.

Additionally, the information sought in topics 9-15 listed above will evidence Fred Gray, Jr.'s collaboration with attorneys and agents of VictoryLand and Milton McGregor, and their efforts to influence Fred Gray, Jr. to draft and amend the rules and regulations to grant VictoryLand a monopoly on gaming in Macon County. David Warren repeatedly testified that he had no objection to Fred Gray, Jr. getting input from other people regarding the drafting of the rules for electronic bingo, "Mr. Gray could speak with anyone to get what I hired him to do accomplished." (Depo. of David Warren, p. 203, attached to this filing as Exhibit, "A"); *see also*, Exhibit A, pp. 168-170, 172, 174, 176 - 178 and 202). However, David Warren states that he does not know who Fred Gray, Jr. spoke with in connection with drafting the rules and regulations:

Q:     ... Did Fred Gray, Jr., as you sit here today, do you know if he received input from representatives of VictoryLand in the drafts he presented to you on the rules and regulations for bingo licensing in Macon County?

A:     I don't know who he spoke with.

Q:     You truly do not?

A:     No, sir.

4

Q:    As you sit here today, you don't know who he spoke with to get any input about these drafts of the rules and regulations for you to approve?

A:    To the best of my recollection, I don't know who he spoke with.

(Exhibit A, pp. 178-179). Fred Gray, Jr. is the only person who can testify about who he received information from and shared information with, regarding the rules and regulations for electronic bingo. The Plaintiffs have a substantial need for this information and cannot receive this information from any other more practical source.

The <u>Federal Rules of Civil Procedure</u> "strongly favor full discovery whenever possible." Indeed, Rule 26(b) makes discoverable any information "regarding any matter, not privileged, that is relevant to the claim or defense of any party," including non-admissible relevant evidence that is "reasonably calculated to lead to the discovery of admissible evidence." *Braxton v. Farmer's Ins. Group*, 209 F.R.D. 651, 652 - 653 (N.D. Ala. 2002) (internal citations omitted). The information that Plaintiffs seek through the deposition of Fred Gray, Jr. is relevant to the claims asserted in the Fourth Amended Complaint. Specifically, the evidence will be admissible in order for the Plaintiffs to prove their claims of conspiracy under the equal protection laws, violations of RICO, conspiracy to violate RICO and the Plaintiffs' various claims of tortious interference.

To date, Plaintiffs have engaged in written discovery, taken the deposition of David Warren and have requested deposition dates for all other remaining defendants; however, Plaintiffs cannot obtain the information sought in topics 1-15 from any practical source other than the deposition of Fred Gray, Jr. Given the numerous non-privileged topics for which testimony is sought and the inability of the Plaintiffs to obtain that information from any other source, it would be unjust for this

Court to enter a protective order totally prohibiting the deposition of Fred Gray, Jr.

### C.    The Ethics Opinion Was Based on Incomplete and Distorted Information and Should Not Be Considered by this Court.

In support of their contention that the Deposition of Fred Gray, Jr. should be totally prohibited, the movants have attached an ethics opinion to their Motion to Quash. (Doc. 150, Exhibit C). However, as shown from the correspondence requesting that ethics opinion (doc. 150, Exhibit B), the Alabama State Bar was not given a complete set of facts on which to base its opinion and therefore the opinion is irrelevant and unpersuasive.

The correspondence to the Alabama State Bar does an incomplete job of summarizing, in three short paragraphs, the facts alleged in the forty (40) page Fourth Amended Complaint. The entire basis for the Plaintiffs' complaint is stated as follows:

> The Plaintiffs, potential competitors of Client A, have filed civil litigation against Client A and B. Plaintiffs allege among other things, that Client A's fee payments to Law Firm for legal services constitute bribes to Lawyer, Jr. The Plaintiffs admit that they have no factual basis for this allegation and state in their complaint that this information is peculiarly within the knowledge of Lawyer, Sr. and Lawyer, Jr.

(Doc. 150, Exhibit C).

First, the facts provided to the Alabama State Bar give no information regarding the relevance of Client B (David Warren). Important facts which are not mentioned include: (1) that Client B was a public official charged with drafting rules and regulations governing a business practice of high importance to Client A (presumably Milton McGregor and VictoryLand); (2) that Client A contacted Client B very soon after Client B was charged with the above-described duties; (3) that Client B and Client A had a meeting in the presence of Lawyer, Jr.; (4) that Lawyer, Jr. had communications with Client A, and/or representatives of Client A, outside the presence of Client B; (5) that Lawyer, Jr.

6

assisted Client B in drafting the rules which ensured that Client A was qualified to participate in that business practice;[6] (6) that Lawyer, Jr. twice drafted amendments to those rules which then ensured that Client A maintained a monopoly;[7] and, (7) that Lawyer, Sr., a shareholder of Client A, has received substantial dividend payments as a result of Client A's monopoly. Because these, and other, essential facts regarding this case were not provided to the Alabama State Bar, the ethics opinion is not on point and is wholly unpersuasive in this matter.

Second, the correspondence asks only for guidance in responding to discovery concerning the representation of Client A and Client B. The correspondence does not seek, and did not obtain, an ethical opinion regarding the duty to respond to discovery concerning the structure of the Gray Law Firm, the Gray Law Firm's distribution of proceeds to shareholders, and Fred Gray, Jr.'s interest in his father's estate – matters which are clearly outside of any protected class. The movants cannot seek to use the ethical opinion as a complete bar to all discovery propounded on Fred Gray, Jr., Fred Gray, Sr. and the Gray Law Firm.

---

[6] Q: But it was a fact that once you adopted the rules and regulations drafted by Fred Gray, Jr., VictoryLand fit those exact rules and regulations as of the time they were adopted?
A: Victoryland met the requirements set forth in the rules and regulations.
Q: At the moment the rules and regulations went into effect?
A: Yes.
(Exhibit A, p. 146)

[7] Q: On June 2nd, 2004, when you issued your First Amended Rules, Victoryland was the only location that could meet those amended rules; true?
A: Victoryland met the rules – the requirements of the rules and regulations set forth. And at that time, they were – they was the only qualified location in Macon County.
Q: On January 6th, 2005, when you issued your Second Amended Rules and Regulations, Victoryland met those at the time they were issued; true?
A: Victoryland met all of the requirements set forth in the rules and regulations. And at that point in time, they were the only one operating bingo games in Macon County.
(Exhibit A, p. 147).

Finally, the correspondence and ethics opinion are irrelevant and moot since David Warren (Client B) testified in his deposition[8] that he had no problem with his attorney talking to other people about the drafting of the rules and regulations,[9] and has waived any attorney-client or work product privilege which may have attached to his communications with Fred Gray, Jr. (Lawyer, Jr.) and the drafts and work which passed between them. (Exhibit A, pp. 168-170, 172, 174, 176 - 178, 202 - 203).

## II.    NO PROTECTIVE ORDER SHOULD BE ISSUED TO LIMIT THE SCOPE OF FRED GRAY, JR.'S TESTIMONY.

The movants request that a protective order be issued preventing Lucky Palace from inquiring into matters protected by the attorney-client privilege or the work product rule. The facts of this case, and the testimony of David Warren, evidences that the communications between David Warren and Fred Gray, Jr. concerning electronic bingo and the work passed between them in drafting the rules and regulations were not intended to be confidential. The Eleventh Circuit has held:

> [T]he argument that *any* communication between an attorney and client is protected by the privilege is overbroad. Merely because a matter which a lawyer is asked to reveal might incriminate a client does not make that matter privileged. The privilege is not designed to protect revelation of incriminating matters, only confidential communications between the attorney and client regarding the matter of representation.

*In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. (Ala.), 1992).

---

[8] The deposition of David Warren occurred on March 19, 2008 and was not available at the time the ethics opinion was requested.

[9] David Warren specifically testified that he had no problem with Fred Gray, Jr. talking with "owners and operators of Victoryland," "lawyers who represent Victoryland," "shareholders of Victoryland" or "his father who is a shareholder of Victoryland." (Exhibit A, 177 - 178).

Furthermore, even if David Warren had intended the communications to be confidential and reasonably expected the communications to remain confidential, the attorney-client privilege and the work product rule still do not apply as they were waived through the disclosure of information and documents to persons outside the attorney client relationship. *Lynch v. Hamrick*, 968 So.2d 11, 15 (Ala. 2007).

