IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al.,** ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) ) | CASE NO.: 3:06-cv-01113-wkw-csc |
| **DAVID WARREN, et al.,** ) ) | |
| Defendants. ) | |

### PARTIAL REBUTTAL TO PLAINTIFFS' RESPONSE TO THE RESPONSE IN OPPOSITION TO THE MOTION TO QUASH DEPOSITION NOTICE OF FRED GRAY, JR., ETC.

COME NOW third parties Gray, Langford, Sapp, McGowen, Gray, Gray, & Nathanson (the "Gray Law Firm"), Fred. D. Gray ("Fred Gray.") and Fred D. Gray, Jr., ("Fred Gray, Jr."), (collectively, "Gray"), by and through counsel, and file this partial rebuttal in response to the Plaintiffs' Response in Opposition to the Motion to Quash the Deposition Notice of Fred Gray, Jr., and state as follows:

   1.   Contrary to Plaintiffs' assertion, the Defendant David Warren, Sheriff of Macon County, did not waive his attorney-client privilege in reference to conversations, matters and legal advice in connection with discussions and conferences between Sheriff Warren and Fred Gray, Jr.

   2.   Excerpts from the deposition of Sheriff Warren,[1] on pages 138, 170, 171, 172, 209-214, make it clear that, although not an attorney, Sheriff Warren clearly intended that

---

[1] Attached hereto as Exhibit "A".

matters discussed between him and Fred Gray, Jr. be treated as privileged and confidential. For example, on page 138, in response to a question about the attorney-client privilege, the witness responds as follows:

> "THE WITNESS:  Yes. To invoke attorney-client, yes.
>
> Q.  Okay. But did you want to use the attorney-client privilege to block us from legally asking any questions about that?
>
> A.  Yes."

(Ex. A, p. 138, lines 5-10.) Clearly, in no uncertain terms, Sheriff Warren has invoked the attorney-client privilege. Regardless of how many times Plaintiffs' attorney attempted to draw Sheriff Warren away from asserting the privilege, Sheriff Warren consistently indicated that his intention with working with Fred Gray, Jr. was as an attorney and he expected "…a certain degree of confidentiality." (Ex. A, p. 171, lines 17-18.)

3.  While Fred Gray, Jr. was free to discuss the rules and regulations with others in order to accomplish the Sheriff's purpose, he never gave Fred Gray, Jr. carte blanche to discuss communications between him and his attorney. (Ex. A, pp. 209-214.)

4.  Attorney Gray reserves the right to argue orally through counsel in support of his motions and in opposition to the Plaintiffs' Motion to Compel.

Respectfully submitted, this the 27th day of March, 2008.

/s/George L. Beck, Jr.
**George L. Beck, Jr. (BEC011)**
**Ronald G. Davenport (DAV044)**
*Attorneys for Movants Gray, Langford,*
*Sapp, McGowen, Gray, Gray, & Nathanson; Fred*
*Gray and Fred Gray, Jr.*

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
Post Office Box 2069
150 South Perry Street 36104
Montgomery, AL  36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888
Email:          glb@chlaw.com

RUSHTON, STAKELY, JOHNSTON & GARRETT
184 Commerce Street
P.O. Box 270
Montgomery, AL  36101
Email:          rgd@rsjg.com

## CERTIFICATE OF SERVICE

      I hereby certify that on March 27, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert K. Spotswood
Michael T. Sansbury
SPOTSWOOD, SANSOM & SANSBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, AL  35203-3329
Email:          rks@spotswoodllc.com
                msansbury@spotswoodllc.com

Fred D. Gray
Fred D. Gray, Jr.
GRAY, LANGFORD, SAPP, McGOWAN,
      GRAY, GRAY & NATHANSON
P.O. Box 830239
Tuskegee, AL  36083-0239
Email:          fgray@glsmgn.com
                jbibb@glsmgn.com
                fgrayjr@glsmgn.com
                thalia@glsmgn.com

1116501

3

Stephen Don Heninger
William Lewis Garrison, Jr.
Gayle Douglas
HENINGER GARRISON DAVIS, LLC
P. O. Box 11310
2224 1st Avenue North
Birmingham, AL  35202
Email:      steve@hgdlawfirm.com
            wlgarrison@hgdlawfirm.com
            gdouglas@hgdlawfirm.com

John Mark White
Augusta S. Dowd
Rebecca DePalma
WHITE, ARNOLD ANDREWS & DOWD
2025 Third Avenue North
Suite 600
Birmingham, AL  35203
Email:      mwhite@waadlaw.com
            adowd@waadlaw.com
            rdepalma@waadlaw.com

