IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HOPE for FAMILIES & | ) | |
| COMMUNITY SERVICE, INC. *et al.*, | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  3:06cv1113-WKW |
| | ) | (WO) |
| DAVID WARREN, *et al*, | ) | |
| | ) | |
|      Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. Introduction

**A. Claims and Defenses.**  The purpose of this memorandum opinion and order is to address and resolve the outstanding discovery disputes in this case.  The court heard oral argument on these motions on March 28, 2008.  Before delving into the numerous disputes, however, the court must first look to the claims and defenses presently raised by the parties. The reason for this inquiry is found in FED.R.CIV.P. 26(b)(1) which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense  . . . "  The Committee Comments to FED.R.CIV.P. 26 confirm that requiring relevance to a claim or defense  "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."  GAP Report of Advisory Committee to 2000 amendments to Rule 26.  In determining what discovery to allow, the court is likewise guided by some other

fundamental principles.  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1).

> [D]istrict courts have broad discretion in fashioning discovery rulings, they are bound to adhere "to the liberal spirit of the [Federal] Rules." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 305 (5th Cir. 1973). The Federal Rules do not give district courts "blanket authorization ... to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." *Williams v. City of Dothan, Ala.,* 745 F.2d 1406, 1416 (11th Cir. 1984) (quoting *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2nd Cir. 1983)).

*Adkins v. Christie,* 488 F.3d 1324, 1331 (11th Cir. 2007).

"Rule 26 . . . [(b)(1)] is highly flexible, having been designed to accommodate all relevant interests as they arise  . . . "  *U. S. v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999).  In particular, considerations of the public interest, the need for confidentiality, and privacy interests are relevant factors to be balanced. *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n. 21 (1984) ("Although ... Rule [26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule.").

**B. The Plaintiffs' Complaint.**  The plaintiffs are non-profit organizations and Lucky Palace LLC, which desire to conduct electronic bingo gaming in Macon County, Alabama. Bingo gaming is an activity which under the provisions of an amendment to the Alabama

Constitution is subject to regulation by the Sheriff of Macon County[1]. The defendants are David Warren, Sheriff of Macon County; Macon County Greyhound Park, Inc., d/b/a VictoryLand ("VictoryLand"); and Milton McGregor, President and majority shareholder in Macon County Greyhound Park, Inc.  The plaintiffs' claims are set forth in their fourth amended complaint (doc. # 148)[2] filed on March 12, 2008.  In general, the plaintiffs complain that because of the gaming regulations promulgated by the Sheriff, VictoryLand has a monopoly on the conduct of bingo gaming in Macon County.

  **1.  Count I - Civil RICO, 18 U.S.C. § 1962(c).**  Count I of the complaint alleges that the defendants in violation of 18 U.S.C. § 1962(c) have directly or indirectly conducted and participated in the conduct of an enterprise's affairs through a pattern of racketeering activity which is the direct and proximate cause of injury to the plaintiffs' business and/or property through lost profits and licensing fees.  The complaint identifies the 18 U.S.C. § 1961(4) RICO "enterprise" as the defendants and Fred Gray, Fred Gray, Jr. and Gray, Langford, Sapp, McGowan, Gray, Gray & Nathanson, P.C. ("the Gray Law Firm").  Notably, none of the lawyers or the law firm are named defendants.  The complaint alleges in ¶ 100 that the "enterprise" was formed for the common purpose of "enriching certain of its members

---

[1] ALA. CONST. Amend. 744 provides that "[t]he operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes shall be legal in Macon County. The sheriff shall promulgate rules and regulations for the licensing and operation of bingo games within the county."  The amendment further allows "[a] nonprofit organization . . . [to] enter into a contract with any individual, firm, association, or corporation to have the individual or entity operate bingo games or concessions on behalf of the nonprofit organization."

[2] The plaintiffs filed a fifth amended complaint on May 13, 2008.  (doc. # 185) The motion for leave to file indicates that the purpose of the fifth amended complaint is to add Greater White Church and RG Apartments, Inc., as plaintiffs in this matter and dismiss NCO Nile Club, Notasulga High School PTSA, and Tuskegee National Alumni Association.  Since the substance of the complaint has not changed, unless otherwise noted all references in this opinion and order are to the plaintiffs' fourth amended complaint.

through a pattern of bribery that allowed VictoryLand to operate as the sole Class B bingo parlor in Macon County." The RICO injury is described in ¶ 108 of the complaint:

> Because of the racketeering activity, which has resulted in the creation and maintenance of VictoryLand's monopoly, Lucky Palace is unable to obtain the necessary license and conduct its business for profit. Accordingly, the racketeering activity has been and continues to be the direct and proximate cause of an injury to Lucky Palace's business. As a result of that injury, Lucky Palace has suffered damages in the form of lost profits and the diminished value of their investments.

The plaintiffs further allege direct and proximate harm: "In this case, the cause of the Plaintiffs' asserted harm is a set of actions (Defendant Warren's promulgation of one-sided rules) that is directly related to the alleged RICO violation (the bribery of Fred Gray Jr.)." (Compl., ¶ 111).

**2. Count II - RICO Conspiracy - 18 U.S.C. § 1962(d).** The plaintiffs allege that the defendants, described here as "persons employed by or associated with the Enterprise . . . unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity." (Compl., ¶ 120). The injury alleged is the same as in Count I.

**3. Count III - Violation of the Equal Protection Clause.** This claim is brought against only defendant Warren who it is alleged "under the color of state law and his authority as Sheriff of Macon County, has intentionally treated the Plaintiffs differently from other similarly-situated organizations, and there is no rational basis for the difference in treatment." (Compl., ¶ 125). These claims refer to the regulations which the Sheriff has

issued concerning bingo operations in Macon County.  The complaint further alleges:

> There is no rational basis for the Fifteen License Minimum. There is no
> rational basis for the Sixty License Maximum. There is no rational basis for
> issuing fifty-nine of the sixty Class B Bingo Licenses available under the
> Second Amended Rules to nonprofit organizations who desired to operate
> bingo games at VictoryLand. There is no rational basis for requiring interested
> organizations to construct or lease a multi-million dollar facility prior to
> obtaining a Class B Bingo License.

(Compl., ¶ 129).

The finishing touches on this claim assert that in "addition to lacking a rational basis,

the requirements . . . [of the regulation] are arbitrary, capricious, and intended to discriminate

against all nonprofit organizations, including the Charities, that desire to operate bingo at

locations other than VictoryLand."  (Compl., ¶ 130).

