IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| Hope for Families & Company Services, Inc. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No: 3:06-cv-01113-WKW-WC |
| | ) | |
| David Warren, et al., | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN REPLY TO
PLAINTIFFS' SUPPLEMENTAL BRIEF
REGARDING PRIVILEGE ISSUES [CT. DOC. 194]**

COME NOW Defendants Macon County Greyhound Park, Inc. ("VictoryLand") and Milton

McGregor ("McGregor") and hereby respond to Plaintiffs' Supplemental Brief Regarding Privilege

Issues (Ct. Doc. 194).

**Introduction**

In its order of May 15, 2008, this Court directed the parties to file:

"briefs addressing the issue about whether communications with Fred Gray or Fed
Gray, Jr. related to bingo licensing in Macon County and communications with Fred
Gray, Fred Gray, Jr. or any partners or associates of The Gray Law Firm relating to
bingo licensing in Macon County from January 1, 2003 to January 6, [2005] are
protected from disclosure by either the attorney-client privilege or Rule 1.6, Alabama
Rules of Professional Conduct."

[Ct. Doc. 188][1].  Defendants VictoryLand and McGregor complied on May 30, 2008.  [Ct. Doc.

---

[1]    Specifically, Plaintiffs claim they are entitled to production of the following:

"PLAINTIFF CHARITIES' REQUEST # 11 [of VictoryLand]: Please produce any
and all documents in your possession or control that contain any communication
between you and Fred D. Gray or Fred D. Gray, Jr., relating to the licensing of bingo
in Macon County, Alabama." [Ct. Doc. 106 at p. 9].

"PLAINTIFF CHARITIES' REQUEST # 12: Please produce any and all documents

193].  Plaintiffs filed their supplemental brief that same date.  [Ct. Doc. 194].  This Reply is made in response to Plaintiffs' supplement brief.

The Plaintiffs' argument is flawed for numerous reasons:

Importantly, Plaintiffs ignore the opinions of the General Counsel for the Alabama State Bar and opinions of federal courts in Alabama that hold that Rule 1.6 is applicable in this case, and that Rule 1.6 prevents VictoryLand from producing the requested information.

Plaintiffs' contention that there was no expectation of confidentiality with respect to the Sheriff's communications with Fred Gray, Jr. so there was no attorney-client privilege or that the privilege was waived is disingenuous and based on a twisted reading of Sheriff Warren's deposition.

Plaintiffs attempt to create a "rabbit" for this Court to chase by arguing issues concerning the adequacy or inadequacy of VictoryLand's privilege log. This argument is inappropriate because it is not the subject of the memorandum directed by this Court's order of May 15, 2008.  It is also a red herring because  On May 30, 2008, this Court was provided with copies of all the documents for which VictoryLand claims a privilege for an *in camera* review.  [Ct. Doc. 192].

Given their bribery allegations in this case, which as the Court has recognized involve a "convolution of tortured reasoning," Plaintiffs have utterly failed to meet their burden of showing

---

in your possession or control that contain any communication between you and Fred D. Gray, Fred D. Gray, Jr., or any of their partners and associates, relating to the licensing of bingo in Macon County, Alabama, from January 1, 2003, until January 6, 2005." [Ct. Doc. 106 at p. 10].

"Request No. 4: Please produce any and all documents in your possession or control that contain any communication between you and any of VictoryLand's agents or attorneys regarding electronic bingo."  [Ct. Doc. 134 at p. 2].

[Ct. Doc. 188 at ¶ 1].

the applicability of any crime-fraud exception to the privileges claimed by VictoryLand.[2]

**Argument**

**A.    Plaintiffs ignore the opinions of the General Counsel for the Alabama State Bar and opinions of federal courts in Alabama that Rule 1.6 is applicable here.**

1.    Defendants have previously responded and adequately demonstrated why the information and documents sought by Plaintiffs is privileged, protected and confidential.  [Ct. Doc. 193].  While that response will not be repeated here, it is undisputed that the Grays and the attorneys for the defendants in this case are acting according to the Alabama Rules of Professional Conduct **as interpreted by** General Counsel for the Alabama State Bar Association which provide that the information sought by Plaintiffs cannot be produced.  *See* Alabama Bar Opinion to George Beck at Doc. #150-4 and Alabama Bar Opinion to John Bolton attached as Exhibit 1 to Ct. Doc. 193. Plaintiffs have overlooked this point which is dispositive here.

2.    The Rules of Professional Conduct have been formulated by the Board of Bar Commissioners and approved by the Alabama Supreme Court.  Ala. Code 1975 § 34-3-43.  The State Bar's interpretation of its own rule is entitled to "substantial deference."  *Fowler v. Johnson*, 961 So.2d 122, 130 (Ala.2006) ("This court and the trial court must give substantial deference to an agency's interpretation of its rules and regulations").  *See also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 2386, 129 L. Ed.2d 405 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations").

3.    Alabama Rule of Professional Conduct 1.6(a) ("Rule 1.6") is mandatory and not elective.  It provides that "[a] lawyer **shall not** reveal information . . . ."  (emphasis added).

---

[2] Moreover, the Plaintiffs never directly raised the crime-fraud exception  earlier and cannot assert it at this late date.

