**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 3:06-cv-01113-WKW-WC |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PRIVILEGE ISSUES**

On May 30, 2008, the Plaintiffs and Defendants VictoryLand and McGregor simultaneously filed briefs addressing various questions of privilege raised by the Plaintiffs' motions to compel. The Plaintiffs now submit this reply brief in further support of their arguments that neither Alabama Rule of Professional Conduct 1.6, the attorney-client privilege, nor the work-product doctrine applies to prevent the discovery at issue.

**ARGUMENT**

**I.      Rule 1.6 is irrelevant.**

The Defendants appear to recognize that Rule 1.6 "should not be confused" with the attorney-client privilege or the work-product doctrine (DE 193 ¶ 12), but they fail to appreciate the significance of the distinction. Alabama Rule of Professional Conduct 1.6 is not an evidentiary privilege that prohibits discovery; rather, it is an ethical duty that prevents attorneys

from disclosing confidential information outside of judicial proceedings.  As such, Rule 1.6 does not provide a basis for denying the discovery that the Plaintiffs seek.

As an initial matter, it should be noted that Rule 1.6 imposes a duty only on attorneys. Accordingly, as noted in the bar opinion attached as Exhibit 1 to the Defendants' brief, (DE 193), an attorney is required to protest discovery that is directed towards him.  However, Rule 1.6 imposes no such obligations on a non-attorney.  Accordingly, Rule 1.6 does not provide a shield for any discovery that is directed toward VictoryLand.

Secondly, Rule 1.6 is irrelevant because it does not apply where evidence is sought through the compulsion of law.  This is made clear in the language of the comments to Rule 1.6, which the Defendants conveniently omitted from their brief: "The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client.  *The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law*."  Ala. Rules of Prof'l Conduct R. 1.6 cmt. (emphasis added).  In other words, the attorney-client privilege and work-product doctrine apply *inside* the courtroom, and Rule 1.6 applies *outside* the courtroom—as numerous courts have recognized.  *See, e.g.*, *Adams v. Franklin*, 924 A.2d 993, 999 n.6 (D.C. 2007) (quoting *People v. Green*, 274 N.W.2d 448, 454 (1979)); *Honda Lease Trust v. Middlesex Mut. Assurance Co.*, No. 3:05CV1426(RNC), 2008 WL 349239, *4 (D. Conn. Feb. 6, 2008); *CSX Transp., Inc. v. Gilkison*, No. 5:05CV202, 2007 WL 1880209, *6 (N.D. W.Va. 2007); *United States v. Stepney*, 246 F. Supp. 2d 1069, 1073-74 (N.D. Cal. 2003); *In re Estate of Wood*, 818 A.2d 568, 573 (Pa. Super. 2003); *In re Criminal Investigation No. 1/242Q*, 602 A.2d 1220, 1222 (Md. 1992).

Against the plain language of Rule 1.6 and the weight of judicial authority, the Defendants have sought refuge in a single source of law: An unpublished order from Judge U.W. Clemon in *D&T Consulting, Inc. v. Guidestar Health System, Inc.*  (Ex. A.)  That authority, which is certainly not binding, is not even persuasive.

*D&T Consulting* is related to a case from the District Court of Oklahoma where D&T sued GuideStar Health Systems, Inc. for breach of contract.  The court found in favor of D&T. (D&T's Response/Objection, attached as Ex. B at 1-2.)  When D&T tried to enforce the court's judgment, George Salem, president of GuideStar, informed D&T that GuideStar had been sold to another company.  (Ex. B at 2.)  In an effort to collect on the judgment, then, D&T issued a subpoena to both Salem and his law firm, White, Arnold, Andrews & Dowd, P.C. ("WAAD"), seeking financial documents related to GuideStar and the acquiring company.  (*Id.* at 2-3.) Because that discovery was directed, in part, to counsel, WAAD did what it was obligated to do by raising the following objections on its own behalf and on behalf of Salem:  (1) the discovery is obtainable from another source; (2) the information sought is irrelevant; (3) the subpoenas are overly broad; (4) the documents are protected by the work-product privilege; (5) the information is protected by Rule 1.6; and (6) the subpoenas are being used as a means to investigate potential litigation.  (Mtn. to Quash, attached as Ex. C at 3-7.)  The court ultimately granted the motion to quash as it pertained to WAAD but denied the motion as it pertained to Salem.  (Ex. A.)

*D&T Consulting* is thus clearly distinguishable for two reasons.  First, the court quashed the subpoena only as it pertained to the attorneys, not as it pertained to the client.  Therefore, *D&T Consulting* stands, at the very most, for the proposition that Rule 1.6 protects an attorney from providing information on his own behalf in response to a subpoena.  The Plaintiffs, in the

motions to compel directed towards VictoryLand, are merely seeking information from the client, and thus *D&T Consulting* is not even remotely applicable.

Second, *D&T Consulting* is not even persuasive authority for the proposition that Rule 1.6 protects an attorney from providing information on his own behalf in response to a subpoena. A review of WAAD's motion to quash in *D&T Consulting* shows that Rule 1.6 and the attorney-client privilege were repeatedly conflated—despite the clear divide between the two. For instance, of the six objections raised by WAAD, none of them was based on the attorney-client privilege. Instead, attorney-client privilege rhetoric was mixed throughout the Rule 1.6 objection:

> 15. Fifth, in addition, the subpoenas seek privileged information. Rule 1.6 of the Alabama Rules of Professional Responsibility prohibits disclosure of "information relating to representation of a client" absent authorization and waiver from each individual client.
> . . . .
>
> 16. The subpoenas also violate the attorney-client privilege . . . .
>
> 17. The disclosure of "information relating to the representation of a client" [] is barred by the attorney-client privilege and by the work-product doctrine. See Comment to ARPC, R 1.6 ("The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics.").
>
> 18. The information and documents sought by Plaintiffs contain and would reveal specific privileged information about and communications with this law firm's clients.

(Ex. C at 5-6.) Thus, WAAD's Rule 1.6 objection is more fairly characterized as an attorney-client privilege objection mistakenly couched in terms of Rule 1.6. Accordingly it is difficult to determine if the court granted the motion to quash based on Rule 1.6—which, as pointed out above, would have been contrary to the language of Rule 1.6 and the weight of judicial authority—or instead relied on the attorney-client privilege—which can be a legitimate basis for

denying discovery in certain circumstances. Furthermore, D&T offered no response to WAAD's Rule 1.6 objection, arguing instead that the attorney-client privilege did not apply. The applicability of Rule 1.6, therefore, was not fully briefed by the parties. Accordingly, based on the papers submitted, the court could not have had a complete understanding of the contours of Rule 1.6 when it issued its order.[1]

Moreover, even if Rule 1.6 were an appropriate and fully understood basis for the court's decision in *D&T Consulting*, that order would still not be dispositive of the issues presented here. As pointed out in the Plaintiffs' supplemental brief, Rule 1.6 expressly allows the disclosure of otherwise confidential information "to respond to allegations in any proceeding concerning the lawyer's representation of the client." Ala. Rules of Prof'l Conduct R. 1.6(b)(2). The applicability of this exception was not considered in *D&T Consulting*, where the conduct of WAAD in representing Salem was not at issue. In this case, however, a lawyer's representation of a client is at issue, and disclosure is allowed to respond to allegations "concerning the lawyer's representation of the client." *Id.* Thus, unlike the disclosure sought in *D&T Consulting*, the disclosure sought here is expressly permitted by the terms of Rule 1.6.

To adopt Defendants novel and unsupported application of Rule 1.6 to bar discovery, this Court would have to ignore not only the actual language of Rule 1.6 and its comments but also extensive case law to the contrary. Rule 1.6 is a professional rule, governing an attorney's

_____

[1] The rationale underlying the court's order is further confused by the stipulation that the subpoena is quashed without prejudice, allowing for reconsideration in the event that the "discovery sought is unobtainable from any other source." (Ex. A at 2.) The inability to obtain information from another source typically only factors into discovery protected under *the work-product doctrine*—interjecting yet another possible basis for the court's decision. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (The work-product doctrine can be overcome upon a showing that the party "has substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means."). Accordingly, the court's lack of analysis makes it nearly impossible to determine the true basis for its ruling—dissolving any authority this single order might otherwise have had.

conduct outside the courtroom. It cannot be raised as a shield in a discovery dispute. This Court should compel the disclosure of all requested communications that are not otherwise protected by an actual evidentiary privilege.

