**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 3:06-cv-01113-WKW-csc |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO MEMORANDUM OPINION AND ORDER**

In support of their Objections to Memorandum Opinion and Order (DE 195) and in reply to the arguments of Defendants Macon County Greyhound Park, Inc., and Milton McGregor (hereinafter "VictoryLand") in their Response (DE 202), the Plaintiffs state as follows:

1. As pointed out in the Plaintiffs' Objections, the magistrate judge denied the Plaintiffs' request for two reasons. First, he stated that evidence of economic motive is irrelevant in RICO cases, citing *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 114 S. Ct. 798 (1994). VictoryLand does not even attempt to defend the magistrate judge's reliance on *Scheidler*. Second, the magistrate judge stated that "no reasonable jury . . . could fail to know that VictoryLand is highly profitable" and that the requested financial information "merely would quantify the magnitude of VictoryLand's profitability." (DE 187 at 10.)

2. While VictoryLand does attempt to defend the magistrate judge's second reason (DE 202 at 14-15), its attempt is not persuasive. The magistrate judge cited no authority that allows discovery to be curtailed based on speculative assumptions about the jury's prior

knowledge, and Defendant VictoryLand cites none. In fact, the jury is entitled to know the magnitude of VictoryLand's profitability. *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006);[1] *cf. United States v. Jannotti*, 673 F.2d 578, 599 (3d Cir. 1982) ("Certainly, the question of the generosity of the sums given must be viewed in relationship to the circumstances of the acceptors. What would be tempting to an office clerk would plainly not be enough to tempt a millionaire."). The magistrate judge's conclusion to the contrary was clearly erroneous and contrary to law.

3. Rather than defend the reasoning in the magistrate judge's order, then, VictoryLand argues that its financial information is not discoverable in this case because it is a trade secret and its disclosure would outweigh the Plaintiffs' need for the information. That argument is incorrect for several reasons.

4. First, while VictoryLand may believe that the rules and regulations do not grant Defendant Warren access to its financial information, Defendant Warren clearly disagrees.[2] That disagreement is not only evident from Warren's deposition in this case (DE 195 Ex. B at 320-25), it is also evident from Warren's deposition in *Macon County Investments, Inc. v. Warren*, 3:06-cv-224-WKW (M.D. Ala.). In that deposition, Warren clearly testified that he has access to VictoryLand's financial information:

[1] VictoryLand's attempted distinction of *CPT Medical* and *Garber* is not consistent with the reasoning in those cases. While both of those cases included claims for unjust enrichment, the courts concluded that the financial information was relevant to the RICO claims, not to the unjust enrichment claims, for precisely the reason that the financial information is relevant here: Because it demonstrates a financial motive.

[2] The failure of the rules and regulations to reflect Warren's intent is further evidence of Fred Gray Jr.'s corrupt intent in drafting those rules and regulations. (DE 194 at 20-24.)

> Q. Sheriff, do you have any knowledge of what monies or gross receipts have been received by the one qualified location, VictoryLand, since the implementation of your rules from December '03 to the present --?
> A. No.
> Q. -- August of '06?
> A. No.
> Q. Is that information reported to you?
> A. No, it's not.
> Q. Do you know who it is reported to?
> A. I have access to it.

(Ex. A at 288:7-19.) Indeed, Warren testified that he was "free to contact anybody there any time to get whatever." (*Id.* at 289:12-13.) Furthermore, Warren testified—as he did in his deposition in this case (DE 195 Ex. B at 321:4-9)—that he had received such information from VictoryLand in past years. (Ex. A at 289:14-290:9.) That information, which is freely available to a public official, is not a trade secret.[3]

5. Even if the information were a trade secret, however, VictoryLand has not shown that it would be harmed by its disclosure. Under the well-established framework for dealing with the discovery of trade secrets, the party resisting discovery has the burden of showing, with specific examples, the potential for significant harm:

> There is no absolute privilege for trade secrets and similar confidential information. *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325 (10th Cir. 1981). To resist discovery under Rule 26(c)(G), a party must first establish that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm. *Id.*, citing 8 C Wright & A. Miller, Federal Practice and Procedure § 2043 at 301 (1970); *see also Deford v. Schmid Products Co., a Div. of Schmid Laboratories, Inc.*, 120 F.R.D. 648, 653 (D. Md. 1987) (and cases cited therein). **Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position.** *Deford*, 120 F.R.D. at 653. **That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations or potential harm.** *Id.* If these requirements are met, the burden shifts to the party seeking discovery to

[3] Any expectation of privacy is further abrogated by Warren's ability to amend the rules and regulations. (DE 185 Ex. C § 17.)

