# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| HOPE FOR FAMILIES & COMMUNITY SERVICES, INC., et al., | ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | Case No.: 3:06-cv-01113-WKW |
|  | ) |  |
| DAVID WARREN, in his Official Capacity as the SHERIFF OF MACON COUNTY, et al., | ) ) ) | **FILED UNDER SEAL** |
|  | ) |  |
| Defendants. | ) ) |  |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Robert K. Spotswood (SPO 001)
Michael T. Sansbury (SAN 054)
Grace L. Kipp (LON 049)
John S. P. Samford (SAM 012)
SPOTSWOOD SANSOM & SANSBURY LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama  35213
TEL:   (205) 986-3620
FAX:  (205) 986-3639
E-mail:     rks@spotswoodllc.com
             msansbury@spotswoodllc.com
             gkipp@spotswoodllc.com
             jsamford@spotswoodllc.com

*Attorneys for the Plaintiff Charities*

Stephen D. Heninger (HEN 007)
W. Lewis Garrison Jr. (GAR 008)
Gayle L. Douglas (DOU 012)
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
TEL:   (205) 326-3336
FAX:  (205) 326-3332
E-mail:     steve@hgdlawfirm.com
             lewis@hgdlawfirm.com
             gdouglas@hgdlawfirm.com

*Attorneys for Plaintiff Lucky Palace, LLC*

## INTRODUCTION

Defendant Warren's entire Response (and defense to the Plaintiffs' Equal Protection claims) seems to be built around his unsupported theory that entities seeking to participate in a "vice activity" are not entitled to equal protection. Defendant Warren also relies heavily on the fact that Lucky Palace did not have a "qualified facility" and argues that the Plaintiffs should not be allowed to challenge regulations which they did not meet. The Plaintiffs do not dispute the fact that a building does not exist. Rather, the Plaintiffs challenge the soundness of the existing-facility requirement and claim that the requirement violated their constitutional right to equal protection.[1]

The Plaintiffs have submitted undisputed evidence that the rules—including the existing-facility requirement—(1) are facially discriminatory; (2) had a disparate impact as a result of purposeful discrimination; and (3) were unequally administered. (DE 445 at 40-56.) Sheriff Warren either concedes many of the underlying elements of these claims or fails to address them entirely.[2] For these and other reasons set forth below, the Plaintiffs' Motion for Partial Summary Judgment with respect to the Equal Protection claims against Sheriff Warren is due to be granted

## THE PLAINTIFFS' REPLY TO SHERIFF WARREN'S UNDISPUTED FACTS

Sheriff Warren did not attempt to rebut any undisputed fact asserted in the Plaintiffs' Motion for Partial Summary Judgment (DE 445), and this Court should deem them admitted for

---

[1] The Plaintiffs also challenge the entire regulatory scheme which granted Defendant VictoryLand a monopoly. Defendant Warren does not respond to this challenge in his Response and does not attempt to offer a rational basis for granting the monopoly to VictoryLand.

[2] Although Sheriff Warren mentions the Plaintiffs' conspiracy claim in the heading on page 21 of his brief (DE 458 at 21), the Plaintiffs did not move for summary judgment on that claim. (DE 445 at 1.)

the purposes of summary judgment.  With regard to the list of undisputed facts that Sheriff Warren provided in his Response (DE 458 at 3-18), the Plaintiffs agree that the facts are largely undisputed but take issue with the following specific statements included as "facts" by Defendant Warren:

- The Plaintiffs dispute Defendant Warren's assertion that he "testified that the Rules and Regulations *he* drafted . . . were in fact his own as were the amendments thereto." (DE 458 ¶ 15.)  There is no dispute that VictoryLand attorney John Bolton drafted the rules and their subsequent amendments.  (SUF C26-30, SUF G2-4, SUF I2.)[3]  Furthermore, Defendant Warren testified that the rules and amendments were drafted by Fred Gray Jr.  (SUF K3.)

- The Plaintiffs dispute Defendant Warren's assertion that he "had no objection to Gray, Jr. contacting other persons in his work in drafting the Rules and Regulations because Warren could use his discretion and judgment in approving the Rules that were ultimately drafted." (DE 458 ¶ 19).  Defendant Warren's testimony on this point is somewhat unclear, but Warren did testify that Gray Jr. could consult others because he trusted Gray Jr. "to act in the best interest of the citizens of Macon County, in [Sheriff Warren's] best interest."  (WSUF 1.)