A.     **The Communications Between Fred Gray, Jr. and David Warren Were Not Intended to Be Confidential and Are Not Protected by the Attorney-Client Privilege**.

Not all communications between a client and his attorney are privileged. The Eleventh Circuit has held that in order "[t]o determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was '(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential.'" *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003)(emphasis in original)(internal citations omitted). In light of David Warren's testimony, no privilege can be applied to the communications between David Warren and Fred Gray, Jr., or the work and drafts which passed between them.

David Warren stated numerous times in his deposition that he did not intend for his communications with Fred Gray, Jr., his work or his drafts to remain confidential.

Q:     Was it your intent that all discussions, work, drafts in this relationship between you and Fred Gray, Jr., to come up with these rules and regulations, be kept confidential between you and he as attorney/client, was that your intent?

A:     I – That wasn't – I did not care if Mr. Gray discussed that with somebody in accomplishing what I has asked him to do. But there were some things that we discussed that I would – and I think he knows what those things are that I would rather keep confidential.

9

(Exhibit A, pp. 169 - 170);

A:    I did not have any objections to him talking to people in getting this thing accomplished.

Q:    He could tell people what y'all had discussed and were thinking of?

A:    He could discuss – He could discuss what he needed to to achieve the goals and objectives.

(Exhibit A, p. 172);

Q:    And you did not object to him discussing that work product with others, if it could improve it?

A:    I did not have an objection to him speaking with others to accomplish that goal.

(Exhibit A, p. 174);

Q:    And there is nobody that was hands off for him to speak with, plan with, collaborate with in suggesting rules and regulations; true?

A:    At that point in time, that may have been true.

(Exhibit A, p. 176);

Q:    ... . No hands off with anyone?

A:    Right.

Q:    So if there's no hands off, that means he could talk to the owners and operators of Victoryland about the proposed rules for gaming; true?

A:    He could talk to whom he needed to talk to at Victoryland, I would think.

Q:    He could talk to the lawyers who represent Victoryland if he wanted to; true?

A:    Yes.

Q:    He could talk to the shareholders of Victoryland if he wanted to; true?

A:    I would suppose.

10

Q:    He could talk to his father, who is his law partner and a shareholder in Victoryland, to get his input; true?

A:    Yes, sir.

Q:    That would be all right by you?

A:    I had no objections to him speaking with people.

(Exhibit A, 177 - 178);

A:    I stated that he could speak to anyone.

Q:    ... . Was it permitted in advance by Warren that Gray, Jr., could get input from representatives of Victoryland in drafting the rules?

MR. ANDERSON:    Again, without waiving the client privilege, I think he's answered it was okay for him to get input outside.

Q:    Would the answer to that be yes?

A:    My answer was Mr. Gray could speak to anyone to get what I hired him to do accomplished.

Q:    Which would include Victoryland and its representatives?

A:    I did not object to it.

(Exhibit A, 202 - 203).

There can be no doubt that David Warren had no intention for his communications with Fred Gray, Jr. to be kept confidential. Communications made between a client and his attorney which are intended to be further communicated to others outside the privilege, are not privileged. *See*, *McClary v. Walsh*, 202 F.R.D. 286, 290 (N.D.Ala. 2000). Consequently, no privilege can attach to the communications between David Warren and Fred Gray, Jr., or the work and drafts which were passed between them.

11

**B.** **To the Extent It Once Existed, the Attorney-Client Privilege Between Fred Gray, Jr. and David Warren Has Been Waived.**

It is clear that David Warren did not intend for his communications with Fred Gray, Jr. to be kept confidential; however, even if he did intend those communications to be confidential he has waived his privilege by disclosing documents and communications to persons outside the attorney-client relationship. A person upon whom these rules confer a privilege against disclosure waives the privilege if the person voluntarily discloses or consents to disclosure of any significant part of the privileged matter. *Lynch v. Hamrick*, 968 So.2d 11, 15 (Ala. 2007).

David Warren has repeatedly testified that Fred Gray, Jr. could speak with anyone he needed to, including representatives of VictoryLand, in drafting the rules and regulations governing electronic bingo. (Exhibit A, pp. 202-203). The disclosure of documents to VictoryLand waived any privilege which David Warren may have had on those documents. Likewise, the disclosure of the communications between David Warren and Fred Gray, Jr., waived any privilege which may have attached to those communications. David Warren cannot assert a privilege which (1) never existed because the communications and work product were not intended to be confidential; and (2) has been disclosed to others outside the attorney-client relationship.

WHEREFORE, Plaintiffs request this Court to enter an Order (1) compelling Fred Gray, Jr. to sit for deposition and give testimony as to all relevant topics, (2) holding that no attorney-client privilege or work product rule exists between Fred Gray, Jr. and David Warren, and (3) denying the Motion to Quash the Deposition Notice of Fred Gray, Jr. or Alternatively, for a Protective Order Fred D. Gray, Jr.

Dated: March 26, 2008.

Respectfully submitted,

/s/ Stephen D. Heninger
Stephen D. Heninger, Esq.  (HEN 007)
W. Lewis Garrison, Jr.     (GAR 008)
Gayle L.  Douglas, Esq.     (DOU 012)
Attorneys for Lucky Palace, LLC
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Phone:         (205) 326-3336
Fax:           (205) 326-3332
E-mail:        sheninger@hgdlawfirm.com
               lewis@hgdlawfirm.com
               gdouglas@hgdlawfirm.com


/s/ Robert K. Spotswood
Robert K. Spotswood, Esq. (SPO 001)
Michael T. Sansbury, Esq.  (SAN 054)
Attorneys for the Plaintiff Charities
SPOTSWOOD SANSOM & SANBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, AL 5203-3329
Telephone:     (205) 986-3620
Facsimile:     (205) 986-3639
E-mail:        rks@spotswoodllc.com
               msansbury@spotswoodllc.com


## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred David Gray, Esq.
Fred David Gray Jr., Esq.
GRAY, LANGFORD, SAPP, MCGOWAN, GRAY & NATHANSON
P.O. Box 830239
Tuskegee, AL 36083-0239
Telephone:    (334) 269-2563
Facsimile:    (334) 269-2959
E-mail:       fgray@glsmgn.com
              jbibb@glsmgn.com
              fgrayjr@glsmgn.com
              thalia@glsmgn.com


James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
BEERS, ANDERSON, JACKSON, PATTY,
VAN HEEST & FAWAL PC
P.O. Box 1988
Montgomery, AL 36102
Telephone:    (334) 834-5311
Facsimile:    (334) 834-5362
E-mail:       janderson@beersanderson.com
              wshaw@beersanderson.com


John Mark White, Esq.
Augusta S. Dowd, Esq.
Rebecca G. DePalma, Esq.
WHITE, ARNOLD, ANDREWS & DOWD, PC
2025 Third Avenue North Suite 600
Birmingham, AL 35203
Telephone:    (205) 323-1888
Facsimile:    (205) 323-8907
E-mail:       mwhite@waadlaw.com
              adowd@waadlaw.com
              rdepalma@waadlaw.com

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Khristi Doss Driver, Esq.
HASKELL, SLAUGHTER, YOUNG & REDIKER, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
Telephone:      (205) 251-1000
Facsimile:       (205) 324-1133
E-mail:          wms@hsy.com
                 pcd@hsy.com
                 pt@hsy.com
                 kdd@hsy.com


John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
SASSER, BOLTON & SEFTON PC
PO Box 242127
Montgomery, AL 36124-2127
Telephone:      (334) 532-3400
Facsimile:       (334) 532-3434
E-mail:          jbolton@sasserlawfirm.com
                 cspencer@sasserlawfirm.com


George L. Beck, Jr., Esq.
CAPELL & HOWARD, PC
150 South Perry Street
PO Box 2069
Montgomery, AL 36102-2-69
Telephone:      (334) 241-8002
Facsimile:       (334) 323-8888
E-mail:          glb@chlaw.com


                              /s/ Stephen D.  Heninger
                              STEPHEN D.  HENINGER, ESQ.