James H. Anderson
Ryan Wesley Shaw
BEERS, ANDERSON, JACKSON,
PATTY, VAN HEEST & FAWAL
P.O. Box 1988
Montgomery, AL  36102
Email:      janderson@beersanderson.com
            wshaw@beersanderson.com

William M. Slaughter
Patricia C. Diak
Peter John Tepley
Khristi Doss Driver
HASKELL, SLAUGHTER, YOUNG & REDIKER
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
Email:      wms@hsy.com
            pcd@hsy.com
            pt@hsy.com
            kdd@hsy.com

1116501                                                                         4

John M. Bolton, III
Charlanna White Spencer
HILL, HILL, CARTER, FRANCO, COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL  36104
Email: jbolton@hillhillcarter.com
cspencer@hillhillcarter.com


/s/George L. Beck, Jr.
**OF COUNSEL**

```
 1    attorney-client privilege?
 2         A.      Not at this time.
 3                 MR. ANDERSON:  Did you
 4    understand his question?
 5                 THE WITNESS:  Yes.  To invoke
 6    attorney-client, yes.
 7         Q.      Okay.  But you want to use the
 8    attorney-client privilege to block us from
 9    legally asking any questions about that?
10         A.      Yes.
11                 MR. ANDERSON:  I'm going to
12    object to block.
13         Q.      That's fair enough.  I just
14    want to know --
15                 MR. TEPLEY:  I object to the
16    question.
17         Q.      -- what your position is.
18                 Now, we were talking about
19    what was going through your mind when you
20    adopted the rules drafted by Fred Gray, Jr.,
21    to say that you had to have a five million
22    dollar building in place before getting an
23    application for an operator's license done,
```

EXHIBIT A

1    be kept confidential between you and he as

2    attorney/client, was that your intent?

3           MR. ANDERSON:  All

4    discussions?

5           MR. HENINGER:  (Nods head

6    affirmatively.)

7       A.    I -- That wasn't -- I did not

8    care if Mr. Gray discussed that with

9    somebody in accomplishing what I had asked

10   him to do.  But there were some things that

11   we discussed that I would -- and I think he

12   knows what those things are that I would

13   rather keep confidential.

14      Q.    He may.  But, see, we need to

15   talk about the ones that you did not.

16           So it was not your intent that

17   all discussions, drafts of rules and

18   regulations for bingo licensing in Macon

19   County be kept confidential and between only

20   you and he until published?  That was not

21   your intent on all discussions?

22      A.    I don't know what my intent

23   exactly was on that issue, because -- I'm

1   trying to answer you honest, Mr. Heninger.
2       Q.    You mean that?
3       A.    I relied on Fred to do
4   something I had asked him to do.
5       Q.    And you've told us that many
6   times, thank you.  That's established.
7             I'm only trying to find out if
8   it was your intent when working with Fred
9   Gray, Jr., you selected to help by drafting
10  these rules and regulations for your
11  approval.  Was it your intent in that
12  relationship that all your discussions, all
13  your work product, all your drafts remain
14  confidential as between attorney and client
15  until you approved them and they were
16  released?
17      A.    I expected a certain degree of
18  confidentiality.
19      Q.    Well, attorney-client is
20  totally confidential.  Do you understand
21  that?
22      A.    Yes, sir.
23      Q.    Is that what you intended,

1  total confidentiality between you and Fred
2  Gray so that nothing could be disclosed
3  about your discussions, work, or drafts of
4  rules and regulations until you had approved
5  them and published them?  Was that your
6  intent?
7           MR. ANDERSON:  You're asking
8  him about three different areas.
9           MR. HENINGER:  Yes.
10     A.    I did not have any objections
11 to him talking to people in getting this
12 thing accomplished.
13     Q.    He could tell people what
14 y'all had discussed and were thinking of?
15           MR. ANDERSON:  Object to the
16 form.
17     Q.    Could he?
18     A.    He could discuss -- He could
19 discuss what he needed to to achieve the
20 goals and objectives.
21     Q.    Sheriff Warren, could he
22 discuss, under your intent as the client,
23 could he discuss what the two of you had

1    And I respect your right to
2  object, I just disagree with it.
3             MR. ANDERSON:  I'm surprised.
4        Q.    But back to the most important
5  person in the room, because it's your
6  testimony that's at issue, not lawyers.
7             Was it stated by Sheriff
8  Warren that confidential information inside
9  the circle of you and Fred Gray, Jr., could
10 be discussed with representatives of
11 Victoryland?
12            MR. DAVENPORT:  I'm going to
13 object and assert the attorney-client
14 privilege unless he waves it on behalf of
15 Mr. Gray.  That invades the attorney-client
16 privilege, and I'm objecting unless he waves
17 that objection.
18       Q.    Sheriff Warren?
19       A.    Sir, that is not a
20 representation of what I told -- said to
21 Mr. Gray.
22       Q.    Do you assert the
23 attorney-client privilege with regard to