### 4. Count IV - Conspiracy to Deprive the Plaintiffs of the Equal Protection of the

**Laws.**[3]  The complaint alleges that defendants Warren and McGregor

> agreed or had an understanding – reached by, through, and with the assistance
> and influence of Fred Gray, Fred Gray Jr., and the Gray Law Firm – that
> Defendant Warren would issue rules and regulations for the licensing and
> operation of bingo in Macon County that would (1) deprive any nonprofit
> organization, other than a nonprofit organization associated with VictoryLand,
> of the ability to obtain a license for the conduct of electronic bingo in Macon
> County and (2) deprive any organization, other than VictoryLand, of the ability
> to obtain an operator's license for the conduct of bingo in Macon County.
> Accordingly, Defendants McGregor and VictoryLand were jointly engaged
> with Defendant Warren, a state official, in the deprivation of the Plaintiffs'

---

[3]The statutory basis for this claim is 42 U.S.C. § 1983.  "[T]o sustain a conspiracy action under §
1983 . . . a plaintiff must show an underlying actual denial of constitutional rights." *GJR Invs., Inc. v. County
of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998).  To succeed under this first requirement, the plaintiff
must identify and explain what constitutional right was infringed.  *See Hadley v. Gutierrez,* ___ F.3d ___,
2008 WL 1947008 (11th Cir.  May 6, 2008).  In addition, the plaintiff must prove that the defendants reached
an understanding to deny the plaintiff's rights. *See Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir. 1990).

equal protection rights.

(Compl., ¶ 132).

**5. Counts V and VI - Tortious Interference Claims.**[4]  Count V alleges that defendants VictoryLand and McGregor with knowledge of the contractual relationship between Lucky Palace and the various charities, "intentionally interfered with those contractual and business relationships by influencing, aiding and/or directing Defendant Warren to promulgate, amend, and maintain unreasonable rules and regulations for the operation of bingo in Macon County." (Compl., ¶ 142).  Count IV alleges that the defendants VictoryLand and McGregor with knowledge of the plaintiffs' expected contractual and business relationships, "intentionally interfered with the Plaintiffs' ability to consummate their expected contractual and business relationships by influencing, aiding and/or directing Defendant Warren to promulgate, amend, and maintain unreasonable rules and regulations for the operation of bingo in Macon County." (Compl., ¶ 148).

## II.  The Discovery Motions

**A.  Introduction.**  Presently pending are the following non-dispositive motions: the plaintiffs' motion to compel production of documents and things (doc. # 42); Fred Gray Jr., Fred Gray, and the Gray Law Firm's motions to partially quash FED. R. CIV. P. 45 subpoenas (docs. ## 85, 86 & 87); the plaintiff charities' motions to compel production of documents and things (docs. ## 106 & 107); the plaintiffs' motions to compel the production of subpoenaed documents and opposition in response to Fred Gray and Fred Gray Jr.'s motions

---

[4]These are state law claims in which no claim is made against defendant Warren.

to partially quash FED.R.CIV.P. 45 subpoena (docs. ## 134 & 135); the plaintiffs' motion to compel the production of subpoenaed documents and opposition in response to the Gray Law Firm's motion to partially quash rule 45 subpoena (doc. # 136); plaintiff Lucky Palace's motion to compel answers to interrogatories by defendant Milton Mcgregor (doc. # 141); plaintiff Lucky Palace's  motion to compel answers to interrogatories by defendant Victoryland (doc. # 142); plaintiff Lucky Palace's motion to compel production of documents from defendant Victoryland (doc. # 143); and the motion to quash plaintiff Lucky Palace, LLC's deposition notice or alternatively, for a protective order filed Fred Gray, Fred Gray, Jr. and the Gray Law Firm (doc. # 150).  The court will address these motions[5] seriatim, although not in the order filed.

**B.  The Motions to Compel McGregor and VictoryLand (docs. ## 141, 142 & 143).**  Lucky Palace, LLC, has filed a motion to compel Milton McGregor to answer interrogatories (doc. # 141) and Victoryland to answer interrogatories (doc. # 142) and produce documents (doc. # 143).  The plaintiff charities have filed a motion to compel McGregor to produce documents (doc. # 107).  In some instances, the interrogatories and the requests for production address discrete areas of inquiry which the court will deal with individually.  In other instances, the interrogatories and requests for production address a

---

[5]More often than not, the objections of the defendants are based on a boilerplate claim that the interrogatory or request seeks personal, private, proprietary and confidential information the disclosure of which would amount to an improper invasion of privacy.  Or the defendants recite that the discovery sought is overly broad, unduly burdensome and oppressive, and not reasonably limited in scope or time.  The defendants also predictably recite that the discovery is not relevant to a claim or defense.  In some instances the defendants flesh out these contentions; in other instances, the court is left to guess why.  The court will attempt to do the best it can with what it has to work with.

broad category of information and the court will address the category generally.

    **1.  Opposition Interrogatories.**  In interrogatories 4-6 in the McGregor and VictoryLand interrogatories, the plaintiffs want to know if McGregor and VictoryLand oppose licensing other facilities, why, and whether the licensing of other facilities will harm the citizens of Macon County.  In interrogatories 15, 16, 17 and 18, the same questions are posed except that they ask about opposition to Lucky Palace.  The defendants oppose these interrogatories on the basis that their motives are irrelevant to a determination about whether there is a rational basis for the regulations.  They argue the interrogatories are irrelevant because any non-competitive intent on the part of the defendants is not actionable because of *Noerr-Pennington* immunity,[6] and does not further the inquiry into the conspiracy or tortious interference claims.  Were the court to focus on each of these interrogatories individually, the court might be inclined to agree with the defendants.  However, collectively, the interrogatories seek information which generally relates to reasons why McGregor and

---

    [6]Because the First Amendment guarantees the right to "petition the Government for a redress of grievances," U.S. CONST. AMEND. I, and this guarantee overrides the effect of a contrary federal statute, *see Marbury v. Madison*, 5 U.S. 137 (1 Cranch 137), 177-78 (1803), and not wanting to "impute to Congress an intent to invade the First Amendment right to petition," *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) (internal quotations omitted), the Supreme Court has held that a defendant is immune from Sherman Act liability for concerted efforts to petition government to pass legislation which has the effect of restraining or monopolizing trade in favor of the defendant.  *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) (granting antitrust immunity for publicity campaign designed to spur the adoption of monopoly-facilitating legislation); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965) (noting that *Noerr* shielded a defendant from antitrust liability for "efforts to influence public officials ... even though intended to eliminate competition").  Other precedent has extended *Noerr-Pennington* immunity to defendants who exercise their right to petition government by resorting to administrative and/or judicial proceedings. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  Whether this immunity extends to the actions of the defendants in this case is not an issue presently before the court.  Here, the opinions about the effect of legislation is not within the ambit of the immunity.