4.      Moreover, for the reasons set forth in Defendants' initial brief on this issue, Rule 1.6 protects from disclosure the communications between Milton McGregor, John Bolton, and/or David Johnson with Fred Gray, Fred Gray, Jr. and/or any partners or associates of the Gray Law Firm related to bingo licensing in Macon County, as well as communications among Fred Gray, Fred Gray, Jr. or any partners or associates of the Gray Law Firm relating to bingo licensing in Macon County from January 1, 2003 to January 6, 2005.  *See* Doc. # 193, ¶¶ 4-13.

5.      The Rules of Professional Responsibility have the force and effect of law.  "[T]he generally accepted theory is that rules, regulations and general orders of administrative authorities pursuant to the powers delegated to them have the force and effect of laws, when they are of state-wide or national application, and so set up as that information of their nature and effect is readily available, or has become a part of common knowledge."  *State v. Friedkin*, 244 Ala. 494, 497, 14 So. 2d 363, 365 (Ala. 1943).  *See also Ex parte Wilbanks Health Care Services, Inc.*, 2007 WL 2966817, 2 (Ala. 2007) (same);  *The Tennessean v. Tennessee Dept. of Personnel,* 2007 WL 1241337, 7 (Tenn. Ct. App. 2007) ("The disciplinary rules formerly found in the Code of Professional Responsibility, as adopted by the Tennessee Supreme Court, have the force and effect of law.");  *Smith v. Patout*, 956 So. 2d 689, 695 (La. App. 3 Cir. 2007) ("The Louisiana Rules of Professional Conduct (formerly the Code of Professional Responsibility) have the force and effect of substantive law.");  *In re Vrdolyak*, 137 Ill. 2d 407, 560 N. E. 2d 840, 845 (1990) (announcing that in Illinois the Code of Professional Responsibility operates with the force of law).

6.      Plaintiffs have provided no Alabama case to support their position that Rule 1.6 is not applicable here. Contrary to Plaintiffs' contentions, both federal Judge U. W. Clemon[3] and Judge

---

[3]      In *D&T Consulting, Inc. v. Guidestar Health System, Inc.*, Northern District of Alabama, 2:06-mc-1120 (5:03-cv-0371 W. D. OK), order of November 11, 2006, Ct. Doc. 7, Judge

William M. Acker, Jr.[4] have recognized the protection afforded by Rule 1.6 of the Alabama Rules of Professional Conduct in civil cases.

7.    Further, this is not a proceeding concerning a lawyer's representation of a client in which a lawyer can ignore his obligations under Rule 1.6.  Rule 1.6(b)(2) makes clear that such a proceeding is one where the  lawyer may reveal information covered by Rule 1.6 to the extent the lawyer reasonably believes necessary when there is "a controversy between the lawyer and the client," a criminal charge or civil claim "against the lawyer," or to "respond to allegations in any proceeding concerning the lawyer's representation of the client."  This case is not a controversy between a lawyer and a client.  Nor does this case involve claims against a lawyer.  No lawyer is a party to this case.  Further the Plaintiffs' spurious allegations in its matter, do not make it reasonably necessary for any lawyer to reveal information covered by Rule 1.6 as the Bar opinions noted above make clear.

**B.    Sheriff Warren's communications with Fred Gary, Jr. and the Gray Law Firm are privileged and the Sheriff did not waive his attorney-client privilege.**

8.    Plaintiffs' argument that Sheriff Warren's communications with Fred Gray, Jr. were never privileged because there was no expectation of confidentiality is utterly without merit. Plaintiffs' claim that Sheriff Warren waived his attorney-client and confidentiality privileges is similarly lacking in factual or legal basis. Any  plain reading of the Sheriff's Deposition [Ct. Doc.

---

Clemon  quashed a subpoena to a law firm "[i]n light of Rule 1.6(a) of the Alabama Rules of Professional Conduct."

[4]    At oral argument on June 4, 2008, in the case of *Renfroe et al. v. Rigsby et al.*, Northern District of Alabama, 2:06-cv-01752, Ct. Doc. 304 (May 22, 2008), Judge Acker acknowledged the applicability of Rule 1.6 in protecting confidential information from disclosure. The Court took the motion filed by the law firm of White Arnold & Dowd PC under advisement, and, as of this time has not issued a ruling.

168] exposes the fallacy of Plaintiffs' claim.  As this Court has recognized:

> THE COURT: Counsel, you will pardon me but a number of your arguments strike me as, at best, odd and logically flawed. This arguments is pure sophistry. So don't belabor the issue. What Sheriff Warren says hardly constitutes a waiver of the privilege.  * * *  For him to say that Mr. Gray can go and consult with whomever he wanted to simply means that he didn't care how Mr. Gray accomplished his responsibilities. But Mr. Gray must accomplish his responsibilities in a manner consistent with the rules of professional responsibilities and the duties to his client. Which means that Mr. Gray is not supposed to waive any privilege that exists. And what Sheriff Warren said about it strikes me as what a lot of non-lawyer typical clients would say.

[Ct. Doc. 174, Transcript of proceedings of oral argument held on March 28, 2008 re: discovery at

p. 62].