## II.    The attorney-client privilege does not protect any of the communications at issue.

### A.    The attorney-client privilege does not protect communications regarding electronic bingo between VictoryLand and members of the Gray Law Firm or between Fred Gray Jr. and other members of the Gray Law Firm.

The attorney-client privilege only attaches to communications between an attorney and his client made "*for the purpose of securing legal advice or assistance*." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994) (emphasis added). With regard to Fred Gray Jr., the analysis is thus quite simple: Fred Gray Jr. has not represented VictoryLand in seven years (DE 62 Ex. A at 3),[2] and thus any communications between Fred Gray Jr. and VictoryLand could not have been "for the purpose of securing legal advice or assistance." With regard to Fred Gray, the analysis is slightly complicated by the fact that Fred Gray has a longstanding attorney-client relationship with VictoryLand. (DE 62 Ex. A at 2.) Fortunately, Fred Gray has clarified the issue by affirmatively stating that he did not represent VictoryLand with regard to electronic bingo.[3] (DE 62 Ex. A at 1-2.) Therefore, any communications between Fred Gray and

---

[2] The Defendants bald assertion that "Fred Gray, Jr., . . . through legal representation, ha[s] a significant historical relationship with Milton McGregor and his enterprises, including VictoryLand," (DE 193 at ¶ 5), is unsupported by any evidence and is flatly contradicted by the Affidavit of Fred Gray, (DE 62 Ex. A at 3). Accordingly, this Court should lend no credence to that assertion.

[3] Indeed, Fred Gray implicitly acknowledges that such a representation would have been unethical, stating that he "was not retained by [VictoryLand] for the purpose of doing anything in connection with Rules and Regulations governing Bingo" because he "knew that Fred Gray, Jr., who had represented the Sheriff for over ten years, was working with the Sheriff on the Rules and Regulations." (DE 62 Ex. A at 2.) The same conflict extends to all members of the Gray Law Firm. *See* Ala. Rules of Prof'l Conduct R. 1.10. Although Fred Gray's affidavit does not directly address the Gray Law Firm's representation of Defendant McGregor with regard to electronic bingo in Macon County, Plaintiffs can only assume that Gray's statement that he was

VictoryLand regarding electronic bingo were not "for the purpose of securing legal advice or assistance" and, thus, were not privileged.

While irrelevant to the requests at issue here—which seek only communications between the Grays and VictoryLand regarding electronic bingo—the Defendants argue that intra-firm communications between the Grays are privileged in all circumstances.  (DE 193 at ¶¶ 15-16.)  That is simply untrue.  As indicated in the Affidavit of Fred Gray, the Gray Law Firm—in light of the clear ethical problems presented by Fred Gray's ownership in VictoryLand—attempted to erect a "Chinese Wall" between Fred Gray Jr. and the rest of the firm while he drafted the rules and regulations.  While that wall was an improper solution to the ethical dilemma, no member of the Gray Law Firm can now claim an intra-firm attorney-client privilege with regard to Gray Jr.'s representation of Warren.  *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1110 (N.D. Cal. 2003) (An "intra-firm ethical wall" bars contact between attorneys representing opposing parties within a firm.); *see also Norfolk S. Ry. Co. v. Reading Blue Mountain & N. Ry.*, 397 F. Supp. 2d 551, 555 (M.D. Pa. 2005) ("An effective screen should have a strong firm policy against breach, including sanctions, physical and/or geographical separation. . . . [There must be] an absolute prohibition of any conversations with, around, near, or in the presence of the screened attorney concerning or relating to the screened files, and/or matters." (citations and quotation omitted)).

**B.    The attorney-client privilege does not protect communications between Fred Gray, Jr. and lawyers representing VictoryLand and/or Milton McGregor.**

Despite the well-established rule that the presence of a third party waives the attorney-client privilege, Defendants assert that the attorney-client privilege "applies to any other

---

not retained by VictoryLand regarding electronic bingo extends to Defendant McGregor as well.  (*Cf.* DE 193 at 2 ("The Gray Law Firm has represented Milton McGregor and his various enterprises since 1983.").)

attorneys with whom Fred Gray, Jr. may have communicated in carrying out his representation of Sheriff Warren." (DE 193 at ¶ 17.) In support of this novel argument, Defendants quote *Zurich American Insurance Co. v. Superior Court*, 66 Cal. Rptr. 3d 833 (Cal. App. 2 Dist. 2007). Of course, *Zurich*, which applies California privilege law, has no precedential value in this Court. In any case, the Defendants misrepresent *Zurich*'s holding. That case dealt with the corporate attorney-client privilege: "The fundamental issue in this case is whether corporate communications not directly involving an attorney, but which discuss legal advice, come within this privilege." *Id.* at 839. The *Zurich* court was not considering a case, like this one, where various attorneys at different law firms representing potentially adverse clients communicated with each other regarding the details of one attorney's representation of a client. *Zurich* considered whether *internal corporate legal communications* are privileged—an entirely different situation than the one before the Court.

Additionally, Defendants gloss over key language in the passage they quote from *Zurich*, (DE 193 at ¶ 17): any disclosure to third persons must be "reasonably necessary to further the interest of the litigant" to prevent waiver; in other words the "third persons to whom disclosure is [made must be] reasonably necessary to further the purpose of the legal consultation." *Id.* Individuals that actually "further the interest of the client in the consultation," such as "a spouse, parent, business associate, joint client, or any other person who may meet with the client and his attorney in regard to a matter of joint concern," are the type of third party with whom consultation may be protected by the attorney-client privilege. *Id.* (quotations omitted). It is critical that the third person "further the interest of the client"; otherwise any privilege is waived. Contrary to Defendants' assertion, merely being an attorney is not sufficient to veil

communications; any "stranger" to the actual attorney-client relationship must demonstrate that their presence "furthered the interest" of the client.

The Defendants have not and cannot make the necessary showing here. In order to claim attorney-client privilege over any communications between the Grays and any agent or attorney representing VictoryLand or McGregor with respect to electronic bingo, the Defendants must prove that those communications were intended to remain confidential and "furthered the interests" of the Defendants. The Defendants have offered no such proof, via affidavit or otherwise. Instead, the only evidence is that Defendant Warren did not intend for his communications with Fred Gray Jr. to remain confidential (DE 195 at 31-32) and that he did not intend the rules and regulations that Fred Gray Jr. developed to further the interests of VictoryLand or McGregor (DE 194 Ex. A at 227:16-228:7). The Defendants have now had several opportunities to make the requisite showing, and they have failed. This Court has no basis for determining that the communications at issue are privileged.

Moreover, in one of the cases cited by the *Zurich* court, *Insurance Co. of North America v. Superior Court*, 166 Cal. Rptr. 880 (Cal. App. 2 Dist. 1980), the court held that waiver of the privilege occurs "where the third persons present were found . . . to *possess interests adverse to the client*." *Id.* at 885 (emphasis added). That is certainly the case here. Defendant Warren testified that his interest was to issue rules and regulations that were in the best interests of Macon County (DE 194 Ex. A at 162:1-4) and that his interest was not to benefit VictoryLand or McGregor (DE 194 Ex. A at 227:16-228:7). The interest of VictoryLand and McGregor, in contrast, was presumably to make a profit. (DE 162 at 15 ("Victoryland's profitability does not provide evidence of financial motive because it is an 'axiomatic conclusion that businesses are operated to make a profit.'") (quoting *Ex parte Miltope Corp.*, 823 So. 2d 640, 647 (Ala. 2001)

(Hardwood, J. concurring); *Crawford Broadcasting Co. v. Fine*, 904 So. 2d 221, 225 (Ala. 2004)).) These interests are adverse, and any disclosures from representatives of Warren to representatives of VictoryLand, and vice versa, waived the privilege.

**III.    The work-product doctrine does not apply to protect any of the documents sought by Plaintiffs, including the billing records of the Gray Law Firm.**

The Defendants only address the work-product doctrine with respect to billing records, failing to address the work-product doctrine with respect to communications between VictoryLand and Fred Gray, Fred Gray, Jr., or any member of the Gray Law Firm regarding electronic bingo. Thus, the Defendants' work-product argument is irrelevant to the issues before this Court. Nevertheless, to the extent it impacts this Court's *in camera* inspection,[4] the Plaintiffs will address the application of the work-product doctrine to attorney billing records.