> establish that the disclosure of trade secrets is relevant and necessary to the action. *Id.* When competitively sensitive information is involved, "[t]he court must balance the risk of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims." *In re Papst Licensing*, 2000 WL 136184 (E.D. 2000), citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

*Occidental Chem. Corp. v. La. Pub. Ser. Comm'n*, No. 06-894-JJB-DLD; 06-903-JJB-DLD, 2008 WL 566833 at *2 (M.D. La. Feb. 29, 2008) (emphasis added). In this case, VictoryLand has not provided "specific demonstrations of fact" supported by "concrete examples" of "significant harm." Rather, it has offered only a conclusory allegation that "'disclosure to a competitor [such as Lucky Palace] is more harmful than disclosure to a noncompetitor'" (DE 202 at 12 (citing *R & D Bus. Sys. v. Xerox Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993)).)[4]

6. While VictoryLand twice makes reference to political activities by the Plaintiffs (DE 202 at 12 & 21), it does not specifically demonstrate how such activities would cause it "significant harm." Indeed, throughout this litigation, VictoryLand has asserted that the Plaintiffs' remedy is through politics rather than through a lawsuit.[5] (DE 99 at 12:4-5 ("Their remedy, Your Honor, is at the ballot box and not at the jury box if they've got complaints with

---

[4] The *R & D Business Systems* Court relied on much more than a conclusory allegation of harm in granting a protective order:

> The evidence submitted at the hearing on the motions to quash describes several types of harm movants would suffer, the most serious of which was testified to by Richard Jensen. Mr. Jensen stated that his suppliers, many of which did business with Xerox, did not want their identities revealed, because Xerox would pressure them to not deal with businesses like the movants. Since the suppliers would not want to risk losing their business with Xerox, supply sources would be cut off and movants' businesses would fail. Mr. Jensen's testimony, the affidavits submitted and the offers of proof convince the Court that disclosure of the requested information to Xerox would cause substantial harm to the movants.

*R & D Bus. Sys.*, 152 F.R.D. at 197.

[5] The Plaintiffs, of course, disagree with this assertion, given that corruption is present and the key facts have been concealed from the voters.

the sheriff."); 15:9-16:5; 21:10-17; 29:20-23; 30:7-10.) In the absence of a specific demonstration of significant harm, VictoryLand has not even met its burden of showing the need for a protective order, much less of preventing discovery entirely.[6]

7. Nevertheless, in order to facilitate discovery, the Plaintiffs agreed, early in the discovery process, to a protective order. That order, which was drafted by counsel for VictoryLand, provides as follows:

> Documents and materials designated as "CONFIDENTIAL" shall be used solely for purposes of preparation and trial of this lawsuit, and shall not be disclosed by either party or its counsel or any person acting on behalf of or for either party or its counsel, for any purpose whatsoever other than the preparation and trial of this action and any appeal which may ensue.

(DE 105 at ¶ 3). That order should be more than sufficient to address any concerns that VictoryLand may have about disclosure. To the extent that VictoryLand is concerned that the Plaintiffs will disclose confidential information to non-parties,[7] this paragraph, which forbids

[6] Even if VictoryLand had attempted to make such a showing, it is doubtful that it could have. In *Prairie Island Indian Community v. Minnesota Department of Public Safety*, 658 N.W.2d 876 (Minn. App. 2003), tribal casinos attempted to prevent the disclosure of financial statements, which included "consolidated balance sheets, cash-flow statements, and profit-and-loss statements," claiming that such information would be valuable to competitors. *Id.* at 885. The court rejected that claim:

> Nothing in the statements breaks out or identifies the different types of food service, entertainment, hospitality, promotions, or gaming activity, let alone sets forth types of promotions or marketing strategies, wage rates, cost of any specific goods purchased, or fees for any category of consultant. One would have to have detailed additional financial information regarding historical operations to tease out the possible valuable uses recited in the respondents' affidavits. Although there are some details about financing operations, they are historic and do not disclose information that is not common knowledge to borrowers in our society.

*Id.* at 886.