- The Plaintiffs dispute Defendant Warren's statement that "if an applicant is denied a license, then it has not met the requirements of the Rules and Regulations."  (DE 458 ¶

---

[3] Cites to PRSUF are to the Statement of Undisputed Facts filed with this brief—Plaintiffs' Reply in Further Support of Their Motion for Summary Judgment, attached hereto as Appendix A.  Statements to the SUF, POSUF and WSUF are to the separate Statements of Undisputed Facts filed with Plaintiffs' Motion for Summary Judgment (DE 445), Plaintiffs' Opposition to the Defendants' McGregor and VictoryLand's Joint Motion for Summary Judgment (DE 464) and Plaintiffs' Opposition to Sheriff Warren's Motion for Summary Judgment (DE 465).

23.)  Sheriff Warren testified that he had "the option of denying" an application even if the applicant met all of the requirements.  (SUF A5.)

- The Plaintiffs dispute Defendant Warren's claim that Plaintiff Lucky Palace is "*allegedly* attempting to construct a qualified location for the operation of bingo games."  (DE 458 ¶ 26 (emphasis added).)  The undisputed evidence shows that Plaintiff Lucky Palace is actually attempting to construct a qualified location for the operation of electronic bingo in Macon County.  (SUF F1-F3; H1-18, I17-23.)

- The Plaintiffs dispute Defendant Warren's claim that the Plaintiff Charities "have *allegedly* contracted with Plaintiff Lucky Palace to operate bingo games on their behalf."  (DE 458 ¶ 27 (emphasis added).)  The undisputed evidence shows that Plaintiff Lucky Palace did, in fact, contract with the Plaintiff Charities.  (SUF H11.)

- The Plaintiffs dispute Defendant Warren's assertion that "Lucky Palace alleges that it began sending letters to Sheriff Warren requesting confirmation that license would be issued to non-profit organizations in mid 2004."  (DE 458 ¶ 28 (emphasis added).)  The undisputed evidence makes clear that Plaintiff Lucky Palace did, in fact, begin sending such letters to Sheriff Warren in June of 2004.  (SUF H1.)

- The Plaintiffs dispute Defendant Warren's assertion that "Lucky Palace" further *alleges* that on July 21, 2004 it met with Defendant Warren . . . and on July 30, 2004, Lucky Palace sent Sherriff Warren a letter requesting his confirmation that the Rules would not be amended a second time."  (DE 458 ¶ 29 (emphasis added).)  The undisputed records shows that Lucky Palace did, in fact, meet with Sheriff Warren on July 21st and sent Sheriff Warren a letter on July 30th.  (SUF H3, H4.)

4

- The Plaintiffs dispute Defendant Warren's claim that the Plaintiffs "*allege* that Defendant Warren returned the application unapproved as Lucky Palace's proposed 'qualified location' was not complete as required by the Rules in November of 2004." (DE 458 ¶ 30 (emphasis added).)   The undisputed evidence shows that Sheriff Warren did, in fact, return Lucky Palace's application and indicated that no qualified location existed.  (SUF H14-15, I11-14.)

- The Plaintiffs dispute Defendant Warren's claim that the Plaintiffs "*allege*" that the Rules and Regulations "were drafted by attorneys for VictoryLand." (DE 458 ¶ 32.)  The undisputed evidence makes clear that attorneys for VictoryLand did, in fact, draft the rules and regulations.  (SUF G2-4.)

- The Plaintiffs dispute Defendant Warren's claim that the Plaintiffs "*allege* that on or about July 25, 2005 Lucky Palace attempted to deliver charity application packages for Class B bingo licenses on behalf of the non-profit organizations with whom they had contracted as a 'qualified location.'"  (DE 458 ¶ 33 (emphasis added).)  The undisputed evidence shows that Plaintiff Lucky Palace did, in fact, attempt to deliver applications on behalf of its contracted charities to Sheriff Warren on July 25, 2005.  (SUF I17.)

- The Plaintiffs dispute Defendant Warren's claim that the Plaintiffs "*allege* that Defendant Warren refused to accept hand delivery of the applications indicating that Lucky Palace had failed to construct a qualified location." (DE 458 ¶ 33 (emphasis added).)   The undisputed evidence shows that Sheriff Warren did, in fact, refuse to accept the applications of the Plaintiff Charities.  (SUF I24-25.)

- The Plaintiffs dispute Defendant Warren's claim that Plaintiff Lucky Palace "*ran* a campaign against Sheriff Warren by finding an opponent, Sandor Malloy." (DE 458 ¶ 37

5

(emphasis added).)   Regardless, the re-election of Sheriff Warren is immaterial to any of the issues raised in his motion for summary judgment.