## INDEX OF ATTACHMENTS

Exhibit A

Deposition of Sheriff David Warren
Pages   146
            147
            168
            169
            170
            172
            174
            176
            177
            178
            179
            202
            203

Document 150

Motion to Quash Plaintiff Lucky Palace, LLC's Deposition Notice of Fred Gray,
Jr., or Alternatively, For a Protective Order
Exhibit A
Exhibit B
Exhibit C
Exhibit D

"EXHIBIT A"

Deposition of Sheriff David Warren

# FREEDOM COURT REPORTING

**1**

1    IN THE UNITED STATES DISTRICT COURT
2    FOR THE MIDDLE DISTRICT OF ALABAMA
3        EASTERN DIVISION
4
5    CASE NUMBER: 3:06-CV-01113-WKW-WC
6    HOPE FOR FAMILIES & COMMUNITY
7    SERVICES, INC., ET AL.,
8        Plaintiffs,
9        vs.
10   DAVID WARREN, IN HIS OFFICIAL CAPACITY AS
11   THE SHERIFF OF MACON COUNTY, ET AL.,
12       Defendants.
13       S T I P U L A T I O N
14       IT IS STIPULATED AND AGREED by and
15   between the parties through their respective
16   counsel, that the video deposition of
17   Sheriff David Warren may be taken before
18   Sara Mahler, CCR, at the offices of Beers,
19   Anderson, Jackson, Patty & Van Heest, at 250
20   Commerce Street, Suite 100, Montgomery,
21   Alabama 36104, on the 19th day of March,
22   2008.
23       DEPOSITION OF SHERIFF DAVID WARREN

**2**

1        IT IS FURTHER STIPULATED AND
2    AGREED that the signature to and the reading
3    of the deposition by the witness is waived,
4    the deposition to have the same force and
5    effect as if full compliance had been had
6    with all laws and rules of Court relating to
7    the taking of depositions.
8        IT IS FURTHER STIPULATED AND
9    AGREED that it shall not be necessary for
10   any objections to be made by counsel to any
11   questions except as to form or leading
12   questions, and that counsel for the parties
13   may make objections and assign grounds at
14   the time of the trial, or at the time said
15   deposition is offered in evidence, or prior
16   thereto.
17       IT IS FURTHER STIPULATED AND
18   AGREED that the notice of filing of the
19   deposition by the Commissioner is waived.
20
21       * * * * * * * * * * * * *
22
23

**3**

1        * * * * * * * * * * * * *
2        I N D E X
3        EXAMINATION
4                PAGE
5    By Mr. Heninger ................... 13
6    By Mr. Sansbury ................... 331
7        PLAINTIFF'S EXHIBITS
8                PAGE
9    Exhibit 1 - "Rule Number One" ...... 16
10   Exhibit 2 - "Rule Number Two" ...... 18
11   Exhibit 3 - "Rule Number Three" .... 19
12   Exhibit 4 - "Rule Number Four" ..... 20
13   Exhibit 5 - Rules and Regulations
14       for licensing bingo
15       games ................... 70
16   Exhibit 6 - First Amended and
17       Restated Rules and
18       regulations for
19       licensing of bingo
20       games ................... 71
21   Exhibit 7 - Second Amended and
22       Restated Rules and
23       regulations for

**4**

1        licensing of bingo
2        games ................... 72
3    Exhibit 8 - Document ............... 75
4    Exhibit 9 - Application from
5        Multicultural Center .... 100
6    Exhibit 10 - Bates LUC 00083 ...... 124
7    Exhibit 11 - Circle of Trust ...... 163
8    Exhibit 12 - Letter from
9        Mr. Bracy ............... 229
10   Exhibit 13 - Letter, 8/5/04,
11       Bates LUC 000899 ........ 230
12   Exhibit 14 - Letter, 10/20/04,
13       Bates LUC 00092 ......... 238
14   Exhibit 15 - Letter, 11/10/04,
15       Bates 00095 ............. 257
16   Exhibit 16 - Series of letters to
17       Sheriff from Mr. Bracy .. 259
18   Exhibit 17 - Check to Sheriff
19       from Lucky Palace, Inc. . 272
20   Exhibit 18 - Fax cover sheet,
21       Bates McGregor 038 ...... 275
22   Exhibit 19 - Exhibit E, Bates LUC
23       080-081 ................. 285

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

5

1  Exhibit 20 - Bates Warren
2       D0317-D0325 ............. 288
3  Exhibit 21 - Letter, 7/25/05, LUC
4       101-107 ................ 290
5  Exhibit 22 - Bingo Operations and
6       Lease Agreement ......... 336
7       * * * * * * * * * * * * *
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

7

1  APPEARANCES: (Cont.)
2      GAYLE L. DOUGLAS, ESQUIRE, of
3  HENINGER, GARRISON & DAVIS, 2224 First
4  Avenue North, Birmingham, Alabama 35203,
5  appearing on behalf of the Plaintiff, Lucky
6  Palace.
7      MICHAEL T. SANSBURY, ESQUIRE, of
8  SPOTSWOOD, SANSOM & SANSBURY, 2100 Third
9  Avenue, Suite 940, Birmingham, Alabama
10 35203, appearing on behalf of the Plaintiff
11 Charities.
12     JAMES H. ANDERSON, ESQUIRE, of
13 BEERS, ANDERSON, JACKSON, PATTY & VAN HEEST,
14 250 Commerce Street, Suite 100, Montgomery,
15 Alabama 36104, appearing on behalf of the
16 Defendant, Sheriff David Warren.
17     RYAN WESLEY SHAW, ESQUIRE, of
18 BEERS, ANDERSON, JACKSON, PATTY & VAN HEEST,
19 250 Commerce Street, Suite 100, Montgomery,
20 Alabama 36104, appearing on behalf of the
21 Defendant, Sheriff David Warren.
22
23

6

1      IN THE UNITED STATES DISTRICT COURT
2      FOR THE MIDDLE DISTRICT OF ALABAMA
3           EASTERN DIVISION
4
5  CASE NUMBER: 3:06-CV-01113-WKW-WC
6
7  HOPE FOR FAMILIES & COMMUNITY
8  SERVICES, INC., ET AL.,
9       Plaintiffs,
10      vs.
11 DAVID WARREN, IN HIS OFFICIAL CAPACITY AS
12 THE SHERIFF OF MACON COUNTY, ET AL.,
13      Defendants.
14
15 BEFORE:
16     SARA MAHLER, Commissioner.
17
18 APPEARANCES:
19     STEPHEN D. HENINGER, ESQUIRE, of
20 HENINGER, GARRISON & DAVIS, 2224 First
21 Avenue North, Birmingham, Alabama 35203,
22 appearing on behalf of the Plaintiff, Lucky
23 Palace.

8

1  APPEARANCES: (Cont.)
2      FRED D. GRAY, JR., ESQUIRE, of
3  GRAY, LANGFORD, SAPP, MCGOWAN, GRAY &
4  NATHANSON, 108 Eastside Street, Tuskegee,
5  Alabama 36083, appearing on behalf of the
6  Defendant, Sheriff David Warren.
7      FRED DAVID GRAY, SR., ESQUIRE, of
8  GRAY, LANGFORD, SAPP, MCGOWAN, GRAY &
9  NATHANSON, 108 Eastside Street, Tuskegee,
10 Alabama 36083, appearing on behalf of the
11 Defendant, Sheriff David Warren.
12     JOHN M. BOLTON, III, ESQUIRE, of
13 HILL, HILL, CARTER, FRANCO, COLE & BLACK,
14 425 South Perry Street, Montgomery, Alabama
15 36104, appearing on behalf of the Defendant,
16 Milton McGregor.
17     PETER J. TEPLEY, ESQUIRE, of
18 HASKELL, SLAUGHTER, YOUNG & REDIKER, 2001
19 Park Place North, Suite 1400, Birmingham,
20 Alabama 35203, appearing on behalf of the
21 Defendant, Victoryland.
22
23

2  (Pages 5 to 8)

# FREEDOM COURT REPORTING

145

1  such a license, including Victoryland, have
2  a building fully finished and in place
3  before you would give them a license?
4       A.    Yes, sir.
5       Q.    Because -- I'm correct, aren't
6  I, that Victoryland's building was in
7  existence before your rules and regulations?
8       A.    Yes, sir.
9       Q.    Your rules and regulations
10  were drafted and approved with Victoryland
11  already meeting the requirements; true?
12      A.    I didn't --
13      Q.    Otherwise they got a license
14  they weren't entitled to.
15      A.    Sir --
16      Q.    So make sure you hear my
17  question.  Your rules and regulations, as
18  drafted, fit Victoryland so that they met
19  the rules and regulations from the moment
20  they were approved by you; true?
21            MR. TEPLEY:  Object to the
22  form.
23            MR. BOLTON:  Object to the

146

1  form.
2       A.    That was not my intention when
3  I wrote the rules and regulations governing
4  bingo in Macon County.
5       Q.    But was it a fact that once
6  you adopted the rules and regulations
7  drafted by Fred Gray, Jr., Victoryland fit
8  those exact rules and regulations as of the
9  time they were adopted?
10      A.    Victoryland met the
11  requirements set forth in the rules and
12  regulations.
13      Q.    At the moment the rules and
14  regulations went into effect?
15      A.    Yes.
16      Q.    No one else did, did they?
17      A.    Victoryland met all of the
18  requirements set forth in the rules and
19  regulations, period.
20      Q.    Did anyone else, any other
21  entity or person, meet all the requirements
22  as a fact of these rules and regulations on
23  December 5, 2003?