1  your intent for what Mr. Gray, Jr., was
2  allowed to discuss outside this circle of
3  trust between you and he, or what to bring
4  inside the circle of trust between you and
5  he?
6       A.   You know, Mr. Heninger, that
7  circle of trust is something that I have
8  dealt with, and it usually related to
9  narcotics investigations and that type of
10 thing.  Fred and I had an attorney-client
11 privilege in its traditional sense, and I
12 have tried to make clear what my intentions
13 were when I instructed my attorney to act.
14      Q.   Did you intend your
15 attorney-client relationship with Fred Gray,
16 Jr., to block him from sending information
17 outside this circle of trust until you made
18 your decision on the rules and regulations?
19           MR. ANDERSON:  What
20 information?
21           MR. HENINGER:  All
22 discussions, drafts, work on the rules and
23 regulations.

1    A.    Sir, I have tried to
2  articulate to you what my relationship with
3  Mr. Gray was, and what I said to him and
4  what I meant to him.  I've tried to say that
5  as best I could.
6          Now, you know, I know that may
7  not suffice, but that's what I've tried to
8  do.
9    Q.    I appreciate your trying.  But
10 I want you to know that all these lawyers
11 are going to be in front of Judge Watkins
12 talking about attorney-client privilege.
13 And you know who is the tipping point for
14 the whole issue?  You.  That's why I need to
15 know.  You're the only one in this room who
16 can speak to your intent.
17         You understand that, don't
18 you, David?  You're the only one in this
19 room who can speak to your intent.  Does
20 that make sense to you?  Sir?
21   A.    It makes perfect sense.
22   Q.    So my question to you is
23 because the judge is going to have to decide

1  when this issue comes up, did David Warren
2  intend, while these drafts of the rules and
3  regulations and then amendments to the rules
4  and regulations were being done inside this
5  circle of trust, did you intend that none of
6  that be discussed outside by Fred Gray, Jr.,
7  or you, until you adopted the rules?
8       A.     Whenever this judge hears what
9  he's going to hear, Mr. Heninger, I want it
10 to be an accurate account of what I said and
11 what I meant.  And I have articulated that
12 in this proceedings as best I know how.
13      Q.     Just for the benefit of those
14 of us who are stupid which must only be me,
15 can you answer that question?  Did you
16 intend that whatever was discussed, made
17 part of a draft, a work product for the
18 rules and regulations and amendments to the
19 rules and regulations between you and Fred
20 Gray, Jr., did you intend that it stay
21 within your confidential attorney-client
22 relationship and he not share it with anyone
23 until you had acted to approve it?

1    A.    Mr. Heninger, I intended to
2    communicate with Mr. Gray just what I have
3    communicated here today.  I have put my
4    trust in Mr. Gray many times before.  I take
5    it -- I took it at face value that he was a
6    competent attorney.  And when I gave him my
7    trust, he knows that I expected him to act
8    in the best interest of me as a client in
9    carrying out what I asked him to do.
10   Q.    Sheriff Warren, was it your
11   intent while working with Fred Gray, Jr., in
12   drafting the rules and regulations for bingo
13   gaming in Macon County that the discussions,
14   work, drafts of the proposed regulations,
15   rules, and amendments later on be kept
16   between the two of you in an attorney-client
17   privilege or not?
18         MR. BOLTON:  Object to the
19   form of the question.
20         MR. ANDERSON:  Same objection.
21   You can answer.
22   A.    As I understood it,
23   Mr. Heninger, in the traditional

FREEDOM COURT REPORTING

Page 214

1   relationship between clients and attorneys,
2   I asked Mr. Gray to simply do, accomplish
3   what I instructed him to accomplish.  And I
4   had no objections to him using or speaking
5   to whomever he needed to speak to to
6   accomplish those ends.
7          Q.     So it was not your intent to
8   block that?
9          A.     I'm going to say this, and I'm
10  going to say it again:  I instructed
11  Mr. Gray on what I wanted him to do, and in
12  the traditional sense of an attorney-client
13  relationship, I expected him to get that
14  done, and I've already said I did not object
15  to who he spoke to accomplish those aims.
16         Q.     Sheriff Warren, I'm not a good
17  teacher, and your lawyer's probably twice
18  the teacher I am.  And you can look to him
19  for advice, and he'll tell you if I'm wrong.
20  I do not believe you can have it both ways.
21  You can't have the attorney-client privilege
22  and then divorce yourself from it.  I'm
23  trying to find out which pail your foot's