VictoryLand act or have acted as they have with respect to bingo gaming operations in Macon County. As the court will later discuss, there are limits to the discovery process, and the plaintiffs will not be allowed to rummage through the affairs of the defendants based merely on their "information and belief" assertions.[7] Here, however, the interrogatories ask only about opinions and reasons supporting the opinions. The court cannot say that this information, even if inadmissible at trial, will not lead to discoverable information. The motions to compel, with respect to interrogatories 4 - 6 and 15 - 18, will be granted.

   **2. Revenue and Profits.** The charities' motion to compel McGregor (doc. # 107, request 15) asks McGregor for all of VictoryLand's financial information from 2003 to the present. Lucky Palace's motion to compel VictoryLand (doc. # 142) to answer interrogatories 9 and 10 seeks annual gross revenues and profit for electronic bingo gaming for 2003-2006. VictoryLand is a closely-held corporation[8] which often are characterized as "incorporated partnerships,"[9] and it is common practice for them to pay a large percentage of their profits as salary.[10] Lucky Palace argues that the "profitability and volume of income

---

   [7]While there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible," and "permitting allegations on information and belief is a practical necessity." 5 C. Wright & A. Miller § 1224, at 155-56. However, the practical necessity of a pleading practice is not a licence for unrestrained discovery.

   [8]A close corporation is "[a] corporation whose stock is not freely traded and is held by only a few shareholders. BLACK'S LAW DICTIONARY 365 (8th ed. 2004).

   [9]*See* Daniel S. Kleinberger & Imanta Bergmanis, *Direct vs. Derivative, or "What's a Lawsuit Between Friends in an Incorporated Partnership?*," 22 Wm. Mitchell L. Rev. 1203, 1204 (1996).

   [10]Robert C. Illig, *Minority Investor Protections as Default Norms: Using Price to Illuminate the Deal in Close Corporations*, 56 Am. U. L. Rev. 275, 366 n. 48 (2006). The court has no facts before it from which it can conclude how VictoryLand structures its salary payments.

from electronic bingo gaming at VictoryLand goes to the heart of the motive and intent of this Defendant to seek to maintain and assure a monopoly in Macon County." In *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 262 (1994), the Supreme Court held that "RICO contains no economic motive requirement." Thus, motive evidence cannot be relevant to the plaintiffs' RICO claims. However, the plaintiffs do assert the existence of a conspiracy, and a conspiracy certainly may be proved by circumstantial evidence, that is, evidence from which a jury reasonably could infer the existence of an agreement to injure the plaintiffs.

No reasonable person and certainly no reasonable jury drawn from the Eastern Division of this District could fail to know that VictoryLand is highly profitable. The financial information which the plaintiff seeks merely would quantify the magnitude of VictoryLand's profitability. Lucky Palace argues that revenue and profit information will show the "damages suffered by [it from] this cabal's effort to exclude all, but VictoryLand . . . " (Pl's. Mo. Compel, doc. # 142 at 5). Remarkably, however, immediately preceding this statement is Lucky Palace's claim that it "is *not* in competition with VictoryLand." *Id.* If that be so, it is difficult to understand how a non-competitor's revenue and profits can quantify Lucky Palace's damages. On balance, the court concludes that while the revenue and profit information only marginally supports the plaintiff's claims, its slight evidentiary utility is far outweighed by the intrusiveness and potential injury of the release of the information about the operation of a closely-held corporation. The motions to compel will be denied.

**3. Discussions About Regulations.** Lucky Palace's motions to compel (doc. # 141

& 142) answers to interrogatories 11, 12, 13, and 14 generally seek answers to whether McGregor or other representatives of VictoryLand met with Fred Gray, Jr., discussed gaming regulations with him and suggested or proposed any gaming rules or regulations which the Sheriff could issue.[11]  To the extent discussions took place, Lucky Palace wants a description of the discussion.

With respect to the interrogatories asking whether the defendants discussed, suggested or proposed any rules or regulations, VictoryLand answered, "no."  McGregor answered that "in his personal capacity" he has not suggested or proposed any rules or regulations.  The plaintiff correctly points out that McGregor limited his answer to whether he met only with the Sheriff and that the interrogatory asks whether he had discussions with "any employee of Macon County, Alabama."  McGregor will be compelled to fully answer interrogatories 13 and 14.

This initial conclusion does not end the matter, however.  To be blunt, the defendants' responses to the four interrogatories leaves the court with the impression that they have been less than candid.  Interrogatory 11 asks whether the defendants had discussions with Fred Gray, Jr.  Interrogatory 12 asks for a description of the discussion.  VictoryLand's response to 11 is "yes."  VictoryLand's response to 12 is it "does not recall the date of any such discussion, the specifics of it, or who was present."  McGregor's response to 11 and 12 is that

---

[11]Lucky Palace also sought an answer to interrogatory 19.  However, in its supplemental response (doc.# 142, attach. 1 at 3), Victoryland responded that it "has not made any statement to Sheriff Warren or any employee of Macon County that Victoryland should be the only electronic bingo facility in Macon County."  *Id.*  Consequently, the motion to compel, with respect to interrogatory 19,  shall be denied as moot.

in his personal capacity he has not *met* with Fred Gray, Jr. regarding bingo rules and regulations.

The pleadings establish that McGregor is a representative of VictoryLand. His responses to these interrogatories are limited to his actions in his personal capacity at *meetings*. However, the combined responses of the defendants elide the question of whether McGregor in *any* capacity had *discussions* in any manner with Fred Gray, Jr. about gaming regulations and what *he* in any capacity recalls about those discussion. The defendants will be compelled to provide full and complete answers to these interrogatories.

With regard to Lucky Palace's incredulity about VictoryLand's ignorance expressed in its response to interrogatory 12,[12] the court can only say that the defendant cannot be compelled to answer what it cannot remember, and the consequence simply may be that a finder of fact may draw adverse inferences from that inability.

**C. Lucky Palace's Motion to Compel Production of Documents by VictoryLand (doc. # 143)**.

**1. Requests 1 - 4, 9, 16, 19 and 21.** Lucky Palace asks in requests 1 through 4,[13] 9, 16, 19 and 21 that VictoryLand be required to produce documents and electronic information about its interest and involvement in electronic bingo since 1999. The exact nature of these

---

[12]Lucky Palace contends it "entitled to some revelation of 'what was discussed' in general or specific terms as can be recalled." (Pl.s' Mo. Compel, doc. # 142 at 8-9).