        9.      Throughout his deposition, Sheriff Warren repeatedly stated that he had an attorney-

client relationship with Fred Gray, Jr.  For example:

> Mr. Gray, Jr., had been my attorney -- an attorney I'd used for professional matters long prior to 2003, and he was someone that I trusted; that I had had many professional encounters with.  And I just trusted -- he was someone that I trusted and that I knew would do what I wanted.  p. 66

> I considered Mr. Gray as my attorney and who was acting at my direction in promulgating these rules and regulations.  p. 73

> What I would consider our relationship to be in the formulation of these rules and regulations was I was a client and Mr. Gray was my attorney.  * * *  I regarded that client-attorney relationship to be a trust.  p. 73-74

> Fred and I had an attorney-client privilege in its traditional sense, and I have tried to make clear what my intentions were when I instructed my attorney to act.  p. 210

> I have put my trust in Mr. Gray many times before.  I take it -- I took it at face value that he was a competent attorney.  And when I gave him my trust, he knows that I expected him to act in the best interest of me as a client in carrying out what I asked him to do.  p. 213

> As my attorney, I expected Mr. Gray to behave in the traditional attorney-client -- to conduct himself in the traditional way that an attorney would in dealing with his responsibilities to me as a client and in his duties in carrying out my instructions.  p. 282

Ct. Doc. 168.

10.    Plaintiffs want this Court to believe that because Sheriff Warren stated that he did not have any objection to Fred Gray, Jr. talking to people in getting the rule drafting accomplished, the Sheriff waived his attorney client privilege. Plaintiffs' position is untenable as they are confusing apples and oranges. [Doc. 194, pp. 11-12]. This Court has already properly rejected Plaintiffs' specious waiver argument. *See* Doc. 174, Transcript of proceedings of oral argument held on March 28, 2008 re: discovery at p. 62].

11.    "Whether a communication is privileged is a question of fact to be determined by the trial court from the evidence presented." *Lynch v. Hamrick*, 968 So.2d 11, 14 (Ala. 2007) (internal quotation marks and citations to authority omitted).
In making such a determination, the court is entitled to examine all the circumstances surrounding that relationship.

12.    In this case in particular, an important and significant circumstance to consider is the long-standing historical relationship of each of several attorneys to his respective client. *See* Ct. Doc. 193, ¶¶ 3-5.

13.    The general rule is that "no privilege attaches to communications between an attorney and a third person even though made on behalf of a client." Prof. William A. Schroeder and Jerome A. Hoffman, *Alabama Evidence 3d* § 5:4 (April 2008). "However, the presence of a third person does not destroy the privilege as against others if the third person is also a client or has a common interest in the subject discussed." *Id.* citing *Lynch v. Hamrick*, 968 So. 2d 11 (Ala. 2007), among other cases.

14.    "When co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes. Hence the privilege protects those

7

communications from compelled disclosure to persons outside the joint representation. Moreover, waiving the joint-client privilege requires the consent of all joint clients. Restatement (Third) of the Law Governing Lawyers § 75(2)." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 363 (3rd Cir. 2007). It is clear that no such waiver was ever made.

**C.    The adequacy or inadequacy of VictoryLand's privilege log is not included in the issues to be addressed by the Court's order of May 15, 2008, and is inappropriate.**

15.    Plaintiffs complain of the inadequacies of VictoryLand's privilege log and even attach a copy to their brief, [Doc. 194 at pp. 12-15 & Ex. B] but that complaint is neither appropriate nor founded in fact. This Court was specific in detailing the nature of the legal issues to be addressed in these memoranda and replies in its May 15th Order. The sufficiency or adequacy of VictoryLand's privilege log was not among those issues. Moreover, this issue is moot since the documents which VictoryLand claims are privileged and confidential have already been submitted to this Court for *in camera* review and determination as to privilege.

**D.    The crime-fraud exception does not apply.**

**1.    Plaintiffs cannot justify any application of the crime-fraud exception.**

16.    The crime-fraud exception is not applicable here. The exception only comes into play when there is a *prima facia* showing that the client was engaged in criminal activity when he sought the lawyer's advice or committed the crime or fraud with the lawyer's assistance. Plaintiffs have not made any such showing. Moreover, the exception only extends to communications made in furtherance of the crime or fraud. Here, Plaintiffs have fabricated a "tenuous" theory of bribery based upon a "convolution of tortured reasoning." [Ct. Doc. 187, p. 21, 27]. This theory does not satisfy Plaintiff's burden to underline establish an ongoing bribery scheme. Founded only upon that elusive footing, Plaintiffs seek overly broad and unrestrained discovery designed to "rummage through the

affairs of the defendants based merely on . . . 'information and belief' assertions." [Ct. Doc. 187, p. 9]. The "intrusive requests" are based on the "sophistry" of an incorrect theory of bribery which "astounds, but does not persuade." [Ct. Doc. 187, p. 28]. This Court has previously noted that the "slight evidentiary utility" of some of the information sought by Plaintiffs is "far outweighed by the intrusiveness and potential injury of the release of the information about the operation of a closely-held cooperation" [Ct. Doc. 187, p. 10] to a potential competitor. The Plaintiffs' request for confidential and protected information simply because "it 'may reveal' something . . . if their theory is correct" does not constitute a valid discovery request. [Ct. Doc. 187, p. 23, 28].