In support of their work-product argument, the Defendants rely on a single case from Florida: *HCA Health Services of Florida, Inc. v. Hillman*, 870 So. 2d 104 (Fla. App. 2 2003). (DE 193 at ¶ 18.) *Hillman*, however, has no bearing on whether the billing records of the Gray Law Firm are discoverable. That case involved an actual attorneys' fee dispute. *Id.* at 105. The victorious plaintiffs were awarded attorneys fees and served a subpoena *duces tecum* on the defendants' lawyers seeking detailed billing records, including "the date of legal service, the hours charged, and the nature of the services performed." *Id.* at 106. Because Florida law makes clear that "[t]he fees of a prevailing party cannot be predicated upon the fees of one's opponent," the Florida District Court of Appeal held that plaintiffs were not entitled to the discovery sought. *Id.* at 106-07. The lack of relevancy to the dispute coupled with plaintiffs' inability to prove that equivalent material could not be obtained elsewhere barred disclosure. *Id.* at 107. Furthermore,

---

[4] In its May 15, 2008 Memorandum Opinion and Order, this Court recognized that "in this circuit information involving the receipt of attorneys' fees from a client is not generally

the work-product doctrine was only implicated because the information sought actually related to the litigation between the two parties.  *See id.* at 105.  As pointed out in the Plaintiffs' supplemental brief, the work-product doctrine is not implicated with respect to the discovery sought here because the Defendants have not shown that it was developed in anticipation of litigation.  (*See* DE 194 at 9-10.)

Furthermore, a subsequent case out of the Fourth District Florida Court of Appeal substantially narrowed *Hillman*'s holding, limiting it to cases where a party seeks *detailed* billing statements, i.e., a description of the services performed.  *Brown Distrib. Co. of W. Palm Beach v. Marcel*, 866 So. 2d 160, 161 (Fla. App. 4 2004) ("The *Hillman* court expressed concerns about the discovery of an opponent's billing records because they could contain attorney/client information, work product, or be irrelevant.  Descriptions of services rendered which reveal the mental impressions and opinions of counsel could be privileged, but are not at issue here." (citation omitted)).  Thus, only *detailed* bills disclosing the actual services performed are potentially protected.  *Hillman* does not, as Defendants suggest, stand for the proposition that all attorney billing records are protected by the work-product doctrine.  The *amount* of attorneys' fees received—the real information sought by Plaintiffs here—is not privileged.  *See, e.g.*, *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) (Attorneys' fees are not generally deemed privileged and are subject to discovery); *United States v. Keystone Sanitation Co*., 885 F. Supp. 672, 675 (M.D. Pa. 1994) (noting that privilege applies only "to the extent that they reveal litigation strategy and/or the nature of services performed"); *Leach v. Quality Health Servs.*, 162 F.R.D. 499, 501-02 (E.D. Pa. 1995) (quoting same).

---

privileged" (DE 187 at 28) and required that the Gray Law Firm produce all billing records for *in camera* inspection.

The Eleventh Circuit's understanding of the discoverability of attorneys' fees is no different. The Circuit has recognized a "limited and rarely available exception" to the general rule that "matters involving the receipt of fees from a client are not [] privileged." *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982). That "limited and rarely available exception" only applies "where more than simple fee information will necessarily come to light by compliance with the order, thereby uncovering privileged information." *Id.* (citing *In re Grand Jury Proceedings* (Pavlick), 680 F.2d 1026 (5th Cir. 1982); *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960)). In other words, billing records are only protected where the disclosure of the fees will necessarily result in the revelation of privileged information. That risk is not present here. The Plaintiffs are not seeking detailed billing statements which could potentially disclose strategy or attorney opinion. The Plaintiffs want documents that relate to the actual "receipt of legal fees." (DE 136 at 2.) Because that information is not protected and not likely to lead to protected information, the Plaintiffs are entitled to full disclosure.

**IV.    To the extent any privilege is implicated, it is abrogated by the crime-fraud exception.**

As detailed in the Plaintiffs' supplemental brief (DE 194 at 18-24), the Plaintiffs can make the necessary showing to support the application the crime-fraud exception. That exception abrogates both the attorney-client privilege and the work-product doctrine. *See In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987); *Cox*, 17 F.3d at 1422.

## CONCLUSION

Based on the foregoing, the Plaintiffs respectfully request that this Court find no privilege protections and grant the Plaintiffs' motions to compel.

DATED: June 6, 2008.

Respectfully submitted,

s/ Robert K. Spotswood
Robert K. Spotswood (SPO 001)
Michael T. Sansbury (SAN 054)
Grace L. Kipp (LON 049)
SPOTSWOOD SANSOM & SANSBURY LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama  35213
TEL:   (205) 986-3620
FAX:   (205) 986-3639
E-mail:        rks@spotswoodllc.com
               msansbury@spotswoodllc.com
               gkipp@spotswoodllc.com

*Attorneys for the Plaintiff Charities*


s/ Stephen D. Heninger
Stephen D. Heninger (HEN 007)
W. Lewis Garrison Jr. (GAR 008)
Gayle L. Douglas (DOU 012)
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
TEL:   (205) 326-3336
FAX:   (205) 326-3332
E-mail:        steve@hgdlawfirm.com
               lewis@hgdlawfirm.com
               gdouglas@hgdlawfirm.com

*Attorneys for Plaintiff Lucky Palace, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 6, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
Hill Hill Carter Franco Cole & Black P.C.
425 S. Perry Street
Montgomery, AL 36104
E-mail:        jbolton@hillhillcarter.com
                    cspencer@hillhillcarter.com

James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
Beers, Anderson, Jackson, Patty, Van Heest &
      Fawal PC
P.O. Box 1988
Montgomery, AL  36102
E-mail:        janderson@beersanderson.com
                    wshaw@beersanderson.com

Stephen D. Heninger
W. Lewis Garrison Jr.
Gayle L. Douglas
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
TEL:   (205) 326-3336
FAX:   (205) 326-3332
E-mail:        steve@hgdlawfirm.com
                    lewis@hgdlawfirm.com
                    gdouglas@hgdlawfirm.com

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Khristi Doss Driver, Esq.
Haskell, Slaughter, Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
E-mail:        wms@hsy.com
                    pcd@hsy.com
                    pt@hsy.com
                    kdd@hsy.com

Fred David Gray, Esq.
Fred David Gray Jr., Esq.
Gray, Langford, Sapp, McGowan, Gray,
      Gray & Nathanson PC
P.O. Box 830239
Tuskegee, AL  36083-0239
E-mail:        fgray@glsmgn.com
                    jbibb@glsmgn.com
                    fgrayjr@glsmgn.com
                    thalia@glsmgn.com

John Mark White, Esq.
Augusta S. Dowd, Esq.
Rebecca DePalma, Esq.
White, Arnold, Andrews & Dowd
2025 Third Avenue, North
Suite 600
Birmingham, AL  35203
E-mail:        mwhite@waadlaw.com
                    adowd@waadlaw.com
                    rdepalma@waadlaw.com

George L. Beck, Jr.
Capell Howard PC
PO Box 2069
Montgomery, AL 36102-2069
E-mail:        glb@chlaw.com

Ronald G. Davenport, Esq.
Rushton, Stakely, Johnston & Garrett
PO Box 270
Montgomery, AL 36101
E-mail:        rgd@rsjg.com

s/ Michael T. Sansbury
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**D&T CONSULTING, INC.,**            )
                                     )
              Plaintiff,             )
                                     )
**v.**                               )        Civil Action Number
                                     )        **2:06-mc-1120-UWC**
**GUIDESTAR HEALTH SYSTEM, )        (5:03-cv-0371 W.D. OK)**
INC.,                                **)**
                                     )
              Defendant.             )

## ORDER ON MOTION TO QUASH
## and GRANTING *PRO HAC VICE* MOTION

Upon due consideration of the Objection and Motion to Quash the Subpoenas

Duces Tecum filed by third parties White Arnold Andrews & Dowd and George B.

Salem (Doc. 1), it is hereby ORDERED as follows:

1. In light of Rule 1.6(a) of the Alabama Rules of Professional Conduct,[1] the

Motion to Quash is hereby GRANTED in favor of the White Arnold Andrews &

Dowd law firm. Accordingly, the subpoena *duces tecum* is hereby QUASHED as to

---

[1]           **Rule 1.6   Confidentiality of Information**
        (a) A lawyer shall not reveal information relating to representation of a
    client, unless the client consents after consultation, except for disclosures
    that are implicitly authorized in order to carry out the representation....