[7] VictoryLand appears to suggest that the Plaintiffs would share confidential information with the Libra entities. There is no basis for this suggestion. While the Plaintiffs have shared some information with the Libra entities, they have not shared any confidential information, and

such disclosure, should assuage that concern. To the extent that VictoryLand is concerned that the Plaintiffs will disclose confidential information as part of a political campaign, this paragraph, which forbids such disclosure, should assuage that concern. Because VictoryLand has not shown any other specific concerns, the Plaintiffs cannot show how the protective order addresses those specific concerns. Suffice it to say that, to the extent that VictoryLand is generally concerned that "disclosure to a competitor such as Lucky Palace is more harmful than disclosure to a noncompetitor" (DE 202 at 12 (citation omitted)), this paragraph, which restricts the use of confidential information to the "preparation and trial of this lawsuit," should assuage any concerns that Lucky Palace will use such information to compete with VictoryLand.[8]

8. VictoryLand's arguments regarding shareholder information plow no new ground. Instead, the arguments are mere reiterations of the arguments that VictoryLand made in its Motion to Dismiss, which this Court denied. The fact that the magistrate judge found those arguments persuasive does not make the information sought undiscoverable. Rather, information regarding benefits bestowed on Fred Gray by VictoryLand is clearly relevant to the question of whether Fred Gray Jr. was bribed. *See, e.g.*, *United States v. Kemp,* 500 F.3d 257, 285 (3d Cir. 2007) (concluding as a legal matter, "that providing a loan to a public official (or his friends or family) that would have otherwise been unavailable . . . may constitute a bribe"); *United States v. Krilich*, 159 F.3d 1020, 1024 (7th Cir. 1998) (noting that rigging a hole-in-one contest so that the

they are well aware that sharing confidential information with the Libra entities would violate the protective order.

[8] While the Plaintiffs retain the right, under the protective order, to challenge VictoryLand's designation of information as "confidential" (DE 105 at ¶¶ 1 & 10), their retention of that right provides no basis for denying the requested discovery. If the Plaintiffs mount such a challenge, this Court will be able to assess, on a case-by-case basis, whether particular information is a protectable trade secret or not. If the information is, indeed, a protectable trade secret, then there will be no improper disclosure.

mayor's son would win $40,000 constituted bribing the mayor); *Buchanan County, Va. v. Blankenship*, 496 F. Supp. 2d 715, 722 (W.D. Va. 2007) (recognizing that clothing given to the official's wife constituted a bribe); *United States v. Frega*, 179 F.3d 793, 807 (9th Cir. 1999) (noting that under California law, it is the "intent in making the payment, whether to a judge or to a member of the judge's family," that is critical); *United States v. Biaggi*, 705 F. Supp. 790, 812 (S.D.N.Y. 1988) (finding bribery where stock was put in the name of a close friend of the public official).

9. Defendant Warren's only argument against the discovery of his financial information is that the Plaintiffs did not ask questions about his financial situation at his deposition. But, under the federal rules, the Plaintiffs are entitled to seek discovery by several different avenues. The lack of deposition questions does not provide a basis for denying document requests.

WHEREFORE, this Court should grant the relief requested in the Plaintiffs' Objections.

DATED: June 18, 2008.

        Respectfully submitted,

        s/ Robert K. Spotswood
        Robert K. Spotswood (SPO 001)
        Michael T. Sansbury (SAN 054)
        Grace L. Kipp (LON 049)
        SPOTSWOOD SANSOM & SANSBURY LLC
        940 Concord Center
        2100 Third Avenue North
        Birmingham, Alabama  35213
        TEL:   (205) 986-3620
        FAX:   (205) 986-3639
        E-mail:   rks@spotswoodllc.com
                  msansbury@spotswoodllc.com
                  gkipp@spotswoodllc.com

*Attorneys for the Plaintiff Charities*

s/ Stephen D. Heninger
Stephen D. Heninger (HEN 007)
W. Lewis Garrison Jr. (GAR 008)
Gayle L. Douglas (DOU 012)
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
TEL: (205) 326-3336
FAX: (205) 326-3332
E-mail: steve@hgdlawfirm.com
lewis@hgdlawfirm.com
gdouglas@hgdlawfirm.com

*Attorneys for Plaintiff Lucky Palace, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 18, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
Hill Hill Carter Franco Cole & Black P.C.
425 S. Perry Street
Montgomery, AL 36104
E-mail: jbolton@hillhillcarter.com
cspencer@hillhillcarter.com