## ARGUMENT

**I.      Defendant Warren's response concerning the Plaintiffs' RICO claims is not applicable.**

The Plaintiffs have not moved for summary judgment against Defendant Warren on any of their RICO claims and have expressly stated as such in their Motion for Partial Summary Judgment:

> The Plaintiffs acknowledge that there is disputed evidence regarding Sheriff Warren's knowledge of and participation in the various predicate acts underlying their RICO claims—including disputes arising from contradictions in the Sheriff's own testimony.  *See infra* note 7.   Accordingly, the Plaintiffs do not seek summary judgment against Sheriff Warren on their RICO claims against him.

(DE 445 at 1 n.1.)   The portions of Defendant Warren's response that address the Plaintiffs' RICO allegations are moot.[4]

**II.     <u>The Plaintiffs are entitled to summary judgment on their equal protection claims</u>.**

**A.      The Plaintiffs are similarly situated to Defendant VictoryLand and the charities affiliated with VictoryLand.**

Defendant Warren states that Lucky Palace is not similarly situated to Defendant VictoryLand and that the Plaintiff Charities are not similarly situated to the charities affiliated with VictoryLand because "Lucky Palace does not have a building as required by the Rules and Regulations."   (DE 458 at 27.)   The <u>only</u> dissimilarity asserted by Defendant Warren is the absence of a building.  Defendant Warren appears to concede that in all other relevant respects,

---

[4] To the extent Sheriff Warren is arguing that *his* motion for summary judgment on this point is due to be granted, the Plaintiffs would direct the court to the Plaintiffs' Opposition to Sheriff Warren's Motion for Summary Judgment (DE 465 at 22-24).

Lucky Palace is similar to Defendant VictoryLand and the Plaintiff Charities are similar to the charities affiliated with VictoryLand. Defendant Warren's argument that the Plaintiffs are not similarly situated because of their failure to meet a facially discriminatory requirement is without merit. (*See* Pls' Reply in Supp. of Mot. for Summ. J. at Part III.A.) Defendant Warren has offered no law,[5] and the Plaintiffs can find no support, for the contention that the failure to meet a facially discriminatory requirement renders a party dissimilar under an Equal Protection analysis.

Defendant Warren cannot rely on one of the very provisions challenged by the Plaintiffs to argue that the parties are not sufficiently "similarly situated." To do so would effectively eviscerate equal protection jurisprudence. *Cf. In re Marriage Cases*, 183 P.3d 384, 435 n.54 (Cal. 2008), superseded by const. amend. (rejecting argument that same-sex couples and opposite-sex couples are not "similarly situated" with regard to the challenged statute's legitimate purpose because such an argument "would insulate the challenged marriage statute from *any* meaningful equal protection review"). Accepting Warren's argument here would likewise effectively insulate the challenged provision from any "meaningful equal protection review." *Cf. Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) ("It is, of course, axiomatic that parties on opposite si[d]es of any true dispute will not be similarly situated, because one litigant, after all, is attempting to achieve a result that is the opposite of the goal sought by the opponent.").

---

[5] The only two cases cited by Defendant Warren for the proposition that the Plaintiffs' failure to meet the standards set out in the rules and regulations—namely the existing facility requirement—is fatal to their equal protection claim are inapposite. (DE 458 at 27.) Both *Clark v. Boscher*, 514 F.3d 107 (1st Cir. 2008) and *Barrington Cove Ltd. v. R.I. Housing & Mortgage Finance Corp.*, 246 F.3d 1 (1st Cir. 2001), involved claims of discriminatory administration of a facially neutral statute; neither plaintiff in those two cases actually challenged the underlying regulatory scheme itself. *See Clark*, 514 F.3d at 114; *Barrington Cove Ltd.*, 246 F.2d at 7 n.2.

7

Additionally, whether or not VictoryLand's facility was truly "qualified" under the rules and regulations is debatable. Defendant Milton McGregor testified that when the referendum was passed the VictoryLand facility was neither structurally nor electrically equipped to accommodate electronic bingo machines. (PRSUF 10; SUF E23.) McGregor also testified that the plan to modify the existing facility was only in his head and was never reduced to writing. (SUF E24.) Conversely, Lucky Palace's plan for a new facility that would comply with the rules and regulations was actually reduced to writing and presented to Sheriff Warren for approval. (SUF E23-24, I18-23.) Furthermore, the Sheriff's deputy, Tommy Miller, testified that VictoryLand's facility was never inspected to ensure that it met the requirements or the rules and regulations. (SUF E27; PRSUF 11.)

Regardless, the fact that Lucky Palace did not have a building is irrelevant because the requirement that a $15 million facility be constructed prior to licensing with no assurance that a license would be issued to an operator of a conforming facility is facially invalid and violates the Equal Protection Clause. (*See* DE 445 at Part III.B.1.a; DE 464 at Part IV.A.1.a.) As acknowledged by Defendant Warren, but for the absence of a building (SUF I25), Lucky Palace and the Plaintiff Charities and VictoryLand and its charities are "roughly equivalent and . . . similarly situated in all relevant respects." *Clark*, 514 F.3d at 114.