147

1       A.    On December 5, 2003,
2  Victoryland was the only qualified location
3  in Macon County.
4       Q.    On June 2nd, 2004, when you
5  issued your First Amended Rules, Victoryland
6  was the only location that could meet those
7  amended rules; true?
8       A.    Victoryland met the rules --
9  the requirements of the rules and
10  regulations set forth.  And at that time,
11  they were -- they was the only qualified
12  location in Macon County.
13      Q.    On January 6th, 2005, when you
14  issued your Second Amended Rules and
15  Regulations, Victoryland met those at the
16  time they were issued; true?
17      A.    Victoryland met all of the
18  requirements set forth in the rules and
19  regulations.  And at that point in time,
20  they were the only one operating bingo games
21  in Macon County.
22      Q.    The only one who could, since
23  they're the only one that had a license;

148

1  right?
2       A.    They met all the rules and
3  regulations set forth for a qualified
4  location.
5       Q.    Sheriff Warren, is it your
6  desire that Victoryland maintain a monopoly
7  on Class B electronic bingo in Macon County?
8            MR. ANDERSON:  Object to the
9  form.
10           MR. TEPLEY:  Join.
11           MR. BOLTON:  Same.
12      A.    No, sir.  That is personally
13  not a desire of mine.
14      Q.    Is it your desire as sheriff,
15  or your thinking as sheriff, that the only
16  way your department can monitor and carry
17  out its duties and responsibilities on
18  gaming, is to make sure that Victoryland
19  remains the only location for electronic
20  bingo?
21      A.    Ask that again.
22      Q.    Is it your desire or plan to
23  assure that Victoryland stays the only

37  (Pages 145 to 148)

# FREEDOM COURT REPORTING

165

1      Q.    The question on Exhibit 11 is:
2   Was it stated by Sheriff Warren that
3   confidential information inside the circle
4   could be discussed with representatives of
5   Victoryland?  And I mean could be discussed
6   by Gray, Jr.  Did you tell him he could
7   discuss confidential information between the
8   two of you with representatives of
9   Victoryland?
10          MR. TEPLEY:  Same objection.
11          MR. ANDERSON:  I don't want to
12  waive any attorney-client privilege, Steve.
13  Was it his understanding?  And I want to put
14  the words in your mouth, but . . .
15          MR. HENINGER:  No, James.  And
16  I think --
17          MR. ANDERSON:  Things that he
18  told his lawyer would be confidential.
19          MR. HENINGER:  Not if -- There
20  is no attorney-client privilege if he
21  instructed his lawyer, you can discuss
22  whatever we're doing inside this
23  relationship with Victoryland.

166

1          MR. ANDERSON:  But if he --
2          MR. HENINGER:  That's what I'm
3   asking him.
4      Q.    Did you give permission to
5   Fred Gray, Jr., to disclose and discuss
6   confidential workings between the two of
7   you, with drafts, things of that nature,
8   with representatives of Victoryland?
9          MR. TEPLEY:  Object to the
10  form of the question.
11     A.    That --
12          MR. GRAY, SR.:  Just a moment.
13          MR. ANDERSON:  I'm going to
14  object to attorney-client privilege about
15  what he talked to his lawyers about.
16          MR. HENINGER:  If you're going
17  to insist on it, I think we're going to have
18  to call the judge, or at least mark this
19  place.
20          Because, James, I think it's
21  clear that that question is asking him
22  whether he actually stated there would be no
23  breach of attorney-client privilege because

167

1   he was permitted to disclose this
2   confidential information.  I don't see how
3   you can claim such a statement would be
4   protected.
5          MR. ANDERSON:  I think there's
6   another way you can ask it.  And it may have
7   been the way you asked it before.  And it --
8          MR. HENINGER:  Well I want to
9   go back.  Let's stay with this exhibit, and
10  we'll perfect the Record.
11          MR. ANDERSON:  Will you let me
12  take a break and talk to my client, and I
13  think I can clear some of this up.
14          MR. HENINGER:  You've promised
15  me that three times today.
16          MR. ANDERSON:  I know.  And
17  we're doing a little better.  Let's take a
18  break.
19          VIDEOGRAPHER:  This is the end
20  of tape number three.  We're off the Record
21  at 2:51 p.m.
22          (Recess taken.)
23          VIDEOGRAPHER:  This is the

168

1   beginning of tape number four.  We are back
2   on the Record at 3:08 p.m.
3          MR. ANDERSON:  Steve, as I
4   mentioned to you off the Record, I think the
5   sheriff has a statement that will help
6   clarify.  And I think he got a little
7   confused.
8          Do you want to say something,
9   sheriff?
10          THE WITNESS:  Mr. Heninger, I
11  apologize for any confusion.  I was sort of
12  confused with the attorney-client privilege
13  thing.  What you were asking, it was okay if
14  he talked to somebody to do -- to accomplish
15  what I needed to get done; it was to
16  whomever.  As a matter of fact, shortly
17  after this happened, I came to Sheriff D.T.
18  Marshall, because, call it naive or what, I
19  went to him.  I thought we were talking
20  about bingo in a traditional sense.  And --
21     Q.    You mean card bingo?
22     A.    Yeah.  Shortly after, I went
23  to Sheriff D.T. Marshall, I spent maybe a

42 (Pages 165 to 168)

# FREEDOM COURT REPORTING

169

1    couple of hours in his office. He talked to
2    me about it, he gave me a copy of his rules.
3            I brought them back, and I
4    gave them to Fred. He also let me talk to
5    the guy in his office, some tall guy,
6    Sheriff Marshall can --
7            MR. ANDERSON: For
8    clarification, Sheriff Marshall is the
9    sheriff of Montgomery County.
10    A.    Is the sheriff of Montgomery
11    County. And he talked to me about bingo; we
12    had a conversation about bingo. Then the
13    person he has that's over bingo, I went and
14    talked to him. And the rules that -- I got
15    a copy of his rules, and I brought them back
16    and gave them to Fred.
17    Q.    Thank you. Let me go back to
18    where we started.
19    A.    Yes.
20    Q.    Was it your intent that all
21    discussions, work, drafts in this
22    relationship between you and Fred Gray, Jr.,
23    to come up with these rules and regulations,

170

1    be kept confidential between you and he as
2    attorney/client, was that your intent?
3            MR. ANDERSON: All
4    discussions?
5            MR. HENINGER: (Nods head
6    affirmatively.)
7    A.    I -- That wasn't -- I did not
8    care if Mr. Gray discussed that with
9    somebody in accomplishing what I had asked
10    him to do. But there were some things that
11    we discussed that I would -- and I think he
12    knows what those things are that I would
13    rather keep confidential.
14    Q.    He may. But, see, we need to
15    talk about the ones that you did not.
16            So it was not your intent that
17    all discussions, drafts of rules and
18    regulations for bingo licensing in Macon
19    County be kept confidential and between only
20    you and he until published? That was not
21    your intent on all discussions?
22    A.    I don't know what my intent
23    exactly was on that issue, because -- I'm

171

1    trying to answer you honest, Mr. Heninger.
2    Q.    You mean that?
3    A.    I relied on Fred to do
4    something I had asked him to do.
5    Q.    And you've told us that many
6    times, thank you. That's established.
7            I'm only trying to find out if
8    it was your intent when working with Fred
9    Gray, Jr., you selected to help by drafting
10    these rules and regulations for your
11    approval. Was it your intent in that
12    relationship that all your discussions, all
13    your work product, all your drafts remain
14    confidential as between attorney and client
15    until you approved them and they were
16    released?
17    A.    I expected a certain degree of
18    confidentiality.
19    Q.    Well, attorney-client is
20    totally confidential. Do you understand
21    that?
22    A.    Yes, sir.
23    Q.    Is that what you intended,