[13]The record before the court shows that VictoryLand has produced some documents in response to this request, and to that extent the motion to compel is moot.

12

requests is set forth in the margin.[14]   VictoryLand unsurprisingly challenges the motion to

compel.  First, it argues that the material is subject to the protection of the attorney-client

privilege and/or the work product doctrine.

> Victoryland further objects to this request on the grounds that it seeks
> commercial, proprietary, trade secret and competitive information the
> disclosure of which would be harmful to Victoryland and its business.
> Furthermore, the request is overly broad and unduly burdensome. In addition,
> the request seeks documents that are not relevant to any claim or defense
> asserted in the pending litigation and is not reasonably calculated to lead to the
> discovery of any relevant information.

(Opp'n to Mot. to Compel, doc. # 162 at 5).

   **a.  The Attorney-Client and Work Product Arguments.**  The court earlier ordered

the defendant to produce for *in camera* inspection documents which it contended fall within

---

[14]Req. # 1 - Internal memos, notes, reports, forecasts, correspondence, email, electronically filed information concerning "the consideration of getting involved in electronic bingo and getting it approved by Macon County, Alabama from January 1, 1999 to the present."
   Req. # 2 -  Internal memos, notes, reports, forecasts, correspondence, email, electronically filed information concerning "the prospects of success and profit potential for electronic bingo in Macon County, Alabama from January 1, 1999 to the present."
   Req. # 4 -  Internal memos, notes, reports, forecasts, correspondence, email, electronically filed information concerning "suggested or considered proposals for Macon County Rules and Regulations . . .for licensing, permitting, and/or operating electronic bingo in Macon County, Alabama from January 1, 1999 to the present."
   Req.  # 9 -  Internal memos, notes, reports, forecasts, correspondence, email, electronically filed information concerning "any desire by this Defendant to have input or suggestion by any type with the Rules and Regs for electronic bingo in Macon County, Alabama *through any means whatsoever* from January 1, 1999 up until the present"
   Req. # 16 - "All documents, drawings, photos, brochures concerning planned or actual electronic bingo at Victoryland from its inception to the present."
   Req. # 19 -  "All internal memos, notes, calendars, minutes, agendas, or material of any nature whether on paper or electronic . . . regarding any face-to-face meetings or telephone conversations with any person or entity concerning electronic bingo in Macon County, Alabama from January 1, 1999 until the present."
   Req. # 21 - "All presentations, hand-outs, power-point presentations, or materials of any description presented by this Defendant to any group of shareholders or outside persons regarding electronic bingo in Macon County, Alabama in any way from January 1, 1999 until the present.

the ambit of the protection of these doctrines.  The court will at a later date further review these documents and decide whether they are protected.

**b. Other Arguments.**  VictoryLand argues that the information sought is not relevant to a claim or defense or calculated to lead to admissible evidence.  VictoryLand contends that information about its involvement with securing the constitutional amendment permitting bingo in Macon County has nothing to do with the regulatory issue now before the court.  In addition, VictoryLand contends that the information sought contains trade secrets or confidential commercial information.

At this juncture in this case, the court cannot say that the information sought is irrelevant within the meaning of FED.R.CIV.P. 26(b)(1).  While the history behind securing the constitutional amendment may be of little relevance to the issues, it is pure speculation to say that it will not lead to admissible evidence.

For present purposes, the court will accept VictoryLand's contention that the information sought contains trade secrets or confidential information.  But that is not an absolute shield from disclosure.  The court has already entered at VictoryLand's behest a protective order (doc. # 105) which should facilitate the discovery process.  *See United States v. Anderson,* 799 F.2d 1438, 1441 (11th Cir. 1986).  Under the terms of that order,

> Documents and materials designated as "CONFIDENTIAL" shall be used solely for purposes of preparation and trial of this lawsuit, and shall not be disclosed by either party or its counsel or any person acting on behalf of or for either party or its counsel, for any purpose whatsoever other than the preparation and trial of this action and any appeal which may ensue.

(Protective Order, doc. # 105 at ¶ 3).

Nonetheless, VictoryLand argues it will suffer irreparable harm with disclosure of the information.  However, the juxtaposition of this argument with VictoryLand's argument about the lack of relevance regarding its actions in securing the constitutional amendment demonstrates the paucity of the concern.  After careful consideration, the court concludes that to the extent it has not already responded, VictoryLand should be compelled to respond to requests 1 through 4, 9, 16, 19 and 21 except as to any documents subject to a privilege or the work product doctrine, a question which the court will determine at a later time.

**2.  Request # 12.**  In this request, Lucky Palace asks the court to order VictoryLand to produce documents reflecting all financial information about electronic bingo in Macon County from its inception at Victoryland until the present showing gross revenues, payments, profit and payments to charities and others.  For the same reasons previously discussed above, the court will deny the motion to compel this information.

**3.  Request #13 - Shareholders and Shares**.  In this request Lucky Palace asks the court to compel the production of all documents and electronically filed information reflecting shareholders and shares held by any shareholder in VictoryLand since 1999.  The record reflects that VictoryLand has already stipulated that Fred Gray, Sr. is a shareholder in VictoryLand.  VictoryLand has also stipulated that Fred Gray, Jr., the Sheriff and the Sheriff's wife are not shareholders.

Lucky Palace wants more; specifically it wants to know the extent of Fred Gray's holdings as well as the identity of other shareholders.  It argues that Fred Gray, Jr.'s drafting of the rules and regulations governing bingo gaming "must be examined with regard to any

15

attachment to a shareholder/shareholders of stock in VictoryLand." (Mot. to Compel, doc. # 143 at 7). Lucky Palace also argues it needs this information to identify potential witnesses with information about VictoryLand's efforts to secure a monopoly in electronic bingo in Macon County. *Id.* at 8. VictoryLand argues that to the extent not already disclosed, the identity of non-party shareholders and the extent of their holdings is both irrelevant and harmful because it is sensitive, private and trade secret information.

Beyond making these claims, VictoryLand offers little to back up its contention that disclosure of the identity of VictoryLand shareholders is harmful in any manner. On balance and with the protective order in place, the court concludes that VictoryLand will be compelled to disclose the identify of all shareholders since 1999. However, the extent of shareholders' holdings is quite another matter. Lucky Palace has failed to show that this private information about non-party shareholders is relevant in any sense. Further, Lucky Palace's request asks for "the production of all documents and electronically filed information reflecting shareholders." This request is simply too broad; it encompasses all documents on which the name or identity of shareholders is reflected. The identity of the shareholders is enough for the purposes identified by Lucky Palace.