17.    Specifically, this Court has already noted that Plaintiffs' theory of bribery is incredible:

> In a nutshell, the plaintiffs' theory that Fred Gray, Jr. was bribed boils down to this convolution of tortured reasoning: McGregor and VictoryLand paid to Fred Gray and the Gray law firm money or provided other benefits. Fred Gray Jr., as a shareholder and Fred Gray's son, knew that McGregor and VictoryLand paid his father and the firm money or conferred benefits. The money paid by McGregor and VictoryLand to Fred Gray and the firm or the benefits constituted "a thing of value in the mind of Fred Gray, Jr." in accordance with the Alabama bribery statute. Consequently, because Fred Gray, Jr. knew he would get more money or benefits through his father from McGregor and VictoryLand if he drafted the rules and regulations in a way to favor McGregor and Victoryland, he was "bribed" to draft the rules in a manner giving VictoryLand a monopoly on electronic bingo in Macon County.
>
> Throughout their motions and briefs on this issue, the plaintiffs remark upon their entitlement to the information sought with the caveat "if their theory is correct." The theory is not correct. It boils down to an assertion that Fred Gray, Jr. is bribed because he thinks his present actions may result in increased benefit to him; he is a bribee in his own mind. The sophistry of this contingent interest argument astounds, but it does not persuade. The argument is simply too attenuated to support the intrusive requests which with two exceptions will be denied.

As this Court further noted:

Stated another way, the argument goes like this:

9

(1)    Fred Gray is an investor in VictoryLand and has represented McGregor and Victoryland since 1983.

(2)    Fred Gray, Jr. is Fred Gray's son.

(3)    Junior knows how much Father has benefitted financially from his relationship with McGregor and VictoryLand.

(4)    Father's financial benefits constitute "things of value" in Junior's mind.

(5)    These financial benefits are Junior's "motive" to draft the regulations in a manner to benefit only McGregor and VictoryLand.

(6)    Because Junior has "benefited" from Father's financial acumen in terms of the shareholder profits he has received, or he will benefit by means of an inheritance or loans, he has in essence been bribed to draft the rules and regulations in a manner to favor McGregor and VictoryLand.

[Ct. Doc. 187 n. 23 at pp. 26-27].

18.    Plaintiffs attempt to make much of the argument that the crime-fraud exception pierces any veil of privilege, confidentiality or work product.  [Ct. Doc. 194 at p. 18].  Here, once again, Plaintiffs trip over their own bootstraps.  Plaintiffs hope to bolster their dubious allegations through discovery.  However, "[t]o trigger the crime-fraud exception, [plaintiffs] . . . must establish that 'the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme.' *In re Sealed Case*, 754 F. 2d [395] at 399 [(D. C. Cir.1985)] (citations omitted)." *Exxon Corp. v. Department of Conservation and Natural Resources,* 859 So.2d 1096, 1107 (Ala.2002) ("Because the State failed to present evidence indicating that Exxon, when it requested the letter, was using Broome's services to further an ongoing fraudulent scheme, the Broome letter does not qualify for the crime-fraud exception, and the trial court correctly rejected that argument.")(emphasis added).

19.    Because this Court has already acknowledged that Plaintiffs' theories of bribery are unconvincing and unsound, Plaintiffs are unable to satisfy the burden of proof necessary to pierce the veil.  As has been recognized:  "For several reasons, we conclude that in a civil case the burden of proof that must be carried by a party seeking outright disclosure of attorney-client

communications under the crime-fraud exception should be preponderance of the evidence." *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1094 -1095 (9th Cir. 2007). "<u>A moving party does not satisfy this threshold burden merely by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud. There must be a specific showing that a particular document or communication was made in furtherance of the client's alleged crime or fraud</u>." *In re BankAmerica Corp. Securities Litigation*, 270 F.3d 639, 642 (8th Cir. 2001)(emphasis added). Plaintiffs simply have not satisfied their burden of proof.

20.    The test for determining the applicability of the crime-fraud exception was most recently set out in *United States v. Cleckler*, 2008 WL 426257, 2 (11th Cir. 2008). Plaintiffs have failed miserably to demonstrate that Sheriff Warren "was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice." *Id.* Second, Plaintiffs have made no "showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *Id.*

21.    Plaintiffs claim they have evidence that the Gray Law Firm received legal fees from VictoryLand, that Fred Gray received dividends as a shareholder in VictoryLand and that such evidence of normal activities (i.e., lawyers being paid fees for services rendered stockholders receiving dividends) establishes the elements of bribery. Therefore, Plaintiffs argue, the crime-fraud exception applies to abrogate the attorney-client privilege and the work product doctrine. Plaintiffs' analysis is flat wrong. VictoryLand does not agree with Plaintiffs' distortion of the facts. Moreover, Plaintiffs fail to state that they must establish that these "things of value" - payments for legal work performed and regular dividends paid to a shareholder - were conferred by the alleged briber <u>with the intent</u> that Fred Gray, Jr. be corruptly influenced. Plaintiffs have no evidence on this point and

can never establish this element as it simply does not exist and is not true. Thus, there is no reason or need to even reach a discussion of the crime-fraud exception.