Alabama Rules of Professional Conduct.

the law firm,  without prejudice to reconsideration in the event of a showing by the Plaintiff that  the discovery sought is unobtainable from any other source.

2. The Motion to Quash is hereby DENIED as to third party George B. Salem.

3. Pursuant to F.R.Civ.P. 69(a), and upon appropriate notice by the Plaintiff within the next ninety (90) days, George B. Salem shall submit to a post-judgment deposition of two hours or less.

The Motion For Leave to Appear Pro Hac Vice (Doc. 6) is hereby GRANTED.

_____
U.W. Clemon
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| D&T CONSULTING, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV-06-1120-S |
| | ) | |
| GUIDESTAR HEALTH SYSTEMS, INC., | ) | |
| Defendant. | ) | |

## RESPONSE/OBJECTION TO MOTION TO QUASH SUBPOENA DUCES TECUM TO WHITE, ARNOLD, ANDREWS & DOWD, P.C. AND GEORGE B. SALEM and MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM

COMES NOW D&T Consulting, Inc. ("D&T"), and submits this Response and Objection to the Objection and Motion to Quash Subpoena Duces Tecum to White, Arnold, Andrews & Dowd, P.C., and George B. Salem and Motion to Compel Compliance with Subpoena Duces Tecum(s). Neither White, Arnold, Andrews & Dowd, P.C. (the "Firm") nor George B. Salem ("Salem") have offered meritorious grounds for their objection and request that the Subpoenas Duces Tecum be quashed so that request should be denied, D&T should be awarded its costs including a reasonable attorneys fee, and the Firm and Salem should be ordered to appear for deposition and produce the requested documents.

### *FACTUAL BACKGROUND*

In 2003 D&T initiated legal action against GuideStar Health Systems, Inc. ("GuideStar") in the District Court of Oklahoma County, State of Oklahoma to recover for breach of contract. GuideStar removed the action to the United States District Court for the Western

District of Oklahoma pursuant to a contractual provision to arbitrate and the Federal Arbitration Act, 9 *U.S.C. _ 1 et seq*[1].

Shortly before the arbitration hearing date, GuideStar informed the arbitrator and the parties that it would not be attending the hearing. The hearing was stricken and D&T forced to return to the United States District Court for the Western District of Oklahoma. Ultimately, after assuming jurisdiction, the United States District Court for the Western District of Oklahoma rendered judgment in favor of D&T in the principle amount of Three Hundred and Fifteen Thousand Five Hundred and Four Dollars ($315,504.00) with prejudgment interest in the amount of Twenty-nine Thousand Forty-one Dollars and Sixty Cents ($29,041.60)(the "Judgment")[2]. The Judgment remains unpaid.

Salem, as President of GuideStar, subsequently informed D&T that GuideStar was sold to Maven Corporation or the Maven Funding Corporation. Informal discussions and requests with both Salem and the Firm to discover the specifics of this transaction were futile and were met with continuing delaying tactics. Finally, D&T issued a Subpoena Duces Tecum to the Firm and a Subpoena Duces Tecum to Salem (collectively the "Subpoenas")[3]. Consistent with the previous delaying tactics, the Objection and Motion to Quash Subpoena Duces Tecum to White, Arnold, Andrews & Dowd, P.C., and George B. Salem (the "Objection") was filed and

---

[1] *D&T Consulting, Inc. v GuideStar Health Systems, Inc., Case No. CIV-03-1373-T.*

[2] A true and correct copy of the Judgment is attached as Exhibit "1".

[3] True and correct copies of the Subpoenas are attached to the Objection and Motion to Quash Subpoena Duces Tecum to White, Arnold, Andrews & Dowd, P.C., and George B. Salem. Additional copies are not attached to this Response to avoid redundancy.

D&T informed that no one would be appearing and no documents would be produced pursuant to the Subpoenas.

The Subpoenas requested the production of documents narrowly tailored to assist in the collection of the Judgment.  The following documents were requested[4]:

> (1) all documents listing or relating to the assets of Guidestar Health Systems, Inc.(2) all documents listing or relating to the liabilities of Guidestar Health Systems, Inc.(3) all documents listing or relating to the assets of Maven Corporation or Maven Funding Corporation(4) all documents listing or relating to the liabilities of Maven Corporation or Maven Funding Corporation(5) all documents relating to the purchase by Maven Corporation or Maven Funding Corporation of Guidestar Health Systems, Inc., including but not limited to the agreement for the purchase of Guidestar Health Systems, Inc.(6) all documents relating to the ownership or officer positions of George Salem in Guidestar Health Systems, Inc., Maven Corporation or Maven Funding Corporation(7) all correspondence relating to D&T Consulting, Inc.(8) all minutes, documents or notes of Guidestar Health Systems, Inc. or officers, directors or employees of Guidestar Health Systems, Inc. relating to or referring to D&T Consulting, Inc., litigation with D&T Consulting, Inc. or any judgment or liability relating to D&T Consulting, Inc.(9) all due diligence documentation relating to the assets, liabilities or net worth of Maven Corporation or Maven Funding Corporation.(10) all documents listing or relating to the assets and/or liabilities assumed by Maven Corporation or Maven Funding Corporation in the purchase of Guidestar Health Systems, Inc.

The Firm has asserted a variety of reasons that supposedly justify noncompliance with and quashing of the Subpoenas.  However, none of the reasons asserted (or the authority cited) support the request by the Firm and Salem that the Subpoenas be quashed.

---

[4]See the Exhibit "1" to each of the Subpoenas attached to the Objection.

## THE SUBPOENAS ARE PROPER TO ASSIST D&T
## IN ITS POST JUDGMENT COLLECTION EFFORTS

D&T obtained the Judgment against GuideStar and is entitled to collect the Judgment. A judgment creditor can proceed with discovery of non-parties to collect its judgment pursuant to *FedRCivP 69(a)* which provides in pertinent part,

> In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from *any person*, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held. (Emphasis added).

See *FedRCivP 69(a); see also Caisson Corporation v County West Building Corporation,* 62 F.R.D. 331, 334, 335 (E.D. Pa. 1974); *British International Insurance Company, Ltd. v Seguros La Republica, S.A.,* 200 F.R.D. 586, 588-589 (W.D. Tex. 2000). This discovery may be done without a separate suit. See *Caisson Corporation v County West Building Corporation, supra at* 334. All discovery available under the Federal Rules of Civil Procedure may be utilized. See *Caisson Corporation v County West Building Corporation, supra at* 334; *Evans v Chicago Football Franchise Limited Partnership,* 127 F.R.D. 492, 493 (N.D. Ill. 1989).

The scope of the post-judgment discovery is broad so as to discover hidden or concealed assets of the judgment debtor. See *British International Insurance Company, Ltd. v Seguros La Republica, S.A., supra at* 589; *Caisson Corporation v County West Building Corporation, supra at* 334. The purpose of post-judgment discovery is to learn information relevant to the existence or transfer of the

Page 4

judgment debtor's assets.  See *British International Insurance Company, Ltd. v Sequros La Republica, S.A., supra at 589.*

Utilizing *FedRCivP 69* provides for discovery with the parameters of *FedRCivP 26.* See *Burch v Scott, 29 F.Supp. 775, 776 (D.C. 1939).* Thus, discovery is authorized for any information which is relevant.  See *FedRCivP26(b)(1); British International Insurance Company, Ltd. v Sequros La Republica, S.A., supra at 589.*  The term "relevant" does not necessarily mean admissible since information is relevant if it is reasonably calculated to lead to the discovery of admissible evidence.  See *FedRCivP26(b)(1); British International Insurance Company, Ltd. v Sequros La Republica, S.A., supra at 589.*

D&T availed itself of these provisions in issuing the Subpoenas as an attempt to collect the Judgment.  This is authorized under the Federal Rules of Civil Procedure as set forth above.  There is no basis to quash the Subpoenas nor for the Firm or Salem to refuse to appear and comply with the Subpoenas.  Further, applying the Federal Rules of Civil Procedure to the Objection, it is clear that the Firm and Salem have failed to comply with the Federal Rules of Civil Procedure.