James H. Anderson, Esq.
Ryan Wesley Shaw, Esq.
Beers, Anderson, Jackson, Patty, Van Heest & Fawal PC
P.O. Box 1988
Montgomery, AL 36102
E-mail: janderson@beersanderson.com
wshaw@beersanderson.com

Stephen D. Heninger
W. Lewis Garrison Jr.
Gayle L. Douglas
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
TEL: (205) 326-3336
FAX: (205) 326-3332
E-mail: steve@hgdlawfirm.com
lewis@hgdlawfirm.com
gdouglas@hgdlawfirm.com

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Khristi Doss Driver, Esq.
Haskell, Slaughter, Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
E-mail: wms@hsy.com
pcd@hsy.com
pt@hsy.com
kdd@hsy.com

Fred David Gray, Esq.
Fred David Gray Jr., Esq.
Gray, Langford, Sapp, McGowan, Gray, Gray & Nathanson PC
P.O. Box 830239
Tuskegee, AL 36083-0239
E-mail: fgray@glsmgn.com
jbibb@glsmgn.com
fgrayjr@glsmgn.com
thalia@glsmgn.com

John Mark White, Esq.
Augusta S. Dowd, Esq.
Rebecca DePalma, Esq.
White, Arnold, Andrews & Dowd
2025 Third Avenue, North
Suite 600
Birmingham, AL 35203
E-mail: mwhite@waadlaw.com
adowd@waadlaw.com
rdepalma@waadlaw.com

George L. Beck, Jr.
Capell Howard PC
PO Box 2069
Montgomery, AL 36102-2069
E-mail: glb@chlaw.com

Ronald G. Davenport, Esq.
Rushton, Stakely, Johnston & Garrett
PO Box 270
Montgomery, AL 36101
E-mail: rgd@rsjg.com

s/ Michael T. Sansbury
OF COUNSEL

# Exhibit A

LEGALINK, A MERRILL COMMUNICATIONS COMPANY
Court Reporting * Legal Videography * Trial Services

Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MACON COUNTY INVESTMENTS,)
)
INC.; REACH ONE, TEACH )
)
ONE OF AMERICA, INC., )
)
Plaintiffs, )
)
-vs- ) CASE NO.
)
SHERIFF DAVID WARREN, ) 3:06-CV-224-WKW
)
in his official capacity )
)
as the SHERIFF OF MACON )
)
COUNTY, ALABAMA, )
)
Defendant. )

STIPULATIONS

IT IS STIPULATED AND AGREED, by and between the parties through their respective counsel, that the deposition of:

DAVID M. WARREN,

may be taken before Belinda S. Brewster, Commissioner and Notary Public for the State of Alabama at Large, on the 15th day of August, 2006, commencing at approximately 9:10 a.m., at the law offices of Thomas, Means, Gillis & Seay,

Page 2

P.C., 3121 Zelda Court, Montgomery, Alabama; said deposition taken pursuant to the Federal Rules of Civil Procedure.

IT IS STIPULATED AND AGREED that it shall not be necessary for any objections to be made by counsel to any questions, except as to form or leading questions, and that counsel for the parties may make objections and assign grounds at the time of the trial, or at the time said deposition is offered in evidence, or prior thereto.

In accordance with Rule 5(d) of The Alabama Rules of Civil Procedure, as amended, effective May 15, 1988, I, Belinda S. Brewster, am hereby delivering to Kenneth L. Thomas the original transcript of the oral testimony of David M. Warren taken on the 15th day of August, 2006, along with exhibits.

Please be advised that this is the same and not retained by the Court Reporter, nor filed with the Court.

Page 3

APPEARANCES

KENNETH L. THOMAS and RAMADANAH SALAAM-JONES, Attorneys-at-Law, of the law firm of THOMAS, MEANS, GILLIS & SEAY, P.C., 3121 Zelda Court, Montgomery, Alabama 36106; appearing as counsel for the Plaintiffs.

GARY A. GRASSO, Attorney-at-Law, of the law firm of GRASSO DUNLEAVY, P.C., 7020 County Line Road, Suite 100, Burr Ridge, Illinois 60527; appearing as counsel for the Plaintiffs.