**B.    The rules and regulations are facially discriminatory and without a rational basis.**

The Plaintiffs assert that the Second Amended Rules are facially invalid and lack any rational justification. Specifically, the rules are facially invalid because (1) they required that a $15 million facility be constructed prior to licensing with no assurance that a conforming facility would receive a license and (2) they established a monopoly for VictoryLand by requiring that a "qualified location" be associated with at least fifteen Class B Licenses while capping the

8

number of Class B Licenses at sixty.  (DE 445 at 44-50.)  Defendant Warren does not offer a

rational justification for either of these requirements.

Defendant Warren appears to argue that he is freed from the constraints of equal

protection because the rules he enacted involved a "vice activity"—"[a]ny regulations associated

with limiting this type of vice activity will be upheld . . . ."  (*See* DE 458 at 24.)  This is not the

case.  The power to regulate an activity does not exempt the regulating authority—here, Sheriff

Warren—from the requirement that laws be facially neutral and administered in a fair and just

manner.  The Fourteenth Amendment's Equal Protection Clause states that "[n]o State shall . . .

deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV, § 1.  This clause "limits *all* state action, prohibiting any state from denying a person equal

protection through the enactment, administration, or enforcement of its laws and regulations."

*Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 289 (4th

Cir. 1998).

The closest Defendant Warren actually comes to articulating a rational basis for the rules

and regulations is as follows:

> [A]ny difference in treatment associated with gambling is irrelevant as there are
> numerous plausible reasons for its limitations, reasons like social and economic
> protection which Sheriff Warren has testified were his motivations in enacting the
> Rules and Regulations.

(DE 458 at 24.)  Defendant Warren appears to argue that "social and economic protection" was

the legitimate purpose for his promulgation of the rules and regulations.  However, while "social

and economic protection" might be a legitimate state goal, Sheriff Warren articulates absolutely

no rational relationship between the rules and the goal, as required in the rational-basis test.  The

Eleventh Circuit has described this rational-basis test as follows:

9

The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose—a goal—which the enacting government body *could* have been pursuing. The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose.

*Levin v. City of Palm Beach Gardens City Attorney's Office ex rel. Tatum*, 303 Fed. App'x 847, 850 (11th Cir. 2008) (citations and quotations omitted). Defendant Warren's failure to address the second part of the rational-basis test and to articulate what "social and economic protection" was achieved (or even envisioned) as a result of the rules and regulations entitles the Plaintiffs to summary judgment on their equal protection claims. *See E & T Realty*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987).

*1.*     ***Defendant Warren cannot articulate any rational basis for the "existing facility" requirement.***

Other than a general statement that his goal in promulgating the rules and regulations was "social and economic protection" Defendant Warren fails to articulate any legitimate reason for the requirement that a $15 million facility be constructed prior to licensing with no assurance that a license will be issued to an operator with a conforming facility. Defendant Warren also fails to give <u>any</u> rational basis for his purported belief that the existing facility requirement would further the goal of "social and economic protection." In fact, the existing facility requirement coupled with the rules' lack of guidelines for the inspection of a facility and vague descriptions of the parking, accounting, and security requirements (SUF I33) are inapposite to the stated goal of providing social and economic protection.

Defendant Warren makes no attempt to distinguish the rules and regulations he promulgated from the facially discriminatory statute struck down in *Browning-Ferris Industries*

*of Alabama, Inc. v. Pegues*, 710 F. Supp. 313 (M.D. Ala. 1987), other than claiming that in this case, as opposed to *Browning-Ferris*, there are "guidelines and standards that have been promulgated by Defendant Warren and which [the Plaintiffs] cannot meet" (DE 458 at 28). Defendant Warren's distinction is unavailing. Just as in this case, the statute in *Browning-Ferris* did not provide a *firm* legal standard for licensing of a facility. *Id.* at 315. The Middle District of Alabama noted that "applicants would have made enormous investments of time and money only to be potentially stymied by an arbitrary standardless process." *Id.* This is remarkably on point with the rules promulgated by Defendant Warren, which lacked a firm legal standard for issuing licenses (SUF I33, I34) and subjected applicants to the possible arbitrary rejection of an otherwise qualified facility (SUF A5). As in *Browning-Ferris*, the rules and regulations are facially invalid because they deny applicants (including the Plaintiff Charities and Lucky Palace) equal protection in violation of the Fourteenth Amendment.