172

1    total confidentiality between you and Fred
2    Gray so that nothing could be disclosed
3    about your discussions, work, or drafts of
4    rules and regulations until you had approved
5    them and published them? Was that your
6    intent?
7            MR. ANDERSON: You're asking
8    him about three different areas.
9            MR. HENINGER: Yes.
10    A.    I did not have any objections
11    to him talking to people in getting this
12    thing accomplished.
13    Q.    He could tell people what
14    y'all had discussed and were thinking of?
15            MR. ANDERSON: Object to the
16    form.
17    Q.    Could he?
18    A.    He could discuss -- He could
19    discuss what he needed to to achieve the
20    goals and objectives.
21    Q.    Sheriff Warren, could he
22    discuss, under your intent as the client,
23    could he discuss what the two of you had

43  (Pages 169 to 172)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

173

1  discussed, what the two of you were
2  considering to get input from others?
3  　　A.　I wouldn't -- I'll just answer
4  that by saying I did not object to him --
5  since I have -- I know what you're talking
6  about, I did not object to him talking to
7  anyone to get what I needed accomplished
8  now. And that's -- was my intentions.
9  　　Q.　And did you make those
10  intentions known to Fred Gray, Jr.?
11  　　MR. ANDERSON: It might get
12  into what he discussed, so I will --
13  　　MR. HENINGER: Are you
14  objecting?
15  　　MR. ANDERSON: Yes, I'm
16  objecting.
17  　　Q.　And when you say in your last
18  answer you were explaining that you had a
19  work product that you were looking for from
20  Fred Gray, Jr., in the drafts of the rules
21  and regulations; true? I mean that's your
22  mission?
23  　　A.　Yes, sir.

174

1  　　Q.　And you did not object to him
2  discussing that work product with others, if
3  it could improve it?
4  　　A.　I did not have an objection to
5  him speaking with others to accomplish that
6  goal.
7  　　Q.　He could disclose what the two
8  of you were discussing?
9  　　A.　Sir, I didn't say that.
10  　　Q.　Well, I'm asking. That's
11  where there was a question mark after that.
12  　　A.　I just -- I don't think that
13  that came up, you know.
14  　　Q.　What was your intent? Could
15  he discuss with those others what y'all had
16  been kicking around as potential rules?
17  What was your intent?
18  　　A.　The intent was to get rules
19  and regulations to govern bingo. That --
20  　　Q.　By any means?
21  　　A.　As finite as you're putting
22  that, I don't think that came up as a part
23  of the conversation.

175

1  　　Q.　Sheriff, I'm not your dad and
2  I'm not your lawyer.
3  　　A.　I understand.
4  　　Q.　But there's plenty of good
5  lawyers in this room, and I can assure you
6  that the attorney-client privilege, you
7  can't have it and avoid it at the same time,
8  it's one or the other. And that's why I'm
9  asking you as specifically as I can was it
10  your intent, you the client, Sheriff David
11  Warren, was it your intent that the
12  discussions and drafts and work done between
13  you and Fred Gray, Jr., inside this circle
14  of trust and attorney-client relationship be
15  held in confidence within that relationship?
16  　　MR. DAVENPORT: Object to the
17  form.
18  　　A.　That was probably -- Put in
19  those terms, that may have been -- I'm not
20  an attorney.
21  　　Q.　I know that.
22  　　A.　I know you're not my daddy,
23  and I know you're not my attorney, and I'm

176

1  not one either, and I'm just trying to
2  answer the question. I expected Fred to do
3  what he needed to do to get that assignment
4  accomplished; that -- that -- the directions
5  that I gave him to get bingo -- rules and
6  regulations that would govern bingo. I
7  didn't care if he spoke with somebody. Of
8  course -- And that's all I'm saying.
9  　　Q.　You expected Fred to do
10  whatever he needed to do to get the job
11  done, is that what you said?
12  　　A.　I did not care -- What I'm
13  saying is, is what I've said: I did not
14  object to him speaking to somebody to get
15  that job done.
16  　　Q.　And there is nobody that was
17  hands off for him to speak with, plan with,
18  collaborate with in suggesting rules and
19  regulations; true?
20  　　A.　At that point in time, that
21  may have been true.
22  　　Q.　Victoryland wasn't hands off.
23  You gave him -- Or you intended no

44  (Pages 173 to 176)

# FREEDOM COURT REPORTING

177

1  instructions that he not be allowed to talk
2  to people from Victoryland?
3      A.    We did not get into -- I don't
4  know who he spoke with, sir.
5      Q.    I didn't ask you that,
6  Sheriff. My fault, obviously.
7          I am simply asking you when
8  you say that he was intended by you to be
9  able to talk with others so he could get his
10 job done, and I asked you was it hands off
11 with anyone, and you said no. No hands off
12 with anyone.
13     A.    Right.
14     Q.    So if there's no hands off,
15 that means he could talk to the owners and
16 operators of Victoryland about the proposed
17 rules for gaming; true?
18     A.    He could talk to whom he
19 needed to talk to at Victoryland, I would
20 think.
21     Q.    He could talk to the lawyers
22 who represent Victoryland if he wanted to;
23 true?

178

1      A.    Yes.
2      Q.    He could talk to shareholders
3  of Victoryland if he wanted to; true?
4      A.    I would suppose.
5      Q.    He could talk to his father,
6  who is his law partner and a shareholder in
7  Victoryland, to get his input; true?
8      A.    Yes, sir.
9      Q.    That would be all right by
10 you?
11     A.    I had no objections to him
12 speaking with people.
13     Q.    All right. Did that happen?
14 Did Fred Gray, Jr., as you sit here today,
15 do you know if he received input from
16 representatives of Victoryland in the drafts
17 he presented to you on the rules and
18 regulations for bingo licensing in Macon
19 County?
20     A.    I don't know who he spoke
21 with.
22     Q.    You truly do not?
23     A.    No, sir.

179

1      Q.    As you sit here today, you
2  don't know who he spoke with to get any
3  input about these drafts of the rules and
4  regulations for you to approve?
5      A.    To the best of my
6  recollection, I don't know who he spoke
7  with.
8      Q.    You don't know if he spoke
9  with his father, Fred Gray?
10     A.    I don't -- I just said I don't
11 know who he spoke with.
12     Q.    I understand. But I'm going
13 to go down the laundry list. You don't know
14 if he spoke with Milton McGregor?
15     A.    I don't know.
16     Q.    You knew at that time, and had
17 known for a long time that the Gray Law Firm
18 represented Victoryland?
19     A.    Yes, I did.
20     Q.    You knew, and had known for
21 some time, that Fred Gray, a senior partner
22 in that firm, had an interest in
23 Victoryland?

180

1      A.    I knew that he had an
2  interest, but I didn't know -- I knew he was
3  affiliated with Victoryland, but I didn't
4  know how.
5      Q.    You didn't know the extent?
6      A.    No, sir.
7      Q.    But you knew he had an
8  interest in Victoryland and had known that
9  for some time?
10     A.    I knew Mr. Gray had an
11 affiliation with Victoryland. And to what
12 extent, I didn't know.
13     Q.    You knew Milton McGregor was
14 the principal in Victoryland?
15     A.    Yes.
16     Q.    You knew that Milton McGregor
17 had expressed to you that Victoryland was
18 interested in getting the Class B operator's
19 license while you were drafting your rules?
20         MR. TEPLEY: Object to the
21 form of the question.
22     A.    I knew that Mr. McGregor was
23 interested in conducting bingo.

45  (Pages 177 to 180)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

201

1    Q.    Let me show you what I'm
2 marking as Plaintiff's Exhibit --
3         MR. HENINGER:  We're at 12?
4         MR. ANDERSON:  Yeah.
5    Q.    And I got ahead of myself, I
6 always do.
7         On 11, just so I can close
8 that out, I had two questions on that.  Was
9 it stated by Sheriff Warren that
10 confidential information inside the circle
11 could be discussed with representatives of
12 Victoryland.  I think we established that
13 you allowed it to be discussed with anyone,
14 not just Victoryland?
15         MR. TEPLEY:  Object to the
16 form.
17    A.    I did not have a problem with
18 him talking to anyone regarding.
19    Q.    So can I put yes there?
20         MR. DAVENPORT:  I'm going to
21 object now.  Now, first off it wasn't
22 stated.
23    Q.    Correct.