**4. Request # 22 - Documents About Contact With Sheriff Warren.** In this request Lucky Palace asks for documents, internal memos, notes, email, and electronic information reflecting any contact whatsoever between VictoryLand and Sheriff Warren since January 2002. At a January 2, 2008 meeting, Lucky Palace's counsel modified the generality of this request by clarifying that Lucky Palace sought only documents "expressing a desire by

VictoryLand to have any input with the Sheriff regarding the Bingo Rules and Regulation."

(Doc. # 143, Attach. 1 at 2). In response to this more appropriately narrowed request,

VictoryLand responded that there are no such documents. Consequently, the motion to

compel will be denied as moot.

### D. Motion to Compel Production by David Warren (doc. # 42).

**1. Requests # 30 - 36.** In these requests the plaintiff charities ask Sheriff Warren to

produce all documents related to the following:

- Req. 30 - Campaign contributions for Sheriff of Macon County, including the source of the contribution, bank statements for accounts containing campaign contributions, and campaign disclosure statements filed with the State.
- Req. 31 - Any property purchased in his name including the source of any payments for the purchase and the source of any payment for property taxes since January 1, 2003.
- Req. 32 - All income earned by Warren from any source *whatsoever* since January 1, 2003.
- Req. 33 - All federal and state income tax returns since January 1, 2003.
- Req. 34 - All assets and liabilities from January 1, 2003 to present.
- Req. 36 - All statements of all financial accounts in which Warren has an interest or signatory authority, including bank, mortgage, real estate, retirement, brokerage, and trust accounts, including accounts held with his spouse, and the corresponding check registers, returned checks and records of wire transfers from January 1, 2003 until the present date.

During the argument on this motion, counsel for the charities explained the basis for

these requests.

MR. SPOTSWOOD:    My claim is that he (Warren) was part of the enterprise, and that he was part of the conspiracy. And that one of the reasons that he went along with the conspiracy was that he had hope and expectation of future financial benefit or gains.

| THE COURT: | So if he had hope and expectation of future financial gains, how does his existing and prior financial situation go to support any of your claims? |
|---|---|
| MR. SPOTSWOOD: | It bears on his susceptibility of his motive, susceptibility to being pulled into this conspiracy, to allowing this to happen when he is (sic) now already admitted that a monopoly for Macon County Greyhound Park was not in the best interests - - |
| THE COURT: | You would agree with me that the essence of any conspiracy, be it civil or criminal, is that there is an agreement, would you not? |
| MR. SPOTSWOOD: | Yes. |
| THE COURT: | What does susceptibility to enter into an agreement have to do with that? |
| MR. SPOTSWOOD: | We, the agreements, Your Honor, can be inferred from circumstantial evidence. One, circumstantial evidence of a willingness to agree is financial vulnerability in this context. And that's the foundation for each and all of these requests. |

(Tr. Oral Argument at 18).

In their motion to compel, the charities extend this argument.

The requested information may reveal (1) that Defendant Warren has received financial benefit from his co-conspirators or (2) that Defendant Warren is financially vulnerable and (a) easily enticed by promises of future benefits or (b) willing to ingratiate himself with individuals, like his co-conspirators, who can bestow future benefits upon him.

(Mot. to Compel, doc. # 42 at 7).

At oral argument, counsel for the charities stated that these justifications were the only

18

justification for these requests.  Given that, it is unnecessary for the court to review each request individually.  In sum, the various requests seek detailed information about Warren's existing financial condition as well as information about financial support of him in his election campaigns.  The documents filed in response to the motion to compel show that Warren has produced some of the information sought and that some -- election campaign information prior to 2006 -- is not available.

The presumption underlying the charities' requests -- that public officials who take action which favors some and disfavors others are corrupt -- is pernicious.  The court is not naive; some officials are corrupt.  But the operative presumption should never favor the existence of corruption.   That presumption undermines democratic government and substitutes cynicism for the trust upon which democratic government must be founded.  In the same vein, the financial susceptibility argument is too tenuous to support these intrusive requests about Warren's personal financial condition.  If it were, most every public official whose decisions displease a constituent would be subject to similar claims because most public officials are in a real sense "financially vulnerable" due to their relatively low incomes which seldom match the importance of their responsibilities.

The charities claim that this information "may reveal" something relevant about Warren.  The phrase "may reveal" underscores how speculative these requests are.  On balance, the speculative nature and the tenuousness of the foundation for the requests compared with the intrusiveness of the requests compels the court to deny them except in one obviously relevant way.  The court will compel Warren to disclose whether since January 1,

2003, he has received and, if so, describe any money, property or thing of value either directly or indirectly from McGregor or VictoryLand, including any campaign contributions.[15]

2. **Requests # 40 and 42.**  At oral argument, counsel agreed to produce exhibits to Warren's deposition in another case.  (Tr. Oral Argument at 26).  The court agrees with counsel for the charities that if Warren has given no other depositions, the charities are entitled to a written response confirming that fact.  The court, therefore, will grant these requests to the extent indicated in this order.o

### E.  The Charities Motion to Compel VictoryLand (doc. # 106).

1. **Requests 1 - 5.**  Except for documents about which a privilege is claimed and which have been provided to the court for *in camera* review, VictoryLand has produced the documents requested and the motion with respect to these requests is moot.

2. **Requests 11 and 12.**  The charities ask VictoryLand to produce all communications with Fred Gray or Fred Gray, Jr. related to bingo licensing in Macon County and all communications with Fred Gray, Fred Gray, Jr. or any partners or associates relating to bingo licensing in Macon County from January 1, 2003 to January 6, 2005.  In response to these requests, VictoryLand asserts that the documents sought are protected from disclosure by the attorney-client privilege and Rule 1.6, Alabama Rules of Professional Conduct.  This rule generally prohibits a lawyer from revealing "information relating to

---

[15]The court recognizes that Warren has produced information about campaign contributions which he has.  Some of the campaign contribution information sought may be publically available and to the extent that it is, Warren may simply refer the charities to the location where he understands it may be found.

representation of a client  . . . " The comments to the rule explain that it

> applies not merely to matters communicated in confidence by the client but
> also to all information relating to the representation, whatever its source.  A
> lawyer may not disclose such information except as authorized or required by
> the Rules of Professional Conduct or other law.