22.     Plaintiffs cite *United States v. Kemp*, 500 F.3d 257 (3rd Cir. 2007) [Ct. Doc. 194, p. 20] for the proposition that "as a legal matter, we conclude that providing a loan to a public official (or his friends or family) that would have otherwise been unavailable to that official or available at a higher interest rate may constitute a bribe." *Id.*, 500 F.3d at 285. However, the *Kemp* case involved the awarding of contracts based on bribes and the court merely held that a loan may constitute a "thing of value" in a bribery charge. That case is factually and easily distinguished from the instant case.

23.     Likewise, the other cases cited by Plaintiffs [Ct. Doc. 194, p. 20] do not support their contention that they have established a prima facie case of bribery sufficient to warrant application of the crime-fraud exception. In *U.S. v. Krilich*, 159 F.3d 1020 (7th Cir. 1998), the defendant who was facing troubles with federal environmental authorities, asked an official to supply an affidavit stating that development should be allowed to continue. After the affidavit was signed, the defendant gave the official an envelope containing $300. There was other evidence of bribery as well, but defendant argued that the "gratuitous after-the-fact payment" was insufficient to establish bribery in Illinois. In addition, "[e]veryone agree[d] that the hole-in-one bribe was in exchange for [an official's] support in an April 1984 vote regarding the Oakbrook Terrace bond issue,. . ." *Id.* 159 F.3d at 1027. Clearly, there is no evidence of such a "hole-in-one" bribe in this case and *Krilich* is simply inapplicable.

24.     *Buchanan County, Virginia v. Blankenship*, 496 F.Supp.2d 715, 722 (W.D.Va. 2007), is also distinguishable upon the facts. There, in the wake of a flood, bribes were paid by contractors to county officials, contractors colluded to rig bids, and contract prices were inflated by contractors

12

to fund the bribes. During this period, the county awarded some $7.6 million in contracts involving bribes and bid rigging. The majority of the bribes were paid in cash, though some were paid in the form of coon dogs, clothing, and football and NASCAR tickets, among other things. A federal investigation, termed "Operation Big Coon Dog," uncovered a "feeding frenzy of corruption." *Id*. 496 F. Supp. 3d at 715. The appellate court found **as a matter of undisputable fact** in the civil RICO prosecution based on facts determined in the previous criminal prosecution of the defendants, that defendant bribed another in the form of clothing for both him and his wife. There is no prior criminal prosecution at issue in this case, and therefore, *Blankenship* is not on point.

25.    In *U.S. v. Frega,* 179 F.3d 793 (9th Cir. 1999) the appellate court simply upheld the following jury instructions as correct statements of law:

> Even though giving a judge something of value may be inappropriate or a violation of the ethical rules . . . such an act is not done corruptly so as to constitute a bribery offense unless [it] is intended at the time it is given to affect a specific action the judge officially will take in a case before him, or may take in a case that may be brought before him.

> A gift or favor bestowed on a judge solely out of friendship, to promote good will, or for motive wholly unrelated to influence over official action does not violate the bribery statutes[.]

*Id*, 179 F.3d at 807. Therefore, *Frega* simply has nothing to do with the issues currently before this Court.

26.    Further, in *United States v. Biaggi*, 705 F.Supp. 790 (S.D.N.Y.1988), another case cited by Plaintiffs, the court held that evidence was sufficient to establish that defendants engaged in pattern of racketeering activity by entering into a scheme to obtain Department of Defense contracts for corporation under Small Business Administration program, precluding judgment of acquittal.

> The Government has introduced sufficient evidence to sustain the first

element of these charges-an attempt to receive property from another with their consent, induced by the wrongful use of fear or under color of official right. The testimony is that the Congressman first demanded Wedtech stock at a dinner in the summer of 1983, and that at that time he also demanded a 5% commission on all contracts he could get for Wedtech. This latter demand was a direct solicitation of benefits in connection with the Congressman's official duties that satisfies the element of inducement under color of official right.

*Id.* 705 F.Supp. at 799 -800.  Like the other cases cited by Plaintiffs, *Biaggi* has nothing to do with the issues before this Court.

27.     None of the cases cited by Plaintiffs supports their position because, unlike here, in each case cited, the government had introduced sufficient facts and evidence to prove the allegations of bribery.  These cases simply do not help Plaintiffs make the giant leap from allegation to proof and from speculation to fact.  Accordingly, the crime-fraud exception does not apply, and there is no basis to compel production of the protected information.

**2.     The bingo rules and regulations reflect the Sheriff's intentions.**

28.     Plaintiffs' argument that: (i) Fred Gary, Jr. departed from Sheriff Warren's intentions with respect to the Bingo rules and regulations and (ii) a jury could find that the departure showed Fred Gray, Jr was acting under corrupt influence and with a corrupt intent is a non-starter.  Plaintiffs' bald claim at pages 21 and 22 of their brief that a jury[5] could find that the bingo rules and regulations drafted by Fred Gray, Jr. "did not accord with the Sheriff's intentions" is resoundingly contrary to the evidence and cannot be credited.  Sheriff Warren's deposition testimony of March 19, 2008, is located at Ct. Doc. 168 and Exhibit B of Ct. Doc. 194.