First, there is no representation that the Firm contacted D&T to try and resolve the issues without court involvement.  See *FedRCivP 37*[5].  There is no such

---

[5]*FedRCivP 37* provides in pertinent part,
The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

representation because it did not occur.  Second the other grounds asserted by the Firm and Salem are without merit.

### The Subpoenas are not unreasonably cumulative or duplicative

The first basis for the Objection is that the Subpoenas request information that is unreasonably cumulative or duplicative, or that can be obtained from other sources that are more convenient, less burdensome, or less expensive pursuant to *FedR.CivP 26(b)(2)*.  However, this is not a basis to object to the Subpoenas, but rather to request a protective order, something neither the Firm or Salem have requested.

It should first be noted that Salem is a former officer of GuideStar, its former president and chief executive officer, and by his own admission he was a consultant for the corporation after it was acquired by Maven Corporation[6]. As such, he is in a unique position to testify concerning GuideStar's operations, assets, and financial dealings. As the Court in *Caisson Corporation v County West Building Corporation, supra*, reasoned,

> More significantly, it is clear that in an attempt to discover assets by which to satisfy its judgment, plaintiff is entitled to a very thorough examination of the judgment debtor. The judgment debtor is a corporation and the present deponent was and/or is an officer thereof who may be deposed in that capacity. Moreover, in examining such officer-deponent, the court believes that the judgment debtor, through the officer deponent, can certainly be asked about the entities with whom the judgment debtor had and has financial relationships, and, in turn, the relationship of those entities with others especially if that relationship comes full circle one way or another.

See *Caisson Corporation v County West Building Corporation, supra at 335*. D&T is entitled to examine Salem in a discover proceeding such as this one to collect its judgment. Conclusory assertions without supporting evidence that Salem cannot contribute to this discovery are insufficient to justify quashing the Subpoenas or refusing to appear. The deposition and documents themselves would demonstrate the extent of Salem's knowledge regarding GuideStar; to prevent a deposition through an unverified assertion of how the deponent would testify is improper and unprecedented in federal procedure.    Neither the Firm nor Salem have

---

[6]See paragraph number two (2) of the Affidavit of George Salem attached to the Objection as Exhibit "C".

established that the Subpoenas are unreasonably cumulative or duplicative. Simply asserting that there are other sources from which information can be derived (which is inaccurate as set forth in the preceding paragraph) does not establish an request as unreasonably cumulative or duplicative. This is especially true when there is no showing that the other sources from which it is asserted this information can be obtained is less burdensome, expensive or convenient. The Firm has not and cannot carry this burden to thwart D&T's proper discovery requests.

**The Subpoenas request relevant information**

The Firm and Salem next assert that the documents maintained by the Firm are not relevant to the collection by D&T of the Judgment. Information is relevant if it is reasonably calculated to lead to the discovery of admissible evidence. See *FedRCivP 26(b)(1)*. In this regard, the documents identified by the Firm in paragraph six (6) of the Objection are clearly relevant. This is especially true in light of the broad scope and freedom given a judgment creditor in discovery to collect a judgment. See *British International Insurance Company, Ltd. v Sequros La Republica, S.A., supra at 589; Caisson Corporation v County West Building Corporation, supra at 334.*

Financial records are clearly reasonably calculated to lead to the discovery of admissible evidence regarding assets and/or operations by GuideStar. Likewise, electronic mails regarding Salem's resignation from GuideStar and a letter to Preferred Health Alliance regarding the delivery of mail may contain information

regarding operations, entities/individuals with which GuideStar has or is doing business or other such information. This is clearly relevant. See *Caisson Corporation v County West Building Corporation, supra at 335 (discovery of entities with whom the judgment debtor had and has financial relationships is appropriate).* The Firm is not the arbitrator of what is relevant to D&T in its collection proceedings.

**The Subpoenas are not overly broad**

The Firm and Salem assert that the Subpoenas are overly broad because any documents are related to Salem's position as a former officer of GuideStar without being limited in time and scope. However, this ignores the definition of relevance under the Federal Rules of Civil Procedure. The information does not have to be admissible evidence if it is reasonably calculated to lead to the discovery of admissible evidence.

The ten categories of documents set forth in the Subpoenas are clearly designed to discover the operations, financial dealings, and transactions of GuideStar the involvement of Salem in the operations, and financial dealings and transactions of GuideStar. This is important in locating assets (even if such have been transferred) as well as evaluating the knowledge and credibility of Salem. This is clearly relevant, not overbroad and discoverable.

**The Subpoenas do not request information protected by the attorney client privilege and/or the work product doctrine**

The remainder of the Objection asserts various claims that the Subpoenas request information protected by the attorney client privilege and/or the work

product doctrine.  As set forth above, the information requested is clearly relevant to the collection of the Judgment.  Further, "[a]n attorney may not be used to insulate records an individual has previously prepared for his business" See *United States v Puckett, 692 F.2d 663, 670 (10th Cir. 1972); In re Grand Jury Proceedings, 601 F.2d 162, 171 ftnt 7 (5th Cir. 1979)*.

A review of the documents requested by the Subpoenas shows that they do not involve work product or attorney client communications.  Only one category of the documents identified by the Firm only as responsive to the Subpoenas superficially fall within the attorney client privilege (correspondence between Salem and the Firm regarding litigation in which the Firm represented Salem).  Assuming those documents do not involve D&T, assets of GuideStar, Maven Corporation or Maven Funding Corporation, D&T would not request production of those documents.

As to the remaining documents, on their face they are not protected by the attorney client privilege and/or work product doctrine.  Financial records of GuideStar are not confidential communications with an attorney relating to the representation of GuideStar (or Salem for that matter).  Electronic mails Salem wrote resigning from GuideStar are not confidential communications with an attorney nor is a letter to Preferred Health Alliance from Salem.  Neither category of documents constitutes information related to the representation of a client.  These are business

communications between Salem and other parties which happen to be in the possession of the Firm. This does not prevent their disclosure.

## CONCLUSION

Based upon the foregoing, D&T respectfully requests this Court to deny the Objection; award D&T its costs including a reasonable attorneys fee in defending the Objection and prosecuting the Motion to Compel; order that the Firm and Salem appear for deposition and produce the requested documents; and grant such additional and further relief as is just and equitable.

Respectfully submitted,

s/
Charles R. Johanson III
ASB-5545-S82C
Engel, Hairston & Johanson
109 North 20th Street
Birmingham, Alabama 35202

Mark C. Brodeur, Texas Bar #03052020
The Brodeur Law Firm, P.L.L.C.
17440 North Dallas Parkway, Suite 262
Dallas, Texas 75287
Telephone: (972)612-1660
Email: BrodRein@aol.com

and

J. John Hager, OBA #10831
The Law Office of J. John Hager, P.C.
3233 East Memorial Road, Suite 101
Edmond, Oklahoma 73013
Telephone: (405) 607-2267
Email: john.hager@coxinet.net

Attorneys for D&T Consulting, Inc.

Page 11

## CERTIFICATE OF SERVICE

This is to certify that on this 14th day of August, 2006, a true and correct copy of the above and foregoing was sent by facsimile, sent by electronic mail, or mailed, postage prepaid, to the following named counsel of record, to-wit:

J. Mark White (ASB-5029-H66J)
Augusta S. Dowd (ASB-5274-D58A)
Of Counsel: White, Arnold, Andrews & Dowd, P.C.
2025 Third Avenue North, Suite 600
Birmingham, Alabama 35203
Telephone: (205) 323-1888
Facsimile: (205) 323-8907
Email: mwhite@waadlaw.com
Email: adowd@waadlaw.com

Attorneys for White, Arnold, Andrews & Dowd, P.C. and George B. Salem

s/
Charles R. Johanson III

FILED

2006 JUN -8  PM 1: 56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA**

|  |  |  |
|---|---|---|
| **D&T CONSULTING, INC.,** | ) | |
| | ) | CV-06-C-1120-S |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **West. Dist. OK 5:03-cv-0371** |
| | ) | |
| **GUIDESTAR HEALTH SYSTEM, INC.,** | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| **Defendant.** | ) | |

**OBJECTION AND MOTION TO QUASH SUBPOENAS DUCES TECUM TO
WHITE ARNOLD ANDREWS & DOWD PC AND TO GEORGE B. SALEM**

**COMES NOW** the law firm of White Arnold Andrews & Dowd PC ("WAAD"), on its

own behalf and on behalf of its client, George B. Salem ("Salem"), and pursuant to Rule 45 of

the Federal Rules of Civil Procedure, objects to and hereby moves this Court to quash the

subpoenas duces tecum served upon this firm and its client by J. John Hager, Jr., counsel for

D&T Consulting, Inc. ("D&T"), and plaintiff in the above-styled cause. For grounds, WAAD

and Salem state as follows:

1.      On May 26, 2006, D&T issued a subpoena duces tecum to Salem seeking records

(1) that contained financial and asset information related to Guidestar Health Systems, Inc.