FRED D. GRAY and FRED D. GRAY, JR., Attorneys-at-Law, of the law firm of GRAY, LANGFORD, SAPP, McGOWAN, GRAY & NATHANSON, 104 W. Northside Street, Tuskegee, Alabama 36083; appearing as counsel for the Defendant.

ALSO PRESENT:

CHARLANNA SPENCER, SASSER, BOLTON, STIDMAN & SEFTON, P.C.

GREG A. CARR, SR., Attorney-at-Law

Page 4

APPEARANCES (Cont'd.)

REVEREND WALTER WALKER, REACH ONE, TEACH ONE

FRANK THOMAS, MACON COUNTY INVESTMENTS, INC.

1 (Pages 1 to 4)

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

INDEX

Witness: Page

DAVID M. WARREN

Examination by Mr. Thomas 8

Examination by Mr. Gray, Jr. 298

Further Examination by Mr. Thomas 316

---

EXHIBITS

| Plaintiffs' Exhibit No. | Description | Page |
|---|---|---|
| 1 | Amendment 744 Ratified | 13 |
| 2 | Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County (11 Pages) | 23 |
| 3 | 2006 Class B Bingo License, Tuskegee Human & Civil Rights & Multicultural Center (3 Pages) | 103 |

EXHIBITS (Cont'd.)

| Plaintiffs' Exhibit No. | Description | Page |
|---|---|---|
| 4 | First Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama (14 Pages) | 112 |
| 5 | 2006 Class B - Bingo License Franklin Volunteer Fire Department (3 Pages) | 175 |
| 6 | Second Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games In Macon County, Alabama (13 Pages) | 175 |
| 7 | News Release, A.G. King Announces Findings of his Gambling Review, 12-1-04 (4 Pages) | 185 |
| 8 | Various 2006 Class B - Bingo Licenses (155 Pages) | 219 |
| 9 | Bingo Package (55 Pages) | 228 |

EXHIBITS

| Plaintiffs' Exhibit No. | Description | Page |
|---|---|---|
| 10(A) | Proposed Entertainment Complex | 239 |
| 10(B) | Boundary Survey | 240 |
| 10(C) | WITHDRAWN | |
| 11 | Instructions for Bingo License Application (2 Pages) | 254 |
| 12 | Application for Bingo License Dated 12-8-03 (2 Pages) | 271 |
| 13 | WITHDRAWN | |
| 14 | Various Applications for Bingo Licenses (113 Pages) | 319 |
| 15 | Newspaper Article | 321 |

REPORTER'S NOTE: Plaintiff's Exhibit No. 15 not furnished to court reporter.

I, Belinda S. Brewster, as Commissioner and Notary Public for the State of Alabama at Large, certify that pursuant to Rule 30 of the Alabama Rules of Civil Procedure and the foregoing stipulations of counsel, there came before me at the law offices of Thomas, Means, Gillis & Seay, P.C., 3121 Zelda Court, Montgomery, Alabama 36106, on the 15th day of August, 2006, commencing at approximately 9:10 a.m., David M. Warren, witness in the above cause, for oral examination and the following proceedings were had:

COURT REPORTER: Usual stipulations?

MR. GRAY, JR.: Read and sign.

DAVID M. WARREN,

a witness of lawful age, having sworn or affirmed to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION BY MR. THOMAS:

Q. Sheriff, your attorney just advised that you wanted to read and sign. Do you

Is it your testimony now that you don't know whether or not Fred Gray, Jr. -- whether or not Fred Gray, Sr. is a partner, member or stockholder of VictoryLand?

MR. GRAY, JR.: You actually asked earlier whether he was an investor.

MR. THOMAS: Again, let me use his language.

THE WITNESS: I don't know whether he's an investor or not.

Q. (By Mr. Thomas) But the records that you have in your office will identify for us those partners, members or stockholders of VictoryLand?

A. Yes.

Q. And you'll produce that?

A. Yes.

Q. If it is established that Fred Gray or some other members of his firm are partners, members or stockholders of VictoryLand, do you see that as being any conflict with Fred Gray, Jr. advising and appearing and drafting rules and regulations to govern Class B bingo in Macon

County?

A. I don't -- I truly don't see that as a conflict.

Q. You do?

A. I don't --

Q. You don't see that as a conflict?

A. -- personally.

Q. Do you see how others could possibly --

A. I can see how others possibly would.

MR. THOMAS: Okay. If we could have five minutes. I'm at my conclusion.