Regardless, Sheriff Warren retained the authority to refuse to issue an operator's license even if a potential operator fully complied with whatever "clear and articulated requirements" were included in the rules and regulations. (SUF A5.) Thus, the argument that the rules and regulations provided some "guidelines and standards" is beside the point as Sheriff Warren could and did amend the rules and regulations at any time and refused to provide any binding assurances upon which a potential applicant could rely regarding the status of the rules. (SUF G1, H5, H6, H7, I1.)

The requirement of an "existing facility" favored VictoryLand, which was the only entity in Macon County that possessed an "qualified location."[6] Because Defendant Warren offered no

---

[6] Defendant Warren's assertion that the Plaintiffs' arguments are "too tenuous" and are "inference on inference" is not well-placed. (DE 458 at 28.) The undisputed facts are clear that

rational basis for his purported goal of "social and economic protection" and has offered no rebuttal to the Plaintiffs' argument that rules lack appropriate legal standards, the Plaintiffs are entitled to summary judgment as to their equal protection claims.

2.    ***Defendant Warren cannot articulate a rational basis for granting VictoryLand a monopoly.***

Likewise, no rational basis was articulated by Defendant Warren for granting VictoryLand a monopoly. The Plaintiffs asserted in their Motion for Partial Summary Judgment that fifteen minimum/sixty maximum requirement for Class B Licenses allowed VictoryLand to operate electronic bingo but prevented all other business entities (including Lucky Palace) from entering the electronic bingo market in Macon County. (DE 445 at 46-50.) Defendant Warren failed to respond to the Plaintiffs' argument on this point. Other than the blanket statement that his purported goal when promulgating the rules was "social and economic protection," Defendant Warren has not offered a reason for the minimum requirement of fifteen licenses and the sixty Class B License cap. As Defendant Warren does not dispute that Defendant VictoryLand was granted a monopoly and does not attempt to offer a rational basis for the Fifteen License Minimum or the Sixty License Maximum, this Court should find for the Plaintiffs on their equal protection claims.

Regardless of Defendant Warren's assertion that "social and economic protection" can serve as the rational basis for his conduct here, Defendant Warren does not dispute that because he *did not intend* to create a monopoly, his subsequent creation of a monopoly cannot be rationally related to a legitimate state interest. (DE 445 at 44-50.) There is no question that

---

*no other qualified location* can exist in Macon County at this time. (SUF K11.) This fact is far from a "conclusory statement." Unless Sheriff Warren amends the rules or VictoryLand cedes fifteen of its sixty charity licenses, no new operator can break into the electronic bingo market in Macon County.

Sheriff Warren did not intend to create a monopoly on electronic bingo in Macon County.  (DE 440 at 131 n.48; *see also* SUF C13-14.)  Instead of articulating a "legitimate state interest" to which the creation of a monopoly could be "rationally related," Sheriff Warren testified that a monopoly served no state interest and was not his intention.  (SUF K8.)

The rational basis test "require[s] that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker."  *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528-29 (1959)).  In this case, the relevant governmental decisionmaker, Sheriff Warren, testified that a monopoly was neither his purpose nor supported by his policy of acting in the best interests of the people of Macon County.  (SUF C13, K8, K9.)  The creation of a monopoly, then, could not conceivably have been Sheriff Warren's purpose or policy.  Nor can the creation of a monopoly rationally relate to any other state interest, since Sheriff Warren himself admitted that—in his view as the relevant governmental decisionmaker—"a monopoly protects no one."  (SUF K8.)  Because the undisputed facts show that the governmental purpose of creating a monopoly could not conceivably have been the policy or purpose of Sheriff Warren, the Plaintiffs have met their burden under *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001).

**3.     *There can be no rational basis where antipathy exists.***

Where antipathy is demonstrated, as in this matter, the Court can move beyond traditional rational basis analysis to consider the motivations of the lawmaker.  *See generally Romer v. Evans*, 517 U.S. 620 (1996).  Curiously, Defendant Warren does not attempt to argue that antipathy or animus does not exist.  Instead, he argues that the existence of antipathy or animus is irrelevant if there is a plausible reason for the rules and regulations.  (DE 458 at 25.)  Defendant Warren also states that "[t]he limiting of a vice activity such as gambling is a

plausible reason and is recognized as same." (DE 458 at 28.)  In other words, Defendant Warren appears to argue that because the regulations dealt with a "vice activity" his motivations or the presence of corruption is irrelevant.

Defendant Warren seeks to distinguish *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1995), by stating that the case does not support the Plaintiffs' argument "as Plaintiffs are seeking to participate in a vice activity." (DE 458 at 26.)  Defendant Warren offers no support for his contention that only cases dealing directly with "vice activities" are persuasive.  He also argues that the Plaintiffs' reliance on *Romer* is misplaced because "it is irrelevant to the current matter as it classifies persons, not a vice activity that can be banned altogether." (DE 458 at 30.)  Warren's persistent assertion that the regulation of a "vice activity" is free from the constraints of the Equal Protection Clause or any case law which does not specifically deal with gambling is misguided and unsupported.

Regardless of the Defendants' efforts to distinguish *Romer* and *City of Cleburne* as not factually identical to this case, there is no question that the Supreme Court held that, "even in the *ordinary equal protection case calling for the most deferential of standards*, we insist on knowing the relation between the classification adopted and the object to be attained.  The search for the link between classification and objective gives substance to the Equal Protection Clause; it provides guidance and discipline for the legislature, which is entitled to know what sorts of laws it can pass; and it marks the limits of our own authority." *Romer*, 517 U.S. at 632 (emphasis added).  Even in the most deferential of circumstances, there must be a connection between the statute at issue and an *independent, legitimate* legislative objective to prevent the promulgation of statutes *solely* for the purpose of disadvantaging the group impacted by the law. *Id.* at 633 ("By requiring that the classification bear a rational relationship to an independent and

14

legitimate legislative end, we ensure that classifications are not drawn *for the purpose of disadvantaging the group burdened by the law*." (emphasis added)).

In this case, the *independent, legitimate* link required by *Romer* is eviscerated by the apparent conflicts of interest and undue influence asserted by VictoryLand. The only logical explanation for Sheriff Warren's regulations is to create and protect VictoryLand's monopoly to the detriment of the Plaintiffs. "If the adverse impact on the disfavored class is an apparent aim of the legislature, its impartiality would be suspect." *R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 181 (1980) (Stevens, J., concurring). Thus, while improper legislative motives may not factor into a traditional rational basis inquiry, the presence of antipathy, bias, and conflicted interests certainly renders the impartiality of Sheriff Warren and his rules and regulations suspect. Therefore, the rules and regulations are irrational and violate the Equal Protection Clause.

**C.    The rules and regulations have a disparate impact due to purposeful discrimination.**

Defendant Warren incorrectly states that the Plaintiffs' disparate impact claims are inapplicable because the Plaintiffs "must show that a suspect class or constitutionally protected interest is at issue . . ." (DE 458 at 31.) The Plaintiffs rely on *E & T Realty*, 830 F.2d 1107, a case that does not involve a protected class, but which stated that facially neutral laws still violate equal protection if there is a disparate impact as a result of purposeful discrimination. 830 F.2d at 1112 n.5. (DE 445 at 52.) Defendant Warren makes no attempt to distinguish *E & T Realty* and instead provides the Court with a string cite of irrelevant cases that do not even address disparate impact claims much less limit disparate impact claims to protected classes.[7]

---

[7] *Damiano v. Fla. Parole & Probation Comm'n*, 785 F.2d 929 (11th Cir. 1986) does not address disparate-impact claims at all. Indeed the word "impact" never appears in the opinion. Likewise, *Osbourne v. Folmer*, 735 F.2d 1316, 1317-18 (11th Cir. 1984), does not actually address an equal protection claim, much less a disparate impact equal protection claim. Finally,

Defendant Warren has not cited a single case holding that membership in a protected class is a pre-condition to bringing a disparate impact claim. Indeed, the courts have often addressed disparate-impact cases which involved neither a suspect class nor a constitutionally protected right. *See, e.g., Williams v. Ill.*, 399 U.S. 235, 240-41 (1970) (finding disparate impact on the indigent); *Griffin v. Ill.*, 351 U.S. 12, 19 (1956) (same); *Reese v. State of Mich.*, 234 F.3d 1269 (Table) (6th Cir. 2000) (considering a disability disparate impact claim even though a disability is not a suspect class); *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 66-67 (9th Cir. 1994) (finding that city's blanket ban on licensing tags had a disparate impact on post-ban applicants).

Defendant Warren also argues that the Plaintiffs have failed to demonstrate that Sheriff Warren purposefully discriminated against them—apparently because Plaintiff Lucky Palace failed to construct a "qualified location." (DE 458 at 31.) Once more, Defendant Warren cannot hide behind one of the very provisions challenged in this litigation. Regardless, the undisputed facts make clear that the Original Rules were drafted such that VictoryLand was the only qualified location at the time they were passed. (SUF E1.) As Lucky Palace sought to conform to those rules, Sheriff Warren amended the rules to create greater barriers to entry. (SUF G1, G8, G9, I1, I3.) Sheriff Warren then refused to confirm that, if Lucky Palace satisfied the First Amended Rules, it would be given a license. (SUF H6.) Sheriff Warren even told Lucky Palace that he did not foresee any changes to the rules. (SUF H7.) In November 2004, Lucky Palace submitted an (admittedly improper) application for an operator's license pursuant to the First

---

the term "equal protection" is not mentioned in the court's opinion in *Currie v. David*, 4:05cv287-WS, 2007 WL 1584401 (N.D. Fla. May 31, 2004).

Amended Rules, along with a check for $40,000.  (SUF H14; Ex. 16 at PTF000575.)  Sheriff Warren did nothing with the application for two months.  (SUF H15, I11.)  On January 6, 2005, Sheriff Warren issued the Second Amended Rules, which limited the number of available Class B Licenses to 60.  (SUF I1, I3)  On January 14—eight days later—he finally returned Lucky Palace's application for an operator's license, stating that it did not have a building.  (SUF I11.)  Lucky Palace received the returned application on January 19, 2005—nearly two weeks after the Second Amended Rules were passed.  (SUF I14.)  Within two weeks of that, Sheriff Warren had issued more than 45 licenses to VictoryLand charities, cementing VictoryLand's monopoly.  (SUF G1, G8, G9, I1, I3, I1, I15.)  This sequence of events shows that Sheriff Warren purposely discriminated against Lucky Palace—whether or not he intended to give VictoryLand a monopoly.

Other than arguing that a protected class is necessary and that the Plaintiffs have failed to show purposeful discrimination, Defendant Warren makes no other rebuttal to the Plaintiffs' argument that the rules have a disparate impact due to purposeful discrimination.  In fact, Defendant Warren does not appear to dispute that the rules had a disparate impact on the Plaintiffs at all.

## D.    The Plaintiffs were denied equal protection because they were administered unequally.

Defendant Warren does not cite a single case in response to the Plaintiffs' contention that the rules were administered unequally and does not appear to disagree with the law cited by the Plaintiffs.  (DE 458 at 32-35.)  Defendant Warren's only argument appears to be that the Plaintiffs' argument is "inconsistent"—apparently failing to grasp the distinction between an *operator's license* and a *Class B charity license*.  (DE 458 at 32-34.)  While it is unclear exactly

what is inconsistent, the Plaintiff Charities were treated differently when Sheriff Warren required an "existing facility" before considering the Plaintiff Charities' applications for Class B Bingo Licenses—a requirement that is not included in the rules and regulations themselves.[8]

Indeed, nothing in the rules makes the issuance of a Class B License contingent on the existence of a "qualified location" or the availability of fifteen licenses. Sheriff Warren treated the Plaintiff Charities differently by imposing this unwritten rule on their applications, and that discrimination was intentional. Sheriff Warren refused to consider the applications on the basis that Lucky Palace had not yet constructed a "qualified location." (SUF I24.) That requirement, however, is not a part of the Second Amended Rules, and Sheriff Warren discriminated against the Plaintiff Charities by refusing to consider the applications for a Class B License on the basis of a non-existent requirement. The rules make clear that an applicant for a Class B License could receive a license even if the location at which the licensee sought to conduct electronic bingo was not yet qualified.[9]

---

[8] Sheriff Warren has not offered any rational basis for this "phantom" requirement and improperly denied the Plaintiff Charities' applications in violation of their right to equal protection under the law.

[9] As argued in Plaintiffs' Motion for Summary Judgment (DE 445 at Part III.D), Section 5 of the Second Amended Rules provides that the Sheriff shall issue a license to an applicant who had provided the information required by the Rules. (SUF I5.) Section 4(c) sets out the information required by an applicant. (SUF I5.) While Section 4(c)(6) requires an applicant to identify the "exact physical location" at which it plans to conduct bingo, Section 4(c)(6) does not state that the location has to be in existence at the time of the application. (SUF I5.) Nothing in the Rules makes the issuance of a Class B License contingent on the existence of a "qualified location" or the availability of fifteen licenses. For instance, the definition of "qualified location" only applies when bingo games are being "conducted or operated," not when an applicant is applying. (SUF I35.) In addition, Section 2 states that "[n]o Class B Licensee shall be authorized to operate bingo at any qualified location, as defined herein, unless a minimum of fifteen (15) applicants shall *first* obtain Class B license for such location." (SUF I6.) Under this

18

Sheriff Warren's refusal to accept the applications of the Plaintiff Charities was motivated by purposeful discrimination. Sheriff Warren went beyond allowing VictoryLand to commandeer the process of drafting and amending the rules; he actually *created* new reasons to deny the Plaintiff Charities' applications. His actions, when combined with the evidence of the Sheriff's consistent favoritism of the interests of VictoryLand in this case, establish purposeful discrimination as a matter of law. *See Cordeco Dev. Co. v. Santiago Vasquez*, 539 F.2d 256, 260 & n.5 (1st Cir.) *cert. denied*, 429 U.S. 978 (1976) (finding that local officials improperly singled out permit applicant for adverse treatment due to "illegitimate 'political' or, at least, personal motives," and that such "purposeful discrimination" against a particular individual violated plaintiff's right to equal protection of the laws even where no recognized class-based or invidious discrimination was involved).

Accordingly, the Plaintiff Charities should have been able to secure licenses—at the very least until the Sixty License Minimum was reached—regardless of whether Plaintiff Lucky Palace's location was complete. Indeed, that is precisely how the rules were drafted. Sheriff Warren discriminated against the Plaintiff Charities by refusing to consider their applications for Class B Licenses on the basis of a non-existent requirement, thereby depriving the Plaintiff Charities of equal protection under the law.

## CONCLUSION

Because the Plaintiffs have established a violation of their equal protection rights pursuant to 42 U.S.C. § 1983, this Court should enter summary judgment in their favor as to the liability of Defendant Warren on Count III of their Sixth Amended Complaint. The Plaintiffs

---

section, the requisite 15 charities must first become licensees for a particular location *before* electronic bingo could be conducted at that location.

also request that this Court set a hearing regarding the Plaintiffs' entitlement to injunctive relief prior to the March 15, 2010 trial. The Plaintiffs further request that this Court set the Plaintiffs' claims against Defendant Warren in Counts I, II and IV[10] of their Sixth Amended Complaint for trial.

      Dated: November 2, 2009.

---

[10] The Plaintiffs neglected to mention the disposition of Count IV in their conclusion to their motion for partial summary judgment (DE 445 at 65). But since the Plaintiffs did not move for summary judgment on that count (DE 445 at 1), it should be set for trial as well.

Respectfully submitted,

_____
Robert K. Spotswood (SPO 001)
Michael T. Sansbury (SAN 054)
Grace L. Kipp (LON 049)
John S. P. Samford (SAM 012)
SPOTSWOOD SANSOM & SANSBURY LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama  35213
TEL:   (205) 986-3620
FAX:   (205) 986-3639
E-mail:       rks@spotswoodllc.com
              msansbury@spotswoodllc.com
              gkipp@spotswoodllc.com
              jsamford@spotswoodllc.com

*Attorneys for the Plaintiff Charities*

Stephen D. Heninger (HEN 007)
W. Lewis Garrison Jr. (GAR 008)
Gayle L. Douglas (DOU 012)
HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
TEL:   (205) 326-3336
FAX:   (205) 326-3332
E-mail:       steve@hgdlawfirm.com
              lewis@hgdlawfirm.com
              gdouglas@hgdlawfirm.com

*Attorneys for Plaintiff Lucky Palace, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 2, 2009, I served a copy of the foregoing with via electronic mail on the following counsel of record:

John M. Bolton III, Esq.
Charlanna White Spencer, Esq.
Hill Hill Carter Franco Cole & Black P.C.
425 S. Perry Street
Montgomery, AL 36104
E-mail:       jbolton@hillhillcarter.com
              cspencer@hillhillcarter.com

James H. Anderson, Esq.
Hilary Y. Parks, Esq.
Beers, Anderson, Jackson, Patty, Van Heest &
     Fawal PC
P.O. Box 1988
Montgomery, AL 36102
E-mail:       janderson@beersanderson.com
              hyother@beersanderson.com

John Mark White, Esq.
Augusta S. Dowd, Esq.
U. W. Clemon, Esq.
Rebecca DePalma, Esq.
Hope Marshall, Esq.
White, Arnold, Andrews & Dowd
2025 Third Avenue, North
Suite 600
Birmingham, AL 35203
E-mail:       mwhite@waadlaw.com
              adowd@waadlaw.com
          uwclemon@whitearnolddowd.com
              rdepalma@waadlaw.com
          hmarshall@whitearnolddowd.com

William M. Slaughter, Esq.
Patricia C. Diak, Esq.
Peter John Tepley, Esq.
Khristi Doss Driver, Esq.
Haskell, Slaughter, Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
E-mail:       wms@hsy.com
              pcd@hsy.com
              pt@hsy.com
              kdd@hsy.com

George L. Beck Jr., Esq.
Arden Reed Pathak, Esq.
Capell Howard PC
PO Box 2069
Montgomery, AL 36102-2069
E-mail:       glb@chlaw.com
              arp@chlaw.com

Robert A. Huffaker, Esq.
Ronald G. Davenport, Esq.
Rushton, Stakely, Johnston & Garrett
PO Box 270
Montgomery, AL 36101
E-mail:       rah@rsjg.com
              rgd@rsjg.com

OF COUNSEL