202

1         MR. DAVENPORT:  The Record
2 will reflect, I don't think he ever said it
3 was stated.
4         MR. HENINGER:  I want to get
5 it right.  Thank you, Ron.
6    Q.    Was it stated by Sheriff
7 Warren that confidential information inside
8 the circle could be discussed with
9 representatives of Victoryland?
10         MR. ANDERSON:  Not stated --
11 Object to stated to his lawyer.  He stated
12 in his deposition that it was okay.
13    Q.    Would that be a yes or a no?
14    A.    I stated that he could speak
15 to anyone.
16    Q.    Because I'll forget this if I
17 don't do this.  Second question:  Was it
18 permitted in advance by Warren that Gray,
19 Jr., could get input from representatives of
20 Victoryland in drafting the rules?
21         MR. ANDERSON:  Again, without
22 waiving the client privilege, I think he's
23 answered it was okay for him to get input

203

1 outside.
2    Q.    Would the answer to that be
3 yes?
4    A.    My answer was Mr. Gray could
5 speak to anyone to get what I hired him to
6 do accomplished.
7    Q.    Which would include
8 Victoryland and its representatives?
9    A.    I did not object to it.
10    Q.    So yes would be appropriate,
11 wouldn't it?
12         MR. TEPLEY:  I'm going to
13 object.  I think the Record speaks to what
14 he's answering, not the document he's
15 marking.
16         MR. HENINGER:  I think the
17 document is part of the Record, Peter.
18 That's its purpose.  But I understand your
19 objection.
20         MR. TEPLEY:  My objection is
21 that document doesn't reflect his testimony.
22         MR. ANDERSON:  That's fine.
23    Q.    Well, let's get

204

1 clarification --
2         MR. TEPLEY:  I don't object --
3    Q.    -- does Exhibit 11 not reflect
4 what you've told me under oath?
5    A.    Sir, what I told you under
6 oath was that I did not object to Mr. Gray
7 having discussions with anyone to get this
8 done.
9    Q.    I understand.  And I'm trying
10 to simplify it for my benefit.  And if you
11 will allow the witness to see this, since
12 it's his testimony that matters, is that
13 Exhibit 11 an accurate representation of
14 your answer to those two questions?
15    A.    I have stated --
16    Q.    I think you better look at it.
17    A.    I have stated for the Court
18 what my answer to that question was,
19 Mr. Heninger.
20    Q.    Sheriff, I don't want to have
21 to go to court some day and say -- and the
22 judge say, Steve, he never confirmed that
23 Exhibit 11 was the truth.

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

Document 150 with Exhibits attached

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

HOPE FOR FAMILIES & COMMUNITY)
SERVICES, INC., et al.,                )
                                       )
     Plaintiffs,                     )
                                       )
vs.                                    )  **CASE NO.: 3:06-cv-01113-wkw-csc**
                                       )
DAVID WARREN, et al.,                  )
                                       )
     Defendants.                     )

**MOTION TO QUASH PLAINTIFF LUCKY PALACE, LLC'S DEPOSITION NOTICE
OF FRED GRAY, JR., OR ALTERNATIVELY, FOR A PROTECTIVE ORDER**

COMES NOW non-parties Gray, Langford, Sapp, McGowen, Gray, Gray, &
Nathanson (the "Gray Law Firm"), Fred. D. Gray ("Fred Gray.") and Fred. D. Gray,
Jr., ("Fred Gray, Jr."), (collectively, "Gray"), pursuant to FRCP 26, and states as
follows:

1.     On March 7, 2008, Plaintiff Lucky Palace, LLC ("Lucky Palace") served
a notice to take the deposition of Fred Gray, Jr. *See* Lucky Palace, LLC's Notice to
Take Deposition, attached hereto as Exhibit A.

2.     This motion is made on the grounds that Lucky Palace seeks disclosure
at Fred Gray, Jr.'s deposition of information that reflects Fred Gray, Jr.'s
confidential conversations with his client(s), Defendant Sheriff David Warren and/or
Defendants Milton McGregor and Macon County Greyhound Park, Inc., and his
impressions, conclusions, opinions, and legal research. Such information is
protected by the attorney-client privilege and by the work product rule, and is thus
not discoverable. Furthermore, to date, the Plaintiffs have not deposed any of the

1

above-named defendants. Thus, Lucky Palace cannot show a substantial need for the confidential and privileged information which they now seek.

3.     Movants requested and received an opinion from the Alabama State Bar Office of General Counsel regarding the hypothetical issues surrounding the discovery requests served upon the Movants in the above-styled action. *See* Request for Ethics Opinion, attached as Exhibit B and Informal Opinion, attached as Exhibit C. The opinion of the State Bar is that there is no exception under Rule 1.6 of the Alabama Rules of Professional Conduct which would justify the disclosure of any confidential information held by the Movants on behalf of their clients. The State Bar further instructs that "motions to quash subpoenas or notices of depositions, and possible protective orders obtained from the trial court" are in order.

4.     The Gray Law Firm, Fred Gray and Fred Gray Jr., move the Court pursuant to FRCP 26(c)(1) for a protective order quashing Lucky Palace's deposition notice of Fred Gray Jr. Courts generally will permit the deposition of opposing counsel[1] ***only*** upon a showing of substantial need ***and only*** after alternate discovery avenues have been exhausted or proven impractical. *See, e.g., West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301 (S.D. Fla. 1990). Because deposition of a party's attorney is usually both burdensome and disruptive, ***the mere request to depose an attorney constitutes good cause*** for obtaining a protective order to prevent the deposition unless the party seeking the deposition

---

[1]     Likewise, deposing a former attorney, as opposed to a present attorney, does not lessen the ever present threat that the attorney-client privilege or work product may be involved. *See, e.g., N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83 (M.D. N.C. 1987).

2

can show the propriety of and need for the deposition and demonstrate that the deposition is the only practical means available for obtaining the information. *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83 (M.D. N.C. 1987). The party seeking the deposition must also show that the information sought will not invade the attorney-client privilege or the work product privilege and that the information is relevant and the need for it outweighs the disadvantages inherent in deposing the party's attorney. *Id.* at 86. Additionally, the party seeking the deposition

> must demonstrate that the deposition is the only practical means available of obtaining the information. If there are other persons available who have the information, they should be deposed first. Also, other methods, such as written interrogatories which do not involve the same dangers as an oral deposition, should be employed.[2]

*Id.; See also West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. at 302 (party seeking to depose attorney must show that the deposition is the only practical means of obtaining the information, that the attorney's deposition would not invade the privilege, and that need outweighs the dangers of deposing an attorney). Lucky Palace has failed to make any such showing.

5.    In the alternative, pursuant to FRCP 26(c), the Movants seek an order preventing Lucky Palace from inquiring into matters protected by the attorney-client privilege or the work product rule. A district court has broad discretion in

---

[2]    Plaintiffs have served Movants with written discovery and, upon objection by Movants, have moved to compel such discovery. (Doc. 135) Movants' response showing cause why the motion should not be granted is due on or before March 24, 2008 and oral argument is set for March 28, 2008. Thus, it is premature to seek to depose Fred Gray, Jr. at this time.

3

fashioning protective orders. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). Fed. R. Civ. P. 26(c) provides that a court "for good cause shown . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." In addition, this circuit has superimposed a "balancing of interests" approach to Rule 26(c). *Id.* at 1547. This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential. *Id.* Here, Lucky Palace has failed to show substantial need for the privileged information and the Movants, in accordance with their professional responsibility, have clearly demonstrated a strong interest in upholding the attorney-client privilege and work product rule. Furthermore, Movants' clients have not consented to the disclosure by Movants of any confidential information.

6.    Pursuant to FRCP 26(c)(1), the undersigned certifies that the Movants have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve this dispute without court action. *See* Beck Affidavit, attached hereto as Exhibit D.

WHEREFORE, based upon the foregoing, Movants respectfully request this Court enter a protective order preventing the deposition of Fred Gray, Jr., or alternatively, a protective order restricting Lucky Palace from inquiring into matters protected by the attorney-client privilege or the work product rule.

Respectfully submitted, this the 17th day of March, 2008.

s/**George L. Beck, Jr.**
**George L. Beck, Jr. (BEC011)**
**Ronald G. Davenport (DAV044)**

4

Attorneys for Movants Gray, Langford,
Sapp, McGowen, Gray, Gray, & Nathanson,
Fred Gray and Fred Gray, Jr.

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
Post Office Box 2069
150 South Perry Street 36104
Montgomery, AL  36102-2069
Telephone:   (334) 241-8000
Facsimile:   (334) 323-8888
Email:        glb@chlaw.com

RUSHTON, STAKELY, JOHNSTON & GARRETT
184 Commerce Street
P.O. Box 270
Montgomery, AL  36101
Email:        rgd@rsjg.com

## CERTIFICATE OF SERVICE

        I hereby certify that on March 17, 2008, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system, which will send notification of
such filing to the following:

Robert K. Spotswood
Michael T. Sansbury
SPOTSWOOD, SANSOM & SANSBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, AL  35203-3329
Email:        rks@spotswoodllc.com
              msansbury@spotswoodllc.com

Fred D. Gray
Fred D. Gray, Jr.
GRAY, LANGFORD, SAPP, McGOWAN,
        GRAY, GRAY & NATHANSON
P.O. Box 830239
Tuskegee, AL  36083-0239
Email:        fgray@glsmgn.com
              jbibb@glsmgn.com
              fgrayjr@glsmgn.com
              thalia@glsmgn.com

Stephen Don Heninger
William Lewis Garrison, Jr.
Gayle Douglas
HENINGER GARRISON DAVIS, LLC
P. O. Box 11310
2224 1st Avenue North
Birmingham, AL  35202
Email:       steve@hgdlawfirm.com
             wlgarrison@hgdlawfirm.com
             gdouglas@hgdlawfirm.com

John Mark White
Augusta S. Dowd
Rebecca DePalma
WHITE, ARNOLD ANDREWS & DOWD
2025 Third Avenue North
Suite 600
Birmingham, AL  35203
Email:       mwhite@waadlaw.com
             adowd@waadlaw.com
             rdepalma@waadlaw.com

James H. Anderson
Ryan Wesley Shaw
BEERS, ANDERSON, JACKSON,
PATTY, VAN HEEST & FAWAL
P.O. Box 1988
Montgomery, AL  36102
Email:       janderson@beersanderson.com
             wshaw@beersanderson.com

William M. Slaughter
Patricia C. Diak
Peter John Tepley
Khristi Doss Driver
HASKELL, SLAUGHTER, YOUNG & REDIKER
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
Email:       wms@hsy.com
             pcd@hsy.com
             pt@hsy.com
             kdd@hsy.com

John M. Bolton, III
Charlanna White Spencer
HILL, HILL, CARTER, FRANCO, COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL  36104
Email:        jbolton@hillhillcarter.com
              cspencer@hillhillcarter.com


                                    s/George L. Beck, Jr.
                                    George L. Beck, Jr.

Case 3:06-cv-01113-WKW-CSC    Document 166    Filed 03/26/2008    Page 34 of 43
Case 3:06-cv-01113-W,   .-CSC    Document 150-2    Filed ( 17/2008    Page 1 of 4
Case 3:06-cv-01113-WKW-CSC    Document 145-2    Filed 03/07/2008    Page 1 of 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

HOPE FOR FAMILIES & COMMUNITY    )
SERVICES, INC., et al.,    )
     Plaintiffs,    )
        )
v.    )    Case No.: 3:06-cv-01113-WKW-WC
        )
DAVID WARREN, in his Official    )
Capacity as the SHERIFF OF MACON    )
COUNTY, et al.,    )
    Defendants.    )

### PLAINTIFF, LUCKY PALACE, LLC'S, NOTICE TO TAKE DEPOSITION

TO:   Peter John Tepley, Esq.
     HASKELL, SLAUGHTER, YOUNG & REDIKER, LLC
     1400 Park Place Tower
     2001 Park Place North
     Birmingham, AL 35203

     Please take notice that plaintiff will, by oral examination, take the video testimony via teleconference of the deponent whose name is listed below, for the purpose of discovery and/or for use as evidence in the action before a court reporter or before some other duly qualified officer, in accordance with the Federal Rules of Civil Procedure. The oral examination will continue until completed.

    **DEPONENT:**    **Fred D. Gray, Jr.**

    **TIME:**    To Be Determined by parties and counsel for Fred D. Gray, Jr.

    **DATE:**    To Be Determined by parties and counsel for Fred D. Gray, Jr.

    **LOCATION:**    To Be Determined by parties and counsel for Fred D. Gray, Jr.

                                          _____
                                        STEPHEN D. HENINGER [ASB5227E685]
                                        Attorney for Lucky Palace, LLC
                                        HENINGER GARRISON DAVIS, LLC
                                        2224 1st Avenue North
                                        Birmingham, Alabama 35203
                                        Phone:    (205) 326-3336
                                        Fax:      (205) 326-3332



EXHIBIT
A

Case 3:06-cv-01113-WKW-CSC   Document 166   Filed 03/26/2008   Page 35 of 43
Case 3:06-cv-01113-W.  /-CSC   Document 150-2   Filed (  17/2008   Page 2 of 4
Case 3:06-cv-01113-WKW-CSC   Document 145-2   Filed 03/07/2008   Page 2 of 4

E-mail:      sheninger@hgdlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Fred David Gray, Esq.
Fred David Gray Jr., Esq.
GRAY, LANGFORD, SAPP, MCGOWAN, GRAY & NATHANSON
P.O. Box 830239
Tuskegee, AL 36083-0239
Telephone:    (334) 269-2563
Facsimile:    (334) 269-2959
E-mail:       fgray@glsmgn.com
              jbibb@glsmgn.com
              fgrayjr@glsmgn.com
              thalia@glsmgn.com

James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
BEERS, ANDERSON, JACKSON, PATTY,
VAN HEEST & FAWAL PC
P.O. Box 1988
Montgomery, AL 36102
Telephone:    (334) 834-5311
Facsimile:    (334) 834-5362
E-mail:       janderson@beersanderson.com
              wshaw@beersanderson.com

John Mark White, Esq.
Augusta S. Dowd, Esq.
Rebecca G. DePalma, Esq.
WHITE, ARNOLD, ANDREWS & DOWD, PC
2025 Third Avenue North Suite 600
Birmingham, AL 35203
Telephone:    (205) 323-1888
Facsimile:    (205) 323-8907
E-mail:       mwhite@waadlaw.com
              adowd@waadlaw.com
              rdepalma@waadlaw.com

Case 3:06-cv-01113-WKW-CSC    Document 166    Filed 03/26/2008    Page 36 of 43
Case 3:06-cv-01113-W ⋮ √-CSC    Document 150-2    Filed    17/2008    Page 3 of 4
Case 3:06-cv-01113-WKW-CSC    Document 145-2    Filed 03/07/2008    Page 3 of 4

---

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Khristi Doss Driver, Esq.
HASKELL, SLAUGHTER, YOUNG & REDIKER, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
Telephone:     (205) 251-1000
Facsimile:      (205) 324-1133
E-mail:_____ wms@hsy.com
_____ pcd@hsy.com
_____ pt@hsy.com
_____ kdd@hsy.com

John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
SASSER, BOLTON & SEFTON PC
PO Box 242127
Montgomery, AL 36124-2127
Telephone:     (334) 532-3400
Facsimile:      (334) 532-3434
E-mail:_____ jbolton@sasserlawfirm.com
_____ cspencer@sasserlawfirm.com

Robert K. Spotswood, Esq.
Michael T. Sansbury, Esq.
SPOTSWOOD SANSOM & SANBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, AL 5203-3329
Telephone:     (205) 986-3620
Facsimile:      (205) 986-3639
E-mail:_____ rks@spotswoodllc.com
_____ msansbury@spotswoodllc.com

George L. Beck, Jr., Esq.
CAPELL & HOWARD, PC
150 South Perry Street
PO Box 2069
Montgomery, AL 36102-2-69
Telephone:     (334) 241-8002
Facsimile:      (334) 323-8888
E-mail:_____ glb@chlaw.com

_____

And I certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE

_____

STEPHEN D. HENINGER [ASB5227E685]
Attorney for Lucky Palace, LLC
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Phone:          (205) 326-3336
Fax:            (205) 326-3332
E-mail:         sheninger@hgdlawfirm.com

FRANK H. McFADDEN
JOHN F. ANDREWS
WILLIAM D. COLEMAN
WILLIAM K. MARTIN
GEORGE L. BECK, JR.
BRUCE J. DOWNEY III
HENRY C. BARNETT, JR.
K. PALMER SMITH
ROBERT T. MEADOWS III
HENRY H. HUTCHINSON
SHAPARD D. ASHLEY
D. KYLE JOHNSON
ROBERT F. NORTHCUTT
J. LISTER HUBBARD
JAMES N. WALTER, JR.

JAMES M.  JONES
CONSTANCE SMITH BARKER
THOMAS M. EDEN III
W. HOLT SPEIR III
CHRISTOPHER W. WELLER
DEBRA DEAMES SPAIN
C. CLAY TORBERT III
R. BROOKE LAWSON III
J. SCOTT PIERCE
ROBERT D. RIVES
RICHARD H. ALLEN
M. COURTNEY WILLIAMS
LEE M. RUSSELL, JR.
CHAD W. BRYAN
MICHAEL P. DALTON

LEE H. HOUSTON  RICHARDSON
ARDEN REED PATHAK
TODD H. COX
RICHARD F. CALHOUN, JR.
WILLIAM R. CUNNINGHAM, JR.
W. ALLEN SHEEHAN
TERRIE SCOTT BIGGS

OF COUNSEL:
JAMES M. SCOTT
THOMAS S. LAWSON, JR.

AFFILIATED COUNSEL:
CHAD D. EMERSON

# CAPELL & HOWARD P.C.
### ATTORNEYS AT LAW

February 11, 2008

J. Anthony McLain, Esq.
Alabama State Bar
415 Dexter Avenue
Montgomery, AL 36104

> **EXHIBIT**
> tabbies
> **B**

RE:     *Request for Ethics Opinion*
          *Our Ref.: 26632-002*

Dear Mr. McLain:

My law firm respectfully requests an ethics opinion from the Alabama Bar on the matters expressed herein.

Lawyer, Sr. and Lawyer, Jr. are father and son who are members of a multiple-member Law Firm. Lawyer, Sr. is the founder of the firm and has represented Client A in various legal matters over a period exceeding twenty years. Lawyer, Jr. has represented Client B in various legal matters over a period of approximately twenty years. Client A is aware of the legal services provided by Lawyer, Jr. and Client B, and Client B is aware of the legal services provided by Lawyer, Sr. to Client A. Previously, Client A and Client B had never been aligned as parties in the same legal action. Lawyer, Sr. is a minority shareholder in Client A.

The Plaintiffs, potential competitors of Client A, have filed civil litigation against Clients A and B. Plaintiffs allege, among other things, that Client A's fee payments to Law Firm for legal services constitute bribes to Lawyer, Jr. The Plaintiffs admit that they have no factual basis for this allegation and state in their complaint that this information is peculiarly within the knowledge of Lawyer, Sr. and Lawyer, Jr.

In this litigation, the Law Firm, and particularly Lawyer, Jr., are representing Client B. No member of the Law Firm is representing Client A in any matter connected with this litigation. The Plaintiffs are now seeking discovery by subpoena and deposition from the Law Firm. Neither Client A nor B has consented or authorized the Law Firm to produce any information. Neither Client A nor B has waived or agreed to waive any attorney-client or work-product privilege.

MONTGOMERY · OPELIKA / AUBURN

1113219  150 SOUTH PERRY STREET (36104), POST OFFICE BOX 2069, MONTGOMERY, ALABAMA 36102-2069
334 241 8000 *tel*    334 323 8888 *fax*    www.capellhoward.com

Page 2
February 11, 2008

An opinion is sought on the following questions:

1.     What is the ethical obligation of the Law Firm in connection with the subpoenas for documents, billing records, information and communications concerning both Client A and Client B?

2.     Absent a waiver from Client A, can the Law Firm or any of its members divulge any information about Client A concerning the representation, communications with Client A or communications with any other party regarding legal matters handled for Client A?

3.     This same question applies to Client B.  Absent a waiver from Client B, can the Law Firm or any of its members divulge any information about Client B concerning the representation, communications with Client B or communications with any other party regarding legal matters handled for Client B?

4.     Do any of the exceptions set forth in Rule 1.6, Alabama Rules of Professional Conduct apply to the Plaintiffs in the context of the pending litigation?

Sincerely,

CAPELL & HOWARD, P.C.

George L. Beck, Jr.

cc:     Ron Davenport
        Mark White
        Augusta Dowd
        John Bolton

1113219

02/19/2008  03:07   3342616311                    AL STATE BAR OGC                   PAGE  01/02



ALABAMA STATE BAR
OFFICE OF GENERAL COUNSEL
415 Dexter Avenue • Post Office Box 671 • Montgomery, Alabama 36101
Telephone: 334 / 269-1515 • Fax: 334 / 261-8311
www.alabar.org

February 19, 2008

Mr. George L. Beck, Jr.
Capell & Howard
Attorneys at Law
150 South Perry Street
Montgomery, AL 36102-2069

Re: Written Ethical Inquiry

Dear Mr. Beck:

        I am writing in response to your letter dated February 11, 2008, requesting an
ethics opinion from this office. A copy of your letter is attached hereto for reference
purposes. In response to your request, I am providing you the following which is an
informal opinion of the Office of General Counsel and is not binding on the
Disciplinary Commission of the Alabama State Bar.

        The relevant facts are that the two lawyers, father and son, and members of the
same law firm, have represented two clients, A and B, for a substantial period of time.
Suit has recently been filed against clients A and B wherein it is alleged that client A's
fee payments to the law firm constitute bribes to the son. In the present litigation, the
firm is representing only client B, who is being represented by the son.

        Plaintiffs are seeking discovery by subpoena and deposition of information
from the law firm concerning their representation. Neither client A nor B has waived
the attorney-client or work-product privilege.

        The law firm's obligation to both clients A and B is to maintain privilege and
confidentiality of any and all information in its possession with regard to those clients.
Rule 1.6 of the Alabama Rules of Professional Conduct requires that the father and
son resist any efforts by the plaintiffs to discover any such confidential or privileged
client information. Absent a waiver by the client, or a court order, the father and son



EXHIBIT
C

02/19/2008  03:07   3342616311              AL STATE BAR OGC                    PAGE  02/02

Mr. George L. Beck, Jr.
Page Two
February 19, 2008

lawyers should make every effort to protect this information. As such, motions to
quash subpoenas or notices of depositions, and possible protective orders obtained
from the trial court would be in order.

     Also be reminded that confidentiality relates to any and all information
gained during the course of representing the clients, regardless of the source of
that information. Confidential information is not restricted solely to lawyer-client
privileged communications. Rather, it covers any and all information gained by the
father and son during their representation of their respective clients. As mentioned
above, absent a waiver by the affected client, neither the father nor the son should
disclose this information without the consent of the affected client.

     There does not appear to be any available exception under Rule 1.6 which
would justify the disclosure of any confidential information held by the father
and/or the son on behalf of their clients. Note should also made of the fact that it
is questionable whether the plaintiffs have any right to challenge the lawyer-client
relationships which father and son have with clients A and B, and, thus, whether they
have any right to the information which they now seek from the lawyers. However,
such is a question more properly determined by the trial court as a matter of law,
rather than as an issue concerning ethics.

     I hope that this response sufficiently addresses the concerns and questions
raised in your inquiry. However, if you have any further questions, please do not
hesitate to contact this office.

                              Sincerely,

                              J. Anthony McLain
                              General Counsel

enclosure

JAM/vf

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al.,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) **Case No.: 3:06-cv-01113-wkw-csc** ) |
| **DAVID WARREN, et al.,** | ) ) |
| **Defendants.** | ) |

### AFFIDAVIT OF GEORGE L. BECK, ESQ.

**STATE OF ALABAMA** )

**COUNTY OF MONTGOMERY** )

Before me, a notary public in and for said county and state, personally appeared George L. Beck, Esq., who is known to me, and who after being first duly sworn, deposes and states as follows:

1.     My name is George L. Beck.  I am over the age of nineteen and reside in Montgomery County, Alabama.  I have personal knowledge of the statements contained herein.

2.     Counsel for Fred Gray, Fred Gray, Jr. and the Gray, Langford, Sapp, McGowen, Gray, Gray, & Nathanson law firm have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute regarding Lucky Palace, LLC's Notice of Deposition of Fred Gray, Jr. without court action.

1



EXHIBIT
D

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 17, 2008.

GEORGE L. BECK

Sworn to and subscribed before me on this the 17th day of March, 2008.

Notary Public
My Commission Expires: 1/17/11

{SEAL}

2