The court will defer decision on these requests pending its review of the documents

produced *in camera* and further briefing on  The parties should understand that it is likely

that the court will require further briefing on the Rule 1.6 confidentiality issue.  That will be

done in a separate order.

**3.  Requests 13 -15.**  These requests in their narrowed form[16] seek documents which

show the magnitude and extent of Fred Gray's ownership or investment in VictoryLand as

well as the amount of investment income he has received.  VictoryLand has confirmed that

Fred Gray has an interest in VictoryLand.  The charities want to know the magnitude of that

interest

> Because I think it shows the motivation.  If our theory of bribery is a good one,
> it shows that Fred Gray, Junior had very much an incentive to increase the
> amount or to grant this monopoly so that his father's interest would multiply.

(Tr. Oral Argument at 43).

The court will not reiterate what it has earlier said about the speculative nature of the

plaintiffs' claims.  The quote from oral argument shows that the plaintiffs recognize the

tenuousness of their bribery theory.  These requests will be denied.

**4.  Requests 16 and 17.**  Generally, the charities want (1) documents relating to

---

[16]The charities limited these requests to Fred Gray.

payments between VictoryLand and the charities which have contracts with VictoryLand; (2) the contracts between VictoryLand and VictoryLand's charities and (3) communications between VictoryLand and VictoryLand's charities from January 1, 2003 to the present.

The defendants' response is that the documents are irrelevant to any claims and seek disclosure of confidential and proprietary information of non-parties. Furthermore, the defendants argue that the plaintiffs have no standing to claim that the regulations at issue do not benefit the VictoryLand charities or challenge those charities' decision to contract with VictoryLand. *See* Macon County Greyhound Park's Opp'n to Pl.'s Mot. To Compel, doc. # 118 at 20-21.

Much of what the defendants argue is correct; however, the second amended bingo regulations provide that class B licensees are required to maintain certain records for inspection by the Sheriff. These requirements undercut the notion that the information is wholly private and confidential. With the protective order entered in this case, the court has no concerns that any confidential or proprietary information which must be maintained for inspection by the Sheriff will be disclosed improperly. Thus, to the extent that VictoryLand has the information in its possession and control, VictoryLand will be required to produce the information and records which the bingo regulation require licensees to maintain.

That conclusion does not address the request that VictoryLand produce communications with the charities with which it has contracted. The court agrees with the defendant that the request is overly broad because it encompasses all types of communications. However, after careful review, the court concludes that VictoryLand should

22

be required to produce documents which concern communications between VictoryLand and its charities about attempts by Lucky Palace or other charities to secure licences for bingo gaming in Macon County.

   5. **Requests 19, 20 and 23.**  The briefs indicate that these requests are moot.

   6. **Request 25.**  The charities want VictoryLand to produce documents showing benefit given by Victoryland to Sheriff Warren, Pebblin Warren, or J.B. Walker including gifts, gratuities, political contribution and the like.  The court has already ordered that Sheriff Warren disclose the same information with respect to him. The motion as to Sheriff Warren will be denied as moot.  The motion asks for the same information from Warren's wife and J. B. Walker.  Neither of these persons are parties, and, notwithstanding the relationship between Warren and his wife, the court will not order these non-parties to disclose their financial information merely on the basis that it "may reveal" something.[17]  As to them, the motion will be denied.

   7. **Request 26.**  The original request asked VictoryLand to

> Please produce any and all documents in your possession or control that refer or relate in any way to any benefit given by you, any officer, director, shareholder, employee or any other person or entity associated with VictoryLand, either directly or indirectly, to Fred D. Gray, or any of his relatives, partners or associates, including but not limited to gifts, gratuities, political campaign contributions, including payments made to a Political Action Committee, business transactions, transportation services, vacations, privileges at VictoryLand or any other form of tangible or intangible property or service.

---

[17]Other documents filed in this case show that Warren's wife has revealed much of her financial information already.

Later, the plaintiffs "limited" this request to benefits bestowed with VictoryLand's knowledge since January 1, 2003.  The broadness of this request is its undoing.  For example, under the terms of the request if a shareholder in VictoryLand was represented in an entirely civil matter by a lawyer in Gray's firm, VictoryLand would be required to disclose the amount of fees paid to the lawyer.  By no stretch of any reasonable person's imagination is this information relevant to a claim or defense in this case.  Beyond that, the limitation on the request is so fraught with ambiguity as to make it even more unworkable, because it poses the question of when does an entity "know" something, a question here which cannot be answered without knowing the minds of persons not parties to this suit.  It is not the function of the court to recast discovery requests into some manageable form even if the court could speculate about what information is sought.  The request will be denied.

8.  **Request 27.**  This is the identical request made in Request 26, except that it is posed with respect to benefits bestowed on charities in Macon County, Alabama.  For the same reasons, the request will be denied.

9.  **Requests 28 and 40.**  Originally, in request 28 the charities wanted any document evincing any complaint, formal, informal or legal ever lodged against Victoryland, and/or any proceeding of any nature to which it was a party including any complaint brought in any manner before any governmental regulatory body or court of law or equity.  At oral argument and in other documents filed with the court,[18] the charities indicated that this request was narrowed to any non-privileged formal complaints involving a court or government entity

---

[18]*See* Doc. # 118 at 31.

related to electronic bingo.  At argument the charities' counsel explained the purported relevance of this request.

> Okay. The relevance of that is to – part of the allegations of our complaint is Victoryland's monopoly allowed it to get away with very sharp business practices. So that would be relevant information to proving that Victoryland engaged in sharp business practices, or at least likely to lead to information that would demonstrate that.

(Tr. Oral Argument at 45).

Whether "sharp business practices" are unlawful in any context or merely colorful hyperbole is a question not presently before the court.  But if this were the only apparent justification for the request, the court would have no hesitancy in denying it.  However, with the narrowing of the request, the court cannot say that the documents sought will not lead to admissible information.  Accordingly, as narrowed, the motion to compel request 28 shall be granted.

In somewhat of the same vein, request 40 wants "any and all documents constituting, evidencing, or reflecting testimony that you have given under oath in any proceeding and any exhibits thereto."  Later the charities agreed to limit this request to testimony about electronic bingo.  This request will be granted.[19]

10.  **Request 29.**  The charities want "any and all documents" showing campaign contributions made to any of Sheriff Warren's campaigns for Sheriff and campaign contributions to the campaign of Pebblin W. Warren.  The information sought is publicly

---

[19]How VictoryLand to which the request is made can testify is a matter for the parties to work out, and they should do that before returning to the court.

available through the Office of the Alabama Secretary of State.  The request will be denied

except to the extent as already provided.[20]

11.  **Requests 30 - 33.**  The plaintiff charities indicate that these requests are moot.

(Doc. # 121 at 12).

**G.  The Plaintiffs' Motions to Compel Fred Gray, Fred Gray, Jr. and the Gray Firm to Produce Documents Pursuant to FED.R.CIV.P. 45 Subpoenas (docs. ## 134, 135 & 136), and Fred Gray, Fred Gray, Jr. and the Gray Firm's Motions to Quash (docs. ## 85, 86 & 87).**

All but two[21] of the requests at issue[22] seek documents which, in the words of the

plaintiffs, "relate to money and other benefits flowing between McGregor, VictoryLand, the

Gray Law Firm, Fred Gray and Fred Gray, Jr.  . . . " (doc. # 135 at 3); "demonstrate the

transfer of money and other benefits to Fred Gray  . . . " (doc. # 135 at 4). In addition, the

plaintiffs argue that this information is relevant because the benefits constitute "things of

---

[20]With respect to the motion to compel Warren (doc. # 42, requests 30-36) the court has ordered Warren to produce some information.  Here the denial of the request is intended to indicate that beyond that disclosure Warren is not required to produce other information.

[21]In their motion to compel Fred Gray, Jr. request 4 seeks to require Fred Gray, Jr. to reveal all communications between Fred Gray, Jr. and Victoryland regarding electronic bingo gaming in Macon County, Alabama.  (Doc. # 134).  The court will defer decision on this request pending further briefing on the Rule 1.6 confidentiality issue.
    In request 7, the plaintiffs seek to compel Fred Gray, Jr. to reveal all communications between himself and Fred Gray about electronic gaming in Macon County, Alabama.  (*Id.*)  The motion to compel a response to request 7 will be denied.  Fred Gray, Jr. and Fred Gray are lawyers and members of the same firm, notwithstanding their familial ties.  Communications between lawyers in the same firm regarding their clients are clearly protected by the attorney-client privilege.

[22]The requests at issue are plaintiffs' motion to compel, doc. # 134, requests 13 and 14, plaintiffs' motion to compel, doc. # 135, requests 19-22, 24, 26-29; plaintiffs' motion to compel, doc. # 136, requests 2-5.

value" for the purpose of the Alabama bribery statute.  *Id.*

> Under ALA. CODE § 13A-10-61, A person commits the crime of bribery if:
>
> (1) He offers, confers or agrees to confer any thing of value upon a public servant with the intent that the public servant's vote, opinion, judgment, exercise of discretion or other action in his official capacity will thereby be corruptly influenced; or (2) While a public servant, he solicits, accepts or agrees to accept any pecuniary benefit upon an agreement or understanding that his vote, opinion, judgment, exercise of discretion or other action as a public servant will thereby be corruptly influenced.

In a nutshell, the plaintiffs' theory that Fred Gray, Jr. was bribed boils down to this convolution of tortured reasoning: McGregor and VictoryLand paid to Fred Gray and the Gray law firm money or provided other benefits.  Fred Gray Jr., as a shareholder and Fred Gray's son, knew that McGregor and VictoryLand paid his father and the firm money or conferred benefits.  The money paid by McGregor and VictoryLand to Fred Gray and the firm or the benefits constituted "a thing of value in the mind of Fred Gray, Jr." in accordance with the Alabama bribery statute.  Consequently, because Fred Gray, Jr. knew he would get more money or benefits through his father from McGregor and VictoryLand if he drafted the rules and regulations in a way to favor McGregor and Victoryland, he was "bribed" to draft the rules in a manner giving VictoryLand a monopoly on electronic bingo in Macon County.[23]

---

[23]Stated another way, the argument goes like this:

(1)    Fred Gray is an investor in VictoryLand and has represented McGregor and Victoryland since 1983.
(2)    Fred Gray, Jr. is Fred Gray's son.
(3)    Junior knows how much Father has benefitted financially from his relationship with McGregor and VictoryLand.
(4)    Father's financial benefits constitute "things of value" in Junior's mind.
(5)    These financial benefits are Junior's "motive" to draft the regulations in a manner to benefit

Throughout their motions and briefs on this issue, the plaintiffs remark upon their entitlement to the information sought with the caveat "if their theory is correct." The theory is not correct. It boils down to an assertion that Fred Gray, Jr. is bribed because he thinks his present actions may result in increased benefit to him; he is a bribee in his own mind. The sophistry of this contingent interest argument astounds, but it does not persuade. The argument is simply too attenuated to support the intrusive requests which with two exceptions will be denied.

The exceptions are Doc. # 135, requests 3 and 4 which ask for documents about receipt of legal fees by the Gray Firm from McGregor or VictoryLand since 2003. The plaintiffs are correct that in this circuit information involving receipt of attorneys' fees from a client is not generally privileged. *O'Neal v. United States,* 258 F.3d 1265, 1276 (11th Cir. 2001). As with most rules, this one has exceptions. Previously, the court has required the firm to produce the documents which it claims are privileged. The firm did produce some records which are characterized as "partially responsive" to request 3. By separate order, the court will require the firm to produce for *in camera* inspection its billing and receipt records showing fees paid by VictoryLand or McGregor. The court will also require the firm to provide to it an explanation about why any of these records should be not disclosed. In issuing this order, the court is fully aware that the Gray Firm is not a party to this suit;

---

only McGregor and VictoryLand.

(6)    Because Junior has "benefited" from Father's financial acumen in terms of the shareholder profits he has received, or he will benefit by means of an inheritance or loans, he has in essence been bribed to draft the rules and regulations in a manner to favor McGregor and VictoryLand.

however, Fred Gray, the firm's senior partner, is a member of this court's bar, and he is counsel of record in this case for Sheriff David Warren.  Many of the members of the firm regularly appear in this court.  Under these circumstances, the court is confident the Gray Firm will abide by the court's order.

**H.  The Motion to Quash Lucky Palace's Deposition Notice to Fred Gray, Jr., or Alternative Motion for Protective Order (doc. # 150).**

Lucky Palace wants to depose Fred Gray, Jr.; he objects and asks the court to quash the deposition notice or enter a protective order.  Gray claims that what he may have to say is protected by the attorney-client privilege, the work-product doctrine as well as the strictures of Rule 1.6, Alabama Rules of Professional Conduct. Lucky Palace responds with a variety of arguments about why it needs the information all of which ought to be pretty obvious by now.  Most of those arguments focus on money and benefits obtained from McGregor or VictoryLand as well as the nature of his interest in his law firm.  Aside from that, Lucky Palace wants to know about communications between him and his father[24] and with anyone else (except David Warren) about electronic bingo.  More specifically, Lucky Palace asserts that the information about all the benefits and money he and his firm have received as well as his contacts with representatives and agents of VictoryLand and McGregor

> will evidence Fred Gray, Jr.'s collaboration with attorneys and agents of VictoryLand and Milton McGregor and their efforts to influence Fred Gray Jr. to draft and amend the rules and regulations to grant VictoryLand a monopoly

---

[24]*See* fn. 19, *supra.*

on gaming in Macon County.

(Doc. # 166 at 4).

Lucky Palace further argues that it doesn't know who Gray talked to in his quest to devise the regulations so he "is the only person who can testify about who he received information from and shared information with" about electronic bingo. (*Id.* at 5). While that may be, that alone does not provide a complete rationale for deposing Gray on any matter.

The court has already determined that, except to the extent set forth in this order, the plaintiffs can't have information or documents about financial matters so that is not a reason to allow the deposition of Gray. Moreover, other than not knowing to whom Gray spoke about rules and regulation for bingo, Lucky Palace has not met its burden showing the deposition should be allowed. First, Lucky Palace's counsel can't fulfill their professional responsibilities "on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947). Second, while

> opposing trial counsel is [not] absolutely immune from being deposed . . . [w]e recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel . . . (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

Lucky Palace hasn't shown that it cannot obtain the identity of the persons with whom Gray communicated about bingo by some other means. The court could simply leave it at that and rely on Lucky Palace's counsel's skill to figure out how to do that, but it won't. The

court has made clear that allowable discovery ought to go forward and there is no need to extend the process further. Lucky Palace could utilize the provisions of FED.R.CIV.P. 31 to secure from Gray the identity of the persons to whom he spoke. Plainly that information is not protected. *See Hickman, supra.* But rather than force the parties to go through that formality, the court will insinuate itself into the process to move things along. A separate order will issue to Fred Gray, Jr. requiring him to identify by name, address and phone number the identity of all persons, except Sheriff Warren, to whom he spoke about rules and regulations for bingo gaming in Macon County. In issuing this order, the court is fully aware that Mr. Gray is not a party to this suit; however, he is a member of this court's bar, and he is counsel of record in this case for Sheriff David Warren. Under these circumstances, the court is confident Mr. Gray will abide by the court's order. In all other respects, the motion to quash the deposition subpoena will be granted.

## II. **CONCLUSION**

Accordingly, it is

ORDERED as follows:

1. The motions to compel McGregor and VictoryLand (doc. # # 141 and 142) to answer interrogatories 4, 5, 6, 15, 16, 17 and 18 are GRANTED.

2. The motion to compel VictoryLand (doc. # 142) to answer interrogatories 9 and 10 is DENIED and the motion to compel VictoryLand (doc. # 142) to answer interrogatory 19 is DENIED as moot. The motion to compel McGregor (doc. # 107) is DENIED.

3. The motion to compel McGregor (doc. # 141) to answer fully interrogatories 13

and 14 is GRANTED to the extent set forth in this opinion and order.

4.   The motion to compel McGregor and VictoryLand (doc. # # 141 and 142) to answer fully interrogatories 11 and 12 is GRANTED to the extent set forth in this opinion and order.

5.   The motion to compel VictoryLand (doc. # 143) to respond to requests 1 through 4, 9, 16, 19 and 21 except as to any documents subject to a privilege or the work product doctrine is GRANTED.

6.   The motion to compel VictoryLand (doc. # 143) to respond to request # 12 is DENIED.

7.   The motion to compel VictoryLand (doc. # 143) to respond to request # 13 is GRANTED to the extent that VictoryLand shall identify the names of all shareholders since 1999 and DENIED in all other respects.

8.   The motion to compel VictoryLand (doc. # 143) to respond to request # 22 is DENIED as moot.

9.   The motion to compel David Warren (doc. # 42) to respond to requests # 30 - 36 is DENIED except that Warren to the extent already not produced[25] shall produce documents or otherwise disclose whether since January 1, 2003, he has received any money, property or thing of value either directly or indirectly from McGregor or VictoryLand including any campaign contributions.

---

[25]The record reflects that the charities have or have available to them in public records the campaign contribution information and also have seen property records and tax returns.

10.  The motion to compel David Warren (doc. # 42) to respond to requests ## 40 and 42 is GRANTED to the extent set forth in this order.

11.  The motion to compel VictoryLand (doc. # 106) to respond to requests 1 - 5 is DENIED as moot except as to document to which a privilege is asserted.  The court will review *in camera* these documents at a later date.

12.  The motion to compel VictoryLand (doc. # 106) to respond to requests 11 and 12 is deferred pending the court's *in camera* review of documents.

13.  The motion to compel VictoryLand (doc. # 106) to respond to requests 13 to 15 is DENIED.

14.  The motion to compel VictoryLand (doc. # 106) to respond to requests 16 and 17 is GRANTED as set forth in this memorandum opinion and order.

15.  The motion to compel VictoryLand (doc. # 106) to respond to requests 19, 20 and 23 is DENIED as moot.

16.  The motion to compel VictoryLand (doc. # 106) to respond to request 25 as to Warren is DENIED as moot and as to other persons is DENIED.

17.  The motion to compel VictoryLand (doc. # 106) to respond to requests 26 and 27 is DENIED.

18.  The motion to compel VictoryLand (doc. # 106) to respond to request 28, as narrowed, and request 40 is GRANTED.

19.  The motion to compel VictoryLand (doc. # 106) to respond to request 29 is DENIED.

20.  The motion to compel VictoryLand (doc. # 106) to respond to requests 30-33 is DENIED as moot.

21.  The motions to compel Fred Gray, Fred Gray, Jr., and The Gray Law Firm to produce documents pursuant to FED.R.CIV.P. 45 Subpoenas (doc. ## 134, 135 & 136), are DENIED except as to request 4 in doc. # 134 and requests 3and 4 in doc. # 135 which the court will consider later after reviewing further materials.  Fred Gray, Fred Gray, Jr., and the The Gray Firm's motions to quash (doc. ## 85, 86 &87) are DENIED as moot.

22.  The motion to quash lucky palace's deposition notice to Fred Gray, Jr. is GRANTED.   (doc. # 150).  The alternative motion for protective order (doc. # 150) is DENIED as moot.

Done this 15th day of May, 2008.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

34