For example, the Sheriff  testified on pages 69 and 70 of his deposition [Ct. Doc. 168] that although the bingo rules and regulations and the amendments thereto were drafted by his lawyer Fred

---

[5]     Based on the status of Plaintiffs' present proof, as distinguished from innuendo and suspicion, the assumption that this case would even get to a jury is brash to say the least.

Gray, Jr., they were the Sheriff's rules and were subject to the Sheriff's discretion and approval. [Ct. Doc. 168 at p. 69, line 9 - p. 70, line 5] In direct response to questioning by Plaintiffs' counsel, the Sheriff testified: "Sir, not only was it my duty to promulgate these rules and regulations, but <u>these are my rules and regulations</u>." *Id.* at p. 69, lines 14-16 (emphasis added). Likewise, on page 182 of his deposition [Ct. Doc. 168], the Sheriff testified that the amendments to the bingo rules and regulations were made at his discretion as he saw the need to make them and that he instructed Fred Gray, Jr. to draft the amendments after telling Fred Gray, Jr. what he wanted. *See Id.* at p. 182, lines 10-18. Given the Sheriff's uncontradicted testimony that the Bingo rules and regulations were his rules and regulations, it is simply impossible that they "did not accord" with his intentions. Plaintiffs' continued efforts to misstate and twist the testimony of Sheriff Warren in this case must not be countenanced by the Court.

29.    Furthermore, at his deposition on March 19, 2008, Sheriff Warren testified time and time again that Fred Gray, Jr. was his attorney; that Gray, Jr. acted pursuant to the Sheriff's instructions and according to the best interests of Macon County in drafting the rules and regulations; and that the bingo rules and regulations were what the Sheriff wanted:

> I was responsible for promulgating the rules and regulations governing bingo in Macon County.[Ct. Doc. 168, p. 15]
>
> I had a duty to promulgate rules for the operation of bingo games in Macon County. I did that to the best of my ability and in a way that I thought would be in the best interest of the citizens of Macon County. [*Id.* at p. 23]
>
> I used as much fairness as I could in promulgating those rules. [*Id.* at p. 25]
>
> . . . fairness to the citizens of Macon County was one of the elements that I considered as I promulgated these rules. [*Id.* at p. 26]
>
> I did everything I could to do them the best way I could. And that's my answer. [*Id.* at p. 28]

15

In my mind, when I promulgated the rules and regulations governing bingo, I did the best job that I could do . . . Those rules are my rules. I'm the sheriff; I've tried to follow the law the best way I could, and -- That's my answer. [*Id*. at p. 29](emphasis added)

What I was trying to do was to make sure that I did no harm by anything that I did to the citizens of Macon County, as I considered these rules and regulations. [*Id*. at p. 32]

The law put the responsibility for coming up with the rules and regulations governing bingo on the sheriff. [*Id*. at p. 53]

I perceived that I had the authority to get assistance in promulgating these rules and regulations. [*Id*. at p. 54]

Sir, I'm the sheriff, I'm in charge [of promulgating these rules and regulations]. [*Id*. at 66]

What was important to me, as I set about to accomplish the task of coming up with these rules and regulations, was that I had an attorney that I trusted; that I had confidence in and someone that I was familiar with. [*Id*. at p. 67]

The most important elements to me as I set about the task of drawing up these rules and regulations, as it relates to an attorney, was somebody that I thought to be competent and somebody that I could trust. [*Id*. at p. 68]

The rules governing bingo were drafted by Mr. Gray, and -- but they were subject to my discretion and my approval. [*Id*. at p. 69](emphasis added)

Sir, not only was it my duty to promulgate these rules and regulations, but these are my rules and regulations. [*Id*. at p. 69](emphasis added)

They were drafted -- The rules and regulations were drafted by Mr. Gray. And they were subject to my discretion and approval. [*Id*. at p. 69](emphasis added)

The first and second drafting and the amendments were drafted by Mr. Gray, subject to my approval. [*Id*. at p. 70](emphasis added)

They [amended and restated rules and the commentary] -- They were drafted by Mr. Gray as my reasoning and approved. [*Id*. at p. 72]

And at this point in time, this is what the rules are as they relate to bingo, and those are the rules that I made, and those are -- that's the reality of it at this time. [*Id*. at p. 116-117]

My intention was to provide rules that would govern bingo. And in my opinion, before I approved a qualified location, there would have to be a building there for me to approve. [*Id*. at p. 144]

Let me say this: As the sheriff of Macon County and a person that deals with -- charged with the regulation of this -- of this law of this -- of this industry in Macon County, I can make whatever rules I deem necessary to deal with any situation that comes up. And neither Mr. Milton McGregor or anybody else could do anything about it. [*Id*. at p. 154]

I charged Mr. Gray with helping me develop rules and regulations for bingo. What Mr. Gray came up with, we discussed. I used my discretion. I approved what I wanted to approve and the rules that are adopted are the rules that were adopted by the Macon County sheriff. [*Id*. at p. 157]

And whatever Mr. Gray and I came up with was -- these rules were developed and approved by me as I understood what their functions were to be and what I intended them to be. [*Id*. at p. 158]

I hired Mr. Gray -- Mr. Gray to come up with the rules that would govern the conduct of games in Macon County. That was my -- And the rules and what Mr. Gray and I came up with was what I wanted. I used my discretion on the information that he brought to me. I exercised what judgment I could, given my knowledge of this issue, which was -- which I used as best I could and the rules and regulations that I came up with, I approved and I intended that they govern this activity. [*Id*. at p. 159-160]

Fred Gray, Jr., and I have a long history with one another. I trusted -- trust this man. When I asked him to do what he did, I trusted him to act in the best interest of the citizens of Macon County, in my best interest. And when we came to the end of the journey, what we came up with was something I knew I approved, we discussed and was what I asked him to do. v pp. 161-162]

Sir, Fred -- I had no problem with Fred Gray, Jr., being my attorney. The amendments that were made to these rules and regulations are amendments I made as I -- I made at my discretion as I saw the need to make them . . . [Mr. Gray drafted them]. . . at my instruction. . . . I told him what I wanted. [*Id*. at p. 182]

My intentions were to come up with rules and regulations for the promulgation -- to promulgate rules and regulations that would govern bingo in Macon County. And I did the best I could do to accomplish that. [*Id*. at p. 217]

Mr. Heninger, <u>the rules and regulations that are here before you are the rules that I promulgated and these are the rules that I stand by</u>. And that's it. [*Id*. at p. 219](emphasis added)

When Fred Gray and I came up with these rules, I went over everything that I needed to; we collaborated on them.  <u>But in the final analysis, these are not Milton McGregor's rules, they are not Fred Gray, Jr.'s, rules, these are not Fred Gray, Sr.'s rules.  These are the rules that I approved and that I stand by.</u>  [*Id*. at p. 225](emphasis added)

I wrote those rules with the best interest of the citizens -- I ain't talking about the citizens nowhere else, I'm talking about the citizens of Macon County and mine.  [*Id*. at p. 252]

The rules and regulations that I promulgated were meant to govern the operation of bingo in Macon County.  And I tried my best to promulgate those rules so that they would be of a benefit to Macon County.  [*Id*. at pp. 254-255]

Let me say this, say it for the time -- I guess the tenth time or how many other times: <u>The rules, the amendments to the rules, or the rules that I promulgated, they're the rules that I amended when I -- In my opinion they needed to be amended.</u>  And if Mr. Gray did anything, it was carrying out what he deemed be his responsibilities as my attorney.  [*Id*. at p. 277](emphasis added)

The rules and the amendments that were promulgated by me and the amendments that were -- were the additions to these rules are mine.  [*Id*. at pp. 277-278]

The rules that I have promulgated, the rules that govern bingo are the rules that I intended that bingo -- that would govern bingo, any amendments that I made to those rules were not intended to favor anyone.  They were rules.  They were -- Those rules were amended as I saw the need to amend them.  [*Id*. at p. 278]

And Mr. Gray, as I sit here today, has carried out what I instructed him to carry out as my attorney.  [*Id*. at p. 279]

I believe Mr. Gray has done what I have asked him to, and that was done in what I saw at the time that I did it as in the best interest of the citizens of Macon County. [*Id*. at p. 280]

Mr. Gray is my attorney; he has been my attorney long before the bingo rules were regulated.  I trust Mr. Gray, and I know that he is committed -- he was committed to what I instructed -- the duties that I instructed him to carry out.  [*Id*. at p. 281]

 Sir, I have always tried to act as if I were doing the proper thing when it came to the promulgating the rules and regulations regarding bingo.  [*Id*. at p. 299]

I realize what my duty is.  And my duty, as I see it, in promulgating these rules and regulations is to do them in a way that is fair; to do them in a moral way; and to do them in a way that accomplishes what was needed to regulate this industry in Macon

County. And I tried to do that as fair and as upright as I could to the best of my ability. [*Id*. at p. 301]

At the end of the day, my duty, as I saw it, sir, was to promulgate the rules and regulations that would serve the best interest of the people of Macon County, and that is what I tried to do so help me God, to the best of my ability. [*Id*. at p. 302]

. . . I have tried to do the best I could do to promulgate rules and regulations that would not only serve this industry, serve as a guide for this industry to operate, but rules that would serve and protect the interests of the citizens of Macon County. [*Id*. at p. 305]

My intentions were to -- and remains to promulgate rules that would serve as a guide for governing -- for the governance of bingo in Macon County. [*Id*. at p. 307]

I have promulgated rules that I feel that will govern bingo gaming in Macon County properly and while keeping the best interest of the citizens of Macon County -- while keeping the best interest of the citizens of Macon County as my foremost interest. [*Id*. at p. 319]

The bingo rules are what they are at this point in time. The bingo rules are my rules; I promulgated them for the sole purpose of operating bingo in Macon County. I tried to carry out my duties as best and as responsible as I can. Whatever amendments, those are amendments I made; I stand by my reasoning for making those amendments. p. 328

. . . I used my discretion in coming up with what I wanted these rules to be. And, sir, Mr. Gray, followed my instruction and did what he was instructed to do. [*Id*. at p. 329]

**3.    Plaintiffs misrepresent the facts; there is no evidence that Fred Gray, Jr.'s acted with corrupt intent.**

30.    In addition, Plaintiffs' assertions on pages 22 and 23 of their brief, that Fred Gray, Jr.

violated Rule 1.7(b) of the Alabama Rules of Professional Conduct, and that this alleged violation

is somehow evidence of "corrupt intent" are wholly without merit and are also based solely on the

Plaintiffs' use of misleading excerpts from the Sheriff's deposition. The Sheriff testified that he

knew and had known for a long time that the Gray Law Firm had represented VictoryLand. *See* Ct.

Doc. 168 at p. 179, lines 16-19. He also testified that he knew that: (i) Fred Gray had an interest in

VictoryLand; (ii) Milton McGregor was the principal of VictoryLand; and (iii) Mr. McGregor was interested in conducting bingo.  *See id.*, at p. 179, line 20 - p. 80, line 24.  More importantly, the Sheriff testified that he "saw no conflict of interest" and had no problems with Fred Gray, Jr. representing him.  *Id.*, at p. 181, line 1-10; *see also id.*, at p. 181, line 18 - p. 182, line 18.  Because the Plaintiffs in this case have no standing[6] to challenge Fred Gray Jr.'s loyalty to Sheriff Warren and because Sheriff Warren has testified that he saw no conflict of interest, the Plaintiffs' conflict of interest assertion is nothing more than meaningless and meritless conjecture, which the Court should disregard.

### CONCLUSION

For any or all of the above reasons, this Court is requested to DENY Plaintiffs' requests for discovery and motions to compel.

### ORAL ARGUMENT IS REQUESTED

Respectfully submitted,

s/ ***Augusta S. Dowd***
Augusta S. Dowd
John Mark White
Hope S. Marshall
Rebecca Depalma
Attorneys for Defendant Macon County Greyhound Park, Inc. d/b/a VictoryLand

s/ ***John Bolton***
John M. Bolton, III
Charlanna W. Spencer
Attorneys for Milton McGregor

OF COUNSEL:
WHITE ARNOLD & DOWD P.C.

---

[6]    Defense counsel raised this objection during oral argument on discovery.  [Ct. Doc. 174 at p. 31].

2025 Third Avenue North
Suite 500
Birmingham, Alabama 35203

John M. Bolton, III
Charlanna W. Spencer
Hill, Hill, Carter, Franco, Cole & Black, P.C.
Post Office Box 116
Montgomery, Alabama 36101-0116

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Khristi Doss Driver. Esq.
Peter J. Tepley, Esq.
Haskell Slaughter Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
E-mail: wms@hsy.com
E-mail: pcd@hsy.com
E-mail: kdd@hsy.com
E-mail: pt@hsy.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of June, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF- participant counsel of record:

James H. Anderson
Ryan Wesley Shaw
BEERS ANDERSON JACKSON PATTY &VAN HEEST PC
P.O. Box 1988
Montgomery, Alabama 36102
E-mail: janderson@beersanderson.com
E-mail: wshaw@beersanderson.com

George Beck, Jr.
CAPELL & HOWARD, P.C.
P.O. Box 2069
Montgomery, Alabama 36102-2069
E-mail: glb@chlaw.com

John M. Bolton, III
Charlanna W. Spencer
HILL, HILL, CARTER, FRANCO, COLE & BLACK, P.C.
Post Office Box 116
Montgomery, Alabama 36101-0116
E-mail: jbolton@hillhillcarter.com
E-mail: cspencer@hillhillcarter.com

Ronald G. Davenport
RUSHTON, STAKELY, JOHNSTON & GARRETT
184 Commerce Street
P.O. Box 270
Montgomery, Alabama 36101
E-mail: rgd@rsjg.com

W. Lewis Garrison
Stephen D. Heninger
Gayle Douglas
HENINGER GARRISON DAVIS, L.L.C.
2224 1st Avenue North
Birmingham, Alabama 35203
E-mail: wlgarrison@hgdlawfirm.com
E-mail: steve@hgdlawfirm.com
E-mail: gdouglas@hgdlawfirm.com

Fred Gray
Fred Gray, Jr.
GRAY, LANGFORD, SAPP, MCGOWAN, GRAY & NATHANSON
P.O. Box 830239
Tuskegee, Alabama 36083-0239
E-mail: fgray@glsmgn.com
E-mail: fgrayjr@glsmgn.com

David Johnston
Johnston Hinesley Flowers Clenney & Turner P.C.
P.O. Box 2246
Dothan, Alabama 36302
E-mail: djohnston@jhfc-law.com

Robert K. Spotswood, Esq.
Michael T. Sansbury, Esq.
SPOTSWOOD, SANSOM & SANSBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama 35213
E-mail: rks@spotswoodllc.com
E-mail: msansbury@spotswoodllc.com

S/ ***Augusta S. Dowd***
OF COUNSEL