("Guidestar"); (2) that were related to the acquisition of Guidestar by Maven Corporation and/or

Maven Funding Corporation ("Maven"); (3) that were related to any ownership or officer

position of Salem in Guidestar; and (4) that contained any reference to D&T. The subpoena is

attached hereto as Exhibit A. The specifics of the subpoena are set forth in more detail below.

2.      On the same date, D&T issued an identical subpoena duces tecum to WAAD.

The subpoena is attached hereto as Exhibit B.  WAAD had represented Salem in the matter of

*Pavestone Company, LP v. Guidestar Health Systems, Inc. et al.*, Jefferson County Circuit Court, Civil Action No. 05-744-RSV, a separate state court matter wherein Salem was a co-defendant of Guidestar. The state court action was subsequently settled.

3.      WAAD did not represent Guidestar or any other defendant, other than Salem, in the *Pavestone* matter. WAAD has never represented Guidestar in any matter.

4.      The underlying matter which has resulted in the issuance of these subpoenas lies in the United States District Court for the Western District of Oklahoma. *D&T Consulting, Inc. v. Guidestar Health Systems, Inc.*, Case No. Civ-03-1373-T. Salem was not a party to that action. The subpoenas duces tecum are technically post-judgment subpoenas issued at least four months after D&T obtained summary judgment. However, upon information and belief, D&T is using these subpoenas as a means to investigate the potential for litigation against Salem and others who were not named in D&T's original case against Guidestar. Many months after obtaining summary judgment, D&T still has not been able to track down the financial resources of Guidestar in order to collect on the judgment. As a result, D&T is now looking at other sources of funding to collect its judgment. Like D&T, Salem has a judgment against Guidestar which, to date, Salem has been unable to collect. The Affidavit of George Salem is attached hereto as Exhibit C.

5.      On or about March 31, 2006, WAAD advised counsel for D&T that Salem was not in possession of any documents related to the assets of Guidestar or Maven. The letter from WAAD attorney Augusta S. Dowd to Mark C. Brodeur is attached hereto as Exhibit D. In the letter, WAAD counsel referred D&T to Maven's owner, Prasad V. Potluri, and Chief Financial Officer, Robert Brown, and provided D&T with the name and address of Mr. Brown's counsel.

2

6.     In compliance with to Rule 45(d), WAAD submits that the documents in its

possession that may be remotely responsive to the subpoena, but which are protected from

disclosure are:

    a.     Financial records obtained pursuant to a subpoena issued to AmSouth
            Bank;

    b.     Written communications between Salem and WAAD during the course of
            the *Pavestone* litigation;

    c.     Four E-mails Salem provided to WAAD related to Salem's resignation
            from Guidestar; and

    d.     One letter from Salem to Preferred Health Alliance directing Guidestar-
            related mail be sent to Guidestar's attorney.

7.     As is patently clear, this information is not discoverable from WAAD and Salem

for several reasons.

8.     First, WAAD and Salem, as outlined above, have already furnished D&T with the

sources from which the information it seeks may be obtained. Even discovery requests that are

otherwise reasonable "may also be limited for the following reasons: '(i) the discovery sought is

unreasonably cumulative or duplicative, or is obtainable from some other source that is more

convenient, less burdensome, or less expensive.' Fed.R.Civ.P. 26(b)(2)." *Auto-Owners Ins. Co.*

*v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 430 (D. Fla. 2005).

9.     Second, the disclosure of such information is not relevant in that it will provide no

useful information concerning the judgment debtor's assets. "The purpose of post-judgment

discovery is to learn information relevant to the existence or transfer of the judgment debtor's

assets." *British Int'l Ins. Co., LTD. v. Seguros La Republica*, 200 F.R.D. 586, 589 (D. Tex.

2000). Salem cannot even collect on his on judgment. In *Strick Corp. v. Thai Teak Products*

*Co.*, 493 F. Supp. 1210 (D. Pa. 1980), the court observed:

> "[I]n *Magnaleasing Inc. v. Staten Island Mall*, 76 F.R.D. 559 (S.D.N.Y.1977), a
> judgment creditor sought discovery of a settlement agreement between judgment
> debtors and a third party. The court noted that discovery of assets of a nonparty is
> not generally contemplated by Rule 69(a) n14 but discovery would be permitted
> where the relationship between the judgment debtor and the nonparty is sufficient
> to raise a reasonable doubt about the bona fides of the transfer of assets. In the
> present case, the only connection with the judgment debtor is the alleged alter ego
> relationship."

*Strick Corp.*, 493 F.Supp. at 1218 [footnote omitted]. Here, there is no transfer of assets

involved between Salem and any judgment debtor. Any prior relationship between Salem and

any judgment debtor is so attenuated and stale as to be inconsequential and irrelevant.

10.     The federal rules of discovery "do not ... give to a judgment creditor any right to

subject to the judgment the property of persons other than the judgment debtor, nor to require the

disclosure of assets of persons other than the judgment debtor." *Burak v. Scott*, 29 F. Supp. 775,

776 (D.D.C. 1939).

11.     Third, the subpoenas are overly broad as to Salem and WAAD in that they seek

any and all documents related to Salem's position as a former officer of Guidestar. Salem was

never an officer or agent of Maven. See Exhibit C. Not all of the actions Salem took as an

officer of Guidestar involved the matters that appear to be at issue in the subpoenas.

12.     The subpoenas duces tecum are also overly broad in that they are not limited as to

time and scope. At issue is the current state of Guidestar's/Maven's assets and liabilities. Salem

resigned as an officer of Guidestar in April of 2004, and ceased employment with Guidestar

shortly thereafter and can provide no information as to the company's financial condition. Any

information WAAD may have is protected work product generated as a part of Salem's efforts to collect his own judgment against Guidestar.

13.    Fourth, as counsel for D&T is or should be aware, documents in WAAD's possession obtained as trial preparation/post judgment materials pursuant to WAAD's representation of Salem in the *Pavestone* matter are privileged and protected from disclosure. "[T]he scope of discovery under the current version of Fed.R.Civ.P. 26(b)(1) extends to any **non-privileged matter** which is relevant to the matter involved in the pending action even if not admissible itself if reasonably calculated to lead to such evidence." *British Int'l Ins. Co., LTD. v. Seguros La Republica*, 200 F.R.D. 586, 589 (D. Tex. 2000) (emphasis added).

14.    The subpoena seeks material in violation of Defendant's work product privilege. "The work product doctrine is an independent source of immunity from discovery, separate and distinct from the attorney-client privilege." In re Grand Jury, 106 F.R.D. 255, 257 (D.N.R. 1985). It is "broader than the attorney-client privilege; it protects materials prepared by the attorney, whether or not disclosed to the client, and it protects material prepared by agents for the attorney." In re Grand Jury Proceedings, 601 F.2d 162, 171 (5th Cir. 1979).

15.    Fifth, in addition, the subpoenas seek privileged information. Rule 1.6 of the Alabama Rules of Professional Responsibility prohibits disclosure of "information relating to representation of a client" absent authorization and waiver from each individual client.

"Rule 1.6. Confidentiality of information.

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b)

5

"(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

"(1) To prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

"(2) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client."

ARPC, R 1.6. This rule is absolute and does not "permit the lawyer to speculate whether particular information might be embarrassing or detrimental." Comment to ARPC, R 1.6. Obtaining a waiver of confidentiality from every client the attorneys involved in this case have represented over the past five years would be impossible.

16.    The subpoenas also violate the attorney-client privilege as codified in Ala.Code 1975, § 12-21-161. The attorney-client privilege, which originated in Roman and canon law, "is the oldest of the privileges for confidential communications known to the common law." Upjohn Company v. United States, 449 U.S. 383, 389 (1981).

17.    The disclosure of "information relating to representation of a client" disclosure is barred by the attorney-client privilege and by the work-product doctrine. See Comment to ARPC, R 1.6 ("The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics.").

18.    The information and documents sought by Plaintiffs contain and would reveal specific privileged information about and communications with this law firm's clients.

6

19.    And finally, the sixth reason for quashing the subpoenas duces tecum is, as stated above in ¶ 2, that they are being employed as a means to investigate the potential for litigation against Salem and others who were not named in D&T's original case against Guidestar. A court should deny discovery requests "if the information is sought for use in a different proceeding or context, *Econo-Car International, Inc. v. Antilles Car Rentals*, 61 F.R.D. 8 (D.V.I.1973)." *Midland-Ross Corp. v. United Steelworkers of America*, 83 F.R.D. 426, 427 (D. Pa. 1979).

## Conclusion

WHEREFORE, for any or all of these reasons, WAAD and Salem object to the subpoenas duces tecum issued by D&T and respectfully request the Court to quash the subpoenas. WAAD, on behalf of itself and Salem, requests oral argument on this Motion.

J. Mark White (ASB-5029-H66J)
Augusta S. Dowd (ASB-5274-D58A)

**OF COUNSEL:**

**WHITE ARNOLD ANDREWS
  & DOWD PC**
2025 Third Avenue North
Suite 600
Birmingham, Alabama 35203
Tel:    (205) 323-1888
Fax:    (205) 323-8907
E-Mail: mwhite@waadlaw.com
E-Mail: adowd@waadlaw.com

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on the __8th__ day of June, 2006, I filed the foregoing with the Clerk of the Court. I further certify that I have served a copy of the foregoing pleading upon the following counsel of record by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this same date:

J. John Hager, Jr.
J. John Hager, P.C.
3233 East Memorial Road
Suite 101
Edmond, OK 73013

Of Counsel



EXHIBIT
**A**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| D&T CONSULTING, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. Civ-03-1373-T |
| | ) |
| GUIDESTAR HEALTH SYSTEM, INC., | ) |
| Defendant. | ) |

### SUBPOENA DUCES TECUM

TO:  George B. Salem
     Proxsys
     1500 Urban Center Drive, Suite 500
     Birmingham, Alabama 35242
           or
     3539 Kingshill Road
     Birmingham, Alabama 35223-1470

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case and produce the documents[1] identified on the attached Exhibit "1" and not depart without leave.

| **PLACE**<br>Holiday Inn Birmingham-Airport<br>Executive Board Room<br>5000 Richard Arrington Boulevard<br>Birmingham, Alabama 35212 | **TIME**<br>June 14, 2006 at 9:00 a.m. |
|---|---|
| **ISSUING OFFICER'S SIGNATURE AND TITLE**<br>Attorney for Plaintiff, D&T Consulting, Inc. | **DATE**<br>May 26, 2006 |
| **ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER**<br>J. John Hager, Jr., The Law Office of J. John Hager, P.C., 3233 East Memorial Road, Suite 101, Edmond, Oklahoma 73013, (405) 607-2267. | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

---

[1]

As used in this Subpoena Duces Tecum, the term "documents" shall, unless otherwise indicated, mean and include any letters, correspondence, telegram, noted, reports, memorandums, records, financial statements, financial records, minutes, contracts, memorandum of telephone or personal conversations or conferences, intra-company communications, microfilms tape recordings, bulletins, studies, analyses, notices, computer runs and any codes necessary to comprehend such runs, electronic mail, books, pamphlets, lists, brochures, periodicals, charts, graphs, indexes, work papers, tax returns, and any other written, printed or typed records or graphic matter of any nature, however produced or reproduced, including copies and drafts of such documents (excepting those documents prepared by legal counsel solely for the purpose of this litigation). The term "all documents" shall include all documents in the possession, custody or control of the party, his agents, attorneys or representatives, prepared or made at any time.

# PROOF OF SERVICE

| SERVED | Date | | Place |
|---|---|---|---|

| Served on: (Print Name) | | Manner of Service |
|---|---|---|

| Served by: (Print Name) | | Title |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

Date

Signature of Server

Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT "1"**
**SUBPOENA DUCES TECUM TO GEORGE SALEM**
**D&T CONSULTING, INC. v GUIDESTAR HEALTH SYSTEM, INC.**
**CASE NO CIV-03-1373 T**

1) all documents listing or relating to the assets of Guidestar Health Systems, Inc.

(2) all documents listing or relating to the liabilities of Guidestar Health Systems, Inc.

(3) all documents listing or relating to the assets of Maven Corporation or Maven Funding Corporation

(4) all documents listing or relating to the liabilities of Maven Corporation or Maven Funding Corporation

(5) all documents relating to the purchase by Maven Corporation or Maven Funding Corporation of Guidestar Health Systems, Inc., including but not limited to the agreement for the purchase of Guidestar Health Systems, Inc.

(6) all documents relating to the ownership or officer positions of George Salem in Guidestar Health Systems, Inc., Maven Corporation or Maven Funding Corporation

(7) all correspondence relating to D&T Consulting, Inc.

(8) all minutes, documents or notes of Guidestar Health Systems, Inc. or officers, directors or employees of Guidestar Health Systems, Inc. relating to or referring to D&T Consulting, Inc., litigation with D&T Consulting, Inc. or any judgment or liability relating to D&T Consulting, Inc.

(9) all due diligence documentation relating to the assets, liabilities or net worth of Maven Corporation or Maven Funding Corporation.

(10) all documents listing or relating to the assets and/or liabilities assumed by Maven Corporation or Maven Funding Corporation in the purchase of Guidestar Health Systems, Inc.

THE LAW OFFICE OF J. JOHN HAGER P.C.
PH. 405-607-2267
3233 EAST MEMORIAL RD., STE. 101
EDMOND, OK 73013

1164

DATE May 24, 2006

PAY TO THE ORDER OF

DOLLARS

KIRKPATRICK BANK
P.O. BOX 2850, EDMOND, OK 73083 · (405) 341-8222

FOR WITNESS FEE AND MILEAGE

THE LAW OFFICE OF J. JOHN HAGER P.C.
PH. 405-607-2267
3233 EAST MEMORIAL RD., STE. 101
EDMOND, OK 73013

1165

DATE May 24, 2006

PAY TO THE ORDER OF

DOLLARS

KIRKPATRICK BANK
P.O. BOX 2850, EDMOND, OK 73083 · (405) 311-8222

FOR WITNESS FEE AND MILEAGE



## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHER DISTRICT OF ALABAMA

D&T CONSULTING, INC.,                     )
                                          )
    Plaintiff,                        )
                                          )
v.                                        ) Case No. Civ-03-1373-T
                                          )
GUIDESTAR HEALTH SYSTEM, INC.,            )
                                          )
    Defendant.                        )

### SUBPOENA DUCES TECUM

TO:   Document custodian
      White, Arnold, Andrews & Dowd
      2025 Third Avenue North
      Birmingham, Alabama 35203

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case and produce the documents[1] identified on the attached Exhibit "1" and not depart without leave.

| **PLACE**<br>Holiday Inn Birmingham-Airport<br>Executive Board Room<br>5000 Richard Arrington Boulevard<br>Birmingham, Alabama 35212 | **TIME**<br>June 14, 2006, at<br>9:00 a.m. |
|---|---|
| **ISSUING OFFICER'S SIGNATURE AND TITLE**<br>Attorney for Plaintiff, D&T Consulting, Inc. | **DATE**<br>May 26, 2006 |
| **ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER**<br>J. John Hager, Jr., The Law Office of J. John Hager, P.C., 3233 East Memorial Road, Suite 101, Edmond, Oklahoma 73013, (405) 607-2267. | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

---

[1]

As used in this Subpoena Duces Tecum, the term "documents" shall, unless otherwise indicated, mean and include any letters, correspondence, telegram, noted, reports, memorandums, records, financial statements, financial records, minutes, contracts, memorandum of telephone or personal conversations or conferences, intra-company communications, microfilms tape recordings, bulletins, studies, analyses, notices, computer runs and any codes necessary to comprehend such runs, electronic mail, books, pamphlets, lists, brochures, periodicals, charts, graphs, indexes, work papers, tax returns, and any other written, printed or typed records or graphic matter of any nature, however produced or reproduced, including copies and drafts of such documents (excepting those documents prepared by legal counsel solely for the purpose of this litigation). The term "all documents" shall include all documents in the possession, custody or control of the party, his agents, attorneys or representatives, prepared or made at any time.

## PROOF OF SERVICE

| **SERVED** | Date | Place |
|---|---|---|

| Served on: (Print Name) | Manner of Service |
|---|---|

| Served by: (Print Name) | Title |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

Date

Signature of Server

Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT "1"
## SUBPOENA DUCES TECUM
## D&T CONSULTING, INC. v GUIDESTAR HEALTH SYSTEM, INC.
## CASE NO CIV-03-1373 T

(1) all documents listing or relating to the assets of Guidestar Health Systems, Inc.

(2) all documents listing or relating to the liabilities of Guidestar Health Systems, Inc.

(3) all documents listing or relating to the assets of Maven Corporation or Maven Funding Corporation

(4) all documents listing or relating to the liabilities of Maven Corporation or Maven Funding Corporation

(5) all documents relating to the purchase by Maven Corporation or Maven Funding Corporation of Guidestar Health Systems, Inc., including but not limited to the agreement for the purchase of Guidestar Health Systems, Inc.

(6) all documents relating to the ownership or officer positions of George Salem in Guidestar Health Systems, Inc., Maven Corporation or Maven Funding Corporation

(7) all correspondence relating to D&T Consulting, Inc.

(8) all minutes, documents or notes of Guidestar Health Systems, Inc. or officers, directors or employees of Guidestar Health Systems, Inc. relating to or referring to D&T Consulting, Inc., litigation with D&T Consulting, Inc. or any judgment or liability relating to D&T Consulting, Inc.

(9) all due diligence documentation relating to the assets, liabilities or net worth of Maven Corporation or Maven Funding Corporation.

(10) all documents listing or relating to the assets and/or liabilities assumed by Maven Corporation or Maven Funding Corporation in the purchase of Guidestar Health Systems, Inc.



EXHIBIT

C

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA

D&T CONSULTING, INC.,                    )
                                         )
  Plaintiff,                   )   **West. Dist. OK 5:03-cv-0371**
                                         )
v.                                       )
                                         )
GUIDESTAR HEALTH SYSTEM, INC., )
                                         )
  Defendant.

### AFFIDAVIT OF GEORGE B. SALEM

  1. My name is George Salem ("Salem"). I was a defendant in the case

brought by Pavestone Company, LP ("Pavestone"), *Pavestone Company, LP v. Guidestar

Health Systems, Inc. et al.*, Civil Action No. 05-744-RSV. Guidestar Health Systems,

Inc. ("Guidestar") was a co-defendant in that case.

  2. On April 29, 2003, Maven Corporation acquired Guidestar and Guidestar

became a wholly owned subsidiary of Maven. Robert Brown was placed by Prasad

Potluri in the position of Chief Financial Officer of Guidestar immediately following the

acquisition by Maven. After the acquisition, my role was severely limited to that of a

consultant.

  3. I filed a cross-claim against Guidestar on November 14, 2005.

  4. On February 16, 2006, I received a default judgment against Guidestar in

the amount of Thirty-Five Thousand Dollars and No/100 ($35,000.00). To date, I have

been unable to collect this judgment against Guidestar.

  5. On our about May 30, 2006, I received a Subpoena Duces Tecum in the

case of *D&T Consulting, Inc., v. Guidestar Health System, Inc.*, Case No. Civ-03-1373-t.

I have reviewed the list of documents requested in Exhibit "1" to the subpoena and have

determined that I do not have any documents in my possession that are responsive to this subpoena. To the extent I had any documents related to Guidestar, or its successor, Maven Corporation, I turned those over to my attorneys at White Arnold Andrews & Dowd PC for use in my defense in the litigation filed by Pavestone.

GEORGE B. SALEM

Sworn to and subscribed before me
this 8th day of June, 2006.

NOTARY PUBLIC
My Commission Expires: 6/24/08

# WHITE ARNOLD ANDREWS & DOWD P.C.

ATTORNEYS AT LAW

GEORGE W. ANDREWS, III
STEPHEN R. ARNOLD
WILLIAM M. BOWEN, JR.†
JONATHAN CROSS
REBECCA G. DEPALMA*
AUGUSTA S. DOWD
LINDA G. FLIPPO
GREGORY H. HAWLEY*
JULIA SMEDS STEWART*
LARA SYKES WALTERS
J. MARK WHITE

*ALSO LICENSED IN
DISTRICT OF COLUMBIA

†RETIRED JUDGE
ALABAMA COURT OF CRIMINAL
APPEALS

OF COUNSEL:
RENEAU P. ALMON
RETIRED JUSTICE
SUPREME COURT OF ALABAMA



**EXHIBIT**
**D**

March 31, 2006

## VIA FACSIMILE – (214) 210-2902

Mark C. Brodeur, Esq.
Brodeur Law Firm, P.L.L.C.
3102 ~~1302~~ Oak Lawn Avenue
Suite 700
Dallas, TX 75219

  Re: D&T Consulting, Inc. v. GuideStar Health Systems, Inc.
     Unites States District Court, Western District of Oklahoma

Dear Mr. Brodeur:

  This firm represents George B. Salem. Mr. Salem has provided us with a copy of your letter of March 20, 2006. We appreciate the courtesy of your letter before you caused a subpoena to be issued.

  I invite you to give me a call to discuss your letter and your post judgment recovery efforts against Guidestar Health Systems, Inc. I will tell you that you are not the only entity or individual with a judgment against Guidestar. In fact, Mr. Salem also has a judgment against Guidestar for which we have no expectation of recovering any money or tangible assets. The most knowledgeable individuals on issues pertaining to Guidestar are the owner of Maven Corporation, Prasad V. Potluri, and the CFO of Guidestar who was put in place by Polturi after the acquisition of the company by Maven. Mr. Brown is represented by the following counsel: Gary Marek, Esq., 7008 Normandy Drive, Mount Laurel, New Jersey 08054.

  When Mr. Salem left Guidestar, he did not take company records with him and he does not have company records in his possession. Mr. Brown would be your best source of information about company records, but I do understand that at least some records were put in off site storage here in Birmingham. The last I heard, Guidestar was not paying the storage bill and I do not know the ultimate resolution of that problem.

  Thank you for the courtesy of your initial letter. I ook forward to hearing from you.

Mark C. Brodeur, Esq.
March 31, 2006
Page2

Yours very truly,

Augusta S. Dowd

ASD/hsm

```
Confirmation Report - Memory Send

                                    Time      : Mar-31-2006  10:51am
                                    Tel line  :
                                    Name      :


Job number            :   164

Date                  :   Mar-31 10:47am

To                    :   12142102902

Document pages        :   003

Start time            :   Mar-31 10:47am

End time              :   Mar-31 10:51am

Pages sent            :   003

Status                :   OK

Job number    : 164           *** SEND SUCCESSFUL  ***
```

**WHITE ARNOLD ANDREWS & DOWD P.C.**
**2025 3rd AVENUE NORTH - 600 MASSEY BUILDING**
**BIRMINGHAM, ALABAMA 35203**

**FACSIMILE NUMBER:**    **(205) 323-8907**
**TELEPHONE NUMBER:**    **(205) 323-1888**

**FACSIMILE TRANSMISSION COVER SHEET**

**March 31, 2006**

**FROM:**    **Augusta S. Dowd, Esq.**

| TO: | FACSIMILE NUMBER: |
|---|---|
| Mark C. Brodeur, Esq. | (214) 210-2902 |
| | |
| *Re:* **D&T Consulting, Inc. v. GuideStar Health Systems, Inc.** | |

**TOTAL PAGES INCLUDING THIS PAGE: _3___**

**ORIGINAL DOCUMENT TO BE SENT VIA U.S. MAIL: _X_ YES _____NO**

**If you have difficulty receiving this transmission, please call (205) 323-1888.**

**CONFIDENTIALITY NOTICE**

The documents accompanying this cover sheet contain information from the law firm of
White Arnold Andrews & Dowd P.C. The information is confidential and is intended only
for the use of the individual or entity to which it is addressed. The information may be
subject to the attorney/client privilege. If you have received this communication in error,
please notify us immediately by telephone and return the original message to us at the
above address via U.S. Mail. We will reimburse your reasonable costs. Thank you.