(Whereupon, the taking of the deposition was recessed from approximately 4:44 p.m., to approximately 5:04 p.m., after which the following proceedings were had and done:)

Q. Sheriff, since the implementation of your rules in December of '03 to the present, what is your knowledge of the monies that have been passed on, given or awarded to the various charities?

A. I have no -- other than the amounts

that they get, we have not made any inquiries as to how they use those funds but that -- we're working on that right now.

Q. Well, what amount do you know of that the charities have received since the implementation of your rules in December of '03 to the present?

A. I don't know that amount exactly.

Q. Can you give the Court any guesstimate of what monies have been paid to the charities?

A. A guess?

Q. Yes.

MR. GRAY, JR.: No. He's not going to guess.

Q. (By Mr. Thomas) Well, you are the official who would know; am I correct?

A. I can -- I have that information.

Q. Well, do you have any objection to producing that to us?

A. No.

Q. And again, sheriff, that would be from the implementation of the rules in December

of '03.

MR. GARY: Why don't we -- so that the record is clear, whatever you want make an appropriate request for it.

MR. THOMAS: Yeah. We're going to do the wish list. Thank you, sheriff.

Q. Sheriff, do you have any knowledge of what monies or gross receipts have been received by the one qualified location, VictoryLand, since the implementation of your rules from December '03 to the present --?

A. No.

Q. -- August of '06?

A. No.

Q. Is that information reported to you?

A. No, it's not.

Q. Do you know who it is reported to?

A. I have access to it.

Q. Would you have any objections to producing that information that you --

MR. GRAY: We're going to object to producing anything. You just have to request it

LEGALINK, A MERRILL COMMUNICATIONS COMPANY
Court Reporting * Legal Videography * Trial Services

Page 289

by proper means.
Q. (By Mr. Thomas) Describe your access to this information, the gross receipts of the qualified location doing business as VictoryLand?
A. Through the business office.
Q. The business office?
A. Yes.
Q. Is there any particular official of VictoryLand who would be your primary contact person?
A. I'm free to contact anybody there any time to get whatever.
Q. And at any time have you ever done that?
MR. GRAY: Done what?
MR. THOMAS: Contacted an official at VictoryLand to find out what their gross receipts have been.
THE WITNESS: Early on.
Q. (By Mr. Thomas) About when?
A. It was early in the process.
Q. The rules were implemented in

Page 290

December of '03. When would it have been?
A. Maybe a few months after that.
Q. And at that time what were you told the gross receipts were?
A. I don't remember. It was -- I don't exactly remember.
Q. Well, was it in the thousands?
A. I'm pretty sure it was. It was by word of mouth.
Q. You didn't ask to see any records?
A. No.
Q. And since that time -- have you made any inquiries of the one qualified location since the implementation of your rules have been in force and effect of what their gross receipts have been?
A. No.
Q. Why not?
A. I have -- really, I'm not -- I'm not -- I'm not -- I just haven't. That's all.
Q. You have visited VictoryLand and you've seen the increase in people who have attended, and through your own rules and

Page 291

regulations you've increased the prize money up to $20 million.
And in your earlier testimony you were making references to you wanted to make sure that the charities were benefiting?
A. Yes.
Q. You never had the question of trying to find out how much money VictoryLand was making in gross revenues to come to mind?
A. No.
Q. Wouldn't it be a concern of yours to know that information?
A. Yes.
Q. And notwithstanding that concern, you haven't taken any efforts to ascertain that information?
A. Not at this time.
Q. What if VictoryLand is making billions of dollars and the charities are only getting hundreds? What would be your position on that?
A. Well --
Q. Excuse me?

Page 292

A. I'd be surprised.
Q. And concerned?
A. And concerned.
Q. And that would not be the spirit of your rules and regulations, would it, for the qualified location to make all of the money and the charities not receive anything?
That wasn't the spirit of your rules, was it?
A. Exactly.
Q. When do you plan to make that kind of inquiry to VictoryLand?
MR. GRAY: We object to the form.
Q. (By Mr. Thomas) It's noted. Go ahead and answer, sheriff.
MR. GRAY: It presupposes.
THE WITNESS: I intend to deal with that.
Q. (By Mr. Thomas) When?
A. In the very near future.
Q. It's important, isn't it? That's important information, isn't it?
A. Yes.

73 (Pages 289 to 292)

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO